```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF GEORGIA
                            AUGUSTA DIVISION



UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,        )
                                 )
                vs.               )       1:17CR034
                                 )
REALITY LEIGH WINNER,            )
                                 )
                Defendant.        )
_____)



                        STATUS CONFERENCE
               BEFORE THE HONORABLE BRIAN K. EPPS
               WEDNESDAY, AUGUST 30, 2017; 9:24 A.M.



FOR THE GOVERNMENT:

      Julie Ann Edelstein, Esquire
      U.S. Department of Justice
      600 E Street NW, 10th floor
      Washington, DC 20002
      (202)233-2260

      Jennifer G. Solari, Esquire (By telephone)
      U.S. Attorney's Office
      Post Office Box 8970
      Savannah, Georgia 31412
      (912)201-2561

      David C. Aaron, Esquire  (By telephone)
      U.S. Department of Justice
      950 Pennsylvania Avenue, NW
      Washington, DC 20530
      (202)307-5190
```

**FOR THE DEFENDANT:**

     John C. Bell, Jr., Esquire
     Titus T. Nichols, Esquire
     Bell & Brigham
     457 Greene Street
     Augusta, Georgia 30901
     (706)722-2014

     Matthew S. Chester, Esquire
     Baker, Donelson, Bearman, Caldwell, and Berkowitz
     201 St. Charles Avenue, Suite 3600
     New Orleans, Louisiana 70170
     (504)566-5231

     Joe D. Whitley, Esquire
     Baker, Donelson, Bearman, Caldwell, and Berkowitz
     3414 Peachtree Road, NE, Suite 1600
     Atlanta, Georgia 30326
     (404)223-2209

**TRANSCRIBED FROM FTR RECORDING BY:**

     Lisa H. Davenport, RPR, FCRR
     Post Office Box 5485
     Aiken, South Carolina 29804
     (706)823-6468

1            (Call to Order at 9:24 a.m.)

2            THE CLERK:  The Court calls case number 1:17CR34.

3   United States of America v Reality Leigh Winner.  Julie

4   Edelstein and Jennifer Solari, David Aaron for the

5   government -- Mrs. Solari and Mr. Aaron appearing via

6   telephone.  Joe Whitley, John Bell, Matthew Chester, and Titus

7   Nichols for the defendant.  Here for a status conference.

8            THE COURT:  Good morning, everybody.

9        (Simultaneous group response.)

10            THE COURT:  We also have at the government counsel

11   table a gentleman not identified I think so far -- oh, that's

12   the agent.  Okay.  All right.  Before we get started with the

13   substance of the hearing today, there are a couple of things I

14   want to say.  First of all, I have no idea what the substance

15   of this hearing is today.  In the four years I've been here

16   this is the first time this has ever happened.  I clerked for

17   Judge Story in the Northern District for two years.  That never

18   happened while I clerked for him, and I don't want it to happen

19   again in this case or any other case that I'm involved in.

20        When parties need to discuss items with the court, there

21   is a tried and true method for asking for a hearing and

22   disclosing in advance to the court what it is we're going to be

23   talking about.  That is filing a motion on the docket for

24   whatever you want the court to do explaining the reasons for it

25   and requesting therein a hearing on the matter or filing a

1    separate notice or motion on the docket for a hearing.  So this

2    is the first time I have ever walked in here and had no idea

3    what I am about to have to listen to and rule on and I never

4    want that to happen again.

5        There are a couple of other what I would call "never"

6    events that have occurred in this case that I don't want to

7    happen again either.  The first of those is any request for

8    court action made by way of email or through back-channel

9    communications with the CISO's office.  I never ever want to

10    hear again from the CISO or from an email address that I need

11    to do something in this case.  I want it on the docket as a

12    motion so I have advanced, formal notice and we follow the

13    procedures that are in place so that everybody knows of these

14    requests and everybody has a chance to litigate them in the

15    manner that the federal rules contemplate and in the same

16    manner that we've refined in the more than 200 years that we've

17    been litigating cases in this republic.

18        So those are my opening remarks and I don't want any

19    deviation from those in this case again.  And I also don't want

20    a 10-page letter dropped on my desk right before we walk in

21    here before a hearing with the expectation that I am going to

22    be able to read it, digest it, consider it, and walk in here

23    ready to rule on it.  That is a "never" event in my mind, also,

24    and so that letter we won't discuss today.  I don't have time

25    in the 15 minutes that I received it before stepping out here

 1    today to meaningfully digest it and decide what action needs to

 2    be taken based upon it.

 3        So with those remarks in mind, let's begin with the

 4    substance of whatever it is we're going to be talking about

 5    today.  Who wants to talk first and who's going to tell me why

 6    we're here?

 7            MR. BELL:  Your Honor, on behalf of the defendant

 8    we're here for the Court's status conference.  I think the

 9    Court wanted regular status conferences just to update on how

10    the case is progressing in terms of the trial.  I apologize.  I

11    asked that letter be sent back because I understood from last

12    night emails that that issue might be raised and if it was

13    raised I wanted to provide it for the Court.  We're not asking

14    for court action on that at this time.

15            THE COURT:  Okay.

16            MR. BELL:  I hear what you're saying.  It was not an

17    attempt to try to get court action, but it was in response to

18    what I thought might be, but, you know, we haven't had a chance

19    to talk with opposing counsel about that.  It is just some

20    emails after hours last night.

21            THE COURT:  Okay.  Okay.  So why are we here?  Who

22    can tell me why we're here this morning?  I didn't request the

23    hearing.  The parties did.

24            MR. BELL:  Your Honor, on behalf of the defendant I

25    am not aware that we requested the hearing.  I know that the

1    Court had indicated I think when we had the last status

2    conference that the Court might be holding regular status

3    conferences to update things.  I'll be glad to bring the Court

4    up to date of where things stand or not.

5             THE COURT:  Well, let me tell you what I understand.

6    I understand that an email was sent and copied on counsel for

7    all parties requesting that we be here today.

8         Is that right, Mrs. Widener?

9         Yeah, she's got the email here.  It says that Mr. Chester

10   -- is he on the line?

11            MR. BELL:  Mr. Chester is here.

12            MR. CHESTER:  I am right here, Your Honor.

13            THE COURT:  Mr. Chester, this email was from you and

14   it requested we get together today.  Why are we here?

15            MR. CHESTER:  Judge, Your Honor, by way of

16   introduction, it is nice to meet you.  Thank you for granting

17   my pro hac vice motion so we could be here today.  I appreciate

18   you giving me the opportunity to practice law in this district.

19        Judge, we had conversations with the government about the

20   current scheduling order.  We had discussed with the government

21   the feasibility of some of the deadlines that the Court I know

22   set early on as an aggressive scheduling order.  After

23   discussions with government personnel, it was decided -- the

24   parties decided -- we thought it was best to reach out to the

25   Court and in an effort to be open and transparent and advise

1   the Court of the issues in connection with that scheduling

2   order which is why we requested the hearing.

3       I hear you loud and clear, Your Honor.  You don't want

4   that to happen again.  It will not happen again.  So I

5   apologize for that.

6           THE COURT:  I mean, you understand that; right?

7           MR. CHESTER:  I did.

8           THE COURT:  I can't walk in here with no idea of what

9   we're going to talk about.

10          MR. CHESTER:  Understood, Judge.

11          THE COURT:  And even now I still don't know what

12  we're talking about.  Specifically, what is it you are asking

13  me to do?

14          MR. CHESTER:  Judge, there are -- with respect to the

15  scheduling order, I think, again, both parties are here to

16  advise you again in a way being open and transparent that what

17  is and what is not accomplishable under the scheduling order

18  the Court set.

19          THE COURT:  Okay.  Do you have an alternative

20  scheduling order you'd like to present?

21          MR. CHESTER:  We have a solution for Your Honor and

22  that would be going forward and I can talk about some of the

23  impediments, but the solution that I would have, Judge, is what

24  I've seen in other Espionage Act cases which is status reports

25  on a regular basis -- 30 to 60 days -- where we update the

1    Court on the various impediments that I can advise the Court on

2    if it chooses and at some point after several of those status

3    reports it would be my expectation we could set some hard and

4    fast deadlines.  Unfortunately, the way we -- where we're at in

5    this ---

6              THE COURT:  I'll tell you that's not going to happen.

7    I think one of the easiest ways for litigation to get out of

8    hand, whether it's civil or criminal, is for us to get off a

9    scheduling order and on to a footing where anybody can cry that

10   today has been a tough day and I wasn't able to get to it or,

11   oh, these are the five reasons why this deadline is so onerous

12   on me, and so, you know, if I just left it up to the lawyers,

13   we wouldn't try this case until this time next year, and, yet,

14   we've got a defendant who's in jail right now pending trial --

15   your client -- who has no criminal history to speak of; right?

16             MR. CHESTER:  I agree, Your Honor.  Yes.

17             THE COURT:  So we've got to get this thing to trial

18   as soon as possible and the only way we're going to do that is

19   to have hard and fast deadlines in the case and specific

20   requests to change specific dates for specific reasons.

21             MR. CHESTER:  Okay.  I am happy to discuss some of

22   those if you would like, Your Honor.  I mean, from our

23   standpoint, for example, we have been advised by Mrs. Solari

24   that the meat of this case will be in the classified discovery

25   that the government just produced on Friday.  Mr. Bell,

1    Mr. Nichols have their security clearance on our team.   The

2    rest of the lawyers, despite our best efforts getting the forms

3    in within a week, do not.

4         Obviously, we can't review that material until we have our

5    security clearances, understandably.   Once we get those

6    clearances -- even if I could get them tomorrow, I understand

7    from my last conversation with Ms. Rodriquez-Feo it may take 60

8    to 90 days for me to get my security clearance.   This trial is

9    set less than 60 days from now.

10        Once I get that clearance and we have the ability to go in

11   there and review the material, there are going to be issues

12   that I know are going to come up.   For example, we are likely

13   going to need expert assistance in this case.   There's several

14   elements of an Espionage Act case as Your Honor is well aware

15   that regularly require expert assistance from the defense

16   side -- sometimes even from the government's side.   Once we --

17   once we can identify that which we can't get until we get in

18   there in the SCIF to review the material, that expert will need

19   his or her own security clearance.   That expert will need to

20   view the classified material so he or she can render an opinion

21   in this case.   That is one impediment.

22        Once we get in the SCIF, Judge, another impediment might

23   be depending on what's there I expect there -- I agree with

24   what Mrs. Solari has advised me which is that the meat of this

25   case will be in those materials.   I also expect there to be

1   quite a bit of volume of classified material.  There may or may

2   not be.  I don't know yet.  I don't have my clearance, but if

3   there is not, we may have discovery requests that need to go to

4   the government.  We may be able to work out accommodations.

5   That may trigger further litigation.

6        What I did when I first got on this case, Judge, is we

7   went back and we reviewed every Espionage Act case that had

8   litigation -- the ones that didn't resolve themselves in quick

9   pleas.  The average amount of time from indictment to trial was

10  727 days when we reviewed all of them.  I am not suggesting

11  that we need 727 days.  I know that's not what the Court wants.

12  I certainly don't want that.

13       THE COURT:  Well, let me tell you why this case is

14  probably different from the vast majority of those.  It is a

15  single-defendant, single-count case alleging conduct that

16  occurred over a very isolated period of time.  It couldn't be

17  simpler than that.  Would you agree those other cases are not

18  good comparatives for that reason?

19       MR. CHESTER:  Judge, I think facially I would agree

20  with you that this is a single defendant, single count.

21  Nonetheless, the elements that the government will have to

22  prove in this case -- harm to the national security, that the

23  information wasn't already in the public domain, other elements

24  of an Espionage Act case -- are substantially more complex than

25  just a single-defendant, single-count case.

1          THE COURT:  Right.  It's not a felon in possession

2    indictment.

3          MR. CHESTER:  I agree.

4          THE COURT:  Certainly.  But it's not an international

5    conspiracy to spill secrets from the government with drop-off

6    sites and coconspirators and the like either.  I mean, it's

7    pretty simple in terms of an espionage case.

8          MR. CHESTER:  Judge, I would, again, respectfully

9    just suggest that there is going to be some complexity to this

10   case and it is going to take time and I think even both parties

11   even recognize that it will take time for us to work our way

12   through these things.  We will be as diligent as we can.  We

13   have the motivation to do so because as Your Honor mentioned

14   our client is in jail.  We don't want her to be in jail any

15   longer than she has to be in jail.  That being said, we also

16   need to get our clearances, review the material, have the

17   appropriate amount of time to determine, do we need experts?

18   Do we need additional discovery?  Do we need to file pretrial

19   litigation?

20          THE COURT:  I guess my first response to that is,

21   yes, your attorney -- I mean, your client is entitled to

22   counsel, but how many lawyers does it take before you satisfy

23   that constitutional requirement?  I mean, how many do we

24   already have with security clearances that can walk in there

25   today and look at the discovery?

1            MR. CHESTER:  We have two.

2            THE COURT:  Two.  Well, how many do you need before

3    you satisfy the constitutional right to counsel?

4            MR. CHESTER:  Judge, I think -- I don't know what the

5    case law is on that.  I understand your point.  Mr. Bell and

6    Mr. Nichols could certainly go in there and begin reviewing

7    that discovery.

8            THE COURT:  In other words, if you put in a notice of

9    appearance in this case two days before trial are we going to

10   delay trial by three months --

11           MR. CHESTER:  Of course ---

12           THE COURT:  -- before you get your clearance?

13           MR. CHESTER:  Of course not, Judge.  Of course not,

14   Judge, and that's not what I am suggesting.  We did our best to

15   get whatever forms we got from the government as quickly back

16   to the government as we have, but the security clearance isn't

17   simply the grounds for why we're asking that the scheduling --

18   that we revisit the scheduling order.

19           THE COURT:  Well, but I want to be clear that the

20   delay in you getting your security clearance is not because of

21   delay by the CISO in getting that done.  The delay is in your

22   appearance to begin with.  Mr. Bell and Mr. Nichols were in it

23   from the beginning and the CISO worked very diligently to make

24   sure they had their clearances in place on the day the

25   discovery was going to be produced by the government that they

1   needed to review and I was involved in that intimately because

2   I realized this case needs to get moving and we wanted to

3   coordinate all of that.

4       We wanted to be absolutely sure they were ready to review

5   that on day one of that information being produced, and so I

6   hear you, but when I compare your timeline of 720 days to try

7   this case with the timeline we set in the case, yours is

8   unacceptable and I'll entertain specific requests to change

9   specific deadlines, but we're not going to give carte blanche

10  authority to conduct discovery as you deem it convenient, and

11  the concern about having ten lawyers get security clearances so

12  all of them can look at the stuff is not a concern of mine.

13          MR. CHESTER:  I understand, Your Honor.  If you want

14  me to speak specifics, I can.  The next deadline is

15  September 15th.  That is the defendant's deadline under Section

16  Five of CIPA.  Mr. Bell and Mr. Titus -- Mr. Nichols, excuse me

17  -- have their security clearances.  They haven't gone and

18  looked at a single document.  They just received those

19  clearances.  So that is, essentially, two weeks from today that

20  we need to designate which documents in the classified material

21  we can use for trial.  We can't do that.  I should say they

22  can't do that; I don't have a clearance.  They are not going to

23  be able to do that.

24      They are going to need to have adequate time to review it

25  as an initial matter to determine is everything there; as a

1   separate matter to determine do we need expert help; and as a

2   third matter after those two things, then they might be able to

3   determine what they can use for trial.  Until those first two

4   hurdles are cleared, I don't think Mr. -- and I don't want to

5   speak for Mr. Bell and Mr. Nichols -- I don't think those

6   things can be adequately identified to comply with that

7   September 15th deadline.

8          THE COURT:  The standard deadline for filing of

9   pretrial motions after review of all discovery and determining

10  whether everything is there in this court is 14 days and I

11  don't think the volume here is unusual in that regard.  My

12  understanding of the volume here is that it's not.  What kind

13  of timeline would you -- I mean, if you had your way we would

14  set that deadline sometime in mid-November, I would guess;

15  right?

16         MR. CHESTER:  What's hard for me, Judge -- and I want

17  to be as respectful to the Court as I can.  What's hard for me

18  is without knowing anything about those documents, it's hard

19  for me to give the Court this date.  I know you want hard

20  dates.  I want -- and I'm happy to work that out, but --

21         THE COURT:  Right.

22         MR. CHESTER:  -- but I am operating completely blind

23  here.

24         THE COURT:  Well, so if we went with your way of

25  handling the case, the first thing we have to do is get you a

```
1   clearance and then you're going to need time to do all the
2   things that you just talked about and so to accomplish all
3   those things, what would be your -- what would be your estimate
4   as to how much time you need for that?
5            MR. CHESTER:  Do you mind if I confer with Mr. Bell?
6            THE COURT:  No problem.
7            MR. CHESTER:  Thank you, Your Honor.  Your Honor,
8   respectfully, what I might suggest is those of us that have
9   security clearances can visit that -- those SCIFs -- very soon
10  and could report to the Court a specific deadline by which we
11  can comply.  If it's ten documents in there, I think we can
12  give a deadline that will be, you know, not too onerous.  If
13  it's a million pages, I don't know what it is.
14           THE COURT:  I think Ms. Edelstein can probably solve
15  a lot of that for us.
16       Ms. Edelstein, can you just -- certainly, we're in open
17  session here.  So I don't want you to talk about --
18           MS. EDELSTEIN:  Sure.
19           THE COURT:  -- much in the way of the nature of the
20  stuff, but just in terms of volume can you just kind of break
21  it down in terms of the volume of discovery that is not
22  classified and anybody from that defense team can review now
23  versus the volume of discovery that is classified?
24           MS. EDELSTEIN:  Yes, Your Honor.  Good morning, Your
25  Honor.
```

1          THE COURT:  Good morning.

2          MS. EDELSTEIN:  The government has produced to the

3    defense an unclassified discovery over 8000 pages and a

4    considerable amount of digital data and the information that I

5    have been cleared to provide in an open setting about

6    classified discovery is that the government agency has produced

7    approximately 400 pages in classified discovery.

8          THE COURT:  All right.  So 8000 pages everybody on

9    the defense team can currently review.  It's only 400 pages

10   we're talking about that's classified.

11         MS. EDELSTEIN:  That's correct, Your Honor.

12         THE COURT:  Okay.  That really helps out a lot.

13     Mr. Chester, does that alleviate some of the concerns you

14   have about timing?  And, if so, what would you propose for that

15   September 15th deadline?

16         MR. CHESTER:  Judge, I don't want to wrestle -- 400

17   pages sounds like a very small amount.  I mean --

18         THE COURT:  Right.

19         MR. CHESTER:  -- I'd like -- so if that's everything

20   that is relevant to this case, I think that's something we

21   could set fairly soon.  The problem is I'm concerned that that

22   is not everything that we're going to need in this case which

23   is one of the impediments I discussed.  If there are more

24   classified materials that we think should be in there that

25   aren't in there, that's going to trigger requests to the

1    defense.

2              THE COURT:   You know, at the heart of this is just a

3    fundamental disagreement about how you approach litigation.   My

4    approach and my requirement here is that we set specific

5    deadlines.

6              MR. CHESTER:   Okay.

7              THE COURT:   If we don't, litigation goes on forever.

8    There's not a case on the docket in this court that doesn't

9    have a specific deadline associated with it.   Whether it's a

10   civil case that's in the middle of mediation -- I've got a date

11   right now for them to report back to me about the status of

12   that, and if they tell me that they're still trying to

13   negotiate terms, guess what we do?   We set another date --

14             MR. CHESTER:   Sure.

15             THE COURT:   -- so we can get back together again.

16             MR. CHESTER:   Fair enough, Your Honor.

17             THE COURT:   So I will not let any case that I'm a

18   part of go forward without specific deadlines that, of course,

19   we can change if extraordinary circumstances occur.   So that's

20   what I am trying to get at.

21             MR. CHESTER:   I got you.   Fair enough.   You know, as

22   long as circumstances change, we can come back to the Court and

23   have a discussion with the Court about it, fair enough.   We can

24   set a specific deadline.

25             THE COURT:   Right.   And with the understanding that

```
 1    these deadlines -- I use the word "extraordinary".  I mean, you

 2    come back with extraordinary circumstances that we couldn't

 3    foresee at the time we set these, we'll talk about extending

 4    them, but, otherwise, they're just not written on a chalk

 5    board.  I mean, it is kind of spray painted on concrete.

 6                MR. CHESTER:  Your Honor, I mean, if you're asking me

 7    for a specific deadline, I think November, assuming I can get

 8    my -- assuming -- well, I take that back.  I think November

 9    would be fair, Your Honor.

10                THE COURT:  Okay.

11                MR. CHESTER:  Set a deadline and we'll take a look at

12    the classified material.  If there are issues, we'll report

13    back.  But we can set a deadline of a specific date if that's

14    what the Court so chooses.

15                THE COURT:  Okay.  Well, certainly, the outstanding

16    issue there is security clearances for your law firm because

17    right now no one from your law firm has one; right?

18                MR. CHESTER:  That's my understanding, Your Honor.

19                THE COURT:  And how many do you think that you need

20    in place before you can begin a meaningful review of the

21    materials?  How many lawyers are there from your firm seeking

22    those clearances?

23                MR. CHESTER:  I think there are five of us.

24                THE COURT:  Okay.  And do you need all five to be

25    cleared before you can start and complete the process?
```

1              MR. CHESTER:  No.  We don't need all five.  The

2     minute one of us is cleared, we will begin working on it.  I

3     can promise you that.

4              THE COURT:  Okay.  Well, who out of your team would

5     be the one that that duty would fall on to look at the

6     classified information and make those determinations?

7              MR. CHESTER:  We haven't gotten that far yet, Judge.

8     I would say that there are two lawyers in our Atlanta office --

9     Mr. Whitley, Mr. Switzer -- are probably geographically closest

10    to SCIFs.  My guess is it would be one or both of them that

11    would start that process.  The rest of us would support

12    whenever we get our clearances as soon as we can get it.

13             THE COURT:  I am a little surprised at that.  In my

14    law firm when I was your age on my team I was kind of that

15    middle person that got stuck with everything.  So I was

16    anticipating ---

17             MR. CHESTER:  I am sure I'll get stuck with plenty,

18    too, Your Honor.

19             THE COURT:  Right.  Right.  So the other piece of

20    this then would be the security clearance issue.  I know you

21    said the estimate was about 60 days.  From what date was that

22    60 days?

23             MR. CHESTER:  My understanding is from the date when

24    we submitted our forms back to the government.

25             THE COURT:  Okay.

1            MR. CHESTER:  I turned mine around within a week.

2            THE COURT:  Sure.

3            MR. CHESTER:  I think that was maybe two weeks ago.

4            THE COURT:  Okay.  So we're not 60 days out from

5     that.  We're probably like probably 45.

6            MR. CHESTER:  I think that's fair.

7            THE COURT:  Okay.  Ms. Rodriguez-Feo, I hate to call

8     you out in court, but if you don't mind giving us maybe an

9     update.  If you don't mind stepping up here to the lecturn

10    beside Mr. Chester here and just telling us what is it looking

11    like in terms of the defense team -- these lawyers that have

12    just joined the case -- in terms of the timeline for them to

13    get those clearances.

14            MS. RODRIGUEZ-FEO:  Yes, Your Honor.  So we have been

15    processing their clearances on an expedited, prioritized basis

16    which is what allowed us to estimate 60 to 90 days from the

17    time that we received all of the information back to our

18    office.

19            THE COURT:  Right.

20            MS. RODRIGUEZ-FEO:  Obviously, as the CISO in the

21    case I don't deal specifically with the personnel issues

22    because we have a separate group that deals with the personnel

23    issues.  So I'm -- they are reporting back to me and giving me

24    updates regarding the clearances.  I have been told that there

25    are two attorneys that are currently eligible for clearance.

1    Ms. McCook and Mr. Barnard are both currently eligible to

2    receive security clearances.  I have been in touch with both of

3    them to schedule the security briefings that are required prior

4    to them obtaining access.  I understand that one is in

5    Knoxville and one is in the DC area.  So we will have to

6    logistically schedule those in-person briefings.  I do

7    understand that Mr. Barnard will likely receive his clearance

8    first being that we have a meeting scheduled for next Tuesday

9    in DC.

10            THE COURT:  Okay.  So McCook and Barnard -- all they

11   need to be is sworn in, basically; right?

12            MS. RODRIGUEZ-FEO:  Correct.

13            THE COURT:  Whatever that term is.  Read in.  Is that

14   right?

15            MS. RODRIGUEZ-FEO:  They do.  They need to sign the

16   nondisclosure agreements and be read in.  Yes, sir.

17            THE COURT:  Okay.  And that'll take place as soon as

18   you can get to them?

19            MS. RODRIGUEZ-FEO:  Correct.  I believe Tuesday of

20   next week we have something scheduled for the briefing for

21   Mr. Barnard.

22            THE COURT:  All right.  And then what about the

23   remaining three?  Any kind of timeline on those?

24            MS. RODRIGUEZ-FEO:  So I'll have to check back with

25   our personnel team.  What I am understanding at this time is

1      that, obviously, we can predict 60 to 90 days, but that's a

2      prediction without having the information that comes through on

3      the background investigations in front of us.  In order to

4      grant access early on on the expedited basis we need a go ahead

5      for what's called an "interim allowance", and at this time I am

6      being told that no one else is eligible for that interim

7      allowance which means we have to go back to personnel and the

8      FBI to look into the details of the background investigations.

9      I can report to the Court and to defense counsel and the

10     government as soon as I hear more from my personnel department.

11             THE COURT:  Okay.  What is your best gut instinct

12     about how long it might take to get those others cleared?  I

13     know you don't like to do that.

14             MS. RODRIGUEZ-FEO:  Your Honor, it's really hard to

15     say without having the information in front of me.

16             THE COURT:  Right.

17             MS. RODRIGUEZ-FEO:  It could be longer than 90

18     days --

19             THE COURT:  Okay.

20             MS. RODRIGUEZ-FEO:  -- if we receive information that

21     they have further requirements regarding their background

22     investigations.

23             THE COURT:  So right now we just don't have any idea.

24             MS. RODRIGUEZ-FEO:  Yes, Your Honor.

25             THE COURT:  Okay.  All right.

1          Well, Mr. Chester, if you don't mind stepping back up.

2          Thank you very much, Ms. Rodriguez-Feo.

3                    MS. RODRIGUEZ-FEO:  Yes, Your Honor.

4                    THE COURT:  We got a better idea now.  We got two

5     that looks like they're ready to go pretty quickly.  Would

6     those two be ones you would look to to pull some of the

7     laboring on getting those documents reviewed?

8                    MR. CHESTER:  Yes.

9                    THE COURT:  Okay.  So let's look again at the

10    schedule.  September 15th is that next deadline.  If you have

11    two of your lawyers come online, I guess you would say, by

12    Wednesday of next week, how long will they then need to review

13    those 400 pages plus the 8000 that y'all have had for a little

14    bit of time now?

15                   MR. CHESTER:  Yeah, and we've been reviewing the 8000

16    just so the Court is aware.

17                   THE COURT:  So the 8000 is really not that big of a

18    deal.  It is more the 400.  How long do you think y'all need to

19    review that stuff and get the pretrial motions filed?  Keeping

20    in mind the standard is 14 days from the date of production by

21    the government.

22                   MR. CHESTER:  The review can happen, I think, quickly

23    if it's 400 pages.  The concern I have is they can't discuss

24    with anybody else on our team that doesn't have a clearance

25    what they've seen and what steps should be taken from that.

1          THE COURT:  Right.  And it goes back to my thought

2     of, you know, okay, two lawyers might not be enough.  Three

3     probably is.  Four gets you in the range of satisfying the

4     Constitution and then some.  So how many do we really need to

5     satisfy that right to counsel keeping in mind at the same time

6     we've got to satisfy her right to a speedy trial?

7          MR. CHESTER:  I understand.  What I would say is

8     Ms. McCook is the youngest member of our team, I believe.

9     Mr. Barnard is the most recent member of our team.  Mr. Whitley

10    is the most senior member of our team along with Mr. Bell, of

11    course, who I don't want to take any disrespect.

12         MR. BELL:  Thank you.

13         THE COURT:  I don't know that he took exception to

14    being excluded from that --

15         MR. CHESTER:  No offense.

16         THE COURT:  -- description.

17         MR. CHESTER:  So in a traditional setting, as Your

18    Honor is well aware, a younger lawyer would probably do some of

19    the leg work and then after that leg work would confer with a

20    more senior lawyer of, "Here's what I have seen; --

21         THE COURT:  Right.

22         MR. CHESTER:  -- let's talk about strategy."  So the

23    concern with not having Mr. Whitley read into the case is going

24    to prevent decisions from being made, for example, on what sort

25    of pretrial motions need to be filed, what sort of experts need

1    to be retained, you know.  I put myself a notch below

2    Mr. Whitley.  I can't talk to them as well because I don't have

3    my clearance.  That's the only concern I have.

4        So I want to give you a hard date, but I -- you know, I

5    don't want to say 14 days and I have to come back and say, "I

6    don't have my clearance; they can't talk to me; they're not in

7    a position to make decisions on behalf of Ms. Winner;" and set

8    myself up to fail before Your Honor which is something I do not

9    want to do.

10           THE COURT:  All right.  Well, let's look at it both

11   ways, then.  I guess my first question would be if we just --

12   if we said four lawyers was enough, when would we set the

13   deadline?  If we didn't worry about the other lawyers getting

14   clearances before the pretrial motion deadline, what kind of

15   time do you think would be reasonable for those four lawyers to

16   look through the 400 pages and then decide and file pretrial

17   motions?

18           MR. CHESTER:  Okay.  So let me make sure I understand

19   the Court's question.  So you're talking about the four lawyers

20   that are --

21           THE COURT:  Cleared.

22           MR. CHESTER:  -- that are cleared?

23           THE COURT:  Yeah, if we just went -- and I am going

24   to ask it both ways because I got to consider what to do here.

25           MR. CHESTER:  I understand.

1          THE COURT:  But if we just went with the four lawyers

2    that you got cleared already and said they were going to ride

3    the horse all the way through pretrial motions if no one else

4    gets approved, how much time do you think would be necessary

5    for them to review the 400 pages and then file a pretrial

6    motion?

7          MR. CHESTER:  I think a review of the 400 pages could

8    take place in a week or two.

9          THE COURT:  Okay.

10         MR. CHESTER:  Just reviewing the documents.

11   Decisions about what to file and when to file amongst those

12   lawyers I'm guessing would take, you know, let's say -- let's

13   say a month from that to determine what to do and then begin

14   the process of filing and filing those motions -- researching

15   and filing those motions.

16         THE COURT:  Well, the two weeks doesn't surprise me.

17   The one month to kick around what to do next does.  I mean, you

18   got motion to suppress.  You got motion to dismiss indictment.

19   You know, there are a fair number of motions you can file, but

20   not an infinite variety and number of them; right?  So I would

21   think that it wouldn't take a month to make those decisions.

22         MR. CHESTER:  The only thing I am factoring in there,

23   Judge, is the notion of having to employ experts as well.  For

24   example, I don't have to go into detail on this, Judge, but,

25   again, there are several elements of an Espionage Act case that

1   we are going to require expert help on.  I can just tell you

2   that right now.

3            THE COURT:  But that's trial prep.  That's not

4   pretrial motions; right?

5            MR. CHESTER:  Well, I think, respectfully, Judge, I

6   think that having an expert on our team, whether they be a

7   consulting expert or testifying expert, is going to inform our

8   decisions, on whether there are pretrial motions to file.

9            THE COURT:  I don't understand that.  I mean, there

10  are legal bases for filing pretrial motions.  I don't know why

11  an expert needs to tell you whether you have that basis or not.

12           MR. CHESTER:  Let me see if I can give an example

13  that might make some sense.  So one of the elements of this

14  offense that Ms. Winner has been charged with is whether or not

15  the disclosure of this particular document harmed the national

16  security of the United States.  Having an expert on our team

17  who is versed in what that means and what relative to that

18  document was already out in the public domain in terms of

19  harming the national security is going to inform our strategy

20  on going forward basis.

21           THE COURT:  At trial.  But how does that affect

22  pretrial motions?  You can't file a summary judgment in a

23  criminal case.

24           MR. CHESTER:  I know I can't file a summary judgment

25  in a criminal case, Judge.  I do think that if I wait until a

1   month before trial to engage an expert, the notion of a public

2   domain defense in this case, Judge, is going to be very time

3   consuming.

4           THE COURT:  Right.  But we're not talking about trial

5   right now.  We're talking about pretrial motions.  Why do you

6   need time to consult with an expert before you file pretrial

7   motions?

8           MR. CHESTER:  Well, you've put me on the spot.  I

9   think I would say that if we file vagueness motions as it

10  relates to what the term "national defense information" means,

11  whether harm has to be proven, whether harm has been adequately

12  alleged in the indictment -- I think those are things that our

13  arguments are going to be informed by opinions that we get from

14  experts.

15          THE COURT:  Okay.  All right.  Well, I am going to

16  take that under consideration.  So this two weeks plus one

17  month deadline.  Now let's go the opposite route.  What if we

18  -- if we're talking about getting everybody on board from your

19  law firm before we file pretrial motions, I guess what you

20  would propose in that regard is that we just set this

21  September 15th deadline off the date of the clearance of the

22  remaining three or one key member of that group?

23          MR. CHESTER:  Well, I would suggest that I think

24  either or both of Mr. Whitley or myself need to be -- need to

25  have our clearances and need to be read in so we can

1   participate in those discussions about what pretrial litigation

2   can be filed.

3           THE COURT:  Okay.  So that would be your

4   preference -- you and Mr. Whitley -- and then we would set it

5   then.  Would you need the same two weeks to review and one

6   month to make a decision if -- what we're assuming is that

7   there is going to be a delay of time; right?

8           MR. CHESTER:  Yes.

9           THE COURT:  And y'all are going to be working on the

10  discovery in the meantime.  So once you two get cleared,

11  assuming all of the discovery has already been looked at, how

12  much time would y'all need to confer with everybody and make

13  those decisions?

14          MR. CHESTER:  Mind if I confer with ---

15          THE COURT:  Sure.  Yeah.

16          MR. CHESTER:  Judge, again, I would suggest once

17  Mr. Whitley and I get cleared the review will be ongoing as you

18  mentioned by the folks that have already been cleared.  So that

19  time will have passed.  There won't be any delays as a result

20  of that.  Again, I would say another three to four weeks for us

21  to get in, discuss it, strategize, research, prepare, and file

22  pretrial motions.

23          THE COURT:  Okay.  Well, look, I know this took a

24  while and I kind of pressed you a little bit, but it's very

25  helpful to me the information that you've given me in that

1  regard.

2           MR. CHESTER:  I appreciate it, Judge.  Thank you.

3           THE COURT:  What about the other deadlines?  So let's

4  just say that we've pushed these back.  I know the government

5  response deadline we'll talk with them about, but trial -- once

6  you get pretrial motions filed in the case -- let's just say we

7  push these deadlines back in the manner that you're talking

8  about where we're pushing your pretrial motions deadline back,

9  let's just say, eight weeks for the sake of conversation here

10 today assuming the clearance process is pretty quick for you

11 and Mr. Whitley.  We're looking at the full month of September,

12 the full month of October to complete that process until you

13 get your motions filed by the first of November.  After that,

14 how long are you thinking you would need?  What is a reasonable

15 amount of time from that date until trial?

16          MR. CHESTER:  So the -- and I will give you a date.

17 This is going to be a longer answer than I know you just asked

18 me.

19          THE COURT:  Right.

20          MR. CHESTER:  The two unknowns that I can think of

21 off the top of my head are the expert issues and the CIPA

22 hearings.  I know Ms. Edelstein has more experience than any of

23 us in this courtroom with CIPA -- certainly a lot more than me.

24 My understanding is of both of those issues are that they may

25 take significant amounts of time.  Depending on assuming we

```
 1    pick classified information to use in trial and the government
 2    says we need to redact and substitute language and there's
 3    haggling over that substitute language, that may take some time
 4    and, again, Ms. Edelstein can certainly talk more about that in
 5    her experience than me.
 6         Again, the expert thing is going to take us some time.
 7    So, again, I would like to get to a point where, you know, I
 8    can see the classified material before I commit myself.   If
 9    Your Honor wants a date today, we can set a date today with the
10    understanding that, again, with extraordinary circumstances
11    changing we can come back and revisit it.
12         So if you want a date, I mean, I guess I'd like to hear
13    from Ms. Edelstein and her experience with these CIPA hearings
14    as to how long they generally take and how that might impact
15    the schedule after that pretrial motion deadline.
16              THE COURT:  Because, I mean, you look at expert prep
17    which is the main thing you're talking about you're concerned
18    about -- I would think with most of these issues you're already
19    kind of formulating strategy.  You already talked about the
20    extent to which it's available in the public, expert testimony
21    perhaps about damage to the national interest and the like.
22    So, I mean, you've already gotten kind of the core of that that
23    you need probably to start identifying the subject matters on
24    which you need experts.  That processing to me, I would think,
25    could go ahead and start, particularly since you've already
```

 1   gotten the 8000 of the 8400-page discovery, and so I don't know

 2   that once you get to the criminal pretrial motions deadline

 3   there would be a lot left for you to do in that regard.

 4        How much -- how much time do you think -- assuming that we

 5   can roll right through the CIPA part of this, I am going to

 6   work as hard on that as possible.

 7             MR. CHESTER:  So will we.

 8             THE COURT:  I don't ask any more of the lawyers than

 9   I ask out of myself, and so it took me like five days, I think,

10   to turn around the last order we had to write in this case, but

11   it wasn't because I was on vacation.  I was.  It was because I

12   had some people I had to clear some language through to make

13   sure that CISO was not offended by any of the things that we

14   had proposed in there.  So that back and forth took a little

15   longer.  I wanted to enter it the next day after the motion was

16   ripe for my review and I want everybody to treat it with that

17   sense of urgency.

18        So with those things in mind and the thought that, you

19   know, you have a couple of experts you might want to retain

20   that you can probably go ahead and start talking to, tell me

21   when a reasonable time to try it would be.

22             MR. CHESTER:  I would say four months after those

23   deadlines we previously discussed.

24             THE COURT:  Okay.

25             MR. CHESTER:  If you want a date, again, with the

1    ability to come back if circumstances change, but if you want a

2    date, that's what I would say -- I would suggest.

3            THE COURT:  Okay.  So that would be -- instead of

4    November 1st for criminal pretrial motions deadline, just

5    generally speaking; so you talking about November, December,

6    January, February, first of March?

7            MR. CHESTER:  Somewhere in that range.  Yes, Your

8    Honor.

9            THE COURT:  Okay.  All right.  Is there anything else

10   that you wanted to talk with me about in terms of the schedule?

11           MR. CHESTER:  Nothing.  Thank you, Your Honor.  Thank

12   you for your time.

13           THE COURT:  I appreciate it.  All right.

14      Ms. Edelstein, we've talked a lot without involving you

15   much.  Give me your thoughts on these topics.

16           MS. EDELSTEIN:  Thank you, Your Honor.  So the way

17   that CIPA works -- and I know that we've tried to present this

18   information to you -- is that it's an iterative process.  So

19   from the government's perspective the next thing that needs to

20   happen is that a Section Five needs to be filed.  As Your Honor

21   knows, the government complied with its Friday deadline and at

22   this point the next thing that really needs to happen is the

23   Section Five deadline.  I am happy to speak about the things

24   that have to occur after that, but it's really hard to project

25   out the case without knowing when the Section Five will be

1   filed and what it will look like.

2           THE COURT:  Well, I assume, Mr. Chester, when we

3   talked about criminal pretrial motions the same thoughts would

4   probably be expressed by you in terms of the deadline for that

5   Section Five CIPA motion; right?

6           MR. CHESTER:  The only caveat to that being assuming

7   that 400 pages is the entirety of the universe we're ever going

8   to get --

9           THE COURT:  Right.

10          MR. CHESTER:  -- classified material is relevant, I

11  think that's fair.

12          THE COURT:  Okay.

13          MR. CHESTER:  The only caveat is if we think there

14  should be additional things and we ask the government and the

15  government says no, we have to come before Your Honor on a

16  discovery dispute, that might change that deadline.

17          THE COURT:  Okay.

18          MR. CHESTER:  But if that 400 is it, then, you know,

19  I think that would be fair.

20          THE COURT:  Okay.  All right.  Well, I want y'all to

21  understand, too, that when it comes to discovery matters I'm

22  available at your discretion.  If there is a discovery matter

23  that pops up on a Tuesday morning and you want to talk to me

24  about it, I'll make time on Tuesday to get on the phone with

25  you guys and talk about whatever the problem is.  We do it in

1   civil cases a lot.  There aren't as many discovery issues in

2   criminal cases because the open file discovery policy that the

3   government follows in a case.

4        I'm not telling you that's an assurance that the

5   government has given you everything you need for the case, but

6   that's why we don't have as many discovery issues in criminal

7   cases.  But if you run into any kind of disagreement that you

8   want some direction from me in terms of what should happen

9   next, I don't want to, you know, waste six weeks on motions and

10  responses and replies.  My preference is to get you guys here

11  very quickly and talk about it, and, typically, what I find

12  with discovery is that we're able to get it resolved almost

13  immediately when you do it that way.  So I wanted to make sure

14  we keep that in mind.

15       Ms. Edelstein, did you have any other -- so if they filed

16  their Section Five motion at the same time they filed their

17  other pretrial motions somewhere in the end of October,

18  beginning of November -- if we went with that deadline, then do

19  you have any thoughts on when after that we need to set the

20  next deadline which is for the government response to the

21  defense motion and Section Five CIPA notice?

22            MS. EDELSTEIN:  Sure.  If we're talking about the

23  initial response to the notice in which the government will

24  opine on whether the defense's notice under CIPA Section Five

25  is adequate in and of itself, we can do that pretty quickly.  I

1    think that we can probably respond to that in, I'd say, two

2    weeks.

3              THE COURT:  Okay.

4              MS. EDELSTEIN:  But in terms of moving on to the

5    Section Six stage it's going to require very extensive

6    coordination with other government agencies which is in

7    addition to, you know, the coming up with the arguments and the

8    briefing.  That's something the government has to do, but the

9    government also has this extra burden of coordination.

10             THE COURT:  Right.

11             MS. EDELSTEIN:  And that could take a considerable

12   amount of time.

13             THE COURT:  Okay.  So when do you think -- what's the

14   reasonable timeframe given the 400 pages that we're dealing

15   with here and maybe some additional content that the defense

16   notifies us that they want to present at trial?  What kind of

17   timeline are you thinking would be reasonable for the Section

18   Six hearing?

19             MS. EDELSTEIN:  Assuming that no other classified

20   discovery is turned over, I think that probably within, I'd

21   say, maybe six weeks we could get ready, but I'm also -- I'm

22   also saying that off the cuff without having coordinated with

23   the other members who are on the phone and also with the

24   relevant government agencies.

25             THE COURT:  Okay.  Six weeks and that would be from

1    the date that the government files the Section Five notice or

2    from the date that you file your response brief?

3         MS. EDELSTEIN:  You're asking whether that's the date

4    from the defense filing their Section Five notice?

5         THE COURT:  Right.  Or from the date of your response

6    to that notice.

7         MS. EDELSTEIN:  So I would say it would be

8    approximately six weeks from whenever we have an adequate

9    Section Five notice.  So if the defense were to file their

10   Section Five notice and the government came back and said,

11   "Okay.  We understand what classified information the defense

12   is trying to notice", then it would -- then that would be six

13   weeks, but say that the government comes back two weeks and

14   says, "This notice doesn't have enough specificity in it", for

15   example, and the defense has to file a new notice, then

16   whenever we have that properly-noticed Section Five, then it

17   would be six weeks from that date.

18        THE COURT:  Okay.

19        MS. EDELSTEIN:  And, again, the six weeks is an

20   estimate.

21        THE COURT:  Okay.  And what if I kind of pressed you

22   the same way I did Mr. Chester and said I am working on this

23   case at midnight if I need to because I want to get this thing

24   tried as quickly as possible; I am available any time I need to

25   be for this case to get it rolling and get it where it needs to

```
 1   be as quickly as possible -- how much time could we knock off

 2   that six weeks?

 3             MS. EDELSTEIN:  Judge, I can assure you that is the

 4   way the government is operating.  The CIPA motion that was

 5   filed on Friday is -- in cases I've been involved with, I

 6   cannot even stress to you how short to you a timeframe it was

 7   for the government to get together with the motion.  It's not

 8   only the prosecutors but there are other agency employees who

 9   are demonstrating that ethic that we're asking for.

10             THE COURT:  Okay.  So the six weeks, is that with

11   that in mind -- that type of effort in mind?

12             MS. EDELSTEIN:  Yes, sir, Your Honor.  The

13   coordination that it requires is extremely extensive.

14             THE COURT:  Okay.  All right.  Is there anything

15   further regarding the schedule of deadline?  What about trial?

16   How long after we have that Section Five hearing before trial?

17             MS. EDELSTEIN:  You know, it's not knowing how the

18   Five and Six are going to proceed.  I don't know that I could

19   in good faith tell you a reasonable estimate for a trial in

20   this case.

21             THE COURT:  Well, to me trial prep starts now; right?

22             MS. EDELSTEIN:  Absolutely, Your Honor.

23             THE COURT:  And so I don't know this process of going

24   through the Section Five hearing and everything should really

25   sidetrack that.  To me we ought to be moving on both of those
```

 1  things at the same time.

 2          MS. EDELSTEIN:  And we fully intend to, Your Honor.

 3          THE COURT:  And so give me what you think is a

 4  reasonable trial date if all of this occurs in a fluid motion

 5  without any extraordinary developments.

 6          MS. EDELSTEIN:  So if -- let's just say for

 7  argument's sake we have an adequate Section Five notice in

 8  November.  Then I think that perhaps March this case could go

 9  to trial.

10          THE COURT:  Okay.  Well, when you say "perhaps", I

11  want you to be honest with me.  Tell me what you think is

12  reasonable.

13          MS. EDELSTEIN:  Your Honor, this is an unusual CIPA

14  case.  CIPA cases are often drawn out for years as the defense

15  has indicated.

16          THE COURT:  Right.

17          MS. EDELSTEIN:  I am familiar with a CIPA case in

18  which a CIPA Section Four motion wasn't filed until two years

19  in the process.  However, as Your Honor has indicated in terms

20  within CIPA cases this case is also unusual because we do have

21  a pretty straight forward case in terms of the conduct, single

22  defendant, a number of factors that you recognized, and,

23  accordingly, we think discovery should be cabined in this case

24  which will move along these deadlines pretty quickly.

25          THE COURT:  Okay.

1              MS. EDELSTEIN:  So working along the assumption that

2    discovery is cabined as the government believes that it should

3    be in this case, I do think we could bring this case to trial.

4              THE COURT:  Okay.  All right.  Is there anything else

5    you'd like to say today in any regard whether in respect to

6    these scheduling issues or any other topic?

7              MS. EDELSTEIN:  I will quickly point out just because

8    I know we're not here to discuss elements of defense, but the

9    defense did say that the government has to prove damage that

10   occurred from the defendant's disclosure and that is not an

11   element of defense.  So I just wanted to make sure that's clear

12   for the record.

13             THE COURT:  All right.  Thank you much.

14        Mr. Chester, Mr. Bell, Mr. Whitley, anything further that

15   we need to talk about in this case today from your perspective?

16             MR. BELL:  No, Your Honor.

17             THE COURT:  Okay.  We do need to move into a closed

18   session where the only people who can be present in the room

19   are those who have security clearances because I want to make

20   sure that Ms. Rodriguez-Feo and her office has a chance to go

21   through some of I think the precautions we need to observe in

22   this case to make sure we're all on the same page about that

23   before we leave today, and I think that means that the people

24   participating by phone will not be participating anymore

25   because that's not a secure line.

1          Is that right, Ms. Rodriguez-Feo?

2               MS. RODRIGUEZ-FEO:  Yes, Your Honor.

3               THE COURT:  Okay.  So Mrs. Solari, are you there?

4               MRS. SOLARI:  Yes, sir, Your Honor.

5               THE COURT:  And, Mr. Aaron, are you there?

6               MR. AARON:  Yes, Your Honor.

7               THE COURT:  I am going to have to ask that you sign

8    off.  Before I do that, is there anything that you two would

9    like to add to the discussion we've already had?

10              MRS. SOLARI:  Nothing from me, sir.

11         David?

12              MR. AARON:  Nothing from me, Your Honor.

13              THE COURT:  Okay.  And before we hang up,

14   Mrs. Solari, there was a phone message I left for you last week

15   about a 2703 request that you filed with the court.  Did you

16   get that message?

17              MRS. SOLARI:  Yes, sir.  I received a forwarded

18   message from Nancy Greenwood from one of your law clerks about

19   a 2703.  So I responded back to Nancy.  She asked me could --

20   did someone call me directly?  Because if they did, I am very

21   sorry, Your Honor.  I missed that.

22              THE COURT:  Yeah, I left you a voice message sometime

23   last week.

24              MRS. SOLARI:  Oh, I'm sorry.  I didn't purposely

25   ignore you.  I just wasn't aware of it.  I apologize.  Would

1    you like me to contact you later on in the day to deal with

2    that?

3              THE COURT:  Yes.

4              MRS. SOLARI:  Okay, sir.  I'll do that.

5              THE COURT:  Okay.  So nothing further from either one

6    of you?

7              MRS. SOLARI:  No, sir.

8              THE COURT:  All right.  We'll have you sign off at

9    this time.  Thank you very much.

10             MRS. SOLARI:  Thank you, Your Honor.

11             MR. AARON:  Thank you.

12             THE COURT:  All right.  We're going to take a short

13   recess so that we can set up the room in the manner that we

14   need to, and, certainly, if you don't have a security clearance

15   and you're not involved in this case, I'm sorry to do this, but

16   we're going to have to ask you to leave the room at this time.

17        (The hearing is concluded.)

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5         I, Lisa H. Davenport, Federal Official Court Reporter, in

6    and for the United States District Court for the Southern

7    District of Georgia, do hereby certify that pursuant to Section

8    753, Title 28, United States Code that the foregoing is a true

9    and correct transcript to the best of my ability of the

10   digitally-recorded proceedings held in the above-entitled

11   matter and that the transcript page format is in conformance

12   with the regulations of the Judicial Conference of the United

13   States.

14

15                      _____

16                      Lisa H. Davenport, RPR, FCRR
                        Federal Official Court Reporter
17

18

19

20

21

22

23

24

25