IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA


UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )
                               )
         vs.                   )      1:17CR34
                               )
REALITY LEIGH WINNER,          )
                               )
             Defendant.        )
_____)



ARRAIGNMENT AND MOTIONS HEARING
BEFORE THE HONORABLE BRIAN K. EPPS
THURSDAY, SEPTEMBER 14, 2017; 2:02 P.M.
AUGUSTA, GEORGIA



FOR THE GOVERNMENT:


     Jennifer G. Solari, Esquire
     U.S. Attorney's Office
     Post Office Box 8970
     Savannah, Georgia 31412
     (912)201-2561


     David C. Aaron, Esquire
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530
     (202)307-5190

**FOR THE DEFENDANT:**

      John C. Bell, Jr., Esquire
      Titus T. Nichols, Esquire
      Bell & Brigham
      457 Greene Street
      Augusta, Georgia 30901
      (706)722-2014


      Joe D. Whitley, Esquire
      Brett A. Switzer, Esquire
      Baker, Donelson, Bearman, Caldwell, and Berkowitz
      3414 Peachtree Road, NE, Suite 1600
      Atlanta, Georgia 30326
      (404)223-2209

**OFFICIAL COURT REPORTER:**

      Lisa H. Davenport, RPR, FCRR
      Post Office Box 5485
      Aiken, South Carolina 29804
      (706)823-6468

```
1                    (Call to Order at 2:02 p.m.)

2            THE CLERK:  The Court calls case number 1:17CR34.

3    The United States of America v Reality Leigh Winner.  Jennifer

4    Solari and David Aaron for the government.  Brett Switzer, Joe

5    Whitley, John Bell, and Titus Nichols for the defendant.  Here

6    for an arraignment on Superseding Indictment and motions

7    hearing.

8            THE COURT:  Good afternoon, Everybody.

9         (Simultaneous group response)

10           THE COURT:  Ready for the government?

11           MRS. SOLARI:  Yes, Your Honor.

12           THE COURT:  And the defense?

13           MR. NICHOLS:  Yes, sir.

14           THE COURT:  All right.  Mr. Nichols, I always like

15   when we have a superceding indictment to take it up in the same

16   manner that I would in an initial appearance on an indictment

17   because I want to make absolutely sure that the defendant

18   understands all the rights that we originally explained apply

19   certainly in this context of a superceding document, and first

20   I'll say to you, Ms. Winner, that a superceding indictment

21   replaces in its entirety the original indictment issued in the

22   case.  Always the first thing I do when I have an initial

23   appearance is talk about competency.

24      I know I've already made a finding of competency here,

25   but, Mr. Nichols, you've had an opportunity to spend a lot more
```

1   time with your client since I made that initial finding.  Do

2   you have any reason to doubt your initial representation in

3   this matter that this defendant is competent?

4            MR. NICHOLS:  No reason to doubt, Your Honor.

5            THE COURT:  Okay.  All right.  Moving on, I want to

6   make sure you understand, Ms. Winner, that as we move through

7   this process with this Superceding Indictment that the right to

8   counsel I explained to you at your initial appearance certainly

9   applies in this context just as it did at the outset.  Do you

10  understand that?

11           THE DEFENDANT:  Yes, Your Honor.  I understand.

12           THE COURT:  Okay.  That means that you have the right

13  to be represented by an attorney at every stage of this case

14  both in and out of court and including any questioning by law

15  enforcement.  You have the right to consult with an attorney

16  before questioning may occur at any time.  You may hire your

17  own attorney if you're financially able to do so, and, of

18  course, if you cannot afford to hire your own attorney the

19  court will appoint one at no cost to you.  Do you understand

20  that right to counsel I just explained?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  And, certainly, in this matter in the

23  past you've retained counsel and you plan on doing that in the

24  future instead of seeking court-appointed counsel; is that

25  correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  Moving on, I also want to explain

3    to you and reiterate that your right to remain silent still

4    fully applies in this case.  You have an absolute

5    constitutional right to remain silent; that is, no one

6    associated with the government or any law enforcement agency

7    can force or compel you to make any statement regarding any

8    subject whatsoever including, most importantly, the allegations

9    in the Superceding Indictment that we're about to review, but

10   it's also important for you to realize that your right to

11   remain silent is not restricted to the topics and allegations

12   in the Superseding Indictment.

13        Instead, your right to remain silent includes any topic

14   you can imagine.  Any statement made by you or any answers that

15   you give to any questions asked of you can be used as evidence

16   against you, not only in connection with this case that we're

17   here for today, but also any other case that's currently

18   pending against you or may be brought against you in the future

19   in any jurisdiction.  The bottom line is you're not required to

20   make any statement.  If you have made a statement, you need not

21   say any more, and if you start to make a statement, you may

22   stop at any time.  Do you understand your right to remain

23   silent?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Mr. Nichols, have you received a copy of

1   the Superseding Indictment and Penalty Certification and had a

2   chance to review those documents with your client?

3              MR. NICHOLS:  Yes, I have.

4              THE COURT:  Mrs. Solari, for the record could you

5   please summarize those documents?

6              MRS. SOLARI:  Yes, sir, Your Honor.  The Indictment

7   begins with general allegations setting forth the defendant's

8   history of employment as well as her security clearance.  It

9   goes on to describe various levels of classified information as

10  well as how one would access and lawfully handle classified

11  information.  Further, the Indictment specifies the defendant's

12  access to national defense and classified information as well

13  as her training regarding the proper access and control of that

14  information.  Further, on page 3 the Indictment goes on to

15  allege that the defendant wrongfully removed, retained, and

16  transmitted national defense information on or about the 9th of

17  May 2017.

18     On page 5 of the Indictment appears the substantive count,

19  Count One of the Indictment, incorporating by reference the

20  preceding paragraphs and alleging that on or about May 9, 2017,

21  in Richmond County, in the Southern District of Georgia, the

22  defendant, Reality Leigh Winner, having unauthorized possession

23  of, access to, and control over a document containing

24  information relating to the national defense willfully retained

25  the document and failed to deliver it to the officer or

1    employee of the United States entitled to receive it and

2    willfully transmitted the same to a person not entitled to

3    receive it; to wit, Winner retained the intelligence reporting

4    and transmitted it to the news outlet, all in violation of

5    18 U.S.C. § 793(e).

6         Your Honor, to be clear I want to point out what differs

7    in the Superceding Indictment from the original Indictment.  In

8    the original Indictment in paragraph 13 on page 4 I believe the

9    original read "approximately two days later" meaning

10   approximately two days after May 9, 2017.  That language has

11   now been replaced with "on or about May 9, 2017".  The only

12   other change, Your Honor, appears in Count One on page 5.

13   Instead of alleging a time period -- a range of time -- we have

14   alleged a more precise date of the offense -- that being on or

15   about May 9, 2017.  Those are the only changes in the

16   Superceding Indictment.

17             THE COURT:  Okay.

18             MRS. SOLARI:  Would Your Honor like me to review the

19   penalty as well?

20             THE COURT:  Please.

21             MRS. SOLARI:  Your Honor, should the defendant be

22   convicted of the violation of 18 U.S.C. 793(e) alleged in the

23   Superseding Indictment, she faces a maximum penalty of

24   imprisonment for not more than 10 years, a fine of up to

25   $250,000 or both, not more than three years supervised release,

1    and a mandatory $100 special assessment.

2                 THE COURT:  Thank you, Mrs. Solari.

3                 MRS. SOLARI:  Yes, Your Honor.

4                 THE COURT:  Ms. Winner, is it fair to say that you

5    understand the nature of this charge and the maximum penalties

6    associated with the charge?

7                 THE DEFENDANT:  Yes, Your Honor.

8                 THE COURT:  You have a right to a formal reading of

9    the Superseding Indictment.  It is simply where I would, in

10   addition to this in-court summary by the prosecutor, read every

11   line of the Superseding Indictment to you here.  Do you waive

12   formal reading of the Indictment?

13                THE DEFENDANT:  Yes, Your Honor.

14                THE COURT:  How do you plead to the charge?

15                THE DEFENDANT:  Not guilty, Your Honor.

16                THE COURT:  Let the record reflect that Ms. Winner

17   has received a copy of the Superseding Indictment and Penalty

18   Certification, waived formal reading of the Superseding

19   Indictment, and entered a plea of not guilty to the charge

20   contained therein.

21       I understand, of course, that here the government has

22   already provided some discovery in the case pursuant to its

23   normal discovery policy.  The changes in this Indictment --

24   does it change the scope of discovery and require the

25   government to produce anything in addition to what it has in

```
 1    the case so far?

 2              MRS. SOLARI:  It does not, Your Honor, and we are in

 3    receipt of a letter requesting additional discovery by the

 4    defendant.  We are working diligently to respond to that

 5    letter, and I am told Ms. Edelstein has taken lead on that

 6    along with Mr. Aaron.  I am told that in approximately one week

 7    we should have a response to the defendant's discovery request.

 8              THE COURT:  Okay.  Will you reply by a letter to

 9    that?

10              MRS. SOLARI:  Yes, Your Honor.  That's our intent.

11              THE COURT:  Okay.  And is there a plan for some kind

12    of follow-up conference after that to the extent there is any

13    continuing disagreement?

14              MRS. SOLARI:  If Your Honor would like to have one.

15    We didn't have a plan yet.  We hadn't yet discussed it with

16    defense counsel since we were in the process of seeking certain

17    information.

18              THE COURT:  Okay.  Well, certainly, in the process of

19    formulating that letter maybe if you could start thinking ahead

20    to when you could get together if you anticipate not resolving

21    the issue -- when in the near future you can get together with

22    defense counsel to discuss the remaining, if any, disputes.

23              MRS. SOLARI:  We will do that, Your Honor.

24              THE COURT:  Okay.  I believe that takes care of all

25    we need to discuss in terms of the Superceding Indictment.
```

1          Mr. Nichols, is there anything further from your

2    perspective we need to discuss with respect to the Superceding

3    Indictment?

4               MR. NICHOLS:   Nothing further with regard to the

5    Indictment, Your Honor.

6               THE COURT:   Mrs. Solari?

7               MRS. SOLARI:   Your Honor, Mr. Aaron did remind me

8    that one of the issues we'll have with regard to meeting any

9    defense discovery request is simply the issue of clearances

10   that remain.   So it may be a while before we can discuss this

11   with the entire defense team, but, again, we will meet with

12   them and see how we can go about all getting on the same page

13   with that and notify the court if we need a follow-up

14   conference.

15              THE COURT:   Okay.

16              MRS. SOLARI:   Nothing else with regard to the

17   Superceding Indictment.

18              THE COURT:   All right.   We'll move on to a discussion

19   of the pending motions.

20          Mr. Nichols, you and your client may be seated.

21          Before I open the floor for comments by the lawyers with

22   respect to the three motions that I noticed for a hearing

23   today, I did want to go through my initial thoughts.   I've had

24   an opportunity to read those briefs and the cases cited in

25   those briefs and give some thought to my initial reaction and

1    so I think it's helpful maybe for me to start with that and

2    then we can turn to the lawyers.  I want -- certainly, I am not

3    trying to stifle any discussion.  I think, though, it might be

4    more efficient if I start with my preliminary conclusions.

5         First of all, as to the government request to exclude time

6    from speedy trial, I don't think there's been any opposition to

7    that.  I didn't see anything in it that in my mind was

8    objectionable.  I think it's probably a good idea to enter an

9    order in the manner that the government requested.  So I am

10   inclined to grant that motion and enter the order.

11        In terms of the defense objections to the ex-parte

12   Section 4 discovery motion, I have looked at this very

13   carefully and looking at -- I've read every case that the

14   defense cited in their brief and it appears to me the Eleventh

15   Circuit has already weighed in somewhat on this and said that

16   allowing defense counsel to participate in the Section 4

17   process itself would defeat the very purpose of Section 4, and

18   then there's this issue of, well, does that change any when you

19   have defense counsel that has a security clearance?

20        I looked very carefully at that and, certainly, some

21   courts have said that at least it opens the door slightly for

22   participation by defense counsel, but something I found pretty

23   persuasive was the Sixth Circuit's holding in that regard in a

24   case called *U.S. versus Amawi*, 695 F.3d 457, where the court

25   said that nothing in CIPA contemplates the Section 4 process

1   changing from an ex-parte one to one where defense counsel

2   participates merely because defense counsel has a security

3   clearance going back to the thought that this whole purpose of

4   Section 4 is to allow the government in a highly-secure,

5   one-on-one setting with the Court to present these things and

6   ask that they not be disclosed to the defendant and her

7   counsel.

8        So those are my preliminary conclusions in that regard.  I

9   do think, though, that it makes sense to give the defendant an

10  opportunity to file an ex-parte, in-camera submission that

11  describes the defense.  That way it gives me an opportunity to

12  really understand it and have a more knowledgeable approach to

13  the Section 4 motion filed by the government.

14       Moving on, we also have the Motion to Modify the

15  Scheduling Order presented by the government, and in my

16  comparison of the initial kind of skeletal scheduling order I

17  had put in place and the more detailed one offered by the

18  government it appears to me that the government wants to add a

19  deadline for defense reply briefs in support of their pretrial

20  motions; also, wants to include an opportunity for the

21  government to challenge the sufficiency of the Section 5 notice

22  meaning objections on the grounds that it's not sufficient; a

23  response brief and then a reply brief on that issue before we

24  get into the Section 6 process itself; and then, of course,

25  full briefing on the Section 6 issue before the hearing occurs.

1    I am inclined at this point to, certainly, add the

2    deadlines for the defense to reply to the pretrial motions,

3    allow full briefing on the Section 6 determination in advance

4    of the hearing.  I think that makes total sense.  The part I am

5    caught up on, though, and think it may not be necessary and

6    just unnecessarily prolongs the case is briefing the

7    sufficiency of the Section 5 notice itself.

8    Section 5 talks about the defense filing a brief

9    description of the issues and I think that to the extent the

10   government has a concern with the sufficiency of the notice

11   it's probably more efficiently addressed in the Section 5

12   briefing itself.  You're going to have a chance to file the

13   government's original motion in support of the Section 6

14   determination, plus a reply brief and then on top of that have

15   a hearing on the Section 6 issue.  So to me that gives ample

16   opportunity to explore the sufficiency of the notice in advance

17   and then at the hearing itself.  So I think that that may be

18   the more efficient way to proceed.

19   Now there is also this argument by the defense that the

20   CIPA process should be put on hold, essentially, because you

21   have this request for supplemental production so that we start

22   the CIPA process once all the productions have occurred and we

23   have all the information out there and what we're dealing with.

24   There is some efficiency probably to be gained in that, but I

25   prefer, as you might not be surprised, to have immediate

1  progress in the case over any kind of efficiencies we might

2  gain from delaying it, and, certainly, there may be some

3  inefficiencies, but at the same time I'm hoping that as we

4  start the process with respect to the initial production that

5  it'll kind of pave the way, hopefully, and make it easier to

6  deal with the remaining issues that might be presented by the

7  supplemental production.

8       So those are my initial thoughts on the motions and at

9  this time I'll turn to the defense to respond and then the

10  government.

11       MR. BELL:  Your Honor, I was going to do the

12  scheduling order and my eminent co-counsel, Mr. Whitley, deal

13  with the Section 4 things.  So we're both, I think, quite

14  familiar with all of it.

15       I'm not sure exactly what's left for me to address on the

16  scheduling order.  This is, obviously, a purely discretionary

17  thing.  I don't think there could be error.  We appreciate the

18  equalizing the briefing time.  I think putting all of -- you

19  know, any objections to our notice, put that in the main motion

20  rather than have a separate briefing section on that.

21       The one thing I would say about the CIPA process is we can

22  foresee a situation where, you know, with staged discovery

23  production the documents that may seem real important to us

24  might seem less important when we get other documents.  We do

25  contemplate a follow-up so that at least one additional request

1   for documents to the government.  We've been working on that

2   and dealing with those issues ever mindful of the, you know,

3   restrictions that we discussed on the first request, and to a

4   large extent we are very much in the hands of -- that schedule

5   will be in the hands of the government.

6       If in a week from now we get -- the government produces

7   everything we've requested so far, we're here.  If the

8   government takes a different view and, of course, they -- I

9   can't anticipate what that could be, but there could be

10  discovery hearings and such and perhaps briefings on those

11  issues that could at least for these other documents not yet

12  produced delay the CIPA thing.

13      In saying that I would just say if the Court wants to

14  enter what the Court wants to do right now in accord with what

15  you just announced, we would just have the caveat of let's

16  perhaps take a second look if it might look better otherwise

17  once we get more into the subsequent production.

18              THE COURT:  Okay.  Well, and, you know, certainly,

19  when we talk about supplemental production, supplemental

20  discovery requests, it could gum up the works down the road.  I

21  do think it would be highly inefficient most likely to have a

22  full blown Section 6 hearing on the initial production when

23  we're not finished with --

24              MR. BELL:  Uh-huh.

25              THE COURT:  -- the supplemental production, for

1  example.  So if we get that far into it, we're probably going

2  to want to get both discovery -- the initial discovery --

3          MR. BELL:  Uh-huh.

4          THE COURT:  -- and any supplemental discovery and any

5  issues with that lined up to be addressed at the same time in

6  that final Section 6 briefing and hearing, but I'm hoping we

7  can make progress on all fronts --

8          MR. BELL:  Uh-huh.

9          THE COURT:  -- right now without having to wait on

10  that supplemental discovery issues to take place.  I can at

11  least start looking at what the government has given me already

12  in the Section 4 --

13          MR. BELL:  Uh-huh.

14          THE COURT:  -- and to the extent you guys get a

15  supplemental production and you're not happy and you want to

16  file a motion to compel, we can go ahead and take that up as

17  quickly as possible -- that kind of thing.  I think right now I

18  am hoping we can press on all fronts --

19          MR. BELL:  Uh-huh.

20          THE COURT:  -- but then at some point I hope to

21  consolidate before we get to the Section 6 process itself.

22          MR. BELL:  Okay.  It just -- we just -- the Court

23  does normally have a very open mind.  We're not asking for

24  delay.  We want to be as efficient as possible, but in this

25  case -- and, of course, we're not making a proffer, but there

1    are two issues that are of over-arching importance that the

2    Supreme Court has -- going back to 1940 has under the Espionage

3    Act -- we're not being charged with release of confidential

4    information, per se.

5         The Espionage Act passed in the middle of World War I has

6    been narrowed by the Supreme Court to be military secrets of

7    the Army and Navy and a movement of troops and ships and stuff

8    like that, and the discovery of documents of how -- what's

9    here -- and I am trying not to deal with any of the specific

10   facts since we have been allowed to view documents, but what

11   here -- how this would relate to movements of the Army and

12   Navy, the national defense in time of war, frankly, puzzles me,

13   and we can see considerable discovery that could rest -- relate

14   to that that does not have anything specifically to do with

15   what they allege my client did or did not do, and, likewise, in

16   that decision, 1945, by Judge Learned Hand remains the seminal

17   case on this point and that involved a real German spy, but he

18   was collecting things that any American could collect --

19   matters in the public domain.

20        He was being paid by the government of Germany during

21   World War II to take pictures of defense plants, of -- you

22   know, go by the plant outside and take it, see how many trucks

23   there are, how many tanks, and how many things like that --

24   convicted of the espionage.  He was engaged in intentional

25   espionage, being paid to do it, but because all of that

1   information was in the public domain -- something that any, you

2   know, honorable citizen could drive by outside of the plant and

3   take a picture or whatever like that -- Judge Hand said, "It's

4   not a crime."  And in this case that is likewise could involve

5   a lot of discovery -- again, far beyond the comings and goings

6   of our client.  I'm saying that just to alert the Court.

7              THE COURT:  Right.  Well, and that seems to be very

8   much a fundamental disagreement between counsel for both sides

9   in terms of what the true elements of the offense are.

10             MR. BELL:  I agree.

11             THE COURT:  And it sounds like, I mean, first of all,

12   we got some very bright lawyers on both sides of this.

13             MR. BELL:  And you got me.

14             THE COURT:  Typically -- typically, the elements of

15   the offense are pretty easy to identify.  I mean, it doesn't

16   take a lot of research and they're pretty evident.  So to me I

17   am hopeful that the seasoned and bright lawyers we have in this

18   room could sit down and say, "Look, we've both done our

19   research.  Let's compare notes.  Somebody is wrong here.  There

20   are specific concrete elements to this offense.  Let's talk

21   about it and see who is wrong and who is right."  But,

22   certainly, if you get loggerheads about that and that's a

23   dispute, then that's something we're going to have to take up

24   in some context here probably sooner than later.  I know that's

25   been rolling --

```
 1            MR. BELL:  And that could be very ---
 2            THE COURT:  -- around for a while.
 3            MR. BELL:  Excuse me.  I didn't mean to interrupt
 4   you.  That could be very helpful perhaps to all of all of us
 5   and it'll probably be framed in terms of discovery disputes.
 6            THE COURT:  Right.  That's what I would guess a
 7   motion to compel and, you know, if you've got that issue
 8   lingering and it's, you know, all of the lawyers today can
 9   agree that that's really a big hang-up to deciding what ought
10   to be produced -- what else ought to be produced in the case --
11   then maybe we just need to go ahead and tee that up and get a
12   ruling on it as quickly as possible as one potential way to
13   address this --
14            MR. BELL:  Uh-huh.
15            THE COURT:  -- but it sounds like you probably need
16   to wait until Mr. Aaron provides you with that letter and y'all
17   have a follow-up meeting about it --
18            MR. BELL:  Uh-huh.
19            THE COURT:  -- before we can reach a conclusion as to
20   whether a motion needs to be filed.
21        Is there any benefit maybe in the lawyers getting together
22   today and just having a discussion about it while you're here?
23            MR. BELL:  We're always glad to meet with them.
24   We're here.
25            MR. WHITLEY:  Yes, sir.
```

1            MR. BELL:  We're fine.  And I was excited about that

2    statement they hoped to have at least a written response on the

3    discovery as quickly as they suggested.

4            THE COURT:  Okay.  You know, as we go through this, I

5    do hope that there is some collaboration.  I think it certainly

6    is going to save us some time and maybe some needless labor.

7    An example of that -- a good one -- would be the Section 5

8    notice.  One way to avoid protracted litigation about

9    sufficiency of it is to submit the notice to the government

10   before you submit it to the court.  Let them tell you what they

11   think in terms of whether it's sufficient or not.  That way you

12   can avoid the headache of having to brief the issue and get a

13   court ruling on it.  Let's just go ahead and let them give some

14   feedback on it before you file it with the court.

15           MR. BELL:  Uh-huh.

16           THE COURT:  I think we need to be thinking outside of

17   the box --

18           MR. BELL:  Uh-huh.

19           THE COURT:  -- and erring on the side of

20   collaboration rather than not.

21       Another good example of that is a scheduling order.  I

22   think we're finally in a position to get a detailed scheduling

23   order entered in the case, but I think a lot of foresight and

24   collaboration at the outset probably resulted in a lot better

25   and more refined scheduling order from the beginning.  So I

1   just offer that as insight as to some ways I think we can make

2   some strides here.

3       Is there anything further that you want to say with

4   respect to the motion you're addressing, Mr. Bell?

5           MR. BELL:  Nothing further.  I think we've covered

6   it.  I would like to turn the podium to Mr. Whitley if I might.

7           THE COURT:  All right.

8       Good afternoon, Mr. Whitley.

9           MR. WHITLEY:  Good afternoon, Your Honor.  It is a

10  pleasure to be here in your courtroom.  Thank you for the

11  courtesy of this hearing today.  I wanted to introduce Brett

12  Switzer who is with me from Atlanta who's my colleague who's

13  with my law firm who's with me today, Your Honor.

14          THE COURT:  Welcome, Mr. Switzer.

15          MR. WHITLEY:  Thank you for the courtesy.  Having

16  heard the Court comment, Your Honor, on a couple of issues, I

17  think it may shorten my presentation to the benefit of time and

18  efficiency today; so let me ---

19          THE COURT:  I am not trying to stifle conversation,

20  but at the same time I don't like beating around the bush on my

21  end.  I want to tell you what I am thinking up front and then

22  let's have a meaningful discussion about what I've said.

23          MR. WHITLEY:  Yes, sir.  Thank you for that.  So if

24  the Court please, I am here because I'm representing Reality

25  Winner who is my client along with my colleagues and I take

1   that obligation seriously and the Court understands that and

2   the Court knows that I do, as the government's obligation is

3   taken seriously.  Having served a good bit of my career in

4   public service, I can appreciate their obligation and I spent

5   too much of my life in a SCIF when I was in Washington, DC many

6   years ago dealing with lots of these issues dealing with

7   terrorism and I am still obligated under the oath I took then

8   to protect those secrets.

9       So the team we have on the defense side is a unique team

10  with local counsel John Bell and Titus Nichols who is a former

11  Assistant District Attorney and also was a JAG Reserve

12  attorney.  Beyond that, we have others who were former

13  Assistant U.S. Attorneys working with us on our team.  So I

14  wanted the Court to know if any aspect of the Court's

15  consideration ex-parte contact with the government was ever

16  implicated, our background and experience or our desire to be

17  fully compliant and obligated to the mission we have to

18  represent our client under the law, but also at the same time

19  oblige all of the obligations we have under CIPA, I wanted to

20  send a clear signal.  With that background, Your Honor, we're

21  here to serve the court and make sure this process works in an

22  efficient manner.  So thank you for your comments earlier about

23  the things that were of concern to us.

24      I want to just emphasize that we -- I know the Court

25  understands and appreciates better than I do that ex-parte

1    contact should be extremely limited and rare.  There are

2    provisions under Section 4 that provide for the Court to meet

3    alone.  I think that's the word in the statute with the

4    government and I understand that could or has happened and so

5    in terms of that we just would ask the Court to consider our

6    ex-parte submission we'll be making to the Court for an

7    in-camera opportunity to present our defenses to the Court at

8    some point in time.  I think that's appropriate.  I think that

9    will help the Court better appreciate some of the issues that

10   we think are relevant and this goes back to what the Court was

11   indicating earlier, Your Honor, with regard to the parties

12   getting together and discussing, What are the elements of this

13   offense?  And I think that's something we'll undertake and we

14   appreciate the Court's thoughts on that.

15        However, we believe there is a difference of opinion and

16   that's something that might impact, ultimately, the Court's

17   determination of what is relevant and what should be redacted

18   and shared with the defense in this case and so we'd ask the

19   Court to keep that in mind as the Court continues to evaluate

20   information that's going to be provided to you in the course of

21   this case.

22        We absolutely respect your authority and decisions as you

23   make them.  So I wanted the Court to appreciate that's where

24   this is coming from.  We believe there could be a genuine

25   dispute at some point in time between the parties about whether

1    or not an element of this offense is showing a potential harm.

2    That's -- there may be a disagreement there and that's

3    something that we will discuss with the government.  We think

4    that's an important element.

5        Those -- there are also legal issues, Your Honor, that the

6    Court will be considering that -- what should be entertained in

7    open court about some of these issues.  I know the Court -- and

8    I believe the Court wants to have as much of this case tried in

9    court in the courtroom as opposed to in a SCIF and we're going

10   to do our best to accomplish that with the government, but I

11   think that determination of relevance is something that bears

12   on that defense and we think that the Court will have that

13   opportunity to consider that.  I wanted to emphasize that.

14       I don't want to take up much more of the Court's time.  I

15   want to look at -- talk about the *Libby* case which I think is a

16   guiding light, if you will, out of the District of Columbia

17   Circuit and it talks about the three things that are necessary

18   or at least for the Court to move forward with an ex-parte

19   conversation with the government and I suggest the Court look

20   at that opinion.

21       The Court probably has already looked at that opinion, but

22   I wanted to mention that as one that really applies to me and

23   all of my colleagues in terms of this need-to-know component of

24   it.  I believe that it's hard to define what a need to know is.

25   Also, it is hard to say for me with my background and

1    experience that I don't have a need to know information that

2    has been presented that might bear and be relevant to the guilt

3    of my client one way or the other.

4         And so we don't want to be fighting this case with one

5    hand tied behind our back.  We want to be fighting it with both

6    hands available to defend our client fully and effectively as

7    we move forward in this case, and I am not saying this to the

8    Court without all due respect to the Court's decisions as you

9    make them.

10        One of the -- as we move forward we will, you know,

11   examine all the things that we can examine in the SCIF.  We

12   have started that process, but as we look at it we'll learn

13   more information.  We'll be more informed.  We come at this

14   case a little bit behind.  Usually, it's sort of an even fight

15   between defense and the government when cases are initiated,

16   but the government knows much more about this case.

17        So in terms of future ex-parte contact with the Court, we

18   would like for the Court to consider whether or not the

19   government should file a notice for leave to contact the Court

20   ex-parte.  We think that would be appropriate.  That would

21   permit us an opportunity to approach the Court and provide our

22   perspective on those particular matters as they happen.

23        The Court also, hopefully, will consider de novo the

24   information that the Court might be looking at once we file our

25   ex-parte submission with the court on our various defenses that

1    we may be presenting in this case in some, perhaps, in-camera

2    proceeding.

3        This is an adversarial process.  We don't want to be

4    handicapped.  We want to be able to do the job we need to do

5    for our client.  So ex-parte contact may not handicap us, but

6    at the same time the government has a better advantage in this

7    case than we do because of that opportunity.  We haven't had an

8    opportunity to sit with the Court and discuss whatever the

9    government may have presented in that situation.  Also, we've

10   not had an opportunity to walk through what the defenses might

11   be in this case.

12       I come back to where I started which is I'm honored to be

13   in your court.  I am than honored to be in the Southern

14   District.  Thank you for the opportunity to be here and be in

15   your courtroom and present our case on behalf of our client and

16   we will do everything we can to defend her innocence in this

17   case going forward.  Thank you for the opportunity, Judge, to

18   present this to you today.  Thank you.

19           THE COURT:  Thank you for that presentation.  You do

20   raise an interesting point about the relevance issue and the

21   disagreement y'all are having about the scope of the offense

22   and the elements of the offense and potential defenses to it,

23   et cetera, and while I do want to move forward as quickly as

24   possible with reviewing the Section 4 notice filed by the

25   government, it may be that I have to reconsider that after we

1   get through the issue of the scope of the offenses and the

2   defenses.

3       So, certainly, to the extent that I issue a ruling on the

4   Section 4 motion, it'll be with the absolute confirmation to

5   the defense team that that will be reviewed again if we get to

6   a stage where there are rulings made on the scope -- the

7   disputed scope -- of the case to make a fresh determination

8   about in light of that ruling whether the Section 4 notice and

9   my ruling on it needs to be revisited.

10          MR. WHITLEY:  Thank you, Your Honor.

11          THE COURT:  In terms of the ex-parte part, you're

12  right; we do everything we can here to avoid ex-parte

13  proceedings, but at the same time we do everything we can to

14  follow the directions and instructions from Congress and that's

15  my primary concern here is that we provide a full and fair

16  opportunity for both sides to always present arguments and

17  counter arguments to the court and only go into an ex-parte

18  proceeding when absolutely necessary and when instructed by the

19  case law or Congress, and so that's my concern.  I think

20  Section 4 is pretty clear in that regard.

21      In terms of the Section 4 process, how long do you think

22  you need to file a pleading with the court that would detail

23  the information that you'd like to present regarding the

24  defenses?

25          MR. WHITLEY:  The possible defenses?

1          THE COURT:  Right.

2          MR. WHITLEY:  One moment, if I might consult with my

3     co-colleagues.

4        Your Honor, consulting with Mr. Bell and we would ask the

5     Court to give us three weeks.

6          THE COURT:  Okay.  Three weeks from today?

7          MR. WHITLEY:  Yes, sir.

8          THE COURT:  All right.  I'll give you that time to

9     make that filing.  In looking -- I did look at that case you

10    cited, *U.S. versus Libby*, and, certainly, it does have all of

11    these factors that should be considered in an ex-parte setting

12    which kind of adds another layer to Section 4, and it does so,

13    I think, because you have lawyers in the case with security

14    clearances, but, you know, my concern with that is that

15    Section 4 certainly doesn't mention an exception for defense

16    lawyers with security clearances, and it becomes almost a

17    circular argument because you get security clearances solely

18    for the purpose of defending the client in the case.  So I am

19    not sure that it should open the door to additional privileges

20    not contemplated by the Act itself.

21         MR. WHITLEY:  Yes, sir.  I would only say we don't

22    know at this point in time whether -- and, again, this is

23    suggested to the Court with all due respect:  We don't really

24    know, Your Honor, what documents were redacted -- whether there

25    was one sentence redacted or whether there was a compilation of

1   documents redacted.  You know, large quantities of documents

2   are not going to be seen by defense counsel, but we believe

3   that because of our special background, expertise, and equipped

4   ideas, if you will, about how these cases should be pursued

5   from defending the United States -- from standing here at this

6   lecturn in other courtrooms and saying to the Court, "The

7   United States is ready to proceed" -- that we take our

8   obligation very, very seriously in this case, and I say that on

9   behalf of John Bell and Titus Nichols as well, as well as my

10  law firm.

11       So I think we were in a position had the Court permitted

12  it and we still would ask for that opportunity subject to the

13  Court's review of our filing in three weeks or less to evaluate

14  whether or not this is a document that we should be able to

15  look at.  The adversarial process has to be balanced against

16  the government's right and obligation to protect classified

17  information, and we don't want to be -- we don't want to be in

18  a position where at some point in time we've not done what we

19  needed to do to defend our client and or have our obligation to

20  be informed when we sit down with the government and have a

21  conversation with them about this case and right now we don't

22  have that knowledge and that information and that's why I say

23  what I'm saying.  I don't know that I feel particularly special

24  from the background I have in government.  It's just that I

25  spent a lot of time being sort of in this environment

1  understanding these things and I think we are differently

2  situated because of that.

3          THE COURT:  Okay.  All right.  Thank you,

4  Mr. Whitley.

5          MR. WHITLEY:  Thank you, Your Honor.

6          THE COURT:  I appreciate it.

7      Mr. Aaron, Mrs. Solari?

8          MR. AARON:  Thank you, Your Honor.  Your Honor, I'll

9  focus, if I may, just on a couple of issues that the government

10  has a comment on.  We agree in general, Your Honor, with your

11  discussion of the scheduling order; however, with the specific

12  issue of the Section 5 notice in our experience the adequacy of

13  the Section 5 notice is often an issue where there is a lot of

14  back and forth involved.  I think Your Honor's suggestion of in

15  advance of the filing deadline the defense providing the

16  government with a draft or a read-ahead copy, I think that is a

17  good idea.  We respectfully do suggest that it is advisable to

18  build in a little bit of time for back and forth.  Whether we

19  build that into the schedule or just retain some flexibility in

20  the event that it's necessary, it is an issue that comes up

21  frequently, Your Honor.

22          THE COURT:  So I am trying to envision this.  I mean,

23  I don't want there to be unnecessary levels or stages to the

24  litigation.  And so they file this Section 5 notice and it

25  says, "We intend to present the following at the trial of the

1    case that's classified."  To me you file your Section 6 motion

2    and in there you say, "Number one, the notice is insufficient

3    for the following reasons, and, number two, to the extent we

4    can discern from this filing what it is they intend to present,

5    we have the following objections to it", and then we get a

6    chance for a response brief and then you get a reply to that,

7    and then on top of that you go and have a hearing to discuss

8    these very issues.

9        So to me it sounds like we're litigating the issues fully

10   in that context.  It's almost like pre-litigating a summary

11   judgment motion before you get to the summary judgment motion.

12   We're going to fight over -- you know, you file a notice of

13   what you're going to move summary judgment on and then the

14   other side gets to contest it and say, "Well, you're not

15   telling us really what you're moving for summary judgment on.

16   We need to know more, you know, before we even get to the

17   motion itself", and that's the part that I am a little

18   impatient with.

19           MR. AARON:  I appreciate that, Your Honor.  The issue

20   here is that our 6(a) motion will have to do with the use and

21   relevance and admissibility of the information that the defense

22   is offering in their Section 5.  If we haven't nailed down

23   exactly what that is, it will be a more difficult and less

24   efficient motion for us to file.

25           THE COURT:  Okay.

1              MR. AARON:   And that's why we make the suggestion.

2              THE COURT:   Okay.  All right.  And I think I am going

3     to stick to my guns on it.  I feel like everybody will have a

4     full and fair opportunity to litigate it, and, certainly, by

5     the time you're done with the full hearing at that point we'll

6     have all of the information we need in hand to make a ruling

7     even if some of the specificities don't -- worst case scenario,

8     they don't come out until we're sitting in here the day of the

9     Section 6 hearing, but by the end of that hearing we'll have

10    everything we need to make that determination.

11             MR. AARON:   That certainly is a worst case scenario,

12    Your Honor, and, again, I hope we do have the opportunity to

13    have that back and forth with the defense in advance of filing.

14        The only other issue, Your Honor, regarding the ex-parte

15    nature of the Section 4 filing even when there are cleared

16    defense counsel, Your Honor correctly identified, of course,

17    the legal authorities on this.  Having a cleared defense

18    counsel does not change the need-to-know aspect that's at play

19    in the Section 4, and Your Honor is familiar with the material

20    that we're talking about.

21        Certainly, while we have the utmost respect for the

22    experience of the defense team, on behalf of the United States

23    having a clearance and having a background in government work

24    doesn't automatically give someone a need to know every

25    classified fact, and the government submits, Your Honor, that

1    the classified information be provided ex-parte is beyond

2    counsel's need to know.

3              THE COURT:  Let me ask you this, though.  I mean, you

4    know, the process -- the process is designed such that you give

5    me a bunch of stuff and I take a look at it and say, "Well,

6    you're right.  This is all very sensitive information."  But

7    usually the outcome of that is some kind of order that approves

8    substitutions or redactions; right?

9              MR. AARON:  Or deletions, Your Honor.

10             THE COURT:  Right.  But what if the scenario instead

11   is that the government is arguing, for example, that these

12   categories of things shouldn't even be produced at all because

13   they're not relevant to the case?  Is that really a Section 4

14   filing?

15             MR. AARON:  Yes, Your Honor.  There are certainly

16   cases in which, you know, the government might determine that

17   certain information isn't discoverable at all and might present

18   that in a Section 4 filing in an abundance of caution to get

19   the judge's agreement or the judge's opinion on whether it is

20   discoverable in the first place, but, really, what Section 4 is

21   about is once information is technically discoverable under

22   Rule 16 it's seeking to make modifications to the government's

23   obligations under Rule 16(d).

24        So, certainly, there could be entire categories of

25   information that might technically meet Rule 16 but are

1   deletable under rule 16(d).

2           THE COURT:  Well, would you agree with me then if

3   we're talking about the scenario I described where instead of

4   asking for redactions, deletions, substitutions, et cetera,

5   instead you're just asking for a court blessing on the

6   prosecutor's determination that something is entirely not

7   discoverable and you're talking about certain category of

8   information, in that context I am not sure it's a Section 4

9   motion, and at that point I am wondering shouldn't we have a

10  full and fair debate about the issue because it's not me

11  looking at a confidential, classified document and line by line

12  going through it and highlighting things that should be

13  redacted and should be kept.  Obviously, that's a very

14  sensitive process, right, and one that Section 4 is designed to

15  protect, but it's entirely different if you're giving

16  generalized categories of information that you want me to stamp

17  as not being discoverable in the case.  I would think the

18  generalized categories can be described in a way that's not

19  even classified.

20          MR. AARON:  Your Honor, I would say that that type of

21  process -- that type of back and forth is the kind of thing

22  that ordinarily would happen ex-parte between the government

23  and the Court exploring where that might and might not be

24  possible, and without the context of the specific categories or

25  documents, it's hard to talk about right now.

1      I know that ordinarily in a Section 4 process where we're

2   seeking deletion no one is asking the Court to line by line

3   redact items.  It's more this category of information, while

4   technically discoverable, isn't relevant or helpful to the

5   defense in this case and should be deleted.

6      With regard to the material that isn't discoverable in the

7   first instance, you know, in many contexts the prosecutor might

8   decide that information in possession of the government is not

9   discoverable, and, therefore, does not provide that at all and

10  not seek ex-parte approval for that and just not include it in

11  discovery, and, certainly, for policy reasons -- not legal

12  reasons -- the government might turn over non-discoverable

13  information as we believe we have in this case on the

14  unclassified side.  So I am not sure how much back and forth

15  there needs to be with the defense regarding production of

16  information that's not discoverable in the first instance.

17           THE COURT:  Well, I mean, the whole reason why it

18  would be ex-parte to me is because adjudication of the issue

19  requires the actual review of information that's classified,

20  but if you're asking for a court blessing on a prosecutor's

21  determination that something is not -- a general category of

22  information that's not discoverable, then you're not even

23  looking at classified information to begin with.  Right?  And

24  not in a generalized sense.

25           MR. AARON:  Your Honor, again, without the context of

1    specific information, it's hard to respond directly.

2              THE COURT:  Right.

3              MR. AARON:  I would say everything that's the

4    subject -- everything that's discussed in our Section 4

5    pleading is classified information.  So it would probably be

6    easier to answer your question, Your Honor, in a Section 4

7    ex-parte ---

8              THE COURT:  Okay.  All right.  Is there anything --

9    and I interrupted you and I apologize for that.  Let's continue

10   with any thoughts and suggestions you want to make in terms of

11   the motions that are outstanding.

12             MR. AARON:  Your Honor, I have nothing further.

13             THE COURT:  Okay.  All right.  Thank you, Mr. Aaron.

14        Anything further from the defense?

15             MR. WHITLEY:  Your Honor, if I might, just one point.

16   I'll be very brief, Your Honor.  Thank you for your patience

17   with me and the process today.

18             THE COURT:  I am a very patient person.  At least I

19   try to be.  So we'll take as long as you want to take.

20             MR. WHITLEY:  Yes, sir.  Well, I don't know that I

21   could be as patient as the Court.  Thank you for your

22   consideration.  I believe that discoverability of information

23   is in doubt in terms of how we can get information from the

24   government that we think is relevant and the Court will be

25   making decisions on that and ruling as we go forward.  I do

1    believe that we filed robust discovery requests and will

2    continue to do that on behalf of our client.  We think that

3    it's difficult to -- well, I have friends who can look at

4    people and tell me what they're thinking, and I am not able to

5    do that, and when I looked at this case I can't tell you what's

6    in this case, Your Honor, at this point in time or what's

7    relevant.  I have to tell you that I am still learning and

8    whatever I do I'll be doing it with a belief that what I am

9    seeking from the Court is relevant and my co-counsel will, too,

10   and so we would want to be part of the process with the Court

11   where we looked at relevance and we looked at issues that are

12   going to be coming before the jury to make sure that the jury

13   is receiving information that is, in fact, relevant.  So we

14   would be seeking rulings from you, Your Honor, on relevance as

15   these issues come up.

16       So I just wanted to make sure.  We did something that's

17   unique to our country and the Court talked about last time this

18   issue and it really resonated with me the 200 years plus of

19   tradition we have in this country of open courtrooms and I

20   strongly believe in that.  Even though I believe in everything

21   the government is doing in terms of their obligation to do

22   their job, I just disagree with them about this particular

23   case, and that's why I am standing here, but I do think

24   openness -- and I believe the Court shares this from your

25   comments.  So anything we can do, Your Honor, to facilitate

1    that we want to do it on those issues.

2              THE COURT:   And so do I as long as I am not violating

3    the statute -- controlling statute -- in the process.

4              MR. WHITLEY:   Thank you.

5              THE COURT:   All right.   I'd like at this time to get

6    an update from Ms. Rodriguez-Feo and have a full, open

7    discussion between the parties about difficulties we're having

8    with litigating in this environment.   We had that kind of

9    discussion last time, and I found it to be pretty productive.

10       Is that something, Ms. Rodriguez-Feo -- last time we did

11   it in a closed setting.   Is that something that we need to do

12   for you to give everyone an update about where we stand with

13   clearances and that kind of thing?

14             MS. RODRIGUEZ-FEO:   I think we could do it in open

15   setting, Your Honor.

16             THE COURT:   Okay.   And you know what?   I didn't give

17   you advanced notice that I was going to do that, but if you

18   could --

19             MS. RODRIGUEZ-FEO:   Sure.

20             THE COURT:   -- come to the lecturn and maybe -- the

21   things I am interested in would be where we stand with security

22   clearances for defense counsel and anybody else on the

23   prosecution team that doesn't have any and then also where we

24   stand in terms of some of the efforts we talked about last time

25   to make this as easy as possible on both sides to litigate the

1    case -- email and phone lines, that kind of things.

2              MS. RODRIGUEZ-FEO:  Right.  Yes, Your Honor.  So with

3    clearances first, we were able to brief in Mr. Barnard on the

4    defense team and so he has received his TS SCI clearance and I

5    believe he's located in Maryland, the DC area.  We are -- Jill

6    Cook -- Jill McCook, excuse me, is also eligible.  So she and I

7    have been in communication about scheduling her briefing in the

8    next couple of weeks, and everyone else -- I believe there are

9    four other attorneys, Your Honor, who I have received are

10   pending, and so what that means is their background

11   investigations are with the FBI currently and we have no

12   estimations in terms of the next couple of weeks.  So we don't

13   expect the next couple of weeks to receive clearance for those

14   individuals and I can give the Court an update as that comes in

15   from the FBI.

16             THE COURT:  Okay.  All right.  What about the other

17   efforts in terms of technology?

18             MS. RODRIGUEZ-FEO:  Sure.  So in our previous closed

19   hearing there are a couple of things we can open up to the

20   Court today with regards to facilitation -- that is that we are

21   installing a classified phone line in the defense SCIF that we

22   are currently working on here in Augusta.  Currently, the

23   defense counsel has a SCIF in Columbia, South Carolina, and we

24   are in the next, I'm told, two to three weeks going to be able

25   to make the SCIF here in Augusta operational, and I will have

1    an update on the phone line.  I don't have a promise that the

2    phone line will be installed at the time the SCIF is

3    operational, but, hopefully, within the month we will be here

4    completely in Augusta in terms of their SCIF.

5         We will also be providing SCIF space in Atlanta, Georgia

6    for defense counsel to work and review documents.  I have not

7    gotten the okay yet for defense to visit with their client in

8    Atlanta, but they will be able to visit with their client here

9    in Augusta in the SCIF space.

10             THE COURT:  Okay.  What about the secure phone line

11   for the Atlanta SCIF?

12             MS. RODRIGUEZ-FEO:  So the FBI -- we won't be able to

13   arrange a line specifically for defense in Atlanta, but they

14   have said that in terms of scheduling a phonecall that they'll

15   be able to assist as long as they have, you know, advanced

16   notice as to a phonecall.  So, essentially, defense counsel

17   would be able to go into one of their rooms and use one of the

18   FBI phone lines so long as all of that is worked out with local

19   FBI in Atlanta.

20             THE COURT:  Okay.  And would that also be true in

21   some of the satellite offices of the defense firm?

22             MS. RODRIGUEZ-FEO:  So the only other place that I

23   believe we would be able to receive approval for that would be

24   in the Washington, DC area.

25             THE COURT:  Okay.  What about new Orleans?  I think

1    one of the lawyers is based there.

2              MS. RODRIGUEZ-FEO:  I can look into that, Your Honor.

3    I haven't --

4              THE COURT:  Okay.

5              MS. RODRIGUEZ-FEO:  -- but it may be possible that we

6    can look at a local field office at the FBI to arrange a

7    similar phonecall.

8              THE COURT:  Okay.  Because I think that -- isn't

9    Mr. Chester resident in your Louisiana office?  Is that right?

10             MR. WHITLEY:  Yes, sir, your Honor.  He is.

11             THE COURT:  Okay.  And so that -- I would think that

12   the top priorities for you would be in Augusta, Atlanta, and

13   New Orleans in terms of secure phone lines?

14             MR. WHITLEY:  Yes, sir, and Washington.

15             THE COURT:  Washington, too.

16             MR. WHITLEY:  Yes, sir.

17             THE COURT:  Okay.  And that part is probably the

18   easiest part of that; right?

19             MS. RODRIGUEZ-FEO:  Yes.  I will talk to the FBI.

20             THE COURT:  Okay.  All right.  And then in terms of

21   secure emails, I know you said that was probably not going to

22   happen.  Have you made the miracle occur?  Are we going to be

23   able to have those?

24             MS. RODRIGUEZ-FEO:  I put in the request, Your Honor,

25   with our associate director and it was denied --

1          THE COURT:  Okay.

2          MS. RODRIGUEZ-FEO:  -- saying that that is not a

3    possibility in terms of classified email.

4          THE COURT:  Okay.  That's no surprise.  You told us

5    that had been the result in the past.  So these phone lines

6    that are going to be installed means Mr. Bell -- not only can

7    he call the Atlanta SCIF to talk with defense counsel in these

8    other offices, but he can also communicate directly with

9    Mrs. Solari and Mr. Aaron, et cetera, on these phone lines

10   about any issue they want to talk about; right?

11         MS. RODRIGUEZ-FEO:  That's correct, as long as we

12   arrange that everyone is on a secure line on a secure phone.

13         THE COURT:  Okay.

14         MS. RODRIGUEZ-FEO:  So the logistics involved would

15   need to be in advance with everyone aware of where they would

16   need to be, but that's correct.

17         THE COURT:  Okay.  How do they go about -- if I am

18   Mr. Bell, how do I go about setting that up?

19         MS. RODRIGUEZ-FEO:  Well, once we realize where the

20   phones would be -- for instance, once we have a phone line here

21   in Augusta, then Mr. Bell would coordinate directly with the

22   government and say, "I would like to get on a classified phone

23   call."  I don't need to be involved with the facilitation of

24   that.  However, I would need to be involved with facilitation

25   of the FBI calls --

1              THE COURT:  Okay.

2              MS. RODRIGUEZ-FEO:  -- at local field offices.

3              THE COURT:  Okay.  All right.  Anything further that

4     you want to report on?

5              MS. RODRIGUEZ-FEO:  I think that's all.

6              THE COURT:  Okay.  Thank you very much.

7          Mr. Bell, Mr. Whitley, anything further in regards to

8     logistics and anything that you want to talk about?

9              MR. WHITLEY:  No, sir.  Nothing, Your Honor, from the

10    defense.  Thank you.

11             THE COURT:  Okay.

12             MR. BELL:  Your Honor, I would like to state that we

13    work so much with Ms. Rodriguez-Feo and she is an amazing

14    person in terms of being responsive and trying to be as

15    cooperative as she can.  For that, we're grateful.

16             MR. WHITLEY:  Well, let me say I think we all agree

17    with that, Your Honor.

18         We want to thank you for your courtesy and consideration

19    to us.  Thank you.

20             THE COURT:  She is sharing that courtesy and

21    consideration to all court personnel and we certainly

22    appreciate her efforts as well.

23         I believe that takes care of everything that we need to

24    talk about today.  In terms of the details of the exact

25    deadlines and all that, I don't see any need to get into that.

1    I have gotten proposed schedules from everybody.  I will take a

2    careful look at that and enter an order that will be in line

3    with comments that I made here today.

4        Is there anything further from the defense we need to

5    discuss in this matter today?

6            MR. WHITLEY:  No, sir, Your Honor.  Thank you very

7    much.

8            THE COURT:  Thank you.

9        Anything further from the government?

10            MRS. SOLARI:  No, sir, Your Honor.

11            THE COURT:  All right.  I do want to take about a

12   10-minute break, and there may be a possibility of reconvening

13   with just the government lawyers to talk specifically about

14   that Section 4 filing.  So if y'all could hang out for 10 or 15

15   minutes, I'll let you know whether to be excused or whether

16   we're going to reconvene.

17        (End of Transcript of Record.)

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5        I, Lisa H. Davenport, Federal Official Court Reporter, in

6   and for the United States District Court for the Southern

7   District of Georgia, do hereby certify that pursuant to Section

8   753, Title 28, United States Code that the foregoing is a true

9   and correct transcript of the stenographically-reported

10  proceedings held in the above-entitled matter and that the

11  transcript page format is in conformance with the regulations

12  of the Judicial Conference of the United States.

13

14                      _____

15                      Lisa H. Davenport, RPR, FCRR
                        Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25