**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **NO. 1:17-CR-00034** |
| | * | |
| **REALITY LEIGH WINNER** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO REOPEN DETENTION HEARING**
**PURSUANT TO 18 U.S.C. § 3142(f) AND IMPOSE CONDITIONS OF RELEASE**
**AND REQUEST FOR A HEARING**

NOW INTO COURT, through undersigned counsel, comes Defendant Reality Leigh

Winner ("Ms. Winner" or the "Defendant") who respectfully files the instant Memorandum in

Support of her Motion to Reopen the Detention Hearing Pursuant to 18 U.S.C. § 3142(f) and

Impose Conditions of Release and Request for a Hearing.  For the reasons that follow, the Court

should (1) reopen the detention hearing; (2) find there is a combination of conditions that will

reasonably assure Ms. Winner's appearance as required and the safety of any other person and the

community; and (3) release Ms. Winner pending trial with conditions.  In addition, the Defendant

requests a hearing at the earliest practicable time to address this Motion.

I.      **INTRODUCTION**

In contrast to almost every prior defendant alleged to have disclosed or retained national

defense information, Ms. Winner—an individual who has no criminal history and who honorably

served her country, and who stands accused of "leaking" a single document, a single time, to a

single source—was detained pending trial in this matter because the Court found no condition or

combination of conditions would reasonably assure her appearance as required and the safety of

any other person and the community.  As demonstrated below, pre-trial detention in this case is not warranted.

As an initial matter, the detention hearing should be reopened because there is new information material to the issue of pre-trial detention that supports Ms. Winner's release, consistent with applicable case law discussed in detail below.

In addition, there are conditions that will reasonably assure Ms. Winner's appearance as required and the safety of any other person or the community.  For example, the Court could require that Ms. Winner (1) reside in her home in Augusta under the custody of a third-party custodian; (2) not travel beyond Richmond County, Georgia without the permission of her Pretrial Services Officer; (3) have regular contact with her Pretrial Services Officer; and/or (4) have her parents post their property as a bond.  Respectfully, given the availability of these conditions (or some combination thereof) and applicable precedent—that demonstrates courts have released nearly every other defendant charged with disclosing or retaining national defense information—Ms. Winner's continued detention is manifestly unjust, contrary to law, and not in accordance with the presumption of liberty.

## II.  BACKGROUND INFORMATION

### A.  Reality Winner's Background

Reality Leigh Winner has no experience with the criminal justice system [Winner Decl. ¶ 3 (September 12, 2017)].  Her first encounter with law enforcement was on June 3, 2017, when ten armed male law enforcement agents appeared at her home with search warrants for her house, her car, and her person [*Id.*].  At the conclusion of that encounter, Ms. Winner was arrested, was transported to jail, and she has been detained since that time [*Id.*].

Ms. Winner, who is twenty-five (25) years old, has great respect for this country.  Upon graduation from high school, she turned down a full engineering scholarship to Texas A&M to enlist in the United States Air Force [*Id.* ¶ 4].  She served in the Air Force for six years, and was honorably discharged in December 2016 [*Id.*; *see also* Winner-Davis Decl. ¶ 11 (September 14, 2017)].  She received a commendation medal for her work on an Afghan Mission, and has consistently received high evaluations [Winner Decl. ¶ 4].

While in the Air Force, Ms. Winner's proficiency in languages garnered a placement at the Defense Language Institute in Monterey, California [*Id.* ¶ 5].  There she obtained an associate's degree in the Persian-Farsi and Dari courses [*Id.*; Winner-Davis Decl. ¶ 11].  Today, she is fluent in Farsi, Dari, and Pashto [*Id.*].  While in the Air Force, she trained in Texas and spent time at Fort Meade, Maryland [*Id.* ¶ 6].  She also served for approximately six months at a Department of Defense facility in Augusta [*Id.*].

Ms. Winner returned to Augusta upon her discharge from the Air Force to become a contractor for Pluribus International Corporation [*Id.* ¶ 7].  While she had not been living in Augusta long before the alleged events giving rise to this prosecution occurred, she had begun developing a network of friends and colleagues with interests common to her own [*Id.* ¶ 10].  She even had a date planned at the time of her arrest [*Id.*].  She had become part of the community through her teaching of yoga and spin classes and her volunteer work at the local animal shelter [*Id.*; Winner-Davis Decl. ¶ 9].  This was typical behavior for Ms. Winner, as she had previously been an active participant in her community in Maryland, where she volunteered for Athletes Serving Athletes, which assists disabled people who run marathons and who participate in sporting events in which they would otherwise not be able to participate [Winner Decl. ¶ 6; Winner-Davis Decl. ¶ 9].

Ms. Winner is very well connected with her family, especially her mother and step-father, who reside in Texas and who travelled to Augusta to testify before this Court during her initial detention hearing [Winner Decl. ¶ 11; Winner-Davis Decl. ¶ 7].  She was very close to her father, who passed away in December 2016 [Winner Decl. ¶ 11].  She is also close to her biological sister, who resides in Michigan, and her godson and other family members who reside in Wisconsin [*Id.*; Winner-Davis Decl. ¶ 8].

Ms. Winner is vegan and Kosher, and in good physical condition [*See id.* ¶ 12].  She has suffered health problems since her detention because of her dietary habits.  She is taking medication to aid her digestion of prison food and antibiotics because of issues with her skin [*See id.* ¶ 13].

Ms. Winner has always had hopes of continuing her education.  She is currently halfway through a Bachelor's Degree program [*Id.* ¶ 14; Winner-Davis Decl. ¶ 11].  If released, she intends to continue her education [Winner Decl. ¶ 14.].  She also intends to continue teaching yoga and spin classes in order to earn income while she faces the charges in this action [*Id.*].

### B.    Procedural Background

On June 3, 2017, this Court issued a Search and Seizure Warrant for Ms. Winner's home, vehicle, and person [Doc. 2].  She was arrested that day and made her initial appearance before this Court on June 5, 2017 [Doc. 9].  She was remanded to the custody of the U.S. Marshal, and the Court set a detention hearing for June 8, 2017 [Doc. 9].  The day before the detention hearing, the Government filed an indictment charging Ms. Winner with unauthorized willful retention and transmission of national defense information, in violation of 18 U.S.C. § 793(e) [Doc. 13].

The Court conducted a detention hearing on June 8, 2017 [Doc. 26], and determined that Ms. Winner should be detained pending trial.  On the same day, the Court declared this case as

complex pursuant to 18 U.S.C. § 3161(h) because of the procedures mandated by the Classified Information Procedures Act ("CIPA") [Doc. 28].  In doing so, the Court determined that "it is difficult to predict how much time will be needed to prepare for trial" [*Id.*].  Likewise, after a status conference on August 30, 2017, at the behest of the parties, the Court entered an amended scheduling order continuing the trial date from October 23, 2017, to March 19, 2018, and establishing various deadlines in this matter [Doc. 66].  If the Court does not release Ms. Winner now, given potential delay related to discovery disputes, the CIPA process, and otherwise, she will likely be detained for far longer than the Court had contemplated at the time of the initial detention hearing.  As detention grows in length, due process concerns grow more serious.  *See United States v. Archambault*, 240 F. Supp. 2d 1082, 1085 (D.S.D. 2002) ("Courts have held that prolonged pre-trial detention may become excessive and consequently punitive so as to offend due process constraints." (citations omitted)).

On September 7, 2017, the Government filed a superseding indictment against Ms. Winner [Doc. 72].  The superseding indictment charges Ms. Winner with unauthorized willful retention and transmission of national defense information, in violation of 18 U.S.C. § 793(e).

## III.   ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987) (explaining that the Bail Reform Act "authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel").  As set forth below, new information justifies reopening Ms. Winner's detention hearing.  When the Court considers the new information, as well as all other information previously presented, the Court should find there is a combination of conditions

that would reasonably assure Ms. Winner's appearance as required and the safety of the community.

### A.       There is New Information that Justifies Reopening the Detention Hearing.

The Bail Reform Act contemplates reopening a detention hearing "at any time before trial" if the defendant demonstrates that "information exists that was not known to the [defendant] at the time of the hearing and that has a material bearing" on detention.  18 U.S.C. § 3142(f).  Courts within the Eleventh Circuit have utilized the test applicable to motions for reconsideration in the civil context to guide them in making the determination to reopen a detention hearing; hence, they will reopen a hearing when there is: "(1) an intervening change in the controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or prevent manifest injustice." *United States v. Carrera*, No. 14-20286-CR, 2014 WL 3908204, at *2 (S.D. Fla. Aug. 11, 2014) (internal marks and citations omitted).  There is new evidence that was not available at the time of the initial detention hearing and a need to correct manifest injustice.

The following is new evidence that was not available at the time of the initial detention hearing (and could not have reasonably been available given the mere three days between the initial appearance and detention hearing), all of which have a material bearing on the issue of release.

- While repeatedly alleging that Ms. Winner disclosed numerous "documents" at the initial detention hearing—a fact that the Court specifically noted in its findings to support detention the Government has, via email to this Court, retracted those assertions.  The Government now alleges there was only one document, rather than numerous documents, at issue.  [*See* Exhibit A (email correspondence from Assistant United States Attorney Jennifer Solari to defense counsel and the Court dated June 29, 2017); Doc. 29 p. 105; *see also* Doc. 72].

- The Government, likewise, proffered that Ms. Winner asked her mother to transfer $30,000 out of her account "because the Court took away her free appointed counsel" [Doc. 29 pp. 27, 92].  Yet, in the same email to the Court (which was sent after the initial detention hearing), the Government clarified that Ms. Winner did not explicitly make that assertion [*See* Exhibit A].   Indeed, the discovery produced by the Government indicates Ms. Winner requested her mother transfer the money out of her

account because she feared the Government would freeze it and because she wanted to make sure she could pay her bills; not because she wanted free counsel.

- Discovery produced by the Government and other information obtained by the defendant expressly contradicts or weakens the Government's proffer of the evidence made during the initial detention hearing, which is material to the weight of the evidence against Ms. Winner, especially considering that the Government loudly proclaimed at the initial detention  hearing that it may uncover additional allegations of wrongdoing [*See* Doc. 29 p. 89 ("We are not ruling out a superseding indictment adding more charges as we continue through our review of the information we've collected . . . .")], and Ms. Winner's history and characteristics [*See id.* at 106 (finding that, "[i]f we were dealing with the person that Ms. Winner's parents know and love, then there would be no question that she ought to be released")].  For example:

  o The Government proffered that Ms. Winner "inserted a removable thumb drive into a top secret computer" before she left the Air Force, and although the Government admitted it did not "know yet what she did with that thumb drive while it was inserted[,]" it later asserted that it "d[idn't] know how much information she might have taken in physical form when she inserted that USB device into a top secret computer when she was still on active duty with the Air Force," ominously stating that "[w]e are [] concerned the defendant may have taken additional documents from her most recent employer and from the physical facility . . ." and "[w]e don't know how much more she knows and how much more she remembers, but we know she is extremely intelligent, so we would have to imagine she's got quite a bit of very valuable information in her head" [*Id.* at 97–98].  Significantly, the Court expressly relied upon this proffer, specifically noting that "we don't know what happened with [the thumb drive,]" and finding that, "[i]f that information [from the thumb drive] was downloaded from a top secret computer, by its very nature, that information would be -- put our country in grave danger" [*Id.* at 107–08].  Presumably, in the two months since its initial claim, the Government has conducted forensic analysis of the relevant computer and/or thumb drive to determine whether classified information was in fact downloaded from that computer.  And despite the Government's heavy reliance on the thumb drive Ms. Winner allegedly inserted into a top-secret computer, and despite the speculation that she has more classified information in her possession, there have been no further charges against her.  Moreover, as discussed above, the Government felt compelled to correct and clarify statements about the amount of information the Defendant allegedly "leaked" [*See* Exhibit A].

  o The Government also proffered information about Ms. Winner's use of a Tor browser to "access[] the notorious Dark Web" [*Id.* at 25].  The Government failed to explain, however, that Ms. Winner told the Government during her interrogation on June 3, 2017, that she used Tor once for looking at WikiLeaks.  Nor did the Government explain that

millions of people use Tor not for any nefarious reason, but to protect their personal privacy online. *See* Adam Clark Estes, *How to Hide Your Browsing History From Your Snooping ISP*, Gizmodo (Mar. 29, 2017), http://gizmodo.com/how-to-hide-your-browsing-history-from-your-snooping-is-1793687193 (describing Tor as the "best bet" to protest one's privacy online). Indeed, Facebook promotes the fact that over a million people use Tor simply to access Facebook. Alec Muffett, *1 Million People use Facebook over Tor* (Apr. 22, 2016), https://www.facebook.com/notes/facebook-over-tor/1-million-people-use-facebook-over-tor/865624066877648/.

- o The Government proffered that Ms. Winner "acknowledged the information in the report could be used to injure the United States or to assist a foreign nation" [*Id.* at 20]. Yet, that proffer did not explain the remainder of Ms. Winner's statements on June 3, 2017. As set forth in her Declaration submitted in connection with the Defendant's Motion to Suppress, Ms. Winner told law enforcement, "whatever we were using had already been compromised, and that this report was just going to be like a one drop in the bucket" [*See* Docs. 63, 64].

- Given her recent early retirement, Ms. Winner's mother has made arrangements to move to Augusta, Georgia, the week of September 25, 2017, and to serve as a third-party custodian for Ms. Winner for as long as necessary [Winner-Davis Decl. ¶¶ 3–5]. To that end, her mother has added her name to the lease on Ms. Winner's apartment and is paying rent on the apartment [*Id.*]. Ms. Winner's mother's move to Augusta and willingness to assume responsibility for her daughter's compliance with any conditions imposed by the Court are highly material to whether Ms. Winner would flee or pose a danger to the community. *See United States v. Miller*, No. 16-40026-TSH, 2017 WL 841277, at *2 (D. Mass. Mar. 2, 2017) (finding that new information related to living arrangements "arguably 'bears' on the question whether conditions exist that will reasonably assure Defendant's appearance as required"); *United States v. Rosenschein*, No. 16-cr-4571 MCA, 2017 WL 3600739, at *5–6 (D.N.M. Jan. 6, 2017) (reopening detention hearing because the defendant's sister came forward as willing to act as a third-party custodian).[1]

- Ms. Winner has plans to obtain employment and stay occupied if the Court were to grant pretrial release, including, among other things, teaching yoga and spin classes upon release, and volunteering at the local animal shelter, which is material to whether Ms. Winner would flee, as it provides a meaningful connection to the community

---

[1] *See also United States v. Milano*, No. CR 13-00366-JSW (KAW), 2013 WL 3942035, at *4 (N.D. Cal. July 26, 2013) (suggesting that information relating to a "suitable place to live, and a suitable surety" would allow the court to reopen the detention hearing); *United States v. Collazos*, No. 2013-10017-JLT-11, 2013 WL 12212728, at *3 n.3 (D. Mass. Apr. 16, 2013) (explaining that the court stood "willing to reopen the detention hearing upon counsel's request if and when counsel [had] evidence to introduce or proffer"); *United States v. Wagoner*, No. 3:12-cr-85, 2012 WL 5422232, at *2 (E.D. Tenn. Nov. 5, 2012) (finding that a change in living conditions, along with the resolution of the defendant's competency, sufficient to reopen detention hearing); *United States v. Ward*, 63 F. Supp. 2d 1203, 1207 (C.D. Cal. 1999) (reopening detention hearing based on willingness of defendant's family to post security for bond).

[Winner Decl. ¶ 14; Winner-Davis Decl. ¶¶ 9–10]. *See United States v. Wright*, No. 93–10093–01, 1993 WL 560902 (D. Kan. Dec. 2, 1993) (reopening detention hearing on offer of employment and qualification for home detention program).

- Since entering custody, Ms. Winner has had gastrointestinal issues as a result of a change to her diet, which is vegan and Kosher, which is material to her history and characteristics.

- Finally, there is a motion to suppress pending before the Court, that, if granted, will be material to the weight of the evidence against Ms. Winner [*See* Doc. 29 p. 105 (explaining that the weight of the evidence was strong given a "confession" by the defendant)]. *See United States v. Espinoza*, No. CR S-08-0447 JAM, 2009 WL 3614849, at *1 (E.D. Cal. Oct. 27, 2009) (finding the granting of motion to suppress and the Pretrial Services Officer's completion of interview of the defendant and family members sufficient to reopen detention hearing); *United States v. Shareef*, 907 F. Supp. 1471, 1483 (D. Kan. 1995) (reopening a detention hearing after suppression of evidence).

This new information is material to whether Ms. Winner is a flight risk or a danger to others or the community if released, either individually or on a collective basis. The Court should reopen the detention hearing and reconsider whether any condition or combination of conditions could be imposed to adequately assure the safety of the community and the appearance of Ms. Winner as required. *See United States v. Pimentel*, No. 11-40041-FDS, 2012 WL 1581160, at *2 (D. Mass. Apr. 27, 2012) (giving "the Defendant the benefit of the doubt and find[ing] that . . . information was not known to him at the time of the original hearings" and reopening the detention hearing under § 3142(f)).

In addition, the Court may reopen the detention hearing to prevent manifest injustice. The Defense submits that there are potential conditions relevant to the § 3142 inquiry that were not necessarily identified by the Court in the original detention hearing, that support Ms. Winner's release. In particular, while the Court commended Ms. Winner's parents for agreeing to post their house as her bond,[2] the Court surmised that the person her parents know is "at odds" with the

---

[2] Ms. Winner's mother and stepfather are willing to post their property in Kleberg County, Texas as bond, which consists of twenty acres and a modest home, and it has a taxable value of approximately $135,000 [Winner-Davis

person the Government described [Doc. 29 pp. 107–08].  Yet, the Court did not explain why the condition proposed coupled or combined with additional conditions (like those imposed in other Espionage Act cases), such as placing Ms. Winner in the custody of a third party (i.e., conditions that directly relate to the safety and flight concerns raised by the Government and the Court during the detention hearing), would not reasonably assure the Defendant's appearance as required and the safety of the community.  Moreover, in the initial detention hearing, the Government did not present any reliable evidence demonstrating that Ms. Winner is a flight risk.  Detaining Ms. Winner on that basis given the new evidence before the Court is manifestly unjust.[3]  *See United States v. Gerkin*, 570 F. App'x 819, 822 (10th Cir. 2014) (the Bail Reform Act "requires that the court consider a range of alternatives to pre-trial confinement before ordering detention and, if detention is ordered, to explain why lesser conditions are inadequate"); *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996) (revoking order of detention where neither "the magistrate judge [nor] the district judge fully explored the commitments offered by the [defendant's] witnesses or the [defendant's] proffer that he was willing to abide by whatever conditions the court imposed"); *United States v. Berrios-Berrios*, 791 F.2d 246, 251 (2d Cir. 1986) (remanding to the district court because the district court failed to "explain on the record the extent to which it considered any alternatives to incarceration and, if so, on what basis they were rejected").

For all these reasons, and given the filing of the superseding indictment, Ms. Winner submits that there are grounds to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f). She respectfully requests that the Court grant her motion and reopen the detention hearing to

---

Decl. ¶ 6; *see also* Doc. 29 pp. 53–54 ("We have 20 acres of land that's paid for in Kleberg County along with a house that sits upon it.  We have -- you know, whatever it's worth.  And I don't really know what that's worth, but it's a couple hundred thousand dollars.")].

[3] The few facts proffered by the Government were insufficient to demonstrate by a preponderance of the evidence that Ms. Winner is a flight risk.  *See infra*, Part III.B.

consider whether there is a combination of conditions that would reasonably assure her appearance as required and the safety of the community.  As set forth below, such conditions exist here.

**B.**      **The Court Should Release Ms. Winner with Conditions.**

Courts should detain defendants "[o]nly in rare circumstances," and "only for the strongest of reasons."  *United States v. Motamedi*, 767 F.2d 1403, 107 (9th Cir. 1985) (citations omitted). "Doubts regarding the propriety of release should be resolved in favor of the defendant."  *Id.*; *see also United States v. Kaplowitz*, No. 14-203230CR, 2014 WL 2155231, at *4 (S.D. Fla. May 22, 2014) (citing *Motamedi*).  As explained below, and as will be further demonstrated at a hearing, there is a combination of conditions that will assure the safety of the community and the appearance of Ms. Winner in court.  Ms. Winner, therefore, should be released.

A defendant is properly detained pending trial when a court makes one of two findings: (1) that the Government has shown by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community," or (2) that the Government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required."  18 U.S.C. § 3142(e).  Significantly, there is no "presumption" arising from the nature of the charges in this case that Ms. Winner should be detained.  *Id.*  The Bail Reform Act sets out a number of conditions that may be imposed to ensure a defendant's appearance in court and the safety of the community, including, among other things, that the defendant remain in the custody of a designated person who agrees to supervise the defendant and report violations of release conditions to the court; maintain employment; maintain an educational program; abide by restrictions on travel; report on a regular basis to pretrial services; refrain from alcohol use; and execute a bail bond.  *See* 18 U.S.C. § 3142(c)(1)–(xiv).

It is the *Government's burden* to demonstrate that none of these conditions of release nor any combination of these or other conditions of release will reasonably assure Ms. Winner's appearance as required and the safety of the community.  18 U.S.C. § 3142(c), (f); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).  In making this determination, a court should take into account: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including among other things, the defendant's character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release.  18 U.S.C. § 3142(g)(1)–(4).  The Government has not met, and cannot meet, that burden here, especially in light of the new information set forth above.

With respect to release, the Government has no evidence to suggest that Ms. Winner will not appear in this action if released.  She has no criminal history or any other history to suggest that she would not appear as required.  *See United States v. Ceballo*, No. 12-80211-CR-Hurley/Hopkins, 2012 WL 7050591, at * 4 (S.D. Fla. Dec. 14, 2012) (the defendant's "lack of criminal history weighs heavily in favor of his pretrial release").  At the hearing, the Government made much of the fact that Ms. Winner took a recent trip to Belize—a sight-seeking trip over the Memorial Day weekend 2017 (which was after the date the Government alleges Ms. Winner unlawfully transmitted the intelligence reporting to an online news outlet), from which she returned [Winner Decl. ¶ 8].  Such a singular vacation does not—and this Court did not hold that it does—make her a flight risk.  The Government also suggested that a search for information about Tel Aviv indicates Ms. Winner has a propensity to flee; yet, Ms. Winner merely "clicked" on a link to check about cheap airfare—she never planned a trip there, nor is there any evidence to

12

suggest such a claim [*Id.* ¶ 9].[4]  The Government also noted Ms. Winner's journal entries.  While those journal entries may show a desire to travel to various locations around the world, they do not suggest that she will present any flight risk if released on conditions pending trial in this case, specifically a geographic restriction.  Indeed, "[s]ection 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it."  *Xulam* 84 F.3d at 444 (explaining that the legislative history of the Bail Reform Act acknowledges the feasibility of conditions even "where there is a substantial risk of flight").

Regarding dangerousness, the Government suggested at the initial detention hearing that Ms. Winner possesses classified information and will disclose that information if released.  Yet, despite making numerous comments at the last detention hearing—some of which the Government then had to retract as being untrue[5]—the Government has not come forward with any evidence that Ms. Winner disclosed any national defense information other than the intelligence reporting cited in the superseding indictment, and she has no history of disclosing such information.  The Government has not, for example, charged Ms. Winner with any offenses related to the thumb drive that she allegedly inserted into a computer while still in the Air Force, even though this was central to the Government's argument for detention at the initial hearing.  The Government has now had months to analyze the relevant computer and/or thumb drive to determine whether Ms. Winner actually downloaded classified information (which she did not).  Indeed, the superseding indictment repeats the same alleged singular disclosure as the original indictment.  In other words, the Government has not pointed to any other document she has allegedly "leaked," and her access

---

[4] The United States has an extradition treaty with Israel.  *See Protocol Amending the Convention between the United States of America and Israel of December 10, 1962*, July 6, 2005, *available at* https://www.state.gov/documents/organization/171403.pdf.  It therefore defies reason to believe that Winner was seeking to "flee" the United States, even if she had planned a trip there.

[5] *See* Exhibit A (email correspondence from Assistant United States Attorney Jennifer Solari to defense counsel and the Court dated June 29, 2017).

to classified information is limited to discovery in this case, which the Court has restricted [*See* Doc. 60]. Regardless, there are conditions that would protect the safety of others and the community, including restrictions on travel and supervision by her mother.

Ms. Winner is amenable to any condition the Court places on her and is willing to appear at every proceeding, and she specifically proposes the following conditions, in addition to those typical conditions placed on the majority of defendants who appear before this Court: (1) reside in her home in Augusta under the custody of a third-party custodian; (2) not travel beyond Richmond County, Georgia without the permission of her Pretrial Services Officer;[6] (3) have regular contact with her Pretrial Services Officer; or (4) have her parents post their property as a bond (or some combination thereof).

### C.   Courts Routinely Grant Bail To Defendants Charged with Similar Offenses.

While the foregoing argument demonstrates that there are conditions that will ensure her appearance as required and the safety of others and the community, significantly, the vast majority of courts have held that defendants charged with similar offenses were entitled to be released pending trial, as set forth in the chart below.[7]

---

[6] Ms. Winner's passport is in the possession of the FBI.

[7] One defendant, Donald Sachtleben, is omitted from this chart. *See United States v. Sachtleben*, Case No. 1:13-cr-200 (S.D. Ind.). Mr. Sachtleben was accused of disclosing information related to a foiled bomb attack in Yemen and retaining national defense information at his residence. He was charged with unauthorized disclosure of national defense information, in violation of 18 U.S.C. § 793(d), and unauthorized possession and retention of national defense information, in violation of 18 U.S.C. § 793(e), and he was detained at his initial appearance without objection. Ms. Winner submits that she is differently situated from Mr. Sachtleben because Mr. Sachtleben was also alleged to have distributed and possessed child pornography in a separate case. *See United States v. Sachtleben*, Case No. 1:12-cr-127 (S.D. Ind.). It is presumed under the Bail Reform Act "that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" such crimes. *See* 18 U.S.C. § 3142(e).

| DEFENDANT | NATURE OF CASE AND CHARGES | STATUS PENDING TRIAL |
|---|---|---|
| *Bryan Nishimura* Case No. 1:15-cr-145-KJN (E.D. Cal.) | Accused of downloading and storing classified military records on personal electronic devices, carrying classified materials when he traveled off base in Afghanistan, and bringing documents back to the U.S. at the end of his deployment.<br><br>Charged with unauthorized removal and retention of classified documents and materials, in violation of 18 U.S.C. § 1924. | Released |
| *David Howell Patreaus* Case No. 3:15-cv-47-DCK (W.D.N.C.) | Accused of sharing classified information regarding war strategy, intelligence capabilities, and identities of covert officers to his biographer/mistress.<br><br>Charged with unauthorized removal and retention of classified information, in violation of 18 U.S.C. § 1924. | Released |
| *John Kiriakou* Case No. 1:12-cr-127 (E.D. Va.) | Former CIA officer who was accused of leaking identity of colleagues involved in "enhanced" interrogation programs, specifically waterboarding, to a reporter.<br><br>Charged with disclosure of classified information identifying a covert agent, in violation of 50 U.S.C. § 421(a), 3 counts of transmission of national defense information, in violation of 18 U.S.C. § 793(d), and false statements, in violation of 18 U.S.C. § 1001(a)(1). | Released without objection by Government on personal recognizance and $250,000 unsecured bond, and conditions, including but not limited to:<br>• wife and brother had to sign bond within 5 days<br>• could not leave D.C. metro area without approval<br>• not allowed to move without approval<br>• avoid contact with witnesses<br>• report to pretrial services<br>• surrender passport and not obtain a new one |

| DEFENDANT | NATURE OF CASE AND CHARGES | STATUS PENDING TRIAL |
|---|---|---|
| *James Hitselberger* Case No. 1:12-cr-231 (D.D.C.)[8] | Accused of leaking classified materials concerning Bahrain to Hoover Institute.<br><br>Charged with 2 counts of unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e), and concealment, removal, or mutilation of a public record, in violation of 18 U.S.C. § 2071(a). | Initially detained for four and one half months, but then released into the High Intensity Supervision Program, which included conditions, including but not limited to:<br>• GPS location monitoring<br>• could not enter Union Station or any other bus or train station, or airport, that would allow access outside of the D.C. metropolitan area<br>• could not travel beyond 25 miles from Washington, D.C.<br>• had to meet with pretrial services once a week and call the pretrial services officer once a day<br>• had to surrender passport and agree not to obtain a new one<br><br>The court later modified the conditions of release without objection from the Government. |

[8] The magistrate judge detained Mr. Hitselberger, finding he presented both a danger to the community and a risk of flight, which could not be mitigated by any conditions of release.  On appeal to the district judge, pursuant to 18 U.S.C. § 3145(b), Mr. Hitselberger asserted he was not a danger to the community if released because he no longer had access to classified information, and the government did not contest the argument.  The issue, therefore, was whether there were any conditions that would reasonably assure Mr. Hitselberger's appearance as required.  The district judge was ultimately "satisfied" that the conditions imposed upon him would "reasonably" assure his appearance.  *See United States v. Hitselberger*, 909 F. Supp. 2d 4 (D.D.C. 2012).  It is also worth noting that Mr. Hitselberger had access to classified information produced by the government in his case.  *See United States v. Hitselberger*, Case No. 1:12-cr-231 (D.D.C.) Docket Entry No. 31 (Feb. 13, 2013).

| DEFENDANT | NATURE OF CASE AND CHARGES | STATUS PENDING TRIAL |
|---|---|---|
| *Jeffrey Sterling* Case No. 1:10-cr-485 (E.D. Va.) | Former CIA officer accused of leaking classified information about efforts to sabotage Iranian nuclear research to New York Times reporter.<br><br>Charged with 3 counts of unauthorized disclosure of national defense information, in violation of 18 U.S.C. § 793(d), 3 counts of unauthorized disclosure of national defense information, in violation of 18 U.S.C. § 793(e), unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e), mail fraud, in violation of 18 U.S.C. § 1341, unauthorized conveyance of government property, in violation of 18 U.S.C. § 641, and obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1). | Released on personal recognizance and unsecured bond of $10,000 by third-party custodian and conditions, including but not limited to:<br>• placed in custody of third-party custodian<br>• had to actively seek employment<br>• could not leave D.C. metro area without approval<br>• avoid all contact and communication with alleged victims or potential witnesses unless in presence of defense counsel<br>• report to pretrial services<br>• refrain from possessing firearm<br>• refrain from excessive use of alcohol<br>• undergo psychiatric treatment and take medications<br>• surrender passport and do not obtain a new one<br>• notify any employer of indictment and charges involved |
| *Thomas Drake* Case No. 1:10-cr-181 (D. Md.) | Senior executive of the NSA accused of leaking information regarding NSA waste and mismanagement to reporter.<br><br>Charged with 5 counts of willful retention of national defense information, in violation of 18 U.S.C. § 793(e), obstruction of justice, in violation of 18 U.S.C. § 1519, and 4 counts of making a false statement, in violation of 18 U.S.C. § 1001(a). | Released on conditions, including but not limited to:<br>• surrender any passport to Clerk's Office<br>• obtain no passport<br>• restrict travel to Maryland, D.C., and Virginia<br>• travel had to be approved by pretrial services |

| DEFENDANT | NATURE OF CASE AND CHARGES | STATUS PENDING TRIAL |
|---|---|---|
| **Stephen Jin-Woo Kim** Case No. 1:10-cr-225 (D.D.C.) | Former senior adviser for intelligence on detail to the State Department's arms control compliance bureau accused of sharing classified information from an intelligence report on North Korea with Fox News reporter. Charged with unauthorized disclosure of national defense information, in violation of 18 U.S.C. § 793(d), and false statements, in violation of 18 U.S.C. § 1001(a)(2). | Released on conditions, including but not limited to: <ul><li>bond in the amount of $100,000 secured by real property</li><li>report weekly by phone to pretrial services</li><li>no travel more than 25 miles outside of D.C. metro area except to California for work or to visit son with notice given to pretrial services and Government</li></ul> |
| **Shamai Leibowitz** Case No. 8:09-cr-632 (D. Md.) | Linguist for the FBI accused of leaking classified information to a blogger. Charged with disclosure of classified information, in violation of 18 U.S.C. § 798(a). | Released after initial appearance and arraignment with conditions, including but not limited to: <ul><li>required to report to pretrial services on regular basis</li><li>surrender passports and obtain no new passport</li><li>restricted travel to D.C.;</li><li>required to obtain approval for other travel</li><li>not allowed to move</li></ul> |
| **Kenneth W. Ford, Jr.** Case No. 8:05-CR-98-PJM / Case No. 8:05-cr-235-PJM (D. Md.) | Accused of keeping classified information from NSA, where he worked, in his home. Charged with aiding and abetting unauthorized possession of national defense information, in violation of 18 U.S.C. § 793(e), and making a material false statement to a government agency, in violation of 18 U.S.C. § 1001. | Released |
| **Samuel Berger** Case No. 1:05-MJ-175-DAR (D.D.C.) | Accused of removing classified documents from National Archives and storing them at his office, and destroying some documents. Charged with unauthorized removal and retention of classified material, in violation of 18 U.S.C. § 1924. | Released |

| DEFENDANT | NATURE OF CASE AND CHARGES | STATUS PENDING TRIAL |
|---|---|---|
| *Lawrence Franklin* Case Nos. 1:05-CR-225, 1:05-CR-421 (E.D. Va.) and 3:05-CR-48 (N.D. W.Va.) | Former Department of Defense employee accused of disclosing classified military information regarding U.S. policy toward Iran to pro-Israel lobbyists and an Israeli diplomat.<br><br>Charged with conspiracy to communicate national defense information, in violation of 18 U.S.C. § 793(g), 3 counts of communication of national defense information, in violation of 18 U.S.C. § 793(d), and conspiracy to communicate classified information, in violation of 18 U.S.C. § 371, in Case No. 1:05-CR-225.<br><br>Charged with unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e), in Case No. 1:05-CR-421. | Released on $100,000 unsecured bond |
| *Steven J. Rosen* Case No. 1:05-CR-225 (E.D. Va.) | Accused of disclosing classified national security information to journalists and unnamed foreign power.<br><br>Charged with conspiracy to communicate national defense information, in violation of 18 U.S.C. § 793(g), and communication of national defense information, in violation of 18 U.S.C. § 793(d). | Released on personal recognizance and $100,000 unsecured bond |

| DEFENDANT | NATURE OF CASE AND CHARGES | STATUS PENDING TRIAL |
|---|---|---|
| *Keith Weissman* Case No. 1:05-CR-225 (E.D. Va.) | Accused of disclosing classified national security information to journalists and unnamed foreign power.<br><br>Charged with conspiracy to communicate national defense information, in violation of 18 U.S.C. § 793(g), and communication of national defense information, in violation of 18 U.S.C. § 793(d). | Released on personal recognizance and $100,000 unsecured bond |

As the above makes clear, the norm for cases involving disclosure or retention of national defense information, given that there is no "presumption" for detention under § 3142, is pre-trial release or release with conditions.  Moreover, unlike these defendants, Ms. Winner is accused of leaking a single document a single time to a single source—a single alleged violation of 18 U.S.C. § 793(e).  This was a point the Court specifically made at the August 30, 2017, status conference, noting that other Espionage Act cases were different than this one, given that they involved repeated disclosures, over extended periods of time—a point supporting Ms. Winner's release here [*See* Doc. 84 pp. 10–11].  Respectfully, Ms. Winner submits that, to the extent the Court has any doubt whether there are conditions that the Court can impose upon her that will reasonably assure her appearance as required and the safety of others and the community, these prior cases resolve that doubt.  Detention should not be presumed.  It is not the norm.  It is not appropriate here.

## IV.   CONCLUSION

There is new information material to the issue of pre-trial detention that supports Ms. Winner's release.  Moreover, there are conditions that will reasonably assure Ms. Winner's appearance as required and the safety of any other person and the community.  For example, the Court may impose any combination of the following conditions: (1) reside in her home in Augusta

under the custody of a third-party custodian; (2) not travel beyond Richmond County, Georgia without the permission of her Pretrial Services Officer; (3) have regular contact with her Pretrial Services Officer; or (4) have her parents post their property as a bond.  These conditions will serve the purposes of 18 U.S.C. § 3142.  Ms. Winner is amenable to any condition imposed upon her by the Court.

WHEREFORE, pursuant to 18 U.S.C. § 3142(f), Ms. Winner respectfully requests that the Court (1) reopen the detention hearing, (2) find that there is a combination of conditions that will reasonably assure her appearance as required and the safety of any other person and the community, and (3) release her pending trial, and that the Court grant such additional relief as may be warranted.  In addition, the Defendant requests a hearing at the earliest practicable time to address this motion.

Respectfully submitted,

 *s/ John C. Bell, Jr.*
John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com


Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,
     CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

21

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
     **CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Jill E. McCook (Tn. Bar No. 033813)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
     **CALDWELL & BERKOWITZ, P.C.**
265 Brookview Centre Way, Suite 600
Knoxville, TN  37919
(865) 549-7129
JMCook@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
     **CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT**
**REALITY LEIGH WINNER**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

/s/John C. Bel, Jr.
John C. Bell, Jr.