**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

|                              |   |               |
|------------------------------|---|---------------|
|                              | * |               |
| **UNITED STATES OF AMERICA** | * |               |
|                              | * |               |
| **v.**                       | * | **CR 1:17-34** |
|                              | * |               |
| **Reality Leigh Winner**     | * |               |
|                              | * |               |
| **Defendant**                | * |               |

\*\*\*\*\*\*\*\*\*\*\*\*\*

## GOVERNMENT'S RESPONSE TO DEFENDANT'S BRIEF REGARDING THE ELEMENTS OF THE OFFENSE

### I.     INTRODUCTION

On October 3, 2017, the Defendant filed a brief "regarding the elements of the offense under 18 U.S.C. § 793(e) as they relate to the Government's *ex parte* withholding of discovery under CIPA § 4" (Dkt. No. 112).  The government hereby files this response to correct a number of significant misstatements of the law in the Defendant's brief.  As the government has clearly conveyed in prior filings and hearings, to convict a defendant under Section 793(e), the government must prove that a defendant in unauthorized possession of a document containing information relating to the national defense (hereinafter, "national defense information" or "NDI") communicated, delivered, or transmitted that document to someone not entitled to receive it, or retained it, and knew that doing so was against the law.  *See, e.g.,* Dkt. No. 99 at 12-13.  The defense's claim that other elements of the crime exist—such as "intent to injure the United States"—is plainly wrong, and the Court should reject it.  Furthermore, notwithstanding

the Defendant's claim that Section 793(e) "is a notoriously complicated statute," Dkt. No. 112 at

1, the meaning of its "essential terms" is "well-settled."  *See United States v. Drake*, 818 F.

Supp. 2d 909, 916 (D. Md. 2011).

## II.    DISCUSSION

Section 793(e) provides as follows:

> Whoever having unauthorized possession of, access to, or control over any
> document, writing, code book, signal book, sketch, photograph, photographic
> negative, blueprint, plan, map, model, instrument, appliance, or note relating to
> the national defense, or information relating to the national defense which
> information the possessor has reason to believe could be used to the injury of the
> United States or to the advantage of any foreign nation, willfully communicates,
> delivers, transmits or causes to be communicated, delivered, or transmitted, or
> attempts to communicate, deliver, transmit or cause to be communicated,
> delivered, or transmitted the same to any person not entitled to receive it, or
> willfully retains the same and fails to deliver it to the officer or employee of the
> United States entitled to receive it
>
> . . .
>
> [s]hall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 793(e).

To convict a defendant of violating 18 U.S.C. § 793(e) for communicating, delivering, or

transmitting, or for retaining, a "document" (rather than intangible "information"), the

government is required to prove beyond a reasonable doubt that: (1) the defendant had

unauthorized possession of a document; (2) the document related to the national defense; and (3)

the defendant willfully communicated, delivered, or transmitted the document to a person not

entitled to receive it, or willfully retained the document and failed to deliver it to the officer or

employee of the United States entitled to receive it.  *Id.*; *United States v. Ford*, No. PJM-05-0235

2

(D. Md.), Dkt. No. 38 (Jury Instruction No. 41) (Jury Instructions attached);[1] *see also United States v. Abu-Jihaad*, 630 F.3d 102, 135 (2d Cir. 2010) (consideration of communication of intangible information elements of 18 U.S.C. § 793(d)); *United States v. Kiriakou*, 898 F. Supp. 2d 921, 926 (E.D. Va. 2012) (same); *United States v. Kim*, 808 F. Supp. 2d 44, 55 (D.D.C. 2011) (same).[2]

Contrary to the Defendant's claim, the government is *not* required to prove: (1) that the disclosure of the classified intelligence reporting could threaten the national security of the

---

[1] Ford was charged with, *inter alia*, unauthorized retention of national defense information under 18 U.S.C. § 793(e).  In Jury Instruction No. 41, the court instructed the jury on the elements of the offense:

In order to prove the defendant under consideration guilty of Count One in the Superseding Indictment, the government must prove:

First, that on or about the date set forth in the Superseding Indictment, the defendant had unauthorized possession or control over documents relating to the national defense of the United States;

Second, that the defendant willfully retained the same documents and failed to deliver the documents to an officer and employee of the United States who is entitled to receive them.

[2] 18 U.S.C. § 793(e) "has exactly the same structure as § 793(d), except that it applies to those who have unauthorized, rather than lawful, possession of NDI" and does not require a demand for the return of the NDI.  *Kiriakou,* 898 F. Supp. 2d at 923 n.2; *see also Kim*, 808 F. Supp. 2d at 52 n.2.

United States, or (2) the specific *mens rea* requirements alleged by the Defendant, including intent to injure the United States. [3]

### A. Unauthorized Possession

First, the government must prove that a defendant had unauthorized possession of a document.  "Unauthorized possession" means possession of classified information by a person who:  (1) does not hold a security clearance; (2) holds a security clearance without the need to know;[4] or (3) holds a security clearance, has a need to know, but removed the classified information from the official premises without authorization.  *See Ford*, No. 05-cr-235 at Dkt. No. 38 (Jury Instruction No. 42); *see also United States v. Truong Dinh Hung*, 629 F.2d 908, 919 n.10 (4th Cir. 1980) ("The trial judge provided adequate content for this phrase by advising the jury that a person would have authorized possession if he had an appropriate security clearance and if he gained access to the document because it was necessary to the performance of his official duties.").

---

[3] As the Defendant concedes, the government need only prove that "the possessor ha[d] reason to believe" that disclosed *information* "could be used to the injury of the United States or to the advantage of any foreign nation."  The government need not prove the "reason to believe" element in a case such as this, where a tangible document, rather than intangible information, was disclosed.  Dkt. No. 112 at 9-10 n.4; *see Kiriakou*, 898 F. Supp. 2d at 923 ("[T]he 'reason to believe could' cause injury language applies to intangible communication only, not to documents or other tangibles."); *Drake*, 818 F. Supp. 2d at 916-18.

[4] A "need to know" is a determination by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized government function.  Exec. Order 13526 § 6.1(dd); s*ee Ford*, No. 05-cr-235 at Dkt. No. 38 (Jury Instruction No. 42).

4

The first two prongs of the definition of "unauthorized possession" reflect the definitions set forth in Executive Order 13526 § 4.1(a)(1-3).  The third prong reflects the definition set forth in Executive Order 13526 § 4.1(d) and also finds support in case law.  For example, the defendant in *United States v. McGuinness*, 33 M.J. 781 (N.M.C.M.R. 1991), had authority to access classified material but unlawfully retained it in his private residence located off the base, and contended that "because he was initially 'authorized' to possess the classified materials, he always remained 'authorized' to possess the materials and therefore, he cannot be guilty of violating § 793(e)."  *Id.* at 784.  The United States Navy-Marine Corps Court of Military Review rejected this argument.  In affirming the defendant's conviction, it held that his "authorized possession" of classified information *became "unauthorized"* when it was "remov[ed] . . . to his home in the civilian community."  *Id.* at 786 (emphasis added).  In particular, the Court of Military Review held, "[A]ppellant's initial authorized possession of the classified materials became unauthorized when he exceeded the parameters of the entrustment given to him to possess, have access to, or control the classified materials."  *Id.*

### B.  Relating to the National Defense

Second, the government must prove that the document contained "information relating to the national defense."  The term "national defense" has been broadly construed.  *See Gorin v. United States*, 312 U.S. 19, 28 (1941) (holding that the phrase "information relating to the national defense" as used in the Espionage Act is a "generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness").  The *Gorin* Court referred approvingly to the district court's jury instructions,

which stated that the term "'national defense' includes all matters directly and reasonably connected with the defense of our nation against its enemies." *Drake*, 818 F. Supp. 2d at 918-19 (citing *Gorin*, 312 U.S. at 30).

Courts have commonly held that, to constitute NDI, the information at issue must be "closely held." *See United States v. Squillacote*, 221 F.3d 542, 576-77 (4th Cir. 2000) (stating that, if the information is obtained "'from sources that were lawfully available to anyone who was willing to take the pains to find, sift and collate it,'" then it is not closely held (quoting *United States v. Heine*, 151 F.2d 813, 815 (2d Cir. 1945))). "[T]he central issue is the secrecy of the information, which is determined by the government's actions." *Id.* at 577.

Although the Defendant is correct in stating that whether information constitutes NDI is a question for the jury and that classification is not determinative of whether information constitutes NDI, she is wrong in maintaining that the status of the report she allegedly disclosed "as classified is not remotely dispositive of whether it is national defense information." Dkt. No. 112 at 7. Indeed, it is well-established that classification is relevant when determining whether information constitutes NDI. *See Truong*, 629 F.2d at 918 ("Certainly the classification of the documents was relevant to the question of whether they related to the 'national defense.'"); *United States v. Rosen*, 240 F.R.D. 204, 206 (E.D. Va. 2007) ("'Information relating to national defense' is sometimes referred to herein as 'NDI.' This type of information includes most classified information."); *United States v. Rosen*, 445 F. Supp. 2d 602, 623 (E.D. Va. 2006) ("[A]lthough evidence that the information was classified is neither strictly necessary nor always sufficient to obtain a prosecution under § 793, the classification of the information by the

6

executive branch is highly probative of whether the information at issue is 'information relating to the national defense . . . .'").

Finally, contrary to the Defendant's argument, this Court should not require the government to "demonstrate that the alleged classified intelligence reporting could threaten the national security of the United States if disclosed." Dkt. No. 112 at 4 (internal quotation marks omitted). As explained below, the plain language of Section 793(e) does not impose such a proof requirement on the government, and at least one court has explicitly said that the government need not provide such proof. *See Kim*, 1:10-cr-225 (D.D.C) at Dkt. Nos. 137, 198 (redacted opinions). Properly read, none of the elements of Section 793(e) requires the government to prove harm—whether potential or actual—to the national security occurring as a result of an unauthorized disclosure.

The Defendant's assertion that the government must prove that disclosure of the classified intelligence reporting could have threatened the national security of the United States is based on *United States v. Morison*, in which the Fourth Circuit imposed a "judicial gloss" on the meaning of "related to the national defense." 844 F.2d 1057, 1073-74 (4th Cir. 1988). The *Morison* decision, however, is not binding, and this Court, like the court in *Kim*, should reject its application. As explained in its opinion rejecting the defendant's motion for reconsideration of its prior ruling, the *Kim* court declined to adopt the *Morison* gloss for five primary reasons, all of which are equally applicable here. First, the definition in *Morison* was adopted to avoid overbreadth concerns, but defendant Kim (like the Defendant, here) had not raised overbreadth concerns. Second, the *Morison* court's definition is inconsistent with the language of the

statute.[5]  Third, the *Morison* approach requires the jury to second-guess the classification

decision of the information at issue, because an assessment of whether a disclosure could be

potentially damaging to national security "in effect calls into question the classification of the

information insofar as potential damage to national security is a requirement for classification."

Fourth, even courts in the Fourth Circuit since *Morison* have not applied *Morison* in the manner

urged by the defense.  Fifth, no court outside the Fourth Circuit has followed *Morison* on this

issue, and in fact, the court in *Abu-Jihaad* implicitly agreed with the position the government

advances here—that "the 'judicial gloss' the Fourth Circuit placed on 'national defense

information' is not appropriate."  *See Kim*, 1:10-cr-225 at Dkt. No. 198; *id.* at 9 (citing *United

States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 386-89 (D. Conn. 2009)).  Accordingly, the

government should not be required to prove that the Defendant's disclosure of the classified

intelligence reporting at issue could threaten national security.

In sum, to show that the classified intelligence reporting related to the national defense,

the government need show only that it falls under the broad definition of "national defense" in

*Gorin*, and that it was closely held.

### C.  Willful Communication, Delivery, or Transmission to a Person Not Entitled To Receive It or Retention

Third, the government must prove that the Defendant willfully communicated, delivered,

or transmitted the NDI to a person not entitled to receive it, or retained it and failed to deliver it

---

[5] Kim was charged under 18 U.S.C. § 793(d), but the relevant "relating to the national defense" language in subparts (d) and (e) is identical.

to the officer or employee of the United States entitled to receive it.  Transmission to a person

not entitled to receive the information, and retention, are self-explanatory.  As the Fourth Circuit

stated in *Morison*:

> Both [Section 793(d) and (e)] plainly apply to "whoever" having access to
> national defense information has under section 793(d) "wilfully communicate[d],
> deliver[ed] or transmit[ted] ... to a person not entitled to receive it," or has
> retained it in violation of section 793(e).  The language of the two statutes
> includes no limitation to spies or to "an agent of a foreign government," either as
> to the transmitter or the transmittee of the information, and they declare no
> exemption in favor of one who leaks to the press.  It covers "anyone."  It is
> difficult to conceive of any language more definite and clear.

844 F.2d at 1063 (first alteration added).

Turning to the willfulness standard, the Defendant, at the outset, correctly provides the

definition of willfulness from *Bryan v. United States*, 524 U.S. 184 (1998), that applies to the

charged crime.  However, the Defendant then incorrectly claims that there are a number of

"specific *mens rea* requirements" that apply.  *See* Dkt. No. 112 at 9-13.  Contrary to the

Defendant's claims, the law is clear:  to meet the *Bryan* standard, the government need prove

only that the Defendant knew her conduct was unlawful.  Given the Defendant's employment

and security clearance history, with the attendant extensive security training she received, this is

a low hurdle for the government, and the Defendant's claim that the government must provide

"*any* discovery that bears on the Defendants' [sic] state of mind" is overly broad.  Dkt. No. 112

at 8; *see Kiriakou*, 898 F. Supp. 2d at 925 ("Kiriakou was a government employee trained in the

classification system who could appreciate the significance of the information he allegedly

disclosed.  Accordingly, there can be no question that Kiriakou was on clear notice of the

illegality of his alleged communications."); *id.* at 926-27 (denying defendant's requests for discovery that would support a good faith defense "because any claim that he acted with a salutary motive, or that he acted without a subversive motive, when he allegedly communicated NDI to journalists is not relevant to this case").

Courts have explicitly held that, in Section 793 cases, the government need only meet the "simple" willfulness standard set forth in *Bryan*, and not the "specific" *mens rea* requirements as alleged by the Defendant.  *See Drake*, 818 F. Supp. 2d at 916 ("To prove Mr. Drake unlawfully retained documents under Section 793(e), the Government need prove only that he acted with simple willfulness."); *id.* at 917 ("It is irrelevant whether the defendant personally believed that the items related to the national defense. . . .  The language 'has reason to believe' does not create a subjective test for the entire statute and does not change or modify the meaning of willfulness."); *id.* at 918 (explaining the applicability of the *Bryan* standard).[6]

Finally with respect to the "willfulness" standard, the Defendant erroneously claims that the government "must prove that the Defendant *intended* to injure the national security of the United States" in disclosing the classified intelligence reporting.  Courts have uniformly held that

---

[6] The Defendant also cites the jury instructions in *United States v. Gowadia* in claiming that the government must prove more than simple willfulness.  *See* Dkt. No. 112 at 9-10 (citing *United States v. Gowadia*, No. 1:05-486-SOM-KSC (D. Haw.) at Dkt. Nos. 508, 730).  *Gowadia* was a much different case, as it also involved intangible information as well as charges under 18 U.S.C. § 794, all of which had to be accounted for in a single set of jury instructions.  Moreover, *Gowadia* was charged in the Ninth Circuit, not the Eleventh Circuit.  In any event, the cases cited by the Defendant regarding due process considerations, judicial estoppel, and vagueness, *see* Dkt. No. 112 at 10, have no bearing here, as no rights are conferred on this Defendant as a result of the government agreeing—under a different set of facts in a different Circuit—to prove more than required under applicable law.

Section 793 does not require proof of such intent.  *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 135;

*Hitselberger*, 991 F. Supp. 2d 101, 106 (D.D.C 2013) (explaining the applicability of simple

willfulness standard in *Bryan*, and describing the "core of 'willful' misconduct" as "act[ing] with

the knowledge or intent to disregard the law, not an evil intent to injure the United States"); *Kim*,

808 F. Supp. 2d at 55 (reciting the elements of the offense); *Kiriakou*, 898 F. Supp. 2d at 925

("[I]n the few jurisdictions where the disclosure of intangible NDI in violation of § 793(d) has

been prosecuted, the government has not been required to prove that the defendant intended to

harm the United States or to aid a foreign government.").  The only Section 793 case that the

Defendant cites in support of her position, *Truong*, does not actually stand for that position.[7]  In

fact, Truong claimed on appeal that his conviction under Section 793(e) was invalid because

"793(e) itself does not contain evil intent as an element necessary for a conviction."  629 F.2d at

---

[7] The First Amendment cases cited by the defense are inapposite.  As the Fourth Circuit stated in *Morison*, "[a]ctually we do not perceive any First Amendment rights to be implicated here."  844 F.2d at 1068.  The court later explained:

> [I]t seems beyond controversy that a recreant intelligence department employee who had abstracted from the government files secret intelligence information and had wilfully transmitted or given it to one "not entitled to receive it" as did the defendant in this case, is not entitled to invoke the First Amendment as a shield to immunize his act of thievery.  To permit the thief thus to misuse the Amendment would be to prostitute the salutary purposes of the First Amendment.  Sections 793(d) and (e) unquestionably criminalize such conduct by a delinquent governmental employee and, when applied to a defendant in the position of the defendant here, there is no First Amendment right implicated.

*Id.* at 1069-70.

11

918.  The court agreed that Section 793(e) does not require "evil intent," and rejected the

argument that the absence of that requirement rendered the statute overbroad.  *Id.* at 918-19

(contrasting Section 793(e) with other sections of the Espionage Act).  It is thus indisputable that

the government need not prove intent to injure the United States to convict a defendant under

Section 793(e).[8]

---

[8] Insofar as the court in *Rosen* required the government to prove a defendant's bad faith purpose
to either harm the United States or to aid a foreign government, *see United States v. Rosen*, 520
F. Supp. 2d 786, 793 (E.D. Va. 2007), that requirement clearly would not apply here for two
reasons.  First, the *Rosen* court explicitly tied that interpretation to the "reason to believe"
language that applies only to "oral disclosures rather than document disclosures."  *Id.*  Second,
the judicial gloss imposed in *Rosen* can be attributed to the concern that the defendants were
employees of the American Israel Public Affairs Committee, rather than clearance-holding
government employees familiar with the classification system.  For this reason, the defense's
reliance on *Rosen* throughout its brief is misplaced.  As the *Kiriakou* court stated in
distinguishing *Rosen*:

> The government argues that the reasoning in *Rosen* is inapplicable to its case
> against Kiriakou because "Kiriakou had a recognized obligation not to divulge
> classified, national defense information to those not entitled to receive it."  Gov.'s
> Resp. at 10.  The government's argument is well taken.  Specifically, Kiriakou
> was a government employee trained in the classification system who could
> appreciate the significance of the information he allegedly disclosed.
> Accordingly, there can be no question that Kiriakou was on clear notice of the
> illegality of his alleged communications.  The facts thus clearly differentiate his
> case from *Rosen*.

*Kiriakou*, 898 F. Supp. 2d at 925.  Like Kiriakou, the Defendant was a government employee,
trained in the classification system, who could appreciate the significance of the information she
disclosed and was aware of the illegality of doing so.  *See also Hitselberger*, 991 F. Supp. 2d at
106 ("Even if the classification system is not 100% accurate, as Mr. Hitselberger claims, his
training places him on notice that the government considers information contained in classified
documents important to national security.").

### III.    CONCLUSION

As set forth above, the government must prove the following in this prosecution:  (1) the Defendant had unauthorized possession of the classified intelligence reporting; (2) the classified intelligence reporting related to the national defense; and (3) the Defendant willfully communicated, delivered, or transmitted the classified intelligence reporting to a person not entitled to receive it, or willfully retained the same and failed to deliver it to the officer or employee of the United States entitled to receive it.  This Court should reject the Defendant's attempts to add additional elements of proof, which are contrary to well-established precedent.[9]

Respectfully submitted,

R. BRIAN TANNER
ACTING UNITED STATES ATTORNEY

*//s// Jennifer G. Solari*

Jennifer G. Solari
Assistant United States Attorney

*//s// David C. Aaron*

David C. Aaron
Trial Attorney
U. S. Department of Justice
National Security Division

*//s// Julie Edelstein*

Julie A. Edelstein

---

[9] Notably, the relief the government seeks under Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, is appropriate even if considered under the defense's incorrect statement of the law.

13

Trial Attorney
U. S. Department of Justice
National Security Division

14

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 13th day of October 2017.

R. BRIAN TANNER
ACTING UNITED STATES ATTORNEY

*//s// **Julie A. Edelstein***

Julie A. Edelstein
Trial Attorney

600 E Street, N.W.
Washington, D.C. 20004
(202) 233-2260