**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **VERSUS** | * | **NO. 1:17-CR-0034** |
| | * | |
| **REALITY LEIGH WINNER** | * | |
| | * | |
| * * * * * * * * * * * * * * * * | * | |

## DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR A HEARING

NOW INTO COURT, through undersigned counsel, comes Defendant Reality Leigh Winner ("Ms. Winner" or the "Defendant"), who respectfully appeals the Detention Order of Magistrate Judge Brian K. Epps [Doc. No. 115] pursuant to 18 U.S.C. § 3145. For the reasons set forth below, Ms. Winner respectfully requests that the motion be determined promptly as contemplated by 18 U.S.C. § 3145(b) and that the Court (1) revoke Magistrate Judge Epps's order of detention, (2) find that there is a combination of conditions that will reasonably assure her appearance as required and the safety of any other person and the community, and (3) release her pending trial, as well as grant such additional relief as may be warranted. In addition, Ms. Winner requests a hearing at the earliest practicable time to address this Appeal.

## I.    INTRODUCTION

Magistrate Judge Epps held two detention hearings in this case, which included evidence from at least four defense witnesses, as well as argument from both counsel and over fifty pages of legal briefs. After the second hearing, Magistrate Judge Epps issued an eight-page order detaining Ms. Winner in this non-presumption case, wholly ignoring evidence favorable to the defendant; making findings that were not supported by any of the evidence presented at the detention hearings; and making public findings and pronouncements that go far beyond weighing

1

the evidence presented, but instead, reflect imbalanced treatment in the analysis.   Magistrate Judge Epps's ruling is not only inconsistent with the governing statute, which provides a presumption of liberty in a case such as this one, but it also departs from overwhelming precedent favoring pretrial release.   Stunningly, his ruling also improperly equates Ms. Winner's alleged conduct—who is accused only of leaking a single document, a single time, to a single domestic source, for no financial remuneration, to a news outlet—to the extreme conduct of individuals like Edward Snowden and Julian Assange.

This Court must nonetheless examine whether detention is warranted *de novo*.   It must independently determine whether the Government has proven that no condition or combination of conditions will *reasonably* assure Ms. Winner's appearance as required and *reasonably* assure the safety of the community.   Among other things, the Government has not, and cannot, overcome the presumption of liberty because there are such conditions.   The Court could require that: (1) Ms. Winner reside in her home in Augusta under the custody of her mother, who has agreed to serve as a third-party custodian; (2) Ms. Winner not travel beyond Richmond County, Georgia without the permission of her Pretrial Services Officer and the Government; (3) Ms. Winner not possess or access any electronic device capable of accessing the Internet and not access the Internet through any such device or any other means; (4) Ms. Winner not communicate with any media outlet; (5) Ms. Winner have regular contact with her Pretrial Services Officer; (6) Ms. Winner wear a monitoring bracelet; (7) Ms. Winner surrender her passport[1] and agree not to obtain a new one; and (8) Ms. Winner have her mother and step-father post their substantial property as a bond. Indeed, these are even more stringent conditions than those placed on other defendants charged with similar offenses—*almost all of whom were released pending trial*.   This Court should revoke the unjust order of pretrial detention and

---

[1] Ms. Winner's passport is currently in the possession of the FBI.

release Ms. Winner with appropriate conditions pending trial.

## II.      STANDARD OF REVIEW

The Court must promptly review *de novo* an order by a magistrate judge detaining a defendant. 18 U.S.C. § 3145(b); *United States v. Hurwitz*, No. 116-078, 2016 WL 5952744, at *1 (S.D. Ga. Oct. 13, 2016) (Hall, J.) ("A district court must promptly review *de novo* the propriety of a magistrate judge's pretrial detention order when requested." (citation omitted)); *see also United States v. Barbeito*, No. 2:09-cr-222-01, 2010 WL 148379, at *1 (S.D. W.Va. Jan. 12, 2010) (distinguishing between appeals taken pursuant to § 3145(b) and appeals taken pursuant to Rule 59 of the Federal Rules of Criminal Procedure). "In doing so, the [] court is required to independently consider all of the facts properly before it."  *United States v. Field*, No. 6:13-cr-257-Orl-40TBS, 2017 WL 2103424, at *4 (M.D. Fla. May 15, 2017) (citing *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988)). The Court may also consider new evidence and hold an evidentiary hearing. *King*, 849 F.2d at 490–91.

In its *de novo* review, the Court's inquiry is informed by 18 U.S.C. § 3142. The Court must determine whether the Government has overcome the presumption of liberty and proven that there are no conditions that will *reasonably* assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). In conducting this inquiry, the Court considers four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). But "consideration of such factors does not 'modif[y] or limit[ ] the presumption of innocence.'" *United States v. Shine*, No. 2:17-cr-102-MHT, 2017 WL 1591890, at *1 (M.D. Ala. Apr. 27,

2017) (quoting § 3142(j)) (alterations in original).

## III.   DEFENDANT'S BACKGROUND

Ms. Winner is currently twenty-five (25) years old, and despite the charge in this action and the Government's assertions, she has great respect and love for this country.   Upon graduation from high school, she turned down a full engineering scholarship to Texas A&M to enlist in the United States Air Force because "[s]he wanted to serve our country" [Doc. 97 ¶ 4; Doc. 120 p. 96].   She served in the Air Force for six years, and was honorably discharged in December 2016 [Doc. 97 ¶ 4; s*ee also* Doc. 98 ¶ 11].   She received a commendation medal for her work on an Afghan mission, and has consistently received high evaluations [Doc. 97 ¶ 4].

While in the Air Force, Ms. Winner's proficiency in languages garnered a placement at the Defense Language Institute in Monterey, California [*Id.* ¶ 5].   There she obtained an associate's degree in the Persian-Farsi and Dari courses [*Id.*; Doc. 98 ¶ 11].   Today, she is fluent in Farsi, Dari, and Pashto [*Id.*].   While in the Air Force, she trained in Texas and spent time at Fort Meade, Maryland [*Id.* ¶ 6].   She also served for approximately six months at a Department of Defense facility in Augusta [*Id.*].   Ms. Winner, though, never served abroad and has no experience living in another country.

While she could attend college, Ms. Winner instead has a strong desire to work for a humanitarian organization,[2] and she was making efforts in that regard before her arrest [*See* Doc. 120 pp. 55–57, 67–68, 98–99].   In fact, she skipped college after graduating from high school so that she could "join the Air Force so she could make a difference[,]" and she had hoped to continue that effort through humanitarian work. Because she speaks Farsi, Dari, and Pashto (languages spoken in the Middle East), she had a particular interest in working in that part of the

---

[2] The Government even conceded this point during the second detention hearing [Doc. 120 p. 111 ("I know she's very interested in humanitarian work and all those sorts of things and I don't take any of that away from her.")].

world [*Id.* at 97–98]. And as her sister stated, Ms. Winner "thought it was one of her life's missions and it became one of her life goals to go to Afghanistan and help . . . with humanitarian aid[,]" and because "she knew the languages, she felt that she was in a unique position to help people there and that was something that she really wanted to do" [*Id.* at 98].

While she searched for such an opportunity, Ms. Winner returned to Augusta upon her discharge from the Air Force to become a contractor for Pluribus International Corporation ("Pluribus") [*Id.* ¶ 7]. While she had not been living in Augusta long before the alleged events giving rise to this prosecution occurred (approximately six months), she had begun developing a network of friends and colleagues with interests common to her own [*Id.* ¶ 10]. She even had a date planned at the time of her arrest [*Id.*]. She had become part of the community through her teaching of yoga and spin classes and her volunteer work at the local animal shelter [*Id.*; Doc. 98 ¶ 9]. This was typical behavior for Ms. Winner, as she had previously been an active participant in her community in Maryland, where she volunteered for Athletes Serving Athletes, which assists disabled people who run marathons and who participate in sporting events in which they would otherwise not be able to participate [Doc. 97 ¶ 6; Doc. 98 ¶ 9].

Ms. Winner's ties to the Augusta community are particularly strong given that her mother has made arrangements to move to Augusta and live with her during the pendency of this action [*See* Doc. 98]. And there can be no doubt that Ms. Winner is very well connected with her family, especially her mother and step-father, who reside in Texas and who travelled to Augusta to testify before this Court regarding the issue of detention [Doc. 97 ¶ 11; Doc. 98 ¶ 7; Doc. 120 p. 66]. She was very close to her father, who passed away in December 2016 [Doc. 97 ¶ 11]. She is also close to her biological sister, who resides in Michigan and who traveled to Augusta to support Ms. Winner during the second detention hearing, as well as her godson and other family

members who reside in Wisconsin [*Id.*; Doc. 98 ¶ 8].

As for her health, Ms. Winner is vegan and Kosher [*See id.* ¶ 12]. She has suffered health problems since her detention because of her dietary habits. She has also been diagnosed with bulimia, a condition exacerbated by her detention. She is taking medication to aid her digestion of prison food and antibiotics because of issues with her skin [*See id.* ¶ 13]. Her mother is concerned about her nutrition [Doc. 120 p. 123].

Regarding her employment and education, Ms. Winner has always had hopes of continuing her education, but she put her humanitarian desires first. She is currently halfway through a Bachelor's Degree program [*Id.* ¶ 14; Doc. 98 ¶ 11]. If released, she intends to continue her education [Doc. 97 ¶ 14.]. She also intends to continue teaching yoga and spin classes in order to earn income while she faces the charges in this action, and to volunteer at the local animal shelter [*Id.*].

As for her interests outside of fitness and animals and her personality, Ms. Winner has "an interesting sense of humor" that can even be "not appropriate" [Doc. 120 pp. 95, 102]. She has a legitimate interest in the Middle East and religion. Concerning religion, Ms. Winner "likes to study religion" [*Id.* at 99]. She was raised Christian and has studied all kinds of religions, including Judaism, Buddhism, and Islam [*Id.*]. She also has interest in the environment—an interest strong enough to visit with Senator Perdue of Georgia about her views [*Id.* at 100–01].

## IV.   ARGUMENT AND CITATION OF AUTHORITIES

Despite presiding over two detention hearings that lasted almost six hours and receiving over fifty pages of legal briefs, excluding exhibits, the magistrate judge issued an eight-page detention order that (a) failed to consider the evidence and argument presented by Ms. Winner, (b) made findings that were not supported by the evidence presented, and (c) deviated from the

precedent of pretrial release. Upon *de novo* review, the applicable § 3142(f) factors strongly counsel in favor of pretrial release because there are conditions that can be imposed upon Ms. Winner that will *reasonably* assure her appearance as required and *reasonably* assure the safety of others and the community.

## A.      The Magistrate Judge's Order of Detention is Flawed

Prior to addressing the statutory bail factors to be taken into account in this *de novo* review, the Defense addresses several errors in Magistrate Judge Epps's order of detention [Doc. 115]. *See United States v. Griffin*, 380 F. App'x 840, 842 (11th Cir. 2010) (explaining that a defendant may waive issues not appealed to the district judge).[3]   These errors not only support revocation of the magistrate judge's detention order, but provide reason for this Court to hold an additional evidentiary hearing so that it may render an impartial decision regarding release.

### 1.      The Magistrate Judge Failed to Consider Evidence Submitted by Ms. Winner and Made Findings That Were Not Supported by the Evidence Before Him

Magistrate Judge Epps decided to detain Ms. Winner on the basis of factual findings that simply were not supported by the evidence presented at the detention hearing.   Indeed, the magistrate judge made these findings, and concluded that there are no conditions that would reasonably assure the safety of the community or the appearance of Ms. Winner, only after ignoring nearly all favorable evidence presented by Ms. Winner in support of pretrial release.

First, the magistrate judge found that Ms. Winner poses a danger because she "insert[ed] a thumb drive into a top-secret computer for two minutes" while still in the Air Force [Doc. 115

---

[3] To that end, with respect to the first detention hearing, the magistrate judge did not explain why the condition of Ms. Winner's mother and step-father posting their house as bond alone or combined with additional conditions (like those imposed in other Espionage Act cases), such as placing Ms. Winner in the custody of a third party (i.e., conditions that directly relate to the safety and flight concerns raised by the Government and the Court during the initial detention hearing), would not reasonably assure Ms. Winner's appearance as required and the safety of the community. Moreover, Ms. Winner submits that, during the initial detention hearing, the Government did not present any reliable evidence demonstrating that Ms. Winner is a flight risk.

at p. 5]. This thumb drive incident was a focus at the initial detention hearing, during which the magistrate judge expressed concern that Ms. Winner could have downloaded classified materials onto the thumb drive [*See* Doc. 29 p. 107]. Significantly, however, prior to the second detention hearing, the Government admitted that in the months that followed the initial detention hearing, it analyzed the system logs for the computer in question and found *no evidence* that Ms. Winner downloaded classified information onto the thumb drive [Doc. 100 p. 4 n.2]. The magistrate judge entirely failed to address this fact in the recent order. Instead, the magistrate judge continued to speculate—without evidence—that Ms. Winner could have sensitive information on the thumb drive, and he used this speculation as a basis to overcome the presumption of liberty [*See* Doc. 115 pp. 5–6].

Second, the magistrate judge determined that Ms. Winner is a risk of flight because she has "financial means to flee the country" [*Id.* at 8]. But the evidence shows that Ms. Winner had only $30,000 in her bank account, which is doubtfully enough for a twenty-five year old to use to flee the United States and live on for the rest of her life [Doc. 120 p. 120]. *See, e.g.*, *United States v. Pon*, No. 3:14-cr-75-J-39PDB, 2014 WL 3340584, at *5 (M.D. Fla. May 29, 2014) (finding risk of flight because, among other things, the defendant "is a very wealthy man whose assets include hundreds of thousands of dollars in accounts and multiple parcels of real property" and who had traveled to China on multiple occasions and owned a condominium there). Moreover, Magistrate Judge Epps cited to no evidence as to how Ms. Winner could "flee the country"—especially considering that she lacks a passport and that the Court could require she wear a monitoring bracelet, as Ms. Winner has offered as a condition of her release.

Third, in the section addressing the "history and characteristics" of Ms. Winner, the magistrate judge wrote, "the Court finds . . . that Defendant admittedly 'hates' America" [Doc.

115 p. 5].  The magistrate judge repeated this sentiment multiple times in the order, stating that "Defendant hates the United States and has plotted against the government" and that Ms. Winner is "an American with years of national service and access to classified information who hates the United States and desires to damage national security" [*Id.* at 5, 7].  The magistrate judge's statements are incorrect, concerning, and without evidentiary support.  Certainly, if Ms. Winner "hated" America, she likely would have engaged in conduct warranting additional charges here beyond the alleged disclosure of a single document, a single time, to a single recipient.

Ms. Winner, rather, volunteered for and served honorably in the United States Air Force for six years. She received a commendation for her work on an Afghan mission and consistently received high evaluations [Doc. 97 ¶ 4].  The magistrate judge overlooked these facts and found that Ms. Winner hates the nation she volunteered to serve based on little more than selected excerpts of private Facebook conversations between Ms. Winner and her sister in early 2017. Regarding these conversations, Ms. Winner's sister testified that the two sisters were discussing policy matters, including environmental issues, about which Ms. Winner felt strongly, and that the two sisters frequently "used a lot of hyperbole" in such conversations [*See* Doc. 120 pp. 104, 114].  These isolated statements, which Ms. Winner made in "safe" conservations with her sister [*See id.* at 104], hardly provide basis for the sweeping and unsupported conclusions that the magistrate judge drew regarding Ms. Winner's loyalty to her country.

Finally, the magistrate judge determined that the testimony of Special Agent Garrick revealed that Ms. Winner was preparing a "covert communications package" [Doc. 115 p. 6]. Specifically, he determined that Ms. Winner "made an extended effort to develop stealth Internet capabilities during the same time period she began her employment as an NSA subcontractor" by "download[ing] a Tor browser that allows anonymous Internet operations[,]" "attempt[ing] to set

up a single-use email account for anonymous email[,]" and "research[ing] how to unlock her cell phone and use it anonymously" [*Id.*]. But in reaching this determination, Magistrate Judge Epps unquestionably did not consider (and, indeed, entirely ignored) the evidence presented by Ms. Winner that directly undermined the testimony of Special Agent Garrick.  For example, the magistrate judge ignored the following evidence: (1) that millions of people use a Tor browser every day for legitimate uses [Doc. 96-1; Doc. 120 pp. 61–63, 92]; (2) that anonymous email accounts can be used for protecting one's privacy [Doc. 120 pp. 80–81]; (3) that replacing a SIM card in a cellphone is not uncommon or illegal [*Id.* at 58–59]; (4) that Ms. Winner's research on her computer could very well be related to her work as a linguist [*Id.* at 68, 72]; and (5) that Ms. Winner desires to travel the world [*Id.* at 74].  In the end, Special Agent Garrick conceded that there was nothing wrong or suspicious with using any of these privacy-enhancing items and that Ms. Winner may have used such items for non-nefarious reasons — testimony that Magistrate Epps wholly ignored [*See id.* at 61–62, 82–83].

      **2.**      **The Magistrate Judge's Consideration of Pretrial Release Rulings in Cases Involving Similar Conduct was Incomplete and Misguided**

In seeking release, Ms. Winner asserted that "the vast majority of courts have held that defendants charged with similar offenses were entitled to be released pending trial" [Doc. 96-1 p. 14].  In support of this fact, Ms. Winner submitted a chart listing thirteen cases from the last twelve years in which defendants were alleged to have improperly disseminated or retained classified information and were *granted* pretrial release [*See id.* at 15–20].  Magistrate Judge Epps determined that "many of the cases touted by Defendant are materially distinguishable," but then distinguished only *five* of those thirteen cases.  Magistrate Judge Epps did not address, let alone attempt to distinguish, the other *eight* cases cited by Ms. Winner in which defendants were alleged to have committed similar or even more serious conduct and were granted pretrial

10

release [*See* Doc. 115 p. 3].

Even for the cases Magistrate Judge Epps did address, the analysis was incomplete. Magistrate Judge Epps noted that three of the cases involved misdemeanor convictions, but he failed to address the defendants' conduct in those cases which were arguably far more severe than the instant case.  For instance, Ms. Winner noted that while General David Howell Petraeus was charged with the misdemeanor violation of unauthorized removal and retention of classified information, the underlying factual conduct charged against him involved the disclosure of eight notebooks that contained "classified information regarding the identities of covert officers, war strategies, intelligence capabilities and mechanisms, diplomatic discussions, quotes and deliberative discussions from high-level National Security Council, and [General] Petraeus's discussions with the President."  *See United States v. Petraeus*, Case No. 3:15-cr-47-DCK (W.D.N.C. Mar. 3, 2015) (Rec. Doc. No. 3 p. 9 ¶ 17).  Ms. Winner also explained that General Petraeus was also caught on audio recordings revealing TOP SECRET information to newspaper reporters concerning "sensitive military campaign and operations."  *In the Matter of the Search of     (Sealed)*, No. 1:13-SW-273 (E.D. Va. 2013), *available at* http://www.politico.com/f/?id=00000155-3054-d270-ab57-f254ada80000 (Application for Search Warrant ¶¶ 31–32).[4]  Magistrate Judge Epps entirely ignored these facts.

### 3.  The Magistrate Judge Did Not Consider the Stringent Conditions of Release Proposed by Ms. Winner

Significantly, the magistrate judge did not consider any of the stringent conditions proposed by Ms. Winner (including, for example, that Ms. Winner reside in her home in Augusta

---

[4] Ms. Winner has an absolute right to proceed to trial and assert her innocence—just like each of the defendants cited by the magistrate judge had before they entered into their guilty pleas.  That these defendants engaged in plea bargaining and chose to enter into guilty pleas to misdemeanors (an option not presented to Ms. Winner) has no relevance on whether Ms. Winner should be detained under § 3142.  Rather, these cases are relevant, especially the case of General Petraeus (and other cases involving similar and more serious conduct), because they illustrate that courts can and have fashioned conditions of release pending trial or sentencing for defendants accused of conduct similar to that alleged here.

under the custody of her mother, who has agreed to serve as a third-party custodian, and that Ms. Winner not possess or access any electronic device capable of accessing the Internet and not access the Internet through any such device or any other means), nor Ms. Winner's declaration that she would abide by any condition placed upon her by the Court [*See* Doc. 97 ¶ 15].[5]  Failure to consider whether these conditions would reasonably assure Ms. Winner's appearance as required and the safety of the community—and they would—was in error.  *See United States v. Gerkin*, 570 F. App'x 819, 822 (10th Cir. 2014) (the Bail Reform Act "requires that the court consider a range of alternatives to pre-trial confinement before ordering detention and, if detention is ordered, to explain why lesser conditions are inadequate"); *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996) (revoking order of detention where neither "the magistrate judge [nor] the district judge fully explored the commitments offered by the [defendant's] witnesses or the [defendant's] proffer that he was willing to abide by whatever conditions the court imposed"); *United States v. Berrios-Berrios*, 791 F.2d 246, 251 (2d Cir. 1986) (remanding to the district court because the district court failed to "explain on the record the extent to which it considered any alternatives to incarceration and, if so, on what basis they were rejected"); *see also United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991) (remanding to district judge for consideration of "the possibility of less restrictive alternatives to detention").

### 4. The Magistrate Judge's Order Went Beyond An Evaluation Of The Relevant Factors

The Bail Reform Act does not "permit[] a pretrial determination that the person is guilty."  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (citing *United States v.*

---

[5] Ms. Winner proposes stringent conditions despite "[t]he doctrine that the federal courts are obligated to release those accused of non-capital offenses under the least restrictive alternative conditions which will provide reasonable assurance that the accused will appear in court[, which] is founded on the Eighth Amendment and presumption of innocence."  *United States v. Cowper*, 349 F. Supp. 2d 560, 562 (N.D. Ohio 1972) (addressing law in existence before the Bail Reform Act); *see also* 18 U.S.C. § 3142(c).

*Edson*, 487 F.2d 370, 372 (1st Cir. 1973); *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969)); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (explaining that § 3142(g) "neither requires nor permits a pretrial determination of guilt"). Indeed, "if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Motamedi*, 767, F.2d at 1408 (citation omitted).

Here, while the magistrate judge was required to address the weight of the evidence, respectfully, the eight-page detention order went beyond consideration of the pertinent factors in the pretrial detention analysis. For example, the magistrate judge repeatedly found that Ms. Winner "hates" the United States [Doc. 115 p. 5, 7]. However, instead of weighing the evidence, as required 18 U.S.C. § 3142, the magistrate judge simply declared these findings as true, without so much as referencing (let alone weighing) countervailing evidence submitted at the detention hearing placing these quotes in the proper context [*see supra*, Section IV.A.1]. Likewise, in statements reflecting a lack of perspective, the magistrate judge repeatedly referenced comments involving Julian Assange and Edward Snowden [*see* Doc. 115 at p. 6]. Of course, those cases involved individuals alleged to have made countless disclosures of classified information, in many cases for pecuniary gain; here, the Government has alleged that the defendant disclosed one document, one time, to one recipient, with no allegations of financial gain by the defendant. The magistrate judge also found that Ms. Winner "admitted [to the FBI] that she knew the document contained information . . . that would be valuable to adversaries of the United States" [Doc. 115 p. 4]. However, the magistrate judge failed to note that Ms. Winner added a caveat in her FBI statement that the disclosure would have such effects only if the information was not already known by adversaries and, significantly, she believed it likely was already known by them [*See* Doc. 100-1 pp. 68–69]. This failure to weigh the evidence was

13

particularly prejudicial given the failure to note this countervailing evidence on a potential element of the offense.

Strikingly, the magistrate judge's written order also does not reference, in any detail, favorable or mitigating evidence for Ms. Winner. *Not once* did the magistrate judge reference Ms. Winner's presumption of innocence, and the only favorable comment made with respect to Ms. Winner is that she served in the Air Force, has a "clean criminal history" and has "loving and committed parents" [Doc. 115 p. 5]. Particularly in a high-profile matter like this one, the above statements (among many others in the detention order) reflects an imbalanced treatment that is unjust and this Court should accordingly vacate the magistrate judge's order.

### B.    Upon *De Novo* Review, Ms. Winner Should Be Released Pending Trial

Upon *de novo* review, there are conditions of release that will *reasonably* assure Ms. Winner's appearance as required and *reasonably* assure the safety of others and the community. As a general matter, courts should detain defendants "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 107 (9th Cir. 1985) (citations omitted). "Doubts regarding the propriety of release should be resolved in favor of the defendant." *Id.*; *see also United States v. Kaplowitz*, No. 14-203230CR, 2014 WL 2155231, at *4 (S.D. Fla. May 22, 2014) (citing *Motamedi*). As explained before the magistrate judge and below, and as will be further demonstrated at a hearing, there is a combination of conditions that will assure the safety of the community and the appearance of Ms. Winner in court. Under § 3142, therefore, Ms. Winner should be released with such conditions.

A defendant is properly detained pending trial when a court makes one of two findings: (1) that the Government has shown by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the

community," or (2) that the Government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e). In other words, it is not enough for the Government to prove by a preponderance of the evidence that Ms. Winner is a flight risk or by clear and convincing evidence that Ms. Winner poses a danger to the community. The Government must also show that there are *no conditions* that will *reasonably assure* she appears as required and *reasonably assure* she does not pose a danger to the community if released. Ms. Winner submits that the Government did not meet, and cannot meet, that burden here.

### 1. The § 3142(g) Factors Weigh in Favor of Release.

Again, "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," a court should take into account the factors laid out in § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g)(1)–(4). As explained below, consideration of these factors weighs in favor of release with conditions.

### a. Nature and Circumstances of the Offense Alleged

Ms. Winner is charged with only one count of violating 18 U.S.C. § 793(e) [Doc. 72]. Specifically, the Government alleges Ms. Winner willfully transmitted classified information to an online news outlet despite knowing disclosure could cause specific, articulable, and exceptionally grave damage to the national security of the United States [*Id.*]. While all crimes are serious, violation of § 793(e) is not a crime Congress deemed so serious to include in the list of offenses for which a rebuttable presumption arises in favor of detention. *See* 18 U.S.C. §

3142(e)(2)–(3).  And the Court is not to "read a presumption into [the] statute where Congress has failed to provide one."  *United States v. Barnett*, 986 F. Supp. 405, 407 (W.D. La. 1997). Were this Court to agree with the magistrate judge that "[t]he nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant in light of her alleged criminal disclosure given her access to a wealth of classified information during her service in the Air Force and with NSA" [Doc. 115 p. 2], then no former government employee or contractor charged under § 793 would receive individualized consideration of the "nature and circumstances of the offense" element of § 3142(g), because such individuals, like those identified in the chart submitted to the magistrate judge [*See* Doc. 96-1], invariably have knowledge of other classified information from their government service. In other words, the Court would be unilaterally amending the statute for former or current government employees or contractors.

### b.      Weight of the Evidence

As an initial matter, the parties dispute the elements that constitute violation of § 793(e). The Government contends that to convict Ms. Winner, they need to show only that "a defendant in unauthorized possession of a document containing information relating to the national defense . . . retained that document without authorization, or transmitted it to someone not entitled to receive it, and knew that doing so was against the law" [Doc. 100 pp. 12–13 (footnote omitted)]. Ms. Winner submits that there is more that the Government must prove, including that the information could actually damage the national security of the United States if disclosed and was closely held by the Government, that Ms. Winner knew that the alleged classified intelligence reporting satisfied these elements, and that Ms. Winner had an intent to injure the United States at the time of the alleged criminal act [*See generally* Docs. 112, 117].  At this stage, and until the

Court makes a determination regarding the elements of the offense, the Defendant's well-supported articulation should control, as it is the more stringent iteration of the elements.

Regarding the weight of the evidence to support these elements, the Government has contended that the weight of the evidence is strong, asserting that Ms. Winner admitted criminal conduct to her sister in a recorded telephone call following her arrest [*See* Doc. 100 p. 14]. Yet Ms. Winner' sister testified (1) that she did not agree that Ms. Winner admitted to leaking anything and interpreted Ms. Winner's statements as the "explanation for what was happening," and (2) that Ms. Winner asserted she did nothing wrong in that same conversation, which undermines whether the Government can prove the required mental states for a conviction under § 792(e) [Doc. 120 pp. 107, 112].

The Government has also argued that Ms. Winner had admitted to law enforcement agents she knew the alleged classified intelligence reporting "concerned sensitive technical capabilities—sources and methods—and that those sources and methods could be compromised by her disclosure" [Doc. 100 p. 14]. But Ms. Winner has moved to suppress these statements (which the magistrate judge did not even acknowledge), and to the extent that motion to suppress is meritorious, the weight of this evidence will be lessened. *See United States v. Espinoza*, No. CR S-08-0447 JAM, 2009 WL 3614849, at *1 (E.D. Cal. Oct. 27, 2009) (reopening a detention hearing after suppression of evidence); *United States v. Shareef*, 907 F. Supp. 1471, 1483 (D. Kan. 1995) (same).[6] Even more, the singular statement—made during a custodial interrogation in a coercive environment—does not satisfy the requirements of the Espionage Act. To constitute national defense information, the Government must show that the information contained in the

---

[6] While the Government asserts that the motion to suppress has no merit, it has not responded to Ms. Winner's motion, and Ms. Winner submits that, even though the rules of evidence do not apply in the context of a detention hearing, the Court should at the very least consider that a meritorious argument for suppression has been made in connection with any determination of the weight of the evidence against Ms. Winner.

alleged classified intelligence reporting could threaten the national security of the United States if disclosed and that it was closely held [*See* Doc. 112].   The statement referenced by the magistrate judge does not satisfy that burden.  Moreover, the Government produced little, if any, evidence related to the various *mens rea* of the alleged offense.[7]

The weight of the Government's evidence against her, when one considers all of the elements of the offense, is not substantial and largely speculative.  But even if the Court were to believe that it is substantial, it does not mean that there are no conditions that can reasonably assure her appearance in court and the safety of the community.  *United States v. Shine*, 2017 WL 1591890, at *2 ("While the weight of the evidence against Shine is substantial, that does not mean that no combination of conditions can reasonably assure community safety." (citation omitted)); *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (explaining that to allow the weight of the evidence to be dispositive of the detention outcome would amount to "impermissibly mak[ing] a preliminary determination of guilt").   Moreover, if the Court so believes, Ms. Winner is not distinguishable from any other defendant against whom the Government has a "strong" case and who otherwise would be entitled to release with conditions. *See United States v. Walls*, No. 2-06-192, 2008 WL 213886, at *2 (S.D. Ohio Jan. 23, 2008) (finding the weight of the evidence to be "the least important of the various factors" because the defendant "is no more of a flight risk than any other defendant against whom the Government's case is strong" (citations omitted)).

### c.    History and Characteristics

Pursuant to 18 U.S.C. § 3142(g)(3), the Court is to consider a person's history and characteristics in determining whether there are conditions of release that will reasonably assure

---

[7] Ms. Winner also directs the Court to Defendant's *Ex Parte*, *In Camera* Brief Regarding the Elements of the Offense Under 18 U.S.C. § 793(e), Defense Theories, and Relevance of Discovery Requests as They Relate to the Government's *Ex Parte* Withholding of Discovery Under CIPA § 4 [*See* Doc. 117].

the appearance of the person as required and the safety of any other person and the community, including: "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18 U.S.C. § 3142(g)(3)(A).  The Court is also to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."  *Id.* § 3142(g)(3)(B).

Regarding the latter inquiry, Ms. Winner was not on probation, parole, or other release for an offense under federal, state, or local law because she has no experience with the criminal justice system [Doc. 97 ¶ 3].  Her first encounter with law enforcement was on June 3, 2017, when ten armed male law enforcement agents appeared at her home with search warrants for her house, her car, and her person [*Id.*].  At the conclusion of that encounter, Ms. Winner was arrested and transported to jail, and she has been detained since that time [*Id.*].

Regarding the former inquiry, Ms. Winner refers the Court to the information set forth above, *see supra*, Section III, which details her background.  In short, though Ms. Winner is an Air Force veteran, having won commendations and served honorably for six years; she has developed language skills through her service and through her obtaining an associate's degree in the Persian-Farsi and Dari courses.  Today, she is fluent in Farsi, Dari, and Pashto, and has a strong desire to work for humanitarian organizations, particularly one in the Middle East, and she was making efforts in that regard before her arrest.

While Ms. Winner had been living in Augusta for only six months before the alleged events giving rise to this prosecution occurred, she had begun developing a network of friends

and colleagues with interests common to her own, particularly fitness.  Ms. Winner also had become part of the community through her teaching of yoga and spin classes and her volunteer work at the local animal shelter.  If released, Ms. Winner intends to continue teaching yoga and spin classes in order to earn income while she faces the charges in this action, and to volunteer at the local animal shelter.  She also intends to continue her education.

Ms. Winner also has a legitimate interest in the Middle East and religion, and she is vegan and Kosher.  Concerning religion, Ms. Winner "likes to study religion" [Doc. 120 p. 99].  She was raised Christian and has studied all kinds of religions, including Judaism, Buddhism, and Islam.  But despite the Court's and the Government's innuendo, that interest is not criminal [*See id.* at 85].  She also has a strong interest in the environment.

As for her personality, Ms. Winner also has "an interesting sense of humor" that can even be "not appropriate" [*Id.* at 95, 102].  The people who know her best knew she was not serious when she made a comment about failing a polygraph [*Id.* at 112–13], when she said she was going to burn down the White house [*Id.* at 102], when she said that American is the "worst thing to happen to the planet" [*Id.* at 114], and when she used the word "awesome" in connection with Edward Snowden and Julian Assange [*Id.* at 115].[8]

All of this positive character information counsels in favor of release.  Ms. Winner is not the proverbial monster the Government has painted throughout this litigation.  Rather, she is very close to her family; she has served her country with honor; she is involved in her community in various ways; she cares about the environment; she has no criminal history; she has limited financial means; and she has no history of drug or alcohol abuse.  At the initial detention hearing, the magistrate judge stated, "If we were dealing with the person that Ms. Winner's parents know

---

[8] These few, one-off, out-of-context statements, which the Government twisted to support continued detention, certainly do not overcome the presumption of liberty and, in all events, do not outweigh years' worth of Ms. Winner's positive history as a contributing member of society.

and love, then there would be no question that she ought to be released" [Doc. 29 p. 106].  Given the extensive record, there can be no doubt that Ms. Winner is *that* person and should be released.  Ms. Winner's history and characteristics weigh in favor of release, not detention.

### d.   Danger Posed by Release

The Government contends that Ms. Winner is "an extremely attractive recruitment target for foreign intelligence agencies as well as well-financed non-governmental organizations that encourage and support disclosures of classified information" [Doc. 11 p. 21; Doc. 120 p. 132–33].  The Government has not come forward with *any* evidence to support the absurd notion that Ms. Winner is a spy-in-waiting.  And, unlike James Hitselberger, who the Government contended was a flight risk because he lived abroad on limited resources, Ms. Winner has no such history.  *See United States v. Hitselberger*, Case No. 1:12-cv-231, Doc. No. 13 (D.D.C. Dec. 12, 2012) ("Hitselberger has demonstrated that he has many of the characteristics of someone who can live outside the United States and outside the reach of its courts for an extended period of time, as he was doing before the government was able to catch him.  He speaks multiple foreign languages, is comfortable living abroad (including in less developed countries), and appears to have a network of friends and acquaintances overseas.").  Rather, Ms. Winner is a young adult who loves her family, fitness activities, podcasts, and animals, as well as other luxuries of the United States.  There has been no evidence that she has any network of friends or acquaintances overseas (despite a presumably thorough search of Ms. Winner's devices), nor any evidence that she has been targeted or contacted by any foreign intelligence agencies or non-governmental organizations about fleeing the country.

The magistrate judge was nonetheless persuaded by the Government's conjecture, finding that Ms. Winner "has painted a disturbing self-portrait of an American with years of national

service and access to classified information who hates the United States and desires to damage national security on the same scale as Julian Assange and Edward Snowden" [Doc. 115 p. 7]. So, he concluded, "[t]he nature and seriousness of the danger she poses to our nation is high" [*Id.*]. The defendant entirely disagrees with that statement and any likening to Julian Assange or Edward Snowden, but regardless, the magistrate judge failed to address any number of conditions of release (such as denying Ms. Winner access to the Internet, monitoring her physical movements, restricting her ability to speak with the media, and requiring her to check in frequently with her Pretrial Services Officer) that could have mitigated these purported concerns.

In sum, the § 3142(g) factors all weigh in favor of release.  And even if the Court finds they do not, as explained below, there are nonetheless conditions the Court can place on Ms. Winner that will reasonably assure her appearance as required and the safety of the community.

### 2. There are Conditions That Will Reasonably Assure Ms. Winner's Appearance and the Safety of the Community

The Bail Reform Act sets out a number of conditions that may be imposed to ensure a defendant's appearance in court and the safety of the community.  *See* 18 U.S.C. § 3142(c)(1)–(xiv).  And it is the *Government's burden* to demonstrate that none of these conditions or other conditions of release will *reasonably* assure Ms. Winner's appearance as required and the safety of the community.  18 U.S.C. § 3142(c), (f); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).   Importantly, "[s]ection 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it."  *Xulam* 84 F.3d at 444 (explaining that the legislative history of the Bail Reform Act acknowledges the feasibility of conditions even "where there is a substantial risk of flight").

Ms. Winner will agree to and adhere to the most stringent of conditions if released pending trial.  She will agree to any condition imposed upon her by the Court, including but not

limited to: (1) residing in her home in Augusta under the custody of her mother, who has agreed to serve as a third-party custodian and report any violation of any condition of release to the Court; (2) not traveling beyond Richmond County, Georgia without the permission of her Pretrial Services Officer and the Government; (3) not possessing or accessing any electronic device capable of accessing the Internet and not accessing the Internet through any such device or any other means; (4) avoiding communication with any media outlet; (5) having regular contact with her Pretrial Services Officer; (6) wearing a monitoring bracelet; (7) surrendering her passport and agreeing not to obtain a new one; and (8) having her mother and step-father post their property as a bond.

These conditions are more rigorous than any conditions imposed upon defendants charged with similar offenses.  For example, John Kiriakou, who allegedly disclosed a CIA officer's identity to a reporter, was released upon the conditions that he post a $250,000 unsecured bond, restrict travel to the D.C. metro area, surrender his passport, and report to his Pretrial Services Officer, among other conditions.  *United States v. Kiriakou*, Case No. 1:12-cr-127, Doc. No. 8 (E.D. Va.).  As further example, Jeffrey Sterling, who allegedly disclosed classified information to members of the media, was released upon various conditions, including that he post a $10,000 bond, reside with a third-party custodian, actively seek employment, not leave the D.C. metro area, surrender his passport and not obtain a new one, and report to his Pretrial Services Officer. *United States v. Sterling*, Case No. 1:10-cr-485, Doc. No. 22 (E.D. Va.).  Also, with respect to these defendants and others cited by Ms. Winner who faced similar charges: (1) none of them had restrictions on their modes of communication, (2) none of the courts with jurisdiction over them ever revoked their release, and (3) none of them fled the country.

23

Despite this precedent, the Government, and apparently Magistrate Judge Epps, is concerned about Ms. Winner sharing classified information or fleeing the country, even though she is presumed innocent of having ever disclosed national defense information in the first place, and even though Special Agent Garrick testified that he has "no information that she" has information to disclose [*See* Doc. 120 p. 91]. The Government claimed that detention is the only way to be "certain[]" that Ms. Winner will not further disclose classified information [Doc. 100 p. 21]. Yet, § 3142 does not speak of *certainly* assuring the community will be safe or *certainly* assuring the defendant will appear if released; it speaks of *reasonably* assuring the community will be safe and *reasonably* assuring the defendant will appear. *See* 18 U.S.C. § 3142. That this case involves alleged national defense information does not alter the analysis. The conditions proposed by Ms. Winner provide *reasonable* assurance. It is the Government's burden to demonstrate why they will not (in more than speculative or hypothetical fashion).

Ms. Winner submits that the Government cannot meet its burden to show these or other conditions are insufficient. Ms. Winner's own conduct—both immediately before her arrest and while in custody—demonstrates she will not engage in the behaviors the Government suggests. For example, Ms. Winner and her family have been contacted by the press on multiple occasions; yet, not once did Ms. Winner use those contacts to disclose any classified information—despite the opportunity to do so and despite then and now facing the same charge in this action. Also, immediately before her arrest and after the alleged conduct discussed in the Superseding Indictment, Ms. Winner traveled to Belize. According to the magistrate judge, this singular vacation over a holiday weekend evidences Ms. Winner's "financial means to flee the country" [Doc. 115 p. 8]. *But even the Government* abandoned its argument, in the second detention hearing, that Ms. Winner's Belize trip reflected a willingness to flee the country—that

trip was taken solely for sight-seeing reasons over the Memorial Day weekend 2017, and Ms. Winner returned from that trip as planned.

The Court can, and should, be *reasonably* assured that the most stringent conditions proposed by Ms. Winner will *reasonably* assure the protection of the community from any potential danger and will *reasonably* assure Ms. Winner will appear as required.  That is the inquiry before the Court—nothing more.

## V.   CONCLUSION

Ms. Winner has no criminal history; is presumed innocent; has strong ties to the community and her family; has exhibited years' worth of positive characteristics and law-abiding conduct; and is willing to agree to the most stringent of conditions if released pending trial. Despite these facts, she nonetheless remains jailed, even though Congress has mandated the singular offense the Government has charged against her carries a presumption of pretrial liberty, not detention. Magistrate Judge Epps's ruling—with its nearly singular focus as Ms. Winner as a "bad" person—should not stand.  Accordingly, and for all the reasons set forth above, Ms. Winner's prior briefs regarding detention, and in the hearings before Magistrate Judge Epps, there are conditions that will *reasonably* assure Ms. Winner's appearance as required and the safety of any other person and the community.  *See supra* Sections A.2. and B.3.  These conditions will serve the purposes of 18 U.S.C. § 3142.

WHEREFORE, pursuant to 18 U.S.C. § 3145, Ms. Winner respectfully requests that this motion be determined promptly as contemplated by 18 U.S.C. § 3145(b) and that the Court (1) revoke the order of detention, (2) find that there is a combination of conditions that will reasonably assure her appearance as required and the safety of any other person and the community, and (3) release her pending trial, as well as grant such additional relief as may be

warranted.  In addition, Ms. Winner requests a hearing at the earliest practicable time to address this Appeal.

Respectfully submitted,

s/ Joe D. Whitley
Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Jill E. McCook (Tn. Bar No. 033813)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, P.C.**
265 Brookview Centre Way, Suite 600
Knoxville, TN  37919
(865) 549-7129
JMCook@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT
REALITY LEIGH WINNER**

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

s/ Joe D. Whitley
Joe D. Whitley (Bar No. 756150)

26