UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | NO. 1:17-CR-00034 |
| | * | |
| REALITY LEIGH WINNER | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S REPLY BRIEF REGARDING THE ELEMENTS OF THE OFFENSE UNDER 18 U.S.C. § 793(e) AS THEY RELATE TO THE GOVERNMENT'S *EX PARTE* WITHHOLDING OF DISCOVERY UNDER CIPA § 4

The Government's brief on the elements of the offense fundamentally misstates the law.[1] In particular, the Government disputes that it must prove the following elements under 18 U.S.C. § 793(e): (1) that the document was potentially damaging to the United States if disclosed; (2) that Ms. Winner knew the document was potentially damaging to the United States and was closely held; and (3) that Ms. Winner intended to injure the United States in allegedly disclosing the document.[2] The Government's view of these elements is incorrect.

With respect to the first of these elements, the Government asks this Court to ignore forty years of precedent holding that, for a document to be "related to the national defense" for purposes of § 793(e), its disclosure must be "potentially damaging" to the national security of the United States. The Government in fact asks this Court to ignore that the *Government itself*

---

[1] Given the positions the Government has taken in its response to the Ms. Winner's brief regarding the elements of the offense (including positions supported by little, if any, case law) [Doc. No. 122], the Defendant reserves the right to file any pretrial motion, including a motion to dismiss on Constitutional grounds, should the Court adopt the Government's positions as to the elements of the offense at the time the Court makes such ruling(s).

[2] The Government correctly recognizes that it must prove the document was "closely held" to be "related to the national defense" for purposes of § 793(e), and that it must show Ms. Winner acted willfully.

agreed in prior cases that potential damage to the United States is an element of the offense. This Court should reject the Government's effort to change its position on the conduct required to violate the statute.  Such would flatly violate Ms. Winner's right to fair notice, would render the statute unconstitutionally vague, and would be contrary to the rule of lenity.   The Government also ignores the serious constitutional problems raised by its extraordinarily expansive interpretation of statute and of national defense information in particular.  Under the Government's reading, § 793(e) would on its face encompass any disclosure of any closely held document "related to the national defense," whatever that may mean.  As set forth below, courts have recognized that such an interpretation of § 793 would render the statute unconstitutionally overbroad, vague, and in violation of the First Amendment.  While the Government seeks to avoid these constitutional issues by arguing that they do not arise in this case, the Supreme Court has made clear that courts must interpret the elements of a criminal statute so they are free of constitutional infirmities no matter the defendant.

The Government is equally wrong in disputing, albeit only obliquely, that it must prove that Ms. Winner *knew* the document constituted national defense information.   Again, the Government previously conceded that such is an element of the crime, and it would violate due process and the rule of lenity for the Government to now argue that Ms. Winner violated the statute even if such knowledge was lacking.  This knowledge requirement also follows from the plain text of the statute; Ms. Winner could not have "willfully" violated the law unless she knew the information was national defense information.  Finally, the additional *mens rea* requirement that Ms. Winner intended to harm the national security of the United States is clear from the legislative history and is necessary to save the statute from serious constitutional problems.

As explained in Defendant's opening brief, this Court need not necessarily resolve the disputes regarding each of these elements for purposes of the instant discovery issues under CIPA § 4.  Nonetheless, Ms. Winner provides briefing on these elements, which ultimately will need to be resolved in the course of this case.

## ARGUMENT AND CITATION OF AUTHORITIES

**A.     National Defense Information**

### 1.     Overwhelming Precedent Establishes That the Government Must Show Potential Harm to the United States

The Government asks this Court to flout overwhelming precedent and hold that the Government need not prove that the document could potentially harm the national security of the United States to establish that it "related to the national defense."  The Government points to a single district court opinion in support of this position, *United States v. Kim*, No. 1:10-cr-00225-CKK, ECF No. 137 (D.D.C. July 24, 2013).  But in contrast to that single opinion, the following courts all adopted the requirement that, to prove that materials constitute "national defense information" under § 793, the Government must prove that disclosure of the materials would be "potentially damaging to the United States or might be useful to an enemy of the United States"[3]:

1. *United States v. Dedeyan*, 584 F.2d 36, 39-40 (4th Cir. 1978);

2. *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988);

3. *United States v. Fleming*, 38 M.J. 126, 128 (C.M.A. 1993);

4. *United States v. Hoffman*, No. 2:12-cr-00184-RGD-LRL, ECF No. 102 at 39, 2013 WL 4457294 (E.D. Va. Aug. 7, 2003)[4];

---

[3] Ms. Winner's position is that, as *Rosen* held, it would not suffice under § 793 to show that the document might be useful to a foreign enemy (or other foreign nation), but rather the document must have been potentially damaging to the United States.  *See United States v. Rosen*, 445 F. Supp. 2d 602, 640 (E.D. Va. 2006).  But the Court need not address the issue at this stage, since the distinction would not appear relevant for discovery purposes.

[4] This citation is to the Government's proposed jury instructions in *Hoffman*, but there is no indication that the Court did not give this requested instruction on national defense information, as the parties agreed on it.

5.  *United States v. Davila*, Nos. CR-03-021-RHW, CR-03-022-RHW, ECF No. 245 at 11, 2005 WL 6228516 (E.D. Wash. June 24, 2006);

6.  *United States v. Rosen*, 445 F. Supp. 2d 602, 622 (E.D. Va. 2006);

7.  *United States v. Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 782 at 46 (D. Haw. July 28, 2010);

8.  *United States v. Kiriakou*, 898 F. Supp. 2d 921, 923 (E.D. Va. 2012);

9.  *United States v. Sterling*, No. 1:10-cr-00485-LMB, ECF No. 493 at 1542 (E.D. Va. Aug. 17, 2015);

10. *United States v. Mallory*, No. 1:17-CR-154, 2017 WL 3284890, at *7 n.18 (E.D. Va. July 7, 2017);

These multitude of cases demonstrate that the Government is asking the Court to adopt an extreme outlier position that would eschew an element of the offense that courts—including appellate courts—have consistently applied over the last 40 years.

The cases also show that the Government is simply wrong in its assertion that "no court outside the Fourth Circuit has followed *Morison* on this issue."  Doc. 122 at 8.  The military judge in *Fleming*, the district court in the Eastern District of Washington in *Davila*, and the district court in the District of Hawaii in *Gowadia* all instructed the juries in those cases that the Government had to prove that the disclosed materials could damage the national security of the United States or advantage an enemy.  Thus, courts around the country have recognized this requirement as a settled element of the offense.[5]

---

[5] The Government's reference to the jury instructions in *United States v. Ford*, No. PJM-05-0235 (D. Md.), is extremely misleading.  There, "[t]he parties . . . *stipulated* that the information contained in the classified documents relate[d] to the national defense," and thus there was no need to instruct the jury on the criteria to show that the materials "related to the national defense."  *Id.*, ECF No. 38, at 46 (Jury Instruction 42) (emphasis added).

2.      **The Government's Change in Position on the Need to Show Potential Harm to the United States Would Violate Due Process if Accepted**

The Government asks the Court to disregard not only the judicial precedents in the above cases, but also the Government's *own position* in these cases.  In many of the cases listed above—including in two cases outside the Fourth Circuit—the Government conceded that it was required to prove potential harm to the United States or advantage to a foreign emery to show that materials "related to the national defense" under § 793, no matter whether the disclosure involved tangible documents or intangible information.  The Government stated unequivocally and without reservation in these cases that:

> To prove that documents, writings or information relate to the national defense there are two things that the government must prove.  *First, it must prove that the disclosure of the material would be potentially damaging to the United States or might be useful to an enemy of the United States*.  Second, it must prove that the material is "closely held" by the United States government.

*Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 730 at 61, 2010 WL 2865666 (D. Haw. June 28, 2010) (emphasis added); *Davila*, Nos. CR-03-021-RHW, CR-03-022-RHW, ECF No. 245 at 11, 2005 WL 6228516 (E.D. Wash. June 24, 2006) (same); *Sterling*, No. 1:10-cr-00485-LMB, ECF No. 258 at 21 (E.D. Va. Oct. 11, 2011) (same); *Hoffman*, No. 2:12-cr-00184-RGD-LRL, ECF No. 102 at 39, 2013 WL 4457294 (E.D. Va. Aug. 7, 2003) (same).

Due process demands that before "taking away someone's life, liberty, or property under a criminal law," the Government must provide "fair notice of the conduct [the statute] punishes." *Johnson v. United States*, 135 S. Ct. 2551, 2556-57 (2015).  This guarantee would be vitiated if the Government were permitted to change its view of the conduct required to violate the statute here.  On multiple occasions predating Ms. Winner's alleged conduct, the Department of Justice publicly declared that conduct would not violate § 793 *unless* it could potentially harm the United States or advantage of foreign enemy.  Now, the Department of Justice is arguing the

opposite position—that Ms. Winner violated the statute even if her conduct did not have these potential consequences. The Government cannot play fast-and-loose with an individual's liberty in this manner. Even in the *civil* context, the Supreme Court has held that a change in Government interpretations of a statute can violate a party's right to fair notice. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 254-55 (2012). If such inconsistency violates due process in the civil context, it clearly must in the criminal context as well. Moreover, § 793 is not just any criminal statute, but one that reaches core First Amendment activities (*see infra* 11-16). The Supreme Court has made clear that courts should be particularly reluctant to apply a change in Government interpretation to statutes "that touch upon sensitive areas of basic First Amendment freedoms," *Id.* (internal quotation marks omitted).

The Government's change in positions on this element, if accepted, would also render § 793 unconstitutionally vague. In *Johnson*, the Supreme Court held that the failure of *courts* to settle on a consistent statutory interpretation provided compelling evidence that the Armed Career Criminal Act's "residual clause" was unconstitutionally vague. 135 S. Ct. at 2558. That the *prosecution itself* cannot settle on a consistent interpretation would be all the more probative of the statute's vagueness here. "Such changes in the Government's interpretation" would demonstrate that a "criminal defendant simply could not be expected to know that the conduct alleged was prohibited by the statute." *United States v. Sattar*, 272 F. Supp. 2d 348, 358 (S.D.N.Y. 2003) (finding statute unconstitutionally vague). *Id.* Simply put, if the Government itself cannot decide on the statute's reach, "ordinary people" surely cannot know what conduct is proscribed. *Johnson*, 135 S. Ct. at 2556 (internal quotation marks omitted).

For similar reasons, the rule of lenity demands that this Court adopt the more lenient of the Government's two positions. The Government can hardly dispute that there are "two rational

readings" of this criminal statute—given that the Government itself has adopted both interpretations. *United States v. Inclema*, 363 F.3d 1177, 1182 (11th Cir. 2004). "[W]hen a criminal statute is reasonably subject to two constructions, . . . such statute must be construed in favor of the accused and strictly against the [Government]." *United States v. Walter*, 484 F. Supp. 183, 185 (S.D. Ga. 1980) (internal quotation marks omitted).

In short, given the Government's unequivocal assertions in public filings—including multiple times in fora with no controlling Circuit Court precedent—that potential harm to national security or advantage to a foreign enemy is an element of the offense, the Government cannot dispense with this requirement here.

### 3.    *Kim's* Extreme Minority View is Not Persuasive

Independent of the Government's inconsistent positions, this Court should decline to adopt *Kim*'s extreme minority view of national defense information. None of the "five primary reasons" the Government advances for adopting *Kim* has merit here. Doc. 122 at 7.

First, the Government argues that "the definition in *Morison* was adopted to avoid overbreadth concerns, but defendant Kim (like [Ms. Winner], here) had not raised overbreadth concerns." *Id.* To be clear, Ms. Winner argues that absent a requirement of potential harm to the United States, § 793(e) is overbroad, vague, and violates the First Amendment. *See infra* 10-16.

Second, the Government contends that the *Morison* definition is inconsistent with the statutory text, but that is not so. Defining "relating to the national defense" to mean potentially damaging to the United States or advantageous to a foreign enemy is an entirely reasonable interpretation of this language in the context of the Espionage Act, where Congress' overreaching goal was "to protect military secrets from spies without promulgating broad prohibitions that would jeopardize the legitimate efforts of citizens to seek information and

express views concerning national security." Harold Edgar & Benno C. Schmidt, Jr., *The Espionage Statutes and Publication of Defense Information*, 73 Colum. L. Rev. 929, 939 (1973).

*Kim*'s reasoning for finding the *Morison* definition contrary to the statutory text was also incorrect.   *Kim* deemed the *Morison* criteria to be inconsistent with, or duplicative of, the statutory requirement for intangible information that a defendant must have "had reason to believe [the information] could be used to the injury of the United States or to the advantage of any foreign nation."  *Kim*, ECF No. 137 at 8-9; ECF No. 198 at 5-6.  But as *Rosen* recognized, this statutory language concerns the defendant's state of mind, while the *Morison* requirements—*i.e.*, that the materials were potentially damaging to the United States or advantageous to a foreign enemy—concerns the objective "quality of the information."  *Rosen*, 445 F. Supp. at 627.  Further, the statutory language *Kim* identified applies only in cases of intangible information and not in cases involving tangible documents like this.  The "reason to believe" language thus is entirely distinct from the requirement to show materials were national defense information.  While the similarity in phraseology understandably led to some confusion, *Kim* simply conflated two distinct elements that have different functions and can easily coexist, even in cases (unlike this case) that involve intangible information (*i.e.*, conversations rather than documents).  Further, to the extent *Morison's* definition of national defense information is "judicial gloss" on that phrase, as the Government contends, it is no more of a judicial gloss than the "closely held" requirement, which the Government concedes is appropriate.  Courts have consistently recognized for decades that both requirements are necessary to cabin § 793(e)'s reach and avoid rendering the statute unconstitutionally overboard and vague.

Third, the Government argues that "the *Morison* approach requires the jury to second-guess the classification decisions of the information at issue."  Doc. 122 at 6.  That assertion

flatly contradicts the Government's concession earlier in its brief that "Defendant is correct in stating that whether information constitutes NDI is a question for the jury and classification is not determinative," *id.* at 6. Indeed, the Supreme Court held in *Gorin v. United States*, 312 U.S. 19, 32 (1941), that "[t]he question of the connection of the information with national defense is a question of fact to be determined by the jury." The Government's argument that the jury cannot "second-guess" the Government's classification determination usurps this jury function and would allow the Government substitute *its* judgment for that of the jury. The Government's position also ignores the fact that Congress has repeatedly chosen not to criminalize the disclosure of the entire category of classified information. If accepted, the Government's position would have disturbing consequences given the overclassification problems that plague the federal bureaucracy. Doc. 112 at 5-6.

The Government's remaining reasons to depart from *Morison* and its many progeny are nothing more than incorrect factual assertions. The Government claims that "even courts in the Fourth Circuit since *Morison* have not applied *Morison* in the manner urged by the defense," Doc. 122 at 8, but the Government cites no case to support that proposition, and undersigned counsel is unaware of any case in the Fourth Circuit that has not required that the relevant materials be potentially damaging to the United States or advantageous for a foreign enemy. The Government's remaining argument is that "no court outside the Fourth Circuit has followed *Morrison* on this issue," *id.* but as explained previously, that is factually incorrect.

**4.      The Statute Would Be Overbroad, Vague, and Violate the First Amendment if the Government's Position Were Adopted[6]**

In addition to the above reasons to adhere to the overwhelming weight of authority, interpreting the statute to require potential harm to the United States is necessary to avoid rendering the statute overbroad, vague, and in violation of the First Amendment.

**a.      Overbreadth**

Section 793(e) would be stunningly broad in scope if the Government's interpretations were adopted, particularly in cases that involve tangible documents like this one.  The statute would impose criminal penalties of up to ten years in prison on any person who provides *any* closely held document that "relate[s] to the national defense" to any other person not entitled to receive the document, or on any person who willfully retains *any* such document without authority.  And the set of documents that "relate[] to the national defense," in the Government's view, "should be broadly construed."  Doc. 122 at 5.  Under this reading, the Espionage Act would apply, for example:

- To a private citizen or government employee who discloses a document that "recounts official misconduct in awarding defense contracts," *Rosen*, 445 F. Supp. 2d at 639-40;

- To a private citizen or government employee who discloses a closely held document that details personal misconduct by a military or national security official;

- To a private citizen or government employee who discloses a closely held document that details the use of improper criteria such as race, gender, or sexual orientation in the appointment or promotion of military or national security officials;

- To a military doctor who, in violation of military policy, takes home staff medical records with him or her;

---

[6] Ms. Winner reserves the right to argue that the First Amendment requires more than that the disclosure could "potentially" harm the United States.  Defendant further reserves all arguments that the statute is overboard or vague even if the Court adopts the requirement that materials must be potentially damaging to the United States to qualify as national defense information.

- To a human resources official who, in violation of policy, discloses or takes home documents showing the non-public salaries of military or national security officials;

- To an admissions official at West Point who, in violation of school policy, discloses or takes home the SAT scores or academic transcripts of applicants to the academy.

These are just a few of the countless scenarios that, on the face of § 793(d) and (e), would be chargeable criminal activities under "the Espionage Act" with the Government's sweeping interpretation.   And § 793 would reach a wide range of protected speech under this interpretation, including speech by private citizens and government employees that relates to "matters of public concern" but could not harm the national security.  *See Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014); *Snyder v. Phelps*, 562 U.S. 443, 451 (2011).  "In the First Amendment context," a statute is unconstitutionally overbroad "if a substantial number of its applications" would affect protected speech.  *United States v. Stevens*, 559 U.S. 460, 473 (2010).  That plainly would be the case here under the Government's expansive interpretation.

At least two Fourth Circuit Judges in *Morison* and the district court in *Rosen* recognized this overbreadth problem and concluded that it could be cured only by limiting national defense information under the statute to materials that could harm the United States (and are closely held).  Judge Wilkinson in *Morison* explained that constraining "prosecution under the statute to disclosures of classified information potentially damaging to the military security of the United States" was necessary to "restrain the possibility that the broad language of this statute would ever be used as a means of punishing mere criticism of incompetence and corruption in the government."  *Morison*, 844 F.2d at 1084 (Wilkinson, J., concurring).  Judge Phillips in his *Morison* concurrence was even more troubled by these overbreadth issues, finding that even with these narrowing criteria the question of overbreadth was a "close one," but that ultimately the requirement that "the information leaked was either potentially damaging to the United States or

might be useful to an enemy sufficiently remedied the facial vice." *Id.* at 1085-86 (Phillips, J., concurring) constitutionally overbroad."). The district court in *Rosen* concluded the same, finding that the "limitation of the term 'relating to the national defense' to items potentially damaging to the United States is required to avoid rendering the statute unconstitutionally overbroad," especially as applied to persons who "transmit[] a tangible item related to the national defense." *Rosen*, 445 F. Supp. 2d at 639-40. The Government's interpretation here would present the precise overbreadth problem that these courts recognized.

Notably, this Court need not resolve for purposes of this overbreadth analysis whether these concerns are applicable in this case; *i.e.*, whether the alleged disclosure is protected speech or falls within the scope of "related to the national defense" as Congress originally intended. It is well-settled that a criminal defendant "to whom the law may be constitutionally applied may assert an overbreadth challenge to a law on the ground that it violates the First Amendment rights of others." *United States v. Di Pietro*, 615 F.3d 1369, 1372 (11th Cir. 2010); *accord United States v. Gilbert*, 130 F.3d 1458, 1462 (11th Cir. 1997). And even where the First Amendment is not implicated, the Supreme Court's recent decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), makes clear that courts cannot interpret criminal statutes in a manner that would raise constitutional problems, even if those problems are not present in the particular case. In *McDonnell*, the Supreme Court found that the Government's proposed interpretation of a bribery statute raised constitutional concerns because it could reach "normal political interaction[s] between public officials and their constituents." *Id.* at 2372. Even though the alleged conduct by former Governor McDonnell was *not* an example of such normal interactions that raised the constitutional concerns, the Court nonetheless rejected "the Government's legal interpretation" and interpreted the law in a manner that would not raise these constitutional concerns, because

courts "cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *Id.* at 2372-73 (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)).  The same is true here under § 793.

### b.    Vagueness

Section 793(e) would also be unconstitutionally vague if the Government's interpretation of national defense information were adopted.  A criminal statute is unconstitutional where it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556.  "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Id.* at 2256-57 (internal quotation marks omitted).

Under the Government's reading, "ordinary people" would be entirely left to guess whether a given document "relates to the national defense" for purposes of § 793(e), and the statutory criteria would be so open-ended that it would "invite[] arbitrary enforcement" by the Government. *Id.*  "Invoking so shapeless a provision to condemn someone to prison for up to [10] years" would violate "the Constitution's guarantee of due process." *McDonnell*, 136 S. Ct. at 2373 (internal quotation marks omitted).  Much like in *McDonnell*, this Court must adopted the "more constrained interpretation" of national defense information set forth in *Morison* to "avoid[] this vagueness shoal" *Id.* (internal quotation marks omitted).

As in the overbreadth context, it is also irrelevant for vagueness purposes whether the Government believes that the phrase "national defense information" is not vague as applied to this case.  The Supreme Court rejected such an argument in *Johnson*, resolving a point a contention that previously had existed with vagueness challenges.  The Court held that where a

statute is facially vague, it is necessarily "vague in all its applications," whether to the defendant in the given case or to anyone else.  *Johnson*, 135 S. Ct. at 2561.

Section 793(e) would be unconstitutionally vague under the Government's interpretation regardless of the statute's First Amendment implications, *see id.* (finding provision vague that did not implicate First Amendment), but the statute's potential to reach First Amendment activities removes any doubt that it cannot stand under the Government's interpretation.  A vague statute that regulates speech "raises special . . . concerns because of its obvious chilling effect on free speech."  *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871-72 (1997).  And that concern is multiplied where a statute that regulates speech is criminal in nature, because "criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images."  *Id.*  This Court must reject the Government's invitation to render § 793(e) a vague and standardless dragnet that would chill core First Amendment activities.

### c.    First Amendment

In fact, § 793(e) would violate the First Amendment independent of these overbreadth and vagueness problems, if it did not require the Government to prove that a disclosure was at least potentially damaging to the national security.  Contrary to the Government's suggestion, the statute plainly touches upon core First Amendment activities where it reaches a disclosure to the press on a matter of public concern.  Edgar and Schmidt focused heavily on these First Amendment implications in their seminal article, explaining that §§ 793(d) and (e) are the provisions of the Espionage Act that "pose the greatest threat to the acquisition and publication of defense information by reporters and newspapers."  Edgar & Schmidt, *supra*, at 998.  Judges Wilkinson and Phillips recognized these same First Amendment considerations in *Morison*, with

Judge Phillips stating that he agreed with "Judge Wilkinson's . . . view that the first amendment issues raised by Morison," who disclosed classified photographs to the press, "[were] real and substantial and require . . . serious attention." *Morison*, 844 F.2d at 1085 (Phillips, J., concurring).[7]

Under any level of constitutional scrutiny, the Government must demonstrate *some* harm that the statute seeks to prevent to justify a criminal restriction on constitutionally-protected activities. The Government, however, seeks to forego that requirement in its proposed definition of national defense information. It seeks to transform § 793(e) into a criminal statute—applicable to private citizens and government employees alike—that does not require *any* potential harm to the Government to sustain a conviction. That is completely untenable under the First Amendment.

Indeed, it is particularly untenable because § 793(e) is a content-based prohibition that triggers strict scrutiny. A statute is "content based" where it restricts speech on a "specific subject matter," even if the statute "does not discriminate among viewpoints within that subject matter." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1307-08 (11th Cir. 2017) (quoting *Reed v. Town of Gilbert.*, 135 S. Ct. 2218, 2230 (2015)). Section 793(e) facially targets First Amendment activities that relate to a particular subject matter—the "national defense." *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010) (holding that statute prohibiting the provision of material support or resources to foreign terrorist organizations was "a content-based regulation of speech" that triggered heightened scrutiny). Under strict scrutiny, the

---

[7] The Government misleadingly asserts that "the Fourth Circuit" held in *Morison* that there were no First Amendment interests implicated in the case. Doc. 122 at 11 n. 7. As *Rosen* explained, "While Judge Russell, writing for the panel, found that the statute's application to *Morison* did not implicate the First Amendment, both Judge Wilkinson and Judge Phillips wrote separately to express their respective views that the First Amendment *was* implicated by Morison's prosecution." 445 F. Supp. 2d at 630 (emphasis in original).

Government must demonstrate that the statute serves a "compelling government interest and is narrowly drawn to serve that interest." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 7990 (2011). The Government cannot show the § 793(e) serves a compelling government unless it shows, at a bare minimum, that the disclosure could potentially cause harm to the United States. The Government's effort to dispense with this requirement would render § 793(e) facially invalid under the First Amendment.

**B.**     ***Mens Rea* Requirements**

   **1.     The Undisputed Willfulness Standard Requires Discovery on Anything Relevant to Defendant's State of Mind**

The Government does not dispute the standard set forth in Ms. Winner's opening brief for whether Defendant acted "willfully." Doc. 122 at 9 ("[T]he Defendant . . . correctly provides the definition of willfulness from *Bryan v. United States*, 524 U.S. 184 (1998), applicable to the charged crime."). The Government therefore does not dispute that it must prove beyond a reasonable doubt that Ms. Winner "acted with an evil-meaning mind," with "the bad purpose to disobey or disregard the law," and "with knowledge that [her] conduct was unlawful." See Doc. 112 at 7-8 (quoting *Bryan*, 524 U.S. at 193; 11th Cir. Pattern Jury Instr. B91:A (2016); *Morrison*, 844 F.2d at 1071). That is all that is relevant for the instant discovery purposes: given that the willfulness standard broadly relates to Ms. Winner's "purpose," "knowledge," and "mind," this Court must "follow a liberal policy" and allow for the discovery of any "evidence directed towards establishing the defendant's state of mind." *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989).

The Government nonetheless argues that discovery is unnecessary on this element because the Government purportedly faces a "low hurdle" to establish this element given "Defendant's employment and security clearance history." Doc. 122 at 9; *see also id.* at 12 n.8.

But the legal standard for willfulness is the same no matter the defendant's history, and it is ultimately a factual determination for the jury. The Government is free to argue at trial that Ms. Winner's employment history and training are probative of whether she acted willfully, but Defendant has a constitutional right to put on her own evidence to rebut that argument and negate this element.

Indeed, while the Government apparently intends to argue at trial that Ms. Winner's awareness of classification protocols conclusively establishes willfulness, such awareness would establish no such thing. The Government must prove Ms. Winner knew she was violating the *law*, not merely administrative protocols for handling classified information, and thus Defendant has a right to present evidence that she did not believe she was violating the law. In this regard, the same "employment history and training" that the Government believes establish Ms. Winner's *mens rea* may show the opposite. *Id.* at 12 n.8. Ms. Winner stated in her FBI interview that she had reason to believe that any sources and methods in the document "had already been compromised" and that "this report was just going to be like . . . one drop in the bucket." Doc. 100-1 at 69. Defendant is entitled to discovery that, consistent with this statement, would be relevant in showing she did not believe the alleged disclosure would harm the national security.

In short, the Government must provide discovery of any materials that would be relevant and helpful to Ms. Winner in presenting a case to the jury on her state of mind.

### 2.   Section 793(e) Includes Specific *Mens Rea* Requirements

As explained in Ms. Winner's opening brief, this Court likely need not address the specific *mens rea* requirements under § 793(e) for purposes of the instant discovery issues, since

the general willfulness requirement entitles Ms. Winner to any materials relevant to her state of mind.  Nonetheless, Ms. Winner reiterates these specific requirements here

### a.   The Government Must Prove That Defendant Knew the Document Was National Defense Information

Ms. Winner's opening brief explained that, as at least two federal courts have recognized, § 793(e) requires the Government to "prove beyond a reasonable doubt that [the defendant] knew the information was NDI."  Doc. 112 at 9 (quoting *Rosen*, 445 F. Supp. 2d at 625); *see also Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF No. 782 at 49  (D. Haw. 2010). The Government does not specifically dispute this requirement in its brief.  The Government vaguely addresses the issue in a footnote (described below), and it disputes the intent requirement that Ms. Winner sets forth, but the Government never actually denies that it must show that Ms. Winner *knew* the document constituted national defense information.  *See* Doc. 122 at 9-12.  Accordingly, the Government has waived any objection to Ms. Winner's argument that the Government must show that Defendant knew the document constituted national defense information.

In a footnote, the Government attempts to explain away its concession in *Gowadia* that this knowledge requirement is an element of the offense.  The Government asserts that the inconsistency in Government positions is irrelevant because "no rights are conferred on this Defendant as a result of the government agreeing—under a different set of facts in a different Circuit—to prove more than required under applicable law." Doc. 122 at 10 n.6.  But the Government offered no qualification in *Gowadia* that it was "agreeing to prove more than required under applicable law."  Rather, the Government definitively asserted in a public court filing that "[t]he government agree[d] with the defendant that the defendant must . . . know that such information related to the national defense." *Gowadia*, No. 1:05-cr-00486-SOM-KSC, ECF

No. 508 p. 6 (Jan. 15, 2010).[8]   That *Gowadia* involved a "different set of facts in a different Circuit" is also irrelevant.   The elements of a criminal statute must be the same for everyone, no matter the "set of facts."   The notion the Department of Justice can change its position on the elements of a crime from case-to-case to suit its litigation interests is anathema to due process. As in the context of showing potential damage to the United States, for the Government to convict Ms. Winner without showing she knew the document constituted national defense information would violate Defendant's right to fair notice, would render the statute unconstitutionally vague, and would be contrary to the rule of lenity.   *Supra* 5-7.

In any event, this knowledge requirement follows from the statutory text.   The Government concedes that, to prove Ms. Winner acted "willfully," it must prove that "Defendant knew her conduct was unlawful."   Doc. 122 at 9.   Ms. Winner could not have known her conduct was unlawful unless she knew that the document constituted national defense information.   *See Rosen*, 445 F. Supp. 2d at 640-41 (finding this knowledge requirement to be incorporated into the statute's "willfully" element).   In addition, this construction is necessary to avoid First Amendment overbreadth issues.   *See* Doc. 112 at 11   The Government entirely ignores these First Amendment issues in its brief, but they are very real.   As *Rosen* recognized, without this knowledge requirement, § 793(e) could be used to "[p]unish[] defendants engaged in public debate"—including private citizens—who "*unwittingly* harm[]" the national security."   *Rosen*, 445 F. Supp. 2d at 640 (emphasis added).   That prospect is wholly "inconsistent with the Supreme Court's First Amendment jurisprudence."   *Id.*

---

[8] The same is true with respect to the Government's concessions in at least four other cases, including two outside the Fourth Circuit, that potential damage to the United States is required for materials to constitute national defense information.   *See supra* 5.   The Government gave no qualifications in those cases that it was agreeing to more than required under the statute.

### b.   Intent to Injure the United States

Section 793(e) further requires a showing that Ms. Winner intended to injure the national security of the United States in allegedly disclosing the Document.  The Government does not dispute the clear legislative history showing that Congress believed § 793(e) would only be violated if "the person making the revelation did so with an intent to injure the United States." *Truong Dinh Hung*, 629 F.2d at 927 n.21 (opinion of Winter, J.) (quoting H.R. Rep. No.1895, 81st Cong., 2d Sess. (1950)); *see also* Edgar & Schmidt, *supra*, at 1020 ("The House Report expressly stated that prior law made such revelations criminal only when done with intent to injure the United States.").  Nor does the Government address the substantial First Amendment reasons why this intent requirement is necessary.  *See* Doc. 112 at 13.  If ever there were a statute that needed a heightened *mens rea* requirement to avoid chilling core First Amendment speech on matters of public concern, it is § 793(e).

Rather than address these First Amendment issues, the Government argues that the Court need not apply an intent requirement under the circumstances of this case; *i.e.*, because "Defendant was a government employee, trained in the classification system, who could appreciate the significance of the information she disclosed."  Doc. 122 at 12.  The Government's approach is again misguided.  The elements of the offense must be the same for all persons, and this Court must consider the consequences for persons not before the Court of the elements it adopts.  *See McDonnell*, 136 S. Ct. at 2372.  Requiring a strict intent requirement is necessary to avoid reign in the otherwise unconstitutional breadth of § 793(e).

## CONCLUSION

For the reasons stated above and in Ms. Winner's opening brief, Defendant respectfully requests that that Court deny any *ex parte* request to withhold classified materials from discovery that would be potentially helpful to Ms. Winner's case under the above elements of the offense.

Respectfully submitted,

*/s/* Thomas H. Barnard

Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,
       CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,
       CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 27488)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,
       CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

Jill E. McCook (Tn. Bar No. 033813)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,
       CALDWELL & BERKOWITZ, P.C.**
265 Brookview Centre Way, Suite 600
Knoxville, TN  37919
(865) 549-7129
JMCook@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT
REALITY LEIGH WINNER**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 26, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

/s/ Thomas H. Barnard
Thomas H. Barnard, Esq.