███████████████

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 1:17-34 (JRH-BKE) |
| | ) | |
| v. | ) | Filed <u>In Camera</u> and Under Seal |
| | ) | with the Classified Information |
| REALITY LEIGH WINNER | ) | Security Officer |
| | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S *IN CAMERA*, UNDER SEAL OPPOSITION TO THE DEFENDANT'S EXPEDITED MOTION TO COMPEL RESPONSE TO DISCOVERY REQUESTS DATED AUGUST 29, 2017

Jennifer G. Solari
Assistant United States Attorney
United States Attorney's Office
Southern District of Georgia
22 Barnard Street, Suite 300
Savannah, GA 31401

Julie A. Edelstein
David C. Aaron
Trial Attorneys
U.S. Department of Justice
600 E Street, N.W.
Washington, D.C. 20530

1

```
Classified By: Aaron David NSD USA GOV
        From: FBI NSISC dated 20090615, ███████████
```
███████████████

████████████████████



## I.   (U)[1]  Introduction

(U)  On October 19, 2017, the Defendant filed with the Classified Information

Security Officer ("CISO") a Motion to Compel responses to her discovery requests dated

August 29, 2017 (hereinafter, "Motion to Compel").  This Motion to Compel was served

---

[1] (U)  The classification and control markings affixed to this memorandum and accompanying paragraphs were made pursuant to the requirements of Executive Order 13526 and applicable regulations.  The classification level of this memorandum as a whole is the same as the highest classification level of information contained in any of its paragraphs.  Each paragraph of this classified document is portion-marked.  The letter or letters in parentheses designate(s) the degree of sensitivity of the paragraph's information.  When used for this purpose, the letters "U," "C," "S," and "TS" indicate respectively that the information is either "UNCLASSIFIED," or is classified "CONFIDENTIAL," "SECRET," or "TOP SECRET."  Under Executive Order 13526, the unauthorized disclosure of material classified at the "TOP SECRET" level, by definition, "reasonably could be expected to cause exceptionally grave damage to the national security" of the United States. Exec. Order 13526 § 1.2(a)(1).  The unauthorized disclosure of information classified at the "SECRET" level, by definition, "reasonably could be expected to cause serious damage to national security." *Id.* § 1.2(a)(2).  The unauthorized disclosure of information classified at the "CONFIDENTIAL" level, by definition, "reasonably could be expected to cause damage to national security." *Id.* § 1.2(a)(3).



on the government on October 20, 2017. The Defendant's August 29, 2017 discovery letter did not number her requests, but contained 17 discovery requests with an additional 38 subparts. Although the government had on August 25, 2017, prior to the Defendant sending this discovery letter, produced to the defense approximately 400 pages of classified discovery, the Defendant admits that no member of the defense team reviewed that discovery prior to serving the government with the extensive, overbroad discovery requests set forth in her August 29 letter. Motion to Compel at 3.

(U) On October 5, 2017, the government provided to the CISO a response to the Defendant's August 29 letter (Ex. 2 to Motion to Compel; hereinafter, the "October 5 Response").[2] Although the government believed (and continues to believe) it had already fulfilled its discovery obligations, the government produced approximately 270 additional pages of discovery along with its response. On October 19, the Defendant nonetheless filed this Motion to Compel. For the reasons below, the Defendant's motion lacks merit.

(U) As described more fully below, the Defendant is charged with the unauthorized removal, retention, and disclosure of a classified intelligence report to a

[2]

███████████████████

reporter in May 2017. As this Court has said, "this case is probably different from the vast majority" of Espionage Act cases that have taken a long time to resolve because this "is a single-defendant, single-count case alleging conduct that occurred over a very isolated period of time. It couldn't be simpler than that." Tr. of Aug. 30, 2017 hearing at 10. Nonetheless, the Defendant has made discovery wide-ranging requests for incredibly sensitive information spanning a long period of time that would not bear on any element of the charged conduct, and has now moved to compel discovery on those requests. The Defendant has also sent the government two additional requests for discovery that suffer from the same flaws. The Defendant's requests would draw this case out *longer* than other Espionage Act cases.

(U)  To place the Defendant's Motion to Compel in context for the Court—and assist the Court in making the requisite determinations under *Roviaro v. United States*, 353 U.S. 53 (1957), *United States v. Yunis*, 867 F.2d 617 (1989), *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure—the government provides background information in Section II below. Section III details the relevant legal standards. Section IV applies those standards to the facts of this case, demonstrating that the Defendant's motion should be denied in its entirety.

II.    (U)  **Factual Background**

    A.    (U)  **The Indictment**

(U)  On June 7, 2017, a federal grand jury empaneled in the United States District Court for the Southern District of Georgia returned a one-count indictment against

███████████████████



Reality Leigh Winner.[3]  The indictment charges the Defendant with the Willful Retention and Transmission of National Defense Information, in violation of Title 18, United States Code, Section 793(e).  The indictment alleges that on or about May 9, 2017, the Defendant printed and improperly removed classified intelligence reporting, which contained information relating to the national defense that was closely held by the government ("National Defense Information" or NDI)—specifically, intelligence reporting dated on or about May 5, 2017, marked TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION (SCI), that describes intelligence activities by a foreign government directed at targets within the United States.  The indictment further alleges the Defendant unlawfully transmitted the intelligence reporting to an online news outlet, which was not entitled to receive or possess the intelligence report.

**B.     (U)  The Classified Information that Was Unlawfully Disclosed**

---

[3] (U)  The Defendant was subsequently charged in a superseding indictment that did not differ substantively from the original indictment.



### C.    (U)  Facts Relating to the Charged Conduct[5]

(U)  In sum, the government's evidence shows that on May 9, 2017, the Defendant used a classified government computer system to search for, identify, and print an intelligence report and attachment that were both classified at the TOP SECRET//SCI level.  The Defendant hid the printed documents in her clothing and removed them from the building.  The Defendant, who had used her cellular phone to search for mailing addresses of news outlets, then mailed the report to at least one of those news outlets.

### 1.    (U)  The Defendant's Background



---

[5] (U)  This subsection is not intended as a complete proffer of the government's evidence of the charged conduct.  Rather, it is intended to provide context for the Court's consideration of the Motion to Compel.



---

[6] (U)  An "affiliate" is an ███ employee, advisor, military assignee, Agency contractor, or integree.

[7] (U)  The USIC consists of seventeen agencies and organizations within the Executive Branch and is tasked with providing timely, insightful, objective, and relevant intelligence to inform decisions on national security issues.



2.      **(U)  The Defendant's Activities in May 2017**

(U)  Also on May 9, the Defendant used her personal media devices to search and

view the following:

- "Washington post secure mailing address";

- How to share documents and news tips with *Washington Post* journalists –
  *The Washington Post*;

- "intercept secure drop"; and

- If you See Something, Leak Something – *The Intercept*.





**3.**    **(U)  Discovery and Investigation of the Defendant's Disclosure**





**4.    (U) The Defendant's Post-Disclosure Statements**



(U)  The Defendant has also made telephone calls from jail, which were recorded, in which she admitted to her sister, Brittany Winner, and to her mother, Billie Winner-Davis, that she "leaked a document."  In her conversation with her sister, she also said

---

8



10

█████████████████████

that she "screwed up," that she did not know if she would "get[] out of this," that "they were able to trace [the leaked document] back" to her, and the leaked document was "kind of an important one."

## III.    (U)  Legal Standards

(U)  The material the Defendant seeks to compel the government to produce is not discoverable under Rule 16 or *Brady*.  In addition, the majority of the documents sought in the Defendant's Motion to Compel are classified.  Discovery of such information must, therefore, be governed by the legal standards for classified discovery.  *See Roviaro*, 353 U.S. at 60-64; *Yunis*, 867 F.2d at 622-25; *see also United States v. Kim*, 2013 WL 3866542, at *2 (D.D.C. July 24, 2013) (on motion to compel, applying Rule 16, then applying *Yunis* standard to classified information); *United States v. Holy Land Foundation for Relief and Development*, 2008 WL 11355369, at *2-3 (N.D. Tex. Aug. 13, 2008); *United States v. Rezaq*, 156 F.R.D. 514, 516 (D.D.C. 1994), *vacated in part on other grounds*, 899 F. Supp. 697 (1995).  The different legal standards for classified and unclassified discovery are set forth below.

### A.    (U)  Classified Information Privilege

#### 1.    (U)  The Executive Branch Has Sole Authority To Classify Information

(U)  The Executive Branch has a "'compelling' interest in withholding national security information from unauthorized persons in the course of executive business." *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)).  As the Supreme Court has repeatedly emphasized,

█████████████████████

████████████████████

courts have been "reluctant to intrude upon the authority of the Executive in . . . national

security affairs." *Id.* at 530; *see Center for Nat'l Sec. Studies v. United States Dep't of

*Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). Accordingly, courts have recognized that

the determination of whether to classify information, and the proper classification

thereof, is a matter committed solely to the Executive Branch: "[T]he government . . .

may determine what information is classified. A defendant cannot challenge this

classification. A court cannot question it." *United States v. Smith*, 750 F.2d 1215, 1217

(4th Cir. 1984), *rev'd on other grounds*, 780 F.2d 1102 (4th Cir. 1985) (*en banc*); *see*

*also United States v. Musa*, 833 F. Supp. 752, 755 (E.D. Mo. 1993).

### 2.     (U)  The Government's Classified Information Privilege Can Preclude Discovery of Otherwise Relevant Evidence

(U)  The government possesses a common-law privilege in classified information

similar to that relating to confidential informants. *See Roviaro*, 353 U.S. at 60-64; *see*

*also United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009) (applying *Roviaro*

standard and affirming government's privilege relating to identity of confidential

informants). In *Roviaro*, the defendant sought the identity of a confidential informant

who was the "sole participant, other than the accused, in" a charged drug transaction.

353 U.S. at 64. The Supreme Court recognized the government's privilege in protecting

the identity of confidential informants, but held that "[w]here the disclosure of an

informer's identity, or of the contents of his communication, is relevant and helpful to the

defense of an accused, or is essential to a fair determination of a cause, the privilege must

████████████████████

███████████████████

give way." *Id.* at 60-61. The Court explained that determining whether the privilege

should be breached ultimately

> calls for balancing the public interest in protecting the flow of information against
> the individual's right to prepare his defense. Whether a proper balance renders
> nondisclosure erroneous must depend on the particular circumstances of each case
> taking into consideration the crime charged, the possible defenses, the possible
> significance of the informer's testimony, and other relevant factors.

*Id.* at 62. Considering that the confidential informant in *Roviaro* "helped to set up the

criminal occurrence and . . . played a prominent part in it," the Court was convinced his

identity had to be disclosed to the defendant. *Id.* at 64.

(U) The *Roviaro* standard has been applied to cases involving classified

information. *See Yunis*, 867 F.2d at 622. In *Yunis*, which involved the hijacking of an

international flight, the court held that classified information may be withheld from

discovery unless it is both relevant and "helpful to the defense of the accused . . . ." *Id.* at

623. At issue in *Yunis* were audio recordings of the defendant's conversations with an

undercover law enforcement asset—some of which were relevant to the charges at issue.

The government produced some of the statements and moved under CIPA to withhold

others. In ruling on the government's motion for a protective order withholding

discovery of some of the recorded conversations under Rule 16(d)(1) and CIPA Section

4, the *Yunis* court noted that the withheld conversations discussed many matters that were

"completely unrelated to the hijacking or any other terrorist operation or criminal

activity." *Id.* at 618. The court then applied the *Roviaro* standard:

> [C]lassified information is not discoverable on a mere showing of theoretical
> relevance in the face of the government's classified information privilege . . .
> [T]he threshold for discovery in this context . . . requires that a defendant seeking

13

███████████████████

██████████████████████████

> classified information, like [the] defendant seeking the informant's identity in
> *Roviaro*, [be] entitled only to information that is at least "helpful to the defense of
> the accused."

*Id.* at 623 (quoting *Roviaro*, 353 U.S. at 60-61); *see also id.* at 625 (noting that "relevant

and helpful" phrase was preferred articulation of term "materiality" also used in

*Roviaro*). Additionally, if the materials truly are relevant and helpful to the defense, the

Court should then balance the government's interest in protecting the national security

against the defendant's purported need for the classified information.[9] *See, e.g, United*

*States v. Smith*, 780 F.2d 1102, 1105 (4th Cir.1985) (*en banc*) (applying "informant's

privilege" analysis to national security interests); *Sarkissian*, 841 F.2d 959, 965 (9th Cir.

1988).

### 3.   (U) Cleared Defense Counsel Is Not Automatically Entitled to Classified Material

(U)   A defense attorney's security clearance alone does not authorize him or her

to have access to classified information; there must also be a "need-to-know." Exec.

---

[9] (U) Before ruling on the relevance or helpfulness of the discovery sought by the
defense, the *Yunis* court held that the government had a colorable claim that the discovery
sought contained classified information. *Yunis*, 867 F.2d at 623. In so holding, the court
found the government had an interest in protecting from disclosure not only the contents
of the conversations, but also the sources and methods used to collect them. *Id.* (citing
*CIA v. Sims*, 471 U.S. 159, 175 (1985)). Specifically, the *Yunis* court recognized that—as
in cases where the government invokes its informant privilege—much of the
government's national security interest "lies not so much in the contents of the [Rule 16]
conversations, as in the time, place and nature of the government's ability to intercept the
conversations at all." *Id.; see also United States v. Felt*, 491 F. Supp. 179, 183 (D.D.C.
1979) ("Protection of sources, not information, lies at the heart of the claim [of privilege]
by the Attorney General."). The court found that details revealed in surveillance "would
make all too much sense to a foreign counter-intelligence specialist who could learn
much about this nation's intelligence-gathering capabilities from what the documents
withheld from discovery revealed about sources and methods." *Yunis*, 867 F.2d at 623.

██████████████████████████

███████████████████

Order 13526 § 4.1(a)(3). This determination rests with the Executive Branch. Indeed, where a court orders the production of classified information to the defense following an *ex parte, in camera* review of such information pursuant to CIPA § 4, the United States "would then need to decide prior to court-ordered disclosure whether to produce the information to defense counsel subject to appropriate security clearance, seek alternative relief under CIPA—such as substitution of a summary or statement of the discoverable information—or file an interlocutory appeal under CIPA § 7." *United States v. Abu-Jihaad*, No. 3:07-CR-57 (MRK), 2007 WL 2972623, at *2 (D. Conn. Oct. 11, 2007).

(U) In any event, defense counsel's security clearance does not make discoverable that which is not otherwise discoverable under the *Roviaro/Yunis* "relevant and helpful" standard for classified discovery. *See, e.g., United States v. Bin Laden*, 126 F. Supp. 2d 264, 287 n.27 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 157 (2d Cir. 2008) ("Defense counsel's assertion that, given their security clearance, they ought to have access to the sensitive documents is not persuasive to the Court. As the Government explains those security clearances enable El-Hage's attorneys to review classified documents, but they do not entitle them to see all documents with that classification." (internal quotation marks and citation omitted)); *Abu-Jihaad*, 2007 WL 2972623, at *2 ("If . . . the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless whether its counsel is willing to submit to security clearance procedures." (citations omitted)). *See also United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006) (acknowledging the appropriateness of the government's seeking to withhold

███████████████████

███████████████

classified material through *ex parte* proceedings under CIPA § 4, "even where defense

counsel have security clearances").

### B.    (U)  Rule 16 of the Federal Rules of Criminal Procedure

(U)  To the extent that the Defendant seeks the production of unclassified material

that is not exculpatory within the meaning of *Brady*, she must rely on Rule 16(a)(1)(E) of

the Federal Rules of Criminal Procedure.  Rule 16(a)(1)(E) provides in pertinent part:

> Upon a defendant's request, the government must permit the defendant to
> inspect and to copy or photograph books, papers, documents, data,
> photographs, tangible objects, buildings or places, or copies or portions of
> any of these items, if the item is within the government's possession,
> custody, or control and . . . the item is material to preparing the defense.

Fed. R. Crim. P. 16(a)(1)(E).

(U)  "[A]n abstract logical relationship to the issues in the case" is not, without

more, sufficient to force production of discovery under Rule 16.  *United States v. Ross*,

511 F.2d 757, 762 (5th Cir. 1975).[10]  According to the Eleventh Circuit, an item under

Rule 16(a)(1)(E)(i)

> need not be disclosed unless the defendant demonstrates that it is material
> to the preparation of his defense.  A general description of the item will
> not suffice; neither will a conclusory argument that the requested item is
> material to the defense.  Rather, the defendant must make a specific
> request for the item together with an explanation of how it will be "helpful
> to the defense." . . .  There must be some indication that the pretrial
> disclosure of the item would . . . enable the defendant significantly to alter
> the quantum of proof in his favor.

*United States v. Jordan,* 316 F.3d 1215, 1250-51 (11th Cir. 2003) (internal citations,

---

[10] (U)  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit
issued prior to October 1, 1981.

███████████████

████████████████████

quotations, and alterations omitted).[11]  This standard is applied below in the few

instances where the Defendant seeks the production of unclassified material.

C.     (U)  The Government's Discovery Obligations Do Not Require It To
       Search the Files of Agencies Not Involved in the Investigation and
       Prosecution of This Case

(U)  The Defendant appears to assume that the government's discovery

obligations under both *Brady* and Rule 16 extend to any paper drafted by any federal

employee in any federal agency or department.  *See, e.g.,* Motion to Compel at 14

(requesting any product produced by "any portion of the Executive Branch").  She is

mistaken.  Although a prosecutor has "a duty to learn of any favorable evidence known to

the others acting on the government's behalf in the case, including the police," *Kyles v.

Whitley,* 514 U.S. 419, 437 (1995); *accord United States v. Meros,* 866 F.2d 1304, 1309

(11th Cir. 1989), it is equally well settled that the prosecutor is not accountable for

information in the files of agencies not involved in the investigation and prosecution of

the case, where the prosecutor neither has knowledge of nor control over those files.  *See

United States v. Mouzon,* 1:16-cr-00048, Dkt. No. 34 at 2 (S.D. Ga. Nov. 17, 2016) ("The

government's duties under Brady and Giglio do not require the production of exculpatory

evidence that is not in possession of the government's 'prosecution team.'"); *see also*

---

[11] (U) Rule 16 also authorizes the Court to regulate discovery.  This includes authority
to, "for good cause, deny, restrict, or defer discovery or inspection, or grant other
appropriate relief."  Fed. R. Crim. P. 16(d)(1).  "Among the considerations to be taken
into account" when deciding a motion under Rule 16(d)(1) is "the protection of
information vital to the national security."  Rule 16 Advisory Committee Notes, 1966
Amendments, Subdivision (e); *see also United States v. Moussaoui,* 591 F.3d 263, 281
(4th Cir. 2010) ("'[G]ood cause' includes the protection of information vital to the
national security." (quoting *United States v. Aref,* 533 F.3d 72, 78 (2d Cir. 2008)).

████████████████████

████████████████

*Moon v. Head,* 285 F.3d 1301, 1309-10 (11th Cir. 2002) (Georgia prosecutor not

accountable for impeachment evidence in the files of Tennessee prosecutor); *United*

*States v. Hansen,* 262 F.3d 1217, 1234-35 (11th Cir. 2001) (no obligation to disclose

court opinions discrediting testimony of expert witness where no evidence that

prosecutors were "in actual possession of the information or actually suppressed it");

*Meros,* 866 F.2d at 1309 (prosecution team includes the prosecutor and "anyone over

whom he has authority"; prosecutors in one district did not "possess" favorable

information held by prosecutors in other districts); *United States v. Trevino,* 556 F.2d

1265, 1271 (5th Cir. 1977) (for purposes of then-Rule 16(a)(1)(C), "'the government'

means the defendant's adversary, the prosecution," and includes connected investigative

agencies); *United States v. Pelullo,* 399 F.3d 197, 217-218 (3d Cir. 2005) (prosecutor's

*Brady* obligation did not extend to documents collected by the Pension and Welfare

Benefits Administration of the Department of Labor); *United States v. Casas,* 356 F.3d

104, 116 (1st Cir. 2004) (*Brady* obligation did not extend to citizenship files of

cooperating witness, which were not in the prosecution's files and instead were

maintained by "another agency not under its supervision in this case").

(U)  Thus, the government should not be required to conduct a fishing expedition

by inquiring of agencies unrelated to the prosecution team whether they may have any

documents that may be helpful to the Defendant. *See Moon,* 285 F.3d at 1310 (quoting

with approval *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998)

("'[K]nowledge on the part of persons employed by a different office of the government

does not in all instances warrant the imputation of knowledge to the prosecutor, for the

████████████████



imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of the government that would condemn the prosecution of criminal cases to a state of paralysis.'") (internal citations in *Avellino* omitted)); *United States v. Morris,* 80 F.3d 1151, 1169 (7th Cir. 1996) (opining that *Kyles* cannot "be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue"); *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989) ("[A] federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under [then-]Rule 16(a)(1)(C)."); *Meros,* 866 F.2d at 1309 (stating that a "prosecutor has no duty to undertake a fishing expedition" in other parts of the government over which he has no authority).

## IV.   (U) Argument



(U)  Moreover, none of the material that the Defendant seeks in her Motion to

Compel is exculpatory.  Nor could the classified materials be construed as "relevant and

helpful" to the defense under the *Roviaro/Yunis* standard.  The arguments in the

Defendant's motion are based on misstatements of law, faulty factual premises, incorrect

assumptions, and rank speculation.  Indeed, the Defendant struggles to find any sensible

justification for her requests.  This Court should see the Defendant's Motion to Compel

for what it is—an attempt, through graymail,[12] to bring this prosecution to a halt.

---

[12] (U)  The term "graymail" typically refers to defense demands for classified information

██████████████

Accordingly, the Defendant is not entitled to discovery of the classified material that she seeks. In the few instances where the Defendant appears to be moving to compel production of unclassified material, the Defendant has failed to make the requisite showing even under the comparatively lesser standard for unclassified discovery under applicable subsections of Fed. R. Crim. P. 16. Thus, as discussed in detail below, the Defendant's Motion to Compel should be denied in its entirety.

**A.      (U)  With Respect to Certain Discovery Requests, the Defendant is Not Entitled to the Production of Any Material**

(U)  Applying the legal standards above, the Defendant has requested a number of items to which she is not entitled. For clarity, because the Defendant did not number her requests in the letter, the government uses the Defendant's numbering in her Motion to Compel.[13]

**1.  (U)  Request for all ████ reports from February 1, 2017 to June 7, 2017**



that the United States is loath to disclose upon pain of dismissal of an indictment. *See United States v. Smith*, 899 F.2d 564, 565 n.1 (6th Cir. 1990). The Defendant here is engaging in a kind of "process graymail," whereby she seeks to have the Court force the government to go far beyond any conceivable discovery requirement in a futile exercise to plow and re-plow through classified databases, all the while delaying the trial of this matter. The Court should decline the Defendant's invitation to grind this case to a halt.

[13] (U)  The government has requested that the Defendant clearly number her individual requests in future letters.

21

██████████████



---
14





2.  (U)  Number and identities of individuals with access to





23





[16] (U)  The government continues to coordinate with the appropriate agencies to ensure that the list provided to the Defendant does not include any covert identities or affiliations.



3.

---

[17] (U)  Further, given the challenges in investigating unauthorized disclosures in the first instance, any suggestion by the defense that either it, or the prosecution team in this matter, can now productively investigate other uncharged unauthorized disclosures would be far-fetched. *See United States v. Kim*, 808 F. Supp. 2d 44, 55 (D.D.C. 2011); *see also Morison*, 844 F.2d at 1067 (discussing difficulty in establishing violations of 18 U.S.C. § 793(d)).



4.





27







(U)  The Defendant's argument also fundamentally misconstrues the term "closely held." Several courts have defined "closely held" in the negative:  information is *not* "closely held" if (a) it "has been made public by the United States Government and is found in sources lawfully available to the general public," or (b) "sources of information are lawfully available to the public and the United States Government has made no effort to guard such information . . . ." *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 387 (D. Conn. 2009).  The Fourth Circuit has approved the same formulation, noting also that:

> a document containing official government information relating to the national defense will not be considered available to the public (and therefor no longer national defense information) until the *official* information in that document is lawfully available. Thus . . . mere leaks of classified information are insufficient to prevent prosecution for the transmission of a classified document that is the official source of the leaked information.

*United States v. Squillacote*, 221 F.3d 542, 578 (4th Cir. 2000).



20



**5.**

---

[21] (U)  The Defendant appears to argue that the fact that appropriately cleared government officials discussed classified information regarding a foreign threat to national security would somehow show the information at issue is not "closely held." Such a claim is nonsensical; the USIC collects foreign intelligence information through classified sources and methods specifically so that appropriately cleared policymakers and other government officials can use it to protect the United States.

31



6.

7.



(U)  The Defendant is plainly grasping at straws in an attempt to justify this overbroad and intentionally burdensome request.  Information responsive to the request could not be material, let alone relevant and helpful, to the defense.

8. 





10. 

23



11.

12.





**13.**

(U)  For all of these reasons, the Defendant is not entitled to any further discovery regarding the above requests.



**B.      (U)  The Government Has Provided All of the Information to
Which the Defendant Is Entitled**

(U)  The Defendant incorrectly claims that the government has in three instances

provided insufficient responses to discovery requests.

39



2.

(U)  The government has provided a detailed harm statement to the Defendant, which it also has provided to the Court. *See* October 5 Response at 4.  The Defendant does not ask for any additional information.  She merely states, without any support, that other individuals could also have caused harm.

(U)  As the government has explained, it is not obligated to prove damage under 18 U.S.C § 793(e). *See* Dkt. No. 122 at 7-8.  And in any event, the government has provided the Defendant all information to which she is entitled.

3.  **(U//~~FOUO~~)  The identity of individuals who classified the report on or before May 9, as well as any related correspondence**





---

[24] (U)  To be sure, classification may be "highly probative" of the elements, particularly whether information is "closely held," because a person in possession of a marked classified document "can easily determine:  (i) whether the possession is authorized; (ii) which portions of the information the government is attempting to keep secret; and (iii) who else is entitled to receive the document."  *United States v. Rosen*, 445 F. Supp. 2d 602, 624 (E.D. Va. 2006).

**C.    (U) The Government Has Properly Identified All Governmental Components of the Prosecution Team and Provided All Required Information Within Its Knowledge and Control**

(U) The Defendant incorrectly claims that the government "has not identified what components of the government, intelligence community, or military it has searched for responsive information or documents." Motion to Compel at 21. The Defendant can plainly observe from the discovery already provided that the Government has searched the records of the FBI, ███ and USAF for information falling within the purview of Rule 16, *Brady*, and *Giglio*, and has provided all discoverable material.

(U) Moreover, the Government provided clarification when asked by the Defendant whether various federal agencies were part of the prosecution team. On October 18, 2017, defense counsel sent the following request to the Government via email:

From:      Titus Nichols <titus@bellbrigham.com>
Sent:      Wednesday, October 18, 2017 3:23 PM
To:        Solari, Jennifer (USGAS)
Subject:   Subpoena question under Rule 16/17

I have a question regarding the Government's position on materials that we'd like to receive from several federal agencies and entities under Brady and Rule 16.
Would the following agencies be subject to Brady and Rule 16 in this matter?
DOJ
FBI
███
CIA
DHS

42

██████████████████████

DOD
White House Office
National Security Council
NARA
      If these specific entities do not fall under Brady and Rule 16, then would the prosecution be willing to accept service for the purpose of Rule 17[?]

(U)  On October 19, 2017, the Government responded as follows:

From:      Solari, Jennifer (USGAS)
Sent:      Thursday, October 19, 2017 4:46 PM
To:      titus@bellbrigham.com
Subject:      Govt response to discovery/subpoena question

We have provided discovery consistent with applicable law and DOJ policy.  For your awareness, based on information we currently have, the following agencies are beyond the scope of our discovery obligations:  CIA, DHS, DoD (other than ███ and USAF), National Security Council, and NARA.  We are not certain what is meant by "White House Office."

The prosecution team will not accept service of subpoenas on behalf of such components of the U.S. Government.

You are advised to coordinate with the CISO as appropriate.

(U)  Once again, although a prosecutor has "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley,* 514 U.S. 419, 437 (1995); *accord United States v. Meros,* 866 F.2d 1304, 1309 (11th Cir. 1989), it is equally well settled that the prosecutor is not accountable for information in the files of agencies not involved in the investigation and prosecution of the case, where the prosecutor neither has knowledge of nor control over those files. *See United States v. Mouzon,* 1:16-cr-00048, Dkt. No. 34 at 2 ("The government's duties under Brady and Giglio do not require the production of exculpatory evidence that is not in possession of the government's 'prosecution team.'").  The

██████████████████████

███████████████████

Government avers it has neither knowledge of nor control over any files the Defendant seeks from agencies outside the prosecution team. As such, the government is not accountable for such information, and the Defendant's various and sweeping requests for it should be denied.

### D. (U)  The Defendant Is Not Entitled to a Privilege Log

(U)  The Defendant also requests a privilege log, but she is not entitled to one. The information discussed herein is not discoverable regardless of applicable privileges. Moreover, it is well settled in the context of the government's classified information privilege that there is "no due process right to receive a description of materials in the government's possession that are not discoverable." *United States v. Sedaghaty*, 728 F.3d 885, 909 (9th Cir. 2013) (citing *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006)).

### V.     (U)  Conclusion

(U)  For all of the foregoing reasons, the Defendant's Motion to Compel should be denied in its entirety.

Respectfully submitted,

R. BRIAN TANNER
UNITED STATES ATTORNEY

By:     */s/ Jennifer G. Solari*
Jennifer G. Solari
Assistant United States Attorney
Southern District of Georgia

*/s/ Julie A. Edelstein*
Julie A. Edelstein
*/s/ David C. Aaron*

44

███████████████████

David C. Aaron
Trial Attorneys
U.S. Department of Justice
National Security Division

███████████████████

## CERTIFICATE OF SERVICE

This is to certify that I have on this day provided the foregoing to the Classified

Information Security Officer (CISO), and will send notification of such filing to counsel

of record for all parties.

R. BRIAN TANNER
UNITED STATES ATTORNEY

*/s/ Julie A. Edelstein*

Julie A. Edelstein
Trial Attorney

600 E Street, N.W.
Washington, D.C. 20004
(202) 233-2260

███████████████████