UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| VERSUS | * | NO. 1:17-CR-0034 |
| | * | |
| REALITY LEIGH WINNER | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | * | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR A HEARING**

**I.    INTRODUCTION**

In preparing this reply, undersigned defense counsel realized that they have failed to raise a legal issue that is central to whether Ms. Winner can lawfully be detained pretrial: that the Bail Reform Act does not permit consideration of dangerousness to the community for the offense alleged in this case. Defense counsel apologizes to the Court for this oversight and consents to the Government's filing a sur-reply if helpful to the Court. Under the correct legal standard for pretrial detention, the Government cannot meet its burden to prove that Ms. Winner poses a serious risk of flight and that there are no set of conditions that could mitigate any such risk. Ms. Winner has consented to a number of conditions of release—including electronic monitoring, surrendering her passport, having her mother serve as third-party custodian, and posting her mother's property as bond—that provide ample assurance that Ms. Winner will appear in court.

The Government fails to articulate any plausible rationale why these specific conditions would not adequately ensure that Ms. Winner does not flee. Nor does the Government address the fact that it seeks to treat Ms. Winner differently from nearly every other defendant ever charged under 18 U.S.C. § 793, who have almost all been released pending trial. This Court should reject the Government's effort to treat Ms. Winner differently from all of these other

1

defendants, especially given that Ms. Winner has no criminal history, served this country honorably in the Air Force for six years, and is extremely close with her mother, who will post her home as bond and move to Augusta to care for her daughter.

## II.   ARGUMENT AND CITATION OF AUTHORITIES

### A.   The Bail Reform Act Does Not Permit Pretrial Detention of Defendant Based on Purported Danger to the Community

Under the Bail Reform Act, dangerousness to the community is not a permissible basis on which to detain Ms. Winner pretrial. It is "uniformly accepted" that the Act, and in particular 18 U.S.C. § 3142(f), provides the exclusive circumstances under which a court may detain a defendant pretrial. *United States v. Giordano*, 370 F. Supp. 2d 1256, 1260 (S.D. Fla. 2005). Subsection (f)(1) of Section 3142 authorizes pretrial detention for five specific types of offenses:

- (A) Crimes of violence;
- (B) Offenses for which the maximum sentence is life imprisonment or death;
- (C) Serious drug offenses;
- (D) Any felony for persons previously convicted of two or more crimes meeting the criteria of (A) through (C); and
- (E) Certain felonies involving minor victims

18 U.S.C. § 3142(f)(1). Outside of these five types of offenses, a defendant may be detained pretrial only if the Government proves that there is "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice." *Id.* § 3142(f)(2).

As the district court in the Southern District of Florida recognized in *Giordano*, 370 F. Supp. 2d 1256, every Circuit Court to have addressed the issue has held that a court may detain a defendant based on dangerousness to the community *only* for the five types of crimes falling under subsection (f)(1). *Giordano*, 370 F. Supp. 2d at 1261-62. In *United States v. Himler*, 797

F.2d 156 (3d Cir. 1986), for instance, the defendant was charged with making false identifications documents. The Third Circuit held that "the statute [did] not authorize the detention of the defendant based on danger to the community" because making false identification documents was not a crime that met the criteria of subsection (f)(1). *Id.* at 160. Rather, "[a]ny danger which he . . . present[ed] to the community [could] be considered only in setting *conditions* of release." *Id.* (emphasis added). The First Circuit likewise held in *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988), that "where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)." *Id.* at 11. Other Circuit Courts have reached similar conclusions. *See United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992); *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *see also United States v. DeBeir*, 16 F. Supp. 2d 592, 594-95 (D. Md. 1998) ("[I]t is clear that the [Bail Reform] Act . . . allows dangerousness to justify detention only for those individuals who fall within the carefully delineated categories set forth in § 3142(f)(1), rather than those who pose a risk of flight or risk of obstruction of justice under (f)(2)").

Although "[t]he Eleventh Circuit has not had occasion to apply or follow these circuits' reasoning as to the dangerousness prong of section 3142(f)," "[t]here is no indication . . . [it] would interpret section 3142(f) any differently." *Giordano*, 370 F. Supp. 2d at 1262-63. The Eleventh Circuit "has consistently applied the statute narrowly, limited to its express provisions and consistent with the applicable legislative history." *Id.* The "express provisions" of § 3142 are clear: pretrial detention is limited to just seven circumstances, five enumerated in subsection (f)(1) and two in subsection (f)(2). Dangerousness is relevant to the five types of crimes outlined in subsection (f)(1), which involve "a small but identifiable group of particularly dangerous

defendants." *Himler*, 797 F.2d at 160 (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6-7 (1983)).  But for charges that do not fall under subsection (f)(1), danger to the community is no longer a relevant consideration, and all that is relevant is whether the defendant is a risk of flight or to obstruct justice.  In short, there "is no statutory support for a contrary view that applies dangerousness analysis to a section 3142(f)(2) case." *Giordano*, 370 F. Supp. 2d at 1263 n.5.

Here, the offense with which Defendant is charged, 18 U.S.C. § 793(e), is *not* one of the types of offenses enumerated in subsection (f)(1).  Thus, the magistrate judge's findings regarding Defendant's purported danger to the community are not a basis on which to deny Ms. Winner bail.[1]

As noted above, while undersigned counsel inadvertently failed to raise this argument before Magistrate Judge Epps, it can nonetheless be considered now, as this Court can "consider[] an argument not raised before the magistrate judge" in conducting *de novo* review. *United States v. Franklin*, 694 F.3d 1, 6 (11th Cir. 2012) (quoting *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006)) (reviewing report and recommendation).[2]

**B.     The Government Has Not Shown That There is a Serious Risk of Flight**

Because the Government does not suggest that Defendant is a risk to obstruct justice for purposes of subsection (f)(2), Defendant "may be detained only if the record supports a finding

---

[1] Even if this Court were to consider dangerousness, it does not support Ms. Winner's continued detention.  As set forth in in the Defendant's Appeal of the Magistrate Judge's Detention Order [Doc. 128], all of the magistrate judge's findings with respect to dangerousness are either based on speculation (for which there is no record evidence) or fail to take into account all evidence presented at the second detention hearing, which substantially reduced the weight of those findings.  *See* Doc. 128 at pp. 7-10.

[2] Counsel respectfully submits that, where Ms. Winner's liberty at stake, she should not be made to suffer the consequences of counsel's error.  *See United States v. Hung Thien Ly*, 646 F.3d 1307, 1316 (11th Cir. 2011) ("[T]he Supreme Court instructs courts to indulge every reasonable presumption against waiver of fundamental constitutional rights." (internal quotation marks omitted)).  Indeed, the Eleventh Circuit has held in the civil forfeiture context that a "district court should be wary to not confer the sins of the attorney unto the claimant . . ., especially when the prejudice to the government, if any, is slight." *United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004).  That is all-the-more true in this criminal matter, particularly where any prejudice to the Government can be eliminated through a sur-reply.  *See First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008)  (noting that district courts often permit sur-replies "where the movant raises new arguments in its reply brief").

that [s]he presents a serious risk of flight." *Himler*, 797 F.2d at 160. As to that risk, the Government fails to address why the following measures and considerations do not "reasonably assure" Ms. Winner's appearance in court:

- Ms. Winner has consented to wearing a monitoring bracelet and/or to other forms of electronic monitoring that the Court deems appropriate;

- Ms. Winner has surrendered her passport;

- Ms. Winner's mother has agreed to move to Augusta, to serve as her daughter's third-party custodian, and to report any violation of any condition of release to the Court;

- Ms. Winner's mother and step-father, with whom Ms. Winner has a very close relationship, have agreed to post their property as bond; and

- Ms. Winner has limited financial resources of her own.

These conditions are more than sufficient to reasonably ensure that Ms. Winner cannot, and does not, flee. *See, e.g.*, *United States v. Mozee*, No. 1:15-CR-434-WSD, 2017 WL 1075061, at *5 (N.D. Ga. Mar. 22, 2017) (imposing GPS monitoring and other restrictions on the defendant's movements as conditions of pretrial release). Indeed, the Government does not specifically "articulate any flaw" in these proposed conditions or explain why they would not reasonably protect against risk of flight. *United States v. Madoff*, 586 F. Supp. 2d 240, 249 (S.D.N.Y. 2009) (allowing for pretrial release with certain monitoring conditions for Bernie Madoff). For instance, while the Government points to the magistrate judge's finding that Ms. Winner is a flight risk because she previously expressed a desire to "find somewhere in Kurdistan to live . . . or Nepal," Doc. 131 at 4, the Government does not explain how Ms. Winner could conceivably move to those countries, even if she wanted, while under electronic monitoring and without a passport. Nor does the Government address the fact that Ms. Winner made these statements about foreign countries before she faced criminal charges, whereas now her mother would lose her home if Ms. Winner were to defy her conditions of release and move

5

abroad. The Government bears the burden of showing that "no condition or combination of conditions" could reasonably ensure that Defendant appears in court, *Madoff*, 586 F. Supp. 2d at 249, and the Government has not met its burden here.

Indeed, a comparison to another recent high-profile case demonstrates the extremeness of the Government's position here. Paul Manafort and Rick Gates were recently indicted for, among other things, allegedly being unregistered agents of a foreign country, allegedly laundering tens of millions of dollars through foreign bank accounts, and allegedly lying to the Government to conceal their scheme. *See United States v. Manafort*, No. 1:17-cr-00201-ABJ, ECF No. 14 (D.D.C. Oct. 31, 2017). Manafort allegedly has *three different passports* with *three different numbers*, *tens of millions of dollars in assets*, and in the last year alone, traveled Dubai, Cancun, Panama City, Havana, Shanghai, Madrid, Tokyo, and Grand Cayman Island. *Id.* at 10-12 & n.5. Despite all of this, the Government *consented* to the pretrial release of Manafort and Gates with electronic monitoring and movement restrictions, because "[t]he government recognize[d] that the defendants are United States citizens with no criminal history." *Id.* at 1. The same is true of Ms. Winner.

    **C.**    **The § 3142(g) Factors Weight in Favor of Release**

The § 3142(g) factors confirm that there "are conditions of release that will reasonably assure the appearance of" Ms. Winner and thus pretrial detention is unwarranted in this case.

    **1.**    **Nature and Circumstances of the Offense Alleged**

The Government does not dispute that it is exceedingly rare for persons charged under the statute at issue here, 18 U.S.C. § 793(e), to be detained pretrial. The Government points to *just one other case* where a defendant charged under the statute has been detained pretrial. Doc. 131 11 n.4. (citing *United States v. Martin*, No. 1:17-cr-00069-MJG (D. Md.)). And the court

detained the defendant there, who allegedly hoarded reams of classified information over a 20-year period, only after finding he was a risk of flight; significantly, the court recognized that the Bail Reform Act "did not permit the Government to seek detention on the basis of danger to the public" given the offenses alleged. *Martin*, No. 1:17-cr-00069-MJG, ECF No. 31 at 32.

In contrast to this single case, Ms. Winner has cited *over a dozen cases* where defendants charged with disclosing or improperly retaining classified information were released pretrial. Doc. 96-1 at 15-20. Almost all of these defendants disclosed or retained far more classified information than Ms. Winner allegedly did. *See id.* Moreover, while the magistrate judge claimed that there was would be a "risk to national security posed by releasing [Ms. Winner] . . . given her access to a wealth of classified information during her service in the Air Force and with NSA," the same was true in nearly all of the 13 cases that Ms. Winner cites: nearly all of those defendants were longtime Government employees who had knowledge of vast amounts of classified information that they theoretically could have disclosed while on pretrial release. That did not stop these other courts from releasing the defendants pending trial, and it should not here.

Indeed, the purported "ongoing risk to national security" that the magistrate judge assessed was not a proper consideration in deciding to detain Ms. Winner, Doc. 115 at 2, because dangerousness to the community is not a basis for pretrial detention in this case.[3] Congress knew that defendants charged under 18 U.S.C. § 793 would often be former Government employees or contractors with knowledge of a wide range of classified information, but Congress still chose not to include 18 U.S.C. § 793 within the list of offenses under 18 U.S.C. § 3142(f)(1) for which dangerousness to the community is a ground for denying bail. That surely is one of the reasons why every other defendant charged under the statute except one has been released pretrial.

---

[3] And, again, even if this Court were to consider dangerousness, the Government has failed to meet its burden. *See* Doc. 128 at pp. 15-22.

### 2. Weight of the Evidence

In its opposition to this appeal, the Government asserts that there is "compelling circumstantial evidence of [Ms. Winner's] guilt," but the Government does not address the actual elements of the offense. Doc. 131 at 14. The Government has conceded in this case, as it must, that it does not suffice under 18 U.S.C. § 793(e) to show that the document allegedly disclosed was classified. Doc 122 at 6. Rather, the Government must prove—and the jury must find beyond a reasonable doubt—that the document qualified as "national defense information." The Government also concedes that, to prove that the document was national defense information, it must prove that the information in the document was "closely held," meaning not already in the public domain. *Id.* In addition, Magistrate Judge Epps indicated at a November 3, 2017 hearing that he is likely to rule, in accord with Defendant's position and overwhelming precedent, that the document must also have been "potentially damaging to the United States" in order to qualify as national defense information under the statute. *See generally* Doc. 132 at 3-16.

Magistrate Judge Epps did not have the benefit of full briefing on the elements of the offense at the time he issued the detention order, but these elements and others (including several *mens rea* requirements) will be significantly disputed at trial. *See generally* Doc. 112, 132. While the Government claims that it "explained in a classified setting at the detention hearing, with the Defendant present, [that] exceptionally grave harm did result," Doc. 131 at 12, such alleged harm has not yet been supported by any documentary evidence. Moreover, there is ample evidence that the information in the document that defendant allegedly closed was not closely held. In short, the weight of the evidence is far from what the Government suggests.

### 3. History and Characteristics

The Government does not dispute that Ms. Winner has no criminal history and that she

8

served this country with honor during her 6-year career in the Air Force. Nor does the Government deny that Ms. Winner has very strong "family ties." 18 U.S.C. § 3142(g)(3)(A). Ms. Winner is extremely close with her mother, who has made arrangements to move to Augusta to live with her daughter and is willing to post her property as bond to secure her daughter's release. The Government does not point to any evidence, because there is none, that Ms. Winner has ever taken action harmful to her family or that would jeopardize their well-being. To the contrary, the Government has produced in discovery large volumes of conversations between Ms. Winner and her sister, showing how close Ms. Winner is with her family. There simply is no basis to believe that Ms. Winner would be willing to cause significant hardship to her mother by fleeing.

The Government nonetheless continues to argue that Ms. Winner is a flight risk and/or a danger to the community, relying largely on a single a single incident where Ms. Winner inserted a thumb drive into a Top Secret computer while in the Air Force, and certain political statements that Ms. Winner made to her sister in private Facebook conversations. With respect to the thumb drive incident, the Government has done a forensic analysis and has found no evidence that Ms. Winner downloaded classified information onto the thumb drive. At the initial detention hearing before Magistrate Judge Epps on June 8, 2017, the Government speculated that Ms. Winner may have downloaded classified information onto the thumb drive and argued that detention was warranted because Ms. Winner could disclose such information if released on bail. Doc. 29 at 97-98. But in the months that followed that initial hearing, the Government analyzed the system logs for the computer in which Ms. Winner inserted the thumb drive and found no evidence that she downloaded classified information. Doc. 99 at 4 n.2. Significantly, the magistrate judge neglected to address this fact in the detention order and continued to rely on this incident as basis

for detention.  Doc. 115 at 5-6.  That was error.  And while the Government persists in speculating that there was something nefarious about this incident—stating that Ms. Winner "offers no explanation as to why she misused a Top Secret computer," Doc. 131 at 6—Ms. Winner (who is under no obligation to offer a reason) *has* explained why she inserted the thumb drive into the computer, stating that she likely used the thumb drive just to save her resume.  Doc. 100-1 at 68-69.

As for the political (and Constitutionally-protected) statements that Ms. Winner made to her sister in private conversations, those statements have no bearing on the likelihood that Ms. Winner would flee and therefore are irrelevant for present purposes.  In any event, Ms. Winner's passing expressions of admiration for Edward Snowden and Julian Assange in private Facebook conversations with her sister are no basis to conclude that she "hates" America.  **Indeed, the current President of the United States has stated: "I love Wikileaks."**  Gabrielle Healy, *Did Trump really mention WikiLeaks over 160 times in the last month of the election cycle?*, Politifact, Apr. 21, 2017.  The Government cannot credibly claim that all persons who express agreement on any level with these individuals or organizations are intent on doing harm to the United Sates.

### 4. Danger Posed by Release

This final factor is of little, if any, relevance in a case such as this, where dangerousness to the community is not a basis on which to detain Defendant pretrial.  But to the extent this factor is relevant, the Government has not proved that no "condition or conditions" could mitigate any risk to the community that Ms. Winner purportedly poses.  Ms. Winner has consented to restrictions such as not accessing the internet and not even possessing an electronic device capable of accessing the Internet.  And Ms. Winner's mother, who will be living with her,

will be able to validate Ms. Winner's compliance with these restrictions. Such restrictions, in addition to the other bail conditions Ms. Winner has offered, are more than sufficient to provide "reasonable" assurance that Ms. Winner will not endanger the safety of the community. It bears emphasis again that Ms. Winner has no criminal history, honorably served this country for six years, and has strong family ties.

## V.     CONCLUSION

In short, to take the extraordinary measure of detaining Ms. Winner without bail before trial, the Government must prove that she poses a serious risk of flight and that there are no set conditions that could reasonably mitigate that risk. The Government has not met its burden. There are a number of conditions—such as electronic monitoring, having Ms. Winner's mother serve as her custodian, and posting her mother's property as bond—that substantially mitigate any risk of flight. The Government fails to address these conditions and ask this Court to treat Ms. Winner unlike virtually every other defendant who has been charged with the same offense. Defendant respectfully requests that this Court (1) revoke the order of detention, (2) find that there is a combination of conditions that will reasonably assure Ms. Winner's appearance, and (3) release her pending trial, as well as grant such additional relief as may be warranted. Ms. Winner also reiterates her request for a hearing to address this Appeal.

Respectfully submitted,

*/s/ Joe D. Whitley*

| | |
|---|---|
| Joe D. Whitley (Bar No. 756150) | John C. Bell, Jr. (Bar No. 048600) |
| Admitted *Pro Hac Vice* | Titus T. Nichols (Bar No. 870662) |
| Brett A. Switzer (Bar No. 554141) | **BELL & BRIGHAM** |
| **BAKER, DONELSON, BEARMAN,** | PO Box 1547 |
| **CALDWELL & BERKOWITZ, P.C.** | Augusta, GA  30903-1547 |
| 3414 Peachtree Rd., NE Suite 1600 | (706) 722-2014 |
| Atlanta, GA  30326 | John@bellbrigham.com |
| (404) 577-6000 | Titus@bellbrigham.com |
| JWhitley@bakerdonelson.com | |
| BSwitzer@bakerdonelson.com | |

| | |
|---|---|
| Matthew S. Chester (La. Bar No. 36411) | Thomas H. Barnard (Az. Bar No. 020982) |
| Admitted *Pro Hac Vice* | Admitted *Pro Hac Vice* |
| **BAKER, DONELSON, BEARMAN,** | **BAKER, DONELSON, BEARMAN,** |
| **CALDWELL & BERKOWITZ, P.C.** | **CALDWELL & BERKOWITZ, P.C.** |
| 201 St. Charles Ave., Suite 3600 | 100 Light Street. |
| New Orleans, LA  70170 | Baltimore, MD  21202 |
| (504) 566-5200 | (410) 685-1120 |
| MChester@bakerdonelson.com | TBarnard@bakerdonelson.com |

Jill E. McCook (Tn. Bar No. 033813)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
   **CALDWELL & BERKOWITZ, P.C.**
265 Brookview Centre Way, Suite 600
Knoxville, TN  37919
(865) 549-7129
JMCook@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT
REALITY LEIGH WINNER**

## **CERTIFICATE OF SERVICE**

   I hereby certify that on November 9, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

                   */s/ Joe D. Whitley*
                   Joe D. Whitley