APPEAL,PROTO

# U.S. District Court
## Southern District of Georgia (Augusta)
## CRIMINAL DOCKET FOR CASE #: 1:17−cr−00034−JRH−BKE All Defendants

Case title: USA v. Winner
Magistrate judge case number: 1:17−mj−00024−BKE

Date Filed: 06/07/2017

Assigned to: Chief Judge J.
Randal Hall
Referred to: Magistrate Judge
Brian K. Epps

**Defendant (1)**

| | | |
|---|---|---|
| **Reality Leigh Winner** | represented by | **Brett A. Switzer** |
| | | Baker, Donelson, Bearman, Caldwell & Berkowitz, PC |
| | | 1600 Monarch Plaza |
| | | 3414 Peachtree Road, NE |
| | | Atlanta, GA 30326 |
| | | 404−577−6000 |
| | | Fax: 404−238−9799 |
| | | Email: bswitzer@bakerdonelson.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Jill E McCook** |
| | | Baker, Donelson, Bearman, Caldwell & Berkowitz, PC |
| | | 265 Brookview Centre Way |
| | | Suite 600 |
| | | Knoxville, TN 37919 |
| | | 865−549−7129 |
| | | Email: jmccook@bakerdonelson.com |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Joe D. Whitley** |
| | | Baker, Donelson, Bearman, Caldwell & Berkowitz, PC |
| | | 3414 Peachtree Road, NE |
| | | Suite 1600 |

1

Atlanta, GA 30326
404−223−2209
Email: jwhitley@bakerdonelson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**John C. Bell , Jr.**
Bell & Brigham
457 Greene Street
Augusta, GA 30901
706−722−2014
Fax: 706−722−7552
Email: john@bellbrigham.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew Scott Chester**
Baker, Donelson, Bearman, Caldwell, and
Berkowitz
201 St Charles Avenue, Suite 3600
New Orleans, LA 70170
504−566−5231
Fax: 504−585−6931
Email: mchester@bakerdonelson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Thomas H Barnard**
Baker, Donelson, Bearman, Caldwell & Berkowitz
PC
Legg Mason Building
100 Light Street, 19th Floor
Baltimore, MD 21202
410−862−1185
Fax: 443−263−7585
Email: tbarnard@bakerdonelson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Titus Thomas Nichols**
Bell & Brigham
457 Greene Street
Augusta, GA 30901
706−722−2014
Fax: 706−722−7552

Email: titus@bellbrigham.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| Willful Retention and Transmission of National Defense Information (1) | |
| WILLFUL RETENTION AND TRANSMISSION OF NATIONAL DEFENSE INFORMATION (1s) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| Gathering, Transmitting or Losing Defense Information | |

---

**Interested Party**

| **Carli Rodriguez−Feo** | represented by | **Carli Rodriguez−Feo** |
| --- | --- | --- |
| | | Classified Information Security Officer |
| | | Email: carli.rodriguez−feo@usdoj.gov |
| | | *PRO SE* |

---

**Plaintiff**

| **USA** | represented by | **Jennifer Gayle Solari** |
| --- | --- | --- |
| | | U.S. Attorney's Office − Savannah |
| | | P.O. Box 8970 |
| | | Savannah, GA 31412 |
| | | 912−201−2561 |

Fax: 912−652−4388
Email: jennifer.solari@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Brian T. Rafferty**
U.S. Attorney's Office − Savannah
P.O. Box 8970
Savannah, GA 31412
912−201−2575
Fax: 912−652−4388
Email: brian.rafferty@usdoj.gov
*Designation: Retained*

**James D. Durham, AUSA**
U.S. Attorney's Office − Savannah
P.O. Box 8970
22 Barnard Street, Suite 300
Savannah, GA 31401
912−231−1140
Fax: 912−652−4388
Email: brian.rafferty@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**David C. Aaron**
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
202−307−5190
Email: david.aaron2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Julie Ann Edelstein**
U.S. Department of Justice
600 E Street NW
10th Floor
Washington, DC 20002
202−233−2260
Email: julie.edelstein@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/03/2017 | 1 | | Application for Search Warrant as to Reality Leigh Winner. (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Affidavit).(rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
| 06/03/2017 | 2 | | Search Warrant Issued in case as to Reality Leigh Winner. (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Affidavit)(rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |

| 06/05/2017 | 3 | | MOTION to Unseal by Patricia Green Rhodes as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
|---|---|---|---|
| 06/05/2017 | 4 | | ORDER granting 3 Motion to Unseal as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 6/5/2017. (rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 5 | | COMPLAINT as to Reality Leigh Winner. (Attachments: # 1 Affidavit) (rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 6 | | Arrest Warrant Issued by Magistrate Judge Brian K. Epps in case as to Reality Leigh Winner. (rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 7 | | CJA 23 Financial Affidavit by Reality Leigh Winner. (cmr) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 9 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Initial Appearance as to Reality Leigh Winner held on 6/5/2017. Defendant waives preliminary hearing. Detention hearing scheduled for Thursday, June 8, 2017, ta 4:00 PM. (Court Reporter FTR.) (rc) [1:17−mj−00024−BKE] (Entered: 06/05/2017) |
| 06/05/2017 | | | ORAL MOTION for Detention by USA. REFERRED to Judge Brian K. Epps.(rc) (Entered: 06/09/2017) |
| 06/06/2017 | 10 | | NOTICE OF HEARING as to Reality Leigh Winner. Detention Hearing set for 6/8/2017 04:00 PM in Augusta − 1st Floor before Magistrate Judge Brian K. Epps. (rc) [1:17−mj−00024−BKE] (Entered: 06/06/2017) |
| 06/06/2017 | 11 | | ORDER terminating appointment of CJA counsel Titus Thomas Nichols and instructing Mr. Nichols to file his CJA voucher on or before June 20, 2017. Signed by Magistrate Judge Brian K. Epps on 6/6/2017. (rc) [1:17−mj−00024−BKE] (Entered: 06/06/2017) |
| 06/06/2017 | 12 | | Search Warrant Returned Executed in case as to Reality Leigh Winner. (rc) [1:17−mj−00024−BKE] (Entered: 06/06/2017) |
| 06/07/2017 | 13 | | INDICTMENT as to Reality Leigh Winner (1) count 1. (maa) (Additional attachment(s) added on 6/7/2017: # 1 Signature Page) (maa). (Entered: 06/07/2017) |
| 06/07/2017 | 14 | | PENALTY CERTIFICATION by Government as to Reality Leigh Winner. (maa) (Entered: 06/07/2017) |
| 06/08/2017 | 16 | | NOTICE OF ATTORNEY APPEARANCE: Titus Thomas Nichols appearing for Reality Leigh Winner (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 17 | | NOTICE by USA, Reality Leigh Winner, NOTICE OF ATTORNEY APPEARANCE James D. Durham appearing for USA. (Durham, James) (Entered: 06/08/2017) |
| 06/08/2017 | 18 | | NOTICE TO RETAINED COUNSEL as to Reality Leigh Winner. (rc) (Entered: 06/08/2017) |
| 06/08/2017 | 19 | | NOTICE OF HEARING as to Reality Leigh Winner. Arraignment and Detention Hearing set for 6/8/2017 04:00 PM in Augusta − 1st Floor before |

| | | | |
|---|---|---|---|
| | | | Magistrate Judge Brian K. Epps. (rc) (Entered: 06/08/2017) |
| 06/08/2017 | 20 | | First MOTION for Disclosure *of all 404(b) evidence* by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 21 | | First MOTION for Disclosure *OF GRAND JURY TRANSCRIPTS AND POINTS AND AUTHORITIES* by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 22 | | First MOTION for Jencks Material *In Advance of Trial* by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 23 | | First MOTION for Release of Brady Materials by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 23 First MOTION for Release of Brady Materials , 20 First MOTION for Disclosure *of all 404(b) evidence*, 21 First MOTION for Disclosure *OF GRAND JURY TRANSCRIPTS AND POINTS AND AUTHORITIES*, 22 First MOTION for Jencks Material *In Advance of Trial*. (cmr) (Entered: 06/08/2017) |
| 06/08/2017 | 26 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Arraignment as to Reality Leigh Winner held on 6/8/2017. Not guilty plea entered as to Count 1. Detention Hearing held. Defendant detained pending trial. Government's oral motion to designate this case as complex is granted. Conference regarding planning/discovery to be held at a later date. (Court Reporter FTR.) (rc) (Entered: 06/09/2017) |
| 06/08/2017 | | | ORAL MOTION to Designate this Case as Complex by Jennifer Gayle Solari as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(rc) (Entered: 06/14/2017) |
| 06/09/2017 | 27 | 20 | ORDER OF DETENTION as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 6/9/2017. (rc) (Entered: 06/09/2017) |
| 06/14/2017 | 28 | | ORDER granting Motion to Designate this Case as Complex and scheduling the first planning conference for June 27, 2017, at 2:00 P.M. as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 6/14/2017. (rc) (Entered: 06/14/2017) |
| 06/17/2017 | 29 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Arraignment and Detention Hearing as to Reality Leigh Winner held on June 8, 2017, before Judge Brian K. Epps; Transcriber: Victoria L. Root, CCR; Telephone Number: (912) 650−4066; Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view <a href=redact.pl> Transcript Redaction Policy</a>) Redaction Request due 7/10/2017. Redacted Transcript Deadline set for 7/18/2017. Release of Transcript Restriction set for 9/15/2017. (Root, Victoria) (Entered: 06/17/2017) |

| 06/19/2017 | 30 | | First MOTION for Hearing *Pursuant to Section 2 of Classified Information Procedures Act and for Designation of a Classified Information Security Officer* by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 7/3/2017. (Attachments: # 1 Text of Proposed Order Proposed Order Designating CISO)(Solari, Jennifer) (Entered: 06/19/2017) |
| --- | --- | --- | --- |
| 06/22/2017 | | | MOTION as to Reality Leigh Winner REFERRED to Magistrate Judge: 30 First MOTION for Hearing *Pursuant to Section 2 of Classified Information Procedures Act and for Designation of a Classified Information Security Officer* (rc) (Entered: 06/22/2017) |
| 06/27/2017 | 32 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Planning Conference as to Reality Leigh Winner held on 6/27/2017 (Court Reporter FTR.) (lcw) (Entered: 06/30/2017) |
| 06/29/2017 | 31 | | NOTICE OF HEARING as to Reality Leigh Winner. Status Conference set for 6/30/2017 10:00 AM in Augusta − 1st Floor before Magistrate Judge Brian K. Epps.(lcw) (Entered: 06/29/2017) |
| 06/29/2017 | | | Set/Reset Hearings as to Reality Leigh Winner: The Status Conference previously set for 6/30/2017 at 10:00 AM before Magistrate Judge Brian K. Epps is HEREBY CANCELLED. (lcw) (Entered: 06/29/2017) |
| 06/30/2017 | 33 | | SCHEDULING ORDER as to Reality Leigh Winner. See Scheduling Order for specific deadlines. Signed by Magistrate Judge Brian K. Epps on 07/30/2017. (lcw) (Entered: 06/30/2017) |
| 06/30/2017 | 34 | | RESPONSE to Motion by USA as to Reality Leigh Winner re 22 First MOTION for Jencks Material *In Advance of Trial* (Solari, Jennifer) (Entered: 06/30/2017) |
| 06/30/2017 | 35 | | RESPONSE to Motion by USA as to Reality Leigh Winner re 21 First MOTION for Disclosure *OF GRAND JURY TRANSCRIPTS AND POINTS AND AUTHORITIES* (Solari, Jennifer) (Entered: 06/30/2017) |
| 06/30/2017 | 36 | | RESPONSE to Motion by USA as to Reality Leigh Winner re 23 First MOTION for Release of Brady Materials (Solari, Jennifer) (Entered: 06/30/2017) |
| 06/30/2017 | 37 | | RESPONSE to Motion by USA as to Reality Leigh Winner re 20 First MOTION for Disclosure *of all 404(b) evidence* (Solari, Jennifer) (Entered: 06/30/2017) |
| 07/07/2017 | 38 | | MOTION to Seal by USA as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(rc) (Entered: 07/07/2017) |
| 07/07/2017 | 39 | | ORDER granting 38 Motion to Seal as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 7/7/2017. (rc) (Entered: 07/07/2017) |
| 07/11/2017 | 42 | | MOTION for Protective Order by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 7/25/2017. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum of Understanding)(Solari, Jennifer) (Entered: 07/11/2017) |
| 07/11/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 42 MOTION for Protective Order (lcw) (Entered: 07/11/2017) |

| 07/14/2017 | 43 | | NOTICE *of intent to respond to Gov.'s motion for protective order* by Reality Leigh Winner (Bell, John) (Entered: 07/14/2017) |
|---|---|---|---|
| 07/14/2017 | 44 | | ORDER setting briefing deadlines in reference to doc. no. 42 as to Reality Leigh Winner. Defendant shall file her response brief, addressing all remaining protective order disputes, on or before July 20, 2017. The government shall file any reply brief on or before July 24, 2017. Signed by Magistrate Judge Brian K. Epps on July 14, 2017. (rc) (Entered: 07/14/2017) |
| 07/20/2017 | 45 | | RESPONSE in Opposition by Reality Leigh Winner re 42 MOTION for Protective Order (Bell, John) (Entered: 07/20/2017) |
| 07/20/2017 | 46 | | MOTION for Leave to Appear Pro Hac Vice *of Joe Dally Whitley* Receipt Number 113J−2198681, Fee Amount $200,. Responses due by 8/3/2017. (Attachments: # 1 Text of Proposed Order)(Nichols, Titus) (Entered: 07/20/2017) |
| 07/20/2017 | 47 | | MOTION for Leave to Appear Pro Hac Vice *of Matthew Scott Chester* Receipt Number 113J−2198689, Fee Amount $200,. Responses due by 8/3/2017. (Attachments: # 1 Text of Proposed Order)(Nichols, Titus) (Entered: 07/20/2017) |
| 07/21/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 47 MOTION for Leave to Appear Pro Hac Vice *of Matthew Scott Chester* Receipt Number 113J−2198689, Fee Amount $200, 46 MOTION for Leave to Appear Pro Hac Vice *of Joe Dally Whitley* Receipt Number 113J−2198681, Fee Amount $200. (en) (Entered: 07/21/2017) |
| 07/21/2017 | | | TEXT ORDER granting 46 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1); granting 47 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1), and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 7/21/17. (en per BKE) (Entered: 07/21/2017) |
| 07/24/2017 | 48 | | NOTICE TO RETAINED COUNSEL Joe D. Whitley and Matthew Scott Chester as to Reality Winner. (en) (Entered: 07/24/2017) |
| 07/24/2017 | 49 | | REPLY TO RESPONSE to Motion by USA as to Reality Leigh Winner re 42 MOTION for Protective Order (Solari, Jennifer) (Entered: 07/24/2017) |
| 07/25/2017 | 50 | | MOTION for Leave to Appear Pro Hac Vice *of Jill E. McCook* Receipt Number 113J−2201331, Fee Amount $200,. Responses due by 8/8/2017. (Attachments: # 1 Text of Proposed Order)(Bell, John) (Entered: 07/25/2017) |
| 07/25/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 50 MOTION for Leave to Appear Pro Hac Vice *of Jill E. McCook.* Receipt Number 113J−2201331, Fee Amount $200. (thb) (Entered: 07/25/2017) |
| 07/25/2017 | 51 | | NOTICE OF ATTORNEY APPEARANCE: appearing for Reality Leigh Winner (Switzer, Brett) (Entered: 07/25/2017) |
| 07/26/2017 | | | TEXT ORDER granting 50 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1), and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 7/26/17. (en) (Entered: 07/26/2017) |

| | | | |
|---|---|---|---|
| 07/26/2017 | 52 | | NOTICE TO RETAINED COUNSEL as to Reality Leigh Winner re Counsel Brett A. Switzer and Jill E McCook (en) (Entered: 07/26/2017) |
| 07/28/2017 | 53 | | REPLY TO RESPONSE to Motion by Reality Leigh Winner re 42 MOTION for Protective Order (Bell, John) (Entered: 07/28/2017) |
| 08/01/2017 | 54 | | MOTION for Leave to Appear Pro Hac Vice *of Thomas H. Barnard* Receipt Number 113J−2205234, Fee Amount $200,. Responses due by 8/15/2017. (Attachments: # 1 Text of Proposed Order)(Nichols, Titus) (Entered: 08/01/2017) |
| 08/02/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 54 MOTION for Leave to Appear Pro Hac Vice *of Thomas H. Barnard* Receipt Number 113J−2205234, Fee Amount $200, (lcw) (Entered: 08/02/2017) |
| 08/02/2017 | | | TEXT ORDER granting 54 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1), and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 08/02/2017. (lcw) (Entered: 08/02/2017) |
| 08/02/2017 | 55 | | NOTICE *Pursuant to FRE 404(b) of Other Crimes, Wrongs or Other Acts of the Defendant* by USA (Solari, Jennifer) (Entered: 08/02/2017) |
| 08/03/2017 | 56 | | NOTICE TO RETAINED COUNSEL Thomas H. Barnard as to Reality Leigh Winner. (lcw) (Entered: 08/03/2017) |
| 08/03/2017 | 57 | | ORDER granting 42 Motion for Protective Order as modified in the simultaneously entered Protective Order as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 08/03/2017. (lcw) (Entered: 08/03/2017) |
| 08/03/2017 | 58 | | PROTECTIVE ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 08/03/2017. (lcw) (Additional attachment(s) added on 8/3/2017: # 1 Memorandum of Understanding)(lcw). (Entered: 08/03/2017) |
| 08/15/2017 | 59 | | First MOTION for Protective Order *Unopposed Supplemental* by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 8/29/2017. (Solari, Jennifer) (Entered: 08/15/2017) |
| 08/15/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 59 First MOTION for Protective Order *Unopposed Supplemental* (lcw) (Entered: 08/15/2017) |
| 08/16/2017 | 60 | | SUPPLEMENTAL PROTECTIVE ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 08/16/2017. (lcw) (Entered: 08/16/2017) |
| 08/25/2017 | 61 | | NOTICE OF HEARING as to Reality Leigh Winner. Status Conference set for 8/30/2017 09:00 AM in Augusta − 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 08/25/2017) |
| 08/25/2017 | 62 | | NOTICE *of filing* by USA (Edelstein, Julie) (Entered: 08/25/2017) |
| 08/29/2017 | 63 | | MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* by John C. Bell, Jr as to Reality Leigh Winner. Responses due by 9/12/2017. (Attachments: # 1 Briefs)(Bell, John) (Entered: 08/29/2017) |

| 08/29/2017 | 64 | | DECLARATION re 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (Bell, John) (Entered: 08/29/2017) |
|---|---|---|---|
| 08/30/2017 | 65 | | Executed MEMORANDUM OF UNDERSTANDING filed per Protective Order (Doc. 58).(lcw) (Entered: 08/31/2017) |
| 08/30/2017 | 67 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Status Conference as to Reality Leigh Winner held on 8/30/2017 (Court Reporter FTR.) (lcw) (Entered: 09/01/2017) |
| 08/31/2017 | 66 | | AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 08/31/2017. (lcw) (Entered: 08/31/2017) |
| 09/01/2017 | 68 | | MOTION to Amend/Correct 66 Scheduling Order by Julie Ann Edelstein as to Reality Leigh Winner. Responses due by 9/15/2017. (Attachments: # 1 Text of Proposed Order)(Edelstein, Julie) (Entered: 09/01/2017) |
| 09/05/2017 | 69 | | First MOTION Exclude Time From Speedy Trial Calculation by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 9/19/2017. (Attachments: # 1 Text of Proposed Order)(Solari, Jennifer) (Entered: 09/05/2017) |
| 09/05/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 69 First MOTION Exclude Time From Speedy Trial Calculation , 68 MOTION to Amend/Correct 66 Scheduling Order (lcw) (Entered: 09/05/2017) |
| 09/05/2017 | 70 | | NOTICE OF ATTORNEY APPEARANCE Julie Ann Edelstein appearing for USA. (Edelstein, Julie) (Entered: 09/05/2017) |
| 09/05/2017 | 71 | | NOTICE OF ATTORNEY APPEARANCE David C. Aaron appearing for USA. (Aaron, David) (Entered: 09/05/2017) |
| 09/06/2017 | 72 | | SUPERSEDING INDICTMENT as to Reality Leigh Winner (1) count(s) 1s. (lcw) (Additional attachment(s) added on 9/7/2017: # 1 Supplement Signature Page) (lcw). (Entered: 09/07/2017) |
| 09/06/2017 | 73 | | PENALTY CERTIFICATION by Government as to Reality Leigh Winner. (lcw) (Entered: 09/07/2017) |
| 09/07/2017 | 76 | | First MOTION for Extension of Time to File Response/Reply as to 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 9/21/2017. (Attachments: # 1 Text of Proposed Order)(Solari, Jennifer) (Entered: 09/07/2017) |
| 09/07/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 76 First MOTION for Extension of Time to File Response/Reply as to 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (lcw) (Entered: 09/07/2017) |
| 09/07/2017 | 77 | | NOTICE OF HEARING ON MOTION in case as to Reality Leigh Winner 69 First MOTION Exclude Time From Speedy Trial Calculation , 68 MOTION to Amend/Correct 66 Scheduling Order and Arraignment on Superseding Indictment: Hearing set for 9/14/2017 02:00 PM in Augusta − 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 09/07/2017) |
| 09/08/2017 | 78 | | |

| | | | |
|---|---|---|---|
| | | | ORDER finding as moot 76 Motion for Extension of Time to File Response/Reply as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 09/08/2017. (lcw) (Entered: 09/08/2017) |
| 09/08/2017 | 79 | | RESPONSE in Opposition by Reality Leigh Winner re 68 MOTION to Amend/Correct 66 Scheduling Order (Bell, John) (Entered: 09/08/2017) |
| 09/11/2017 | 80 | | NOTICE *OF FILING OF DEFENDANT'S OBJECTION TO GOVERNMENTS PROCEEDING EX PARTE UNDER SECTION 4 OF THE CLASSIFIED INFORMATION PROCEDURES ACT AND RESPONSE TO GOVERNMENTS NOTICE OF FILING* by Reality Leigh Winner (Bell, John) (Entered: 09/11/2017) |
| 09/11/2017 | 81 | | REPLY TO RESPONSE to Motion by USA as to Reality Leigh Winner re 68 MOTION to Amend/Correct 66 Scheduling Order (Edelstein, Julie) (Entered: 09/11/2017) |
| 09/12/2017 | 82 | | Defendant's Objection to the Government Proceeding Ex Parte, Response to Government's Notice of Filing [Doc. 62], and Request for a Hearing by Reality Leigh Winner (Bell, John) Modified on 9/13/2017 (lcw). (Entered: 09/12/2017) |
| 09/13/2017 | 83 | | NOTICE OF HEARING ON MOTION in case as to Reality Leigh Winner 69 First MOTION Exclude Time From Speedy Trial Calculation , 68 MOTION to Amend/Correct 66 Scheduling Order 82 Defendant's Objection to the Government Proceeding Ex Parte 62 . Motion Hearing set for 9/13/2017 02:00 PM in Augusta − 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 09/13/2017) |
| 09/14/2017 | 84 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of (Open) Status Conference Proceedings as to Reality Leigh Winner held on 8/30/2017, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706−823−6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view  Transcript Redaction Policy) Redaction Request due 10/5/2017. Redacted Transcript Deadline set for 10/16/2017. Release of Transcript Restriction set for 12/13/2017. (Davenport, Lisa) (Entered: 09/14/2017) |
| 09/14/2017 | 85 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Arraignment as to Reality Leigh Winner (1) Count 1s held on 9/14/2017, Plea of Not Guilty on counts 1s. (Court Reporter Lisa Davenport.) (lcw) (Entered: 09/14/2017) |
| 09/19/2017 | | | MOTION TO REOPEN DETENTION HEARING 87 REFERRED to Magistrate Judge Brian K. Epps. (lcw) Modified on 9/22/2017 . (Entered: 09/19/2017) |
| 09/20/2017 | 88 | | MEMORANDUM OR RESPONSE in Support by USA as to Reality Leigh Winner re 68 MOTION to Amend/Correct 66 Scheduling Order (Edelstein, Julie) (Entered: 09/20/2017) |
| 09/21/2017 | 89 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Arraignment and Motions Proceedings as to Reality Leigh Winner held on 9/14/17, before |

| | | |
|---|---|---|
| | | Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706−823−6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view  Transcript Redaction Policy) Redaction Request due 10/12/2017. Redacted Transcript Deadline set for 10/23/2017. Release of Transcript Restriction set for 12/20/2017. (Davenport, Lisa) (Entered: 09/21/2017) |
| 09/21/2017 | 90 | NOTICE OF HEARING as to Reality Leigh Winner. Second Detention Hearing set for 9/29/2017 10:00 AM in Augusta − 1st Floor before Magistrate Judge Brian K. Epps. COUNSEL FOR THE GOVERNMENT IS DIRECTED TO FILE THEIR BRIEF IN OPPOSITION NO LATER THAN TUESDAY, SEPTEMBER 26, 2017.(lcw) (Entered: 09/21/2017) |
| 09/21/2017 | 91 | ******* MOTION to Withdraw Document , MOTION for Leave to File *Substitute Pleading Regarding Second Detention Hearing* by Brett A. Switzer as to Reality Leigh Winner. Responses due by 10/5/2017. (Attachments: # 1 Text of Proposed Order)(Switzer, Brett) Modified on 9/22/2017 (Hodge, Jamie). (Entered: 09/21/2017) |
| 09/22/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 91 MOTION to Withdraw Document MOTION for Leave to File *Substitute Pleading Regadring Second Detention Hearing* (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 92 | ORDER granting in part [91−1, 91−2] Motion to Withdraw and for Leave to File Substitute Pleading Regarding Second Detention Hearing as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 09/22/2017. (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 93 | ORDER granting 69 Motion Exclude Time from Speedy Trial Calculation as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 09/22/2017. (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 94 | ORDER denying without prejudice Government's Ex Parte In Camera, Under Seal Motion and Memorandum of Law for a Protective Order (See doc. no. 62) as to Reality Leigh Winner. The government may refile, ex parte, their motion on or before 9/28/2017. Defendant shall file ex parte her defense theories on or before October 5, 2017. Signed by Magistrate Judge Brian K. Epps on 09/22/2017. (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 95 | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 09/22/2017) |
| 09/23/2017 | 96 | MOTION for Release from Custody by John C. Bell, Jr as to Reality Leigh Winner. Responses due by 10/10/2017. (Attachments: # 1 Briefs, # 2 Exhibit A to brief)(Bell, John) (Entered: 09/23/2017) |
| 09/24/2017 | 97 | AFFIDAVIT by Reality Leigh Winner 96 MOTION for Release from Custody filed by Reality Leigh Winner (Attachments: # 1 Certificate of Service)(Bell, John) (Entered: 09/24/2017) |
| 09/24/2017 | 98 | AFFIDAVIT by Reality Leigh Winner 96 MOTION for Release from Custody filed by Reality Leigh Winner (Attachments: # 1 Certificate of Service)(Bell, John) (Entered: 09/24/2017) |
| 09/25/2017 | | |

| | | | |
|---|---|---|---|
| | | | DOCKETED IN ERROR (lcw) Modified on 9/25/2017 (lcw). (Entered: 09/25/2017) |
| 09/25/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 96 MOTION for Release from Custody (lcw) (Entered: 09/25/2017) |
| 09/27/2017 | 99 | | RESPONSE to Motion by USA as to Reality Leigh Winner re 96 MOTION for Release from Custody (Attachments: # 1 Exhibit A)(Solari, Jennifer) (Entered: 09/27/2017) |
| 09/27/2017 | 100 | | RESPONSE to Motion by USA as to Reality Leigh Winner re 96 MOTION for Release from Custody *with amended Exhibit A* (Attachments: # 1 Exhibit A − amended)(Solari, Jennifer) (Entered: 09/27/2017) |
| 09/29/2017 | 101 | | CLASSIFIED ORDER granting Govt's Motion [Doc. 95] as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 9/25/2017. (lcw) (Entered: 09/29/2017) |
| 09/29/2017 | 103 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Detention Hearing as to Reality Leigh Winner held on 9/29/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 10/02/2017) |
| 09/29/2017 | 104 | | EXHIBIT LIST by USA as to Reality Leigh Winner (lcw) (Entered: 10/02/2017) |
| 09/29/2017 | 105 | | WITNESS LIST by USA as to Reality Leigh Winner (lcw) (Entered: 10/02/2017) |
| 09/29/2017 | 106 | | CLASSIFIED EXHIBIT LIST by Reality Leigh Winner (lcw). (Entered: 10/02/2017) |
| 09/29/2017 | 108 | | GOVT EXHIBIT 3 by USA. (lcw) (Entered: 10/03/2017) |
| 09/29/2017 | 109 | | GOVT EXHIBITS 4, 6 and 7 by USA. (lcw) (Entered: 10/03/2017) |
| 09/29/2017 | 110 | | GOVT EXHIBITS 8−14 by USA. (lcw) (Entered: 10/03/2017) |
| 09/30/2017 | 102 | | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 09/30/2017) |
| 10/03/2017 | 111 | | REPLY TO RESPONSE to Motion by Reality Leigh Winner re 96 MOTION for Release from Custody (Switzer, Brett) (Entered: 10/03/2017) |
| 10/03/2017 | 112 | | BRIEF *Regarding Certain Elements of the Offense* by Reality Leigh Winner 94 Order, (Attachments: # 1 Exhibit A − Harold Edgar & Benno C. Schmidt, Jr., The Espionage Statutes & Pub. of Def. Info., 73 Colum. L. Rev. 929 (1973))(Switzer, Brett) (Entered: 10/03/2017) |
| 10/04/2017 | 113 | | MOTION for Leave of Absence as to USA for dates of : October 19, 2017 − October 20, 2017. Responses due by 10/18/2017. (Solari, Jennifer) (Entered: 10/04/2017) |
| 10/05/2017 | 114 | | ORDER granting 113 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/05/2017. (lcw) (Entered: 10/05/2017) |
| 10/05/2017 | 115 | 21 | ORDER denying 96 Motion for Release from Custody as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 10/05/2017. (lcw) (Entered: 10/05/2017) |

| 10/05/2017 | 116 | ORDER granting in part 68 Motion to Amend/Correct as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 10/05/2017. (lcw) (Entered: 10/05/2017) |
| 10/05/2017 | 117 | NOTICE of Filing by Reality Leigh Winner (Barnard, Thomas) (Entered: 10/05/2017) |
| 10/06/2017 | 118 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Reality Leigh Winner ( Filing fee $ 37 receipt number 113J−2245282.) (Attachments: # 1 Exhibit A − September 14, 2017 Transcript of Proceedings)(Switzer, Brett) Modified on 11/27/2017 (maa). (Entered: 10/06/2017) |
| 10/06/2017 | 119 | NOTICE of Objection to Government's Second Ex Parte, In Camera, Under Seal Motion and Memorandum of Law Pursuant to CIPA § 4 noticed at DE 102 by Reality Leigh Winner re 102 Notice (Other) (Switzer, Brett) (Entered: 10/06/2017) |
| 10/12/2017 | 120 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of (Open) Detention Proceedings as to Reality Leigh Winner held on 9/29/2017, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706−823−6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view  Transcript Redaction Policy) Redaction Request due 11/2/2017. Redacted Transcript Deadline set for 11/13/2017. Release of Transcript Restriction set for 1/10/2018. (Davenport, Lisa) (Entered: 10/12/2017) |
| 10/13/2017 | 121 | MOTION for Leave of Absence as to USA for dates of : October 27, 2017. Responses due by 10/27/2017. (Solari, Jennifer) (Entered: 10/13/2017) |
| 10/13/2017 | 122 | RESPONSE by USA as to Reality Leigh Winner (Attachments: # 1 Exhibit)(Edelstein, Julie) (Entered: 10/13/2017) |
| 10/13/2017 | 123 | RESPONSE by USA as to Reality Leigh Winner re 118 Appeal of Magistrate Judge Decision to District Court (Edelstein, Julie) (Entered: 10/13/2017) |
| 10/16/2017 | 124 | NOTICE of Intent to File Reply in Support of Defendant's Brief Regarding Certain Elements of the Offense by Reality Leigh Winner (Switzer, Brett) (Entered: 10/16/2017) |
| 10/16/2017 | 125 | NOTICE of Intent to File Reply in Support of Defendant's Appeal of Magistrate Judge's Decision by Reality Leigh Winner (Switzer, Brett) (Entered: 10/16/2017) |
| 10/17/2017 | 126 | THIRD AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 10/17/2017. (lcw) (Entered: 10/17/2017) |
| 10/19/2017 | 127 | ORDER granting 121 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/19/2017. (lcw) (Entered: 10/19/2017) |
| 10/19/2017 | 128 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Reality Leigh Winner ( Filing fee $ 37 receipt number 113J−2252597.) (Whitley, Joe) (Entered: 10/19/2017) |

14

| 10/19/2017 | 129 | | NOTICE *of Filing* by Reality Leigh Winner (Barnard, Thomas) (Entered: 10/19/2017) |
|---|---|---|---|
| 10/19/2017 | 130 | | MEMORANDUM OR RESPONSE in Support by Reality Leigh Winner re 42 MOTION for Protective Order *Pursuant to Sec 3 of Classified Information Procedures Act* (Whitley, Joe) (Entered: 10/19/2017) |
| 10/26/2017 | 131 | | RESPONSE by USA as to Reality Leigh Winner re 128 Appeal of Magistrate Judge Decision to District Court (Edelstein, Julie) (Entered: 10/26/2017) |
| 10/26/2017 | 132 | | BRIEF *DEFENDANTS REPLY BRIEF REGARDING THE ELEMENTS OF THE OFFENSE UNDER 18 U.S.C. § 793(e) AS THEY RELATE TO THE GOVERNMENTS EX PARTE WITHHOLDING OF DISCOVERY UNDER CIPA § 4* by Reality Leigh Winner 122 Response filed by USA (Barnard, Thomas) (Entered: 10/26/2017) |
| 10/26/2017 | 133 | | NOTICE *Of Filing* by Reality Leigh Winner (Barnard, Thomas) (Entered: 10/26/2017) |
| 10/27/2017 | 134 | | MOTION for Leave of Absence as to USA for dates of : November 6−8, 2017. Responses due by 11/13/2017. (Attachments: # 1 Text of Proposed Order)(Edelstein, Julie) (Entered: 10/27/2017) |
| 10/27/2017 | 135 | | MOTION for Leave of Absence as to USA for dates of : November 6 and 7, 2017. Responses due by 11/13/2017. (Attachments: # 1 Text of Proposed Order)(Aaron, David) (Entered: 10/27/2017) |
| 10/27/2017 | 137 | | ORDER as to Reality Leigh Winner. The Court will hold a classified hearing on Defendant's Expedited Motion to Compel (Doc. 129) on 11/3/2017 at 10:00 am in Augusta. Signed by Magistrate Judge Brian K. Epps on 10/27/2017. (lcw) (Entered: 10/27/2017) |
| 10/27/2017 | 138 | | ORDER granting 135 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/27/2017. (lcw) (Entered: 10/27/2017) |
| 10/27/2017 | 139 | | ORDER granting 134 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/27/2017. (lcw) (Entered: 10/27/2017) |
| 10/27/2017 | 140 | | BRIEF *DEFENDANTS REPLY BRIEF REGARDING OBJECTION TO MAGISTRATE JUDGES SEPTEMBER 22, 2017 ORDER [DOC. NO. 94] AND REQUEST FOR A HEARING* by Reality Leigh Winner 118 Appeal of Magistrate Judge Decision to District Court filed by Reality Leigh Winner, 94 Order, (Whitley, Joe) (Entered: 10/27/2017) |
| 10/30/2017 | 141 | | NOTICE *DEFENDANT'S NOTICE OF INTENT TO FILE REPLY IN SUPPORT OF DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR HEARING* by Reality Leigh Winner re 131 Response, 128 Appeal of Magistrate Judge Decision to District Court (Switzer, Brett) (Entered: 10/30/2017) |
| 11/02/2017 | 142 | | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 11/02/2017) |
| 11/02/2017 | 143 | | STATUS REPORT *DEFENDANT'S STATUS UPDATE AND MOTION FOR CLARIFICATION AND A HEARING* by Reality Leigh Winner (Attachments: |

| | | |
|---|---|---|
| | | # 1 Exhibit EXHIBIT A)(Whitley, Joe) Modified on 11/3/2017 (lcw). (Entered: 11/02/2017) |
| 11/03/2017 | 144 | CLASSIFIED EX PARTE EXHIBIT LIST by USA as to Reality Leigh Winner (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | 145 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Ex Parte Classified Hearing as to Reality Leigh Winner held on 11/3/2017. (Court Reporter Lisa Davenport.) (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | 146 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Classified Hearing re: Motion to Compel as to Reality Leigh Winner held on 11/3/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 143 MOTION for Hearing (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | 147 | ORDER granting in part 143 Motion for Clarification as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 11/03/2017. (lcw) (Entered: 11/03/2017) |
| 11/06/2017 | 148 | ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 11/06/2017. The Court orders the parties to file a joint status report on or before 5:00 pm on Monday, 11/13/2017 itemizing all unresolved disputes regarding the Defendant's Motion to Compel. A classified hearing is scheduled for Thursday, 11/16/2017 at 10:00 am in Augusta to resolve any unresolved disputes. (lcw) (Entered: 11/06/2017) |
| 11/06/2017 | 149 | ORDER denying Defendant's appeal (Doc. 118) and affirming the Magistrate Judge's Order (Doc. 94) as to Reality Leigh Winner. Signed by Chief Judge J. Randal Hall on 11/06/2017. (lcw) (Entered: 11/06/2017) |
| 11/07/2017 | 151 | JOINT MOTION to Seal Document (Document Sealed) by Jennifer Gayle Solari, David C. Aaron, Julie Edelstein, Joe D. Whitley, Matthew S. Chester, Brett A. Switzer, John C. Bell, Jr., Titus T. Nichols, Jill E. McCook, and Thomas H. Barnard as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(lcw) (Entered: 11/09/2017) |
| 11/08/2017 | 150 | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 11/08/2017) |
| 11/09/2017 | 152 | ORDER granting Joint Motion to Seal (Doc. 151) as to Reality Leigh Winner (Document Sealed). Signed by Magistrate Judge Brian K. Epps on 11/09/2017. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 153 | JOINT MOTION for Amended Scheduling Order (Document Sealed) by Jennifer Gayle Solari, David C. Aaron, Julie Edelstein, Joe D. Whitley, Matthew S. Chester, Brett A. Switzer, John C. Bell, Jr., Titus T. Nichols, Jill E. McCook, Thomas H. Barnard as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 154 | ORDER granting Joint Motion for Amended Scheduling Order (Doc. 153) as to Reality Leigh Winner (Document Sealed). Signed by Magistrate Judge Brian K. Epps on 11/09/2017. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 155 | |

| | | | |
|---|---|---|---|
| | | | FOURTH AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 11/09/2017. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | | | Set/Reset Hearings as to Reality Leigh Winner: The Status Conference/Hearing on Discovery Disputes scheduled for 11/16/2017 in Augusta has been RESCHEDULED for 11/30/2017 at 10:00 AM in Augusta before Magistrate Judge Brian K. Epps. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 156 | | BRIEF *Reply Brief in Support of Appeal of the Magistrate Judge's Detention Order and Request for A Hearing of Appeal Detention Order* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/09/2017) |
| 11/14/2017 | 157 | | NOTICE *of Intent to File Sur−reply* by USA re 156 Remark, 128 Appeal of Magistrate Judge Decision to District Court (Solari, Jennifer) (Entered: 11/14/2017) |
| 11/21/2017 | 158 | | NOTICE *of Filing Defendant's First CIPA § 5 Notice* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/21/2017) |
| 11/21/2017 | 159 | | NOTICE *of Filing of Ex Parte Motion for Issuance of Subpoenas Pursuant to Rule 17 of FRCrP and Brief in Support of Motion* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/21/2017) |
| 11/27/2017 | 160 | | RESPONSE by USA as to Reality Leigh Winner re 156 Remark (Edelstein, Julie) (Entered: 11/27/2017) |
| 11/27/2017 | 161 | | NOTICE OF HEARING as to Reality Leigh Winner. Ex Parte Hearing (Doc. 159) set for 11/30/2017 04:00 PM in Augusta − before Magistrate Judge Brian K. Epps. (lcw) (Entered: 11/27/2017) |
| 11/27/2017 | 162 | | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 11/27/2017) |
| 11/27/2017 | 163 | 29 | JUDGMENT ON APPEAL OF MAGISTRATE JUDGE DECISION TO DISTRICT JUDGE as to Reality Leigh Winner re 128 Appeal of Magistrate Judge Decision to District Court. The Court DENIES Defendant's appeal and AFFIRMS the Magistrate Judge's Detention Order of October 5, 2017. (maa) (Entered: 11/27/2017) |
| 11/27/2017 | 164 | | ******* MOTION DEFENDANT'S MOTION TO LIFT UNCONSTITUTIONAL LIMITATIONS AND MOTION TO ENFORCE RELEVANT PROVISIONS OF THE PROTECTIVE ORDER; AND REQUEST FOR HEARING by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/11/2017. (Attachments: # 1 Briefs BRIEF IN SUPOPRT OF MOTION TO LIFT, # 2 Exhibit EXHIBIT A − KIM − REDACTION ORDER DOC 174)(Whitley, Joe). Added MOTION on 12/5/2017 (lcw). Added MOTION on 12/5/2017 (lcw). (Entered: 11/27/2017) |
| 11/27/2017 | 165 | | MOTION for Leave to File *MOTION FOR BILL OF PARTICULARS* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/11/2017. (Attachments: # 1 Exhibit EXHIBIT 1 − MOTION FOR BILL OF PARTICULARS)(Whitley, Joe) (Entered: 11/27/2017) |
| 11/28/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 164 MOTION DEFENDANT'S MOTION TO LIFT UNCONSTITUTIONAL LIMITATIONS AND MOTION TO ENFORCE RELEVANT PROVISIONS |

| | | | |
|---|---|---|---|
| | | | OF THE PROTECTIVE ORDER; AND REQUEST FOR HEARING , 165 MOTION for Leave to File *MOTION FOR BILL OF PARTICULARS* (lcw) (Entered: 11/28/2017) |
| 11/29/2017 | 166 | | NOTICE *Notice of Filing* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/29/2017) |
| 11/30/2017 | 170 | | CLASSIFIED Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Discovery Hearing as to Reality Leigh Winner held on 11/30/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 12/04/2017) |
| 12/01/2017 | 167 | | MEMORANDUM OR RESPONSE in Support by Reality Leigh Winner re 42 MOTION for Protective Order *Pursuant to Sec 3 of Classified Information Procedures Act* (Switzer, Brett) (Entered: 12/01/2017) |
| 12/01/2017 | 168 | | NOTICE OF FILING of Defendant's Second CIPA Section 5 Notice by Reality Leigh Winner (lcw) (Entered: 12/01/2017) |
| 12/01/2017 | 169 | | CLASSIFIED EXHIBIT LIST by Reality Leigh Winner (lcw) (Entered: 12/04/2017) |
| 12/01/2017 | 171 | | CLASSIFIED Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Discovery Hearing as to Reality Leigh Winner held on 12/1/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 12/04/2017) |
| 12/05/2017 | 172 | | ORDER granting in part and denying in part Defendant's Motion to Compel 129 ; deferring ruling on [164−1] Defendant's request to conduct certain internet searches; granting in part and denying in part [164−2, 164−3] Defendant's requests related to defense communication protocols and redacted filings for the public docket as to Reality Leigh Winner. The Court will hold a classified hearing on 12/19/2017 at 10:00 am in Augusta, Georgia concerning Defendant's First and Second CIPA 5 Notices [158, 168], Defendant's request to conduct certain internet searches [164−1] and Defendant's request for Rule 17 subpoenas. Defense counsel shall file formulated subpoenas incorporating the Court's recent rulings on or before noon on 12/18/2017. The Government shall file their brief specifying the portions of the Defendant's Section 5 filings they deem to be insufficient. Signed by Magistrate Judge Brian K. Epps on 12/05/2017. (lcw) Modified on 12/5/2017 (lcw). (Entered: 12/05/2017) |
| 12/06/2017 | 173 | | ORDER granting [102, 150] as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 12/06/2017. (lcw) Modified on 12/6/2017 (lcw). (Entered: 12/06/2017) |
| 12/06/2017 | 174 | | CLASSIFIED EX PARTE ORDER granting [102 and 150] as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 12/06/2017. (lcw) (Entered: 12/06/2017) |
| 12/06/2017 | 175 | | First MOTION for Reciprocal Discovery by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 12/20/2017. (Solari, Jennifer) (Entered: 12/06/2017) |
| 12/07/2017 | 176 | | MOTION DEFENDANT'S UNOPPOSED MOTION FOR WRITTEN ORDER AND EXTENSION OF TIME by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/21/2017. (Whitley, Joe) (Entered: 12/07/2017) |
| 12/08/2017 | | | |

| | | | |
|---|---|---|---|
| | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: <u>175</u> First MOTION for Reciprocal Discovery , <u>176</u> MOTION DEFENDANT'S UNOPPOSED MOTION FOR WRITTEN ORDER AND EXTENSION OF TIME (lcw) (Entered: 12/08/2017) |
| 12/08/2017 | | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: <u>63</u> MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (lcw) (Entered: 12/08/2017) |
| 12/08/2017 | <u>177</u> | | ORDER granting in part and denying in part <u>176</u> Motion for Written Order and Extension of Time as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 12/08/2017. The Defendant's request for a written order is denied; the Defendant's request for extensions of time is granted in part. The classified hearing on 12/19/2017 will proceed as scheduled. (lcw) (Entered: 12/08/2017) |
| 12/11/2017 | <u>178</u> | | NOTICE *DEFENDANT'S NOTICE OF APPEAL OF DETENTION ORDER* by Reality Leigh Winner re <u>115</u> Order on Motion for Release from Custody, <u>27</u> Order of Detention, <u>163</u> Judgment on Appeal of Magistrate Judge Decision, (Attachments: # <u>1</u> Exhibit District Judge Order on Detention <u>163</u> , # <u>2</u> Exhibit Detention Order <u>27</u> , # <u>3</u> Exhibit Detention Order <u>115</u> )(Whitley, Joe) (Entered: 12/11/2017) |
| 12/11/2017 | <u>179</u> | 46 | NOTICE OF APPEAL (Interlocutory) by Reality Leigh Winner re <u>115</u> Order on Motion for Release from Custody, <u>27</u> Order of Detention. Filing fee $ 505, receipt number 113J−2282578. (Attachments: # <u>1</u> Exhibit A−District Judge Order on Detention Doc. 163, # <u>2</u> Exhibit B−Initial Detention Order Doc. 27, # <u>3</u> Exhibit C−Detention Order Doc. 115)(Whitley, Joe) (Entered: 12/11/2017) |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-034 |
| | ) | |
| REALITY LEIGH WINNER | ) | |

<u>DETENTION ORDER</u>

For the reasons stated at the detention hearing on June 8, 2017, the Court finds by preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required; and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED this 9th day of June, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-034 |
| | ) | |
| REALITY LEIGH WINNER | ) | |

## ORDER

In consideration of the legal briefs, oral argument, and testimony at the second detention hearing last Friday, September 29, 2017, the Court **DENIES** Defendant's motion for release from custody (doc. no. 96) and **FINDS** (1) by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community; and (2) by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required.

## I.    Overview of Bail Reform Act

The Bail Reform Act of 1984 ("Act") mandates the pretrial release of a defendant unless the government carries its burden of proving there is no bond condition or combination of conditions that would "reasonably assure" the defendant's appearance in court or the safety of the community. 18 U.S.C. § 3142(c), (f). There is no statutory presumption of detention arising from the nature of the charge against Defendant. See 18 U.S.C. § 3142(e)(2). The government's burden with respect to dangerousness is by clear and convincing evidence and the government's burden as to appearance in court is by a preponderance of the evidence. United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir.

1990); 18 U.S.C. § 3142(f)(2). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2).

The Act specifies the factors considered in determining whether there are conditions to reasonably assure safety and appearance as (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or terrorism, or involves a minor victim, controlled substance, firearm, or explosive device; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). These factors weigh heavily in favor of detention, as explained below.

## II.    Discussion

### A.    Nature and Circumstances of the Offense Charged

The superseding indictment alleges Defendant violated 18 U.S.C. § 793(e) by willfully transmitting classified information to an online news outlet despite knowing disclosure could cause specific, articulable, and "exceptionally grave damage to the national security . . . ." (Superseding Indict., doc. no. 72, ¶ 3.) The nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant in light of her alleged criminal disclosure and the potential for additional disclosures given her access to a wealth of classified information during her service in the Air Force and with NSA.

Defendant argues the nature of this case weighs against detention because complexities necessitated pushing the trial date back to March of next year. As the Eleventh Circuit has previously explained, "the prospect of eight to ten months of pretrial detention,

2

without more, does not mandate the release of a defendant for whom pretrial detention is otherwise appropriate." Quartermaine, 913 F.2d at 918.  This is particularly true here since Defendant requested the delay in trial, and the risks of flight and danger to the community are high as explained *infra*.  Id.; (see doc. no. 84, Aug. 30, 2017 Status Conf. Tr. ).

The Court has also carefully considered Defendant's arguments concerning the scope of § 793(e) and finds the code section broad enough to encompass Defendant's purported conduct.  Nor is the Court persuaded by Defendant's argument "the vast majority of courts have held that defendants charged with similar offenses were entitled to be released pending trial."  (Doc. no. 96-1, p. 14.)  Defendant provided a chart listing thirteen cases in which courts granted pretrial release to defendants whom Defendant contends were similarly situated.  (Id. at 14-20.)  However, the detention analysis under the Act does not lend itself to easy comparisons across cases because of its intense focus on the unique facts of each case and the unique characteristics of each defendant.

Additionally, as the government points out, many of the cases touted by Defendant are materially distinguishable.  (See doc. no. 100, pp. 9-10.)  Two defendants received misdemeanor convictions and sentences of probation only.  United States v. Nishimura, No. 2:15-CR-145-KJN, doc. no. 7 (E.D. Cal. Aug. 12, 2015); United States v. Patraeus, No. 3:15-cr-47-DCK, doc. no. 24 (W.D.N.C. Apr. 29, 2015).  Two other defendants entered plea agreements within days of their initial charges, and one received a sentence of probation on a misdemeanor conviction.  United States v. Leibowitz, No. 8:09-cr-632, doc. no. 25 (D. Md. May 25, 2010) (twenty months of imprisonment); United States v. Berger, No. 1:05-MJ-175-DAR, doc. no. 17 (D.D.C. Sept. 13, 2005) (two years of probation for plea to misdemeanor charge).

3

## B.    Weight of the Evidence

For purposes of this detention analysis only, the Court finds at this early stage of the case that the evidence against Defendant is strong.  During her initial interview with law enforcement, Defendant admitted she leaked classified information to a news outlet. Defendant also made damning admissions regarding the same in recorded jail phone conversations with her mother and sister.  Gov't Exs. 3, 6; (doc. no. 96-2, p. 2).  The circumstantial evidence corroborates Defendant's admissions.  FBI Special Agent Justin Garrick testified (1) Defendant was one of six NSA workers who accessed the leaked document; (2) Defendant was one of two NSA workers who printed the leaked document; (3) Defendant was the only NSA worker for which there is proof of contact with the news outlet during the period of time when the leak occurred; and (4) the leaked document was mailed from Augusta, Georgia to the news outlet one day after Defendant printed it.  See also Gov't Ex. 3.  Defendant further admitted she knew the document contained information regarding sources and methods of collecting classified information that would be valuable to adversaries of the United States.  Id. at USAO 08172-08173.

## C.    History and Characteristics of the Person

When considering the history and characteristics of a person in the context of determining pretrial detention, courts consider the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of the current offense or arrest the person was on a conditional release.  See 18 U.S.C. § 3142(g)(3).

4

Characteristics weighing in favor of Defendant's pretrial release are her service in the Air Force, clean criminal history, and loving and committed parents. Substantially outweighing these positive characteristics, however, are Defendant's state of mind, short length of time residing in the community, few community ties, and past conduct. Indeed, the Court finds, based on compelling evidence presented by the government, that Defendant admittedly "hates" America, misused a top-secret computer during her Air Force career, admires Edward Snowden and Julian Assange, and began preparations to leak classified information from the very outset of her work as an NSA subcontractor.

First, one need look no further than Defendant's own writings to surmise that she hates the United States and has plotted against the government. On February 25, 2017, during training for her new NSA job, Defendant wrote her sister that she would fail a polygraph because of questions concerning whether she had ever plotted against the United States Government. Gov't Ex. 11. On the same day, Defendant wrote her sister she hated America. Id. When her sister responded with incredulity, Defendant proclaimed again she hated America and explained she feels this way because America is "literally the worst thing to happen to the planet." Id.

Second, Defendant admittedly misused a top-secret computer during her service with the Air Force. On November 9, 2016, approximately one month before her discharge, Defendant searched the Internet to determine whether it is possible to insert a thumb drive into a top-secret computer without being detected. Gov't Ex. 3, USAO 08144, 08170-08171; (doc. no. 29, p. 21). On the same day as the Internet search, Defendant did insert a thumb drive into a top-secret computer for two minutes. Gov't Ex. 3, USAO 08170-08171. The

5

government has been unable to determine why Defendant inserted the thumb drive, whether she saved anything to the thumb drive, or where the thumb drive is located today.

Third, Defendant admittedly admires Edward Snowden and Julian Assange. On February 9, 2017, Defendant messaged her sister through Facebook it was "hard not to laugh" when an NSA security officer emphasized during training the enormity of the security threat posed by insiders such as Edward Snowden. Gov't Exs. 9, 11. On March 7, 2017, in Facebook messages with her sister, Defendant lauded a recent Wikileaks cache of classified information as "awesome" because it "crippled" a government program, and explained to her sister she is on the side of Assange and Snowden. Gov't Ex. 12.

Fourth, Defendant made an extended effort to develop stealth Internet capabilities during the same time period she began her employment as an NSA subcontractor. Defendant's first day working as an NSA subcontractor was February 9, 2017. Just days before starting her NSA job, Defendant downloaded a Tor browser that allows anonymous Internet operations. In the following weeks, Defendant researched how to send information anonymously to news outlets, attempted to set up a single-use email account for anonymous email, and researched how to unlock her cell phone and use it anonymously. (See doc. no. 100, pp. 19-20.) Viewed in totality, SA Garrick described these activities as preparation of a "covert communications package." The timing strongly suggests Defendant was planning to leak classified information from the outset of her NSA employment, while all the while swearing allegiance to the United States and promising to safeguard its national secrets.

### D. Nature and Seriousness of Danger to Community

As the Eleventh Circuit has explained, "[t]he term 'dangerousness,' as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly

6

understood in everyday parlance." United States v. King, 849 F.2d 485, 487 n.2 (11th Cir. 1988). Indeed, the Act broadly references the safety of any person and the safety of the community at large. While the primary focus of the former is the risk of physical violence toward a particular person such as a victim or witness, the latter refers to any risk a defendant may pose to the well-being of a community. Id. Examples include the potential corruption of a union or the obvious perils drug trafficking poses to a community. Id.

By her own words and actions, Defendant has painted a disturbing self-portrait of an American with years of national service and access to classified information who hates the United States and desires to damage national security on the same scale as Julian Assange and Edward Snowden. The nature and seriousness of the danger she poses to our nation is high.

### E. Risk of Flight

Defendant has few ties to Augusta, Georgia, and her desire to live abroad is understandably strong given her intense dislike for the United States. Fluent in Farsi, Dari, and Pashto, Defendant described her "big plan" to SA Garrick as deploying to Afghanistan as a Pashto linguist. Gov't Ex. 3, USAO 08124-08125, 08139. Defendant further explained she left the Air Force and took the NSA job in Augusta to regain her clearance in the hopes of getting a deployment. Id. at 08174. SA Garrick testified that, as Defendant's time with the Air Force came to a close in October and November 2016, she scoured the Internet for airline tickets, jobs, and housing in places such as Kurdistan, Iraq, Afghanistan, and Jordan. See also Gov't Ex. 8. The incentive to relocate overseas has to be no less tempting now that a grand jury has charged her with a felony offense carrying a maximum penalty of ten years in prison.

7

27

The risk of flight is also heightened because Defendant has the financial means to flee the country, as evidenced by her solo, three-day trip to Belize over the 2017 Memorial Day weekend, during which she flew to Belize Saturday morning and flew back to Georgia Monday morning. Gov't Ex. 3, USAO 08149-08150. While Defendant has surrendered her passport and cannot obtain another one in her own name, this obstacle provides little assurance given her self-described desire to "burn the White house down" and "[f]ind somewhere in Kurdistan to live . . . or Nepal." Gov't Ex. 7.

## III.  Conclusion

The Court **DENIES** Defendant's motion for release from custody. (Doc. no. 96.) Defendant shall remain in the custody of the Attorney General or his designated representative for confinement pursuant to the terms of the Court's first Detention Order entered June 9, 2017. (Doc. no. 27.)

SO ORDERED this 5th day of October, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

8

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
UNITED STATES OF AMERICA        *
                                *
        vs.                     *          CR 117-034
                                *
REALITY LEIGH WINNER            *
```

## O R D E R

Pursuant to 18 U.S.C. § 3145(b), Defendant Reality Leigh Winner has filed an appeal from the United States Magistrate Judge's Detention Order of October 5, 2017.[1] After an independent and *de novo* review of the detention proceedings before the Magistrate Judge, the arguments of counsel in brief, and the relevant law, the Court finds that detention is appropriate and therefore affirms the Detention Order.

## I.  LEGAL STANDARD

When the Government seeks to detain a defendant pending trial under the Bail Reform Act, the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and

---

[1]  Section 3145(b) contemplates that the detained defendant will file a motion to revoke the detention order rather than an "appeal." Because there is no substantive difference, the Court will use the term chosen by Defendant.

the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A hearing for that purpose will be conducted upon motion of the Government in a case that involves "a serious risk that such person will flee."[2] 18 U.S.C. § 3142(f)(2)(A). The Government bears the burden of demonstrating a serious risk of flight by a preponderance of the evidence. United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).

This Court's review of the Magistrate Judge's decision is de novo. United States v. Hurtado, 779 F.2d 1467, 1481 (11th Cir. 1985) (stating that the district court "is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer" when reviewing detention decisions). In assessing the Government's proof, the Court shall consider the following relevant factors: (1) the nature and circumstances of the offense charged; (2) the

---

[2] The Government cannot move for detention on the basis that Defendant poses a danger to the community under 18 U.S.C. § 3142(f)(1) because she does not meet any of the criteria set forth therein. United States v. Giordano, 370 F. Supp. 2d 1256, 1258-62 (S.D. Fla. 2005); accord United States v. Twine, 344 F.3d 987 (9th Cir. 2003); United States v. Byrd, 969 F.2d 106, 110 (5th Cir. 1992); United States v. Friedman, 837 F.2d 48 (2d Cir. 1988); United States v. Himler, 797 F.2d 156 (3d Cir. 1986). Importantly, the "dangerousness" of this Defendant is still a factor to be considered under 18 U.S.C. § 3142(g)(4). Giordano, 370 F. Supp. 2d at 1261 n.1. Moreover, the "dangerousness" of Defendant as a factor also "emanates" from § 3142(e)(1)'s requirement that the Court consider whether any condition(s) may reasonably assure the safety of the community. See King, 849 F.2d at 487.

2

weight of the evidence against Defendant; (3) the history and characteristics of Defendant, including character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g). In conducting the review, this Court may rely entirely on the pleadings and evidence developed during the Magistrate Judge's detention proceedings, or it may conclude that additional evidence is necessary and conduct its own evidentiary hearing. <u>United States v. King</u>, 849 F.2d 485, 490 (11th Cir. 1988). Here, the Court has determined that another hearing would not aid in this decision, particularly because the Court had the benefit of the transcripts of two prior detention hearings and the thorough and reasoned briefs of counsel. Further, no additional evidence is required, and there are no relevant factual disputes that require further evidence. Thus, Defendant's request for a hearing on this matter is denied.

3

## II. ANALYSIS

On appeal, Defendant argues that the Magistrate Judge ignored certain favorable evidence, made findings that are unsupported by the evidence, and as a whole, improperly balanced the evidence. Consequently, the Magistrate Judge erred in finding that Defendant is a serious risk of flight. Defendant also argues that the Magistrate Judge failed to consider factors and conditions that would reasonably assure the safety of the community and her appearance at trial.

After conducting a *de novo* review of the entire record, including the transcripts of the two detention hearings, the Court finds that the Order of Detention accurately and thoroughly sets forth both the facts and the law. Despite Defendant's contentions, the Magistrate Judge properly considered the factors giving rise to detention and properly concluded that no condition or combinations of conditions would reasonably assure the safety of the community and Defendant's appearance at trial. This Court will now examine the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), all of which weigh against Defendant, while addressing Defendant's assertions of error on appeal.

A. <u>Nature and Circumstances of the Offense Charged</u>

Defendant is charged with a violation of 18 U.S.C. § 793(e), which provides in relevant part:

4

> Whoever having unauthorized possession of, access to, or control over any document . . . related to the national defense, willfully communicates, delivers, transmits, or causes to be communicated, delivered or transmitted . . . to any person not entitled to receive it . . . shall be fined . . . or imprisoned.

The Magistrate Judge concluded that the "nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant . . . ." (Detention Order, at 2.) While a violation of 18 U.S.C. § 793(e) does not create a rebuttable presumption in favor of detention,[3] the superseding indictment nevertheless charges that Defendant willfully transmitted a classified, top-secret[4] document without authority to an online news outlet, which was not entitled to receive it. (See generally Superseding Indict., Doc. 72.) A plain reading of the indictment demonstrates the serious nature of the offense. Coupled with evidence that Defendant had access to classified information during her service in the Air Force and with the NSA, particularly in light of the "covert

---

[3] Contrary to Defendant's emphasis on this point, the fact that the offense charged does not create a rebuttable presumption of detention is not determinative of this particular factor; if it was, there would be no reason to list this factor as an independent relevant consideration.

[4] A document is classified "TOP SECRET if the unauthorized disclosure of that information could be expected to cause *exceptionally grave damage to the national security*." (Superseding Indict., ¶ 3 (emphasis added).)

5

communications package" (discussed _infra_) that she had created around the time of taking the NSA position and her apparent antipathy toward the United States of America, the gravity of Defendant's alleged crime is unassailable.  The fact that Defendant has been charged with one count-related to one transmission of one document-does not mitigate the serious nature of the offense, especially given that the matter may affect national security.[5]

B.  Weight of the Evidence

At the time of the execution of the search warrant of her home, Defendant admitted to FBI Special Agent Justin Garrick that she willfully secreted the classified document out of the NSA and mailed it to the online news outlet, which did not have authority to receive it.[6]  (Tr. of

---

[5]  Defendant harps on the fact that she has only been charged with the disclosure of "one document, one time, to one recipient, with no allegations of financial gain."  (_E.g._, Def.'s Appeal Br., Doc. 128, at 13.)  The Court finds this fact to be of little importance because it may reasonably be said that the Government caught this Defendant before any more damage could be done.  Indeed, Defendant had only recently begun her employment with the NSA contractor, Pluribus International, and had only recently researched how to disclose information to news outlets anonymously.  Also, financial gain is not the only reason a person may disclose classified information to a news outlet.  These other takes on the "only once" argument are reasonable given the evidence discussed _infra_ regarding Defendant's development of a "covert communications package," her antipathy toward America, and her research into living and working abroad.

[6]  In fact, Defendant initially denied taking any document out of the NSA building. (Tr. of Interview, at 08145-

6

Interview, Doc. 100, Ex. A, at 08161-62.) While Defendant has disputed the specific elements of this crime, particularly whether the classified document was related to the national defense[7] and whether she possessed the requisite *mens rea* to be found guilty, at this point in the proceeding, her admission to these relevant facts appear to hit upon all the elements of the crime.

Defendant complains that the Magistrate Judge did not consider that the initial statements to the FBI during the execution of the search warrant are subject to a pending motion to suppress. The motion to suppress, however, has not been fully vetted and is certainly not resolved; thus, at this point it is immaterial. Besides, in addition to the admissions to the Special Agent, Defendant has also made statements to her sister that she "screwed up" and that she "leaked a document." (Detention Hr'g Tr., Sept. 29, 2017, Doc. 109, Ex. 6.) The use of the word "leaked" indicates a

---

46.) And, when she admitted that she had printed a classified document, she initially claimed to have placed it in the burn bag and denied taking it out of the building or mailing it to anyone. (Id. at 08152-08158.) This suggests a certain level of deception.

[7] As pointed out by the Magistrate Judge, Defendant admitted that she knew the document contained information regarding sources and methods of collecting classified information that would be valuable to adversaries of the United States. (Detention Order, at 4; Tr. of Interview, at 08172.)

7

certain consciousness of wrongdoing because lawful possession and transmission would not be called a "leak." Moreover, as expressed by the Magistrate Judge (Detention Order, at 3), the investigatory facts which led the FBI to the independent conclusion that Defendant was the source of the leaked document will be compelling evidence against her.[8]

### C.   History and Characteristics of Defendant

The Court first notes that Defendant believes the Magistrate Judge overlooked the positive characteristics and history of Defendant, such as her honorable service to the country, her humanitarian aspirations, her strong family ties, and her lack of a criminal history.  In point of fact, the Magistrate Judge opened his discussion of this factor noting: "Characteristics weighing in favor of Defendant's pretrial release are her service in the Air Force, clean criminal

---

[8]   At the detention hearing on September 29, 2017, Special Agent Garrick testified that of the six individuals that printed the subject document, only two had printed both the Intelligence Report and the attachment, both of which ended up in the possession of the online news outlet.  Of the two, the investigation revealed that the document was printed by Defendant on May 9, 2017, that the document was mailed from Augusta, Georgia on May 10, 2017, and that Defendant had contacted the recipient news media outlet.  (Detention Hr'g Tr., Sept. 29, 2017, at 22-24.)   The investigation also revealed that on the day the classified document was printed, Defendant had researched online how to anonymously submit information to two news outlets.  (Id. at 27.) After that date, Defendant performed several searches for those news outlets and information related to the potential leak of classified information to see "if leaked information had been published by those particular media outlets."  (Id.)

8

history, and loving and committed parents." (Detention Order, at 5.) The Magistrate Judge then went on to find that negative factors outweighed the positive, pointing to her state of mind, few community ties, and past relevant conduct. Specifically, the Magistrate Judge found compelling evidence to support this finding: "Defendant admittedly 'hates' America, misused a top-secret computer during her Air Force career, admires Edward Snowden and Julian Assange, and began preparations to leak classified information from the very outset of her work as an NSA subcontractor." (Id.) Defendant takes particular umbrage at the characterization that she "hates" America and that she "admires" Edward Snowden and Julian Assange.

Upon a *de novo* review of the evidence submitted at the detention hearing of September 29, 2017, particularly the testimony of Special Agent Garrick, this Court similarly concludes that the negative implications from the evidence pertaining to Defendant's character, her mental state, her conduct in the months before her arrest, and her lack of community ties significantly outweigh the positive aspects of her family ties, commendable service in the Air Force, care for environmental issues and animals, humanitarianism, and lack of criminal record.

The Court will now recount the evidence that supports this finding:

9

- On November 9, 2016, while in the waning days of her service in the Air Force, Defendant researched whether a top secret computer will detect a thumb drive.   On this same day, Defendant inserted a thumb drive into a top secret computer for approximately two minutes.   (Detention Hr'g Tr., Sept. 29, 2017, at 48-49.)   The Government has not located the thumb drive.

- Immediately after removing the thumb drive, Defendant printed a top secret intelligence report which was "not associated in any way with [her] duties/assignments."  The Government does not know what Defendant did with the document.  (Id. at 49.)

- Defendant performed multiple searches for jobs requiring a security clearance in November 2016 at the same time that she researched for information pertaining to the Taliban and for information about an organization called Anonymous, an affiliation of hackers. (Id. at 50-51.)

- In handwritten notes apparently regarding employment opportunities, Defendant writes "I want to burn the whitehouse down.   Find somewhere in Kurdistan to live . . . or Nepal haha maybe." (Id. at 32, Ex. 7.)

- Included in Defendant's handwritten notes are references to Taliban military leaders.  (Id. at 37, Ex. 7.)   Defendant also performed internet searches in October, November, and December of 2016 for the Taliban media website, the Taliban office in Qatar, and the Taliban YouTube channel.  (Id. at 37-38, Ex. 8.)

- Other internet searches involve traveling, working and living in Kuridstan, Iraq, Afghanistan, Jordan and Palestinian territories, to include information pertaining to flights to Kurdistan and Erbil, moving to Palestine, and obtaining visas for Kurdistan and Afghanistan.  (Id. at 40-42, Ex. 8.)

- On February 7, 2017, two days prior to her first day of employment with the NSA contractor, Pluribus International, Defendant captured a screenshot of how to securely drop information to eight different news outlets.   The image is titled, "If you see abuse. Leak it."  (Id. at 26, Ex. 4.)

10

- On February 9, 2017, immediately after undergoing her initial security training with the NSA, Defendant sent a message to her sister, in which she said of her security training "it was hard not to laugh" when the security officer said "'yeah so uh we have guys like Edward Snowden who uhh thought they were doing the right thing, but you know, they weren't so us we uh have to keep an eye out for that insider threat, especially with contractors.'" (Id. at 42-43, Ex. 9.)

- On February 25, 2017, Defendant messaged her sister, "I have to take a polygraph where they're going to ask if I've ever plotted against the gov't. #gonnafail." She then said, "Look, I only say I hate America like 3 times a day." When Defendant's sister asked, "But you don't actually hate America, right?", Defendant responded: "I mean yeah I do it's literally the worst thing to happen on the planet. We invented capitalism the downfall of the environment." (Id. 44, Ex. 11.)

- On March 7, 2017, Defendant messaged her sister that Vault 7[9] was "so awesome" and that it had "crippled the program." When her sister asked, "So you're on Assange's side," Defendant responded, "Yes. And Snowden." (Id. at 45, Ex. 12.)

- Defendant wrote notes describing how to download and install Tor[10] on its most secure setting; researched how to swap SIM cards on her phone; researched burner email accounts (e.g., slippery.email); and wrote down the URL for a burner email account. (Id. at 32-36.)

---

[9] Vault 7 is Wikileak's alleged compromise of classified government information. (Detention Hr'g Tr., Sept. 29, 2017, at 45.)

[10] The Tor network "is a method in which someone can access the internet -- not only the internet, but also the deeper, dark web on a completely anonymous level." (Detention Hr'g Tr., Sept. 29, 2017, at 34.) The Tor network was installed on a computer in Defendant's home on February 1, 2017, several days after Defendant was hired by Pluribus International and ten days prior to her start date. (Id. at 34; Tr. of Interview, at 08144.)

    •    On the note about the burner email account, there is "specific identifying information related to foreign intelligence targets associated with terrorism activity being followed by the U.S. Government as part of its national security mission." (<u>Id.</u> at 39-40.)

The first point to take from this evidence is that the use of the word "hate" by the Magistrate Judge was not of his choosing, but was the word that Defendant herself used in her message to her sister. "Hate" is also an apt word to describe a person's emotion that noted she would like to burn the White House down. And while Defendant, through the testimony of her sister, would pass this off as "hyperbole" (Detention Hr'g Tr., Sept. 29, 2017, at 104), the conclusion that Defendant hates America is justifiable. Also, while Defendant offered other non-nefarious reasons that a person may research TOR, burner email accounts, and SIM cards, Special Agent Garrick testified that "taken into its totality, it appears as though it's a covert communications package or could be one. . . . [It] is a way in which an individual can communicate anonymously with another." (<u>Id.</u> at 36.) The credit that the Magistrate Judge and this Court give to the agent's testimony, over Defendant's proffer that there are benign reasons for each of these acts taken alone, is reasonable, especially in light of evidence that Defendant researched ways to send information to news outlets anonymously and accessed classified information outside of her job duties. In short,

12

Defendant attacks the Magistrate Judge's reasonable conclusions from the evidence as "sweeping" and "unsupported" (Def.'s Appeal Br. at 9), yet taking all the evidence in its totality, the Court finds the Magistrate Judge's Detention Order to be sustainable and indeed, correct in its ultimate ruling.[11]

In conclusion, the aforementioned evidence shows a person who sought out employment in a classified position with the intent to anonymously share information with news outlets and to cover her tracks while doing so. Defendant argues that she had a legitimate interest in the Middle East and religion, given her background and education. She also has strong humanitarian and environmental bents, as well as an interesting sense of humor, that can explain some of her comments. But Defendant's gloss on the evidence, painted primarily through the testimony of her sister, is but one view of the story. Certainly, the Magistrate Judge and now this Court are free to reject Defendant's gloss-the minimalization of her admitted behavior-and accept the reasonable inference

---

[11] While Defendant quibbles with the Magistrate Judge's characterization of Defendant as an admirer of Snowden and Assange, her comments to her sister endorse the conduct of these men. No matter the word choice, the point to be taken from the evidence is that Defendant condoned divulging classified information as she was "on their side." What the Magistrate Judge did not do in his Detention Order, contrary to Defendant's assertion, was equate Defendant's conduct to the "extreme conduct" of Snowden and Assange. (See Def.'s Appeal Br., at 2.)

13

from the evidence that Defendant's past conduct and state of mind are of serious concern.

D.   <u>Nature and Seriousness of Danger Posed by Release</u>

Having found that Defendant may have accepted a position with the NSA with intentions to leak information to news outlets, it is not a leap to find Defendant's potential release troubling. The classified document she printed and the thumb drive she inserted while in the employ of the Air Force are unaccounted for. Further, while the Government has not been able to conclude that Defendant has or had in her possession other classified documents, it has not concluded that she has not had further access to classified information. (Detention Hr'g Tr., Sept. 29, 2017, at 91.) Given the uncertainty with respect to Defendant's level of knowledge or possession of classified information, together with evidence that she planned to anonymously release information to online news outlets and that she has antipathy toward the United States, the Court finds that releasing Defendant prior to trial would pose a danger to the community, particularly to the national security.

As discussed, the statutory factors for consideration each weigh in favor of the Government. Additionally, the Government has presented other significant evidence relative to Defendant's risk of flight. As mentioned, Defendant has few ties to this community, she has shown a strong intent to

14

live and work abroad, and she has demonstrated an interest in matters of the Taliban. She even researched airline flights to Kurdistan and Erbil and work visas in Afghanistan. This desire to live abroad is no doubt quickened by facing a felony charge brought by United States of America. Further, the Court finds that Defendant's fluency in Farsi, Dari, and Pashto would enable her to live and sustain herself in many Middle Eastern countries, and the $30,000 in her bank account will provide her with a start. Finally, just prior to her arrest, Defendant demonstrated her propensity for travel with a three-day solo trip to Belize. This evidence takes the chances of Defendant fleeing the jurisdiction of this Court beyond the mere theoretical and into the realm of probable. Indeed, the Court finds by a preponderance of the evidence that Defendant is a serious flight risk.

Defendant complains that the Magistrate Judge did not discuss, and therefore did not consider, whether the proposed conditions on her release would reasonably assure her appearance. The Court, however, need not enunciate every consideration in its Order. It suffices that this Court has considered the proposed conditions (for instance, the surrender of her passport, the posting of a property bond, and her agreement to wear a monitoring bracelet) and reasonably concludes that, based upon evidence that Defendant does not wish to be in America, may even wish to cause harm to national

15

security, and has the means to live abroad, Defendant will flee despite these conditions and assurances. Moreover, Defendant's promises to remain in the county, wear a monitoring bracelet, and refrain from internet usage and contact with the media[12] do not adequately protect against potential further unauthorized disclosures. Classified information cannot be retrieved or un-disclosed once it is released, so the potential of harm to national security is too great a risk to place upon the promises of this Defendant.[13]

## III.   CONCLUSION

Upon a *de novo* review of the record, the Court concludes that the Magistrate Judge did not err in ordering Defendant Reality Leigh Winner detained pending trial. While Defendant urges this Court to adopt its view of the evidence, indeed painting a very different picture of Defendant, the Court cannot ignore another reasonable and supported picture of

---

[12] The Government states in a footnote that Defendant had put a member of the media on her jail visitor list and that this visitor came to see Defendant in jail on October 14, 2017. While the jail terminated the visit, this encounter took place just a few days prior to Defendant filing her appeal. (Gov't Br. in Opp'n, Doc. 131, at 18 n.7.)

[13] See King, 849 F.2d at 487 n.2 (explaining that the Senate Judiciary Committee intended a broad construction of "danger to the community" to encompass the risk that the defendant may engage in criminal activity to the detriment of the community (quoting the Report of the Senate Committee on the Judiciary, S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984))).

16

Defendant. Through its considered view of the evidence, the Court finds by a preponderance of the evidence that Defendant is a serious flight risk and no condition or combination of conditions will reasonably assure the safety of the community (particularly national security) or the appearance of Defendant as required. Accordingly, the Court **DENIES** Defendant's appeal (doc. 128) and **AFFIRMS** the Magistrate Judge's Detention Order of October 5, 2017.

**ORDER ENTERED** at Augusta, Georgia, this _27th_ day of November, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

17

45

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | NO. 1:17-CR-0034 |
| | * | |
| REALITY LEIGH WINNER | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | * | |

## DEFENDANT'S NOTICE OF APPEAL OF DETENTION ORDER

Notice is hereby given that Reality Leigh Winner, the Defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Order regarding detention that the district court entered on November 27, 2017 [Doc. 163].  A copy of the detention order is attached as **Exhibit A**.  A copy of the detention orders issued by the magistrate judge on June 9, 2017 [Doc. 27], and October 5, 2017 [Doc. 115] are attached as **Exhibit B** and **Exhibit C**, respectively.

1

Respectfully submitted,

/s/Joe D. Whitley

Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 27488)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

Jill E. McCook (Tn. Bar No. 033813)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ, P.C.**
265 Brookview Centre Way, Suite 600
Knoxville, TN  37919
(865) 549-7129
JMCook@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT
REALITY LEIGH WINNER**

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

/s/Joe D. Whitley
JOE D. WHITLEY

2

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA     *
                            *
     vs.                    *     CR 117-034
                            *
REALITY LEIGH WINNER       *

## O R D E R

Pursuant to 18 U.S.C. § 3145(b), Defendant Reality Leigh Winner has filed an appeal from the United States Magistrate Judge's Detention Order of October 5, 2017.[1]  After an independent and *de novo* review of the detention proceedings before the Magistrate Judge, the arguments of counsel in brief, and the relevant law, the Court finds that detention is appropriate and therefore affirms the Detention Order.

## I.  LEGAL STANDARD

When the Government seeks to detain a defendant pending trial under the Bail Reform Act, the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and

---

[1]    Section 3145(b) contemplates that the detained defendant will file a motion to revoke the detention order rather than an "appeal."  Because there is no substantive difference, the Court will use the term chosen by Defendant.

the safety of any other person and the community." 18 U.S.C.
§ 3142(e)(1). A hearing for that purpose will be conducted
upon motion of the Government in a case that involves "a
serious risk that such person will flee."[2]  18 U.S.C. §
3142(f)(2)(A). The Government bears the burden of
demonstrating a serious risk of flight by a preponderance of
the evidence. United States v. Medina, 775 F.2d 1398, 1402
(11th Cir. 1985).

This Court's review of the Magistrate Judge's decision is
de novo. United States v. Hurtado, 779 F.2d 1467, 1481 (11th
Cir. 1985) (stating that the district court "is not
constrained to look for abuse of discretion or to defer to the
judgment of the prior judicial officer" when reviewing
detention decisions). In assessing the Government's proof,
the Court shall consider the following relevant factors: (1)
the nature and circumstances of the offense charged; (2) the

---

[2]  The Government cannot move for detention on the basis
that Defendant poses a danger to the community under 18 U.S.C.
§ 3142(f)(1) because she does not meet any of the criteria set
forth therein. United States v. Giordano, 370 F. Supp. 2d
1256, 1258-62 (S.D. Fla. 2005); accord United States v. Twine,
344 F.3d 987 (9th Cir. 2003); United States v. Byrd, 969 F.2d
106, 110 (5th Cir. 1992); United States v. Friedman, 837 F.2d
48 (2d Cir. 1988); United States v. Himler, 797 F.2d 156 (3d
Cir. 1986). Importantly, the "dangerousness" of this
Defendant is still a factor to be considered under 18 U.S.C.
§ 3142(g)(4). Giordano, 370 F. Supp. 2d at 1261 n.1.
Moreover, the "dangerousness" of Defendant as a factor also
"emanates" from § 3142(e)(1)'s requirement that the Court
consider whether any condition(s) may reasonably assure the
safety of the community. See King, 849 F.2d at 487.

2

weight of the evidence against Defendant; (3) the history and characteristics of Defendant, including character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g). In conducting the review, this Court may rely entirely on the pleadings and evidence developed during the Magistrate Judge's detention proceedings, or it may conclude that additional evidence is necessary and conduct its own evidentiary hearing. <u>United States v. King</u>, 849 F.2d 485, 490 (11th Cir. 1988). Here, the Court has determined that another hearing would not aid in this decision, particularly because the Court had the benefit of the transcripts of two prior detention hearings and the thorough and reasoned briefs of counsel. Further, no additional evidence is required, and there are no relevant factual disputes that require further evidence. Thus, Defendant's request for a hearing on this matter is denied.

3

## II.  ANALYSIS

On appeal, Defendant argues that the Magistrate Judge ignored certain favorable evidence, made findings that are unsupported by the evidence, and as a whole, improperly balanced the evidence.  Consequently, the Magistrate Judge erred in finding that Defendant is a serious risk of flight. Defendant also argues that the Magistrate Judge failed to consider factors and conditions that would reasonably assure the safety of the community and her appearance at trial.

After conducting a *de novo* review of the entire record, including the transcripts of the two detention hearings, the Court finds that the Order of Detention accurately and thoroughly sets forth both the facts and the law.  Despite Defendant's contentions, the Magistrate Judge properly considered the factors giving rise to detention and properly concluded that no condition or combinations of conditions would reasonably assure the safety of the community and Defendant's appearance at trial.  This Court will now examine the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), all of which weigh against Defendant, while addressing Defendant's assertions of error on appeal.

A.   Nature and Circumstances of the Offense Charged

Defendant is charged with a violation of 18 U.S.C. § 793(e), which provides in relevant part:

4

51

> Whoever having unauthorized possession of,
> access to, or control over any document . . .
> related to the national defense, willfully
> communicates, delivers, transmits, or causes to be
> communicated, delivered or transmitted . . . to
> any person not entitled to receive it . . . shall
> be fined . . . or imprisoned.

The Magistrate Judge concluded that the "nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant . . . ." (Detention Order, at 2.) While a violation of 18 U.S.C. § 793(e) does not create a rebuttable presumption in favor of detention,[3] the superseding indictment nevertheless charges that Defendant willfully transmitted a classified, top-secret[4] document without authority to an online news outlet, which was not entitled to receive it. (See generally Superseding Indict., Doc. 72.) A plain reading of the indictment demonstrates the serious nature of the offense. Coupled with evidence that Defendant had access to classified information during her service in the Air Force and with the NSA, particularly in light of the "covert

---

[3] Contrary to Defendant's emphasis on this point, the fact that the offense charged does not create a rebuttable presumption of detention is not determinative of this particular factor; if it was, there would be no reason to list this factor as an independent relevant consideration.

[4] A document is classified "TOP SECRET if the unauthorized disclosure of that information could be expected to cause **_exceptionally grave damage to the national security._**" (Superseding Indict., ¶ 3 (emphasis added).)

5

communications package" (discussed _infra_) that she had created around the time of taking the NSA position and her apparent antipathy toward the United States of America, the gravity of Defendant's alleged crime is unassailable.   The fact that Defendant has been charged with one count-related to one transmission of one document-does not mitigate the serious nature of the offense, especially given that the matter may affect national security.[5]

B.   Weight of the Evidence

At the time of the execution of the search warrant of her home, Defendant admitted to FBI Special Agent Justin Garrick that she willfully secreted the classified document out of the NSA and mailed it to the online news outlet, which did not have authority to receive it.[6]   (Tr. of

---

[5]   Defendant harps on the fact that she has only been charged with the disclosure of "one document, one time, to one recipient, with no allegations of financial gain."   (_E.g._, Def.'s Appeal Br., Doc. 128, at 13.)   The Court finds this fact to be of little importance because it may reasonably be said that the Government caught this Defendant before any more damage could be done.   Indeed, Defendant had only recently begun her employment with the NSA contractor, Pluribus International, and had only recently researched how to disclose information to news outlets anonymously.   Also, financial gain is not the only reason a person may disclose classified information to a news outlet.   These other takes on the "only once" argument are reasonable given the evidence discussed _infra_ regarding Defendant's development of a "covert communications package," her antipathy toward America, and her research into living and working abroad.

[6]   In fact, Defendant initially denied taking any document out of the NSA building. (Tr. of Interview, at 08145-

6

Interview, Doc. 100, Ex. A, at 08161-62.) While Defendant has disputed the specific elements of this crime, particularly whether the classified document was related to the national defense[7] and whether she possessed the requisite *mens rea* to be found guilty, at this point in the proceeding, her admission to these relevant facts appear to hit upon all the elements of the crime.

Defendant complains that the Magistrate Judge did not consider that the initial statements to the FBI during the execution of the search warrant are subject to a pending motion to suppress.  The motion to suppress, however, has not been fully vetted and is certainly not resolved; thus, at this point it is immaterial.  Besides, in addition to the admissions to the Special Agent, Defendant has also made statements to her sister that she "screwed up" and that she "leaked a document."  (Detention Hr'g Tr., Sept. 29, 2017, Doc. 109, Ex. 6.)  The use of the word "leaked" indicates a

---

46.)  And, when she admitted that she had printed a classified document, she initially claimed to have placed it in the burn bag and denied taking it out of the building or mailing it to anyone.  (Id. at 08152-08158.)  This suggests a certain level of deception.

[7]  As pointed out by the Magistrate Judge, Defendant admitted that she knew the document contained information regarding sources and methods of collecting classified information that would be valuable to adversaries of the United States.  (Detention Order, at 4; Tr. of Interview, at 08172.)

7

certain consciousness of wrongdoing because lawful possession and transmission would not be called a "leak." Moreover, as expressed by the Magistrate Judge (Detention Order, at 3), the investigatory facts which led the FBI to the independent conclusion that Defendant was the source of the leaked document will be compelling evidence against her.[8]

### C.  History and Characteristics of Defendant

The Court first notes that Defendant believes the Magistrate Judge overlooked the positive characteristics and history of Defendant, such as her honorable service to the country, her humanitarian aspirations, her strong family ties, and her lack of a criminal history.  In point of fact, the Magistrate Judge opened his discussion of this factor noting: "Characteristics weighing in favor of Defendant's pretrial release are her service in the Air Force, clean criminal

---

[8]     At the detention hearing on September 29, 2017, Special Agent Garrick testified that of the six individuals that printed the subject document, only two had printed both the Intelligence Report and the attachment, both of which ended up in the possession of the online news outlet.  Of the two, the investigation revealed that the document was printed by Defendant on May 9, 2017, that the document was mailed from Augusta, Georgia on May 10, 2017, and that Defendant had contacted the recipient news media outlet.  (Detention Hr'g Tr., Sept. 29, 2017, at 22-24.)   The investigation also revealed that on the day the classified document was printed, Defendant had researched online how to anonymously submit information to two news outlets.  (Id. at 27.) After that date, Defendant performed several searches for those news outlets and information related to the potential leak of classified information to see "if leaked information had been published by those particular media outlets."  (Id.)

8

history, and loving and committed parents." (Detention Order,
at 5.)   The Magistrate Judge then went on to find that
negative factors outweighed the positive, pointing to her
state of mind, few community ties, and past relevant conduct.
Specifically, the Magistrate Judge found compelling evidence
to support this finding: "Defendant admittedly 'hates'
America, misused a top-secret computer during her Air Force
career, admires Edward Snowden and Julian Assange, and began
preparations to leak classified information from the very
outset of her work as an NSA subcontractor." (Id.) Defendant
takes particular umbrage at the characterization that she
"hates" America and that she "admires" Edward Snowden and
Julian Assange.

Upon a de novo review of the evidence submitted at the
detention hearing of September 29, 2017, particularly the
testimony of Special Agent Garrick, this Court similarly
concludes that the negative implications from the evidence
pertaining to Defendant's character, her mental state, her
conduct in the months before her arrest, and her lack of
community ties significantly outweigh the positive aspects of
her family ties, commendable service in the Air Force, care
for environmental issues and animals, humanitarianism, and
lack of criminal record.

The Court will now recount the evidence that supports
this finding:

9

- On November 9, 2016, while in the waning days of her service in the Air Force, Defendant researched whether a top secret computer will detect a thumb drive. On this same day, Defendant inserted a thumb drive into a top secret computer for approximately two minutes. (Detention Hr'g Tr., Sept. 29, 2017, at 48-49.) The Government has not located the thumb drive.

- Immediately after removing the thumb drive, Defendant printed a top secret intelligence report which was "not associated in any way with [her] duties/assignments." The Government does not know what Defendant did with the document. (Id. at 49.)

- Defendant performed multiple searches for jobs requiring a security clearance in November 2016 at the same time that she researched for information pertaining to the Taliban and for information about an organization called Anonymous, an affiliation of hackers. (Id. at 50-51.)

- In handwritten notes apparently regarding employment opportunities, Defendant writes "I want to burn the whitehouse down. Find somewhere in Kurdistan to live . . . or Nepal haha maybe." (Id. at 32, Ex. 7.)

- Included in Defendant's handwritten notes are references to Taliban military leaders. (Id. at 37, Ex. 7.) Defendant also performed internet searches in October, November, and December of 2016 for the Taliban media website, the Taliban office in Qatar, and the Taliban YouTube channel. (Id. at 37-38, Ex. 8.)

- Other internet searches involve traveling, working and living in Kuridstan, Iraq, Afghanistan, Jordan and Palestinian territories, to include information pertaining to flights to Kurdistan and Erbil, moving to Palestine, and obtaining visas for Kurdistan and Afghanistan. (Id. at 40-42, Ex. 8.)

- On February 7, 2017, two days prior to her first day of employment with the NSA contractor, Pluribus International, Defendant captured a screenshot of how to securely drop information to eight different news outlets. The image is titled, "If you see abuse. Leak it." (Id. at 26, Ex. 4.)

10

- On February 9, 2017, immediately after undergoing her initial security training with the NSA, Defendant sent a message to her sister, in which she said of her security training "it was hard not to laugh" when the security officer said "'yeah so uh we have guys like Edward Snowden who uhh thought they were doing the right thing, but you know, they weren't so us we uh have to keep an eye out for that insider threat, especially with contractors.'" (Id. at 42-43, Ex. 9.)

- On February 25, 2017, Defendant messaged her sister, "I have to take a polygraph where they're going to ask if I've ever plotted against the gov't. #gonnafail." She then said, "Look, I only say I hate America like 3 times a day." When Defendant's sister asked, "But you don't actually hate America, right?", Defendant responded: "I mean yeah I do it's literally the worst thing to happen on the planet. We invented capitalism the downfall of the environment." (Id. 44, Ex. 11.)

- On March 7, 2017, Defendant messaged her sister that Vault 7[9] was "so awesome" and that it had "crippled the program." When her sister asked, "So you're on Assange's side," Defendant responded, "Yes. And Snowden." (Id. at 45, Ex. 12.)

- Defendant wrote notes describing how to download and install Tor[10] on its most secure setting; researched how to swap SIM cards on her phone; researched burner email accounts (e.g., slippery.email); and wrote down the URL for a burner email account. (Id. at 32-36.)

---

[9] Vault 7 is Wikileak's alleged compromise of classified government information. (Detention Hr'g Tr., Sept. 29, 2017, at 45.)

[10] The Tor network "is a method in which someone can access the internet -- not only the internet, but also the deeper, dark web on a completely anonymous level." (Detention Hr'g Tr., Sept. 29, 2017, at 34.) The Tor network was installed on a computer in Defendant's home on February 1, 2017, several days after Defendant was hired by Pluribus International and ten days prior to her start date. (Id. at 34; Tr. of Interview, at 08144.)

11

> • On the note about the burner email account, there
> is "specific identifying information related to
> foreign intelligence targets associated with
> terrorism activity being followed by the U.S.
> Government as part of its national security
> mission." (Id. at 39-40.)

The first point to take from this evidence is that the
use of the word "hate" by the Magistrate Judge was not of his
choosing, but was the word that Defendant herself used in her
message to her sister. "Hate" is also an apt word to describe
a person's emotion that noted she would like to burn the White
House down. And while Defendant, through the testimony of her
sister, would pass this off as "hyperbole" (Detention Hr'g
Tr., Sept. 29, 2017, at 104), the conclusion that Defendant
hates America is justifiable. Also, while Defendant offered
other non-nefarious reasons that a person may research TOR,
burner email accounts, and SIM cards, Special Agent Garrick
testified that "taken into its totality, it appears as though
it's a covert communications package or could be one. . . .
[It] is a way in which an individual can communicate
anonymously with another." (Id. at 36.) The credit that the
Magistrate Judge and this Court give to the agent's testimony,
over Defendant's proffer that there are benign reasons for
each of these acts taken alone, is reasonable, especially in
light of evidence that Defendant researched ways to send
information to news outlets anonymously and accessed
classified information outside of her job duties. In short,

12

Defendant attacks the Magistrate Judge's reasonable conclusions from the evidence as "sweeping" and "unsupported" (Def.'s Appeal Br. at 9), yet taking all the evidence in its totality, the Court finds the Magistrate Judge's Detention Order to be sustainable and indeed, correct in its ultimate ruling.[11]

In conclusion, the aforementioned evidence shows a person who sought out employment in a classified position with the intent to anonymously share information with news outlets and to cover her tracks while doing so. Defendant argues that she had a legitimate interest in the Middle East and religion, given her background and education. She also has strong humanitarian and environmental bents, as well as an interesting sense of humor, that can explain some of her comments. But Defendant's gloss on the evidence, painted primarily through the testimony of her sister, is but one view of the story. Certainly, the Magistrate Judge and now this Court are free to reject Defendant's gloss-the minimalization of her admitted behavior-and accept the reasonable inference

---

[11] While Defendant quibbles with the Magistrate Judge's characterization of Defendant as an admirer of Snowden and Assange, her comments to her sister endorse the conduct of these men. No matter the word choice, the point to be taken from the evidence is that Defendant condoned divulging classified information as she was "on their side." What the Magistrate Judge did not do in his Detention Order, contrary to Defendant's assertion, was equate Defendant's conduct to the "extreme conduct" of Snowden and Assange. (See Def.'s Appeal Br., at 2.)

13

from the evidence that Defendant's past conduct and state of mind are of serious concern.

    D.   <u>Nature and Seriousness of Danger Posed by Release</u>

    Having found that Defendant may have accepted a position with the NSA with intentions to leak information to news outlets, it is not a leap to find Defendant's potential release troubling. The classified document she printed and the thumb drive she inserted while in the employ of the Air Force are unaccounted for. Further, while the Government has not been able to conclude that Defendant has or had in her possession other classified documents, it has not concluded that she has not had further access to classified information. (Detention Hr'g Tr., Sept. 29, 2017, at 91.) Given the uncertainty with respect to Defendant's level of knowledge or possession of classified information, together with evidence that she planned to anonymously release information to online news outlets and that she has antipathy toward the United States, the Court finds that releasing Defendant prior to trial would pose a danger to the community, particularly to the national security.

    As discussed, the statutory factors for consideration each weigh in favor of the Government. Additionally, the Government has presented other significant evidence relative to Defendant's risk of flight. As mentioned, Defendant has few ties to this community, she has shown a strong intent to

<div align="center">14</div>

live and work abroad, and she has demonstrated an interest in matters of the Taliban.  She even researched airline flights to Kurdistan and Erbil and work visas in Afghanistan.  This desire to live abroad is no doubt quickened by facing a felony charge brought by United States of America.  Further, the Court finds that Defendant's fluency in Farsi, Dari, and Pashto would enable her to live and sustain herself in many Middle Eastern countries, and the $30,000 in her bank account will provide her with a start.  Finally, just prior to her arrest, Defendant demonstrated her propensity for travel with a three-day solo trip to Belize.  This evidence takes the chances of Defendant fleeing the jurisdiction of this Court beyond the mere theoretical and into the realm of probable. Indeed, the Court finds by a preponderance of the evidence that Defendant is a serious flight risk.

Defendant complains that the Magistrate Judge did not discuss, and therefore did not consider, whether the proposed conditions on her release would reasonably assure her appearance.  The Court, however, need not enunciate every consideration in its Order.  It suffices that this Court has considered the proposed conditions (for instance, the surrender of her passport, the posting of a property bond, and her agreement to wear a monitoring bracelet) and reasonably concludes that, based upon evidence that Defendant does not wish to be in America, may even wish to cause harm to national

15

security, and has the means to live abroad, Defendant will flee despite these conditions and assurances. Moreover, Defendant's promises to remain in the county, wear a monitoring bracelet, and refrain from internet usage and contact with the media[12] do not adequately protect against potential further unauthorized disclosures. Classified information cannot be retrieved or un-disclosed once it is released, so the potential of harm to national security is too great a risk to place upon the promises of this Defendant.[13]

## III.  CONCLUSION

Upon a *de novo* review of the record, the Court concludes that the Magistrate Judge did not err in ordering Defendant Reality Leigh Winner detained pending trial. While Defendant urges this Court to adopt its view of the evidence, indeed painting a very different picture of Defendant, the Court cannot ignore another reasonable and supported picture of

---

[12] The Government states in a footnote that Defendant had put a member of the media on her jail visitor list and that this visitor came to see Defendant in jail on October 14, 2017. While the jail terminated the visit, this encounter took place just a few days prior to Defendant filing her appeal. (Gov't Br. in Opp'n, Doc. 131, at 18 n.7.)

[13] See King, 849 F.2d at 487 n.2 (explaining that the Senate Judiciary Committee intended a broad construction of "danger to the community" to encompass the risk that the defendant may engage in criminal activity to the detriment of the community (quoting the Report of the Senate Committee on the Judiciary, S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984))).

16

Defendant. Through its considered view of the evidence, the Court finds by a preponderance of the evidence that Defendant is a serious flight risk and no condition or combination of conditions will reasonably assure the safety of the community (particularly national security) or the appearance of Defendant as required. Accordingly, the Court **DENIES** Defendant's appeal (doc. 128) and **AFFIRMS** the Magistrate Judge's Detention Order of October 5, 2017.

**ORDER ENTERED** at Augusta, Georgia, this _27th_ day of November, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

17

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-034 |
| | ) | |
| REALITY LEIGH WINNER | ) | |

<u>DETENTION ORDER</u>

For the reasons stated at the detention hearing on June 8, 2017, the Court finds by preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required; and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED this 9th day of June, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-034 |
| | ) | |
| REALITY LEIGH WINNER | ) | |

## ORDER

In consideration of the legal briefs, oral argument, and testimony at the second detention hearing last Friday, September 29, 2017, the Court **DENIES** Defendant's motion for release from custody (doc. no. 96) and **FINDS** (1) by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community; and (2) by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required.

## I.      Overview of Bail Reform Act

The Bail Reform Act of 1984 ("Act") mandates the pretrial release of a defendant unless the government carries its burden of proving there is no bond condition or combination of conditions that would "reasonably assure" the defendant's appearance in court or the safety of the community. 18 U.S.C. § 3142(c), (f). There is no statutory presumption of detention arising from the nature of the charge against Defendant. See 18 U.S.C. § 3142(e)(2). The government's burden with respect to dangerousness is by clear and convincing evidence and the government's burden as to appearance in court is by a preponderance of the evidence. United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir.

1990); 18 U.S.C. § 3142(f)(2). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2).

The Act specifies the factors considered in determining whether there are conditions to reasonably assure safety and appearance as (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or terrorism, or involves a minor victim, controlled substance, firearm, or explosive device; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). These factors weigh heavily in favor of detention, as explained below.

## II.    Discussion

### A.    Nature and Circumstances of the Offense Charged

The superseding indictment alleges Defendant violated 18 U.S.C. § 793(e) by willfully transmitting classified information to an online news outlet despite knowing disclosure could cause specific, articulable, and "exceptionally grave damage to the national security . . . ." (Superseding Indict., doc. no. 72, ¶ 3.) The nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant in light of her alleged criminal disclosure and the potential for additional disclosures given her access to a wealth of classified information during her service in the Air Force and with NSA.

Defendant argues the nature of this case weighs against detention because complexities necessitated pushing the trial date back to March of next year. As the Eleventh Circuit has previously explained, "the prospect of eight to ten months of pretrial detention,

2

without more, does not mandate the release of a defendant for whom pretrial detention is otherwise appropriate." Quartermaine, 913 F.2d at 918. This is particularly true here since Defendant requested the delay in trial, and the risks of flight and danger to the community are high as explained *infra*. Id.; (see doc. no. 84, Aug. 30, 2017 Status Conf. Tr. ).

The Court has also carefully considered Defendant's arguments concerning the scope of § 793(e) and finds the code section broad enough to encompass Defendant's purported conduct. Nor is the Court persuaded by Defendant's argument "the vast majority of courts have held that defendants charged with similar offenses were entitled to be released pending trial." (Doc. no. 96-1, p. 14.) Defendant provided a chart listing thirteen cases in which courts granted pretrial release to defendants whom Defendant contends were similarly situated. (Id. at 14-20.) However, the detention analysis under the Act does not lend itself to easy comparisons across cases because of its intense focus on the unique facts of each case and the unique characteristics of each defendant.

Additionally, as the government points out, many of the cases touted by Defendant are materially distinguishable. (See doc. no. 100, pp. 9-10.) Two defendants received misdemeanor convictions and sentences of probation only. United States v. Nishimura, No. 2:15-CR-145-KJN, doc. no. 7 (E.D. Cal. Aug. 12, 2015); United States v. Patraeus, No. 3:15-cr-47-DCK, doc. no. 24 (W.D.N.C. Apr. 29, 2015). Two other defendants entered plea agreements within days of their initial charges, and one received a sentence of probation on a misdemeanor conviction. United States v. Leibowitz, No. 8:09-cr-632, doc. no. 25 (D. Md. May 25, 2010) (twenty months of imprisonment); United States v. Berger, No. 1:05-MJ-175-DAR, doc. no. 17 (D.D.C. Sept. 13, 2005) (two years of probation for plea to misdemeanor charge).

## B.     Weight of the Evidence

For purposes of this detention analysis only, the Court finds at this early stage of the case that the evidence against Defendant is strong.  During her initial interview with law enforcement, Defendant admitted she leaked classified information to a news outlet. Defendant also made damning admissions regarding the same in recorded jail phone conversations with her mother and sister.  Gov't Exs. 3, 6; (doc. no. 96-2, p. 2).  The circumstantial evidence corroborates Defendant's admissions.  FBI Special Agent Justin Garrick testified (1) Defendant was one of six NSA workers who accessed the leaked document; (2) Defendant was one of two NSA workers who printed the leaked document; (3) Defendant was the only NSA worker for which there is proof of contact with the news outlet during the period of time when the leak occurred; and (4) the leaked document was mailed from Augusta, Georgia to the news outlet one day after Defendant printed it.  See also Gov't Ex. 3.  Defendant further admitted she knew the document contained information regarding sources and methods of collecting classified information that would be valuable to adversaries of the United States.  Id. at USAO 08172-08173.

## C.     History and Characteristics of the Person

When considering the history and characteristics of a person in the context of determining pretrial detention, courts consider the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of the current offense or arrest the person was on a conditional release.  See 18 U.S.C. § 3142(g)(3).

4

Characteristics weighing in favor of Defendant's pretrial release are her service in the Air Force, clean criminal history, and loving and committed parents. Substantially outweighing these positive characteristics, however, are Defendant's state of mind, short length of time residing in the community, few community ties, and past conduct. Indeed, the Court finds, based on compelling evidence presented by the government, that Defendant admittedly "hates" America, misused a top-secret computer during her Air Force career, admires Edward Snowden and Julian Assange, and began preparations to leak classified information from the very outset of her work as an NSA subcontractor.

First, one need look no further than Defendant's own writings to surmise that she hates the United States and has plotted against the government. On February 25, 2017, during training for her new NSA job, Defendant wrote her sister that she would fail a polygraph because of questions concerning whether she had ever plotted against the United States Government. Gov't Ex. 11. On the same day, Defendant wrote her sister she hated America. Id. When her sister responded with incredulity, Defendant proclaimed again she hated America and explained she feels this way because America is "literally the worst thing to happen to the planet." Id.

Second, Defendant admittedly misused a top-secret computer during her service with the Air Force. On November 9, 2016, approximately one month before her discharge, Defendant searched the Internet to determine whether it is possible to insert a thumb drive into a top-secret computer without being detected. Gov't Ex. 3, USAO 08144, 08170-08171; (doc. no. 29, p. 21). On the same day as the Internet search, Defendant did insert a thumb drive into a top-secret computer for two minutes. Gov't Ex. 3, USAO 08170-08171. The

5

government has been unable to determine why Defendant inserted the thumb drive, whether she saved anything to the thumb drive, or where the thumb drive is located today.

Third, Defendant admittedly admires Edward Snowden and Julian Assange. On February 9, 2017, Defendant messaged her sister through Facebook it was "hard not to laugh" when an NSA security officer emphasized during training the enormity of the security threat posed by insiders such as Edward Snowden. Gov't Exs. 9, 11. On March 7, 2017, in Facebook messages with her sister, Defendant lauded a recent Wikileaks cache of classified information as "awesome" because it "crippled" a government program, and explained to her sister she is on the side of Assange and Snowden. Gov't Ex. 12.

Fourth, Defendant made an extended effort to develop stealth Internet capabilities during the same time period she began her employment as an NSA subcontractor. Defendant's first day working as an NSA subcontractor was February 9, 2017. Just days before starting her NSA job, Defendant downloaded a Tor browser that allows anonymous Internet operations. In the following weeks, Defendant researched how to send information anonymously to news outlets, attempted to set up a single-use email account for anonymous email, and researched how to unlock her cell phone and use it anonymously. (See doc. no. 100, pp. 19-20.) Viewed in totality, SA Garrick described these activities as preparation of a "covert communications package." The timing strongly suggests Defendant was planning to leak classified information from the outset of her NSA employment, while all the while swearing allegiance to the United States and promising to safeguard its national secrets.

### D.    Nature and Seriousness of Danger to Community

As the Eleventh Circuit has explained, "[t]he term 'dangerousness,' as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly

<center>6</center>

understood in everyday parlance." United States v. King, 849 F.2d 485, 487 n.2 (11th Cir. 1988). Indeed, the Act broadly references the safety of any person and the safety of the community at large. While the primary focus of the former is the risk of physical violence toward a particular person such as a victim or witness, the latter refers to any risk a defendant may pose to the well-being of a community. Id. Examples include the potential corruption of a union or the obvious perils drug trafficking poses to a community. Id.

By her own words and actions, Defendant has painted a disturbing self-portrait of an American with years of national service and access to classified information who hates the United States and desires to damage national security on the same scale as Julian Assange and Edward Snowden. The nature and seriousness of the danger she poses to our nation is high.

### E.    Risk of Flight

Defendant has few ties to Augusta, Georgia, and her desire to live abroad is understandably strong given her intense dislike for the United States. Fluent in Farsi, Dari, and Pashto, Defendant described her "big plan" to SA Garrick as deploying to Afghanistan as a Pashto linguist. Gov't Ex. 3, USAO 08124-08125, 08139. Defendant further explained she left the Air Force and took the NSA job in Augusta to regain her clearance in the hopes of getting a deployment. Id. at 08174. SA Garrick testified that, as Defendant's time with the Air Force came to a close in October and November 2016, she scoured the Internet for airline tickets, jobs, and housing in places such as Kurdistan, Iraq, Afghanistan, and Jordan. See also Gov't Ex. 8. The incentive to relocate overseas has to be no less tempting now that a grand jury has charged her with a felony offense carrying a maximum penalty of ten years in prison.

7

The risk of flight is also heightened because Defendant has the financial means to flee the country, as evidenced by her solo, three-day trip to Belize over the 2017 Memorial Day weekend, during which she flew to Belize Saturday morning and flew back to Georgia Monday morning. Gov't Ex. 3, USAO 08149-08150. While Defendant has surrendered her passport and cannot obtain another one in her own name, this obstacle provides little assurance given her self-described desire to "burn the White house down" and "[f]ind somewhere in Kurdistan to live . . . or Nepal." Gov't Ex. 7.

## III. Conclusion

The Court **DENIES** Defendant's motion for release from custody. (Doc. no. 96.) Defendant shall remain in the custody of the Attorney General or his designated representative for confinement pursuant to the terms of the Court's first Detention Order entered June 9, 2017. (Doc. no. 27.)

SO ORDERED this 5th day of October, 2017, at Augusta, Georgia.


BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA