███████████████████████

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 1:17-34 (JRH-BKE) |
| | ) | |
| v. | ) | Filed *In Camera* and |
| | ) | Under Seal with the Classified |
| REALITY LEIGH WINNER | ) | Information Security Officer |
| | ) | |
| | ) | |
| Defendant. | ) | |

### (U) GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* AND RESPONSE TO THE GOVERNMENT'S NOTICE OF EVIDENCE UNDER F.R.E. 404(b)

(U) By letter dated November 6, 2017, the government served the Defendant, through counsel, with an Amended notice pursuant to Federal Rule of Evidence Rule 404(b) ("Notice").[1] The Defendant moved on November 27, 2017 to "exclude all reference to the evidence or underlying facts" the government noticed.[2]   As set forth below, most of the items in the Notice are admissible as intrinsic evidence, and therefore not subject to Rule 404(b).   Moreover, all evidence referenced in the Notice is admissible pursuant to Rule 404(b).

---

[1] (U) This Notice modified the government's initial notice, which was dated August 2, 2017, by withdrawing notice of several items.

[2] (U) The Defendant's Motion is referred to herein as "Def. Mot."   The accompanying Memorandum of Law is referred to herein as "Def. Mem."

███████████████████████

████████████████████████

**I.      (U) Introduction**

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████

(U) To establish the third element above, willfulness, the government must prove that the

Defendant "acted with knowledge that [her] conduct was unlawful."   *Bryan v. United States*, 524

U.S. 184, 192 (1998) (citation omitted); *see United States v. Abu-Jihaad*, 630 F.3d 102, 135 (2d

Cir. 2010); *United States v. Drake*, 818 F. Supp. 2d 909, 916 (D. Md. 2011); *see also United States*

*v. Kiriakou*, 898 F. Supp. 2d 921, 926 (E.D. Va. 2012); *United States v. Kim*, 808 F. Supp. 2d 44,

████████████████████████

███████████████████████

55 (D.D.C. 2011).   As the Court is aware, counsel for the Defendant have argued that the

Defendant did not act with the requisite *mens rea*.[3]   *See, e.g.*, Dkt. No. 128 at 17-18.

   (U) As discussed below, much of the evidence the government noticed is intrinsic evidence

that is admissible as direct evidence of the Defendant's guilt.[4]   All of the evidence in the Notice

also provides proof of the Defendant's motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident.   *See* Fed. R. Evid. 404(b)(1)-(2).   The

Defendant's motion should therefore be denied.

## II.   (U) Standards Governing Admissibility

### A.   (U) Intrinsic Evidence

   (U) Evidence is intrinsic, and is therefore admissible without implicating Rule 404(b),

when it is "[1] necessary to complete the story of the crime, or [2] inextricably intertwined with the

evidence regarding the charged offense."[5]   *United States v. Edouard*, 485 F.3d 1324, 1344 (11th

---

[3] (U) As discussed in the Government's Response to Defendant's Brief Regarding the Elements of the Offense, Dkt. 122, the Defendant argues that the government must prove additional elements, including as to *mens rea*, to convict her.   The Defendant is wrong.   The government submits this Response in anticipation of a ruling that simple willfulness, as defined in *Bryan*, is the only state of mind the government must prove at trial, and that the Court will construe the elements as they are described in the government's brief on the elements (Dkt. 122).   If the Court requires the government to prove additional elements at trial, the government respectfully reserves the right to make additional arguments regarding Rule 404(b) evidence.

[4] (U) The government included such evidence in its Notice out of an abundance of caution.

[5] (U) The standard described in *Edouard* included as the first category, "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense," which is not relevant here.

███████████████████████

████████████████████

Cir. 2007) (citations omitted).   "Evidence, not part of the crime charged but pertaining to the

chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if

linked in time and circumstances with the charged crime, or forms an integral and natural part of an

account of the crime, or is necessary to complete the story of the crime for the jury."   *Id.* (quoting

*United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)).   Evidence is inextricably

intertwined with evidence of the charged crime when it is an "integral and natural part" of

evidence "of circumstances surrounding the offenses for which the defendant was indicted." *Id.*

(quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)); *see United States v.*

*Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

    **B.**    **(U) Rule 404(b)**

    (U) Rule 404(b) of the Federal Rules of Evidence permits the admission of additional,

extrinsic evidence regarding "a crime, wrong or other act" for purposes such as "proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident."   Fed. R. Evid. 404(b)(1)-(2).   In the Eleventh Circuit, courts apply a three-part test for

admissibility:

> First, the evidence must be relevant to an issue other than the defendant's character.
> Second, as part of the relevance analysis, there must be sufficient proof so that a
> jury could find that the defendant committed the extrinsic act.   Third, the evidence
> must possess probative value that is not substantially outweighed by its undue
> prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992); *see United States v. Cochran*, 683

F.3d 1314, 1321 (11th Cir. 2012); *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

████████████████████

██████████████████████

In assessing the third prong of the *Miller* test, courts in the Eleventh Circuit "carry out a 'common sense' assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness." *United States v. Clark*, 693 F. App'x 804, 807 (11th Cir. 2017) (citing *Jernigan*, 341 F.3d at 1281).

(U) Critically, Rule 404(b) is a "rule of inclusion, and 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994); *see Jernigan*, 341 F.3d at 1280. Notably, a defendant "who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence." *Edouard*, 485 F.3d at 1345 (quoting *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998)). Consequently, when a defendant contests proof of *mens rea*, a court should accord greater weight to the probative value of evidence establishing that element. *See id.*

III.   **(U) The Evidence Included in the Government's Notice Is Admissible, Either As Intrinsic Evidence or Pursuant to Rule 404(b)**

(U) The government submits that items discussed in Parts III.A, B.1, and D, *infra*, are admissible as intrinsic evidence and that no Rule 404(b) analysis is required with respect to that evidence. In any event, all of the evidence in the government's Notice is admissible under Rule 404(b) in accordance with the three-part test established in *Miller*.

██████████████████████

███████████████████████████

(U) As described in greater detail below, the evidence in the Notice consists of: (A) the Defendant's search regarding the insertion of digital storage media into the TOP SECRET network (the same network from which she later stole a document) and her subsequent unauthorized insertion of such media into that network; (B) the Defendant's notes and internet searches regarding anonymously disclosing information and about obtaining employment that would provide access to classified information, her searches for indications that the document she stole and transmitted had been reported in the news media, and her online activity evincing antipathy to the United States and an affinity for individuals and entities reported to have compromised classified information; (C) the Defendant's research and use of TOR (which was required to use news media outlets' secure reporting portals) and other means of concealing identity; and (D) the Defendant's clear awareness of rules regarding the handling of classified information, based on her self-report of a minor violation and the remedial counseling she received approximately three months before the charged conduct.

████████████████████████████████
███████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
███████████████████████████████

█████████████████████



A.   (U) November 9, 2016 computer search for "do top secret computers detect when flash drives are inserted" (Item #1) and November 9, 2016 insertion of flash drive into U.S. Government computer on secure network (Item #2)

(U) Shortly before the Defendant's access to classified computer systems ended as part of her separation from the U.S. Air Force, the Defendant entered the following search into her work computer: "do top secret computers detect when flash drives are inserted."[7]   The Defendant subsequently inserted such media without authorization into a computer on the TOP SECRET network.   This is intrinsic evidence of the crime charged.   It relates directly to willfulness,



---

[7] (U) A "flash drive" is "a small, ultra-portable storage device which, unlike an optical drive or a traditional hard drive, has no moving parts."   It connects to a computer's Universal Serial Bus (USB) port.   Flash drives are also known as, *inter alia*, "USB drives" or "thumb drives."   Flash drives are available in a wide variety of storage capacities and can be "written to."   *See* https://www.lifewire.com/what-is-a-flash-drive-2625794 (visited Dec. 17, 2017).

████████████████████

because it reveals that the Defendant was aware that unauthorized removal of information from the network was so strictly prohibited that technical controls were likely in place to detect even an attempt to copy information to unauthorized removable media.   In addition, by showing possible prior attempts to exfiltrate information by different means, it provides context for the charged crime.

(U) In any event, this evidence is also admissible under Rule 404(b).   Under the first prong of the *Miller* test, evidence regarding the defendant's research and experimentation regarding inserting a flash drive into the TOP SECRET network has nothing to do with her character, and is relevant to establish willfulness, provide context, describe set-up, and demonstrate the Defendant's preparation, plan, and knowledge.   Initially, it evinces her knowledge that she was prohibited from engaging in her criminal conduct and makes clear that she made no mistake in that regard.   The Defendant attempted to determine whether she would be caught if she violated a well-known rule against inserting flash drives into a U.S. Government computer on the TOP SECRET network.   Her search demonstrates that she was aware of the rules governing handling of classified information and that removing classified information from an authorized location was not permitted.

(U) This evidence also shows the Defendant's preparation and planning for the crime she committed.   She sought means to surreptitiously remove classified information from its authorized location, which she eventually did by printing such information after researching the feasibility of other methods.   Moreover, the Defendant's lies to the FBI about her use of the flash

8

████████████████████

███████████████████

drive during the interview before her arrest demonstrate her consciousness of guilt.   When FBI

agents asked the Defendant directly about whether she had "do[ne] anything with a thumb drive,"

she sighed, then stated that she "was curious to see what would happen," and inserted a thumb

drive into the SECRET network.[8]   USAO-08170-71.   The Defendant thus attempted to minimize

her culpable conduct (after likely realizing that she could not deny it) by claiming to have inserted

a drive into the lesser-classified system and providing an implausible explanation.   She responded

in this manner because her research and experiment regarding insertion of media into the TOP

SECRET network were part of her overall plan to exfiltrate and disclose classified information

without authorization, which she knew was prohibited.[9]

(~~TS//SI//OC/NF/FISA~~)   Under the second prong of the *Miller* test, a jury could readily

conclude that the Defendant committed the acts described above, because she had previously

---

[8] (U) The TOP SECRET network (into which the Defendant inserted the flash drive) and the SECRET network (into which, when confronted, she said that she inserted it) are separate.

[9] (U) The Defendant correctly asserts that the government has no evidence regarding the contents of the flash drive before or after the Defendant improperly inserted it into the TOP SECRET network.   As the Court has noted, this is because the flash drive is "unaccounted for."   The government has not been able to locate it, and only the Defendant may know where it is.   *See* Dkt. No. 163 at 10, 14.   Although the Defendant's disposal or concealment of the drive has prevented the government from analyzing it, the government's lack of access to the drive in no way indicates that, as the Defendant incorrectly claims, "the Government has since *conceded* that there was *no evidence of wrongdoing* associated with the thumb drive incident."   Def. Mem. at 12-13.

(U) In any event, the government does not intend to use this evidence to argue that the Defendant transferred any data to the drive.   Rather, the Defendant's research and conduct bear the hallmarks of, at the very least, a "dry run" to determine whether a particular method of exfiltration would succeed.

███████████████████



committed those acts on an NSA system that recorded unique users' activity.   Third, any

prejudice would not substantially outweigh the aforementioned probative value of this evidence to

the government's proof of the Defendant's guilt.

     **B.**     **(U) Internet history in Attachment A to the Notice; handwritten note regarding employment at Pluribus and Fort Gordon; handwritten notes regarding burning the White House down and moving to Kurdistan or Nepal; February 7, 2017 cellular telephone screenshot of media outlet websites seeking leaked information and providing securedrop addresses (Items #3, 5, 7, and 8)**

     **1.**

---

[10] (U) As the Court is aware, the Defendant subsequently obtained such a position at Fort Gordon.

[11] (U) When the Defendant engaged in the charged conduct, she was employed by Pluribus as an NSA contractor.

10





(U) Under the second prong of the test, the activity is readily attributable to the Defendant, based on forensic examinations of media and devices seized from her, as well as on her notes recovered from her residence.   Third, the evidence does not give rise to any unfair inference or

12

████████████████████████

suggestion and would not prejudice the Defendant.   Its probative value, described above, thus

outweighs any possible prejudice.

### 2. (U) Statements evincing antipathy to the United States and alignment with entities promoting unauthorized disclosure of classified information

(U) In Facebook correspondence, the Defendant stated that she hated America and that the

United States was "literally the worst thing to happen to the planet."   She made handwritten notes

that she "want[ed] to burn the White House down" and "[f]ind somewhere in Kurdistan to live or

Nepal haha maybe."   The Defendant also conducted internet searches relating to to Wikileaks,

Vault 7, and Anonymous between August 2016 and May 22, 2017.   These included queries such

as "How to support Anonymous" and "how to join Anonymous."   She also made statements in

Facebook messages belittling NSA's security training regarding insider threats.   In addition,

when the other party to a communication stated that he or she "loved" Edward Snowden and that

Snowden is a "hero," the Defendant responded, in apparent agreement, "and the other guy who

stole boxes and boxes of docs."[12]   In a similar vein, the Defendant called "Vault 7" (a purported

compromise of classified U.S. Government information) "awesome," and stated, "[t]hey just

crippled the program."   When the other party to the communication stated, "[s]o you're on

Assange's side," the Defendant responded, "Yes.   And Snowden."

---

[12] (U) This appears to be a reference to Harold T. Martin III, who is charged with 20 counts of Unlawful Retention of National Defense Information in violation of Title 18, United States Code, Section 793(e).   Martin is currently awaiting trial in the District of Maryland.

████████████████████████

███████████████████

(U) To the extent this evidence is not intrinsic evidence, all of it is admissible under Rule 404(b).   First, this evidence would not be offered to show the Defendant's character; rather, it would establish her motive and absence of mistake, which are proper purposes under Rule 404(b). The Defendant's statements of antipathy toward the United States and alignment with entities and individuals reported to have compromised classified information provide evidence of the reasons she engaged in the charged conduct, and that she did not do so accidentally.

(U) Second, the writings are attributable to the Defendant because they were recovered from her electronic media and her person.   Third, although the opinions they reflect may appear distasteful or offensive, the mere fact that a jury would react negatively to a defendant's memorialized state of mind does not render such evidence unfair or prejudicial.   *See United States v. Brown*, No. 4:07-CR-308, 2008 WL 2660587, at *2 (S.D. Ga. July 7, 2008) (explaining that a defendant's writings can offer highly probative evidence of a defendant's state of mind, and that such writings are not unduly prejudicial simply because of the lifestyle or views a defendant has chosen to memorialize therein).   In any event, the Defendant's statements are so highly probative as to motive that any prejudice would be outweighed by the value of the evidence.

███████████████████

███████████████████

**C.**     **(U) Download of TOR software on or about February 1, 2017; detailed instructions in personal notebook regarding downloading TOR software with highest security and privacy settings; how to unlock a cellular telephone and change its SIM card; and how to create an anonymous email account using "Slippery.email" (Items #4 and 6)**

(U) The Defendant took significant steps to operate anonymously online.[13]   To the extent

that this evidence is not intrinsic evidence, it is admissible under Rule 404(b).   First, evidence of

the Defendant's research into and use of means to conceal her identity are not relevant to her

character.   Rather, such efforts at concealment show the Defendant's knowledge that her plan to

disclose information was unlawful, and are consistent with her specific plan to provide

information to news media outlets seeking classified information.

(U) The Defendant conducted research into the TOR browser, which is an online system

that facilitates anonymous communication.   A forensic examination of the Defendant's laptop

revealed that TOR software was downloaded to it on or about February 1, 2017, and the

Defendant's internet history shows that she researched how to use TOR's most secure settings.

Notably, an individual must use TOR to transmit information to the online securedrop sites that

media outlets advertise for use in anonymously disclosing information.   The fact that the

---

[13] (U) The government does not contend that the use of anonymizing technologies online is inherently incriminating.   In the context of this case, however, the Defendant's efforts to conceal her activities and identity while removing and disclosing classified information are important parts of the narrative of her criminal conduct.   *See* Dkt. No. 163 at 12 ("The credit that the Magistrate Judge and this Court give to the agent's testimony, over Defendant's proffer that there are benign reasons for each of these acts taken alone, is reasonable, especially in light of evidence that Defendant researched ways to send information to news outlets anonymously and accessed classified information outside of her job duties.").

███████████████████

███████████████████████████

Defendant installed TOR on February 1, 2017, just as she was beginning her employment as an NSA contractor (on or about February 9, 2017), and close in time to her searches regarding using media outlets' securedrop sites (leading up to and including on or about May 9, 2017, the date of the charged conduct), provides clear evidence of her plan and preparation to engage in her criminal conduct.   The timing of the Defendant's installation of TOR is also significant evidence of her consciousness of guilt.   When the FBI interviewed the Defendant, she admitted (as she surely knew the FBI would discover) that she installed TOR software, but lied about when she had installed it.   The Defendant told the FBI that she installed the TOR browser when she had "just gotten out of the Air Force," USAO-08168, which was in November 2016.   However, the TOR browser was actually installed on the Defendant's laptop on or about February 1, 2017, right before the Defendant began work as an NSA contractor and consequently regained access to classified information.   The Defendant's false explanation evinces an effort to proactively minimize incriminating evidence and to separate it in time from her criminal conduct.

   (U) The Defendant also appears to have researched and used a service called "Slippery.email," which advertises itself as "one-click, read-only burner mailboxes."   She conducted online research regarding replacing SIM cards in cellular telephones.   Replacing SIM cards can help conceal from law enforcement the parties to, and contents of, communications. Taken together and in the context of this case, this area of research shows an overall plan to establish anonymous means of communication that could not be monitored, searched, or tracked by authorities.

16

███████████████████████████

███████████████████████

(U)    Turning to the other prongs of the *Miller* test, this evidence was recovered from media and devices seized from the Defendant, so a jury could readily attribute it to her.   The evidence does not give rise to any unfair inferences or suggestions, so it would not prejudice the Defendant.   In any event, the probative value of the evidence as to the Defendant's willfulness, preparation, and planning would outweigh any such prejudice.

**D.     (U) Defendant's receipt and acknowledgment of remedial security briefing and counseling on or about February 15, 2017 after mishandling classified information (Item #9)**

(U) In February 2017, the Defendant brought a classified document to an NSA cafeteria, which was not an authorized location for such information.   The Defendant reported this security violation herself, and signed a document acknowledging that she received counseling regarding the proper handling of classified information.   This incident reflects the Defendant's receipt and comprehension of training in the proper handling of classified information.

(U) The government often proves a defendant's knowledge of the rules governing classified information, and her knowledge that her unauthorized retention or disclosure of such information is prohibited, circumstantially, such as through training records.   The Defendant's February 2017 incident, however, provides rare direct evidence of *mens rea*.   The fact that the Defendant reported her own security violation shows not only that she received training regarding how to properly handle classified information, but also that she understood the training and appreciated that even relatively minor violations must be addressed.

17

███████████████████████

███████████████████████

(U) The counseling that the Defendant received adds circumstantial evidence of that knowledge. The fact that it was so near in time to the Defendant's charged conduct, and the fact that receiving the briefing in response to a violation would likely make it stand out in the recipient's memory, further add to its probative value. The incident and counseling thus constitute highly probative evidence as to *mens rea.*

(U) Evidence of the February 2017 incident and counseling is also properly admissible under Rule 404(b). First, it is not being offered to show the Defendant's character, and contrary to the Defendant's assertion, Def. Mem. at 13, the government would not offer this evidence to show that the Defendant's prior mishandling of classified information renders her guilt of the charged conduct more likely. Rather, for the same reasons that the evidence is admissible as *mens rea* evidence, it would also be admissible to show the Defendant's knowledge and absence of mistake. Such evidence is highly probative of the Defendant's knowledge and absence of mistake, considering that the Defendant, less than three months after the briefing, removed classified national defense information from its authorized location and mailed it to a news media outlet. Notably, in the specific context of unlawful retention or transmission of national defense information, evidence of a defendant's prior retention of classified information is admissible to establish that the charged retention of NDI[14]—if the fact of such retention is proved—was done *willfully. See United States v. Sterling*, 860 F.3d 233, 247-48 (4th Cir. 2017).[15]

---

[14] The *Sterling* court seemingly used the concepts of classified information and national defense information interchangeably. *See United States v. Sterling*, 860 F.3d 233, 247-48 (4th Cir. 2017).

███████████████████████

███████████████████████

(U) Second, the conduct at issue is clearly the Defendant's conduct.   Third, the incident is not nearly as significant as the conduct charged in this case.   The risk of this evidence prejudicing the Defendant is thus minimal.   Accordingly, in the event that the Court concludes that evidence related to the security incident is not intrinsic evidence, it is properly admitted under Rule 404(b).

(U) Moreover, notwithstanding the Defendant's heavy reliance in the Motion upon the District Court's decision in *United States v. Hitselberger*, 991 F. Supp. 2d 108 (D.D.C. 2014), that case actually supports the admission of this evidence to prove *mens rea* in this matter (as intrinsic evidence or pursuant to Rule 404(b)).   In *Hitselberger*, the defendant was charged with several violations of unlawfully retaining national defense information and unlawfully removing a public record under Title 18, United States Code, Sections 793(e) and 2071(a).   *United States v. Hitselberger*, No. 1:12-cr-231, Dkt. 33 (D.D.C. Feb. 28, 2013).   The government sought to introduce as 404(b) evidence a nine-year-old letter that the defendant had sent to a non-governmental organization, in which the defendant referred to classified reports that he appeared to have enclosed with the letter.   *Hitselberger*, 991 F. Supp. 2d at 128.   In the letter, the

---

The government, in prior filings in this case, has described the differences between the two (related) concepts.   *See, e.g.*, Dkt. 122 at 6-7.

[15] (U) This is consistent with Eleventh Circuit opinions finding that "a logical connection exists between a convicted felon's knowing possession of a firearm at one time and his knowledge of the presence of a firearm at another time, 'or, put differently, that his possession at the subsequent time is not mistaken or accidental,'" and that the probative value of such evidence as to *mens rea* outweighs any prejudicial effect.   *Clark*, 693 F. App'x at 807 (quoting *Jernigan*, 341 F.3d at 1281).

███████████████████████

████████████████████████

defendant appeared, in the court's characterization, "*somewhat* knowledgeable" about classification markings.  *Id.* (emphasis added).   The government offered the letter to show that the defendant was "familiar with and knowledgeable about classification markings and the proper handling of sensitive materials."  *Id.*

(U) The court found that the probative value of the letter, which was offered for the narrow purpose of showing the defendant's ability to *recognize* classified information, was outweighed by the prejudicial suggestion that the defendant had previously mishandled classified information. *Id.* at 128-29.   The court also found that the letter could confuse the issues before the jury.  *Id.* at 129.   Notably, the court distinguished the case from a hypothetical situation, which was similar to the later *Sterling* case, cited above:

> It would be one thing if the government intended to introduce evidence that [the defendant] had previously mishandled classified information *in order to demonstrate that he willfully retained national defense information in this instance* . . . .  But to introduce evidence that suggests [the defendant] previously mishandled classified information in order to demonstrate *only that he knew classified information when he saw it* would be confusing and unfairly prejudicial.

*Id.*  The court further noted that introducing a nine-year-old letter would place "a large burden on [the defendant] to rebut an accusation that the government would never quite make" and that accordingly no "jury instruction could adequately address the potential for prejudice and confusion."  *Id.*

20

████████████████████████

████████████████████████████

(U) In this case, the probative value of the February 2017 incident and counseling is far greater than the letter in *Hitselberger*.[16]   As explained, above, the Defendant's self-report of a minor security infraction is evidence of the Defendant's knowledge of how classified information must be handled, in terms of both policies and the physical handling of such information.   In addition, the February 2017 incident and counseling occurred only months before the charged conduct, while the uncharged conduct in *Hitselberger* was nine years old.   The incident and counseling are thus offered for a purpose similar to that which the *Hitselberger* court would have approved (and which the *Sterling* court did approve):   to establish willfulness.   The probative value of the evidence is therefore strong, and the evidence should be admitted.

## IV.   (U) Conclusion

(U) Most of the evidence the government proposes to offer constitutes intrinsic evidence of the crime charged, and therefore is not subject to Rule 404(b).   It establishes the willfulness element of the crime, which the Defendant has indicated she will challenge at trial.   Moreover, the evidence provides the full narrative and context of the crime.   In any event, all of the evidence in the Notice is properly admissible for the purposes enumerated in Rule 404(b) and is responsive to several arguments the defense has indicated it will make at trial.   The probative value of the

---

[16] (U) Importantly, the prejudicial impact of the security incident and counseling is insubstantial. In *Hitselberger*, the proposed 404(b) evidence was suggestive of transmission of NDI, while the defendant was charged only with retention.   In this case, the Defendant is charged with the willful retention and transmission of national defense information, both of which are much more serious than the security violation that she self-reported.

████████████████████████████████

████████████████████████

evidence thus substantially outweighs any prejudicial impact.   Accordingly, the Defendant's

motion should be denied.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Jennifer G. Solari*
Assistant United States Attorney
Southern District of Georgia

*//s// David C. Aaron*
David C. Aaron
Trial Attorney
U. S. Department of Justice
National Security Division

*//s// Julie A. Edelstein*
Julie A. Edelstein
Trial Attorney
U. S. Department of Justice
National Security Division

22

████████████████████████

███████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on December 18th, 2017, I delivered the foregoing to the CISO, and will send notification of such filing to counsel of record for all parties.

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ Julie A. Edelstein*

Julie A. Edelstein
Trial Attorney

600 E Street, N.W.
Washington, D.C. 20004
(202) 233-2260

███████████████████████