UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA    *
          *
          *
v.           *   NO. 1:17-CR-00034 led with Classified
          *     Information Security Officer
REALITY LEIGH WINNER    *   CISO _____
          *   Date  Jan. 23, 2018

* * * * * * * * * * * * * * * * * *

### DEFENDANT'S OBJECTIONS AND APPEAL OF MAGISTRATE'S DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY REQUESTS

NOW INTO COURT, through undersigned counsel, comes Defendant Reality Leigh Winner ("Ms. Winner" or the "Defendant"), who respectfully files in the instant Objections and Appeal of the order granting in part and denying in part her Motion to Compel certain discovery items from the Government [Doc. 172] (the "Appeal"). As set forth in more detail below, the magistrate judge erred in rendering literally dozens of rulings in connection with the Defendant's Motion to Compel Discovery [Doc. 129] and the parties' Joint Status Report (which listed all outstanding discovery requests) [Doc. 162], including denying the most basic of discovery sought by the Defendant (such as documents and information she specifically saw that would have impacted her state of mind at the time of the alleged offense) and other discovery that would directly undermine the elements of the offense at issue and potentially raise a reasonable doubt in the mind of a juror as to guilt or innocence, *i.e. Brady* evidence.

Allowing this case to move forward in the absence of the requested discovery will prohibit the Defendant from mounting effective defenses at trial and accordingly, will impact her ability to receive a fair trial. Indeed, the magistrate judge's rulings have prevented the Defendant from even being able to assess the strength (or weakness) of the Government's case. The

magistrate judge's rulings in connection with the served discovery requests, which are attached hereto as Exhibit A in summary format, should be reversed.[1]  Given the complex nature of this case and the elements the Government must prove, coupled with the importance of the requested discovery, the Defendant also respectfully requests a hearing in connection with this Appeal.

## I.     Introduction and Summary of Argument

While this case involves the alleged disclosure of a single document, a single time, to a single recipient, that record -- described in the Indictment as "classified intelligence reporting" (hereinafter, the "Document") -- involves very broad topics.[2]  Among many other things, the Document at issue (and its attachment)

It is, of course, not a crime to simply disclose classified information, but instead the charge brought by the Government here requires that it prove, among other things, beyond a reasonable doubt, that (a) the defendant had "unauthorized" possession of the document at issue; (b) that the document issue contained "national defense information," i.e. information that was "closely held" by the Government and information that, if disclosed, was "potentially damaging to the national security of the United States"; and (c) that the Defendant "willfully" transmitted that document to someone not entitled to receive it [*See, e.g.* Doc. Nos. 112, 132]. As set forth below, nearly *all* of the Defendant's document requests, attached in a summary chart form as Exhibit A, are anchored to at least one (and in some cases, several) of these elements --

---

[1] *See* Exhibit A (Chart of Requests and Magistrate Judge's Rulings).
[2] *See* Declaration of J. William Leonard (attached hereto as Exhibit B) at p. 4 (¶ 10).

[4] Copies of the unredacted and redacted Document are attached hereto as Exhibits C and D, respectively.

2

necessarily rendering them "relevant and helpful" to the defense, the applicable standard for permitting Ms. Winner's discovery requests.  Despite this, the magistrate judge repeatedly denied pertinent discovery that is relevant -- and indeed, as set forth in the attached Declaration of one of the Defendant's experts, J. William Leonard, necessary -- to the defense.

      Importantly, many of the requests are geared towards the element of whether the information at issue here (the information contained in the Document) constitutes "national defense information."  As previously briefed, and as held by the magistrate judge, "national defense information" means information that is "closely held" by the Government and information that, if disclosed, could potentially harm the national security of the United States [Doc. Nos. 112, 132].[5]  In that regard, at the hearing held by the magistrate judge on November 30th and December 1st, the Government illuminated its position that the *entirety* of the document -- not just particular lines, words, or phrases -- constitutes "national defense information" (NDI) and that the totality of the Document was relevant to establishing three *additional* points, which it also contends are NDI.  As discussed below, its position that the entirety of the Document, as well as its three proffered points, are NDI, was confirmed in the Government's CIPA Section 10 filing on December 14, 2017 [Doc. 182].  Given the Government's position, it is axiomatic that the Defendant is *entitled* to discovery on *all* facts and topics covered by the Document so that she may demonstrate to the jury that the information contained therein is *not* national defense information.  And, given the Government's broad position, it can hardly be heard to complain about the requested discovery.

---

[5] While the Government disagrees that it must prove the "potential harm" prong of NDI, as previously briefed, such a position is inconsistent with nearly every case to have ever addressed it and is inconsistent with the Government's *own position* in prior Espionage Act cases [Doc. 132 at pp. 1-5].  The magistrate judge has, accordingly, found such an element relevant for purposes of discovery.

3

Many of the magistrate judge's rulings denying Defendant's requested discovery seem to be based on the magistrate judge's mistaken understanding that the Government had somehow *limited* what information it was contending was "national defense information." In reality, as set forth below, despite much discussion (and despite repeated requests by the magistrate judge), the Government did not *narrow* its position on what, in particular, is NDI, but it actually *broadened* it. While still holding firm on its position that the entirety of the document is NDI, the Government supplied the Court with three *additional* points -- essentially, inferences and/or consequences that may have flowed from the disclosure of the document -- that it contended were apparently the *most sensitive* pieces of information involving the document at issue. But, of course, despite much confusion, the Government has not limited itself such that the most sensitive pieces of information (its 3 NDI points) are *only* pieces of national defense information; rather the Government's stated and confirmed position, as set forth in its CIPA Section 10 submission [Doc. 182], is that the *entirety* of the Document is NDI, *in addition to* the three points proffered at the hearing and subsequently adopted in its CIPA Section 10 filing [Doc. 182]. Significantly, some of these points do not explicitly appear anywhere in the document, and, even if those three points did narrow NDI (which they did not), the magistrate judge nonetheless -- without adequate explanation or reasoning -- denied Defendant discovery specifically requesting information regarding these three NDI points, points the Government has expressly stated it will be using to establish an essential element of their case. As set forth below, the magistrate judge's rulings denying discovery geared towards determining whether the information at issue constitutes NDI -- *a determination solely within the province of the jury, not the Court*[6] -- were

---

[6] Doc.112 at p. 5 (citing *Gorin v. United States*, 312 U.S. 19, 31-32 (1941)).

4

erroneous and, if allowed to stand, would improperly prohibit Ms. Winner from obtaining discovery to be able to mount a defense she is Constitutionally entitled to make in this case.

Separately, the magistrate judge denied discovery requested by the Defendant relating to the element of whether the Defendant acted with the required level of *mens rea* at the time of the offense. The Government must here prove that the Defendant acted "willfully" that is, that she *knew* was she was doing so unlawful, including that she *knew* the information at issue constituted NDI [Doc. 112]. Even in the most basic of white collar cases, a defendant is entitled to information he or she saw during the pertinent time period -- emails, written correspondence, and the like -- as being relevant and helpful in determining the defendant's state of mind at the time of the alleged offense. The magistrate judge denied this requested discovery, even at one point suggesting that, as a substitute to the requested discovery, she could testify about what she saw that formed the basis of her *mens rea*.[7]  Of course, if permitted, this ruling would be **Constitutional error**, as a defendant has a Constitutional right to remain silent.[8]  Subsequently, the magistrate judge ruled that these records were not "relevant and helpful" to the defense. In reality, nearly *everything* the Defendant viewed in or around the pertinent time period would be relevant to her state of mind at the time of the alleged offense. For example, as set forth below, to the extent these documents reflect, for example, the Defendant's view that the information contained within the document was *already in the public domain* (as she told the FBI Special Agent during her interrogation),[9] that discovery would constitute *Brady* evidence.  The magistrate judge denied those requests, too.

---

[7] *See* Tr. of Proceedings, Nov. 30, 2017-Dec. 1, 2017, at p. 91:7-8 ("First of all, she can testify to that effect.").
[8] U.S. CONST., amend. V ("No person... shall be compelled in any criminal case to be a witness against himself...").
[9] *See* Doc. 189-2 (Redacted FBI Interrogation) at USAO-08173 ("I just figured that... this report was just going to be like a-one drop in the bucket.").

5

There were other discovery requests the magistrate judge denied, as well.  For example, the Government has proffered several pieces of evidence it desires to introduce to the jury under Rule 404(b) of the Federal Rules of Evidence; the Defendant therefore requested additional information directly related to these pieces of evidence, which the magistrate judge denied, even though the Court is currently considering briefings on motions *in limine* relating to that evidence. The Defendant likewise requested discovery on the particular of the Document at issue, such as discovery on who classified it; when it was classified; the bases for such classification; any analyses regarding same; and the like.  With few exceptions, the magistrate judge denied these requests, as well, opining that such information was not relevant to the defense.  Frankly, there are few pieces of information more relevant than the bases upon which the Government has classified the Document at issue – the very classification the Government will be relying on to establish that the information contained therein is NDI.

In the end, the magistrate judge, who understandably went back-and-forth on his positions during the two-day hearing, only permitted, with several exceptions, *unclassified* discovery (and, in many cases, the *barest* of unclassified discovery, known as "non-FOUO")[10] *specific* to the most *particular* pieces of information contained in the Document. As set forth in detail below, the denial of these discovery requests have injected prejudicial error in these proceedings, are inconsistent with pertinent case authorities, and those rulings should be reversed

---

[10] FOUO is defined as "For Official Use Only" and it is not a classification. *See* Ex. B (Leonard Decl.) at pp. 9-10 (¶ 20). The distinction to exclude FOUO documents from discovery was inexplicable: as the Government knows, nearly *everything* dealing with any of the broad facts and topics in the Document will be marked, as a minimum, as FOUO. A good example of the types of records which will be excluded is attached as Exhibit E – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Exhibit E.  Thus, excluding these records – which the magistrate judge did  in a conclusory nature given the Government's unsupported protestations about the burdensomeness of retrieving such records – has effectively prohibited the defense from receiving *any* records pertinent to formulating some of its defenses. *See* Ex. B (Leonard Decl.) at pp. 9-10 (¶ 20).

6

to ensure the Defendant has the opportunity to obtain discovery relevant and helpful for her defenses and preserve her Constitutional right to receive a fair trial.

## II.     Procedural History

On August 25, 2017, the Government circulated to Ms. Winner's defense counsel an index of unclassified discovery that had been disclosed to Ms. Winner through the same date. Upon review of the discovery, it became abundantly clear that the Government had altogether failed to disclose entire categories of documents that will be required for the Government to prove, and for Ms. Winner to defend, the charged offense. Subsequent to its receipt of the Government's discovery, the defense served five (5) separate sets of discovery requests on the Government – four in written form, and a fifth was orally stated at the hearing on the Motion to Compel held on November 30-December 1, 2017. The entirety of these document requests are attached hereto as Exhibit A. As discussed below, the Government has utterly failed to produce relevant and helpful evidence to the defense, including evidence that the Defendant needs in order to negate some of the elements of the charged offense. In most instances, the Government has unilaterally decided what information the Defendant needs to prepare her defense in what appeared to be an attempt to limit what defenses she may present. The Government's failure to produce relevant and helpful evidence necessitated the Defendant's Motion to Compel, filed on October 19, 2017 [Doc. 129], which the Government opposed on November 1, 2017 [Doc. 142]. After a short hearing wherein the parties attempted to meet-and-confer regarding some of the requests, the magistrate judge ordered the parties to submit a joint report, itemizing all discovery requests in dispute by November 13, 2017 [Doc. 148], which the parties complied with [Doc. 162]. The magistrate judge thereafter held a two-day hearing on November 30, 2017 and December 1, 2017 [Doc. Nos. 170 & 171] on the Motion to Compel and the itemized discovery

7

requests contained in the Joint Status Report. At the end of the two-day hearing, as set forth below, Magistrate Judge Epps denied wide swaths of discovery – indeed, almost everything requested by the Defendant – including the most basic of discovery (such as information relating to some of the facts and topics in the Document at issue that Ms. Winner likely saw during the same time period) and discovery that would unquestionably negate elements of the offense and may raise a reasonable doubt in the mind of jurors about guilt or innocence, i.e. *Brady* evidence (such as records that would reflect that the information contained in the Document at issue was not closely held and/or would not potentially cause harm to the national security of the United States if disclosed).

As to the latter, the magistrate judge's orders are all the more troubling because, as set forth above, it is the jury – not the judge – that is the ultimate arbiter of whether or not the information contained in the document is NDI, i.e. whether it is "closely held" or whether its disclosure would potentially cause harm to the national security of this country.[11]  In other words, in denying the requested discovery on relevancy grounds, the magistrate judge substituted *his own* judgement for that which is solely a jury determination.

If allowed to stand, these rulings which, of course, only seek to a determination of the *discoverability* of documents (as opposed to *admissibility* of them)[12] would inject prejudicial

---

[11] Doc. 112 at p. 5 (citing *Gorin*, 312 U.S. at 31-32).

[12] As the Court is aware, to the extent the Government has concerns about using certain discoverable documents at trial, it retains the right, through CIPA, to request that the Court redact certain portions (or institute substitute language) of those documents prior to trial. The Motion to Compel, and the discovery requests listed in the Joint Status Report, simply address whether the defense is entitled to *discover* such records. *See, e.g. United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989) (taking broad view of discovery in national security case because Court will have opportunity to address admissibility under CIPA processes).

8

error into these proceedings limiting Ms. Winner's ability to prepare an adequate defense; the magistrate judge's rulings on Ms. Winner's requested discovery should therefore be reversed.[13]

## III.   Governing Law

### A.   Law Governing Appeal of Magistrate's Order

Pursuant to Rule 59(a) of the Federal Rules of Criminal Procedure, a "district judge must consider timely objections and modify or set aside any part of [an] order [of a magistrate judge] that is contrary to law or clearly erroneous." FED. R. CRIM. P. 59(a).

### B.   The Government's Discovery Obligations

As briefed in the Defendant's Motion to Compel, the Government's obligations relevant to this Motion are predicated upon Rule 16 of the Federal Rules of Criminal Procedure, as well as *Brady*, *Giglio*, and their progeny.  This Appeal first discusses the Government's general discovery obligations under Rule 16, *Brady*, and *Giglio* before turning to the specific requests.

#### 1.   Discovery Obligations Under Rule 16

Rule 16(a) of the Federal Rules of Criminal Procedure "spells out [certain] materials the prosecution must produce on the defendant's request." FED. R. CRIM. P. 16; *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003).  The Rule 16(a) required disclosures include the following: (1) the defendant's statements (Rule 16(a)(1)(A) and (B));  (2) the defendant's prior record (Rule 16(a)(1)(D));  (3) documents and objects material to preparation of defense (Rule 16(a)(1)(E));  (4) reports of examinations and tests (Rule 16(a)(1)(F));  and (5) expert witnesses (Rule 16(a)(1)(G)).[14]

---

[13] To be clear, the Defendant is seeking a reversal on the requests which were denied by the magistrate judge as listed on Exhibit A.  She is not seeking any action with respect to discovery requests that were withdrawn or mooted, as noted in the attached chart.

[14] The analysis in this Appeal is limited to certain categories of required disclosures under Rule 16 that are clearly deficient; however, Ms. Winner hereby reasserts all of her rights with regard to all required disclosures, and the

In general, Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled," and leaves intact a court's "discretion" to grant or deny the "broader" discovery requests of a criminal defendant. *Jordan*, 316 F.3d at 1249, n.69 (citing Notes of Advisory Committee on 1974 Amendments to Federal Rules of Criminal Procedure, Fed. R. Crim. P. Rule 16); *see also United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003). "[D]isputes should be resolved in the defendants' favor, for '[t]he language and the spirit of the Rules are designed to provide to a criminal defendant, in the interests of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aide him in present his side of the case.'" *Id.* (quoting *Poindexter*, 727 F. Supp. at 1473).

In the Eleventh Circuit, a discovery violation under Rule 16 constitutes reversible error when it violates a defendant's substantial rights. *See, e.g.*, *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999); *United States v. Bueno-Sierra*, 99 F.3d. 375, 380 (11th Cir. 1996). Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense. *United States v. Camargo-Vergara*, 57 F.3d 993, 999 (11th Cir. 1995). "Inadvertence does not render a discovery violation harmless; rather, the purpose of rule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance." *Id.* (citations omitted).

Among the categories of required disclosures is Fed. R. Crim. P. 16(a)(1)(E), which requires that the government disclose an "item [] material to preparing the defense." FED. R.

---

Government and this Court should not interpret any omission regarding any specific category of disclosure in this Appeal as any admission that any such category of documents has been received, exists, or does not exist or as any waiver of rights.

CRIM. P. 16(a)(1)(E) (emphasis added);[15] *see also Jordan*, 316 F.3d at 1249 (analyzing former Rule 16(a)(1)(C)).

"An item . . . need not be disclosed unless the defendant demonstrates that it is material to the preparation of his defense. A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense. Rather, the defendant must make a specific request for the item together with an explanation of how it will be helpful to the defense." *Id.* at 1250 (citations omitted).

"As the Fifth Circuit[16] put it in *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978) (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975)), the defendant must show more than that the [item] bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the [item] . . . would enable [] the defendant significantly to alter the quantum of proof in his favor." *Jordan*, 316 F.3d at 1251; *accord United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010). A disclosure is considered material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

Consequently, "the government cannot take a narrow reading of the term 'material' in deciding what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its

---

[15] As discussed in greater detail below, many of the Defendant's requests relate to disclosures material to preparing her defense as contemplated by FED. R. CRIM. P. 16(a)(1)(E).

[16] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

preparation." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005). As the United States

District Court for the District of Columbia explained:

> Rule 16(a)(1)(E) . . . covers evidence that is material to *the preparation of* the
> defendant's defense. It is not limited to evidence that is favorable or helpful to
> the defense and does not immunize inculpatory evidence from disclosure.
> Inculpatory evidence, after all, is just as likely to assist in the preparation of the
> defendant's defense as exculpatory evidence. . . . [I]t is just as important to the
> preparation of a defense to know its potential pitfalls as to know its strengths.

*Id.* (internal citations and punctuation omitted). Indeed, "Rule 16 is intended to provide a

criminal defendant '*the widest possible opportunity to inspect and receive such materials in the*

*possession of the Government as may aid him in presenting his side of the case.*'" *Id.* (citations

omitted) (emphasis added).

Because it may be difficult for a defendant to make a materiality showing if she does not

know what the evidence is, courts often require the defense to make only a *prima facie* showing

of materiality to obtain discovery. *See, e.g.*, *Wiggins v. United States*, 386 A.2d 1171, 1178

(D.C. 1978); C. Wright, 2 Federal Practice and Procedure, Criminal 254 at 66-67 (2d ed. 1982).

## 2.    Exculpatory and Impeachment Material (*Brady / Giglio*)

Government disclosure of material exculpatory and impeachment evidence is part of the

constitutional guarantee to a fair trial. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. The law

requires the disclosure of any information that is favorable to the defense and material to guilt or

punishment. *Brady*, 373 U.S. at 88. Information favorable to the defense includes anything that

"would tend to exculpate [the defendant] or reduce the penalty," *see Brady*, 373 U.S. at 87, and

evidence regarding the reliability or credibility of a witness, *see Giglio*, 405 U.S. at 154-55.

Because they are constitutional obligations, *Brady and Giglio* disclosures are required to be

made regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).[17]

### a. *Brady* Analysis

"In addition to the government's discovery obligations under Rule 16(a), the government must also honor the defendant's constitutional rights, particularly the due process right *Brady v. Maryland* established. *Brady* requires the prosecutor to turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under Rule 16(a), since, eventually, such evidence may 'undermine[] the confidence in the outcome of the trial.'" *Jordan*, 316 F.3d at 1251 (citations omitted).

Not unlike Rule 16, *Brady* obligates the government to disclose favorable evidence that is "material" and may even be broader. *Id.* As the Supreme Court has assessed, "the touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worth of confidence." *Kyles v. Whitley*, 514 U.S. at 435. "Accordingly, under Brady, the government need only disclose during pretrial discovery . . . evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." *Jordan*, 316 F.3d at 1252.

The correct result of a post-trial *Brady* challenge is often readily apparent. "Under *Brady*, the [Government] violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment . . . . Evidence is

---

[17] In *Kyles v. Whitley*, the Supreme Court held that in order to satisfy the Government's disclosure obligations, prosecutors have a duty to learn information favorable to the defense known to others "acting on the government's behalf in the case." 514 U.S. at 437.

13

'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Smith v. Cain*, 556 U.S. 73 (2012) (citations omitted)); *see also Baxter v. Thomas*, 45 F.3d 1501, 1506 (11th Cir. 1995). However, evaluating materiality at the pre-trial stage is frequently more difficult to assess.

As a consequence, many courts have adopted a permissive approach to pre-trial discovery requested under *Brady*. *See, e.g., Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (holding that a prosecutor should not view his discovery obligations "through the end of the telescope" that an appellate court would use, but instead must disclose what is "favorable"); *United States v. Mohamud*, No. 3:10-CR-00475-KI, 2012 U.S. Dist. LEXIS 142316 (D. Or. Oct. 2, 2012) (adopting a pretrial disclosure standard that encompasses all evidence "favorable to the defense"); *United States v. Phair*, No. CR 12-16RAJ (W. D. Wash. June 19, 2012) (requiring disclosure of all evidence favorable to the defense or likely to lead to favorable, admissible evidence); *Boyd v. United States*, 908 A.2d 39, 60 (D.C. Cir. 2006) (interpreting *Strickler v. Greene*, 527 U.S. 263 (1999), for the proposition that a prosecutor has a duty to disclose impeaching and exculpatory information irrespective of whether it later determined to be not material).

Of course, evidence that is not admissible at trial may still be *Brady* material. *Wright v. Hopper*, 169 F.3d 695, 703 & n.1 (11th Cir. 1999); *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir. 1994). The issue is whether disclosing such information may lead to the discovery of admissible evidence. *Brady v. Nagle*, 212 F.3d 559 (11th Cir. 2000).

### b. *Giglio* Analysis

In addition to *Brady* materials, the prosecutor must turn over "any impeachment evidence that is likely to cast doubt on the reliability of a witness whose testimony 'may well be determinative of guilt or innocence.'" *Jordan*, 316 F.3d at 1253 (citations omitted); *see also Bueno-Sierra*, 99 F.3d at 380. Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness. *Id.*

### C.   **Classified Nature of Requested Discovery**

To the extent the Defendant seeks classified information through her discovery requests, the appropriate standard for such discovery is whether or not the requested information is relevant and helpful to the defense. *See, e.g. Rovario v. United States*, 353 U.S. 53, 60-64 (1957); *United States v. Yunis*, 367 F.2d 617, 623 (D.C. Cir. 1989). "To be helpful or material to the defense, evidence does not need to rise to the level that would trigger the [G]overnment's obligation under *Brady v. Maryland*, 373 U.S. 82 (1963), to disclose exculpatory information." *United States v. Turner*, No. 13-CR-572, 2014 WL 3905873, at *4 (N.D. Ill. July 29, 2014) (quoting *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008)). Indeed, information can be "at least helpful" without necessarily being "favorable." *United States v. Meija*, 448 F.3d 436, 456-57 (D.C. Cir. 2006). Other courts in national security cases take "the broadest possible view of how [] classified documents might be 'relevant and helpful'" to the defense. *Turner*, 2014 WL 3905873, at *4; *see Poindexter*, 727 F. Supp. at 1473. This is because, under the CIPA process, a court "will have an opportunity to address once again the issue of materiality of classified documents that have been produced and their use of evidence" and, accordingly, "close or difficult issues" may be resolved in the defendant's favor. *Poindexter*, 727 F. Supp. at 1473.

15

## IV. Argument and Authorities

### A. The Document At Issue

The Document Ms. Winner is alleged to have leaked to a media outlet



---

[18] *See* Exs. C & D.
[19] *See id.*
[20] *See id.*
[21] *See id.*
[22] *See* Ex. C.
[23] *See id.* at p. 9.



**B.     The Defendant's Discovery Requests**

Attached hereto as Exhibit A is a chart listing the entirety of the Defendant's document requests -- which were contained in five separate sets of requests served on the Government over the course of the last several months -- that were addressed at the hearing held by the magistrate judge on November 30th and December 1st.[27] Each of the requests in the attached chart has been consecutively numbered and, for the sake of clarity, the discovery requests have been grouped by broad topics below.  The rulings of the magistrate judge are listed in the attached chart.[28] Further, the rationale for the discoverability of each category of requests are set forth in Part IV.C.

---

[24] *See id.* at p. 10.

[25] *See id.*

[26] *See* Ex. C.

[27] *See* Ex. A.

[28] No order was issued by the magistrate judge in connection with the requested discovery items, so counsel has thoroughly reviewed the transcript of the hearing in an attempt to ensure specificity and clarity with respect to the rulings at issue.

### C.   The Government's Position on National Defense Information

Magistrate Judge Epps was crystal clear at the hearing on the Motion to Compel/Joint

Status Report that the discoverability of many of the Defendant's document requests depended,

in large measure, on the breadth of the Government's view of what portions of the Document at

issue it considered as "national defense information":

> THE COURT: Right. And I think that helps for purposes of deciding the scope of
> discovery for us to have not just a statement that the entire thing is NDI, but
> enough specificity so that we can tailor discovery around it... even though I
> understand that [the Government will] argue at trial this document itself is NDI,
> there are portions of it that aren't and portions of it that are that will drive the
> defense strategy and the information they're seeking from the government.[29]

*       *       *

> THE COURT: Ms. Edelstein, I mean, this is really kind of a choice y'all got all
> day long today. It's how specific can you be with me so that I can be specific in
> what I order in terms of discovery.[30]

In other words, the magistrate judge understandably indicated, on multiple occasions throughout

the two-day hearing, that the broader the Government's view of NDI, the more discovery, geared

toward the element of NDI, would likely be relevant and helpful to the Defendant in presenting

her view to the jury that the information contained in the document was *not* NDI.

Time and time again, the Government was pressed to provide what, *precisely*, constituted

NDI in the document at issue in an effort to narrow the pertinent topics in this case:

> THE COURT: [This] is a complicated case and what I am trying to do is narrow
> the scope of what the government is going to argue at trial so that we can narrow
> accordingly the scope of discovery.[31]

*       *       *

---

[29] Tr. of Proceedings, Nov. 30-Dec. 1, 2017 at 28:24-29:2, 29:22-30:1;
[30] *Id.* at 87:21-24.
[31] *Id.* at 167:12-15.

THE COURT: Well, I mean, I would think the government is willing to do some of this. The more specific you get, probably the less comfortable they are, but on a very general level I would think the government would have no problem saying, look, we're not going to contend at trial that ██████████████████████████ ██████████████████████████████████████████████████████████ [32]

\* \* \*

THE COURT: Well, I think the answer to that – Ms. Edelstein, is the answer to that every single statement in the report is NDI?

MS. EDELSTEIN: There is no way to parse it like that, Judge... I have not never seen a [CIPA] Section Ten notice in which the government has been forced to circle line by line or redact parts of the document.

THE COURT: Right. So taking his example, the first sentence he was dividing into five different portions and you're saying, no, the entire report is very specific to this incident; it was not publicly available prior to its issuance; and every single sentence in there is NDI?

MS. EDELSTEIN: Yes, Your Honor.[33]

Indeed, the Defendant *agreed* that if the Government narrowed its view of NDI, the defense could likely narrow the discovery requests.[34] And, to be safe, the defense (and the magistrate judge) repeatedly asked the Government to go through the document, line-by-line, and advise what is and what is not NDI, so discovery could be limited accordingly.[35]

Tellingly, the Government never did limit its view on NDI and, indeed, actually *broadened* what information it believed was NDI -- going so far as to supply the parties and the Court three *additional* NDI points that it contends are the most sensitive points purportedly raised by the document at issue.[36] To be sure, there clearly was some confusion during the hearing as to whether the Government was limiting itself to just those three points, or whether

---

[32] *Id.* at 214:14-20.

[33] *Id.* at 121:25-122:15.

[34] *See id.* at 217:18-218:1.

[35] *See, e.g. id.* at 26:25-27:3 ("THE COURT: ... What is the easiest way to go through this document, Ms. Edelstein, for you to identify what you think is NDI or what the government would contend at trial is NDI or the opposite?"); 30:20-22; 99:20-100:6; 102:5-103:4; 107:10-11.

[36] *Id.* at 107:17-108:17 (Government's 3 NDI Points).

those three points were NDI, in addition to the Document.[37]  And, in fact, the magistrate judge appeared to make his rulings under the (mistaken) belief that the Government had limited itself to only the three categories.[38]  But that confusion was cleared up by the Government's CIPA Section 10 submission, wherein it subsequently identified and confirmed what was NDI:

In other words, the Government never budged; according to it, the *whole document* is NDI,[40] along with the three additional points it supplied during the hearing on the Motion to Compel and provided in its CIPA Section 10 filing.[41]

By the end of the two-day hearing, despite the Government's overly broad position on NDI, the magistrate judge then inexplicably backtracked on his earlier pronouncement regarding the scope of discovery (wherein the magistrate judge advised that the more NDI there was, the broader discovery would likely be ordered) and denied the vast majority of the requested

---

[37] *Compare* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 107:7-9 ("THE COURT: Well, I thought we had just spent like two hours talking about what they truly contend is NDI and it's not everything. It's just three things."); 215:23-216:1 ("THE COURT: Mr. Chester, you just heard from her own lips that the only thing they're going to contend is NDI at trial will be the three things they've provided to you."); 261:10-14 ("MS. EDELSTEIN: This, Your Honor, is the whole reason why we agreed to limit the NDI to these three topics...") *with* 102:1-4 ("THE COURT: I think they would tell you that everything in that report is NDI because every sentence in there is specific to ████ ████); 211:18-23 (MS. EDELSTEIN: "[H]ow I proceed doing it is saying that the document itself is NDI, but more specifically, these are the arguments we are going to rely on at trial to explain why the document is NDI.") and 211:25-212:2 (MR. CHESTER: So the whole document is NDI. Their position hasn't changed on that, it sounds to me. THE COURT: Right.").

[38] Tr. of Proceedings, Nov. 30-Dec. 1, 2017 at 248:25-249:3 ("THE COURT: ... In fact, it is my firm belief that the only categories they're going to contend is NDI are the three categories we have here. So that's really the basis for these rulings I am making today.").  Of course, the magistrate judge's "firm belief" on what he think the Government will rely on at trial not does equate to (the requested) written stipulation – especially in view of the Government's CIPA Section 10 filing [Doc. 182].

[39] The CIPA Section 10 submission also went on to list the Government's 3 NDI Points. *Id.*

[40] Tr. of Proceedings, Nov. 30-Dec. 1, 2017 at 27:4-7 ("MS. EDELSTEIN:...it is our position that the document itself is NDI and we don't have to parse the different paragraphs of it..."); 122:10-15 ("THE COURT: ... every single sentence in there is NDI? MS. EDELSTEIN: Yes, Your Honor.").

[41] In fairness, stray remarks were made throughout the two-day hearing on the Motion to Compel, appearing to suggest that there are certain facts, topics, or concepts contained in the Document at issue that the Government would not contend is NDI at trial. *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 35:11-36:24 (Magistrate Judge discussing that certain topics that the Government will not contend is NDI at trial).  However, given the Government's stated position that the entirety of the document is NDI, such stray comments – without any written stipulations, which were requested but never delivered – are of no moment.

discovery. The rulings on the Motion to Compel/Joint Status Report were error and should be reversed.[42]

## D.    The Documents Requested Are Relevant and Helpful To The Defense

### 1.    Category No. 1: Documents Reflecting Statements Made By High-Ranking Governmental Officials Relating to the Information Contained in the Document (Request Nos. 72, 73, 74)

This case presents a thorny issue for the Government: its position in this case is belied by our Commander-in-Chief. The Government has been proceeding throughout this case as if the information in the Document is true; indeed, its three NDI points presuppose the truthfulness of the information in the Document.[43] However, high-ranking government officials, including the President of the United States, have made statements undermining and/or contradicting that contention.[44] That is of great import because, if the information in the Document is inaccurate (as the President and other high-ranking officials have said), it cannot be NDI. While the defense may seek to capture some of this information in the public domain,[45] it cannot capture statements made privately by these high-ranking officials. Thus, Request Nos. 72, 73 and 74 seek records relating to the information contained in the Document, including statements made by governmental officials expressing doubt as to the veracity of the information described therein. Not only do such requests satisfy the low hurdle of being "relevant and helpful," if there

---

[42] As a form of interim relief that may clarify the discovery process, the Court could order the Government to perform the task repeatedly requested of this – to advise the defense what precise words, lines, and phrases are NDI in the Document and then remand this Appeal on the Motion to Compel/Joint Status Report. Indeed, the Defendant has filed a Motion for Bill of Particulars seeking that very relief which the Government, tellingly, has opposed. The refusal to provide the specificity in question raises both Due Process Concerns and the risk of *ex post facto* at trial if the jury is pointed to language to consider that has not been identified as NDI pretrial. *See, e.g. Johnson v. United States*, 135 S.Ct. 2551, 2556-57 (2015); *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 254-55 (2012).

[43] *See* Ex. B (Leonard Decl.) at pp. 6-7 (¶ 15).

[44] *See, e.g.* Defendant's Fourth Set of Discovery Requests (and articles attached thereto) (attached as Ex. D to Doc. 162). For the sake of convenience, the Defendant attaches several pertinent articles hereto as Exhibit F.

[45] In the name of security concerns, █████ has placed severe restrictions on the defense to search the public domain for pertinent information to prepare relevant defenses. The defense and counsel for █████ are currently working through these restrictions in an effort to try to resolve these concerns.

21

are statements by governmental officials doubting the veracity of the information contained in the Document, such records would be *Brady* evidence, given the Government's position here.[46]

Magistrate Judge Epps denied these requests, finding them to not be relevant to the defense.[47] Notably, the magistrate judge denied these requests even before counsel could argue for them.[48] However, as a legal matter, information in the Government's files inconsistent with its position in litigation is not only relevant and helpful, it can qualify as *Brady* evidence of impeachment evidence (*Giglio* evidence).[49] Moreover, while the magistrate judge stated that issuing subpoenas for such information is "patently ridiculous,"[50] plenty of case law exists requiring the President (and other high-ranking officials) to provide documentary evidence when their actions or statements are needed to permit a fair trial for a defendant.[51] Again, because the information sought by the Defendant would undermine an element of the offense, it is not only "relevant and helpful" but the records sought may be *exculpatory*. Accordingly, the magistrate judge's rulings on these requests were clearly erroneous, contrary to law, and should be reversed.

        2.      **Category No. 2: Records Reflecting the Disclosure by the Government of Information Contained in the Document At Issue in a Format Classified at less than the TS//SCI level or to an Audience that did not have a TS//SCI clearance (Request Nos. 12, 13, 21, 23, 24, 26, 28, 29, 31, 33, 35, 40, 46, 63, 70, 84, and 96)**

████████████████████████████████

████████████████████████████ -- of the Document Ms. Winner

allegedly leaked. ████████████████████████

---

[46] *See* Ex. B (Leonard Decl) at pp. 6-7 (¶ 15).

[47] *See* Ex. A at Request Nos. 72, 73, and 74 (and transcript citations listed therein).

[48] *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 324:17-23.

[49] *See supra*, Part III.B.2.

[50] Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 49:23.

[51] *See, e.g. United States v. Nixon*, 418 U.S. 683 (1974) (requiring production of evidence in President's possession relevant to criminal investigation); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997) (requiring production of evidence by White House in connection with criminal matter); *United States v. Burr*, 25 F. Cas. p. 30 (No. 14,692d) (C.C. Va. 1807).

██████ Given the Government's unequivocal position that this information -- since it is contained in the Document -- is NDI,[53] and that it will use this information to prove the NDI element at trial,[54] it necessarily follows that the Defendant is entitled to discovery on these points.[55] As a result, Ms. Winner issued numerous discovery requests which ask for information

██████ the defense has become aware of relating to these efforts by those actors.[56]

The aforementioned document requests easily satisfy the test that they be "relevant and helpful" to the defendant. In fact, many of the requests seek *Brady* evidence, i.e. information to undermine the Government's contention that the information contained in the Document (on every page, no less) – ██████

– constitutes "national defense information" (information which may raise a reasonable doubt in a juror's mind about guilt or innocence). For example, these requests (including Request Nos. 12, 21, 23, 24, 31, 33, 35, and 70) seek records and information regarding the disclosure of identical or similar information as that contained within the Document at issue to various individuals or entities.[57]

---

[52] *See* Ex. C & Ex. D.
[53] *See supra,* Part IV.C.
[54] *See* Doc. 182.
[55] *See supra,* Part III.B.
[56] *See* Ex.. A (Request Nos. 12, 13, 21, 23, 24, 26, 28, 29, 31, 33, 35, 40, 46, 63, 70, 84, and 96).
[57] *See* Ex. A (Request Nos. 12, 21, 23, 24, 31, 33, 35, 70).

██████████████████████████████████████████

████████████████████ -- would reflect the Government's decision that such

information was _not_ the secret the Government now says it is.[58] In other words, the disclosure of

this information to individuals or groups with lower than a Top Secret clearances would reflect a

judgment by the Government that the disclosure of such information need not be "closely held"

or would not cause the grave harm it now claims Ms. Winner's alleged disclosure caused -- two

prongs of the required "national defense information" element.[59] At a minimum, *because the

determination of whether the document constitutes NDI is a jury issue*,[60] the Defendant is entitled

to discovery on this point -- particularly because the Government has, through its expansive view

of NDI, made this information relevant.[61]

Instead of granting these straightforward requests, with a few exceptions, the magistrate

judge decided the Defendant was only entitled to *unclassified* information concerning the most

*specific* portions of the Document, which is also "non-FOUO" information.[62] The rationale for

these rulings appears to be the magistrate judge's view that the Document only encompasses

narrow facts and/or that the Government has limited its view of NDI – two positions that are

simply wrong, as set forth above and as set forth in the attached declaration.[63] Tellingly, there

were occasions when the magistrate judge clearly understood that such rulings would be

handicapping the defense, and contemplated requiring the production of broader information to

be utilized by the Defendant – only to be pushed back when the Government objected with

---

[58] *See* Ex. B (Leonard Decl.) at pp 7-10 (¶¶ 16-20).
[59] *See id.*
[60] Doc. 112 at p. 5 (citing *Gorin*, 312 U.S. at 31-32).
[61] *See supra*, Part IV.C.
[62] *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 207:25-208:208:9 (permitting only unclassified, non-FOUO, documents).
[63] *See supra*, Part IV.C; Ex. B (Leonard Decl.) at p. 4 (¶ 10).

unfounded concerns.[64]  Indeed, in at least one occasion, the magistrate judge expressly *checked with* the Government to ensure it had no objections to his changing of rulings regarding the requested discovery.[65]

The magistrate judge's rulings regarding these requests have severely handicapped Ms. Winner's ability to not only prepare for trial, but even assess the strength of the government's case.  In fact, the defense's engaged expert cannot fully conduct his analysis in determining whether the information at issue constitutes NDI without such records.[66]  For those reasons, the magistrate judge's rulings were clearly erroneous, contrary to law, and should be reversed.

3.   **Category No. 3: Records Reflecting Analyses of the Information Contained In the Document and/or Analyses Relating to the Disclosure of the Information Contained in the Document At Issue (Request Nos. 8, 9, 10, 17, 18, 20, 22, 25, 27, 30, 32, 34, 36, 39, 96)**

Likewise, the above-listed requests seek analytical products relating to the information contained in the Document and/or decisions to disclose the information contained within the Document.  This information is similarly "relevant and helpful" to the defense because it would reflect the Government's analysis as to whether similar or identical information as that contained in the Document – ███████████████████████████████████████████ ████ - needed to be "closely held" or would cause damage if disclosed.[67]  Indeed, given the requirements of the Espionage Act, it is harder to fathom records *more relevant* than the government's own analysis of how sensitive each piece of information contained in the

---

[64] *Compare* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 257:16-19 (regarding Request No. 28 [Request 3(g) of Defendant's Second Set of Discovery], magistrate judge ordering the production of documents regarding disclosure of information that "concern [] ███████████████████████████ *with* 259:18-260:6 (magistrate judge changing his ruling in the face of governmental objections on the same document request, ordering the production of the same information but limited to the activity described in the report).

[65] *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 260:3-6 ("THE COURT: And is that acceptable to the government? MR. AARON: It is, Your Honor…").

[66] *See* Ex. B (Leonard Decl.) at pp. 7-10 (¶¶ 16-20).

[67] *See* Ex. B (Leonard Decl.) at pp. 7-10 (¶¶ 16-20).

Document is. If, for example, there are statements or analytical products produced by government agents within their official duties indicating that the disclosure was not harmful, those kinds of statements would constitute *Brady* evidence because they would undermine an essential element of the charge and could alter a jury's view of guilt or innocence.[68]

As an illustration, given public reporting, the defense is aware that similar or identical information as that contained in the Document *was* shared with individuals and/or entities that do not have a Top Secret clearance.[69] Before the government's *intentional* decision to disclose the information reflected in these public reports, there almost certainly was *some* internal analysis (and accompanying communications, drafts, working papers, etc.) about whether the disclosure could be made; what portions of the information could not be disclosed due to sensitivity concerns; how the information at issue could be disclosed; and whether the disclosure of that information would result in harm to the national security.

The magistrate judge's ruling, however, not only precludes the production of such analyses, but *even whether the government must determine and acknowledge whether such contrary evidence to their case exists.* Different than other criminal cases, the Defendant here must rely on the Government and the Court to discovery whether such information exists, as the Defendant has no ability to hire an investigator or visit ▮▮▮▮ and conduct pre-trial interviews of witnesses. The sole source of much of this critical evidence is the government; and the Defendant must rely on the Court to require it to produce relevant information – including analyses discussing the sensitivity of some of the information contained in the Document – in an effort to protect her due process rights.

---

[68] *See id.* at pp. 8-9 (¶ 19). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26

Indeed, a glaring example illustrates the point: imagine, for instance, an internal governmental analysis reflecting that



Such a document would unquestionably be *Brady* evidence (because it would demonstrate that some of the same information contained in the document at issue was *not* NDI) and would certainly clear the low bar of being "relevant and helpful" to the Defendant.[71] Moreover, these analyses would be relevant and helpful irrespective of the classification of those documents; in other words,

would not cause damage would itself, in spite of the analysis itself being classified, be "relevant and helpful."[72]

The magistrate judge, once again, denied these relevant documents, requiring the production of only *unclassified* analyses, that relate to the *specific* incident described in the Document

---

[70] *See* Ex. G. On this point, the magistrate judge disallowed some of this evidence apparently in part because it implies that "our government can't discuss important national affairs based on sensitive information it accesses. I don't buy that." Tr. of Proceedings, Nov. 30-Dec. 1, 2017 at 48:2-4. However, that is not what the defense was arguing at all; no one is suggesting the Government cannot engage in high-level foreign policy with sensitive information. However, if the Government is later going to criminally charge an individual with disclosing some of that same information – which may have been transmitted in this case to our adversary – discovery on that transmission would be undoubtedly relevant to establishing that the information is *not* NDI (given its disclosure).

[71] *See* Ex. B (Leonard Decl. at pp. 8-9 (¶ 19).

[72] *See id.*

27

███████████████████████████████  Those rulings, for the reasons set

forth above, are in error and must be reversed.

4. 

Given these revelations, the Defendant understandably sought additional discovery

relating to these ██████████ including but not limited ██████████

---

[73] *See* Ex. A (Magistrate Judge's Rulings for Request Nos. 8, 9, 10, 17, 18, 20, 22, 25, 27, 30, 32, 34, 36, 39, 96 & Transcript citations therein).
[74] Doc. 120 (Classified Detention Hearing transcript).
[75] *See* Government's Oct. 5, 2017 Response to Defendant's August 29, 2017 Discovery Requests at p. 4 (attached as Exhibit E to Doc. 162).



███████████████████████████████████████ in response to the publication of the

document (Request Nos. 4, 47, 56, 57, 77, 78, 79, 80-83). To his credit, Magistrate Judge Epps,

at the hearing on November 30, 2017 and December 1, 2017, granted many of the requests

associated with this category of records.[76] The magistrate judge rightly concluded that, the

Defendant was entitled to test these allegations by receiving documents underlying or supporting

█████████████[77] Shockingly, the Government advised both the Court and the parties that

*no documents, records, or anything – at all –* support this ███████████[78] If true,[79] the

Defendant includes these requests so that the Court may issue a written order containing the

Government's concession that its ███████████ is not buttressed by anything in writing. If,

however, there are responsive documents to these requests that the Government has been able to

locate then, pursuant to Magistrate Judge Epps's rulings, the Government should be required to

produce these records.[80]

### 5.   Category No. 5: Documents Relating to the Government 3 NDI Points (Request Nos. 102-105)

As noted above, at the hearing on November 30 and December 1, at the magistrate

judge's urging, the Government supplied the defense with three additional information points,

---

[76] *See* Ex. A (Magistrate Judge's Rulings at Request Nos. 4, 47, 56, 57, 77, 78, 79, 80-83). Likewise, as set forth in the attached declaration, these records of ███████████ are relevant to the analysis of whether the information constitutes NDI. *See* Ex. B (Leonard Decl.) at pp. 10-11 (¶¶ 21-23).

[77] Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 155:18-25, 156:11-22, 284:6-8.

[78] Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 116:6-14; 152:5-11; 156:11-22; 157:12-158:12.

[79] At the hearing, the Government advised that it would go back and check to see if additional information exists associated with ███████████. Tr. of Proceedings, Nov. 30-Dec. 1, 2017 at 158:13-16. As of the date of the filing of this Appeal, the Defendant has yet to receive any additional information.

[80] Furthermore, if ███████████ was prepared with the assistance of counsel, then the Government, consistent with federal law, should be required to provide a privilege log reflecting the status of any responsive documents over which it is asserting any privilege.

which it apparently contends are the most sensitive portions of the document at issue. These three points are, of course, supplied in addition to its stated position that the entirety of the document is NDI.[81] Upon receiving these points, which are extremely conclusory in nature, the defense requested discovery regarding them – only to be denied, with a few exceptions, by the magistrate judge.[82]

These requested records, which seek additional information supporting the Government's 3 NDI points, are certainly "relevant and helpful" to the defense.[83] For example, while the Government contends that the disclosure of the document at issue ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮[84] Thus, Request No. 102 seeks the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Putting

aside the Government's injection of this point into this case (which, by definition, makes it relevant and opens the door to discovery on it), the requested information is "relevant and helpful" to the defense because if that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Likewise, Request No. 104 is geared towards the Government's third NDI point, in which it contends that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[81] See Government's Notice Pursuant to Section 10 of CIPA, filed Dec. 14, 2017, at pp. 2-3.

[82] See Ex. A (Request Nos. 102-105).

[83] See Ex. B (Leonard Decl.) at p. 11 (¶¶ 24-25).

[84] See id.

[85] See Ex. A (Request No. 102).

[86] See Ex. B (Leonard Decl.) at p. 11 (¶ 24).



Again, this request seeks records that would allow the Defendant to determine whether this "information" is not NDI.[90]

Denying this discovery, as the magistrate judge did, effectively cuts off very plausible defenses Ms. Winner is entitled to assert before the jury.

### 6.   Category No. 6: Documents the Defendant Saw and/or Became Aware of During the Pertinent Time Period (Request Nos. 1, 58, 99)

Another set of requests seek information Ms. Winner saw and/or became aware of involving some of the same information contained within the Document during the same time period. As with any case involving a "willful" *mens rea* standard, such information is "relevant and helpful" because it would reflect the Defendant's state of mind at the time of the alleged offense.[91]

For example, perhaps the most obvious example of the Government's deficient discovery is its response to Request No. 58, which seeks information the Defendant viewed on ▮▮▮▮▮▮

▮▮▮ (the database the Government contends the Defendant accessed to unlawfully obtain

---

[87] *See* Ex. A (Request No. 104).

[88] *See id.*

[89] *See* Ex. B (Leonard Decl.) at p. 11 (¶ 25).

[90] *See id.*

[91] Doc. Nos. 112, 132.

possession of the document).[92] To begin with, the Government has *already supplied* certain *unreadable* information concerning what Ms. Winner saw on ▮▮▮▮▮; yet, despite the Defendant's objections that it cannot understand format. The magistrate judge only requires the Government to un-redact ▮▮▮ specifically pertaining to the Document at issue – and nothing else.[93] As an initial matter, the Defendant is entitled to the unredacted material under the Rule of Completeness.[94]

More to the point, however, the logs reflecting what the Defendant specifically viewed on ▮▮▮▮▮ are relevant and helpful because it would reflect her state of mind as to the particular pieces of information contained in the document at the time of the alleged offense.[95] According to the Government, it was on this system that Ms. Winner located and printed the document. This system, from information the Government has provided, was available to nearly ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ Given the prevalence of this system and the widespread nature of its distribution, it is entirely plausible that a ▮▮▮▮ with similar information as that contained in the Document could have been viewed by the Defendant in ▮▮▮▮▮▮▮ which would, in her mind, have an impact on how "closely held" the information in the document was being held by the Government (and what harm, if any, would result from its disclosure). Without production of the information the Defendant saw, however, the defense cannot even determine whether this is a viable defense (let alone gather appropriate evidence to submit it to the jury).

---

[92] *See* Ex. A (Request No. 58).
[93] *See* Ex. A (Request No. 58).
[94] *See* FED. R. EVID. 106 (Rule of Completeness).
[95] Significantly, this rationale applies to many of the document requests in Category 1, as well. In other words,

32

Given the "willfulness" standard the Government must prove, documents Ms. Winner specifically saw – information readily available to the Government – is undoubtedly relevant and helpful to her defense.[96]

Likewise, it is entirely plausible (indeed, given the subject matter of the Document, likely) that the Defendant saw documents that contain information ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and then saw the very same information on the evening news – indicating, to her, that some of that information was already in the public domain and therefore, as she told the FBI agent, the disclosure of the information in the Document was simply a "drop in the bucket."[97]  Being able to pull the public reporting, and connect that public reporting to documents held by our Government and potentially seen by the Defendant, can connect the dots for the jury that Ms. Winner's reasonably-held belief at the time of the disclosure was that the information contained in the Document (despite its classification) was not NDI.[98]

The magistrate judge inexplicably determined, in a conclusory fashion, that many of these requests were not material to this case.[99]  For the reasons set forth above, the rulings addressing the records requested that bear on the Defendant's *mens rea* are in error and must be reversed.

---

[96] The same argument holds true for Request Nos. 1 and 99. For example, Request No. 1 ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ during Ms. Winner's tenure at Pluribus.  The defense knows that there are articles that Ms. Winner may not have specifically accessed but nonetheless became aware of.  Thus, irrespective of whether the Defendant expressly can show, with exactitude, that Ms. Winner specifically accessed particular articles – an impossible burden, especially for a detained defendant, that apparently the magistrate judge required (Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 90:17-18) -- information that was available to her because of her security clearance and touches on the topics contained in the document that she likely became aware of during her tenure at Pluribus is relevant and helpful to determining Ms. Winner's state of mind at the time of the alleged offense.
[97] Doc. 189-2 (Redacted FBI Interrogation) at USAO-08173 ("I just figured that… this report was just going to be like a-one drop in the bucket.").
[98] *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 91:17-94:23.
[99] *See* Ex. A (Magistrate Judge's Rulings for Request Nos. 1, 58, 99).

33

### 7. Category No. 7: Records Regarding The Government's Position That the Defendant Was The Individual Who Leaked The Document (Request Nos. 42, 50, 51, 52, 53, 59, 60, 69)

Other documents requested by the Defendant include governmental records supporting its view that she was the individual who actually disclosed the Document at issue. While the magistrate judge granted some of these requests, he denied others. For example, Request No. 53 seeks information on other individual who accessed the very same Document -- in a different format – from other governmental databases.[100]  Likewise, Request No. 60 seeks information on other governmental employees who printed similar documents as that at issue.[101]  Such records may be used by the Defendant to identify the true culprit. Nonetheless, the magistrate judge denied these records, simply finding, in large measure, they were not relevant or material.[102] Again, it is axiomatic that records demonstrating another individual may be the perpetrator would satisfy the low threshold here.

### 8. Category No. 8: Records Relating to the Security of the Document (Request Nos. 2, 3, 14, 44, 45, 66, 75, 76)

One element of this offense the Government must prove, as noted above and as both parties agree, is that the information contained in the document was "closely held" [Doc. 112]. While the Government will no doubt rely on the document's classification as "TS // SCI" as evidence that it was "closely held," as previously briefed before the Court, classification is not *dispositive* to this determination [Doc. 112]. If the Defendant obtains records reflecting that the Government did not undertake steps to hold the information close, she may use such evidence before the jury in arguing that the Government cannot satisfy the NDI element that the information be "closely held." In this vein, the defense has propounded numerous document

---

[100] *See* Ex. A (Request No. 52).

[101] *See id.* (Request No. 60).

[102] *See* Ex. A (Magistrate Judge's Rulings for Requests 42, 50, 51, 52, 53, 59, 60, 69).

requests, including the above-listed requests, seeking information on how closely the Government held the document and the information contained in the document.[103]

For example, in Request No. 3, the Defendant sought information concerning *how* the document was kept [         ][         ][104] If, for example, this document was kept with many other Documents that were unclassified or classified at a level lower than "Top Secret," such evidence would be probative of the Government's treatment of the information contained in the document. In other words, the less secretive the Government treated the information at issue, the less likely it could prove that it was "closely held," a required element of the offense. Once again, in a conclusory fashion, the magistrate judge denied this discovery, stating that it was not relevant to this case.[105] Such order was in error; this discovery would support the Defendant's view that the document at issue was not "closely held" and therefore, negate this element of the offense. The same rationale holds true for the other requests in this category – which are all geared toward determining whether the Document was "closely held," an element of the offense. The magistrate judge's rulings should be reversed.

### 9. Category No. 9: Documents Regarding the Government's 404(b) Notice (Request Nos. 85-88, 90-95, 97-98)

On November 6, 2017, the Government served the defense with an Amended Notice Pursuant to Rule 404(b) of the Federal Rules of Evidence, which listed a laundry-list of items – not charged as crimes – that the Government seeks to introduce to, among other things, smear the Defendant (along with her political and personal beliefs) before the jury. The Defendant has moved to exclude each piece of noticed information [Doc. 166] and the Government has opposed the exclusion of these items [Doc. 188]. Assuming the Court permits these items of evidence

---

[103] *See* Ex. A (Request Nos. 2, 3, 14, 44, 45, 66, 75, 76).
[104] *See id.* (Request No. 3).
[105] *See id.*

35

before the jury (despite the Defendant's grounds that they are inadmissible, as set forth in her motion *in limine*), the defense has propounded several discovery requests seeking to address these allegations, and to be able to either contest them or explain them through extenuation or mitigation.[106]   Given the Government's request to inject these items of evidence into this case, the discovery sought is certainly relevant and helpful to the defense so as to allow the jury to understand the full context of them.

As an illustration, throughout this case, the Government has made much of the fact that this Defendant, with her "years of training" and "expertise," obtained a so-called "covert communications package" (including utilizing a TOR browser and creating an "anonymous" email address on slippery.email) in or around her time as an NSA contractor, so that she may "operate anonymously online."[107]   If permitted at trial, an accompanying piece of relevant evidence would be how many *other* NSA employees or contractors have searched for such tools, so as to place these activities in the proper context – as opposed to the Government's highly prejudicial spin. Thus, Request No. 87 seeks these records.[108]   These records are certainly "relevant and helpful" to the defense because they place the Government's spin on the in the proper context for the jury. For example, if thousands of NSA employees or contractors have searched for similar "covert communications packages," such evidence would be helpful to the Defendant to show that the mere utilization of an privacy-enhancing web browser or email does not lead to the conclusion the Government draws from it – that such persons are leakers of classified information.

---

[106] *See* Ex. A (Request Nos. 85-88, 90-95, 97-98).
[107] Doc. 188 at p. 15.
[108] *See* Ex. A (Request No. 87).

36

Likewise, the Government seeks to admit records relating to what clearly was an innocuous mistake by the Defendant months before the alleged leak, in February 2017, when Ms. Winner purportedly brought an unclassified document to an NSA cafeteria (a violation which the Defendant apparently reported herself).[109] The Government asserts that this accident of "mishandling" classified information "provides rare direct evidence of *mens rea*."[110] If so probative, then so would, too, other records of other NSA employees or contractors who may have mishandled classified information, so as to place Ms. Winner's singular accident in context. Request No. 98 seeks such records, which would be "relevant and helpful" to the Defendant because, again, it would place this singular incident it the proper context.[111] If, for example, the majority of NSA employees or contractors have had similar, innocuous security incidents in their past, that evidence would be helpful to show a jury that the Government's deductions – once a "mishandler" always a "mishandler" – are inaccurate. [112]

Magistrate Judge Epps denied these two requests, and the other requests relating to the Government's 404(b) notice, in a conclusory fashion, simply stating that they were not relevant.[113] While the Defendant agrees, in the first instance, that the pieces of information the Government seeks to use through its 404(b) Notice are not relevant, if the Court permits them at trial then, conversely, it renders Ms. Winner's requests – which seek to place these pieces of information in the proper context for the jury – relevant and helpful to her defense, and therefore, discoverable.

---

[109] Doc. 188 at pp. 17-18.

[110] Doc. 188 at p. 17.

[111] *See* Ex. A (Request No. 98).

[112] Moreover, the Government's hyperbole that the "cafeteria" incident is direct evidence of *mens rea*, is belied by the fact that Ms. Winner apparently reported the violation herself in what was clearly a mistake of simple negligence – not intentional wrongdoing, as the Government is required to prove in this case. *See, e.g.* Doc. 112.

[113] *See* Ex. A (Request Nos. 85-88, 90-95, 97-98).

37

**10.    Category No. 10: Documents Regarding** 

In addition to requesting specific documents about

The documents in this category are relevant and helpful to the defense for similar reasons as Categories 2 and 3, above.[115]  For instance, if the Government has in its possession documents reflecting activities by the same actors, using the same techniques, during the same time period, that are classified at less than "Top Secret" levels, (even if such documents are not specific to the disclosure of this information [like Category 2] or any analyses of the disclosure of this information [like Category 3]), those documents would likewise be relevant to the NDI element of the offense.[116]  In other words,

would demonstrate to the jury that the information – which is similar or identical to that contained in the document allegedly leaked – was not "closely held" or its disclosure would not cause the                                                                    [17]

---

[114] *See* Ex. A (Request Nos. 5-7, 11, 16, 28, 37, 38, 41, 61).

[115] *See* Ex. B (Leonard Decl.) at pp. 7-10 (¶¶ 16-20).

[116] *See id.*

[117] Additionally, to the extent the Defendant saw or was made aware of such documents – as she has advised she was – that would reflect she did not act with the requisite *mens rea* and would corroborate her statement to the FBI agent

38

As with the documents requested in Categories 2 and 3, the magistrate judge denied these discovery requests, except to permit the discovery of *unclassified* documents, which are "non-FOUO," *specific* to the most *particular* pieces of information as that contained in the document at issue.[118] For the reasons set forth above, this narrow reading of the document – particularly in light of the Government's broad positions regarding what is NDI in this case[119] – and accompanying rulings on these discovery requests, was in error and should be reversed. As demonstrated by the example above, these records would allow the Defendant to show that the Government cannot meet its burden on the NDI element.

### 11. Category 11: Records Relating to the Document, its Author, and its Classified Nature (Request Nos. 15, 19, 48, 62)

The Defendant also propounded a handful of requests specifically directed to the document itself, its author, and determinations made by the government regarding the sensitivity of the information contained therein.[120] These requests satisfy the low bar of being "relevant and helpful" to the Defendant because they reflect, contemporaneous with the document's creation, the view of the Government as to the sensitivity of the information – evidence pertinent to the NDI element of the offense.[121] For example, if the author of the document has a contemporaneous email whereby he/she documents that certain portions of the document are not as sensitive as other portions of the document, such evidence would be directly relevant to the Defendant's view that (at least some of) the information contained in the document is not NDI.[122]

---

during her interrogation that she believed the information in the document was simply a "drop in the bucket" or had already been "compromised." Doc. 189-2 (Redacted FBI Interrogation) at USAO-08172-73.

[118] *See* Ex. A (Request Nos. 5-7, 11, 16, 28, 37, 38, 41, 61).

[119] *See supra*, Part IV.C.

[120] *See* Ex. A (Request Nos. 15, 19, 48, 62).

[121] *See* Ex. B (Leonard Decl.) at pp. 12-13 (¶¶ 26-28).

[122] *See id.*

39

Likewise, if there are memoranda discussing why certain portions of the document are classified in a particular way, such information is pertinent for the same reason.[123]

Separately, failing to require the production of these records raise Constitutional concerns. Among other things, obtaining information so that the Defendant may confront the classifier – who is, after all, making a testimonial assertion that will be used against her – raises Confrontation Clause concerns.[124]   Likewise, akin to a confidential information, the identity of the classifier, and associated information involving his/her decisions, raise Due Process concerns requiring their disclosure.[125]   Magistrate Judge Epps simply denied these requests as not being "relevant" despite their being directed to an element of the offense.[126]   For the reasons set forth above, those rulings were in error and should be reversed.

## V.   Conclusion

For the reasons articulated above, the Defendant requests that this Court reverse the magistrate judge's order and rulings on the specific, above-listed document requests (and those listed in Exhibit A) that are the subject of her Motion to Compel. To further articulate the bases for each request, the Defendant also requests a hearing on this appeal.

---

[123] *See id.*

[124] *See, e.g. Bullcoming v. New Mexico,* 564 U.S. 647 (2011).

[125] *See, e.g. Roviaro,* 353 U.S. 53; *United States v. Rutherford,* 175 F.3d 899 (11th Cir. 1999)

[126] *See* Ex. A (Request Nos. 15, 19, 48, 62).

Respectfully submitted,

*/s/ Joe D. Whitley*

Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA 30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
(504) 566-5200
MChester@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Thomas H. Barnard (Az. Bar No. 02098)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD 21202
(410) 685-1120
TBarnard@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT**
**REALITY LEIGH WINNER**

# EXHIBIT A

## DEFENDANT'S DOCUMENT REQUESTS & MAGISTRATE JUDGE'S RULINGS

| | | First Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 1. | First Set of Discovery Requests, Request No. 1(d) | | 6 (Documents the Defendant either saw or became aware of) | Granted in part and Denied in part. Granted only as to ███ ███ during the time period in question that concern ███ ███ denied as to the remainder as not being relevant or helpful (Tr. at 130:25-131:4; 131:8-21; 133:12-20; 207:2-6) |

[2] Except where otherwise expressly limited, the below requests contemplate and encompass documents, within the broad scope of Fed. R. Crim. P. 16 in the possession, custody, or control of any branch of the United States Federal Government. The Defendant understands that it is the Government's position that the following agencies are outside the scope of its discovery obligations: CIA, DHS, DoD (other than ███ and USAF), National Security Council, NARA, ODNI, and the White House Office. Without agreeing to this limitation, in the interest of time, the Defendant will be issuing Rule 17 subpoenas to those government entities for which the Government has identified as falling outside of the scope of its discovery obligations.

| First Discovery Request | | | | |
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| 2. | First Set of Discovery Requests, Request No. 1(e) | | 8 (Records regarding the security of the Document) | Granted in part and Denied in part. Granted only as to the total number of users with access to ▆ Denied in all other respects as not being relevant or helpful. (Tr. at 147:12-19; 207:7-13) |
| 3. | First Set of Discovery Requests, Request No. 1(f) | | 8 (Records regarding the security of the document) | Denied. (Tr. at 149:17-19; 207:14-16) |

---

[4] The capitalized term "Document," as used herein refers to the "intelligence reporting" described in the Superseding Indictment.

| | | First Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 4. | First Set of Discovery Requests, Request No. 2(a) | | 4 | Granted in part and Denied in part. Granted only as to providing documents ▮▮▮ Denied in all other respects. (Tr. at 207:17-25) |

4

| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| First Discovery Request | | | | |
| 5. | First Set of Discovery Requests, Request No. 2(b) | ██████████████████ | 10 ████████ | Granted in part and Denied in part. Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 208:25-209:9) |

| | | First Discovery Request | | |
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| 6. | First Set of Discovery Requests, Request No. 2(c) | | 10 | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects.<br><br>(Tr. at 208:25-209:9) |

| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| | | First Discovery Request | | |
| 7. | First Set of Discovery Requests, Request No. 2(d) | | 10 | Granted in part and Denied in part. Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 208:25-209:9) |

| | | First Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 8. | First Set of Discovery Requests, Request No. 3(c) | | 3 | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption. Denied in all other respects.<br><br>(Tr. at 232:4-9) |

| | | First Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 9. | First Set of Discovery Requests, Request No. 3(d) | [redacted] | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of documents regarding declassification or potential declassification of the Document at issue. Denied in all other respects. (Tr. at 233:8-12) |
| 10. | First Set of Discovery Requests, Request No. 3(e) | [redacted] | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of documents regarding declassification or potential declassification of the Document at issue. Denied in all other respects. (Tr. at 233:19-20) |

9

| | | First Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 11. | First Set of Discovery Requests, Request No. 3(f) | ███████ | 10 | Denied.<br><br>(Tr. at 234:4-5) |
| 12. | First Set of Discovery Requests, Request No. 3(h) | ███████ | 2<br>(Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of documents ███████<br><br>Denied in all other respects.<br><br>(Tr. at 235:11-17) |

10

| First Discovery Request | | | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 13. | First Set of Discovery Requests, Request No. 7 | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of documents reflecting the disclosure of information contained in the Document at issue in an unclassified, non-FOUO setting. Denied in all other respects. (Tr. at 235:24-236:7; 237:22-24) |

| | | First Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 14. | First Set of Discovery Requests, Request No. 8 | | 8 (Records regarding the security of the Document) | Denied as moot. Government has provided the number of Executive Branch employees with access to Document and has stated it will be providing the identity of the Executive Branch employees who accessed the Document. (Tr. at 237:25-240:6) |
| 15. | First Set of Discovery Requests, Request No. 9 | | 11 (Records relating to the document, its author, and its classified nature) | Denied. (Tr. at 241:5-8) |

[5] The Defendant recognizes that the Government has responded to the latter part of this request and informed the Defendant that

| | | First Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 16. | First Set of Discovery Requests, Request No. 11(a) | | 10 | Granted in part and Denied in part. Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 241:15-18) |

| First Discovery Request | | | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 17. | First Set of Discovery Requests, Request No. 11(b) | [redacted] | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part.  Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects.  (Tr. at 242:2-4) |

14

| | | First Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 18. | First Set of Discovery Requests, Request No. 3(a) | [redacted] | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 242:10-11) |

| Request Number | Specific Request // Discovery Set | First Discovery Request | | |
| --- | --- | --- | --- | --- |
| | | Description | Category | Magistrate Judge's Ruling |
| 19. | First Set of Discovery Requests, Request No. 3(g) | | 11 (Records relating to the document, its author, and its classified nature) | Granted in part and Denied in part. Granted to the extent it calls for the production of documents regarding the classification of the Document. Denied in all other respects. (Tr. 243:7-244:5) |

| Second Discovery Request | | | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 20. | Second Set of Discovery Requests, Request No. 2 | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for (a) documents relating to the Government's 3 NDI points; and (b) the production of unclassified, non-FOUO reports published by the Government for public consumption regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 244:22-245:3) |
| 21. | Second Set of Discovery Requests, Request 3(a) | | 2 (Records relating to the disclosure of information contained within the document) | Granted. (Tr. at 245:12-22) |

---

[6] Communications as used in this discovery request, and any other discovery requests, includes but is not limited to Lync conversations.

[7] The capitalized term "Document," as used herein refers to the "intelligence reporting" described in the Superseding Indictment.

17

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 22. | Second Set of Discovery Requests, Request No. 3(b) | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents Denied in all other respects. (Tr. at 246:11-16) |

18

| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| | | **Second Discovery Request** | | |
| 23. | Second Set of Discovery Requests, Request No. 3(b)(1) | | 2<br>(Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of unclassified, non-FOUO documents ▮<br><br>Denied in all other respects.<br><br>(Tr. at 247:12-19) |
| 24. | Second Set of Discovery Requests, Request No. 3(c) | | 2<br>(Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of unclassified, non-FOUO documents ▮<br><br>Denied in all other respects.<br><br>(Tr. at 250:3-8) |

19

| | | Second Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 25. | Second Set of Discovery Requests, Request No. 3(d) | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of unclassified, non-FOUO documents<br><br>Denied in all other respects.<br><br>(Tr. at 250:14-18) |
| 26. | Second Set of Discovery Requests, Request No. 3(e) | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of unclassified, non-FOUO documents<br><br>Denied in all other respects.<br><br>(Tr. at 251:1-11) |

20

| Second Discovery Request | | | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 27. | Second Set of Discovery Requests, Request No. 3(f) |  | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of unclassified, non-FOUO documents published for public consumption<br><br>(Tr. at 251:12-253:24) |

| | | Second Discovery Request | | | |
|---|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** | |
| 28. | Second Set of Discovery Requests, Request No. 3(g) | | 10 | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents published for public consumption | |
| | | | 2 (Records relating to the disclosure of information contained within the document) | | |
| | | | | (Tr. at 254:6-7, 257:16-19, 259:3-17, 259:18-260:6) | |

22

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 29. | Second Set of Discovery Requests, Request No. 3(h) | ███ | 2<br><br>(Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of unclassified, non-FOUO reports ███<br><br>Denied in all other respects.<br><br>(Tr. at 262:1-9, 263:16-20) |

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 30. | Second Set of Discovery Requests, Request No. 3(h)(1) | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of documents developed as a result of the ██████ Denied in all other respects. (Tr. at 263:2-8) |
| 31. | Second Set of Discovery Requests, Request No. 3(i) | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects. (Tr. 264:9-11) |

24

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 32. | Second Set of Discovery Requests, Request No. 3(i)(1) | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 264:18-20) |
| 33. | Second Set of Discovery Requests, Request No. 3(j) | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 265:8-10) |

| | Second Discovery Request | | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 34. | Second Set of Discovery Requests, Request 3(j)(1) | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part.

Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects.

(Tr. at 265:15-16) |
| 35. | Second Set of Discovery Requests, Request No. 3(k) | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.

Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects.

(Tr. at 266:1-3) |

26

| | | Second Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 36. | Second Set of Discovery Requests, Request No. 3(k)(1) | | 3 (Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 266:12-13) |
| 37. | Second Set of Discovery Requests, Request No. 3(l) | | 10 (Documents regarding | Granted in part and Denied in part. Granted only to the extent it calls for the production of unclassified, non-FOUO documents regarding the specific incident described in the Document. Denied in all other respects. (Tr. at 266:21-23) |

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 38. | Second Set of Discovery Requests, Request No. 3(m) | | 10 | Denied.<br><br>(Tr. at 267:5-6) |
| 39. | Second Set of Discovery Requests, Request No. 3(m)(1) | | 3<br>(Analyses of information contained in the document and/or analyses of disclosure of information contained in the document) | Denied.<br><br>(Tr. at 267:13-14) |

28

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 40. | Second Set of Discovery Requests, Request No. 3(n) | ██████ | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part. Granted only to the extent it concerns pre-leak disclosures that are unclassified, non-FOUO, that concern the specific incident described in the Document. Denied in all other respects. (Tr. at 268:12-19) |

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 41. | Second Set of Discovery Requests, Request No. 3(o) | | 10 | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of documents regarding<br><br>specifically contained in the Document.<br><br>(Tr. at 269:17-22) |

30

| | | Second Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 42. | Second Set of Discovery Requests, n/a | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Denied as moot. (Tr. at 271:19-20) |

31

| Third Discovery Request | | | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 43. | Third Set of Discovery Requests, Request No. 1 | Generally, for each response that indicates "Your request calls for the production of material to which the defense is not entitled," please respond or provide documents sufficient to identify the portion or portions of the request that the government specifically objects to or believes the Defendant is not entitled. Additionally, please clarify what is meant by the phrase "not entitled" (i.e., precluded for security reasons; a specific federal rule of criminal procedure; privilege, other statute; or an aspect of CIPA, etc.). | N/A | Withdrawn by the defense. (Tr. at 275:7-19) |
| 44. | Third Set of Discovery Requests, Request No. 2(b)(iii) | The total number of authorized users of the following on May 5, 2017: <br><br> 1. TESTFLIGHT; <br><br> 2. ~~Library of National Intelligence;~~ <br><br> 3. ~~NEXT GENERATION TRIDENT~~; and <br><br> 4. Discovery. | 8 (Records regarding the security of the document) | (Appears to have been withdrawn) |

32

| | | Third Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 45. | Third Set of Discovery Requests, Request No. 2(b)(iv) | | 8 (Records regarding the security of the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of the ▮▮▮ on the date in question. Denied in all other respects. (Tr. at 277:11-16) |

[9] The Government's response to "A.1.b" as referenced in this request concerns the total number of people who had access to ▮▮▮ on May 5, 2017, the day the document was purportedly printed. *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 275:21-276:8.

33

| | | Third Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 46. | Third Set of Discovery Requests, Request No. 2(c) | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of (a) documents involving (Tr. at 279:7-11, 281:3-6) |

[10] The Government's response at "A.1.c" as listed in this request addresses post-leak requests to utilize the information in the Document at issue. *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 277:17-278:5.

| 47. | Third Set of Discovery Requests, Request 2(d) | | 4 | | Granted in part and Denied in part.<br><br>Granted to the extent it calls for the production of (a) ▮<br><br><br><br><br><br><br><br><br>(Tr. at 284:22-285:5) |

| | | Third Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 48. | Third Set of Discovery Requests, Request 2(e) | | 11 | Denied. (Tr. at 286:13-14) |
| 49. | Third Set of Discovery Requests, Request 2(f) | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | (Appears to have been withdrawn) |
| 50. | Third Set of Discovery Requests, Request 2(g) | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Granted as to documents within the possession, custody, or control of the prosecution team. (Tr. at 288:5-290:10) |

---

[11] The Government's response at "A.3.b" as noted in this request concerns the Government's ▮▮▮▮ It is contained in Exhibit E to Doc. 162 (Joint Status Report).

| Third Discovery Request | | | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 51. | Third Set of Discovery Requests, Request No. 3(a) – (i) | The Defendant requests unredacted copies of the following classified documents produced in discovery:<br><br>a. DOJ-CLASS-00012 through DOJ-CLASS-00028;<br><br>b. DOJ-CLASS-00029 through DOJ-CLASS-00038;<br><br>c. DOJ-CLASS-00039;<br><br>d. DOJ-CLASS-00042;<br><br>e. DOJ-CLASS-00230 through DOJ-CLASS-00240;<br><br>f. DOJ-CLASS-00250;<br><br>g. DOJ-CLASS-00251 through DOJ-CLASS-00407;<br><br>h. DOJ-CLASS-00543 through DOJ-CLASS-00735; and<br><br>i. DOJ-CLASS-00792 through DOJ-CLASS-00798. | 7<br>(Records supporting the Government's possession that the Defendant transmitted the document at issue) | Granted in part and Denied in part.<br><br>As to "a" through "e," defense withdraws based on representation that Government will produce records.<br><br>As to "f" and "g," granted only to the extent it involves unclassified information that specifically relates to the Document at issue. Denied in all other respects.<br><br>(Tr. at 296:5-8, 297:17-20)<br><br>As to "h," denied on the basis of Court-approved CIPA redactions.<br><br>(Tr. at 298:14-299:2)<br><br>As to "i," denied as irrelevant.  37<br><br>(Tr. at 300:17-20) |

| | | Third Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 52. | Third Set of Discovery Requests, Request No.4 | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Denied as moot. (Tr. at 301:8-302:4) |
| 53. | Third Set of Discovery Requests, Request No. 5 | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Denied. (Tr. at 303:5-9) |

38

| | | Third Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 54. | Third Set of Discovery Requests, Request No. 6 | The Defendant requests the attachments to the following emails produced in classified discovery: DOJ-CLASS-764; DOJ-CLASS-00801; and DOJ-CLASS-00806 | General discovery involving the defendant | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of documents that include information contained in the Document. Denied in all other respects.<br><br>(Tr. at 304:5-9) |
| 55. | Third Set of Discovery Requests, Request No. 7 | | N/A | Withdrawn by the defense.<br><br>(Tr. at 304:12) |

39

| Request Number | Specific Request // Discovery Set | Fourth Discovery Request Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| 56. | Fourth Set of Discovery Requests, Request No. 1 | | 4 | Granted in part and Denied in part. Granted only as to providing documents Denied in all other respects. (Tr. at 305:20-22) |

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 57. | Fourth Set of Discovery Requests, Request No. 2 | | 4 | Granted in part and Denied in part. Granted only as to providing documents Denied in all other respects. (Tr. at 306:1) |
| 58. | Fourth Set of Discovery Requests, Request No. 3 | For DOJ-CLASS-000251 through DOJ-CLASS-000407, please provide copies of the material contained in each link for each of the 4,240 rows of information. | 6 (Documents the Defendant either saw or became aware of) | Granted in part and Denied in part. Granted only to the extent the defendant (Tr. at 306:9-13) |

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
| 59. | Fourth Set of Discovery Requests, Request No. 4 | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Granted in part and Denied in part. Granted only as to (a) the production of identities of people who accessed the Document; and (b) the production of instances where the Document was emailed, from the date of publication on ▮▮▮▮ (Tr. at 306:17-317:17) |
| 60. | Fourth Set of Discovery Requests, Request No. 5 | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Denied. (Tr. at 319:10-12) |

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 61. | Fourth Set of Discovery Requests, Request No. 6 | | 10 (Documents regarding | Granted in part and Denied in part. Granted only to the extent it ▮▮▮▮ (Tr. at 319:22-24, 320:1-2) |
| 62. | Fourth Set of Discovery Requests, Request No. 7 | | 11 (Records relating to the document, its author, and its classified nature) | Denied as moot. (Tr. at 320:3-9) |
| 63. | Fourth Set of Discovery Requests, Request No. 8 | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part. Granted only to the extent it involves unclassified, non-FOUO documents regarding the Document. (Tr. at 320:20-23) |
| 64. | Fourth Set of Discovery Requests, Request No. 9 | Identify whether there are any ▮▮▮ policies, including but not limited to publication guidelines, related to the ▮▮▮ and provide copies of those policies. | General discovery involving the Defendant's employment | Denied as moot. (Tr. at 320:24-321:1) |

43

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request # / Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 65. | Fourth Set of Discovery Requests, Request No. 10 | | General discovery involving the Defendant's employment | Denied as moot. (Tr. at 321:4-8) |
| 66. | Fourth Set of Discovery Requests, Request No. 11 | | 8 (Records regarding the security of the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of documents reflecting the total number of ▬ Denied in all other respects. (Tr. at 321:22-322:1) |
| 67. | Fourth Set of Discovery Requests, Request No. 12 | To the extent not already provided, please provide a copy of the audio underlying DOJ-CLASS-000449 through DOJ-CLASS-000538. | General investigative discovery | Denied as moot. (Tr. at 322:7-9) |
| 68. | Fourth Set of Discovery Requests, Request No. 13 | | General discovery involving the defendant | Denied. (Tr. at 322:20-21) |

44

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 69. | Fourth Set of Discovery Requests, Request No. 14 | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Denied. (Tr. at 324:4-8) |
| 70. | Fourth Set of Discovery Requests, Request No. 15 | | 2 (Records relating to the disclosure of information contained within the document) | Denied. (Tr. at 324:15-16) |
| 71. | Fourth Set of Discovery Requests, Request No. 16 | | 7 (Records supporting the Government's possession that the Defendant transmitted the document at issue) | Withdrawn by the defense based on representation that Government is not in possession of the subject envelope. (Tr. at 324:17-21) |

[13] The document referenced in this request (DOJ-CLASS-00808-810) is ███████████████████ in the aftermath of the alleged leak at issue. *See* Tr. of Proceedings, Nov. 30-Dec. 1, 2017, at 322:22-323:5.

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 72. | Fourth Set of Discovery Requests, Request No. 17 | | 1 (Documents reflecting statements made by high-ranking governmental officials regarding information contained in the document) | Denied. (Tr. at 324:22-23) |
| 73. | Fourth Set of Discovery Requests, Request No. 18 | | 1 (Documents reflecting statements made by high-ranking governmental officials regarding information contained in the document) | Denied. (Tr. at 324:22-23) |
| 74. | Fourth Set of Discovery Requests, Request No. 19 | | 1 (Documents reflecting statements made by high-ranking governmental officials regarding information contained in the document) | Denied. (Tr. at 324:22-23) |

46

| Request Number | Specific Request // Discovery Set | Fourth Discovery Request Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| 75. | Fourth Set of Discovery Requests, Request No. 20 | | 8 (Records regarding the security of the document) | Granted in part and Denied in part. Granted to the extent it calls for the production of records limited to the Document. (Tr. at 327:10-12) |
| 76. | Fourth Set of Discovery Requests, Request No. 21 | | 8 (Records regarding the security of the document) | Granted in part and Denied in part. Granted to the extent it calls for the production of records limited to the Document. (Tr. at 328:1-2) |
| 77. | Fourth Set of Discovery Requests, Request No. 22 | | 4 (Documents supporting the Government's allegations of | Granted, but Government has represented no responsive documents exist. (Tr. at 330:3-333:1) |



| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 78. | Fourth Set of Discovery Requests, Request No. 23 | | 4 | Granted, but Government has represented no responsive documents exist. (Tr. at 330:3-333:1) |
| 79. | Fourth Set of Discovery Requests, Request No. 24 | | 4 | Granted, but Government has represented no responsive documents exist. (Tr. at 330:3-333:1) |
| 80. | Fourth Set of Discovery Requests, Request No. 25 | | 4 | Granted, but Government has represented no responsive documents exist. (Tr. at 330:3-333:1) |
| 81. | Fourth Set of Discovery Requests, Request No. 26 | | 4 | Granted, but Government has represented no responsive documents exist. (Tr. at 330:3-333:1) |

| Fourth Discovery Request | | | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 82. | Fourth Set of Discovery Requests, Request No. 27 | | 4 | Granted, but Government has represented no responsive documents exist.<br><br>(Tr. at 330:3-333:1) |
| 83. | Fourth Set of Discovery Requests, Request No. 28 | | 4 | Granted, but Government has represented no responsive documents exist.<br><br>(Tr. at 330:3-333:1) |
| 84. | Fourth Set of Discovery Requests, Request No. 29 | | 2 (Records relating to the disclosure of information contained within the document) | Granted in part and Denied in part.<br><br>Granted only to the extent it calls for the production of documents reflecting the disclosure of information contained in the Document at issue in an unclassified, non-FOUO setting. Denied in all other respects.<br><br>(Tr. at 333:10-13) |

49

| | | **Fourth Discovery Request** | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 85. | Fourth Set of Discovery Requests, Request No. 30 | Please produce documents relating to the number of NSA employees or NSA contractors who inserted a flash drive or other unauthorized media into a government computer from January 1, 2014 to June 5, 2017. | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 333:24-25) |
| 86. | Fourth Set of Discovery Requests, Request No. 31 | Identify whether there are NSA policies for NSA employees and/or NSA contractors governing or prohibiting the use of a TOR browser and/or TOR email or other forms of secure web browsing or webmail on personal devices, and if so provide copies of such policies. | 9 (Documents regarding the Government's 404(b) Notice) | Denied as moot. (Tr. at 334:1-3) |
| 87. | Fourth Set of Discovery Requests, Request No. 32 | Please produce documents relating to the number of NSA employees and NSA contractors who searched the Internet for information about TOR browser and/or TOR email, other forms of secure web browsing or webmail, or Slippery.email from January 1, 2014 to June 5, 2017. | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 334:10-14) |
| 88. | Fourth Set of Discovery Requests, Request No. 33 | Please produce documents relating to the number of NSA employees and/or NSA contractors who searched the Internet for media outlets and the methods for searching how to submit information to a media outlet from January 1, 2014 to June 5, 2017. | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 334:10-14) |
| 89. | Fourth Set of Discovery Requests, Request No. 34 | Identify the number of individuals who currently hold a TOP SECRET clearance, SECRET clearance, and CONFIDENTIAL clearance. | General discovery regarding element of "closely held" | Denied. (Tr. at 334:24-25) |
| 90. | Fourth Set of Discovery Requests, Request No. 35 | Please produce documents relating to the number of NSA employees and NSA contractors who conducted Internet searches related to the "Anonymous" hacking group from January 1, 2014 to June 5, 2017. | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 335:4-5) |

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 91. | Fourth Set of Discovery Requests, Request No. 36 | | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 335:10) |
| 92. | Fourth Set of Discovery Requests, Request No. 37 | | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 335:13) |
| 93. | Fourth Set of Discovery Requests, Request No. 38 | To the extent not already produced, please produce a copy of the NSA Insider Threat Training the Defendant allegedly "mocked" in February 2017 (as referenced in the Government's November 6, 2017 amended 404(b) letter). | 9 (Documents regarding the Government's 404(b) Notice) | Withdrawn by defense. (Tr. at 336:1-4) |
| 94. | Fourth Set of Discovery Requests, Request No. 39 | To the extent not already produced, please produce a copy of the Facebook conversation dated February 14, 2017 (as reference in the Government's November 6, 2017 amended 404(b) letter). | 9 (Documents regarding the Government's 404(b) Notice) | Withdrawn by defense. (Tr. at 336:6) |
| 95. | Fourth Set of Discovery Requests, Request No. 40 | From January 1, 2014 through June 5, 2017, identify how many NSA employees or NSA contractors failed their initial polygraph test. | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 336:13-14) |

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 96. | Fourth Set of Discovery Requests, Request No. 41 | ▮ | 2 (Records relating to the disclosure of information contained within the document) 3 (Analysis of information contained in the document and/or analysis of disclosure of information contained in the document) | Granted in part and Denied in part. Granted only to the extent it calls for the production of documents indicating the President disclosed information contained in the Document prior to it being leaked. Denied in all other respects. (Tr. at 336:22-337:1) |
| 97. | Fourth Set of Discovery Requests, Request No. 42 | Any and all documents regarding the incident referenced in the Government's November 6, 2017 amended 404(b) letter relating to the Defendant's alleged "mishandling of classified information" in or about February 2017. | 9 (Documents regarding the Government's 404(b) Notice) | Withdrawn by defense. (Tr. at 337:3-4) |
| 98. | Fourth Set of Discovery Requests, Request No. 43 | From January 1, 2014 through June 5, 2017, the number of NSA employees or NSA contractors who allegedly mishandled classified information. | 9 (Documents regarding the Government's 404(b) Notice) | Denied. (Tr. at 337:12-15) |

| | | Fourth Discovery Request | | |
|---|---|---|---|---|
| **Request Number** | **Specific Request // Discovery Set** | **Description** | **Category** | **Magistrate Judge's Ruling** |
| 99. | Fourth Set of Discovery Requests, Request No. 44 | | 6 (Documents the Defendant either saw or became aware of) | Granted in part and denied in part. Granted to the extent it calls for the production of documents or emails which concern ▮ (Tr. at 339:8-11) |
| 100. | Fourth Set of Discovery Requests, Request No. 45 | Provide all documentation underlying each FBI 302 produced to the Defendant, including but not limited to any agent notes and attachments. | General investigative discovery | Denied. (Tr. at 339:25-340:3) |
| 101. | Fourth Set of Discovery Requests, Request No. 46 | Please provide documents identified as DOJ-CLASS-00447 through DOJ-CLASS-00448. | General investigative discovery | Withdrawn by defense. (Tr. at 340:4) |

| Request Number | Specific Request // Discovery Set | Description | Category | Magistrate Judge's Ruling |
|---|---|---|---|---|
| 102. | Fifth Set of Discovery Requests, Request No. 1 | | 4 (Records relating to the Government's 3 NDI Points) | |
| 103. | Fifth Set of Discovery Requests, Request No. 2 | | 4 (Records relating to the Government's 3 NDI Points) | |
| 104. | Fifth Set of Discovery Requests, Request No. 3 | | 4 (Records relating to the Government's 3 NDI Points) | |
| 105. | Fifth Set of Discovery Requests, Request No. 4 | | 4 (Records relating to the Government's 3 NDI Points) | |

54

# EXHIBIT B

TOP SECRET//COMINT//WORD

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | NO. 1:17-CR-00034 |
| | * | |
| REALITY LEIGH WINNER | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

## DECLARATION OF J. WILLIAM LEONARD

I, J. WILLIAM LEONARD, under penalty of perjury and from my own personal knowledge, state:

1.      I have been engaged as an expert witness by the defense in *United States v. Reality Leigh Winner*, No. 1:17-CR-00034 (S.D. Ga. 2017).

2.      The information set forth below is based on my personal knowledge, including my experience working on national security matters in the Federal government over a 34-year career; experience working on various legal matters charged under the Espionage Act; and my review of documents and information relevant to this case.

3.      I was employed by the Department of Defense ("DoD") from 1973 through 2002. From 1996 to 1998, I served as the Director of Security Programs for the DoD, and from 1999 through 2002, I served at times as the Deputy Assistant Secretary of Defense responsible for security, counterintelligence, and information operations and at other times, as the Principal Director in that office.  Part of my responsibility was to develop and oversee policies to ensure that there were no leaks of classified information, to ensure that such leaks were investigated when they did occur, to ensure that information that should be classified was in fact classified, and to ensure that information that was not supposed to be classified was not.

TOP SECRET//COMINT//WORD

4. From 2002 through January 2008, I served as the Director of the Information Security Oversight Office ("ISOO"), one of only three individuals to have been appointed to that position up to that point in time since it was created by then-President Carter in 1978. The Director of ISOO is known colloquially as the "Classification Czar" because the Director is responsible for oversight of the government-wide classification system. The Director of ISOO has authority to access more classified information than anyone in the government other than the President and Vice President, and ultimately can be denied access only by the President. Aside from the President, as the Director of ISOO, I was the primary official charged with responsibility to direct that information classified in violation of the governing executive order be declassified, with authority to overrule even the decisions of Cabinet members, subject to appeal to the President.

5. I also sat on the Interagency Security Classification Appeals Panel ("ISCAP") from 1999 through 2002 as the DoD representative, and from 2002 through January 2008, I served as the Executive Secretary of the ISCAP. ISCAP's responsibilities include reviewing appeals of agency mandatory declassification review decisions to determine if information designated as classified by Federal agencies meets the President's standards required for classification.

6. In my various capacities with the Federal government, it was my responsibility on a regular basis to determine whether information which an agency sought to classify or keep classified met the classification criteria. As part of that responsibility, I had to determine whether and to what extent the information at issue was the sort of information that would be potentially damaging to national security if disclosed. I also assessed on a regular basis whether

2

purportedly classified information that had been leaked or disclosed was demonstrably classified or not, and whether it was closely held or not.

7.  In January 2008, I retired as Director of ISOO and Executive Secretary of the ISCAP.  From 2008 through 2010, I served as an independent consultant on various classification and national security-related issues, as well as a professor at a local college teaching political science.  Since 2010, I have served as the Chief Operating Officer of a non-profit engaged in the growth and promotion of democratic institutions around the world.

8.  In 2017, I was approached to be an expert witness for Ms. Reality Winner, the defendant in this matter.  Counsel for Ms. Winner was seeking advice with respect to, among other things, the Federal government's classification system for national security information and whether or not the information allegedly disclosed in this matter constitutes "national defense information," (NDI) as that term is commonly understood and applied in practice.  I have been engaged and my work in the case is being provided on a pro bono basis.  My motivation for becoming involved in this case was my concern for the integrity of the classification system.  I strongly believe that classification is a critical national security tool and that the responsibilities of cleared individuals to properly protect classified information are profound.  At the same time, government agencies have equally profound responsibilities and in this regard, I have long witnessed the over-classification of information within the Executive Branch due to the failure of agencies to fulfill these responsibilities.  In this way, the actions of agencies can actually undermine the integrity of the classification system in that to be effective, it must be used with precision.  As Justice Potter Stewart said in the Pentagon Papers case, "when everything is classified, then nothing is classified..."

3

9.     I have provided expert advice and/or testimony in other cases brought under the Espionage Act, including but not limited to *United States v. Steven Rosen, et al.*, 1:05-CR-225 (E.D. Va. 2005) and *United States v. Thomas Drake*, 10-CR-181 (D. Md. 2010). In those cases, I was prepared to testify and provided advice to counsel regarding the Government's over-classification of information relating to the national defense, namely the practice of classifying information that is neither closely held nor damaging to national security if disclosed.  My involvement in these matters confirmed for me the importance, especially in criminal prosecutions, of not allowing representatives of the Executive Branch to simply assert that certain information is classified or closely held or potentially damaging if disclosed.  Rather, restricting dissemination of information in the interest of national security is based upon the President's Article II constitutional authority as commander-in-chief and chief executive responsible for foreign relations.  The President has delegated his classification authority to certain government officials through executive orders.  These orders set forth the standards that must be satisfied in order for the legal protections of the classification system to apply to specific information.  It also sets forth the limitations and prohibitions which must not be exceeded.

10.     Since being engaged in this matter, I have reviewed the redacted and unredacted versions of the document defined as the "intelligence reporting" in the Superseding Indictment (the "Document").  ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

11.     I have also reviewed the discovery requests propounded by the defense in this case to the Government, which are reflected in Exhibit A attached to the Defendant's Objections

and Appeal of Magistrate's Decision Granting in Part and Denying in Part Defendant's Motion

to Compel Discovery Requests filed by the Defendant on January 23, 2018. These discovery

requests seek, among other things:

- Documents Reflecting Statements Made By High-Ranking Governmental Officials Relating to the Information Contained in the Document;

- Records Reflecting the Disclosure by the Government of Information Contained in the Document At Issue in a Format Classified at less than the TS // SCI level or to an Audience that did not have a TS // SCI Clearance;

- Records Reflecting Analyses of the Information Contained In The Document and/or Analyses Relating to the Disclosure of the Information Contained in the Document At Issue;

- 

- Documents Relating to the Government's Three NDI Points; and

- Records Relating to the Document Itself, Its Author, and Its Classified Nature.

12.    I have also reviewed portions of the transcript in connection with a two-day

hearing held by the Magistrate Judge on November 30, 2017 and December 1, 2017 in the

above-styled matter relating to the defendant's request to compel certain discovery items,

including those items listed above.

13.    I also understand that some of the documents requested will likewise be sought

from certain governmental agencies through subpoenas.

14.    Put simply, as set forth in more detail below, the above-listed documents are

crucial to adequately conduct the analysis I was engaged to provide, including among other

things, to determine whether the information contained in the "intelligence reporting" constitutes

"national defense information." Absent specificity from the Government as to which precise

facts or information in the Document constitute NDI, consistent with my prior experience in

5

Espionage Act cases, I would need records relating to all of the facts and information contained in the Document to adequately determine whether those facts are, indeed, national defense information.

### Documents Reflecting Statements Made By High-Ranking Governmental Officials Relating to the Information Contained in the Document

15. The Government's theory in this matter as to why the Document contains "national defense information" is predicated on the assumption that the information contained in the Document at issue is accurate.[1] Separately, however, there are governmental actors, including high-level governmental actors (such as the President of the United States), that have made conflicting and/or contradicting statements in comparison to the Government's position here. In other words, these high-level governmental officials have made statements undermining the veracity of the information contained in the Document, which would impact whether the Document actually contains "national defense information" because, if inaccurate, the Government's contention that its disclosure could harm the national security of the United States would be severely undermined. Indeed, the President is the highest level of authority in our classification system and has virtually unrestricted access to information in our intelligence system. He is, therefore, in the best position to know the particulars of any piece of intelligence, including its sensitivity and its veracity. Consequently, records reflecting statements made by high-ranking governmental officials, including and in particular, the President of the United States, relating to the information contained in the Document (including statements contradicting



the truth or veracity of the information at issue) are highly relevant and are critical to the determination of whether or not it is closely held and/or whether or not its disclosure would potentially damage the national security.

**Records Reflecting the Disclosure of Information Contained in the Document in a Format Classified at less than the TS // SCI Level or to an Audience That Did Not Have a TS // SCI Clearance & Records Reflecting Analyses of the Information In the Document or the Disclosure of the Information in the Document**

███████████████████████████████████████████████████████

██████████████████████████████ -- are likewise highly relevant to the NDI

determination in this case. Importantly, to undertake the analysis I was engaged to provide, it

would be crucial to obtain records not just about ███████████████████ described in the

Document, but to obtain records regarding ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

18. In order to properly determine, for instance, whether the information at issue in

this case constitutes "national defense information," I need to be able to compare the information

in the "intelligence reporting" to other documents involving identical or similar information,

including records reflecting the transmission or disclosure of that information. For example,

records demonstrating the Government's transmission of the same or similar information to

individuals without a Top Secret clearance would be probative of how close the Government

held this information. If, for instance, the Government disclosed identical or similar information

to others without such a clearance that would, in my view, reflect the Government's view that the

information was not likely being "closely held."

19. Likewise, records at any classification level reflecting an analysis of the national

security risks, if any, presented by the disclosure of the information contained in the Document

(again, not just the specific incident described in the Document, but other similar incidents

involving the same/similar actors, same/similar time period, and/or same/similar techniques) in

8

the Government's possession (including documents analyzing what information may be disclosed in particular settings) are highly relevant to the NDI determination. For example, records reflecting the Government's view that certain pieces of information contained in the Document may be disclosed in less-than-Top Secret settings would reflect a different view of the sensitivity of the information than the Government's current position in this case. Indeed, given my experience, it would not be uncommon for different governmental agencies and/or employees to have differing views on the sensitivity of certain information contained in the Document. These analytical records are, therefore, critically important in determining whether the information at issue constitutes "national defense information."

20.    Separate and apart from the classification levels, many governmental documents are labeled or marked "For Official Use Only" (FOUO). While the FOUO marking is not a security classification, governmental actors regularly label otherwise unclassified documents FOUO. Indeed, it would be a rare case where a record, especially one addressing any topic contained in the Document at issue, is not labeled FOUO. █████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Consequently, it is my belief that many pertinent records critical to the issues in this case -- such as law enforcement alerts regarding the topics at issue here, bulletins by governmental agencies warning actors about the threat posed by information in the Document, and the like -- would be, at a minimum, marked FOUO, regardless of their classification level. As with the records mentioned above (which reflect the disclosure of such information and/or analyses regarding that information or disclosure), these FOUO records would likewise be relevant and helpful to

9

adequately conduct an analysis of whether the information in the Document constitutes "national defense information."



21.     It is also critically important to obtain documents relating to any actual or potential harm that resulted or could have resulted from the disclosure of the Document,

23.     Separately, given that "national defense information" requires there to be "potential harm" to the United States if that information is disclosed, any *other* records that

---

[2] *See* Government's Oct. 5, 2017 Response to Defendant's August 29, 2017 Discovery Requests at p. 4 (attached as Exhibit E to Doc. 162 [Joint Status Report]).

would reflect any potential harm at the time of the disclosure would be necessary for an evaluation of whether the information at issue is "national defense information."

### Documents Relating to the Government's 3 NDI Points

24.    Documents directed to the Government's three NDI points[3] are similarly relevant. For example, the Government's first NDI point is that



I cannot make such a determination. Accordingly, further records regarding this NDI point are critical to adequately conducting my analysis.

25.    The same argument holds true for the Government's third NDI point associated with the Document:

Obtaining this "information" is thus critical to understanding whether the Document constitutes "national defense information."

---

[3] It is my understanding that the Government has provided three points, which it contends are NDI, in addition to the Document. *See* Doc. 182 Government's CIPA Section 10 Filing); *see also* Tr. of Proceedings, Nov. 30, 2017, at 88:10-18, 107:17-108:14.

[4] *See* Doc. 182 at p. 3.

[5] *See* Doc. 182 at p. 3.

### Records Relating to the Document, Its Author, and Its
### Classified Nature

26.    Finally, documents relating to the "intelligence reporting" itself, including records

relating to its author(s)/classifier(s) and the information utilized to classify the Document, are

likewise relevant. For example, pursuant to federal regulations, the author(s)/classifier(s) of the

Document should be able to, among other things, (a) precisely state the elements of information

contained therein that warrant the classification marking at the level indicated; and (b) provide

the original classification authority's written support for each precise original classification

decision to include the identification or description of the damage to national security in the

event of the information's unauthorized disclosure.[6]  The relevance of these points are self-

evident: the bases upon which the Document was classified, and the author's description of harm

that may result from the disclosure of the Document, are important pieces of information, among

many others, in determining whether the information contained in the "intelligence reporting"

constitutes "national defense information." I know from my career in the federal government,

for example, that officials often reflexively mark a document as classified without adequately

considering the reasons for those classifications, and thus it cannot be assumed that the

classification markings on a government document are well-reasoned or correct. I also know

from my experience that classification decisions often come down to the subjective judgment of

the classifier, and two officials can take the same document and come to entirely different

conclusions as to the appropriate classification levels. Accordingly, the requested records are

relevant to determining the bases for, and assumptions underlying, the classifier's decisions in

classifying the Document and ultimately, the sensitivity of the information contained in the

---

[6] *See* Executive Order No. 13526 (Classified National Security Information) at §§ 1.1(4) and 2.1(b).

12

Document. In other words, these records are extremely important to evaluating whether the Document constitutes "national defense information."

27.    I understand that the Government has represented in this case that there are no documents or conversations regarding the decision to classify the Document at issue. That is inconsistent with my experience and the governing Executive Orders and implementing directives. Among other things, there would be a determination by an original classifier that certain facts in the Document are classified at a specific level. And, if the classifier of the Document at issue was not an original classifier, there would be conveyance – oral or written – of the classification guidance to the derivative classifier of the Document. These records would be relevant and helpful in determining the bases for the classification decisions associated with the Document.

28.    As a final point, for the reasons set forth above, it is important to note that, in my experience in other Espionage Act cases, discovery like that requested by the defendant here (including the above-listed categories of discovery) have been permitted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Washington, D.C. on January 23, 2018.

J. William Leonard

13

# EXHIBIT C

# EXHIBIT D

# EXHIBIT E

# EXHIBIT F

# EXHIBIT G