IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15458

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

REALITY LEIGH WINNER,

Defendant-Appellant

_____

On Appeal from the United States District Court
for the Southern District of Georgia

_____

BEFORE:   MARTIN, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Reality Winner, who is charged with violating 18 U.S.C. § 793(e) by allegedly providing a classified top-secret government document to a news organization without authorization, appeals from the district court's pretrial detention order. The district court found by a preponderance of the evidence that no condition, or combination of conditions, would reasonably assure Ms. Winner's presence at trial, which is currently scheduled for March of 2018. *See* 18 U.S.C. §

3142(e)(1). *See also United States v. Medina*, 775 F.3d 1398, 1402 (11th Cir. 1985) (holding that risk of flight under the Bail Reform Act is determined under a preponderance of the evidence standard).

Generally speaking, cases arising under the Bail Reform Act present mixed questions of law and fact which receive plenary review on appeal, but purely factual findings are reviewed only for clear error. *See United States v. King*, 849 F.2d 485, 487 (11th Cir. 1988); *United States v. Hurtado*, 779 F.2d 1465, 1471-72 (11th Cir. 1985). As explained in *Hurtado*, conclusions concerning the nature and circumstances of the offense and the weight of the evidence under § 3142(g)(1)-(2), as well as the factors set forth in § 3142(c)(1)(B), require the exercise of judgment and are reviewed de novo. *See Hurtado*, 779 F.2d at 1472. On the other hand, findings made with respect to the history and characteristics of a person under § 3142(g)(3) are reviewed for clear error. *See id.*

Following review of the parties' briefs and the record, including the classified materials, we affirm. The district court did not err in detaining Ms. Winner pending trial based on risk of flight.

First, the offense charged is a serious one. The unauthorized transmission of a classified top-secret document can adversely impact national security, and carries a maximum sentence of 10 years in prison.

Second, at this point in the proceedings the government's case appears to be relatively strong.  In addition to the circumstantial evidence tying her to the unauthorized transmission, *see* D.E. 163 at 8 n.8 (summarizing evidence), Ms. Winner admitted to an FBI agent (in an interview that was recorded) that she sent the document in question without authorization. *See id.* at 6.  And after her arrest, she told her sister, "I leaked a document and they were able to trace it back to me and it's kind of an important one."  D.E. 120 at 31, 107.

Third, although Ms. Winner presented evidence of her positive characteristics—e.g., her service to her country in the Air Force, her humanitarian aspirations (working for organizations like the Peace Corps and Doctors Without Borders), her strong family ties, and her lack of a criminal record—there was significant evidence on the other side of the ledger.  For example, Ms. Winner wrote, "I want to burn the [W]hite [H]ouse down.  Find somewhere in Kurdistan to live . . . or Nepal.  Ha, ha, maybe."  D.E. 163 at 10; D.E. 120 at 32.  Ms. Winner also remarked to her sister, "I have to take a polygraph where they're going to ask if I've ever plotted against the government.  #gonna fail. . . . Look, I only say I hate America like three times a day.  I'm no radical.  It's mostly just about Americans' obsession with air conditioning."   D.E. 120 at 44.  When her sister asked her whether she actually "hate[d] America," Ms. Winner responded, "I mean, yeah, I do.  It's literally the worst thing to happen to the planet.  We invented capitalism,

the downfall of the environment."   *Id.*   In another conversation, Ms. Winner told her sister that she was on the side of Julian Assange and Edward Snowden, individuals who had previously leaked or disclosed classified government documents. *Id.* at 45.

Ms. Winner characterized these statements as mere hyperbole and suggested that they reflect the weird sense of humor she shares with her sister. *See, e.g., id.* at 100-05 (testimony of Ms. Winner's sister).   But that is not the only possible reading of her words.   The statements, if viewed in a different light, suggest that Ms. Winner may have a reason to flee, as she does not have any confidence in the government which has accused her of serious criminal conduct.   The district court therefore did not commit clear error in its interpretation of the evidence concerning Ms. Winner's statements.

Fourth, evidence in the record indicates that Ms. Winner—who is fluent in Farsi, Dari, and Pashto, *see* D.E. 163 at 15—has long wanted to live and work in the Middle East.   She wanted the Air Force to deploy her to Afghanistan; she researched traveling, working, and living in places like Kurdistan, Iraq, Afghanistan, Jordan, and the Palestinian territories; she researched flights to Kurdistan and Erbil; she researched buying a home in Jordan; and she researched how to obtain a work visa in Afghanistan. *See id.* at 15; D.E. 120 at 40-41. There is, of course, nothing inherently problematic about any of these things, but when

they are viewed together and added to the mosaic they provide an additional reason or motivation for Ms. Winner to not remain in the United States to stand trial.  Her demonstrated interest in living and working in the Middle East and the $30,000 in her bank account makes travel there, under the circumstances, more than a flight of fancy.

Ms. Winner argues that a number of conditions would reasonably assure her appearance.  These include the use of an ankle bracelet, the surrender of her passport (which is already in the government's possession), and her parents posting their home (worth about $150,000-$200,000) as collateral for a bond.  But the use of a bracelet, the surrendering of a passport, and the posting of collateral are not foolproof—persons who wish to flee can destroy or disable the bracelet and travel clandestinely without a passport, even if collateral for the bond is forfeited—so the question ultimately comes down to one of confidence about the likelihood that Ms. Winner will appear for future proceedings.  Given the evidence summarized above, the district court did not err in finding by a preponderance that Ms. Winner is a flight risk and that no condition or combination of conditions will reasonably assure her appearance.

**DETENTION ORDER AFFIRMED.**