DEFENDANT'S
EXHIBIT NO.    1

CASE NO.    117 cr 00034

US

vs.

Winner

MARKED FOR IDENTIFICATION 02/27/2018

Emails begin w) C. McKee

FILED IN EVIDENCE 02/27/2018

SCOTT L. POFF, CLERK

**Mckee, Charles E. (AT) (FBI)**

| | |
|---|---|
| From: | Mckee, Charles E. (AT) (FBI) |
| Sent: | Friday, June 02, 2017 11:50 AM |
| To: | Kirkland, Marcus (AT) (FBI); Reynolds, Hubert J. (AT) (FBI); Johnson, Kimberly J. (AT) (FBI); |
| Cc: | Granich, Kimberly C. (AT) (FBI); Szczepanski, Brian J. (AT) (FBI) |
| Subject: | Butts, Mccarthy A. (AT) (FBI); Garrick, Justin C. (AT) (FBI); Mcafee, Thomas M. (AT) (FBI) |
| | ERT Callout |

Hello Southern Team. I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2, through next Tuesday, June 6. This reason for the unknown date is because this is a rapidly developing situation which involves FBI HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area. This is not a drug search but rather more of a document and computer related search. Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

Chuck McKee

1

# Mckee, Charles E. (AT) (FBI)

| | |
|---|---|
| From: | Mckee, Charles E. (AT) (FBI) |
| Sent: | Friday, June 02, 2017 12:46 PM |
| To: | Granich, Kimberly C. (AT) (FBI) |
| Subject: | RE: ERT Callout |

Thanks. I'll give you as much notice as possible.

--

-------- Original message --------
From: "Granich, Kimberly C. (AT) (FBI)" <███████████████>
Date: 06/02/2017 12:00 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <███████████████>, "Kirkland, Marcus (AT) (FBI)"
<██████████████>
Subject: RE: ERT Callout

I have court at 2:30 today and am unavailable all day monday. I have court at 2:30 on Tuesday. If you absolutely need it over the weekend, I can try to help out.

Kim

--

-------- Original message --------
From: "Mckee, Charles E. (AT) (FBI)" <██████████████>
Date: 06/02/2017 11:50 AM (GMT-05:00)
To: "Kirkland, Marcus (AT) (FBI)" <███████████████>, "Reynolds, Hubert J. (AT) (FBI)"
<██████████████>, "Johnson, Kimberly J. (AT) (FBI)" <██████████████>, "Granich, Kimberly C. (AT)
(FBI)" <█████████████>, "Szczepanski, Brian J. (AT) (FBI)" <████████████
Cc: "Butts, Mccarthy A. (AT) (FBI)" <█████████████>, "Garrick, Justin C. (AT) (FBI)"
<█████████████>, "Meafee, Thomas M. (AT) (FBI)" <███████████████>
Subject: ERT Callout

Hello Southern Team. I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2, through next Tuesday, June 6. This reason for the unknown date is because this is a rapidly developing situation which involves FBI HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area. This is not a drug search but rather more of a document and computer related search. Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

1

Mckee, Charles E. (AT) (FBI)

**From:** Mckee, Charles E. (AT) (FBI)
**Sent:** Friday, June 02, 2017 1:32 PM
**To:** Szczepanski, Brian J. (AT) (FBI)
**Subject:** RE: ERT Callout

Thanks. I'll give you as much notice as possible. Have a safe return.

--

-------- Original message --------
From: "Szczepanski, Brian J. (AT) (FBI)"
Date: 06/02/2017 1:30 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)"
Subject: RE: ERT Callout

Chuck, I am on AL in California right now. I will be back to work Monday and can help then if needed. Let me know. Thanks

Brian

--

-------- Original message --------
From: "Mckee, Charles E. (AT) (FBI)"
Date: 06/02/2017 8:50 AM (GMT-08:00)
To: "Kirkland, Marcus (AT) (FBI)"
, "Reynolds, Hubert J. (AT) (FBI)"
(FBI)", "Johnson, Kimberly J. (AT) (FBI)"
, "Granich, Kimberly C. (AT)
, "Szczepanski, Brian J. (AT) (FBI)"
Cc: "Butts, Mccarthy A. (AT) (FBI)"
, "Garrick, Justin C. (AT) (FBI)"
, "Mcafee, Thomas M. (AT) (FBI)"
Subject: ERT Callout

Hello Southern Team. I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2, through next Tuesday, June 6. This reason for the unknown date is because this is a rapidly developing situation which involves FBI HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area. This is not a drug search but rather more of a document and computer related search. Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

Chuck McKee

1

**Mckee, Charles E. (AT) (FBI)**

| | |
|---|---|
| **From:** | Mckee, Charles E. (AT) (FBI) |
| **Sent:** | Friday, June 02, 2017 1:46 PM |
| **To:** | Johnson, Kimberly J. (AT) (FBI) |
| **Cc:** | Allen, Jeffrey M. (AT) (FBI) |
| **Subject:** | RE: ERT Callout |

Thanks. I'll give you as much notice as possible

--

-------- Original message --------
From: "Johnson, Kimberly J. (AT) (FBI)" <███████████████████████
Date: 06/02/2017 1:37 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <████████████████ "Kirkland, Marcus (AT) (FBI)"
██████████████████>, "Reynolds, Hubert J. (AT) (FBI)" <███████████████████, "Granich, Kimberly C. (AT)
(FBI)" <██████████████████, "Szczepanski, Brian J. (AT) (FBI)" <███████████████████
Cc: "Butts, Mccarthy A. (AT) (FBI)" <██████████████████ "Garrick, Justin C. (AT) (FBI)"
██████████████████, "Meafee, Thomas M. (AT) (FBI)" <███████████████████>, "Allen, Jeffrey M. (AT) (FBI)"
Subject: RE: ERT Callout

Chuck,

I am not available either today or tomorrow but will be available starting Sunday. I've also looped Jeff Allen into the message as he
has just come back on board as an unfunded alternate member. He is not available this weekend but is available if the search goes into
next week.

Thanks,
Kim

Kimberly J. Johnson
Forensic Accountant
Federal Bureau of Investigation
Atlanta Division - Squad C9/Embedded Savannah RA
912-790-3113 (Desk)
████████████████████

-----Original Message-----
From: Mckee, Charles E. (AT) (FBI)
Sent: Friday, June 02, 2017 11:50 AM
To: Kirkland, Marcus (AT) (FBI) <████████████████; Reynolds, Hubert J. (AT) (FBI) <███████████████; Johnson, Kimberly
J. (AT) (FBI) <████████████████ Granich, Kimberly C. (AT) (FBI) <████████████████; Szczepanski, Brian J. (AT) (FBI)
<████████████████
Cc: Butts, Mccarthy A. (AT) (FBI) <████████████████; Garrick, Justin C. (AT) (FBI) <j████████████; Meafee, Thomas M.
(AT) (FBI) <t████████████████
Subject: ERT Callout

Hello Southern Team. I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2,

1

through next Tuesday, June 6. This reason for the unknown date is because this is a rapidly developing situation which involves FBI HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area. This is not a drug search but rather more of a document and computer related search. Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

Chuck McKee

## Mckee, Charles E. (AT) (FBI)

**From:** Mckee, Charles E. (AT) (FBI)
**Sent:** Friday, June 02, 2017 3:02 PM
**To:** Kirkland, Marcus (AT) (FBI)
**Subject:** RE: ERT Callout

It is looking like tomorrow morning when we will do it. I will let you know more in a few hours.

-------- Original message --------
From: "Kirkland, Marcus (AT) (FBI)" <███████████
Date: 06/02/2017 12:00 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <█████████████ ██████████, "Reynolds, Hubert J. (AT) (FBI)"
████████, "Johnson, Kimberly J. (AT) (FBI)" ██████████, "Granich, Kimberly C. (AT)
(FBI)" ██████████, "Szczepanski, Brian J. (AT) (FBI)" ██████████
Cc: "Butts, Mccarthy A. (AT) (FBI)" ████████████, "Garrick, Justin C. (AT) (FBI)"
████████, "Meafee, Thomas M. (AT) (FBI)" ██████████
Subject: RE: ERT Callout

Im in. Just let me know.

-----Original Message-----
From: Mckee, Charles E. (AT) (FBI)
Sent: Friday, June 02, 2017 11:50 AM
To: Kirkland, Marcus (AT) (FBI) <███████████; Reynolds, Hubert J. (AT) (FBI) <███████; Johnson, Kimberly
J. (AT) (FBI) ████████, Granich, Kimberly C. (AT) (FBI) ███████; Szczepanski, Brian J. (AT) (FBI)
Cc: Butts, Mccarthy A. (AT) (FBI) ███████; Garrick, Justin C. (AT) (FBI) ███████; Meafee, Thomas M.
(AT) (FBI) ████████
Subject: ERT Callout

Hello Southern Team. I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2,
through next Tuesday, June 6. This reason for the unknown date is because this is a rapidly developing situation which involves FBI
HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area. This is not a
drug search but rather more of a document and computer related search. Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

Chuck McKee

1

Mckee, Charles E. (AT) (FBI)

| | |
|---|---|
| **From:** | Mckee, Charles E. (AT) (FBI) |
| **Sent:** | Friday, June 02, 2017 7:21 PM |
| **To:** | Kirkland, Marcus (AT) (FBI) |
| **Cc:** | Butts, Mccarthy A. (AT) (FBI) |
| **Subject:** | RE: ERT Callout |

We are having a 10:00 AM rally time at the Augusta FBI office tomorrow.  Agents will affect the arrest and then our search team will begin.

Please reply back to acknowledge that you are good with this plan.

Thanks,

Chuck McKee

-------- Original message --------
From: "Kirkland, Marcus (AT) (FBI)" <
Date: 06/02/2017 3:32 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <
Subject: RE: ERT Callout

Before I leave the office today, are there any items, equipment, etc. I need to take home with me.

From: Mckee, Charles E. (AT) (FBI)
Sent: Friday, June 02, 2017 3:02 PM
To: Kirkland, Marcus (AT) (FBI) <
Subject: RE: ERT Callout

It is looking like tomorrow morning when we will do it.  I will let you know more in a few hours.

-------- Original message --------
From: "Kirkland, Marcus (AT) (FBI)" <
Date: 06/02/2017 12:00 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <                        >, "Reynolds, Hubert J. (AT) (FBI)"
(FBI)" <                        >, "Szezepanski, Brian J. (AT) (FBI)" <                        >, "Granich, Kimberly C. (AT)
Cc: "Butts, Mccarthy A. (AT) (FBI)" <                        >, "Garrick, Justin C. (AT) (FBI)"

1

�b████████▌, "Mcafee, Thomas M. (AT) (FBI)" ██████████████
Subject: RE: ERT Callout

Im in.  Just let me know.

-----Original Message-----
From: Mckee, Charles E. (AT) (FBI)
Sent: Friday, June 02, 2017 11:50 AM
To: Kirkland, Marcus (AT) (FBI) ◄██████████████; Reynolds, Hubert J. (AT) (FBI) ◄██████████████; Johnson, Kimberly
J. (AT) (FBI) ◄██████████▶; Granich, Kimberly C. (AT) (FBI) ◄██████████████; Szczepanski, Brian J. (AT) (FBI)
Cc: Butts, Mccarthy A. (AT) (FBI) ◄██████████████; Garrick, Justin C. (AT) (FBI) ◄██████████▶; Mcafee, Thomas M.
(AT) (FBI) ◄██████████▶.
Subject: ERT Callout

Hello Southern Team.  I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2,
through next Tuesday, June 6.  This reason for the unknown date is because this is a rapidly developing situation which involves FBI
HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area.  This is not a
drug search but rather more of a document and computer related search.  Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

Chuck McKee

**Garrick, Justin C. (AT) (FBI)**

| | |
|---|---|
| From: | Homburg, Michael B. (WF) (FBI) |
| Sent: | Saturday, June 03, 2017 7:37 AM |
| To: | Garrick, Justin C. (AT) (FBI); Varacalli, Michael F. (CD) (FBI); Grosse, Natalie V. (OGC) (FBI); Rich, Oliver E. (AT) (FBI); Harrison, James T. (AT) (FBI) |
| Subject: | Subject interview and polygraph authority |
| | |
| Follow Up Flag: | Follow up |
| Flag Status: | Flagged |

Justin,

This e-mail documents CD-4 SC authority to conduct a subject interview and administer a foreign counterintelligence-focused polygraph. Although authority is granted, cd-4 understands a polygraph is not currently planned.

I will document the above in an EC when I am in the office.

Mike

## Mckee, Charles E. (AT) (FBI)

| | |
|---|---|
| From: | Mckee, Charles E. (AT) (FBI) |
| Sent: | Saturday, June 03, 2017 8:24 PM |
| To: | Kirkland, Marcus (AT) (FBI) |
| Cc: | Butts, Mccarthy A. (AT) (FBI); Mcafee, Thomas M. (AT) (FBI); Joe Francois; Bryngelson, Mark C. (AT) (TFO); Harrison, James T. (AT) (FBI) |
| Subject: | RE: ERT Callout |

Search team,

Great job today. A very successful entire operation. With experience comes excellence and that was proven to be true by you today. Thank you for your hard work and focus to get the job done.

Chuck McKee


-------- Original message --------
From: "Kirkland, Marcus (AT) (FBI)" <
Date: 06/02/2017 7:28 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <               >, "Kirkland, Marcus (AT) (FBI)"
<mkirkland@fbi.gov>
Cc: "Butts, Mccarthy A. (AT) (FBI)" 
Subject: RE: ERT Callout

I'm good.


-------- Original message --------
From: "Mckee, Charles E. (AT) (FBI)" <
Date: 6/2/17 7:20 PM (GMT-05:00)
To: "Kirkland, Marcus (AT) (FBI)" <
Cc: "Butts, Mccarthy A. (AT) (FBI)" <
Subject: RE: ERT Callout

We are having a 10:00 AM rally time at the Augusta FBI office tomorrow. Agents will affect the arrest and then our search team will begin.

Please reply back to acknowledge that you are good with this plan.

Thanks,

Chuck McKee

1

-------- Original message --------
From: "Kirkland, Marcus (AT) (FBI)" <██████████
Date: 06/02/2017 3:32 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <█████████
Subject: RE: ERT Callout

Before I leave the office today, are there any items, equipment, etc. I need to take home with me.

**From:** Mckee, Charles E. (AT) (FBI)
**Sent:** Friday, June 02, 2017 3:02 PM
**To:** Kirkland, Marcus (AT) (FBI) ◁███████████
**Subject:** RE: ERT Callout

It is looking like tomorrow morning when we will do it.  I will let you know more in a few hours.

-------- Original message --------
From: "Kirkland, Marcus (AT) (FBI)" <███████
Date: 06/02/2017 12:00 PM (GMT-05:00)
To: "Mckee, Charles E. (AT) (FBI)" <c██████████, "Reynolds, Hubert J. (AT) (FBI)"
(FBI) <███████, "Johnson, Kimberly J. (AT) (FBI)" <███████, "Granich, Kimberly C. (AT)
Cc: "Butts, Mccarthy A. (AT) (FBI)" <█████████, "Szczepanski, Brian J. (AT) (FBI)"
█████████, "Mcafee, Thomas M. (AT) (FBI)" <██████████, "Garrick, Justin C. (AT) (FBI)"
Subject: RE: ERT Callout

Im in.  Just let me know.

-----Original Message-----
From: Mckee, Charles E. (AT) (FBI)
Sent: Friday, June 02, 2017 11:50 AM
To: Kirkland, Marcus (AT) (FBI) ███████████; Reynolds, Hubert J. (AT) (FBI) <██████; Johnson, Kimberly
J. (AT) (FBI) ███████████; Granich, Kimberly C. (AT) (FBI) <███████; Szczepanski, Brian J. (AT) (FBI)
Cc: Butts, Mccarthy A. (AT) (FBI) ████████; Garrick, Justin C. (AT) (FBI) ███████; Mcafee, Thomas M.
(AT) (FBI) ███████
Subject: ERT Callout

Hello Southern Team.  I wanted to let you know that we may have an ERT callout which may occur sometime from today, June 2,
through next Tuesday, June 6.  This reason for the unknown date is because this is a rapidly developing situation which involves FBI
HQ components who are calling the shots.

Here is what I know so far, the search will most likely involve a residence and automobile search in the Augusta area.  This is not a
drug search but rather more of a document and computer related search.  Not a high risk search but need to make sure we do it right.

Please let me know you availability for the search.

Thank you,

Chuck McKee

Garrick, Justin C. (AT) (FBI)

| | |
|---|---|
| **From:** | Harrison, James T. (AT) (FBI) |
| **Sent:** | Friday, June 02, 2017 7:37 PM |
| **To:** | Pak, Murang (AT) (FBI); Rich, Oliver E. (AT) (FBI); Grave-De-Peralta, Ricardo (AT) (FBI) |
| **Cc:** | Garrick, Justin C. (AT) (FBI) |
| **Subject:** | Fwd: Ops Plan |
| **Attachments:** | Ops Plan-BattleRow.docx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Warrant should be signed tonight or first thing in the AM. I've coordinated w/ Magistrate Judge. We're going to set up on subject house before 0700. CART and MST are due in AOR around 1000. Once we have subj in pocket and all loose ends tied up we'll execute SW. MST will remain on Subj after completion of search if we don't arrest. That's our plan for now...standing by for first contact though (I have a 1300 tee-time). I plan to push any media inquiries to Steve Emmett.

Oliver/GDP - Justin has done a fantastic job pulling this off in 24 hours.

-------- Original message --------
From: "Taylor, R. W. (AT) (FBI)" <███████████
Date: 6/2/17 2:23 PM (GMT-05:00)
To: "Harrison, James T. (AT) (FBI)" <███████████
Subject: Ops Plan

Wallace Taylor
Special Agent
FBI - Augusta
Office (706)722-3702
████████████

Garrick, Justin C. (AT) (FBI)

| | |
|---|---|
| **From:** | Harrison, James T. (AT) (FBI) |
| **Sent:** | Saturday, June 03, 2017 3:55 PM |
| **To:** | Turner, Lisa; Solari, Jennifer (USAGAS); Edelstein, Julie (NSD) (JMD) |
| **Cc:** | Andreas, Ethan T.; Garrick, Justin C. (AT) (FBI); Homburg, Michael B. (WF) (FBI); Grosse, Natalie V. (OGC) (FBI); Rich, Oliver E. (AT) (FBI); Harrison, James T. (AT) (FBI); Thompson, Matthew E. (CD) (FBI); Scott, Richard S. (NSD) (JMD) |
| **Subject:** | Re: RLW Search Warrant Affidavit |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Initiating contact now. Will execute SW in a few.

-------- Original message --------
From: "Turner, Lisa" <███████>
Date: 6/3/17 3:53 PM (GMT-05:00)
To: "Solari, Jennifer (USAGAS)" <███████>, "Edelstein, Julie (NSD) (JMD)"
<█>
Cc: "Andreas, Ethan T." <███████>, "Garrick, Justin C. (AT) (FBI)" <███████>, "Homburg,
Michael B. (WF) (FBI)" <███████>, "Grosse, Natalie V. (OGC) (FBI)" <███████>,
"Rich, Oliver E. (AT) (FBI)" <███████>, "Harrison, James T. (AT) (FBI)" <███████>,
"Thompson, Matthew E. (CD) (FBI)" <███████>, "Scott, Richard S. (NSD) (JMD)"
<███████>
Subject: Re: RLW Search Warrant Affidavit

Any updates?

Thanks,
Lisa
Lisa M. Turner
Associate General Counsel
Litigation

From: Solari, Jennifer (USAGAS) [mailto:J█████]
Sent: Saturday, June 03, 2017 01:32 PM
To: Turner, Lisa; Edelstein, Julie (NSD) (JMD) <█████>
Cc: Andreas, Ethan T.; Garrick, Justin C. (AT) (FBI)█████; Homburg, Michael B. (WF) (FBI)
<█████>; Grosse, Natalie V. (OGC) (FBI)█████; Rich, Oliver E. (AT) (FBI)
█████; Harrison, James T. (AT) (FBI)█████; Thompson, Matthew E. (CD) (FBI)
█████; Scott, Richard S. (NSD) (JMD)█████gov>
Subject: RE: RLW Search Warrant Affidavit

All,

# Garrick, Justin C. (AT) (FBI)

| | |
|---|---|
| **From:** | Harrison, James T. (AT) (FBI) |
| **Sent:** | Saturday, June 03, 2017 4:09 PM |
| **To:** | Turner, Lisa; Solari, Jennifer (USAGAS); Edelstein, Julie (NSD) (JMD) |
| **Cc:** | Andreas, Ethan T.; Garrick, Justin C. (AT) (FBI); Homburg, Michael B. (WF) (FBI); Grosse, Natalie V. (OGC) (FBI); Rich, Oliver E. (AT) (FBI)" Harrison, James T. (AT) (FBI); Thompson, |
| **Subject:** | Matthew E. (CD) (FBI); Scott, Richard S. (NSD) (JMD)<br>Re: RLW Search Warrant Affidavit |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Residence secure. Initiating search. Winner appears to be cooperative but opted to be interviewed at residence vice FBI office.

-------- Original message --------
From: "Turner, Lisa"
Date: 6/3/17 3:53 PM (GMT-05:00)
To: "Solari, Jennifer (USAGAS)"                                        >, "Edelstein, Julie (NSD) (JMD)"
Cc: "Andreas, Ethan T."                          "Garrick, Justin C. (AT) (FBI)"                                "Homburg,
Michael B. (WF) (FBI)"                     >, "Grosse, Natalie V. (OGC) (FBI)"
"Rich, Oliver E. (AT) (FBI)"                          "Harrison, James T. (AT) (FBI)"
"Thompson, Matthew E. (CD) (FBI)"                              , "Scott, Richard S. (NSD) (JMD)"
Subject: Re: RLW Search Warrant Affidavit

Any updates?

Thanks,
Lisa
Lisa M. Turner
Associate General Counsel
Litigation

**From:** Solari, Jennifer (USAGAS) [ma
**Sent:** Saturday, June 03, 2017 01:32 PM
**To:** Turner, Lisa; Edelstein, Julie (NSD) (JMD)
**Cc:** Andreas, Ethan T.; Garrick, Justin C. (AT) (FBI)                      ; Homburg, Michael B. (WF) (FBI)
                        Grosse, Natalie V. (OGC) (FBI)                        Rich, Oliver E. (AT) (FBI)
               Harrison, James T. (AT) (FBI)                      ; Thompson, Matthew E. (CD) (FBI)
                    ; Scott, Richard S. (NSD) (JMD)
**Subject:** RE: RLW Search Warrant Affidavit

1

# Garrick, Justin C. (AT) (FBI)

| | |
|---|---|
| From: | Harrison, James T. (AT) (FBI) |
| Sent: | Saturday, June 03, 2017 5:20 PM |
| To: | Turner, Lisa; Solari, Jennifer (USAGAS); Edelstein, Julie (NSD) (JMD) |
| Cc: | Andreas, Ethan T.; Garrick, Justin C. (AT) (FBI); Homburg, Michael B. (WF) (FBI); Grosse, Natalie V. (OGC) (FBI); Rich, Oliver E. (AT) (FBI); Harrison, James T. (AT) (FBI); Thompson, Matthew E. (CD) (FBI); Scott, Richard S. (NSD) (JMD) |
| Subject: | Re: RLW Search Warrant Affidavit |
| Follow Up Flag: | Follow up |
| Flag Status: | Flagged |

Interview continues; however, Winner has thus far stated she downloaded the report and mailed it to the news outlet.

-------- Original message --------
From: "Turner, Lisa" <
Date: 6/3/17 3:53 PM (GMT-05:00)
To: "Solari, Jennifer (USAGAS)" <                                    >, "Edelstein, Julie (NSD) (JMD)"
Cc: "Andreas, Ethan T."                              , "Garrick, Justin C. (AT) (FBI)"                       , "Homburg,
Michael B. (WF) (FBI)"                          , "Grosse, Natalie V. (OGC) (FBI)"
"Rich, Oliver E. (AT) (FBI)"                  "Harrison, James T. (AT) (FBI)"
"Thompson, Matthew E. (CD) (FBI)"                         "Scott, Richard S. (NSD) (JMD)"
Subject: Re: RLW Search Warrant Affidavit

Any updates?

Thanks,
Lisa
Lisa M. Turner
Associate General Counsel
Litigation

From: Solari, Jennifer (USAGAS) [mailto:
Sent: Saturday, June 03, 2017 01:32 PM
To: Turner, Lisa; Edelstein, Julie (NSD) (JMD)
Cc: Andreas, Ethan T.; Garrick, Justin C. (AT) (FBI)
                        Grosse, Natalie V. (OGC) (FBI)                       Homburg, Michael B. (WF) (FBI)
                 Harrison, James T. (AT) (FBI)                        Rich, Oliver E. (AT) (FBI)
                            Scott, Richard S. (NSD) (JMD)          Thompson, Matthew E. (CD) (FBI)
Subject: RE: RLW Search Warrant Affidavit

1

DEFENDANT'S
EXHIBIT NO.            2

CASE NO.
117cr00034

US

vs.

Winner

MARKED FOR IDENTIFICATION   2/27/2018
email from O-Riles

FILED IN EVIDENCE
02/27/2018

SCOTT L. POFF, CLERK

**From:** Rich, Oliver E. Jr. (AT) (FBI)
**To:** Solari, Jennifer (USAGAS)
**Subject:** FW: Case funds
**Date:** Monday, February 26, 2018 2:18:34 PM

---

**From:** Homburg, Michael B. (WF) (FBI)
**Sent:** Friday, June 02, 2017 7:16 PM
**To:** Rich, Oliver E. (AT) (FBI)  ▮▮▮▮▮▮▮▮▮▮>
**Cc:** Varacalli, Michael F. (CD) (FBI)  ▮▮▮▮▮▮▮▮▮▮>; Haertel, Paul H. (CD) (FBI)
<▮▮▮▮▮▮▮▮▮v>
**Subject:** RE: Case funds

Oliver,

This email confirms CD-4 will coordinate the enhancement of FBI Atlanta's budget, provide a TR#, or coordinate with CIRG to cover the costs associated with the deployment of surveillance assets for this matter.

CES/USAO have indicated a PC arrest would be potentially authorized if the subject decides to flee so please plan accordingly (to cover with fisur and for arrest if authorized).

I am also in the process of obtaining declassification for information in the affidavit.  Will include you on the email so we can start discussing timing.  I believe the USAO and CES planned to start fresh in the AM to finalize the warrant.

Mike

---

**From:** Rich, Oliver E. (AT) (FBI)
**Sent:** Friday, June 02, 2017 6:21 PM
**To:** Homburg, Michael B. (WF) (FBI) <▮▮▮▮▮▮▮▮▮▮
**Subject:** Case funds

Mike,

We are deploying surveillance teams to SE Georgia this weekend. We will need a funding enhancement to cover tdy expenses.  I will get you an estimate.

Thanks,
Oliver

--

DEFENDANT'S
EXHIBIT NO. **3**

CASE NO.
11 7 cr 00034

US

vs.

Winner

MARKED FOR IDENTIFICATION
196 2/27/2018

FILED IN EVIDENCE
02/27/2018

SCOTT L. POFF, CLERK



DEFENDANT'S
EXHIBIT NO. 4

CASE NO. 117 cr 00034

us

vs.

Winner

MARKED FOR IDENTIFICATION
Tonas 0108 2/27/2018

FILED IN EVIDENCE
2/27/2018

SCOTT POFF, CLERK



DEFENDANT'S
EXHIBIT NO. 5

CASE NO. 1:17 - cr- 00034

US

vs.

Winner

MARKED FOR IDENTIFICATION

Image 107    2/27/2018

FILED IN EVIDENCE

2/27/2018

SCOTT L. POFF, CLERK



DEFENDANT'S
EXHIBIT NO.   6

CASE NO.   117 cr 00034

US

vs.

Winner

MARKED FOR IDENTIFICATION 2/27/2018

Imagine   0195

FILED IN EVIDENCE   2/27/2018

SCOTT L. POFF, CLERK



DEFENDANT'S
EXHIBIT NO. 7

CASE NO. #17 cr 00034

US

vs.

Winner

MARKED FOR IDENTIFICATION

Tms # 0109   2/27/2018

FILED IN EVIDENCE   2/27/2018

SCOTT L. POFF, CLERK



DEFENDANT'S
EXHIBIT NO. 8

CASE NO. 1:17 cr 00034

US

vs.

Winner

MARKED FOR IDENTIFICATION

Image 01 36  2/27/2018

FILED IN EVIDENCE

2/27/2018

SCOTT L. POFF, CLERK



AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Georgia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. 1:17 MJ 24 |
| 1957 BATTLE ROW, AUGUSTA, GA 30904; | ) |
| A LIGHT COLORED NISSAN CUBE WITH VIN | ) |
| JN8AZ2KR0CT254476, and the person of REALITY LEIGH WINNER | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the          Southern          District of          Georgia
*(identify the person or describe the property to be searched and give its location)*:

**See Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before          June 17, 2017          *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Brian K. Epps, United States Magistrate Judge    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for          days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of

Date and time issued:     6/3/17,  12:57 p.m.

Judge's signature

City and state:     Augusta, Georgia          Brian K Epps, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The premises to be searched, 1957 Battle Row, Augusta, GA 30904, is further described as a stand-alone, one-story house, located near the intersection of Battle Row and Walker Street. It is a red brick house with a shingle roof. The numbers 1957 are visible on the residence. The front door is covered by a front porch.

The vehicle to be searched in a light-colored Nissan Cube with VIN JN8AZ2KR0CT254476, co-registered to REALITY LEIGH WINNER.

The person to be searched is REALITY LEIGH WINNER, who is a white female with blonde hair and blue eyes, 5'5" tall, weighing approximately 145 pounds, with DOB December 4, 1991.

16

## ATTACHMENT B

*Properly to be seized*

1.     All documents and records relating to violations of 18 U.S.C. § 793, involving REALITY LEIGH WINNER and occurring after January 1, 2013, including:

      a.     Classified material;

      b.     Any U.S. Government material:

      c.     Contacts, by any means, with foreign governments. foreign powers, or agents of foreign powers;

      d.     Contacts, by any means, with media outlets:

      e.     Information, including communications in any form, regarding the retrieval, storage, or transmission of sensitive or classified material;

      f.     Records of travel, including calendars, travel tickets, receipts, and photographs;

      g.     Information regarding tradecraft, how to obtain or deliver sensitive information, and/or how to avoid or evade detection by intelligence officials or law enforcement authorities;

      h.     Financial records, including bank statements. account information and records of any financial transaction;

      i.     Information relevant to a motive for the offense, such as anti-government statements. propaganda, research, and solicitations or offers to engage in anti-government or unlawful activities.

2.     Computers or storage media used as a means to commit the violations described

4

above.

3.　　For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence:

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software:

    c.  evidence of the lack of such malicious software:

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence:

g.   evidence of counter-forensic programs (and associated data) that are designed to

eliminate data from the COMPUTER:

h.   evidence of the times the COMPUTER was used:

i.    passwords, encryption keys, and other access devices that may be necessary to

access the COMPUTER;

j.    documentation and manuals that may be necessary to access the COMPUTER or

to conduct a forensic examination of the COMPUTER;

k.   records of or information about Internet Protocol addresses used by the

COMPUTER;

l.    records of or information about the COMPUTER's Internet activity, including

firewall logs, caches, browser history and cookies, "bookmarked" or "favorite"

web pages, search terms that the user entered into any Internet search engine, and

records of user-typed web addresses:

m.  contextual information necessary to understand the evidence described in this

attachment.

4.      Routers, modems, and network equipment used to connect computers to the

Internet.

As used above, the terms "records" and "information" includes all forms of creation or

storage, including any form of computer or electronic storage (such as hard disks or other media

that can store data); any handmade form (such as writing); any mechanical form (such as printing

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives,

6

videotapes, motion pictures, or photocopies).

The term "documents" means records, notes, letters, correspondence, forms, financial records, checks, ledgers, accounting papers, computer printouts, saved e-mail, information on computer hard drives and disks, computer input and output reports, and writings, and any other item of any type that conveys information.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

IN THE MATTER OF THE SEARCH OF:                    (
                                                   (
1957 BATTLE ROW,                                   (
AUGUSTA, GA 30904 and                              (
A LIGHT COLOR NISSAN CUBE WITH                     (
VIN JN8AZ2KR0C1254476, and the person             (
of REALITY LEIGH WINNER                            (

Case No. 1:17MJ24

**Filed Under Seal**

AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE

I, Justin C. Garrick, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 1957 Battle Row, Augusta, GA 30904, hereinafter "PREMISES," further described in Attachment A; a light-colored Nissan Cube with VIN JN8AZ2KR0C1254476, hereinafter "VEHICLE"; and the person of REALITY LEIGH WINNER, hereinafter "WINNER," for the things described in Attachment B.

2.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Atlanta division, and have been since 2008. During this time, I have received training at the FBI Academy located at Quantico, Virginia, specific to counterintelligence and espionage investigations. I currently am assigned to investigate counterintelligence and espionage matters. Based on my experience and training, I am familiar with efforts used to unlawfully collect and disseminate sensitive government information, including national defense information.

3.    There is probable cause to believe that the PREMISES, VEHICLE, and WINNER's

person contain evidence, contraband, fruits. and/or other items illegally possessed in violation of 18 U.S.C. § 793(e).

4.      The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, and information from other FBI and U.S. Government personnel. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY AUTHORITY AND DEFINITIONS

5.      For the reasons set forth below. I believe that there is probable cause to believe that the PREMISES, VEHICLE, and WINNER's person contain evidence, contraband, fruits, and/or other items illegally possessed in violation of Title 18, United States Code, Section 793(e) (the "Subject Offense").

6.      Under 18 U.S.C. § 793(e), "whoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation. willfully communicates. delivers. transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

7.      Under Executive Order 13526. information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls

2

within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

8.    Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "Secret" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

9.    Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person. In order for a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

10.    Pursuant to Executive Order 13526, classified information contained on automated

information systems, including networks and telecommunications systems, that collect, create, communicate, compute, disseminate, process, or store classified information must be maintained in a manner that: (1) prevents access by unauthorized persons; and (2) ensures the integrity of the information.

11.     32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information. Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information. This section prescribes that Secret and Top Secret information "shall be stored in a GSA-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53." It also requires periodic inspection of the container and the use of an Intrusion Detection System, among other things.

## PROBABLE CAUSE

12.     As set forth in further detail below, WINNER is under investigation for printing and improperly removing and transmitting classified material from an Intelligence Community Agency (the "U.S. Government Agency") on or about May 9, 2017, and passing the classified material to an online news outlet (the "News Outlet"). WINNER is a contractor with Pluribus International Corporation assigned to a U.S. Government Agency facility in Georgia. She has been employed at the facility since on or about February 13, 2017. From January 2013 until her employment with Pluribus International Corporation, WINNER was an active duty member of the U.S. Air Force and held a Top Secret clearance.

13.     On June 1, 2017, the FBI was notified by the U.S. Government Agency that the U.S. Government Agency had been contacted by the News Outlet on May 30, 2017, regarding an upcoming story. The News Outlet informed the U.S Government Agency that it was in

4

possession of what it believed to be a classified document authored by the U.S Government

Agency. The News Outlet provided the U.S. Government Agency with a copy of this document.

Subsequent analysis by the U.S. Government Agency confirmed that the document in the News

Outlet's possession is intelligence reporting dated on or about May 5, 2017 (the "intelligence

reporting"). This intelligence reporting is classified at the Top Secret level, indicating that its

unauthorized disclosure could reasonably result in exceptionally grave damage to the national

security, and is marked as such. The U.S. Government Agency has since confirmed that the

reporting contains information that was classified at that level at the time that the reporting was

published on or about May 5, 2017, and that such information currently remains classified at that

level.

      14.    The U.S. Government Agency examined the document shared by the News Outlet

and determined the pages of the intelligence reporting appeared to be folded and/or creased,

suggesting they had been printed and hand-carried out of a secured space.

      15.    The U.S. Government Agency conducted an internal audit to determine who

accessed the intelligence reporting since its publication. The U.S. Government Agency

determined that six individuals printed this reporting. These six individuals included WINNER.

A further audit of the six individuals' desk computers revealed that WINNER had e-mail contact

with the News Outlet. The audit did not reveal that any of the other individuals had e-mail contact

with the News Outlet.

      16.    The U.S. Government Agency determined that WINNER had e-mail

communication with the News Outlet on or about March 30, 2017, and March 31, 2017. The first

e-mail was from WINNER, using e-mail address da3rc.fitness@gmail.com, to the News Outlet.

In it, WINNER appeared to request transcripts of a podcast. The second e-mail was from the News Outlet to da3re.fitness@gmail.com and confirmed WINNER's subscription to the service. The da3re.fitness@gmail.com account is a personal e-mail account not sponsored by or affiliated with the U.S. Government Agency.

17.   On or about May 9, 2017, four days after the publication of the classified report, WINNER conducted searches on the U.S. Government Agency's classified system for certain search terms, which led WINNER to identify the intelligence reporting. On or about May 9, 2017, WINNER also printed the intelligence reporting. A review of WINNER's computer history revealed she did not print any other intelligence report in May 2017.

18.   At all times relevant to this affidavit, WINNER has maintained an active Top Secret clearance. The U.S. Government Agency confirmed that although WINNER had the required access to search for and view the intelligence reporting, the information contained in the intelligence reporting is unrelated to her job duties, and WINNER therefore does not possess a "need to know."

19.   On or about May 24, 2017, a reporter for the News Outlet (the "Reporter") contacted another U.S. Government Agency affiliate with whom he has a prior relationship. This individual works for a contractor for the U.S. Government (the "Contractor"). The Reporter contacted the Contractor via text message and asked him to review certain documents. The Reporter told the Contractor that the Reporter had received the documents through the mail, and they were postmarked "Augusta, Georgia." WINNER resides in Augusta, Georgia. The Reporter believed that the documents were sent to him from someone working at the location where WINNER works. The Reporter took pictures of the documents and sent them to the Contractor.

6

The Reporter asked the Contractor to determine the veracity of the documents. The Contractor informed the Reporter that he thought that the documents were fake. Nonetheless, the Contractor contacted the U.S. Government Agency on or about June 1, 2017, to inform the U.S. Government Agency of his interaction with the Reporter. Also on June 1, 2017, the Reporter texted the Contractor and said that a U.S Government Agency official had verified that the document was real. When questioned about what intelligence report number was associated with the images on his phone, the Contractor supplied the reporting number associated with the intelligence reporting at issue.

20.    On May 27 to 29, 2017, WINNER traveled outside the United States to Belize in Central America. WINNER provided notice to the U.S. Government Agency in March 2017 of her intent to travel to Belize in May 2017. The purpose of WINNER's travel and her activities while abroad are unknown.

21.    WINNER resides at the PREMISES, as verified on June 2, 2017, by her Driver's License address and two utility billing addresses. Additionally, WINNER owns and drives a light-colored Nissan Cube with VIN JN8AZ2KR0CT254476, as verified by the vehicle registration information. Agents viewed a light-colored Nissan Cube parked at the PREMISES on June 2, 2017, and witnessed WINNER traveling in the VEHICLE in Augusta, Georgia, on June 3, 2017. I confirmed on June 2, 2017, that WINNER has a cellular phone serviced by Cingular/AT&T. In my training and experience, people typically store their electronics and correspondence (including letters or printed emails) in their homes and transport them in their vehicles. I also know that people typically carry small electronic storage devices and communication devices, such as thumb drives and cellular phones, on their person. There is thus

probable cause to believe that intelligence reporting and evidence of correspondence between WINNER and the News Outlet, among other items of evidentiary value, may be found inside the PREMISES and the VEHICLE, as well as on storage and communication devices on WINNER's person. Moreover, there is probable cause to believe that evidence of communications between WINNER and the News Outlet, among other items of evidentiary value, will be found on WINNER's electronic devices at the PREMISES, in the VEHICLE, and on WINNER's person.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

22.     As described in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in the VEHICLE, and on WINNER's person, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

23.     *Probable cause.* I submit that if a computer or storage medium is found on the PREMISES, in the VEHICLE, or on WINNER's person, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

        a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a

computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the storage medium that is not currently being used by an active file .. for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media - in particular, computers' internal hard drives - contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

24.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe

that this forensic electronic evidence will be on any storage medium in the PREMISES, in the VEHICLE, or on WINNER's person because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

10

detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used, for example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein

may either inculpate or exculpate the computer user. Last, information stored
within a computer may provide relevant insight into the computer user's state of
mind as it relates to the offense under investigation. For example, information
within the computer may indicate the owner's motive and intent to commit a crime
(e.g., internet searches indicating criminal planning), or consciousness of guilt
(e.g., running a "wiping" program to destroy evidence on the computer or
password protecting/encrypting such evidence in an effort to conceal it from law
enforcement).

c.   A person with appropriate familiarity with how a computer works can, after
examining this forensic evidence in its proper context, draw conclusions about how
computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other
forms of forensic evidence on a storage medium that are necessary to draw an
accurate conclusion is a dynamic process. While it is possible to specify in
advance the records to be sought, computer evidence is not always data that can be
merely reviewed by a review team and passed along to investigators. Whether data
stored on a computer is evidence may depend on other information stored on the
computer and the application of knowledge about how a computer behaves.
Therefore, contextual information necessary to understand other evidence also falls
within the scope of the warrant.

e.   Further, in finding evidence of how a computer was used, the purpose of its use,
who used it, and when, sometimes it is necessary to establish that a particular thing

12

is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

25.     *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises or vehicle for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises or vehicle, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

     a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

     b.  Technical requirements.  Computers can be configured in several different ways,

featuring a variety of different operating systems, application software, and

configurations.  Therefore, searching them sometimes requires tools or knowledge

that might not be present on the search site.  The vast array of computer hardware

and software available makes it difficult to know before a search what tools or

knowledge will be required to analyze the system and its data on the Premises.

However, taking the storage media off-site and reviewing it in a controlled

environment will allow its examination with the proper tools and knowledge.

     c.  Variety of forms of electronic media.  Records sought under this warrant could be

stored in a variety of storage media formats that may require off-site reviewing

with specialized forensic tools.

26.    *Nature of examination.* Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying

storage media that reasonably appear to contain some or all of the evidence described in the

warrant, and would authorize a later review of the media or information consistent with the

warrant.  The later review may require techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of a hard drive to human inspection in

order to determine whether it is evidence described by the warrant.

<div align="center">

**CONCLUSION**

</div>

27.    I submit that this affidavit supports probable cause for a warrant to search the

PREMISES, the VEHICLE, and the PERSON described in Attachment A and seize the items

described in Attachment B.

<div align="center">14</div>

## REQUEST FOR SEALING

28.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and the FBI has not yet identified all potential criminal confederates nor located all evidence related to its investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness by allowing criminal parties an opportunity to flee, destroy evidence (stored electronically and otherwise), change patterns of behavior, and notify criminal confederates.

Respectfully submitted,

Justin C. Garrick
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on June 3, 2017:

THE HONORABLE BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

DEFENDANT'S
EXHIBIT NO. *10*

CASE NO. CR17-034

USA

vs.

Reality Leigh Winner

MARKED FOR IDENTIFICATION 02/27/2018

FILED IN EVIDENCE 02/27/2018

SCOTT L. POFF, CLERK

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Georgia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| REALITY LEIGH WINNER | ) | 1:17-MJ-024 |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 9, 2017 _____ in the county of ____ Augusta-Richmond ____ in the

__ Southern __ District of ____ Georgia ____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 793(e) | Gathering, Transmitting or Losing Defense Information |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Justin C. Garrick, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 06/05/2017 _____

_____
*Judge's signature*

City and state: _____ Augusta, Georgia _____

Brian K. Epps, United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Justin C. Garrick, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Atlanta division, and have been since 2008. During this time, I have received training at the FBI Academy located at Quantico, Virginia, specific to counterintelligence and espionage investigations. I currently am assigned to investigate counterintelligence and espionage matters. Based on my experience and training, I am familiar with efforts used to unlawfully collect and disseminate sensitive government information, including national defense information.

2.     Your affiant is currently investigating the activities of REALITY LEIGH WINNER ("WINNER"), whom your affiant believes willfully retained and transmitted classified national defense information to a person not entitled to receive it in violation of 18 U.S.C. § 793(e). These acts occurred in Augusta, Georgia, which is located within the Southern District of Georgia. Your affiant submits this complaint in support of the arrest of WINNER.

3.     The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other U.S. Government officers, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for WINNER's arrest and does not set forth all of your affiant's knowledge about this matter.

### STATUTORY AUTHORITY AND DEFINITIONS

4.     For the reasons set forth below, I believe that there is probable cause to believe that WINNER committed a violation of Title 18, United States Code, Section 793(e).

1

*Affidavit in support of arrest of REALITY LEIGH WINNER*

5. Under 18 U.S.C. § 793(e), "whoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

6. Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

7. Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "Secret" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

8.    Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person. In order for a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

9.    Pursuant to Executive Order 13526, classified information contained on automated information systems, including networks and telecommunications systems, that collect, create, communicate, compute, disseminate, process, or store classified information must be maintained in a manner that: (1) prevents access by unauthorized persons; and (2) ensures the integrity of the information.

10.    32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information. Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information. This section prescribes that Secret and Top Secret information "shall be stored in a GSA-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53." It also requires periodic inspection of the

3

container and the use of an Intrusion Detection System, among other things.

## PROBABLE CAUSE

11.     WINNER is a contractor with Pluribus International Corporation assigned to a U.S. Government Agency facility in Georgia. She has been employed at the facility since on or about February 13, 2017, and has held a Top Secret clearance during that time. As set forth in further detail below, on or about May 9, 2017, WINNER printed and improperly removed classified intelligence reporting, which contained classified national defense information and was dated on or about May 5, 2017 (the "intelligence reporting") from an Intelligence Community Agency (the "U.S. Government Agency") and unlawfully retained it. Approximately a few days later, WINNER then unlawfully transmitted the intelligence reporting to an online news outlet (the "News Outlet").

12.     On June 1, 2017, the FBI was notified by the U.S. Government Agency that the U.S. Government Agency had been contacted by the News Outlet on May 30, 2017, regarding an upcoming story. The News Outlet informed the U.S. Government Agency that it was in possession of what it believed to be a classified document authored by the U.S. Government Agency. The News Outlet provided the U.S. Government Agency with a copy of this document. Subsequent analysis by the U.S. Government Agency confirmed that the document in the News Outlet's possession is the intelligence reporting. The intelligence reporting is classified at the Top Secret level, indicating that its unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, and is marked as such. The U.S. Government Agency has since confirmed that the reporting contains information that was

*Affidavit in support of arrest of REALITY LEIGH WINNER*

classified at that level at the time that the reporting was published on or about May 5, 2017, and that such information currently remains classified at that level.

13. The U.S. Government Agency examined the document shared by the News Outlet and determined the pages of the intelligence reporting appeared to be folded and/or creased, suggesting they had been printed and hand-carried out of a secured space.

14. The U.S. Government Agency conducted an internal audit to determine who accessed the intelligence reporting since its publication.   The U.S. Government Agency determined that six individuals printed this reporting.  WINNER was one of these six individuals. A further audit of the six individuals' desk computers revealed that WINNER had e-mail contact with the News Outlet.  The audit did not reveal that any of the other individuals had e-mail contact with the News Outlet.

15. On June 3, 2017, your affiant spoke to WINNER at her home in Augusta, Georgia. During that conversation, WINNER admitted intentionally identifying and printing the classified intelligence reporting at issue despite not having a "need to know," and with knowledge that the intelligence reporting was classified.   WINNER further admitted removing the classified intelligence reporting from her office space, retaining it, and mailing it from Augusta, Georgia, to the News Outlet, which she knew was not authorized to receive or possess the documents. WINNER further acknowledged that she was aware of the contents of the intelligence reporting and that she knew the contents of the reporting could be used to the injury of the United States and to the advantage of a foreign nation.

<div align="center">5</div>

<div align="center">*Affidavit in support of arrest of REALITY LEIGH WINNER*</div>

## CONCLUSION

16.     Your affiant submits that the facts set forth in this affidavit establish probable cause to believe WINNER committed a violation of 18 U.S.C. Section 793(e).   Therefore, your affiant respectfully requests this Court issue an arrest warrant for WINNER.

Respectfully submitted,

Justin C. Garrick
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on June 5, 2017:

THE HONORABLE BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

6

*Affidavit in support of arrest of REALITY LEIGH WINNER*

DEFENDANT'S
EXHIBIT NO.   II

CASE NO.   CR 117 - 034

USA

vs.

Reality Leigh Winner

MARKED FOR IDENTIFICATION
02/27/2018

FILED IN EVIDENCE
02/27/2018

SCOTT L. POFF, CLERK

