IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
          vs.                      )     1:17CR34
                                   )
REALITY LEIGH WINNER,              )
                                   )
          Defendant.               )
_____)

STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN K. EPPS
TUESDAY, DECEMBER 19, 2017; 11:05 A.M.
AUGUSTA, GEORGIA

FOR THE GOVERNMENT:

     Jennifer G. Solari, Esquire
     U.S. Attorney's Office
     Post Office Box 8970
     Savannah, Georgia 31412
     (912)201-2561

     Julie Ann Edelstein, Esquire (via telephone)
     U.S. Department of Justice
     600 E Street NW, 10th Floor
     Washington, DC 20002
     (202)233-2260

     David C. Aaron, Esquire (via telephone)
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530
     (202)307-5190

**FOR THE DEFENDANT:**

    John C. Bell, Jr., Esquire
    Titus T. Nichols, Esquire
    Bell & Brigham
    457 Greene Street
    Augusta, Georgia 30901
    (706)722-2014

    Joe D. Whitley, Esquire
    Brett A. Switzer, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    3414 Peachtree Road, NE, Suite 1600
    Atlanta, Georgia 30326
    (404)223-2209

    Thomas H. Barnard, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    100 Light Street, 19th Floor
    Baltimore, Maryland 21202
    (410)862-1185


**OFFICIAL COURT REPORTER:**

    Lisa H. Davenport, RPR, FCRR
    Post Office Box 5485
    Aiken, South Carolina 29804
    (706)823-6468

1              (Call to Order at 11:05 a.m.)

2         THE CLERK:  The court calls case number 1:17CR34.

3    The United States of America v Reality Leigh Winner.  Jennifer

4    Solari, Julie Edelstein, David Aaron for the government.  Joe

5    Whitley, John C. Bell, Titus Nichols, Brett Switzer, and Thomas

6    Barnard for the defendant.  Here for a status conference.

7         THE COURT:  Good morning, everybody.

8       (Group responds simultaneously.)

9         THE COURT:  There is some chatter in the background.

10        THE CLERK:  It is feedback.

11        THE COURT:  Okay.  We took care of that.  So we have

12   Ms. Edelstein and Mr. Aaron available on the phone.  Is that

13   right?

14        MS. EDELSTEIN:  Yes, Your Honor.

15        MR. AARON:  Yes, Your Honor.

16        THE COURT:  Okay.  At the beginning of this hearing I

17   do want to talk briefly about a concern raised to me this

18   morning by the CIPA office.  There have been some issues with

19   following the security protocol at the SCIF here.  I think this

20   has happened on several occasions now, and I just want to put

21   everybody on notice that the Court is not going to tolerate

22   that anymore.  If there are any breaches of security protocol

23   from now on, that will be reported to me, and if I find that it

24   wasn't just some -- you know, if you're trying your best and

25   you make a mistake, then that's one thing, but if you're being

1   reckless and you're not following procedure, that's another,

2   and so I am going to revoke someone's access -- anybody's

3   access -- to the SCIF if I find that they are not being

4   diligent in their use of the protocols that we have.  So let's

5   all be very aware of that and diligent in our efforts.  There

6   are a couple of other housekeeping issues that I want to talk

7   about.

8        First of all, for the record, Mr. Whitley, has Ms. Winner

9   been notified of her right to attend today's hearing, and, if

10  so, did she elect not to attend?

11            MR. WHITLEY:  Yes, sir.  She was notified and she

12  elected not to attend.  Thank you.

13            THE COURT:  Okay.  All right.  Another housekeeping

14  matter -- if I could get a working copy -- a work copy of the

15  audio CDs that the Government attached to its response to the

16  Motion to Suppress, that would be very helpful to me.

17            MRS. SOLARI:  I'll provide those today, Your Honor.

18            THE COURT:  Okay.  Thank you, Mrs. Solari.  There is

19  no rush in that.

20        Moving on to the reason I scheduled this hearing today, in

21  looking at the filings occurring after our discovery hearing

22  and thinking about where the case sits and where we're heading,

23  a lot depends, I think, on what Judge Hall decides the elements

24  of the offense are and the scope of permissible discovery on

25  the appeal that the Defense is going to file, and without a

1    final determination from him in that regard, we will not have a

2    good basis for the Defense to prepare its revised Rule 17

3    subpoenas and, really, even to finalize its Section 5 Notice.

4         In looking at the Section 5 Notice that we have, there are

5    a lot of categories there that are identical to the categories

6    of discovery requests that I ruled on in the scope of that

7    Motion to Compel that the Defense filed, and so it seems to me

8    getting that before Judge Hall and getting a ruling is a

9    condition precedent to us accomplishing a lot when it comes to

10   the Rule 17 subpoenas, wrapping up the discovery process, and

11   getting a finalized Section 5 Notice so we can proceed with the

12   CIPA part of the case.

13        So based on that, I've come up with some basic conclusions

14   about what I think we need to do, how we're best to proceed

15   here, and I want to put that on the record and then hear from

16   the parties about your thoughts and concerns.  I think the most

17   obvious thing is to cancel the deadline for the revised Rule 17

18   subpoenas right now and that way the Defense will have a chance

19   to incorporate Judge Hall's rulings into those Rule 17

20   subpoenas.

21        I think that in light of that we can probably put a little

22   more priority on the appeal that the Defense is going to file,

23   and so my proposal there would be to change the deadline for

24   appeal of the discovery ruling and make it 14 days from the

25   date that the transcript is issued rather than 28 because we

1    need to get that up to Judge Hall as soon as we can, and then

2    the next proposal would be to stay all of the CIPA deadlines

3    that are currently listed in the Fourth Amended Scheduling

4    Order, and after the ruling from Judge Hall, we would then

5    impose new deadlines for the Rule 17 subpoenas to be filed and

6    the Defense to file its final Section 5 Notice, and I guess the

7    only thing that we would allow to proceed and have a hearing on

8    maybe while the appeal is pending would be all of the pretrial

9    motions that have been referred to me; although, I haven't

10   settled on a date for that.

11        Another thing I started really thinking about more was

12   this issue of whether we even have briefing and a hearing on

13   the sufficiency of the Section 5 Notice.  To me the issue is

14   not whether the Section 5 categories listed are unclear or

15   unambiguous or vague.  It's more of whether they -- the

16   categories listed fall outside of the elements of the offense

17   or inside the elements of the offense such that they're

18   relevant and admissible at trial.

19        That's more, to me, what Judge Hall is supposed to rule on

20   at the Section Six hearing and not -- does not lend itself to

21   us having a hearing or briefing on the sufficiency issue now

22   that I've had a chance to dig into that Section 5 Notice and

23   look at it.  So my inclination is to go back to my original

24   thought of not having a hearing or a ruling on the sufficiency

25   of the revised Section 5 Notice that the Defense would file

1    after Judge Hall issues a ruling on the discovery issues.

2        So that's where my thoughts lie right now, and so I think

3    it might be best to turn to the Defense first for any comments

4    or concerns you have about those proposals.

5            MR. BARNARD:  Thank you, Your Honor.  Tom Barnard for

6    the Defendant, Reality Winner.  A couple of thoughts -- I think

7    the concerns you've raised are echoed by the Defense in many

8    ways.  They're the kind of, I guess, obvious conclusions that

9    are becoming apparent as you look at the way things are going

10   and that it feels like we're responding and addressing things

11   with kind of half a picture because we're not really sure what

12   the eventual trial strategy or our case will look like until we

13   know what's going to be available and what's included.

14       So I think taking a little bit of cautious approach to

15   especially the CIPA Five disclosure makes a lot of sense --

16   tabling that until we know what Judge Hall's position will be

17   and then we submit a revised one.  What the parties have

18   been -- again, I think kind of just like we talked about --

19   first I'll put on the note that the NSA Counsel, as you asked

20   us to before, we do have a date that you can put on your

21   calendar that we were going to propose to schedule a meeting

22   back here in Augusta of 17th -- January 17th.  I bring that up

23   now because I think it's an interesting approach that we can

24   set for -- use that day since we're going to come to Augusta

25   maybe to try and get some -- maybe do a kind of status update

1   on the 17th.

2        What I'd like the Court to know is that the Government and

3   the Defense have scheduled to meet in DC on the 27th of

4   December to kind of go over the schedule that some of the

5   issues you've just voiced concern over and see if we can

6   brainstorm some kind of solutions to streamline some processes.

7   The suggestion would then be that sometime before the 17th,

8   like maybe a week prior, we would submit some kind of joint

9   proposal or joint suggestions on how to approach the schedule

10  and then we can discuss them as a group on the 17th when we're

11  already down here to give you an update from our meetings with

12  the NSA.

13       So we thought those kind of steps might give the Court

14  some kind of comfort, one, that the parties aren't sitting on

15  their hands, but, two, recognizing some of the difficulties and

16  come up with a realistic approach, and by then we should have

17  the transcript and we probably will have already filed the

18  appeal by then as well.

19       So I think all of that may be a way to proceed.  I do -- I

20  do think that change from 28 days to 14 days given when we

21  expect maybe right before the holidays to get the transcript it

22  might -- I just ask the Court to maybe consider splitting the

23  proverbial baby here and giving us 21 because I am a little

24  afraid with holidays that might hem us up a little bit.

25            THE COURT:  That's fine.  Twenty-one.

1          MR. BARNARD:  Okay.

2          THE COURT:  A week or two here is not going to kill

3    us.  I am more concerned with your thought that we ought to

4    table this issue how to proceed until mid-January.  I will say

5    January 17th does not work for me.  NSA Counsel and Defense

6    Counsel just needs to work with --

7          MR. BARNARD:  Okay.

8          THE COURT:  -- Mrs. Widener to get that scheduled.

9          MR. BARNARD:  I didn't mean to imply that we were

10   going to delay it until then, Your Honor.  My thought was we

11   could submit something to you in writing and then, you know,

12   you can ask for an earlier hearing, but just -- I think the

13   Government and the Defense are both very interested in not

14   spending a lot of time arguing about things and more trying to

15   find the thing that's going to fit for us and the Court and

16   making you -- forcing you to be put in a position of ruling on

17   things when there is stuff we might be able to work out.

18       I think our general approach, as we've kind of had several

19   months of this now, is we realized there is an adversarial

20   approach, but there needs to be some -- because of

21   complications involved in discovery in this case -- more

22   interaction, more approach where we streamlined it because I

23   think, obviously, you're trying to streamline discovery, but in

24   the normal things you're also trying to handle during the

25   course of a criminal case and I think when you compress into

1    fighting about motions and things, some of those other issues

2    about the case you don't get a chance to spend as much time to

3    discuss them.

4        I think we're trying to make sure we take some time to do

5    all of those things and work through it.  So that's just

6    generally, I think, the sentiment we're trying to express and,

7    hopefully, that makes sense.

8            THE COURT:  I guess what you're saying is you would

9    get together with the Government and y'all would talk about all

10   the pending motions and whether some of those could be worked

11   out or not.

12           MR. BARNARD:  I think, certainly, we'll talk about

13   some of the motions -- see if there is some approach we can

14   streamline aspects of it; two, propose of the -- you know, what

15   we had the Fourth Amended Scheduling Order, I think there is

16   actually -- in looking at other classified cases, there are a

17   number of things that we know if this goes all the way to trial

18   that are going to have to happen.  So we thought about

19   including some of those events in a proposal to you to say,

20   "Hey, we got to think about these other things that are

21   probably going to happen" to build in time in the schedule just

22   in terms of motions and experts and disclosures just so we know

23   the very complete picture, and then it gives us something to

24   talk about, and you can look at it and say, "What do you mean

25   by this?" and back and forth.

1          THE COURT:  Okay.  Well, any kind of cooperation

2    between counsel on both sides is invaluable to the process.  If

3    y'all can come up with a proposal, it's going to by its very

4    nature probably be better than any I can come up with on my

5    own.  I guess right now all I really want to focus on is this

6    general concept that we can't really accomplish a final Rule 17

7    subpoena and we can't accomplish a final CIPA Section 5 Notice

8    until we get some direction from Judge Hall on the appeal

9    you're going to file about what's discoverable and what's

10   admissible at trial.

11         MR. BARNARD:  I think we're in 100 percent agreement.

12   I don't know if he's going to rule on what's admissible in this

13   appeal.  I know he'll be ruling on what's discoverable.  So I

14   think we're going to head down the road -- CIPA envisions a

15   separate -- you have the admissibility.  You have -- there's a

16   number of issues that are going to get built in.  I don't think

17   Judge Hall is going to rule on admissibility in this current

18   appeal, but I do believe -- 100 percent agree -- all of these

19   other deadlines are driven by, really, the scope of what's

20   going to be included and discoverable --

21         THE COURT:  Right.

22         MR. BARNARD:  -- and I think that's going to drive a

23   lot; so I 100 percent agree with that, Your Honor.

24         THE COURT:  Because if he says it's not discoverable,

25   then ---

1          MR. BARNARD:  Then it is something we're preserving

2     and we have to move on.

3          THE COURT:  Right.  And so then you can file a

4     revised CIPA Section 5 Notice that does not include that

5     category.  Of course, that would be with reservations of your

6     rights to appeal its determination in the context of the

7     discovery issue.

8          MR. BARNARD:  It would be that we file a revised one

9     that couldn't rely on information that we get through

10    discovery.  It could be that either through experts or other

11    sources or third-party subpoenas that there may be parallel

12    things that we would then subsequently -- descript later on the

13    CIPA Section 5.

14         THE COURT:  So let's just come up with an example.

15    If -- I've already entered a ruling that, for example, you

16    can't obtain in discovery information regarding a briefing that

17    might have occurred to the Supreme Court Justices about this

18    issue.  Right?  That's a good example of that.  Because I said

19    it's not relevant; it's not helpful to the Defense.  And so if

20    Judge Hall adopts that ruling on the appeal, are you telling me

21    then we will see a CIPA Section 5 Notice that still includes

22    that same topic or are you preserving your right to present at

23    trial evidence regarding briefing of the Supreme Court Justices

24    on the leak?

25         MR. BARNARD:  No, Your Honor.  It might be more along

1    the lines of let's say there is a document that we requested

2    from the Government about, you know, documents relating to

3    knowledge of the Government at some point, let's just say.

4    Then we justify in our hearing some information of why we

5    thought that was relevant.  Maybe after we hire an expert who

6    has in-depth knowledge -- he comes and provides an affidavit to

7    us to present to you and say, "Hey, here's our reasons why that

8    is relevant" that you didn't know of because you're not an

9    expert. We may then come to you and present that and say, "I

10   know you already ruled on this, but we now have an expert and

11   we have this other information.  It may be from a different way

12   that we're going to -- either through the expert -- maybe not

13   through discovery, but through the expert be presenting it and

14   disclosing our CIPA 5.  I am hypothetical here.  I am trying to

15   explain a situation that could arise.

16           THE COURT:  Okay.  Well, I would proceed with caution

17   in that regard; right?

18           MR. BARNARD:  Yes, sir.

19           THE COURT:  Because you had your opportunity to make

20   those arguments in the context of the discovery hearing.  That

21   is your time to do it, and if you need expert support for it,

22   you need to get it before that appeal is heard by Judge Hall

23   that, arguably, should have already been presented to me, but

24   we're not going to go back and relitigate the same issue as

25   whether it's relevant and helpful to the Defense on two or

1    three occasions just because the Government has gone out -- or

2    the Defense has gone out and found more support for their

3    argument.

4              MR. BARNARD:  Well, Your Honor ---

5              THE COURT:  Because we'll never try this case if we

6    handle it that way.

7              MR. BARNARD:  I 100 percent agree that's certainly

8    not what we trying to do.  The reality is there are some very

9    unique aspects to this national security information -- the

10   kind that we may not have the independent knowledge of -- and

11   all I am saying is as an example it may be that we don't seek

12   discovery about it, but we may in a CIPA Section 5 identify a

13   witness that now may testify to certain facts.  So that's not

14   seeking it in discovery.  It's just that we're adding it to our

15   CIPA Section 5 that, you know, that might be some information

16   not that we're seeking in discovery, but that we intend to

17   present at trial that we've gathered on our own.  So that was

18   an example of how it may be something in the CIPA Section 5

19   that relates to an issue that you've denied in discovery, but

20   still it would be something that you get from another source

21   that we produced.

22             THE COURT:  Okay.  And what I am saying in response

23   is if the rule -- I have issued a ruling that it's not relevant

24   or helpful to the Defense and that is affirmed on appeal,

25   certainly, you can reserve your rights to argue that it is on

1    appeal to the Eleventh Circuit, but I don't think we're going

2    to want to entertain that argument a third time in another

3    context.

4              MR. BARNARD:  Understood, Your Honor.  And we will

5    respect that and do the best we can to make sure that doesn't

6    come up.

7              THE COURT:  And so maybe what we do in the CIPA

8    Section 5 that's revised after the appeal ruling by Judge Hall

9    is to have a category of things that you're reserving your

10   rights with respect to an appeal.  You know, we already

11   understand there is a ruling that's not relevant, but here is a

12   final category of stuff that we still contend is relevant and

13   should be admissible at trial.

14             MR. BARNARD:  Yes, Your Honor.  I think we did

15   envision when we do this final one, assuming that the appeals

16   may go one way against the Defense, that we would identify

17   those sources of information in form of a proffer maybe

18   attached to the Five so that there would be a record and the

19   Court would be clear on that.

20             THE COURT:  Okay.  All right.  So going back into my

21   original question, it sounds like the Defense has no concerns

22   or objection -- in fact, agrees with the general thought of

23   mine that we need to hold back on the deadline for the issuance

24   of the Rule 17 -- revised Rule 17 subpoenas -- and all of the

25   CIPA proceedings until we get a ruling on appeal from Judge

1    Hall regarding the scope of discovery.

2              MR. BARNARD:  Yes, Your Honor.  That's our position

3    as well.

4              THE COURT:  Okay.  Mrs. Solari, also, the Government

5    Counsel -- who is taking the lead today?

6              MRS. SOLARI:  I am, Your Honor, but if the Court

7    would let me defer to my colleagues, if needed, on some CIPA

8    issues if they come up.

9              THE COURT:  Okay.  Well, what are your thoughts and

10   concerns with my proposal?

11             MRS. SOLARI:  Your Honor, I don't think that the

12   Government has any issues with that proposal.  I think it makes

13   sense.  We can't know what we don't know at this stage.  So it

14   makes sense to push that off until the Defense has, I guess,

15   some more direction on what's deemed relevant and helpful in

16   this case so they can formulate their Section 5 Notice and

17   their Rule 17 subpoenas.

18        I would ask that the Court -- and I found this to be the

19   case throughout these proceedings, but if the Court would keep

20   an open mind with regard to whether we will need a Section 5

21   hearing --

22             THE COURT:  Yes.

23             MRS. SOLARI:  -- as to the sufficiency of the notice.

24             THE COURT:  Right.

25             MRS. SOLARI:  It is a challenge for the Government to

1   know how to object and to what to object in the Section Six

2   proceedings if we don't know exactly what the Defense is

3   purporting to introduce at trial.

4           THE COURT:  Right.

5           MRS. SOLARI:  So if the Court would ---

6           MS. EDELSTEIN:  And I apologize, Your Honor.  This is

7   Julie.  If I can just jump in on that point --

8           THE COURT:  Sure.

9           MS. EDELSTEIN:  -- for a moment about Section 5

10  sufficiency of the notice.

11          THE COURT:  Go right ahead.

12          MS. EDELSTEIN:  So, Your Honor, we had actually put

13  together a response to their first and second notice prior to

14  Your Honor issuing an order that we didn't have to file it.

15  We're happy to file it if that would be helpful.  Your Honor,

16  we have extremely serious concerns about how if we get another

17  Section 5 Notice like this we can ever proceed to the 6(a)

18  stage.

19      Out of the 803 pages that we provided in classified

20  discovery, the Defense noticed 782 of those pages which shows

21  that there is -- there has not been considerable attention to

22  limiting their notice to information they actually expect

23  reasonably to disclose at trial, and, moreover, out of the 179

24  categories they noticed, 125 categories were not linked to any

25  documents provided to the Government -- produced by the

1   Government -- such that, Your Honor, we have no idea what

2   information was at issue and couldn't in any coherent way move

3   on to the 6(a) stage.

4           THE COURT:  Okay.

5           MS. EDELSTEIN:  The responses prepared also outlined

6   the Eleventh Circuit law.  In particular, the Eleventh Circuit

7   decision in *Collins* and in *Badia* -- I think those cases are

8   really instructive in showing exactly what the Defense needs to

9   do with the Section 5 stage.

10      The Section 6 hearing wouldn't be able to occur both

11  because the Government wouldn't be able to opine as to the

12  relevancy and admissibility of the information at issue with

13  the Section 5 Notice and the Court wouldn't have a way to issue

14  rulings on each category and under CIPA Section 6(a) the Court

15  has to issue a written order -- it is required by statute -- as

16  to the relevancy and admissibility of every single category of

17  information that the Defense notices.

18      So the Government has still quite considerable concerns

19  about not having an opportunity to litigate the sufficiency of

20  the Section 5 Notice.

21          THE COURT:  Okay.  Well, look, getting that on

22  file -- I don't see any harm in doing it.  I think that, number

23  one, it gets the Defense something they can work off in

24  preparing their revised Section 5 Notice after Judge Hall

25  issues his ruling on appeal and educates me as I make that

1  final determination about whether we need to have any

2  proceedings on the sufficiency of it.  So, yes, please, as long

3  as you don't have any objection, go ahead and file that.

4          MRS. SOLARI:  Thank you, Your Honor.

5          MS. EDELSTEIN:  We will do that, Your Honor.

6          THE COURT:  Okay.

7          MS. EDELSTEIN:  I would also just ask that the CIPA

8  deadlines are extended if Your Honor could issue findings under

9  the Speedy Trial Act to make clear that the time is going to be

10  tolled.

11          THE COURT:  Right.  That's a good point that I should

12  probably go back and revisit with Defense Counsel.

13      What is the defendant's position on the issue of the

14  speedy trial clock given all the reasons we've discussed this

15  morning that we need to stay some of these deadlines while we

16  hear from Judge Hall on the appeal?

17          MR. BARNARD:  Your Honor, we're willing to consent to

18  those delays given that it is necessary to prepare for trial.

19          THE COURT:  Okay.  In addition to consenting to the

20  delay and schedule that we talked about here today, is it the

21  Defense's position that the delay that we are contemplating is

22  consistent with the terms of the Speedy Trial Act?

23          MR. BARNARD:  Yes, Your Honor.

24          THE COURT:  Okay.

25          MR. BARNARD:  Yeah, that time period can be counted,

1    you know, taken out of the calculation for compliance.

2                 THE COURT:  Right.  So there won't any argument in

3    the future from the Defendant that the delay we're talking

4    about here constitutes violations of her right to a speedy

5    trial?

6                 MR. BARNARD:  That's correct, Your Honor.  Your

7    Honor, can I --

8                 THE COURT:  Sure.

9                 MR. BARNARD:  -- the note about the filing the

10   objections to the original CIPA 5 Notice, I just ask it to be

11   clear on the record that they're filing that as it's not really

12   before the Court for ruling --

13                THE COURT:  Right.

14                MR. BARNARD:  -- so there is not a reply required at

15   this time.

16                THE COURT:  Right.

17                MR. BARNARD:  I just want to make sure that that's

18   just an informational brief only and not a operative motion

19   requiring response.

20                THE COURT:  Right.  So maybe we need to phrase it in

21   some other way like notice of --

22                MR. BARNARD:  Concerns.

23                THE COURT:  -- Government's concerns regarding

24   original CIPA Section 5 Notices or something like that.

25                MR. BARNARD:  And it is fine to do it on the record

1   if they want.  I am also happy if they want to send a note to

2   the Court saying they provided it to us and we'll work with it.

3   Either way, we're fine to ---

4          THE COURT:  I'd like to get a copy of it, too.

5          MR. BARNARD:  That's right.

6          THE COURT:  That way I can be a little more informed.

7          MR. BARNARD:  Thank you, Your Honor.

8          THE COURT:  We'll make sure they file that on the

9   record.  The only other thing I want to talk about briefly --

10  so if we're staying all of those CIPA and discovery issues

11  while we hear from Judge Hall on the appeal, the only other

12  thing we can really get accomplished would be having hearings

13  and rulings on the pretrial motions filed by the Defense for

14  which we received the Government's responses.

15      Simply, what I would do with pretrial motions is issue a

16  request for the parties to confer and give me a list of all the

17  motions that they have not been able to work out that will

18  require a hearing and a ruling from the Court and, you know,

19  you find a lot of occasions where discussions lead to

20  resolution of most, if not all, of the pretrial motions filed

21  -- typically, not motions to suppress, but the other ones --

22  discovery -- typically are resolved.

23      Have there been any such discussions or are those the

24  discussions that you referred to earlier as taking place end of

25  January?

1          MR. BARNARD:  Well, Your Honor, to be honest with

2    you, I do not believe because with -- I think our position --

3    at least one of them came in yesterday; so I don't think that

4    we were -- it was not a topic that was listed as what we were

5    going to meet about.  Certainly, it's something we can do and

6    add to the list.  We were envisioning -- I was big picture --

7    scheduling issues.  I do think that the motion to suppress our

8    client's statement -- I am not sure, you know, what -- you

9    know, there is not really a negotiated middle ground I can

10   envision in that one, but as far as the 404(b) and some of the

11   other ones, I am happy to sit down and think through with them.

12   Maybe with the schedule there may be -- also, depending on the

13   discovery -- other motions that the parties may envision that

14   we should talk about that and how we address the schedule and

15   see, look, if discovery comes out, do we want -- does each side

16   want to have a chance to -- you know, is there something with

17   motions.  And then experts -- there could be a period of

18   pretrial motions from down there and other reasons that we have

19   to envision building into the schedule.

20          THE COURT:  Okay.  So do we need -- January 27th is

21   the date that y'all are going to meet?

22          MR. BARNARD:  December 27th, Your Honor.

23          THE COURT:  Oh, December.  That helps out a lot.

24   That's great.  So what I'll do then is enter an order asking

25   that y'all file a Joint Status Report after that date that

1    provides me a list -- a definitive list -- of the pretrial

2    motions that are at issue and the ones y'all have been able to

3    resolve.

4        Do we need to go ahead and schedule some kind of follow-up

5    planning conference with me to discuss what y'all have come up

6    with during this December 27th?

7              MR. BARNARD:  I think it would make sense that once

8    we settle on a date for the agency and us to meet and update

9    you that we pick -- since we're coming in, we schedule that for

10   the same day.

11             THE COURT:  Okay.  Well, as long as that doesn't mess

12   us up with any delay between the two in terms of what y'all are

13   thinking needs to be accomplished in the case that we're not

14   thinking about.

15             MR. BARNARD:  I don't think it is going to delay

16   either counsel.  I think we all understand there is a lot to be

17   done, Your Honor.

18             THE COURT:  Right.

19             MR. BARNARD:  We're not going to sit on it.

20             THE COURT:  Okay.

21             MR. BARNARD:  Well, and I think Mr. Whitley brought

22   up a good point.  Obviously, we're going to schedule it.  I

23   can't say what we'll have accomplished specifically by that,

24   but I think the nature of it being a status update is we can

25   kind of tell you what we've done, what we've got through, what

1  still needs to be done just so it's clear that we don't know if

2  we can solve kind of everything before the next meeting.

3          THE COURT:  Okay.  One other thing I wanted to

4  mention is when we talk about the benefits of this revised

5  schedule where we get clarity from Judge Hall before we proceed

6  with the filing of the revised Section 5 Notice and the Rule 17

7  subpoenas, et cetera, I had two further thoughts on that.

8      The first is, Mrs. Solari, is the Government going to go

9  ahead and start working on producing the information that I did

10  say was discoverable or are you going to wait on the appeal?

11          MRS. SOLARI:  No, Your Honor.  We have already set

12  the wheels in motion with the various equity holders to

13  identify any information that the Court has already deemed

14  discoverable to pull it together and prepare it for discovery.

15          THE COURT:  Great.  Okay.  Thank you.  And then from

16  the Defense Counsels' perspective I want to make clear that

17  when we get this ruling from Judge Hall and we establish new

18  deadlines for the filing of the revised Section 5 and the new

19  Rule 17 subpoenas, those dates are going to have to be very

20  certain and definitive and final because I know that y'all had

21  some other things that you mentioned you need to prepare the

22  Section 5 Notice adequately -- consultation with your experts,

23  full discovery from the Government.

24      The Government is working on that discovery now, and it's

25  my hope that by the time we get the ruling on the appeal you're

1    going to have the time that you've needed to meet with your

2    experts and the time you needed to look through their

3    supplemental productions such that when you file this final

4    revised Section 5 Notice there will not be an asterisk or a

5    footnote saying "This is preliminary.  This is our best guess

6    right now."  It is going to need to be the definitive document

7    that we use going forward in the case.

8              MR. BARNARD:  Your Honor, obviously, that is,

9    obviously, what we would want to do.  The long pole on the tent

10   is as we are identifying experts, the thing we don't control is

11   how quickly they get their clearances, and already I think it's

12   maybe looking at February for the one we submitted until his

13   clearance could be had.  I just want to be clear with the Court

14   the one element in this for our experts to get on board, read

15   things, and give us help is their clearances.  So that's the

16   gap that we don't control that I can't estimate dates around

17   and it's only fair that the Court know that we are working to

18   identify experts and give those information to the Court, but

19   when they go through the system if they have an active

20   clearance, it is no problem.  If they have to go through the

21   expedited process, even that slows things down.

22        So I think the best -- I worked this out with the

23   Government.  We're going to come up with a plan for how to

24   account for that -- a little bit of a variable -- but other

25   than that variable, I feel that we can, you know, do pretty

1   solid dates.  The reason that it is a variable with -- I don't

2   want to say an asterisk -- some other uncertainty is let's say

3   we identify these experts to the court security officer and

4   then later on we disclose them on the expert witness list.  It

5   may be that the Government has problems or, you know, objects

6   to a lot of them, and we have another round of motions about

7   our experts.

8         I just want to say there are things that we can't predict

9   that are built into this that I just want to make sure the

10  Court understands that it's not us trying to come up with

11  asterisks or exceptions.  It's just there are things we don't

12  control.

13              THE COURT:  Right.  But to the extent you do, we need

14  to get --

15              MR. BARNARD:  Yes, sir.

16              THE COURT:  -- that moving and be as final as humanly

17  possible.  Where do you stand with your experts?  Have you

18  already tendered all of your experts to the CISO for the

19  clearance process?

20              MR. BARNARD:  We have not.  We have a number of them

21  that we've retained already that we have -- we've identified

22  some of their personal information.  We have some more that we

23  have that we are going to provide their personal information

24  and then we have at least a couple of categories of experts

25  that we're still identifying.  My guess is we're going to

1  finish that process of identifying -- we're a little messed up

2  with the holidays, but by in January we hope to have everyone

3  identified, retained, and their information to the CISO.  Our

4  goal was by the end of January to have that whole thing done.

5  It is -- there is a number of problems -- certain categories of

6  experts to find and explain the case and get them retained.  So

7  we're about two-thirds retained.  We have just a little bit

8  more to finish, but we're making pretty good progress.

9          THE COURT:  I am a little concerned about that

10  timeline because if you don't submit an expert or tender one to

11  the CISO until late January, then we're looking at March or

12  April until they're approved.

13          MR. BARNARD:  Well, we are like ---

14          THE COURT:  Then you're going to want more time to

15  work with them after they have the ability to look at the

16  files.  I mean, we are going to be sitting here this time next

17  year.

18          MR. BARNARD:  I understand, Your Honor.  There are

19  some obstacles in certain types of experts -- getting -- but we

20  are -- all I can say is that we're -- that is like the end of

21  -- we intend to be not waiting then.  We had hoped over the

22  next few weeks to have finished this process.  I am just trying

23  to explain to the Court that also we have to convince people to

24  do this.  There's a whole number of factors -- their

25  understanding of the case, the material, and their existing

1  work in the area -- that make it complicated.  And,

2  additionally, what goes in from Judge Hall's ruling drives --

3  there might be category of experts that we may not need if

4  Judge Hall says we're not getting that.

5      So there is a whole number of dominoes that do go into

6  this.  Obviously, the ones that we can identify now we're

7  retaining and getting into the process.  I am just trying to be

8  as frank with the Court as I can about the complications.

9          THE COURT:  I guess what I am trying to say in

10  response is that this case is still proceeding as quickly as we

11  can and I think you're going to be hard pressed to get an

12  extension of the trial date based on the fact that you didn't

13  tender a witness to the CISO until December, January, or

14  February.

15          MR. BARNARD:  Okay.  Understood.  And it may be at

16  some point, obviously, we could meet or provide an ex-parte

17  summary of what we're doing with experts to the Court.

18  Obviously, a lot of people we may never disclose as eventual

19  witnesses; so I can't get into the details in court here.

20          THE COURT:  Right.  Okay.  All right.  I think that

21  covers the waterfront of what I wanted to accomplish today from

22  my perspective.

23      Is there anything else from the Defense perspective that

24  we need to talk about today?

25          MR. WHITLEY:  No, sir, Your Honor.  Thank you.

1           THE COURT:  All right.  Anything further from the

2   Government?

3           MRS. SOLARI:  Just to be clear with regard to

4   discovery, Your Honor, we're working on the notes that we took

5   copiously during the hearing to get together what we believe

6   the Court has ruled discoverable.  Certainly, as soon as we

7   have access to the transcript we will confirm all of that and

8   make sure that we're in full compliance and provide that in the

9   way of rolling discovery.  As we obtain it, it will be provided

10  to the Defense Counsel as soon as possible.

11          THE COURT:  Okay.  And I want to remind everybody

12  here that my job is to be available to you and to work through

13  issues as quickly as possible.  I don't want any delay in the

14  case to be associated with me, and so if you reach a point

15  where you need direction from me, just let me know, and if we

16  need to proceed by phone conference, as quickly as we can get

17  everybody on the phone we'll do that if it's something we can

18  handle in that type of setting or we can gather together here

19  in the courtroom.  I am available at your convenience within 24

20  hours or less of what you need me for something in the case

21  because I want this to proceed as quickly as possible, and I

22  want my conduct and my responsiveness to reflect that.

23          All right.  If there is nothing further from the

24  Government -- Mrs. Solari; is that right?

25          MRS. SOLARI:  That's right, Your Honor.

1          THE COURT:  Did you need a minute to talk with your

2     counsel and confer with them before we shut this down?

3          MRS. SOLARI:  I don't know.

4        Dave, Julie, is there anything I've missed?

5          MS. EDELSTEIN:  Nothing, Your Honor.

6          THE COURT:  Oh, good.

7          MRS. SOLARI:  Thank you, Your Honor.

8          THE COURT:  All right.  Well, we'll adjourn at this

9     time with me conveying my hope that all your families and you

10    have a happy holiday season whether it's Hanukkah, Christmas --

11    certainly, the new year.  I hope everybody enjoys themselves

12    and lets me know if I need to be of any assistance whatsoever

13    during that time.

14          (The hearing is concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, Lisa H. Davenport, Federal Official Court Reporter, in

6    and for the United States District Court for the Southern

7    District of Georgia, do hereby certify that pursuant to Section

8    753, Title 28, United States Code that the foregoing is a true

9    and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13                                          Digitally signed by Lisa
                                            H. Davenport
14                                          Date: 2018.01.16
                                            11:14:00 -05'00'

15                             Lisa H. Davenport, RPR, FCRR
                               Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25