UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

Reviewed with the Classified Information Security Officer

CISO

Date

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *  1:17-CR-0034 (BKE) |
| | * |
| **REALITY LEIGH WINNER** | * |
| | * |
| Defendant. | * |
| | * |

* * * * * * * * * * * * * * * * * *

## DEFENDANT'S MEMORANDUM OF LAW REGARDING THE *SPECIFICITY* REQUIREMENT AND DISCRETION OF THE COURT UNDER RULE 17(C) IN ADVANCE OF APRIL 23, 2018 PROCEEDINGS AND REFERENCE CHART

NOW INTO COURT, through undersigned counsel, comes Defendant Reality Leigh Winner ("Ms. Winner" or the "Defendant"), who files this Memorandum of Law Regarding the *Specificity* Requirement and Discretion of the Court Under Rule 17(c) In Advance of April 23, 2018 Proceedings and Reference Chart (the "Legal Brief") to establish the appropriate legal standard applicable to the limited proceedings scheduled to take place on April 23, 2018 to evaluate whether, in the Court's discretion, the various requests contained in Ms. Winner's Rule 17(c) subpoenas are sufficiently specific. As set forth below, the *Nixon* specificity requirement describes a spectrum within which a court must exercise its discretion, in light of the specific facts and circumstances of this case. As Ms. Winner will demonstrate in greater detail during the April 23, 2018 proceedings (including certain evidentiary presentations the defense intends to present *ex parte* to the Court), each and every one of the Rule 17(c) subpoenas has been prepared in good faith and narrowly tailored -- to the best of Ms. Winner's ability and in as much detail as is possible under the specific circumstances of this case -- to a specific subpoena recipient who is

1

in possession of documents that are relevant and admissible in Ms. Winner's case, as established by the record in this case, including *ex parte* presentations to be forthcoming on April 23, 2018.

## I.   PROCEDURAL POSTURE

On March 21, 2018, the Government filed the Government's Motion Regarding Rule 17(c) Subpoenas [Doc. No. 242], whereby necessitating Defendant's Response to the Government's Motion Regarding Rule 17(c) Subpoenas filed April 4, 2018 [Doc. No. 247] (the "Response").[1] In her Response, Ms. Winner requested, at a minimum, the opportunity to submit a fulsome *ex parte* pleading (prior to any substantive "vetting") explaining the relevant standards for the Court to apply, why Ms. Winner's subpoenas meet any such standards, and why *ex parte* proceedings are appropriate given the specific facts of this case.

Shortly after the Response was filed, the Court scheduled a classified hearing for April 23, 2018 by Notice of Hearing [Doc. No. 250] and informed the parties that Ms. Winner would not be provided additional time to submit the briefing she requested time to submit, and that the Government will be included in the proceedings. Then, by subsequent status conference on April 16, 2018, the Court informed the parties that the limited focus of the April 23, 2018 hearing will be the specificity of the Rule 17(c) subpoenas under the *Nixon* standard, and that Ms. Winner will be afforded the opportunity to request *ex parte* sessions [Doc. No. 259] (transcripts

---

[1] Principally, the Response sets forth Ms. Winner's well-supported positions that (i) the Court need not conduct any further review prior to issuance of the Rule 17(c) subpoenas, (ii) the Government lacks standing be involved in any pre-issuance proceedings, and (iii) any further proceedings, if any, should be conducted *ex parte* in order to avoid forcing a Hobson's choice for Ms. Winner -- either to make no defense or to disclose her entire case to the Government before her trial. As set forth therein, the Response was not intended to be a complete justification for her Rule 17(c) subpoenas. Likewise, this Legal Brief is not intended as a complete justification for the Rule 17(c) subpoenas. Instead, this Legal Brief focuses solely on the limited issue of specificity under *Nixon* and its progeny, as the Court has indicated that this will be the focus of the proceedings scheduled for April 23, 2018.

unavailable). Accordingly, and due to timing constraints, this Legal Brief is not intended as a complete justification for the Rule 17(c) subpoenas. Instead, this Legal Brief focuses on the limited issue of the legal standards governing the specificity requirement under *Nixon* and its progeny, with the understanding that Ms. Winner will be provided an appropriate opportunity to demonstrate compliance with any other applicable standards, to the extent there is any question, after the April 23, 2018 proceedings.[2]

## II.    LEGAL STANDARD

Before turning to *Nixon*, it is important to remember that "Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the government. And because it was enacted in order to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials, Rule 17(c) is more far reaching than testimonial subpoenas."[3] Moreover, at least one line of reliable and oft-cited cases has questioned whether the holding in *Nixon* even applies to third or non-party subpoenas at all.[4]

---

[2] As set forth in greater detail below, and as articulated to the Court during an April 16, 2018 status conference, Ms. Winner submits that it may be impossible to adequately consider specificity in a segregated proceeding without allowing Ms. Winner the opportunity to submit a complete justification for her Rule 17(c) subpoenas and without considering the totality of the circumstances, including factors such as relevance and admissibility.

[3] *United States v. Beckford*, 964 F. Supp. 1010, 1016 (E.D. Va. 1997) (internal citations and quotations omitted).

[4] *See, eg., United States v. Nachamie*, 91 F. Supp. 2d 552, 562-63, n.16 (S.D.N.Y 2000); *see also United States v. Tomison*, 969 F. Supp. 587, 593 & n.14 (E.D. Cal. 1997); *United States v. Farha*, 2012 U.S. Dist. LEXIS 197670 at *6 (M.D. Fla. January 6, 2012) (*citing United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y 2008) (and cases cited therein); *United States v. Nixon*, 418 U.S. 683, 698-700 & n. 12 (1974).

However, "the Eleventh Circuit seemingly favors a *Nixon* approach even for a non-party."[5]
Therefore, in the absence of an opportunity to fully brief the issues, and based on this Court's
scheduling of proceedings regarding *Nixon* specificity, this brief focuses on how courts have
interpreted and applied the specificity requirement set forth in *Nixon*. In any event, most courts
seem to agree that it is the Court's duty to ensure that Rule 17(c) subpoenas comply with the
*Nixon/Iozia* standard in order to be enforced (for example, on a motion to quash) even if they
disagree about when or how the this scrutiny might be invoked.[6]

In *United States v. Nixon*, the Supreme Court of the United States effectively adopted
Judge Weinfeld's formulation in *United States v. Iozia*[7] regarding the showing of good cause that
must be made by a party seeking to require production prior to trial under Rule 17(c):

[I]n order to require production prior to trial, the moving party must show:

(1) that the documents are evidentiary and relevant;

(2) that they are not otherwise procurable reasonably in advance of trial by
exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and
inspection in advance of trial and that the failure to obtain such inspection may
tend unreasonably to delay the trial; and

---

[5] *Farha*, 2012 U.S. Dist. LEXIS 197670 at *6 (*citing United States v. Bearden,* 423 F.2d 805, 810 & n. 4 (5th Cir. 1970)).

[6] *See, e.g., United States v. Bran*, No. 3:12CR131-01, 2013 WL 1193338, at *2 (E.D. Va. Mar. 22, 2013) ("Once the Court has determined whether the application process should be conducted *ex parte*, the Court must assess whether the proposed subpoena and the motion in support meet the standards set forth in *United States v. Nixon…*") (internal citation omitted); *see also, e.g., Beckford,* 964 F. Supp. at 1023 (compiling cases addressing the question) (*citing 2 Wright,* Federal Practice and Procedure: Criminal 2d § 274 at 155; 25 Moore's Federal Practice §§ 617.08[3][a], [b]; *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (other citations omitted).

[7] *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952).

(4) that the application is made in good faith and is not intended as a general "fishing expedition."[8]

Against this background, the Supreme Court held that the Special Prosecutor (in that case) needed to clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity. With regard to specificity in particular, the Supreme Court provides helpful clarification on how the specificity requirement must be applied:

> Of course, the contents of the subpoenaed tapes could not at that stage be described fully by the Special Prosecutor, but there was **a sufficient likelihood** that each of the tapes contains conversations **relevant to the offenses charged in the indictment**.[9]

To be sure, *Nixon* instructs that there is no bright line rule regarding the requisite specificity of a subpoena. Instead, "[e]nforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues."[10]

The Eleventh Circuit Court of Appeals and district courts within the Eleventh Circuit have routinely applied the *Nixon* standard. For example, in *United States v. Silverman*,[11] the Eleventh Circuit Court of Appeals considered the scope of material subject subpoena under Rule 17(c):

> The Supreme Court, in *Bowman Dairy Co. v. United States*, 341 U.S. 214, 71 S. Ct. 675, 95 L. Ed. 879 (1951), addressed the scope of material subject to subpoena under rule 17(c). It held, as Silverman correctly points out, that [ ] the rule was not intended to provide an additional means of discovery for any party in criminal cases. *Id.* at 220, 71 S. Ct. at 679. Rather, the rule only reaches

---

[8] *See Nixon*, 418 U.S. at 699–700.

[9] *Id.* at 700 (emphasis added).

[10] *Id.* at 702 (concluding the Special Prosecutor made a sufficient showing to justify a subpoena for production before trial where the subpoenaed materials were not available from any other source, and their examination and processing should not await trial in the circumstances shown) (*citing Bowman Dairy*, 341 U.S. 214; *Iozia*, 13 F.R.D. 335).

[11] *United States v. Silverman*, 745 F.2d 1386 (11th Cir. 1984).

specifically identified documents that will be admissible as evidence at trial, provided that the application for the subpoena is made in good faith. *Id.* at 221, 71 S. Ct. at 679; *see United States v. Nixon*, 418 U.S. 683, 697-700, 94 S. Ct. 3090, 3102-03, 41 L. Ed. 2d 1039 (1974). Whether a rule 17(c) subpoena has been issued in good faith and seeks evidence are mixed questions of fact and law. We will not disturb the trial judge's factual findings unless they are clearly erroneous; we will not set aside his decision to enforce the subpoena unless it is an abuse of discretion. *United States v. Nixon*, 418 U.S. at 702, 94 S. Ct. at 3104; *see, e.g.*, Fed.R.Evid. 104(a) and (b) and 403.[12]

To be clear, the Eleventh Circuit was not asked to evaluate the specificity requirement under *Nixon* and, in any event, cannot be read to modify the Supreme Court's rule from that case. Any discussion of *Nixon* specificity in *Silverman* is mere dicta, with no precedential value, as specificity was simply not one of the issues raised on appeal or at the trial court level.

A review of the relevant cases confirms that there is no bright line rule regarding the requisite specificity of a Rule 17(c) subpoena. Instead, courts must consider the specific facts of the case and exercise their discretion to ensure the appropriate result.[13] So, for example, in *United States v. Blake*,[14] a district court confronted with woefully inadequate Rule 17(c) subpoenas establishes a low hurdle, determining that where the moving party "is unable to set forth the 'generally anticipated' contents of the documents he is seeking and is unable to identify the basis for believing that the documents [are relevant], the party has not met its burden and is engaging in

---

[12] *Id.* at 1397 (unaltered).

[13] *See, e.g., United States v. Thompson,* 310 F.R.D. 542, 546 (S.D. Fla. 2015) ("The undersigned now concludes that the requested documents, when limited to Defendant's Revised Request, are sufficiently relevant to the Defendant's defense, are likely admissible at Defendant's trial, and are **specifically identified to the extent possible** by Defendant." (emphasis added)); *United States v. Forbes*, No. 3:02CR00264(AWT), 2005 WL 8146317, at *2 (D. Conn. Nov. 7, 2005) ("This [specificity] requirement is satisfied if the subpoena identifies 'certain documents or sharply defined groups of documents.' **This requirement of specificity must, of course, be considered in light of the circumstances of the particular case.**" (quoting *United States v. Ruedlinger*, 172 F.R.D. 453, 456 (D. Kan. 1997) (emphasis added)).

[14] *United States v. Blake*, 2014 U.S. Dist. LEXIS 64092 (S.D. Fla. March 25, 2014).

a fishing expedition.[15] Likewise, in *United States v. Brown*, the district court has clarified that on scrutiny, the party seeking to enforce subpoenas must make *some* showing -- like the Special Prosecutor did in *Nixon* -- to demonstrate a "sufficient likelihood" that each of the requested documents contains information "relevant to the offenses charged in the indictment."[16] Again – a low hurdle, and one that Ms. Winner clearly surpasses.

Of course, the rule does not allow for subpoenas that are intended as fishing expeditions. Along these lines, "if the moving party cannot **reasonably** specify the information contained **or believed to be contained** in the documents sought **but merely hopes** that something useful will turn up, this is a sure sign that the subpoena is being misused."[17] Crucially, the prohibiting language goes to the subject intent of the requestor, not the language of the request itself.[18] Moreover, the prohibition on intending fishing expeditions should not be confused with any bright line or talismanic requirement about the appropriate language to be used on a subpoena request or what an appropriate showing might entail given the specific facts of a particular case.

---

[15] *Id.* at *11. (*citing United States v. Brown,* No. 11-20685, 2013 U.S. Dist. LEXIS 53474, 2013 WL 1642015, at *5 (S.D. Fla. Apr. 15, 2013));

[16] *United States v. Brown,* 2013 U.S. Dist. LEXIS 53474 at *4 ("He met this burden by offering sworn testimony of participants in the recorded conversations, or by giving reasons that permitted a rational inference of relevance, as well as by making a sufficient preliminary showing of admissibility.") (citations omitted) (*quoting Nixon,* 418 U.S. at 700).

[17] *United States v. Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. May 3, 1991); *see also United States v. Gallo,* 2014 U.S. Dist. LEXIS 61835, 2014 WL 1767075 (S.D. Fla. May 5, 2014) (providing a classic illustration of the often-criticized fishing expedition).

[18] *See, e.g., United States v. Betancourt,* 277 Fed. Appx. 708, 711 (9th Cir. 2008) (noting that the moving party must show that a request "is not intended as a general fishing expedition.") (*citing United States v. Nixon,* 418 U.S. at 699-700) (citations and quotations omitted) (emphasis added));

Rather, "[t]his requirement of specificity must, of course, be considered in light of the circumstances of the particular case."[19]

To illustrate, in *United States v. Farha*, the district court confirms that requests for "all documents" may be sufficiently narrow to cross the *Nixon* threshold.[20] Indeed, many courts have noted that a subpoena may be directed to a category of documents -- not only specifically identified documents -- as long as that description is sufficiently identifiable.[21] Additionally, the lack of other available sources of information is a factor a court can -- *and in this case should* -- consider in exercising its discretion to find a request sufficiently specific.[22] Of course, this was a key factor considered by the Supreme Court in the seminal *Nixon* case.[23]

Of particular interest to the Court should be the description of the specificity threshold as described in *United States v. Weisberg*[24]:

> As for the specificity requirement, it is true that Weisberg has not pointed to specific billing or meeting records that will support the defense. However, a defendant need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c). *See United States v. Rajaratnam*, No. 09–CR–1184 (RJH), 2011 WL 507086, at *1 n. 1 (S.D.N.Y. Feb. 15, 2011) ("[I]n the context of a subpoena to a third party ..., **requiring the defendant to specify precisely the documents he wants without knowing what they are borders on**

---

[19] *Forbes*, 2005 WL 8146317 at *2.

[20] *Farha*, 2012 U.S. Dist. LEXIS 197670 at *6.

[21] *See, e.g., United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994) (*citing United States v. Crosland*, 821 F.Supp. 1123, 1129 (E.D. Va. 1993) ("...subpoenas are used only to secure for trial cerain documents or sharply defined groups of documents.").

[22] *See, e.g., United States v. LaRouche Campaign*, 841 F.2d 1146, 1180 (1st Cir. 1998) (a request for all "video tapes of interviews" and "all outtakes" to review in the hope of finding evidence was sufficient specific as there was no other source of this information).

[23] *See Nixon*, 418 U.S. at 702.

[24] *United States v. Weisberg*, 2011 WL 1327689 (E.D. N.Y. April 5, 2011).

**rendering Rule 17 a nullity.**"); *United States v. W.R. Grace*, 434 F.Supp.2d 869, 873 (D.Mont.2006) (Rule 17(c) subpoena should be issued "where the movant knows that the material sought exists and can identify it with specificity, even if he is ignorant of the exact content of the material"). Weisberg's request is sufficiently narrowly focused on a group of records likely to contain helpful documents, and thus he cannot be said to be engaging in a "fishing expedition." *See In re Irving*, 600 F.2d 1027, 1034 (2d Cir.1979) (criminal defendant's subpoena requesting union sign-up cards from non-party met Rule 17(c) requirements since, "if the cards are in fact forged or otherwise fraudulent, they may provide the defendants with a basis for asserting an entrapment defense") (emphasis added); *Rajaratnam*, 2011 WL 507086, at *2 (Rule 17(c) subpoena request for "[a]ll documents or other communications" made by or between several named parties, and reflecting certain payments, was sufficiently specific, where responsive documents would have "potential evidentiary uses").[25]

This guidance from *Weisman* rings particularly true in Ms. Winner's case where one of the pivotal allegations against Ms. Winner requires the Government to establish that the information they allege she "leaked" was "national defense information" (i.e., closely held and potentially damaging to the national security). As Ms. Winner has explained in various legal briefs to this Court,[26] and as this Court has already ruled,[27] if the Government disseminated information to the public (including ▮▮▮▮▮▮) or if information was otherwise publicly available (e.g., in the hands of third parties), then it was not closely held and/or not potentially damaging, and does not support the charges against Ms. Winner. In other words, the Rule 17(c) subpoenas cut to the heart of Ms. Winner's defenses in this case, and while Ms. Winner cannot know precisely what she is seeking in the hands of third parties -- she has narrowly tailored her subpoenas to ensure all responsive documents are relevant and admissible in her case.

---

[25] *Id.* at *7 (emphasis added) (citations and quotations in original).

[26] *See* Doc. Nos. 112, 132.

[27] *See* Doc. No. 229.

## III.    ARGUMENT

As set forth above, this Legal Brief is not intended as Ms. Winner's complete showing to justify the specificity of her Rule 17(c) subpoenas. Ms. Winner will make further *ex parte* showings at the April 23, 2018 proceedings.  Furthermore, to the extent any such showings are deemed inadequate, Ms. Winner hereby respectfully reserves her right to make a further showing in accordance with applicable precedent briefed more fully in her Response. The principal reasons for not making such a showing in this Legal Brief are simple: (1) Ms. Winner is not required to disclose important trial strategy including witness lists and the specifics of arguments she intends to make at trial (in fact, the Constitution forbids it); and (2) as briefed to the Court in the Response, Ms. Winner has not had sufficient time in light of the specific circumstances of this case to make such a showing in advance of Monday's scheduled hearing.

As to the latter point and the subject of this Legal Brief though, some of the specific facts and circumstances of this case to be considered by the Court as it evaluates specificity include the following (non-exhaustive, and in no particular order):

(i)     Despite the exercise of due diligence and submission of all appropriate materials through the assigned CISO in this case, and due to no fault of her own, Ms. Winner *still* does not have a cleared public domain research expert who can assist with public domain searches to support Ms. Winner's defenses.  In other words, Ms. Winner's expert searchers have not seen and therefore cannot search for some and/or all of the alleged "national defense information" at issue in this case;

(ii)    In this case, defense counsel is unable to conduct typical pre-trial investigation of materials in the public domain, including searches of relevant documents and interviewing witnesses. Numerous obstacles to defense preparation have routinely

arisen, including security concerns regarding dissemination of otherwise unclassified documents when in association with this case and extreme limitations on any cleared defense counsel (and experts) in their ability to search for potentially relevant information in the public domain using any terms from the ▮▮▮▮▮▮▮ at issue in this case;

(iii)    Notwithstanding, and despite the above-described limitations, Ms. Winner's public domain search experts have spent hours upon hours completing unclassified searches, and the defense has incurred significant expense combing through documents in the public domain to identify reliable sources of documents and information that are relevant to Ms. Winner's defenses;

(iv)    Based on this work, which constitutes the defense team's important and protected work product, Ms. Winner has reviewed thousands of documents and other source materials available in the public domain to arrive at the approximately 40 third-parties who most assuredly have information relevant to Ms. Winner's defenses, including entities reasonably expected to have documents and information that may exonerate Ms. Winner of the charges against her. Indeed, these potential recipients have been carefully selected based on other information already available in the case, discovery provided by the Government, and public documents reaffirming defense conclusions about dissemination prior to June 5, 2017, including a recent episode of the CBS television broadcast "60 Minutes";

(v)    In an effort to make the subpoenas as narrow and focused as possible, the defense team has attached specific example of documents that support their requests to each specific recipient and the specific ▮▮▮▮▮▮▮ in question as a reference.

All requests are specifically tailored to such documents and the prior rulings of Judge Hall and Judge Epps in this case.  (*See* Attached Reference Chart) These documents and attention to detail define a narrowly focused production, and not a wide ranging, sweeping search and collection. This type of effort is a hallmark of good faith and indicative that the requests are not a fishing expedition;

(vi)   The language of the requests, for example those relating to the Government's "3 NDI points," is as specific as possible given that the Government has indicated it will not offer specifics about its "3 NDI points" until the time of its expert disclosure -- on April 30, 2018!  In other words, Ms. Winner *still* is not privy to what specific information the Government contends is the "national defense information" that allegedly supports the charges against her;

(vii)  Additionally, the Government disclosed additional classified discovery on or about March 30, 2018 that was not available at the time the subpoenas were prepared but which unequivocally support the requests that have been made; and

(viii) The Government has even suggested that the subpoenas are too specific.  Indeed, the Government has recently raised security concerns based on how specifically the Rule 17(c) subpoenas have been drafted and the attachments thereto.

As has been and will continue to be demonstrated, these subpoenas are not intended as a fishing expedition based on "mere hope," but are the result of considerable document review, research and consultation with various experts.  The Defendant has ample support for each and every one of her narrowly tailored requests.  The Government will contend that Ms. Winner is engaged in a fishing expedition, but the record in this case will establish that she is simply utilizing the appropriate, Constitutionally guaranteed tool under Rule 17(c) to facilitate up-front

delivery and inspection of the documents that are relevant to her defenses so she can prepare for trial, including preparation of any CIPA disclosures that must be made despite the limitations she faces (note: the Government has routinely taken the position that unclassified documents must be disclosed under CIPA when connected with this case). Amazingly, the Government both previously objected to the lack of specificity in Ms. Winner's CIPA Section 5 disclosures but simultaneously objects to her access to information that could make her disclosures more specific – even where it lacks standing to do so.

In the end, everything Ms. Winner has requested through the Rule 17(c) subpoenas will need to be produced, if not now, at trial through subpoenaed witnesses. By denying these requests, the Court loses the benefit of streamlining the trial process (and related CIPA proceedings), which is one of the chief goals of this Court and also the principal purpose for the Rule, as articulated by the Supreme Court in *Bowman* and *Nixon*.

## IV. CONCLUSION

CIPA allows for many deviations from the standard rules of federal procedure, but the application of Rule 17 is one of the few tools available to a Defendant to try and prepare a case. The compulsory power is even more significant in a CIPA case like this one where a Defendant has been so limited in her ability to conduct independent investigation into the case. Ms. Winner is entitled to the full power of Rule 17(c) to build her defenses and defend the charge against her, and the Court should rely on its discretion to consider all of the factors limiting Defendant's ability to prepare her case or offer additional detail in these request, as relevant to the totality of the circumstances, in its review. The Court should consider the disadvantages both procedurally and practically that Defendant faces in preparing her case and exercise its discretion to ensure Defendant get the benefit of a fair trial.

Respectfully submitted,

/s/ Thomas H. Barnard

Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)
**BAKER, DONELSON, BEARMAN,**
  **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA 30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (Bar No. 048600)
Titus T. Nichols (Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
  **CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
(504) 566-5200
MChester@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
  **CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD 21202
(410) 685-1120
TBarnard@bakerdonelson.com

Katherine L. Cicardo (La. Bar No. 35081)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
  **CALDWELL & BERKOWITZ, P.C.**
Chase North Tower
450 Laurel Street
20th Floor
Baton Rouge, LA 70801
(225) 381-7027
KCicardo@bakerdonelson.com

**COUNSEL FOR DEFENDANT**
**REALITY LEIGH WINNER**

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2018, I filed the above document with the Classified Information Security Officer (CISO) in the above-styled case in the manner proscribed by the CISO.

/s/ Thomas H. Barnard
Thomas H. Barnard

**SUBPOENA REQUEST SUMMARY CHART**

| Fed. Ag. Req. # | ▓ Private Req. # | Specific Documents Requested | Derived from Previously Considered and Granted Requests under Rule 16 or based on public search guidance | Federal (except DOD) | DOD | ▓ | Private Entities |
|---|---|---|---|---|---|---|---|
| 1 | 1 | ███████████████ | (Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
| 2 | 2 | ███████████████ | (Tr. at 208:.25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
| 3 | | ███████████████ | (Tr. at 284:.22-285:!5; Tr. at 241:15-18); Doc. No. 229 | X | X | | |

| 4 | 3 | | (Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
|---|---|---|---|---|---|---|---|
| 5 | 4 | | (Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
| 6 | 5 | | (Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
| 7 | 6 | | (Tr. at 233:8-12) | X | X | X | X |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | 7 | ████████ | (Tr. at 233:19-20) | X | X | X | X |
| 9 | | ████████ | (Tr. at 235:11-17), (Tr. at 208:25-209:9, 241:15-18 | X | X | | |
| 10 | 8 | ████████ | (Tr. at 243:7-244:5); | X | X | X | X |
| 11 | 9 | ████████ | (Tr. at 208:25-209:9, 241:15-18); Tr. at 246:11-16, 250:14-18); Doc. No. 229 | X | X | X | X |

| 12 | 10 | | (Tr. at 208:25-209:9, 241:15-18); (Tr. at 251:1-11); Doc. No. 229 | X | X | X | X |
|----|----|--|--|---|---|---|---|
| 13 | 11 | | (Tr. at 251:12-253:24; Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
| 14 | 12 | | (Tr. at 254:6-7, 257:16-19, 259:3-17, 259:18-260:6. Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |

| 15 | 13 | | (Tr. at 262:1-9, 263:16-20; Tr. at 208:25-209:9, 241:15-18) | X | X | X | X |
|----|----|----|----|----|----|----|----|
| 16 | 14 | | (Tr. at 265:15-16; Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
| 17 | 15 | | (Tr. at 266:21-23; Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18 | | | (Tr. at 279:7-11, 281:3-6; Tr. at 208:25-209:9, 241:15-18) | X | X | | |
| 19 | | | (Tr. at 301:8-302:4). | | X | . | |
| 19 (alt) | | | (Tr. at 301:8-302:4). | X | | | |
| 20 | 16 | | (Tr. at 306:17-317:17). | X | X | X | X |
| 21 | 17 | | (Tr. at 319:22-24, 320:1-2; Tr. at 208:25-209:9, 241:15-18) | X | X | X | X |

| 22 | 18 | | (Tr. at 320:20-23; Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
|----|----|--|----|---|---|---|---|
| 23 | 19 | | (Tr. at 327:10-12 | X | X | X | X |
| 24 | | | (Tr. at 330:3-333:1; Tr. at 208:25-209:9, 241:15-18) | X | X | | |
| 25 | | | (Tr. at 330:3-333:1) | X | X | | |

| 26 | 20 | ████ | (Tr. at 333:10-13; Tr. at 208:25-209:9, 241:15-18); Doc. No. 229 | X | X | X | X |
|---|---|---|---|---|---|---|---|
|    | 21 | ████ | (Tr. at 5:19); also Doc. No. 194 |   |   | X | X |
|    | 22 | ████ | (11/30 Tr. at 5:19); also Doc. No. 194 |   |   | X | X |

| | 23 | ███████████ | (11/30 Tr. at 5:19); also Doc. No. 194 | | | X | X |
|---|---|---|---|---|---|---|---|
| 27 | 24 | Any and all documents or communications relating to the unclassified intelligence reporting attached as Attachment 3. | (Tr. at 208:25-209:9, 241:15-18; Tr. at 208:25-209:9, 241:15-18) | X | X | X | X |
| | 25 | ███████████ | (Tr. at 208:25-209:9, 241:15-18); | | | X | X |
| | 26 | ███████████ | (Tr. at 208:25-209:9, 241:15-18); | | | X | X |

| FED | ███ PRIVTE | EXHIBIT SUMMARY | Fed-Non DOD | DOD | ███ | Private |
|-----|------|-----------------|-------------|-----|-----|---------|
| Ex. 1 | | ████████████ | X | X | X | X |
| Ex. 2 | | ████████████ | X | X | X | X |
| Ex. 3 | | ████████████ | X | X | X | X |
| | Ex. 4 | ████████████ | | | X | |
| | Ex. 4 | ████████████ | | | | X |