IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA


UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
                vs.            )      1:17CR34
                               )
REALITY LEIGH WINNER,          )
                               )
                Defendant.     )
_____)


TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN K. EPPS
MONDAY, MARCH 12, 2018; 3:04 P.M.
AUGUSTA, GEORGIA


**FOR THE GOVERNMENT:**

Jennifer G. Solari, Esquire
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
(912)201-2561

Julie Ann Edelstein, Esquire
U.S. Department of Justice
600 E Street NW, 10th Floor
Washington, DC 20002
(202)233-2260

**FOR THE DEFENDANT:**

      Titus T. Nichols, Esquire
      Bell & Brigham
      457 Greene Street
      Augusta, Georgia 30901
      (706)722-2014

      Joe D. Whitley, Esquire
      Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
      3414 Peachtree Road, NE, Suite 1600
      Atlanta, Georgia 30326
      (404)223-2209

      Matthew S. Chester, Esquire
      Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
      201 St. Charles Avenue, Suite 3600
      New Orleans, Louisiana 70170
      (504)566-5231

      Thomas H. Barnard, Esquire
      Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
      Legg Mason Building
      100 Light Street, 19th Floor
      Baltimore, Maryland 21202
      (410)862-1185

**OFFICIAL COURT REPORTER:**

      Lisa H. Davenport, RPR, FCRR
      Post Office Box 5485
      Aiken, South Carolina 29804
      (706)823-6468

```
 1                     (Call to Order at 3:04 p.m.)
 2              THE CLERK:  The court calls case number 1:17CR34.
 3    The United States of America v Reality Leigh Winner.  Julie
 4    Edelstein and Jennifer Solari for the Government.  Joe Whitley,
 5    Matthew Chester, Titus Nichols, and Tom Barnard for the
 6    Defendant.  Here for a telephonic status conference.
 7              THE COURT:  Good afternoon, everybody.
 8         (Group responds simultaneously.)
 9              THE COURT:  We've got a terrible connection by
10    someone.  Is someone on a cellphone?
11              MR. WHITLEY:  Your Honor, it is breaking up on our
12    end, too.  I am having trouble hearing you.
13              THE COURT:  Yeah, I normally don't have that trouble.
14    I don't think it's the dial-in number we're using.  My guess is
15    it's someone trying to connect by something other than a land
16    line.  Is anybody on the call on a cellphone?
17              MR. WHITLEY:  Your Honor, I am, but I don't know that
18    my phone is the cause of anything.  My communications are clear
19    to you right now, aren't they?  I believe they are.
20              THE COURT:  Right.  Yeah, I can hear you fine.  It
21    seems to have gone away, whatever it was.  Okay.  Well, who is
22    going to take the lead as we discuss the schedule from the
23    Defense perspective?
24              MR. WHITLEY:  I would be glad, Your Honor to sort of
25    -- this is Joe Whitley, Your Honor.  I'll be glad to sort of
```

1   lay out some thoughts if the Court would permit me to, and then

2   I'd like to ask my colleagues to chime in if they care to --

3   particularly, Matt Chester -- if that's okay with Your Honor.

4          THE COURT:  Sure.  And, you know, this is going to be

5   kind of a round table discussion here today where we

6   collaborate and see if we can't brainstorm the best way to

7   proceed with the case.

8       And from the Government's perspective, Ms. Edelstein, are

9   you taking the lead for the Government?

10          MS. EDELSTEIN:  Yes, I'll do that, Your Honor.

11          THE COURT:  Okay.  Before we get started talking

12   about the proposed scheduling order, I do want to say first off

13   that Judge Hall wants the trial to occur -- to begin on

14   October 15th of this year.  I know that we've set a couple of

15   trial dates in the past that haven't worked out, but that is

16   the date that we are working toward very diligently here.  If

17   you look at the proposed amended scheduling order, that

18   scheduling order certainly pushes a trial date well into next

19   year in my opinion.  Although there aren't any date-certain

20   deadlines, if you add up all the days requested, it pushes us

21   into this time next year, and it's just too long.

22       So we've got to today talk about ways that we can shrink

23   this schedule so you have the time you need, but that we also

24   get this trial done in a manner that's consistent with our

25   Defendant's rights to a speedy trial, and so as I looked at the

1    schedule, a couple of things jumped out at me as being places

2    where we can cut back.

3         First of all, the briefing on the adequacy of the CIPA

4    Section 5 Notice -- I know we've gone through this on many

5    occasions and talked about whether it's necessary.  I am of the

6    firm opinion it's not, and so I'm striking all three of those

7    deadlines associated with arguing about the adequacy of the

8    Section 5 Notice and I don't want to entertain any discussion

9    of that today.  I'm set on that, and I've heard enough, I

10   think, from the parties to make an informed decision about that

11   issue.

12        A lot of these deadlines build in like a, you know, 30-,

13   45-, 60-day kind of timeframe for things to happen.  I think

14   the case has been around long enough and we've all worked

15   enough on it to where asking for a month or more to do

16   something is probably just too long.  I think that we can get

17   these things done in a shorter timeframe, and I also think that

18   the process may not be completely linear such that you need

19   step one to occur before step two can occur.  It seems to me

20   there are several instances in here that we can be working on

21   more than one thing at the same time rather than waiting on one

22   to occur and then starting the next.

23        So those are my initial thoughts, and so I wanted us to go

24   through these deadlines together today and kind of talk through

25   them so I understand what needs to occur from your standpoint

1    and also you can hear my thoughts, and then I am going to ask

2    y'all to reconvene and come up with a new revised schedule that

3    gets us to that October 15th trial date, and if we need to, we

4    can also reconvene after you give me that if we need to work on

5    it some more together.  So this is a collaborative process that

6    may take some time this week, but it's my hope that we'll be

7    able to accomplish something reasonable together.

8        So with that being said, I wanted to start with the first

9    deadline for Rule 17 subpoenas to be submitted to the court and

10   my question to the Defense in that regard relates to Rule 17

11   itself.  The scheduling order to me might suggest that I have

12   some discretion once I receive the subpoenas and that perhaps

13   we would hold a hearing to discuss the scope of the subpoenas

14   before they're issued, but in looking at Rule 17 it appears

15   it's just a matter of the Clerk signing it, sealing it, and the

16   parties to fill in the blanks and issue them, and the real

17   fight doesn't occur until they're served and the recipient

18   files a motion to modify or quash.

19       Am I right about that, Defense team?

20            MR. WHITLEY:  Your Honor, that's my understanding as

21   well.  I think we may have some recipients who are cooperative

22   and some who are not in our requests for information and so we

23   may be looking at some timelines that we really can't

24   anticipate just yet in terms of what that's going to look like,

25   but that's my understanding.

1          Matt, anything further on that?

2              MR. CHESTER:  No, Your Honor.  I think you're right

3     in that regard.

4              THE COURT:  Okay.  So ---

5              MRS. SOLARI:  I'm sorry.  I'm sorry for the

6     interruption.  This is Jenna.  Pardon me, Your Honor.  I think

7     having dealt with trial subpoena issues before in a Rule 17(c),

8     I think the only catch with that is that if either party wants

9     to require by subpoena production of the information prior to

10    the trial date which I understand will be October 15th, I think

11    then it has to be done by an Order of the Court since I don't

12    think either party has authority to require from the Clerk a

13    subpoena that requires production any sooner than the trial

14    date.  And, certainly, the Government wouldn't object to that

15    request, you know, if made by the Defense.  I certainly assume

16    they want this information prior to trial.  That's just the one

17    issue I've stumbled across before.

18             THE COURT:  Okay.  And so it sounds like, number one,

19    I would guess, Mr. Chester, Mr. Whitley, that y'all are going

20    to want production to occur before trial?

21             MR. WHITLEY:  Yes, Your Honor.

22             THE COURT:  And, number two, then, Mrs. Solari, it

23    sounds like the Government would not object to the procedure I

24    just outlined which is the Defense gives me the subpoenas; I

25    sign off on them because they require production prior to

1   trial; and we wait to have any type of argument about the scope

2   once they're served and the recipient decides whether to file a

3   motion to quash.

4           MRS. SOLARI:  Yes, sir.  I have no objection to that.

5   If that was exactly what you outlined, then I apologize.  I

6   missed that middle part.

7           THE COURT:  No, no, no.  I think that -- no, I didn't

8   mean to take it that way.  I think I actually did change it

9   some based on your comments to inject me in the beginning of it

10  by having me sign off on the subpoenas since they require

11  production prior to the trial instead of the Clerk doing that.

12          MRS. SOLARI:  Okay.  And we have no objection to

13  that, Your Honor.  I think it's in both parties' interest to

14  get this information together and be able to review it as far

15  in advance of trial as possible.

16          THE COURT:  Okay.  So when we're talking about the

17  production deadline, what date -- how much time are these

18  agencies going to need?  What's reasonable in that regard?

19          MRS. SOLARI:  Julie, do you have any thoughts on

20  that?

21      Your Honor, I can't speak to this having no experience

22  with this exact type of thing as far as subpoenas coming from

23  Defense for perhaps both classified and unclassified

24  information.

25      Julie, do you have any thoughts?

```
 1              THE COURT:  Well --

 2              MS. EDELSTEIN:  So I think that ---

 3              THE COURT:  -- before you do that, maybe I should

 4    turn to Defense Counsel and ask this question:  Will these Rule

 5    17 subpoenas to various agencies include the same scope as the

 6    original production requests that we've already litigated or

 7    will it only adopt the narrower scope that was approved through

 8    the hearing we had here and the appeal?

 9              MR. WHITLEY:  Let me defer to Matt on that question,

10    Your Honor.

11              MR. CHESTER:  Judge, this is Matt Chester.  In an

12    effort to streamline it, I think our thought was to just

13    incorporate the request as reformed by the Court.  However, for

14    purposes of preserving the record, our thought was to also have

15    kind of an alternative set that would request the full set of

16    requests understanding, you know, this -- we were operating

17    under the assumption earlier that we would have to go before

18    Your Honor so these subpoenas could issue, and in that regard

19    we were going to give the full request understanding that you

20    were likely going to deny that for record purposes, but give a

21    secondary set of subpoenas that would encapsulate the requests

22    as reformed by yourself and Judge Hall.

23              THE COURT:  Well, I guess the only problem with that

24    is it's a little different than the procedure envisioned by the

25    rule --
```

1           MR. CHESTER:  Right.

2           THE COURT:  -- because the rule doesn't suggest that

3    I have any discretion to narrow the scope of it until after I

4    get a motion to quash or modify.

5           MR. CHESTER:  So in that regard, Judge, you know, I

6    am just thinking out loud here.  I mean, we could give the

7    request -- we could give -- I don't want to -- I guess my

8    concern is I don't want to waive anything for record purposes

9    and so one thought would be to give all the requests.  I mean,

10   assuming we get a motion to quash, I think it can be dealt with

11   somewhat streamlined because we already know how you and Judge

12   Hall feel about the majority of those requests.

13          THE COURT:  Well, how ---

14          MR. CHESTER:  That might be one way of approaching

15   it.  Does that make sense?

16          THE COURT:  How about we do it this way?  Could we

17   just do it -- can we just encapsulate what we just said in a

18   consent motion and order that, basically, just says, hey, we

19   don't want to waste a bunch of time filing the original scope

20   subpoenas here; we all know that we've had this large discovery

21   discussion and rulings; we're going to issue these Rule 17

22   subpoenas in accordance with the more limited scope allowed by

23   the Court without waiving and hereby reserving fully our rights

24   to argue for the larger scope as to Rule 17 subpoenas just as

25   the original productions.

```
 1          Mr. Chester?

 2              MR. CHESTER:  I think I am okay with that, Judge.

 3    What we may do is just attach all the discovery requests behind

 4    that consent order so there is something in the record that

 5    this is what we would have requested but all parties agreed

 6    that, you know, based on prior orders and prior hearings that

 7    the Court would only likely -- you know, that the subpoenas

 8    would only be -- will be narrowed in accordance with the

 9    Court's order.  Is that what you're suggesting?

10              THE COURT:  Right.  Right.  I mean, basically, here's

11    what we would have served, but we're going to make -- we're

12    going to streamline this.  We're not going to relitigate all of

13    these discovery issues that the Court has already ruled on, but

14    on appeal we want to reserve our rights to argue that the full

15    breadth of the subpoenas as included in the attached exemplars

16    is something we're entitled to.

17              MR. CHESTER:  I think that preserves the issue,

18    Judge, and I think I am okay with that.  You know, just

19    briefly, I would turn to Joe and Tom and Titus.

20          Do any of you on the call have any concerns with that?

21              MR. WHITLEY:  I think --

22              MR. NICHOLS:  This is Titus.  No, I don't have any

23    particular concerns at this moment.

24              MR. WHITLEY:  Yeah, this is Joe -- Joe Whitley.  I

25    agree.  I think this gets us to the place where we save some
```

1    time, Your Honor, perhaps by approaching it that way.

2    Sometimes the devil is in the details.  I would say let us take

3    a swing at it and see what it looks like and then the Court can

4    take a look at it and see if it fits what you're considering,

5    Your Honor, at the same time preserves our objections.

6              THE COURT:  Okay.

7              MR. WHITLEY:  So I ---

8              MR. BARNARD:  Yeah.

9              THE COURT:  Ms. Edelstein, do you ---

10             MR. BARNARD:  This is Tom Barnard.  I think something

11   in the form of a proffer we can offer and I just want to note

12   that there is a chance that -- just so you -- it won't totally

13   cover the nail here because some of the subpoena requests would

14   be to entities that -- there may be requests that have not been

15   considered and we'll do our best to keep it in the scope, but I

16   do think, you know, we knew who we were seeking discovery from

17   in the beginning.  So there may be some things along the

18   periphery that have not been ruled on yet by the Court.

19             THE COURT:  Sure.  Yeah, and I don't want to --

20   certainly, I don't want to do anything to prejudice y'alls

21   rights on appeal or to make arguments you haven't made yet

22   that -- but if they're substantially similar and you think, you

23   know, 95 percent chance we're going to feel the same way about

24   it as we did the original request in some other slightly

25   different form, then throw that in the Rule 17 draft subpoena

1    that we're all going to stipulate you reserve your right to

2    argue you should get on appeal.

3        Ms. Edelstein, do you have any objection to us proceeding

4    in that manner?

5              MS. EDELSTEIN:  No, Your Honor.

6              THE COURT:  Okay.  All right.  Is that everything

7    that we need to discuss in terms of this Rule 17 subpoena issue

8    from the Defense perspective?

9              MR. CHESTER:  Yes, Judge.  I think so.  Obviously,

10   this will -- this is Matt.  I'm sorry, Your Honor.  This will

11   necessitate a little bit of SCIF work, but, yes, we can

12   certainly -- we can certainly do the consent motion and order

13   as Your Honor suggested as well as the subpoenas reformed how

14   the Court has ordered.

15             THE COURT:  I was going to ask for y'all to get us

16   the subpoenas by March 21st, but this adds a new layer to it;

17   so you're probably going to need until the 30th.  Is that what

18   you're thinking?

19             MR. CHESTER:  Yes, Your Honor.  I think the 30th is

20   realistic and I would -- we would like those extra days, if

21   possible.

22             THE COURT:  Okay.  Let's turn to the next deadline

23   and that's the initial deadline for the parties to produce

24   discovery.  In looking at that, I had two thoughts.  First of

25   all, I would hope that by now everything has already been

1    produced by the Government that I ordered at our hearing that

2    occurred before the end of the year such that all that's left

3    would be discovery more recently ordered by Judge Hall.

4        Am I right in that regard, Ms. Edelstein?

5            MS. EDELSTEIN:  Your Honor, we gathered the materials

6    responsive to your order last year.  Because the scope has

7    changed due to Judge Hall's order, we haven't yet produced

8    them.  We're pretty much ready to go on what you ordered and we

9    can certainly produce that in advance of April 30th.  The

10   trickier part for us is figuring out how the scope has changed

11   from Judge Hall's order and also determining whether there's

12   additional material that we're going to need to protect through

13   a CIPA Section 4 Motion and we haven't identified the scope of

14   the material yet, let alone what protections we're going to

15   need to put in place.

16           THE COURT:  Okay.  So let's just do this kind of on a

17   rolling basis.  How quickly can you produce the documents that

18   were responsive to my rulings?

19           MS. EDELSTEIN:  I think it would be helpful to have a

20   couple of weeks to do that just to sort it out, but, you know,

21   certainly, we're talking in the March timeframe --

22           THE COURT:  Okay.

23           MS. EDELSTEIN:  -- for that material.

24           THE COURT:  All right.  So we're only, what, 18 days

25   left in the month?  Is that right?  Nineteen?

1      MS. EDELSTEIN:  31st.  So we have left 19 days.

2      THE COURT:  All right.  So when do you think you can

3   get that first supplemental production out?

4      MS. EDELSTEIN:  I mean, a March 31st deadline or a

5   March 30th deadline since that's when their first deadline is

6   would work for us, certainly.

7      THE COURT:  Okay.  And what about the second

8   supplemental production?

9      MS. EDELSTEIN:  That I think we would need to

10  April 30th to either decide whether we have to protect the

11  material through CIPA Section 4 and there is one document that

12  is responsive to your order that you issued that we've made

13  some redactions to that we'll be seeking to protect as well.

14     THE COURT:  Okay.  Well, just hold on to that.  When

15  I say "rolling basis", go ahead and get to the Defense what you

16  can as soon as you can, but in terms of the Section 4 filing to

17  me, if it's only one document, just wait.  Hold that until you

18  produce the second supplemental production and include it in

19  that new Section 4 that you file.

20     MS. EDELSTEIN:  Okay.  Yes, Your Honor.

21     THE COURT:  And you think April 30th is really -- I

22  mean, if you guys move as hard as you can on this, is it really

23  going to take another month and a half to get that small set of

24  production ordered by Judge Hall out?

25     MS. EDELSTEIN:  The -- so there are certain materials

1   that I think we can produce sooner than that, but my concern is

2   specifically with respect to certain materials that have not

3   yet been gathered by the agency; so we just don't know what

4   protections we're going to need to seek with respect to those

5   materials.

6           THE COURT:  Well, based ---

7           MS. EDELSTEIN:  We can certainly do this on a rolling

8   basis, and anything that's ready sooner, we'll produce sooner.

9           THE COURT:  Okay.  So with the stuff that you know is

10  out there responsive to Judge Hall's appeal order, how long do

11  you need to get it out?

12          MS. EDELSTEIN:  So as of now from our perspective we

13  haven't seen anything new from the agency that's responsive to

14  that order; so it's just hard to say.  So I don't want to

15  commit to anything sooner than that April deadline with the

16  understanding that in the next week we'll have a lot more

17  information from the agency and have a better grasp on whether

18  we can produce materials sooner to the Defense.

19          THE COURT:  Okay.  Well, it doesn't sound like there

20  is going to be a lot of volume to it.  I am going to order the

21  entire production of everything from my rulings and Judge

22  Hall's rulings to be produced by the end of this month.  If you

23  discover that that is unworkable, come back and ask for an

24  extension and tell me how much more time you need.

25          MS. EDELSTEIN:  So, Your Honor, as far as CIPA

1    Section 4 filing with respect to that material, though, we

2    won't be in a position to make that filing by the end of the

3    month because once that material is identified, we're then

4    going to just coordinate with all of the equity holders to see

5    what information needs to be redacted.  Then we'll have to go

6    through the process of getting a declaration from the agency

7    and putting together a filing.  So I think if Your Honor is

8    amenable to it, any material that we're not going to be seeking

9    protection for I think we can be in a position to produce that

10   by the end of the month, but in terms of material we'll need to

11   protect, I would still like to ask for that April 30th deadline

12   for that material.

13           THE COURT:  Okay.  That makes sense.

14       Does the Defense have any objection to that?

15           MR. WHITLEY:  No, Your Honor.

16           THE COURT:  Okay.  All right.  Let's handle it that

17   way, then.  March 30th for the productions and then April 30th

18   for the Section 4 filing.

19       All right.  The next is the initial Rule 16 expert

20   disclosures from the Government.  The first question I had in

21   looking at that is why -- why is that dependent on -- because

22   you've got it 45 days from the initial deadline to produce

23   discovery or 30 days from a written order on the Section 4

24   motion -- supplemental Section 4 motion.  Why is this expert

25   disclosure deadline -- why is it built on top of those

1    preceding events?

2              MS. EDELSTEIN:  So, Your Honor, with respect to the

3    deadline being tied to the initial deadline to produce

4    discovery, that would be in reference to the Defendant's

5    production of discovery which is also contemplated in what was

6    the April 30th deadline.  I don't know if Your Honor intends to

7    change that deadline for the Defense or keep their deadline for

8    producing discovery to April 30th, but we feel that our expert

9    disclosures and the way that we intend to put on this case at

10   trial could be dependent on what discovery we get from the

11   Defense of that date.

12             THE COURT:  Okay.  What's the Defense position on how

13   long it's going to take to produce your discovery to the

14   Government?

15             MR. WHITLEY:  Matt, you want to address this?

16             MR. CHESTER:  Sure.  Your Honor, this is Matt.  I

17   think we have a research issue or two that are outstanding that

18   we want to confirm.  I don't think there is going to be a huge

19   volume of materials that we need to produce to the Government.

20   Obviously, we have to do a CIPA Section 5 to the extent we rely

21   on classified materials, but that would be produced to us by

22   the Government.

23     So, I mean, if Your Honor has moved up their production

24   deadline, we would be amenable to moving up the production

25   deadline for us as well.  I'd say March 30th would be

1    ambitious, but if Your Honor would give us, you know, the first

2    couple of weeks of April, we would be amenable to that.

3           THE COURT:  Well, let's be ambitious.  That's what we

4    need to be in this case to get it tried by October.  So let's

5    get that Plaintiff's production out the door by the 30th of

6    March.

7           MR. BARNARD:  Matt, this is Tom.  Can I just add one

8    caveat to that that we're okay with the March 30th, but there's

9    one -- we need to be able to supplement based on our expert --

10   the one expert, the researcher -- as we identified unclassified

11   documents that the researcher may find on the internet and

12   things, that would need to be supplemented after that deadline

13   because our researcher actually can't -- we're still waiting on

14   the clearance to begin that process -- some of that process.

15   So we won't have all of that by the 30th.

16          THE COURT:  I understand that.  You can do that on a

17   rolling basis.  Let's just get the meat of --

18          MR. BARNARD:  Yes, sir.

19          THE COURT:  -- production out the door.

20          MR. BARNARD:  Thank you, Your Honor.

21          THE COURT:  Okay.  So if we say we're getting all of

22   this discovery produced by March 30th, then what about the

23   Government's Rule 16 disclosures -- expert disclosures --

24   Ms. Edelstein?  What timeframe would that be for you, you

25   think?

1          MS. EDELSTEIN:  I think, Your Honor, we could strike

2     the second part of that clause which says the "or 30 days from

3     the order on the Section 4 Motion, whichever is later," and tie

4     our expert disclosures to the deadline for the Defense

5     disclosures to us in discovery.

6          THE COURT:  I mean, so my reaction to that is 45 days

7     is a long time given that we're trying this case in October,

8     and I would guess by now that your experts are fully locked and

9     loaded and that you're not going to get anything from the

10    Plaintiff in their production that's going to be surprising or

11    world changing in terms of your experts and what they're going

12    to testify.  Am I right about that?

13         MS. EDELSTEIN:  We just don't know, Your Honor.  We

14    have no idea what the Defense is going to produce to us.

15    They've produced to us no discovery to date in this case, and I

16    can tell you that I wish that things were that firm with our

17    experts at this point, but they're not.

18         THE COURT:  How many experts do you have?

19         MS. EDELSTEIN:  We don't know at this point, Your

20    Honor.

21         THE COURT:  Well, let's make your expert disclosures

22    due by April 30th.  Okay?  I mean, you -- my thought is that

23    these experts are already retained.  They've already been

24    looking at this case.  They've already started formulating

25    their opinions.  All they really got left to do is take a look

1    at what you're going to get from the Plaintiff -- I mean, from

2    the Defense and so that gives you 45 days from today's date to

3    get those finalized and filed.

4            MS. EDELSTEIN:  Your Honor, that would give us only

5    30 days; correct?

6            THE COURT:  From today's date it would give you

7    longer.

8            MS. EDELSTEIN:  I'm sorry.  From today.

9         Jenna, do you have any input on that?

10           MRS. SOLARI:  No, I mean, it is going to be hard to

11   do that without having seen the Defense discovery, I guess,

12   but, you know, certainly, we'll process it as quickly as we can

13   and do what we can as far as our expert notices.

14           THE COURT:  Okay.  Well, let's put that down for now.

15   And, look, if something earth-shattering occurs when you get

16   that production from the Defense and you got to go out and

17   retain new people, we can talk about that at that time, but

18   let's move as quickly as we can with the core of what you've

19   already started working on.  So if you got two experts now

20   you've been working with and now all of a sudden you got to

21   hire a third because on March 30th they produced something to

22   you that's different, surprising, and requires it, we can talk

23   about extending the deadline for that one particular expert

24   witness, but for all of the other ones and for all the things

25   that aren't a complete surprise, let's get those disclosures

1    out the door by April 30th.

2              MS. EDELSTEIN:  Thank you, Your Honor.

3              MR. WHITLEY:  Your Honor, one overarching thought,

4    Your Honor, I wanted to mention is that we have submitted names

5    to the CISO of some experts, and as the Court's aware, the CISO

6    is doing an outstanding job.  They are really working hard, but

7    as a practical matter, we don't have clearances for experts

8    that -- some of which we submitted over a couple of months

9    ago -- and so they can't begin to work and so they can't go

10   into a SCIF and help us work through things, and there are a

11   number of issues that we want them to look at, but we can't --

12   we don't have their help at this point in time.

13       So this is something I think the Court is well aware of,

14   and, certainly, the Court knows and we're trying and working

15   very hard.  As the Court knows, we haven't sat on our laurels

16   in this case, and we've been very aggressive in trying to

17   oblige the Court's concerns about timelines, but I thought I

18   would mention that to you.  That is just something that we're

19   dealing with on our side of the ledger.

20             THE COURT:  Okay.  Have any of them been approved

21   yet?

22             MR. WHITLEY:  I'll turn to Tom Barnard on that.

23       Tom?

24             MR. BARNARD:  Yes, your Honor.  We have -- one of our

25   experts is approved.  It was -- it was did in a declaration

1   with the recent motion to compel, but we have at least several

2   others that, you know, have been disclosed and we're waiting

3   on.  So only one is up and running and approved.

4           THE COURT:  Okay.  The other ones -- do you have any

5   estimate from the CISO's office of how much longer?

6           MR. BARNARD:  We can get into the details.  I have

7   our next one it looks like could be in the next week or two

8   is -- could be up and running.  Then we have two other ones

9   that we just don't have an estimate at all from.

10          THE COURT:  Okay.  Well, I'll talk with the CISO

11  about that, and, you know, one thing we may have to do is just

12  start talking on the phone more regularly as a group so we can

13  deal with things like this and I know about them and can help

14  you work through them.

15      All right.  So if we have April 30th as the date for the

16  expert disclosures of the Government, I see that the Defense

17  deadline for their expert disclosures is -- well, the first

18  deadline you guys have is a deadline to supply the CISO with

19  your experts' information for security clearances.  I guess

20  that deadline really is only for, obviously, experts that --

21  really, rebuttal experts to the ones identified by the

22  Government.  Is that right?

23          MR. CHESTER:  Yes, Judge.  This is Matt.  That's

24  right.  We, you know, wanted -- we needed to build in some

25  time -- the ability for experts that maybe are disclosed to us

1    that we don't have a competing expert on.  The others,

2    obviously, as Tom just mentioned we have been submitting the

3    information to the CISO to get their cleared -- get them

4    cleared.

5         THE COURT:  I used to retain experts a lot in civil

6    litigation, and, number one, we shouldn't be talking about that

7    many, and, number two, it shouldn't take 60 days.  I mean, once

8    you read their reports, you should have a good idea of what you

9    need to look for, and, you know, if you submit a name, it's not

10   like you've made any commitment to use that expert to testify

11   at trial.  You could still be working with them to figure out

12   whether they will testify or not.  You know what I'm saying?

13      I mean, the critical thing to be done is to identify the

14   subject matter expertise of the rebuttal expert, identify the

15   person most capable of testifying from your standpoint, and

16   then just giving that name to the CISO.  And so it seems to me

17   you can turn that around in 14 days.

18         MR. WHITLEY:  Yes, sir.  A practical -- I know we are

19   having a bit of a round table discussion today and I think this

20   is really helpful.  I wanted to mention that the locating and

21   finding and retaining of experts is sometimes not as easy as it

22   might be in pure civil litigation because the pool of experts

23   in this area, at least from my observation, is not unlimited

24   like it might be in some civil litigation settings where

25   there's just kind of a huge landscape.  So we've got -- without

1    getting into too much detail and the Court doesn't need that

2    today, but we've had -- we've been working on it pretty hard

3    and sometimes it is hard to locate, you know, people who have

4    an interest in being retained.

5        Obviously, a lot of these experts, you know, get paid a

6    good bit of money by the Government to be experts in those

7    settings, and so it's kind of a -- maybe puts them at a cross

8    purpose sometimes with the Government.  So finding people who,

9    you know, are very capable and can testify is not as easy and

10   it might seem.  I thought I would share that backdrop with the

11   Court.

12       THE COURT:  Well, that's helpful to me.  Let me ask

13   you, then -- so if you got these government reports and you

14   took them home and digested them and figured out the experts

15   that you need for rebuttals, if you turn to one of your

16   associates on the team and said, "Ride herd on this thing and

17   find us some experts now," if they made it a top priority to do

18   that, how much time do you think would be reasonable that you

19   would need to be able to not file a report from those rebuttal

20   experts, but at least get the names -- just get the names to

21   the CISO to start security clearance?

22       MR. WHITLEY:  Yeah.  Tom has had more day-to-day work

23   on that topic.

24       Tom, what is your thought on that?  Do you have any ---

25       MR. BARNARD:  Well, we think, Your Honor -- this is

1    Tom Barnard.  I think it is hard to say for sure.  I think the

2    60 days here reflects the spectrum of specialties.  So there

3    are some specialties that we could do probably in three weeks,

4    four weeks.  There are some specialties the narrower you get,

5    obviously, in this unique realm that is this case that become

6    there may be a handful of people in the whole country that can

7    talk about it.  So, you know, it depends on the specific

8    specialty.

9         So I thought -- I think the 60 days was designed to be --

10   cover the spectrum.  If I were to take an average -- you know,

11   just the average kind of issue, maybe 30, maybe 45 days.  A

12   more difficult case, it's just going to be longer.  And, you

13   know, it's slightly different because I was like you -- many

14   experts -- you know, we have to convince these people to give

15   us their social security numbers, their date of birth, and

16   place to birth to supply their names to the CISO.  So a lot of

17   them don't want to do that to start the process because they're

18   kind of aggrieved to doing this because that's giving over some

19   important PII.

20             THE COURT:  All right.  Well, look, I have enough

21   experience, I think, with this stuff.  I could turn it around.

22   I could get a name to my litigation team in 7 days if I really

23   worked hard on it.  I am not going to make you do that, but 14

24   days.  Let's shoot for that.  And if something happens and you

25   need more time, you can always come back and tell me, but all

1    we need are names to the CISO, and I think if somebody really

2    rides herd on it, you can get it done in that amount of time.

3        So the next deadline is the expert disclosures of the

4    Defense, and then so I immediately started thinking, well, we

5    probably need a different deadline for rebuttal experts than we

6    do for experts that you've already retained and have been

7    working on the case and you know you're going to disclose.

8        What would you say to that, Defense team?

9            MR. WHITLEY:  Matt, you want to address that?

10           MR. CHESTER:  Sure.  I mean, again, we were

11   approaching this with the needed time if we needed rebuttal

12   experts to go out and identify those folks and have them, you

13   know, comply with the Rule 16 disclosures.  For those that we

14   currently have, assuming they are cleared by this point in

15   time, I think we could do it on a rolling basis and I think

16   even the footnote there kind of contemplates that.  So, I mean,

17   however Your Honor want to structure it, we would be amenable

18   to it.  If you wanted to keep the 30 days, you know, from their

19   expert disclosures for the ones that we have on staff and have

20   been working on this case and have been cleared, I think that's

21   a reasonable deadline.  I am just concerned about, obviously,

22   the ones -- the rebuttal ones that you're discussing now.

23           THE COURT:  Rule 16 ---

24           MR. BARNARD:  And, of course, just to add in, Matt,

25   the ones that we have that still aren't cleared, it could be

1    some of them aren't clear until days after the Government's

2    initial disclosure; so it's just going to push that back.

3              THE COURT:  Okay.  I believe Rule 16 does contemplate

4    somewhat an order, right, so that the Government produces their

5    expert disclosures first?

6              MRS. SOLARI:  I am going to take a look at that

7    because one would sort of assume that the Government files

8    first having the burden and then the Defense sort of analyzes

9    whether they think they need any expert unless they're going

10   forward with some sort of affirmative Defense in which they

11   carry the burden.

12             THE COURT:  Well, that's what you guys ---

13             MRS. SOLARI:  Oh, shit.  Did I hang up on you guys?

14             MR. WHITLEY:  No, you're ---

15             THE COURT:  No.

16             MRS. SOLARI:  Sorry.  I'm sorry.  I didn't mean to

17   curse.  I thought I hung up on your guys.  I'm so sorry.

18   Excuse me.

19             THE COURT:  No.  No hang up.

20             MRS. SOLARI:  All right.  I don't know.  I have never

21   been aware of any strict requirement of an order in -- oh, you

22   know what?  Then, again, yeah, Rule 16, I think, says after the

23   Government has complied when we file our reciprocal discovery

24   request I think we have to aver that we have complied with Rule

25   16 which contemplates disclosure of our expert notices and then

1    part of our reciprocal discovery requests and Rule 16 would be

2    that upon our request after having satisfied our requirement

3    then the Defense would satisfy their reciprocal discovery

4    requirement.  So I think that does contemplate an order in

5    which the Government would file first and then through

6    reciprocal discovery requests or simply Rule 16 the Defense

7    would then file their expert notices.

8              THE COURT:  Okay.  And that's what I was alluding to

9    is the order you just described in more detail.

10         So what's the Defense team think about if we broke this up

11   into two different deadlines -- one for your initial experts

12   and then another for your rebuttal experts -- what are you

13   thinking?  Let's just not talk about the security clearance

14   issue for now.  I am going to work on that with the CISO's

15   office and try to push that as hard as I can.  So let's assume

16   for a minute that's not going to be a problem.  How much time

17   after disclosure by the Government are you going to need to

18   disclose your first round of experts?

19              MR. WHITLEY:  Matt?

20              MR. CHESTER:  This is Matt.  I would say 30 days and

21   here's why.  I believe -- and we've had some conversations with

22   the Government the last couple of days about this -- the Rule

23   16 expert disclosures is going to be a critical point in time

24   in this case because the Government will be giving us some

25   specificity and some precision on the three NDI points that are

1   really the subject matter -- the crux of this case.  And

2   it's -- even though we retained experts and they have been

3   working -- those that are cleared on this case and have made

4   progress -- that disclosure will, I think, necessitate a flurry

5   of activity after the fact.  And so that's why I say 30 days

6   from their disclosures we can certainly have the ones that are

7   cleared and in hand done, and then the ones that are rebuttals,

8   you know, I'd ask for the 30 days after, you know, they have

9   been cleared and retained.

10          THE COURT:  Okay.  Well, that sounds reasonable to

11  me.  Does the Government have any objection to those proposals?

12          MS. EDELSTEIN:  No objection, Your Honor.

13          THE COURT:  Okay.  All right.  The next deadline is

14  for the Defendant's amended CIPA Section 5 Notice and that's

15  based on the timing of it -- the Defendant's expert

16  disclosures -- and so my first question was why -- why is the

17  Section 5 Notice dependent upon the expert disclosures?

18          MR. WHITLEY:  Matt, can you address that?

19          MR. CHESTER:  Sure.  Judge, I think that -- I am

20  trying to remember the basis upon which we did that, but,

21  obviously, our CIPA Section 5 will be essentially pre-trying

22  this case.  I mean, we're going to need to disclose all of the

23  classified information that we intend to use at trial.  A

24  prerequisite to that will be retaining and working with our

25  experts to the point where we, you know, can identify those

1  materials because they will be testifying about those

2  materials.

3      So I think in our mind they naturally -- they made sense

4  because we will have to have provided that information to the

5  Government before we -- you know, before or contemporaneous

6  with our CIPA Section 5 Notice.  That's why I think we may have

7  tied those deadlines.

8          THE COURT:  In other words, your expert may rely on a

9  particular document that you need to list in your Section 5 and

10 you're not going to know that until you prepare that expert's

11 disclosure.

12         MR. CHESTER:  That's exactly right, Your Honor.

13         THE COURT:  Okay.  Could you file it the same day

14 that you file your expert disclosures -- your last round of

15 expert disclosures?

16         MR. CHESTER:  So you're -- the CIPA Section 5 being

17 due when we do our last round -- you mean our rebuttal expert

18 disclosures?

19         THE COURT:  Right.

20         MR. CHESTER:  I think we can -- I mean, I'll defer to

21 Tom if you have any objections, Tom, but I know Your Honor

22 wants to move this along.  So I think we can make that work,

23 you know, barring any vociferous objection from Tom on our

24 team.

25         MR. BARNARD:  No objection here.  I just -- you know,

1   noting that the experts are experts because they have -- just

2   stating the reasons why we need that is they have a lifetime --

3   a lot of them -- of knowledge.  So in their precaution we would

4   want to make sure that if there is something they are going to

5   talk about we disclosed it in the CIPA 5.  So I think that's

6   why we -- that's another reason why we got to make sure we

7   completed our work with them.

8                THE COURT:  Right.  Yeah and by the time you get your

9   rebuttal experts identified -- number one, you may not have

10  any, but, number two, you'll already have disclosed probably

11  the majority of your experts in the first round --

12               MR. BARNARD:  Yes.

13               THE COURT:  -- of disclosure.  So, you know, by the

14  time you get to the rebuttal, you know, it shouldn't be that

15  much more difficult to tack on whatever your rebuttal experts

16  are going to rely on and file that notice the same day.

17               MR. WHITLEY:  Just, Your Honor, if I might -- this is

18  Joe Whitley -- I wanted to add something, but I don't want to

19  interrupt you.  I'm sorry.

20               THE COURT:  No.  Go ahead.

21               MR. WHITLEY:  One thing the Court is very well aware

22  of is that we've been moving around as we need to on this case.

23  The only satisfactory, usable SCIF for purpose of getting

24  together with our experts, many of whom -- most of whom are in

25  Washington -- is in the Washington, DC SCIF for our

1  interactions; so we can't really talk about our case except

2  when we go to that SCIF in Washington.  So there's some

3  logistical timeline considerations that we have been dealing

4  with, and I am not complaining to the Court about this, but we

5  were hopeful that we might have at some point a SCIF in Atlanta

6  which would be a little bit more logistically easier for us to

7  get to.  There isn't a SCIF in Atlanta, and, certainly, the

8  Court is aware of that, but there is -- there are some -- Tom

9  made this comment about these experts having other obligations

10  besides our case.  I wanted -- I thought it was an appropriate

11  time just to mention that we continue to work with that so a

12  lot of what we contemplate here in these -- some of what we

13  contemplate here in these timelines, Your Honor, is built

14  really around, you know, trying to get from point A to point B

15  because we don't have -- again, the Government is in a good

16  posture always in these cases because of the -- by having been

17  a federal prosecutor -- the access they have to more resources

18  are more immediate to them than it is to us.  So it just pushes

19  us back a little bit.  I thought I would just mention that --

20  those considerations are something that the Court is aware of,

21  but, nonetheless, are a factor in how we address these

22  timelines.

23          THE COURT:  And what is -- did you say that's a work

24  in progress in getting an Atlanta SCIF?

25          MR. WHITLEY:  Yes, sir.  We continue to request that

1    SCIF.  The CISO in this circumstance has been very diligent

2    from my observation, been trying very hard to get us that SCIF.

3    I don't know the current status, Your Honor, of where that one

4    is, but, again, there is no slight here or complaint about the

5    CISO or the office, but, nonetheless, we don't have a SCIF in

6    Atlanta and we've been seeking that, you know, since the

7    beginning of the case -- our involvement in the case.  So

8    anyway, that's just -- I don't know the current status.

9        Does anyone on the call on the Defense side know where we

10   might be with the Atlanta SCIF?

11           MR. CHESTER:  No, Judge.  This is Matt.  We're still

12   awaiting that.  I'm looking back through my emails.  I think

13   the original request was made in September of '17, and, you

14   know, Carli, I know, has been working on it, but, you know, as

15   of last Friday we followed up on it, it is still not ready.

16           THE COURT:  Okay.  The next deadline is the

17   Government's rebuttal -- I assume that's supplemental -- the

18   word would be rebuttal expert disclosures.

19        Is that right, Ms. Edelstein?

20           MS. EDELSTEIN:  Yes, Your Honor.

21           THE COURT:  Okay.  And 30 days to submit that

22   disclosure, I think, is probably reasonable and so then we turn

23   to ---

24           MS. EDELSTEIN:  I'm sorry, Your Honor.  The call is

25   breaking up again.  I'm having a hard time hearing you.

1            THE COURT:  I said I think the 30 days is reasonable

2    for the reasons we talked about with respect to the Defense

3    experts.  The next deadline is for the Government's Section

4    6(a) motion and that -- that motion is something that I would

5    think the lion's share of it you can go ahead and start

6    preparing based on what's already transpired in the case.

7         Would you agree with that, Ms. Edelstein?

8            MS. EDELSTEIN:  No, Your Honor, because it is

9    completely contingent on what's in their Section 5 Notice and

10   at this point we have no idea of what classified information

11   they're going to use.  In the Section 5 Notice they filed

12   previously they noticed virtually every page of classified

13   information we had provided them and based on that kind of

14   notice, I don't know how we would possibly even write a 6(a)

15   Motion because we would literally have to go through every

16   piece of classified information on every page plus every

17   testimonial (inaudible) we'll have to go through, too, and I

18   wouldn't be able to write a motion at all in a 6(a) fashion

19   based on that kind of notice.

20        So I know you don't want to relitigate-litigate the

21   adequacy question, but I am concerned about how we're going to

22   be able to put together a 6(a) motion and, certainly, that's

23   not something that we can begin working on until we know what

24   classified information that they're going to use.

25            THE COURT:  Okay.

1          MS. EDELSTEIN:  And to warn you, Your Honor, I

2     foresee this being a very, very long motion.

3          THE COURT:  Okay.  All right.  So we'll keep that at

4     28 days from the Section 5 Notice.  And then what about from

5     the Defense perspective?  How long are you going to need for

6     your response to that Section 6 Motion?  Can we cut that down

7     to 14 days instead of 21?

8          MR. WHITLEY:  Matt?

9          MR. CHESTER:  I mean, the 14 days instead of 21 -- I

10    think we can make that work, Judge.  Obviously, it sounds like

11    -- I hope it's not a lengthy motion, but, you know, if you want

12    to set it for 14 days, we can make that work.

13         THE COURT:  Okay.  And then the reply brief let's put

14    down 7 days.  And then we get down to the Government's motion

15    under Section 6(c) and you want 21 days to do that.

16         What all do you have to do before you can file that

17    Section 6(c), Ms. Edelstein?

18         MS. EDELSTEIN:  So we'll need a written order on the

19    6(a) Motion.  The statute actually requires a written order

20    and, essentially, anything we lose on at the 6(a) stage, we

21    would then put together a motion to move the court to allow

22    certain redactions to the material or substitutions or

23    summaries -- basically, find another form -- way for the

24    information to be actually admitted at trial.

25         THE COURT:  Right.  And so my question is once you

1   get that written order in hand, how many steps do you have to

2   take to get that filing together?  Is this a lengthy process of

3   meeting with the information stakeholders and coming up with

4   substitutions and does it ---

5           MS. EDELSTEIN:  It can be, Your Honor, depending on

6   how much information is at issue.  If there were only a couple

7   of pieces of information that we were to, quote, unquote, lose

8   on at the 6(a) stage and we only had to figure out how to move

9   into evidence two pieces of information, for example, then it

10  would be a pretty short process, but depending on the nature of

11  the 6(a) order, we could be looking at potentially a lot of

12  information that we'd have to coordinate with multiple equity

13  holders to make sure that they were comfortable with our

14  proposal for the substitution to be used at trial.

15          THE COURT:  Okay.  So we really just don't know right

16  now.  We don't have a way of really guessing.  I think

17  certainly the primary stakeholders are going to be involved --

18  probably even present at the Section 6(a) hearing; right?

19          MS. EDELSTEIN:  I think that there is a high

20  likelihood that somebody from the primary equity holder agency

21  would be present for the 6A hearing.

22          THE COURT:  Okay.  Well, I think we can make some

23  progress here.  This issue is going to be near and dear to

24  everyone's heart by the time we get an order on the Section

25  6(a) and so I think to keep progress rolling significantly I

1    want to cut that down to 7 days -- just keep the conversation

2    active.  You know, here what do we need to do?  We got the

3    order in hand; let's come up with proposals for substitutions.

4        If you need more time once you figure out just how

5    voluminous the Section 6(a) order is -- if it's tremendously

6    voluminous and you think you need more time, certainly, come

7    back at that point and we'll talk about it, but I am going

8    to -- I want to assume for the sake of this whole progress that

9    things are going to work well, and then if they fall apart, we

10   can always talk about what needs to happen next.

11       MS. EDELSTEIN:  Okay, Your Honor.  I think that there

12   is a fair likelihood that we would probably need at least two

13   weeks for that, but if you're more comfortable putting 7 in the

14   order, we can address it should the need arise.

15       THE COURT:  Yeah, it did sound a little draconian.

16   Let's just say 14.

17       MS. EDELSTEIN:  Okay, Your Honor.

18       THE COURT:  All right.  Let's see.  All right.  So 14

19   instead of 21 and then I think 7 for the Defendant's response

20   to that.  And do we really need a reply brief?

21       MS. EDELSTEIN:  I would prefer to have a reply brief

22   just because this information is going to be very key to the

23   agencies how it's submitted at trial, and depending on the

24   arguments raised in the response, we could definitely want to

25   address those arguments.

1          THE COURT:  Okay.  All right.  I understand that.

2    Pretrial motions in limine -- I don't see any problem with

3    that.  It's not like it is going to hold up trial.

4          MS. EDELSTEIN:  And, Your Honor, I apologize.  I just

5    noticed that there isn't a 6(b) hearing schedule proposed in

6    this order.  I think that there may be a need for a 6(b)

7    hearing as well.

8          THE COURT:  Okay.  All right.  I think we've covered

9    everything that I wanted to talk about.  And, you know, this

10   has been very helpful to me.  I think I can actually cobble

11   together a draft order based on what we've discussed.  So I am

12   going to do that and then I am going to circulate it among

13   y'all by email, and then I want us to get back on the phone

14   just to talk it out one more time before I enter it to make

15   sure I didn't make any mistakes and that upon reflection you

16   guys think perhaps we need to consider something else because

17   there is a lot of moving parts here.  So let's -- I'll email

18   that to you by the close of business tomorrow.  Perhaps we

19   could talk Wednesday afternoon.

20        Is the Defense team available Wednesday afternoon?

21        MR. WHITLEY:  Your Honor, I think that would be

22   possible.  I don't know.  Let me look at my calendar real

23   quickly.  I would say that we probably would want to

24   communicate -- our client has waived any appearance at today's

25   hearing for purposes of the record, but we would probably want

1   to, you know, just as a courtesy to our client communicate with

2   her on where we are headed.  I think we could do that perhaps

3   between today and tomorrow sometime.

4        What time does Your Honor have in mind for ---

5            MS. EDELSTEIN:  Sorry.

6            THE COURT:  Well, I mean, if you need a little more

7   time to talk with her, we could do it Thursday.  Thursday -- we

8   could do it even Thursday morning, say, 10 o'clock.

9            MR. WHITLEY:  How does that look for, Tom, you and

10  Matt and then Titus?

11           MR. CHESTER:  That works for me, Judge.

12           MR. NICHOLS:  That works for me.

13           MR. BARNARD:  I am available, Joe.

14           MR. WHITLEY:  Okay.  Great.

15       Your Honor, that looks good on our team.  We will have

16  some combination of us available.  Thank you.

17           THE COURT:  Okay.  What about from the Government's

18  perspective?

19           MS. EDELSTEIN:  If there is any chance of doing it a

20  little bit earlier, that would be helpful.  I am actually going

21  to be near your way giving a presentation in the NAC in South

22  Carolina.  If we can't do it earlier, I can -- I will try my

23  best to make it work, but if there is a possibility of doing it

24  maybe at 9 o'clock, that would be very helpful.

25           THE COURT:  Yeah, of course.  What time are you

1    speaking?

2             MS. EDELSTEIN:  I am speaking at 11:30, but the

3    presentation before me is also on a similar topic.

4             THE COURT:  Well ---

5             MS. EDELSTEIN:  I was supposed to be at that

6    presentation as well.

7             THE COURT:  Well, what I'm thinking is why don't we

8    just move it to Thursday afternoon then?  What time,

9    Ms. Edelstein, would you break free on Thursday afternoon?

10             MS. EDELSTEIN:  The presentation -- it looks like it

11    is supposed to be over at 12:15.  Sorry.  I just have to check

12    my flight information to make sure.

13             THE COURT:  That's all right.

14             MR. WHITLEY:  You don't want to miss that flight.

15             MS. EDELSTEIN:  No.  Sorry.  It looks like my flight

16    time is actually tight.  Is there any possibility that we could

17    do it at even like 9:15?  If I need to miss the presentation

18    before me, I can do that.  My presentation -- it looks like my

19    presentation begins at 10:30.

20             THE COURT:  Okay.  Yeah, certainly, we can do it at

21    nine.

22             MS. EDELSTEIN:  Okay.  That would be helpful, Your

23    Honor.

24             THE COURT:  Defense team, is everybody on the Defense

25    team available at 9 on Thursday?

1          MR. WHITLEY:  Yes, sir, on my end.  Tom?

2          MR. BARNARD:  Yes, sir.

3          THE COURT:  Great.  Okay.  Well, I'll circulate that

4    back to y'all and I look forward to talking with you again at

5    9 o'clock on Thursday.

6      Is there anything further from the Defense perspective

7    that we need to discuss today on any topic?

8          MR. WHITLEY:  Well, first of all, I want to thank the

9    Court for this opportunity to speak with you.  Sorry I couldn't

10   have been there at the last proceeding.  I wanted to say that I

11   thought the Court's suggestion of staying in some kind of

12   communication with the Court on perhaps not a regular basis,

13   but on an as-needed basis, this could be useful because I think

14   we're about to push into the really hard work in this case,

15   Your Honor.  We've been working hard already, but so there have

16   been some (inaudible) about progress and tight settings and

17   then maybe if there is ever a need for us to seek something in

18   camera with the Court, we'll make that known to the Court, but

19   we've been -- I want to applaud the work that was done in

20   presenting this to you by largely Matt Chester and the

21   Government team.

22     They worked -- they had five or six different meetings by

23   phone or otherwise -- five or six different exchanges -- and so

24   I thought what we presented to you was presented in good faith,

25   Your Honor, and something that was pretty hard fought between

1    the two teams.  So, anyway, I wanted the Court to know that it

2    was as a result of a lot of good work by the Government and by

3    the Defense team.

4            THE COURT:  I'm glad you said that because it is very

5    detailed and makes my job a lot easier.  So, certainly, I

6    appreciate the effort that everybody put into it as well.  All

7    right.

8            MR. WHITLEY:  That's all I had.

9            THE COURT:  Anything further from the Government?

10   Well, let me say further to that point about getting

11   together, y'all think about the best way to proceed in that

12   regard.  If we need to have monthly, weekly even status

13   conferences, I'm more than fine with doing this as often as the

14   parties think we need to.  And, in addition to that, I want to

15   let you guys know that in every case I'm available when y'all

16   need me.  If something pops up and y'all need some direction on

17   a discovery issue -- for example, in civil cases I've always

18   found it is the best thing is to just get on the phone as soon

19   as I can with people when an issue pops up and the formal

20   motion doesn't have to be filed.

21   All you have to do is let Mrs. Widener know that you need

22   me and we'll schedule a conference call within 24 hours of

23   whenever I find out something is brewing and we need to talk

24   about it.  So, please know that, and think about how often we

25   ought to have status conferences like this one.

1        What about from the Government team?   Anything else we

2   need to talk about today?

3            MS. EDELSTEIN:   Your Honor, we also thank the Court

4   for its time and also the Defense for working with us on this.

5   The only other issue from my perspective is we just want to

6   make sure that it's put on the record that the continuances

7   that are requested and the order that will issue are in the

8   interest of justice in terms of the Speedy Trial Act and make

9   sure that any order that issues contemplates the waiver of the

10  Speedy Trial Act.

11           THE COURT:   I think, certainly, the sum and substance

12  of what we discussed here supports adequately the thought that

13  this is a very complex case and every bit of time that we're

14  talking about is necessary for this case to be tried fully and

15  equitably.

16           MS. EDELSTEIN:   Thank you.

17           THE COURT:   So I appreciate you mentioning that.

18       And, you know, I mean, I want to give you guys a

19  reasonable amount of time to do what you need to do, but I

20  think all of us need to keep in mind when we ask for even a

21  week more than what is absolutely required to get something

22  done, you know, that's another week that Ms. Winner is in

23  Lincoln County Detention Center without a trial, and so that's

24  something we all need to think about when we're talking about

25  time in this case is how urgent it is that we get her the trial

1    as soon as possible.

2         So thank y'all very much for your participation today and

3    being available on such short notice, and, with that, we're

4    adjourned.

5         (End of Transcript of Record.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5        I, Lisa H. Davenport, Federal Official Court Reporter, in

6   and for the United States District Court for the Southern

7   District of Georgia, do hereby certify that pursuant to Section

8   753, Title 28, United States Code that the foregoing is a true

9   and correct transcript of the stenographically-reported

10  proceedings held in the above-entitled matter and that the

11  transcript page format is in conformance with the regulations

12  of the Judicial Conference of the United States.

13

14                    _____

15                    Lisa H. Davenport, RPR, FCRR
                       Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25