IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA


UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,       )
                                )
        vs.                      )        1:17CR34
                                )
REALITY LEIGH WINNER,            )
                                )
                Defendant.       )
_____)


TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN K. EPPS
THURSDAY, MARCH 15, 2018; 9:02 A.M.
AUGUSTA, GEORGIA


FOR THE GOVERNMENT:

     Jennifer G. Solari, Esquire
     U.S. Attorney's Office
     Post Office Box 8970
     Savannah, Georgia 31412
     (912)201-2561

     Julie Ann Edelstein, Esquire
     U.S. Department of Justice
     600 E Street NW, 10th Floor
     Washington, DC 20002
     (202)233-2260

**FOR THE DEFENDANT:**

    Titus T. Nichols, Esquire
    Bell & Brigham
    457 Greene Street
    Augusta, Georgia 30901
    (706)722-2014

    Joe D. Whitley, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    3414 Peachtree Road, NE, Suite 1600
    Atlanta, Georgia 30326
    (404)223-2209

    Matthew S. Chester, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    201 St. Charles Avenue, Suite 3600
    New Orleans, Louisiana 70170
    (504)566-5231

    Thomas H. Barnard, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    Legg Mason Building
    100 Light Street, 19th Floor
    Baltimore, Maryland 21202
    (410)862-1185

**OFFICIAL COURT REPORTER:**

    Lisa H. Davenport, RPR, FCRR
    Post Office Box 5485
    Aiken, South Carolina 29804
    (706)823-6468

1              (Call to Order at 9:02 A.M.)

2         THE CLERK:  The court calls case number 1:17CR34.

3  The United States of America v Reality Leigh Winner.  Julie

4  Edelstein and Jennifer Solari for the Government.  Joe Whitley,

5  Matthew Chester, Titus Nichols, and Thomas Barnard for the

6  Defendant.  Here for a telephone status conference.

7         THE COURT:  Good morning, everybody.

8       (Group responds simultaneously.)

9         THE COURT:  Okay.  So I sent y'all two versions of

10  the revised scheduling order, and I like the version that I

11  sent you on Wednesday a little better.  So I wanted to start

12  off talking about that.  The primary difference in the two is

13  that we start -- under the more recent one I sent you we start

14  the process -- the CIPA process for briefing -- before the

15  rebuttal expert disclosures are made, and my thought on that is

16  that probably even today before we disclose experts we could

17  start the process.  I think that the core of documents to be

18  identified by the Defense is probably not going to change much

19  through their expert disclosures, but being a little cautious

20  we'll wait until the initial expert disclosures of both sides

21  are made where the majority of your expert testimony and

22  documents that you're going to rely on will be disclosed, and

23  then we'll start immediately the CIPA process once the second

24  round of disclosures is made, and then while we're going

25  through the CIPA process, y'all can decide whether you need

1    rebuttal experts.  And, if so -- if you decide you need a

2    rebuttal expert and there are additional documents on the

3    Defense side that are identified through the rebuttal expert

4    process, then we can play some catch up by doing some side

5    briefing before the Section 6 hearing occurs in August to catch

6    up on the rebuttal expert documents that are in addition to the

7    ones already cited in the original CIPA 5 Motion filed by the

8    Defense.  So that was my thought on it was to try to not make

9    everything so linear and to try to work on a couple of things

10   at the same time.

11       So let me turn first to the Defense for any remarks y'all

12   would like to make about that proposal.

13            MR. WHITLEY:  Matthew Chester will speak for us,

14   Judge.

15       Matt?

16            THE COURT:  Okay.

17            MR. CHESTER:  Good morning, Judge.  I just wanted to

18   make sure I fully understand.  So I think I am looking at the

19   right scheduling order.  We're talking about you're starting --

20   the Government's CIPA 6(a) Motion being due 30 days from our

21   CIPA Section 5 Notice which, if things work out right, would

22   actually come before -- may actually come before rebuttal

23   experts.  That's what you're looking at, Your Honor?

24            THE COURT:  Right.

25            MR. CHESTER:  Okay.  Yeah, I understand -- I

1    understand what the Court is saying and that's fine.  I do

2    think it's possible as Your Honor alluded to that there may be

3    additional documents that trickle in at some point in time in

4    which case we would -- obviously, to the extent they are

5    classified, we would have to notice them on, I guess, a

6    Supplemental CIPA Section 5 Notice.

7                 THE COURT:  Right.

8                 MR. CHESTER:  But we can certainly comply with the

9    documents that we have in hand before then to comply with the

10   first CIPA Section 5 Notice deadline and move along parallel

11   tracks.  I understand what the Court is saying and we can do

12   our best to do that.

13                THE COURT:  Okay.  What about from the Government's

14   perspective?  Ms. Edelstein?

15                MS. EDELSTEIN:  That's fine, Your Honor.

16                THE COURT:  Okay.  Did the Defense have any other

17   thoughts, suggestions, or concerns with that revision or with

18   the fifth amended scheduling order I proposed in the Wednesday

19   email?

20                MR. CHESTER:  Your Honor, so, this is Matt again.

21   There was a couple of comments I wanted to bring up and I've

22   called the Government and told them about this as well that I

23   would be bringing these up.  The first is the on the Rule 17(c)

24   subpoenas, the asterisk footnote there -- the asterisk footnote

25   contemplates that the Government to the extent they're, you

1    know, marked classified documents in the hands of the

2    recipients of the subpoenas that those classified materials

3    will be produced to the Government and the Government would

4    have 28 days to file a CIPA Section 4 Motion.  In the order we

5    proposed to the court, I didn't have any -- we didn't have any

6    problem with the 28 days.  You know, that seems fine.  I am a

7    little concerned given that we've compressed the timeline here

8    that 28 days may delay things, and so I wanted to raise that as

9    one issue to begin with.

10             THE COURT:  We just don't have an idea of the volume

11   and so -- will there be any coordination, Ms. Edelstein, among

12   these agencies with your office before the production is made

13   or will the production be your first opportunity to know what's

14   being produced?

15             MS. EDELSTEIN:  I think there is a good likelihood

16   that it may be our first opportunity which is why we don't see

17   how we could possibly do this in shorter than 28 days.  There

18   is always the possibility that somebody at the agency could

19   reach out to us in advance, but we don't know whether that's

20   going to happen and we don't have points of contact at these

21   agencies and some of these agencies may have little experience

22   going through the CIPA process.  So these are all kind of wild

23   cards that we need to account for in the timeline.

24             THE COURT:  Well, why don't we do this?  Why don't we

25   change it to 14, and then we'll just have an open dialogue.

1    That's my goal with all of these things is to set deadlines

2    that are reasonable but also a little on the shorter side of

3    things and then let's talk about it as we go through it.  I am

4    not going to be unreasonable at any point, but I do want to

5    push it as much as I can.  So let's change that to 14 days from

6    now and just talk about it as you receive these productions.

7           MS. EDELSTEIN:  Your Honor, I hate to belabor this,

8    but I can tell you right now that that is a deadline that there

9    is almost no way we would be able to comply with just because I

10   think in a lot of instances we would be seeing those documents

11   for the first time.  We'd have to find the right point of

12   contact.  We'd have to find then a subject matter expert at

13   that agency who could put together a declaration.  We'd have to

14   wait on that declaration for us to assess whether we can

15   support what the agency is requesting in a motion.  Then we'd

16   have to write the motion.  There is just simply no way that

17   we're going to be able to go through that process in 14 days.

18          THE COURT:  Okay.  Well, is there any way to cut some

19   of that short by having the agency that produces it go ahead

20   and schedule a time -- if you know they're going to receive a

21   subpoena, go ahead and make contact with them and be in

22   constant dialogue with them as they prepare the production and

23   maybe even you get a chance to go over there and meet with them

24   about it before they produce it so you can understand what the

25   universe of documents is, whether it's any different from what

1    you already have, and go ahead and make some of those decisions

2    on a rolling basis before we even make the production.

3              MS. EDELSTEIN:  My concern with that, Your Honor, is

4    that it, basically, forces all of the agencies to become a part

5    of the prosecution team and for us to be then responsible for

6    the discovery that's going to be produced by all of these

7    agencies.  It's really no different as if we are expanding the

8    scope of the Government's responsibilities way beyond what they

9    would be required in any criminal case.

10             THE COURT:  Well, and so I am not asking that.  I am

11   not asking you for taking on the mantle from a legal

12   perspective of being responsible for the thoroughness of their

13   production.  I am just asking for a little collaboration on the

14   front end rather than the back end so we can try to get this

15   done as quickly as possible.

16             MS. EDELSTEIN:  And, Your Honor, we can attempt that

17   process.  Having -- not having worked with these agencies

18   before, not having any idea of what the scope of their

19   information is and how they're going to be willing to involve

20   the prosecution in this process, I remain concerned about the

21   feasibility of complying with a 14-day deadline.

22             THE COURT:  Okay.  Well, let's put it at 14 days from

23   now with my sincere hope that once you see these -- once you

24   hear from these agencies or are able to contact them, you'll be

25   able to get some of this work done on the front end rather than

1    the back, and if you need more time because you weren't able to

2    accomplish that, then we can talk about that once you receive

3    the productions.

4           MS. EDELSTEIN:  Okay, Your Honor.

5           THE COURT:  And from the Defense perspective, there

6    is not going to be any secrecy involved in who you're

7    subpoenaing this from and all that.  I don't have Rule 17 in

8    front of me, but I don't think you'd want to seek these

9    ex-parte; right?

10          MR. CHESTER:  No.  Judge, I think we had maybe

11   discussed this at the motion to compel hearing.  I mean, I

12   don't think there is going to be any surprise as to what we're

13   asking for.  You know, with a few exceptions we're generally

14   going to be asking for documents that are reformed as the Court

15   has already ruled on our prior discovery requests.  I don't

16   think that there's really any, you know, secret as to who we'll

17   be subpoenaing.  You know, there will be some federal agencies

18   and there may be some state and private entities, but I'm okay

19   not making it ex-parte.

20          THE COURT:  Okay.  Well, the sooner you can get that

21   information together and get those subpoenas out, maybe if you

22   could do the courtesy of getting those to Ms. Edelstein as soon

23   as you can in terms of specifics of the subpoenas themselves,

24   maybe at the same time they're served if you can email her a

25   copy when they're finalized.  That way they can get started on

1    their end trying to work on this Section 4 issue.

2              MR. CHESTER:  Understood, Your Honor.  Just to make

3    sure I understand the process, as I understand it from our last

4    dialogue we would be submitting -- I mean, I am calling it a

5    motion, although I understand the Court's view that it doesn't

6    have the authority at this point to strike any subpoena

7    requests, but my understanding would be we would file a motion

8    with the listing of the agencies or entities we're subpoenaing

9    as well as a listing of the request in each subpoena pared

10   down, of course, to the Court's prior ruling, and then assuming

11   the Court authorizes the issuance of the subpoena, let me ask a

12   logistical question.  Does the -- the rule seems to contemplate

13   the Clerk issues blank subpoenas back to us for us to fill in

14   with the requests.  I have also seen in other districts where,

15   you know, a Word version is given and the Clerk puts it all

16   together him or herself.  I am okay with either, but I just

17   want to make sure that's the process by which you contemplate

18   this moving forward.

19             THE COURT:  Well, I mean, so like I said, the general

20   way is the Clerk issues a blank subpoena that's signed and

21   sealed.  So if you get me the full subpoena, we'll make sure

22   that we return to you one that is signed and sealed for you to

23   serve.

24             MR. CHESTER:  And just to ---

25             MS. EDELSTEIN:  Your Honor ---

1              MR. CHESTER:  I'm sorry.  Go ahead.

2              MS. EDELSTEIN:  Sorry.  One logistical issue.  I

3    expect, Matt, that these subpoenas will be classified.

4              MR. CHESTER:  Yeah.

5              MS. EDELSTEIN:  The requests will be classified in

6    the context of this case.

7              MR. CHESTER:  Yeah.  That was the issue I was just

8    going to raise is that, you know, for example, Your Honor,

9    since the Court's rulings on the discovery requests narrowed

10   them to the specific incident or the specific companies in

11   question in the document, you know, we will be referencing

12   those companies.  So, you know, number one, we will need the

13   names of those companies because as they stand now it just says

14   U.S. Company One and U.S. Company Two, and, number two, that

15   will -- that among many other things by definition will make

16   the subpoenas classified which was why I guess I was

17   anticipating filing a motion and then kind of coordination with

18   the CISO to get the subpoenas in classified form for her to

19   then serve as opposed to sending them back to us for us to fill

20   in or for us on the front end to do it and send to the Court.

21   Am I making any sense, Your Honor?

22             THE COURT:  Yeah, and I would think the CISO has more

23   experience with that than I do in terms of the logistics of

24   serving those subpoenas.  On our end, though, certainly, we can

25   review those subpoenas in the SCIF and get them signed and then

1    coordinate with the CISO to get them back to you and get them

2    served.

3            MR. CHESTER:  And so on the front end then you're

4    anticipating us pulling blank subpoenas and filling them in and

5    then submitting them as an attachment to the motion?  Is that

6    what you're anticipating, Your Honor?

7            THE COURT:  Yeah, I mean, what I would want to look

8    at is the final subpoena with all attachments.

9            MR. CHESTER:  Okay.  And maybe this is a dumb

10   question.  Are those -- are blank subpoenas publicly available

11   for me to go fill in because I was anticipating just simply

12   doing a chart.

13           THE COURT:  Well, I mean, I think you're going to

14   have to attach on the front the subpoena form that's used under

15   the rules and I think that's available pretty much anywhere.

16   You could Google it and probably pull it up.

17           THE CLERK:  I think it's on our website.

18           THE COURT:  It might be on our website.  Mrs. Widener

19   is going to check into that and she'll email you whatever form

20   we have available.

21           MR. CHESTER:  Thank you, Your Honor.  Okay.  So we

22   will do a motion and as attachments we will put the

23   finalized -- what we hope to be the finalized subpoenas with

24   the Court's authority to then be issued after review.

25           THE COURT:  Yeah, I am not even sure that a motion is

1    required.  I think if you just submit the subpoena for our

2    signature and sealing, that will be enough.

3              MRS. SOLARI:  Your Honor, if I may, I think there is

4    a motion required.  I mean, of course, if the Court doesn't

5    want one, it doesn't want one, but since the standard is so

6    different for Rule 17 subpoenas -- it is not at all like Rule

7    16 since Rule 17 subpoenas can't be used as a discovery device.

8         *U.S. versus Nixon* sets forth the standard that a party has

9    to meet for a Rule 17 subpoena to issue and for compliance.

10   It's very specific.  It's quite a high standard that includes

11   things like specificity of the document or documents that are

12   sought, the proponents showing that the evidence sought would

13   be admissible at trial, the proponents showing that this is

14   information they cannot through due diligence obtain themselves

15   prior to trial.  Specifically, that is a showing that needs to

16   be made before the Court would authorize issuance of the Rule

17   17 subpoenas.  So usually I -- I've only done it once before

18   myself with Judge Bowen, but I think typically it is done by

19   motion in that fashion to meet the *Nixon* standard.

20             THE COURT:  So I think maybe it depends on the

21   context.  I think generally speaking it's a simple matter of

22   the subpoena being presented and if a motion wants -- if you

23   want to file it as a motion, that's fine with me.  I don't have

24   any problem with it, but I think the rule contemplates that the

25   Clerk's job -- our job -- is very simple in the majority of

1   Rule 17 subpoenas that are presented.  We sign them.  We put a

2   seal on them and then they're served, and then at that point

3   the recipient can file a motion to quash or modify the

4   subpoena, and I think the Government could do that as well

5   because Rule 17(b)(2) just says, "On motion made promptly, the

6   court may quash or modify the subpoena if compliance would be

7   unreasonable or oppressive."

8       So in the vast majority of instances I think the subpoena

9   issues and is subject then to the right of anyone to file a

10  motion to quash or modify.  There is an exception, and perhaps

11  that's what you are referring to in *Nixon* -- I don't know the

12  context of that case off the top of my head; although, I am

13  familiar with the standard in *Nixon* -- for victim subpoenas

14  where you're trying to produce information pertaining to a

15  victim -- so if it's a case involving misappropriation of funds

16  from a bank or let's just say a law firm -- if it's

17  misappropriation of funds from a law firm account and someone

18  wants to subpoena the law firm's bank account records, then the

19  law firm is the victim and so you have to follow the procedure

20  in (b)(3) and that says that if the subpoena requires

21  production of personal or confidential information about a

22  victim, it can only be served on a third party by a court

23  order, and before entering the order the court must require

24  giving notice to the victim so that the victim can move to

25  quash or modify the subpoena or otherwise object.

1        So in the sense of -- in the context of a victim subpoena,

2   it's a little different.  The victim has a right to move to

3   quash or modify before the subpoena is served, but in every

4   other instance if it's not victim-related information, then

5   you're under the general rule that the subpoena issues

6   automatically and then after it issues and is served the

7   recipient or anyone else can file a motion to quash or modify

8   at that time.  That's my understanding of the procedure.

9        Is that incorrect?

10            MRS. SOLARI:  Your Honor, I think I just had a

11  different understanding, and, certainly, mine might be wrong.

12  I think the one nuance we're talking about here -- and I am not

13  making reference to subpoenas to victims for their information,

14  but generally subpoenas to the Government or to other third

15  parties who may be in possession of information -- when a party

16  wants early return of that information, I believe that has to

17  be done by motion to the court and I think, typically, that's

18  done by the movant setting forth information to meet that *Nixon*

19  standard for early return of that information.  I don't think

20  that's limited to just solicitation of information from

21  victims.

22        I think though, Your Honor, it is sort of a chicken and

23  egg.  I don't know that we need to argue about it.  I think as

24  Your Honor identified even if the subpoenas simply go out in

25  the way that Defense Counsel would like to fashion them, we're

1    just going to litigate it on the back end versus the front end.

2    So if Your Honor doesn't want a motion at this time, I think

3    it's probably neither here nor there.   We can just litigate it

4    in the event there are motions to quash after the subpoena is

5    issued.

6              THE COURT:   Right.   Okay.   Yeah, I think that's what

7    the rule contemplates, but, certainly, if I am wrong in that

8    regard and you have come cases in the like that you want to

9    file, that would be good, too.   If you got a brief on it and

10   you think it is important that we litigate the scope of it on

11   the front end instead of the back end, then certainly file a

12   motion with some case law and all that and I'll be glad to

13   consider it.

14             MRS. SOLARI:   All right.   Thank you, Your Honor.

15             THE COURT:   Okay.   So back to the overall -- what was

16   the overall question that led us down this rabbit trail?

17             MR. CHESTER:   I'm sorry.   We started with the 28 days

18   for the CIPA Section 4 in the footnote, Your Honor --

19             THE COURT:   Right.

20             MR. CHESTER:   -- which Your Honor has now moved to

21   14.   I have one more suggestion or issue I wanted to raise with

22   that footnote, and, you know, we went back and forth with the

23   language with the Government and it, you know, just changed a

24   couple of times.   The third sentence in that footnote says,

25   "The recipient shall coordinate delivery of classified

1    materials with the CISO."

2              THE COURT:  Right.

3              MR. CHESTER:  Originally, I think we had requested --

4    and this may be in some people's view a distinction without a

5    difference, but in ours it is an important distinction.

6    Instead of staying "delivery of classified materials", we would

7    prefer it say, "delivery of materials marked classified".  In

8    other words, for a document to be classified in our view, it

9    needs to have classification markings on it.  If it doesn't

10   have classification markings on it, it would not be classified,

11   and I am concerned with a document sitting in the file of some

12   agency that has no markings on it, but, yet, somebody taking

13   the position -- and I am not suggesting these prosecutors, but

14   maybe some agency taking the position, well, even though that

15   doesn't have markings on it, we still view that as being

16   classified.  So we would prefer that to say "materials marked

17   classified" if there is no objection to that.

18             THE COURT:  That reminds me a little bit of something

19   one of my old partners used to say.  He used to say that

20   sometimes lawyers make -- like to try to make a thousand angels

21   dance on the head of a pin, and so I'm not sure that that

22   wording matters much to me.  In fact, I've got a little concern

23   with what you're proposing because an example might be a

24   document that's clearly classified but for some reason a

25   clerical error was made and the stamp wasn't applied; so it's

1   not stamped classified even though it should have been but for

2   clerical mistake.  I don't think that they then waive their

3   right to argue that it is classified material that shouldn't be

4   disclosed to the world.

5            MR. CHESTER:  I understand.  I guess another -- I

6   guess the concern I had I can put in another example.  Let's

7   say there is a document that has no classification markings on

8   it -- and, again, not these prosecutors, but another

9   governmental agency after the leak occurred allegedly in this

10  case goes to these other agencies and tries to classify

11  documents that previously were not classified -- not by

12  clerical error, but maybe intentionally.  I think that would be

13  something that we would be entitled to discover because

14  that ---

15           THE COURT:  How about ---

16           MR. CHESTER:  I'm sorry, Your Honor?

17           THE COURT:  How about we do it this way?  You got to

18  trust the CIPA process a little bit here and I think that we

19  got probably just to make clear to the Government that any

20  documents that they turn over if they're not stamped classified

21  at the time they're collected for production pursuant to the

22  subpoena, then they shouldn't be going back and stamping them

23  classified now, right, as they prepare the production.  The

24  production should reflect accurately the status of those

25  documents today or when the subpoena is issued.

1          So my thought would be let's keep the wording the way it

2     is because of that clerical concern I'm talking about, and

3     we'll get the documents in hand and I will do a very thorough

4     review during the Section 4 process and if a document is not

5     stamped, we'll have to ask the question why and go through that

6     discussion.

7               MR. CHESTER:   I think with Your Honor's instruction

8     that, you know, there shouldn't be classification decisions

9     made after the subpoena has issued -- I am just concerned about

10    that.   With your instruction on that, I think that alleviates

11    my concern.

12              THE COURT:   Okay.   Does the Government have any

13    problem with that instruction?

14              MS. EDELSTEIN:   No, Your Honor.   The Government --

15    the prosecutors have no authority to change the classification

16    of a document of another agency.   I would just also remind the

17    parties and the Court that there are certain documents that

18    while not themselves classified may be classified in the

19    context of this case because the report leaked remains

20    classified, and while we would not seek to protect those

21    materials through a CIPA Section 4 Motion, they would still

22    have to be handled appropriately within the context of this

23    case in terms of, you know, where they're stored.

24              THE COURT:   Okay.   All right.   Mr. Chester, does the

25    Defense have any other comments or concerns with the current

1    draft scheduling order?

2            MR. CHESTER:  One last point, Your Honor, and this is

3    my last issue.  We had originally talked about -- and it's not

4    in this scheduling order and it wasn't in the scheduling order

5    that we proffered to the Court -- setting a deadline for

6    witness lists and exhibit lists.  You know, I don't know what

7    Judge Hall's usual procedures are.  You know, we would request

8    three weeks before trial the production of both of those, you

9    know, reciprocal lists be swapped by both parties.  I don't

10   know if that's a deadline you would want to put in here, but

11   that's what we would request, Your Honor.

12           THE COURT:  21 days before trial?

13           MR. CHESTER:  Yes, sir.

14           THE COURT:  And that's trial exhibit lists and

15   witness lists?

16           MR. CHESTER:  Yes, sir.

17           THE COURT:  All right.

18           MRS. SOLARI:  Your Honor ---

19           THE COURT:  Ms. Edelstein?

20           MS. EDELSTEIN:  I'll defer to Ms. Solari on this.

21           MRS. SOLARI:  This is Jenna.

22           THE COURT:  Okay.  Oh, I'm sorry.  Your voices sound

23   a little alike.  So, my apologies, Mrs. Solari.

24           MRS. SOLARI:  No, that's fine.  Your Honor, if I may,

25   even in our most complex case I don't think we've ever had an

1   exhibit list in particular ready 21 days prior to trial.  That

2   just doesn't seem feasible.  Our exhibit list usually we tinker

3   with it and change it right up until the morning of trial.  I

4   think the soonest we've ever been asked to submit exhibits to

5   the District Court and usually that's just for the Court and

6   not for the opposing parties is 7 days prior to trial and

7   that's typically so that the Courtroom Deputy can upload

8   certain exhibits into the jury-friendly system that exists in

9   some of our jury rooms.

10       I just -- 21 days prior to trial for a witness list I

11   think would be fine with the understanding that we may need to

12   supplement it prior to trial, especially because we're on a

13   tight schedule with this case.  Again, given that tight

14   schedule, I just can't see where the Government in particular

15   since we have the burden and we're going to have a lot of

16   exhibits here would have our completed, finalized exhibit list

17   ready 21 days prior to trial.  We've never been requested or

18   required to do that before.

19           THE COURT:  Well, I think I am just inclined to give

20   Judge Hall discretion on that.  Just take it up with him.

21   Y'all are going to see him plenty of times between now and

22   trial.  So that is something y'all need to take up with him.

23           MRS. SOLARI:  All right.  Thank you, Your Honor.

24           THE COURT:  It's kind of a minor detail in the span

25   of all of these things we're looking at.

1       Mr. Chester, does that complete your list of things you

2  wanted to talk about?

3              MR. CHESTER:  Yes, sir.

4              THE COURT:  Okay.  Mr. Chester, before I turn to the

5  Government, let me ask you one more thing.  How often do you

6  think we need to get on the phone and talk through the schedule

7  and where things stand?

8              MR. CHESTER:  Well, I'm happy to do it any way the

9  Court wants.  We could certainly set something up on a regular

10 basis or on an as-needed basis.  You know, I do remain

11 concerned for the issues we've talked about about the

12 feasibility which is ambitious, you know, to say it minimally.

13 I am concerned, for example, on the production of documents

14 whether we're going to get all of those documents before our

15 CIPA Section 5 Notice is due and our expert disclosures are

16 due.  Obviously, we will do everything we can, including the

17 impossible, to attempt to comply with the schedule, and the

18 minute there is an issue that we foresee, understanding the

19 Court's offer to us to get on the horn with it and raise it, we

20 will do it.  So I am happy to do it as you want, Your Honor.

21 We can do it as needed.  We can raise it any time there is an

22 issue, or if you want to set something every, you know, two,

23 three, or four weeks, we're happy to do that, too.

24             THE COURT:  Okay.  Did you understand these notes I

25 put in parentheses about "rolling basis"?

1              MR. CHESTER:  I think I do, Your Honor.  So as I

2     interpret those notes, if, for example, you know, we have

3     retained experts now and, you know, we would be required within

4     30 days of the Government's expert disclosures to provide

5     expert disclosures for those currently retained or engaged

6     experts.  However, if we, for example, identified the need to

7     get rebuttal experts, we have to -- you know, after their

8     expert disclosures, we have to submit that information to the

9     CISO and then once they get their clearance we would have 30

10    days from that date to provide a supplemental expert

11    disclosure.  That's what I understand the Court means by

12    "rolling basis".  So I think I understand that.  Is that the

13    correct interpretation, Your Honor?

14              THE COURT:  Yeah, and another way to put it might be

15    that, you know, these are hard and fast deadlines for

16    everybody.  Let's just pick out the first one -- May 28th.  On

17    that day you must disclose every expert for whom you've

18    received a security clearance by, you know, 30 days prior to

19    May 28th.  For each expert that doesn't meet that 30-day

20    requirement -- so let's say you got an expert on -- you got the

21    clearance on May 15th and you got another one on May 25th.

22    Well, the first one -- May 15th -- their deadline will be 30

23    days from May 15th.  The second expert deadline would be 30

24    days from May 25th.

25              So that's what I mean by "rolling" is that you don't --

1    you don't get an extension of everyone who's awaiting a

2    clearance or didn't get their clearance in time for the

3    May 28th deadline.  Anybody whose report is not ready on

4    May 28th because the security clearance came in less than 30

5    days from May 28th you've got to give individually.  They'll

6    have individual deadlines for each of those expert witnesses.

7            MR. CHESTER:  I understand.  That's consistent with

8    my understanding, Your Honor.  I understand that.

9            THE COURT:  Okay.  And then you'll see your amended

10   CIPA Section 5 Notice is not due until the last expert

11   disclosure under that rolling method.

12           MR. CHESTER:  Okay.  And then let me ask the Court

13   then another question.  Let's assume by that -- let's assume --

14   let's assume the last expert disclosure is, you know, May 28th.

15   As I understand it, we would have 30 days from May 28th -- oh,

16   no, we would -- on May 28th our Amended CIPA Section 5 Notice

17   under this schedule would be due.

18           THE COURT:  Right.

19           MR. CHESTER:  But let's assume we have litigation on

20   the Rule 17(c) subpoenas and let's assume we haven't received

21   production from some of the recipients on May 28th, as I

22   appreciate the kind of rolling nature of the schedule

23   generally, if on June 15th we get documents from the recipients

24   of the Rule 17(c) subpoenas that need to be noticed on our CIPA

25   Section 5, you know, will we then have 30 days from the receipt

1    of that document to submit a Supplemental CIPA Section 5?

2              THE COURT:   Right.   So the thought is get your first

3    Amended CIPA Section 5 Notice filed by the deadline specified

4    on here which is the date that you make the last disclosure of

5    your initial round of experts -- not your rebuttal experts, but

6    your initial round of experts -- and then if for some reason

7    production after that date requires a supplemental filing, then

8    we're just going to take care -- we're not going to wait on the

9    possibility of that.   We're going to go ahead and start the

10   CIPA process and then if you have a Supplemental Section 5 you

11   need to file because of a rebuttal expert witness or a

12   production -- a Rule 17 subpoena production that came in --

13   we're just going to have to take care of that on a rolling

14   basis.

15        It's not perfect.   It means we will have maybe several

16   rounds of CIPA briefing, but it at least -- we are allowed to

17   make progress on the vast majority of documents at issue by

18   starting the CIPA process as soon as we can.

19              MR. CHESTER:   I understand, Your Honor.   And then one

20   point of clarification -- the Amended CIPA Section 5 Notice as

21   it is here, did I hear you right that you said that the

22   deadline as of now for that notice would be the same date of

23   our currently-engaged-experts disclosure?   So that wouldn't

24   extend to experts that we picked up, you know, as rebuttal

25   experts and waited on clearances.   You're saying that that

1    would be due, essentially, 30 days from the Government's expert

2    disclosures.  Is that right or am I wrong on that?

3            THE COURT:  Yeah, I mean, the thought is to go ahead

4    and get your Section 5 Notice filed when you are finished

5    identifying all of your experts that are your primary experts

6    and then if you have additional documents that you think need

7    to be noticed in the Supplemental Section 5 because of your

8    rebuttal experts witnesses, then you'll need to take care of

9    that when you file the rebuttal expert witnesses.  I didn't put

10   that part in the schedule, but it is an understanding that

11   we'll all have to agree to.

12           MR. CHESTER:  I understand what you're saying.  Thank

13   you, Your Honor.  I got it.

14           THE COURT:  Okay.

15           MR. BARNARD:  Matt, this is Tom.  Just to clarify one

16   point, I want to be careful that we don't base too many

17   deadlines off the grant of the clearance because, you know, we

18   are submitting -- as consistent with the last call, we are

19   submitting potential experts names to verify their clearance

20   before we made the decision to engage them or not just so we

21   can discuss, you know, evaluate them for whether or not they're

22   going to be retained.  So I just want to -- you know, there

23   might be people that we submit that we don't decide on until

24   after we see the Government's disclosure to use as an expert --

25   so, you know, as in rebuttal.  So I just want to be clear that,

1  you know, we may submit potential ones before we decided to

2  retain them.

3          THE COURT:  That's fine.  I mean, if you got some

4  that you think are potential rebuttal expert witnesses, for

5  example, go ahead and get those to the CISO if you've got them.

6  As much as you can give them now is better.

7          MR. BARNARD:  Thank you, Your Honor.

8          THE COURT:  Okay.  Let me turn to the Government now.

9      Mrs. Solari and Ms. Edelstein, what are y'all thinking and

10  what are your concerns and objections to the draft scheduling

11  order?

12          MS. EDELSTEIN:  So, you know, I think what the

13  Defense may remain concerned about the -- our overall ability

14  to meet some of these deadlines, but there is just one in

15  particular that I want to flag which is I thought after some

16  back and forth on the last call we had agreed that we would

17  have 14 days from the issuance of the 6(a) order for us to file

18  our 6(b) Motion, but the order only gives us 7 days to do that.

19          THE COURT:  Okay.  So that would be the Government's

20  CIPA Section 6 Motion; right?

21          MS. EDELSTEIN:  Correct, Your Honor.

22          THE COURT:  Okay.  I think the discussion we had was,

23  you know, my hope that your stakeholders would be at the

24  Section 6 hearing; you get the order from the Judge; you've

25  already had plenty of discussions and it wouldn't take a lot of

1    time to collaborate with them to get it on file, but if you're

2    -- I mean, if that's your only concern and you really feel like

3    it's not doable, then I'll push that to 14.

4            MS. EDELSTEIN:  Thank you, Your Honor.

5            THE COURT:  Okay.  Anything else, Ms. Edelstein?

6            MS. EDELSTEIN:  No, Your Honor.

7            THE COURT:  Oh, come on.  There's got to be something

8    else.  It can't be that easy.  All right.

9            MS. EDELSTEIN:  I can't promise that more things

10   won't arise including the feasibility of scheduling or filing

11   those CIPA Section 4 Motions with these unknown agencies within

12   14 days, but I think you've already heard my concern on that.

13           THE COURT:  Right.  And, you know, it goes back to

14   something I've -- I say around here sometimes when we're

15   talking about young people and what they want to do with their

16   lives career-wise.  I always say, well, look you can always

17   shoot for what's entirely possible and you'll never be

18   disappointed.  You'll always achieve that medium or mediocre

19   goal that you set for yourself because it's easy.  So let's

20   shoot high.  Let's dream big, and when you do that, sometimes

21   you're able to achieve more than what you thought, and

22   sometimes you're not, and, if so, we can deal with that and

23   adjust expectations accordingly, but let's strive to do more

24   than just what's, you know, the normal course.

25           All right.  Ms. Edelstein, what are your thoughts or

1    Mrs. Solari's thoughts on how often we ought to get together

2    and talk about these things and make sure we're on the right

3    path?

4              MS. EDELSTEIN:  I think I'd say pretty much what Matt

5    said which is we're happy to do it as you think makes sense in

6    terms of scheduling something regular or just bringing issues

7    to the Court's attention as they arise.

8              MRS. SOLARI:  Your Honor, just a quick thought on

9    that since I think these conversations ahead of time are

10   helpful, if a party realizes that they're not going to be able

11   to meet a particular deadline either in whole or in part, would

12   you rather we reach out to Mrs. Widener and ask for another one

13   of these conference calls with the Court or would you rather

14   that party, you know, file something in writing asking for a

15   specific extension?  What would be your preference?

16             THE COURT:  Whatever is easier for you.  I am

17   available at your convenience to talk any time you think --

18             MRS. SOLARI:  Okay.

19             THE COURT:  -- it's a good idea.  I mean, you know,

20   if it's a simple thing like one of these deadlines you need a

21   3-day extension on, then we probably don't need to talk, but if

22   you're looking to get, you know, a 7- or 14-day extension on

23   something, you know, there might be a way for us -- a creative

24   way for us to at least make some progress by the deadline.

25   That might be a good example of something that we just want to

1    kick around on the phone to make sure that we're all on the

2    same page, but I'll leave that to y'alls discretion about

3    whether you think a call is necessary or not.

4         I don't want to unnecessarily interfere with y'alls

5    progress in the case.  I certainly am of the firm mindset that

6    the discovery process is supposed to be pretty much

7    self-governing with minimal judicial interference.  So I don't

8    want to create unnecessarily more work for y'all by making you

9    dial in to some phone conference every so often.

10        I think I heard Mr. Chester say two or three weeks,

11   somewhere in that timeframe.  Let's start off by doing this

12   every two weeks and I'll look for y'all to get together and

13   come up with a day of the week that's better for all of the

14   parties on the phonecall today, and if you'll just let

15   Mrs. Widener know what day and time you'd like to set it down

16   for follow up on an every two week basis, then we'll set it

17   down, and we'll have the same dial-in for everybody's ease of

18   use.

19        Mr. Chester, what about your client?  She's not here

20   today.  Is she still waiving her right to appear for

21   conferences such as this?

22            MR. CHESTER:  Yes, Your Honor.  We spoke to her and

23   she's waived her right to appear for both teleconferences we've

24   had.  I will talk to her whether she wants to be present for

25   the two weeks -- every two-week call.  My guess is the answer

1  would be that she would waive her right to that as well, Your

2  Honor.

3          THE COURT:  Well, certainly, we encourage her to be

4  here if she wants to be here.  She's the person at the center

5  of this.  She's the reason that we're trying to work as hard as

6  we can and cut these deadlines down to the bare minimum so she

7  can have her trial as soon as possible.  So if she wants to sit

8  in here and listen, we'd be glad to have her, and if she wants

9  to do that, we'd make it as comfortable for her as we could.

10        Number one, we would make sure that she wasn't alone.  We

11  would make sure one of the local lawyers on your Defense team

12  was here with her, and, number two, every assurance that she'd

13  be able to hear -- the entire conversation is on speakerphone

14  in here, and from counsel table she'd be able to hear

15  everything just fine.

16          MR. CHESTER:  I appreciate that offer.  I will

17  certainly run that by her, and to the extent she wants to be

18  present, you know, we will coordinate with the Court as

19  necessary.

20          THE COURT:  Okay.  Is there anything further from the

21  Defense perspective we need to discuss today?

22          MR. CHESTER:  I don't think there is anything from

23  our perspective.

24        Tom, Joe, Titus, anything else you guys can think of?

25          MR. WHITLEY:  No, nothing further.

1              MR. CHESTER:  Thank you, Your Honor.

2              MR. NICHOLS:  No.

3              THE COURT:  All right.  What about from the

4     Government's perspective?

5              MS. EDELSTEIN:  No, Your Honor.

6              THE COURT:  Okay.  Well, thank you very much for your

7     diligence in getting this scheduling order together and for the

8     hard work I know y'all are putting in this case, and I'll just

9     reiterate again I am here to serve y'all in any way I can.  So

10    if you have an issue that we need to all collaborate on, just

11    let Mrs. Widener know and I am available at your convenience to

12    discuss such things as they arise, and I'll look forward to

13    speaking with y'all in two weeks.

14       Don't forget -- who wants to head up the charge of

15    coordinating and proposing a date to Mrs. Widener?

16             MR. CHESTER:  I guess I'll take the tile and I'll

17    jump in the fray, Your Honor.

18             THE COURT:  Okay.  That's Mr. Chester?

19             MR. CHESTER:  Yes, sir.

20             THE COURT:  All right.  Well, thank you very much.

21    That was an awkward pause.  No one wanted to.  All right.

22    Well, thank you so much.

23             MR. CHESTER:  I expect brownie points for jumping in

24    there, Your Honor.

25             THE COURT:  All right.  Y'all take care.  Have a good

1     weekend.   Thank you very much for your time.   We're adjourned.

2             (End of Transcript of Record.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, Lisa H. Davenport, Federal Official Court Reporter, in

6    and for the United States District Court for the Southern

7    District of Georgia, do hereby certify that pursuant to Section

8    753, Title 28, United States Code that the foregoing is a true

9    and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13

14                    _____

15                    Lisa H. Davenport, RPR, FCRR
                       Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25