UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | CR 117-34 |
| | ) | |
| REALITY LEIGH WINNER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POST-HEARING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS DEFENDANT'S STATEMENTS (DOC. 63)**

NOW COMES the United States of America, by and through Bobby L. Christine, United States Attorney for the Southern District of Georgia, to file a supplemental brief in response to Defendant Reality Leigh Winner's Motion to Suppress Defendant's Statements (Doc. 63).

On August 29, 2017, the Defendant moved to suppress statements she made to Special Agents of the Federal Bureau of Investigation ("FBI") while the agents interviewed the Defendant during the execution of a search warrant at her residence. The Government responded to the Defendant's motion on December 18, 2017 (Doc. 189). The Defendant submitted a reply on January 24, 2018 (Doc. 215). The Court held an evidentiary hearing on February 27, 2018. After the hearing, the Defendant requested leave to file a supplemental brief. The Court granted the Defendant's request, and the Defendant filed a supplemental brief on April 13, 2018 (Doc. 255).

Particularly because the recording of the Defendant's encounter with the FBI agents, and a transcript thereof, were available to the Court and the parties when the initial briefs were filed, the evidentiary hearing did not produce significant additional evidence relevant to the Court's

1

determination. Critically, no evidence was adduced that undermines the Government's response to the Defendant's motion. The Government's witnesses testified credibly and consistently with the recording and other evidence. As a result, the Government does not recount again in this filing its arguments as to why the Defendant was not in custody. Rather, the Government relies on its prior filing (Doc. 189) and the exhibits, and addresses here only the points raised in Defendant's post-hearing brief.

As set forth below, the Defendant again relies upon incorrect legal standards and upon factual assertions that are inaccurately stated, irrelevant, and presented out of context. The facts, viewed in their totality under the correct legal standard, demonstrate that the Defendant was not "in custody" when she was interviewed. The Defendant has not met her burden, and her motion should be denied. *See United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977);[1] *United States v. Peck*, 17 F. Supp. 3d 1345, 1354 (N.D. Ga. 2014); *United States v. Morris*, 491 F. Supp. 226, 229 (S.D. Ga. 1980).

**I.      The Defendant Cites Incorrect Legal Standards**

*A. The "Free-To-Leave" Test Is Not The Applicable Standard; A Defendant Is Not "In Custody" Absent Restrictions Equivalent To Formal Arrest*

The Defendant's fundamental legal error is summarized on the second page of her Post-Hearing Brief. *See* Doc. 255 at 2. The Defendant argues that the Court's decision boils "down to *one core issue*: whether a reasonable person would have felt free to leave during Ms. Winner's encounter with law enforcement on June 3, 2017." *Id.* at 2 (emphasis added); *see also id.* at 4 (referring to this premise as "Governing Law"); Doc. 63-1 at 7 (stating the same

---

[1] *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting for the Eleventh Circuit as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981).

standard). Critically, the "free-to-leave" test is not the "core issue," and it is not dispositive. Rather, courts must apply a two-step analysis to determine whether a subject was "in custody" and therefore entitled to pre-interview warnings for the purposes of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The "freedom-of-movement" test is only the first step in the analysis. The second step in evaluating whether a defendant was in custody for *Miranda* purposes is to examine whether "a reasonable person in the defendant's position would have understood [her] freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Hill*, No. CR 114–028, 2014 WL 5410214, at *10 (S.D. Ga. Oct. 23, 2014) (citation omitted); *see Howes v. Fields*, 565 U.S. 499, 509 (2012) (examining "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*"); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (internal quotations omitted)); *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010); *United States v. Bird*, No. 3:17-cr-1, Doc. 74, at 32, 36 (S.D. Ga. Sept. 27, 2017).

*B. Courts Examine The Totality of Circumstances From The Perspective of a Reasonable, Innocent Person*

The Defendant's overreliance on certain individual facts, such as that the Defendant was never told specifically told she was "free to leave," *see, e.g.,* Doc. 155 at 4, ignores that whether a defendant was in custody during an interview is a fact-specific determination based on the totality of the circumstances. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). This test is objective and examines the circumstances from the perspective of a "reasonable innocent person." *Id.*; *see Florida v. Bostick*, 501 U.S. 429, 437-38 (1991); *Berkimer v. McCarty*, 468

3

U.S. 420, 422 (1984); *Luna-Encinas*, 603 F.3d at 881.  No single factor is dispositive.  Moreover, the subjective beliefs of investigators and the individual being interviewed are irrelevant.

In considering the totality of the circumstances to determine whether a defendant was in custody for purposes of *Miranda*, "[n]o particular fact in the 'custody' analysis is outcome determinative—[the court] simply weigh[s] the totality of the circumstances." *United States v. Lall*, 607 F.3d 1277, 1284 (11th Cir. 2010) (quoting *United States v. Brown*, 441 F.3d 1330, 1349 (11th Cir. 2006)).  Accordingly, the Defendant's repeated arguments that her statements to the FBI should be suppressed because the FBI agents never expressly stated she could leave her residence is meritless.  *See, e.g. United States v. Phillips*, 812 F.2d 1355, 1357 (11th Cir. 1987) (finding no custody where, although officers did not tell defendant he was free to leave, defendant admitted the officers did nothing to prevent him from leaving the police station and that he never requested a lawyer or tried to terminate the interview); *United States v. Augustin*, 2011 WL 5358526 at *2-3 (N.D. Ga. Aug. 19, 2011) (finding no custody when FBI agents did not tell defendant he was not under arrest, free to leave, or at liberty to decline to answer questions, where remaining factors weighed against finding of custody).

Looking to the totality of the circumstances, even if the agents did not explicitly tell the Defendant that she was free to leave, that factor alone does not convert the Defendant's consensual interview into a custodial interrogation when considered with the additional factors evident from the recording of the Defendant's interview and the testimony adduced at the hearing.  For example, while in the Defendant's home, agents never brandished weapons, touched the suspect, or restrained her in any way. Tr. at 79, 173-174.  Furthermore, they did not use language or a tone that indicated that compliance with the officers could be compelled.  *Id.* Rather, the FBI told the Defendant that the interview was "completely voluntary," Gov't Ex. 2 at

4

2-003, and "completely up to you," *id*. at 2-006. They reminded her that she was "talking voluntarily" and that they were not "forcing you to do anything," *id*. at 2-047. Although the agents did not use the precise language "you are free to leave," given all of these other statements, the message that the Defendant's interview with law enforcement was voluntary would have been abundantly clear to a reasonable person. *Cf. Brown*, 441 F.3d at 1347–48 ("That a person is told repeatedly that he is *free to terminate an interview* is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." (emphasis added) (citing *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004))); *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998) (considering, in the custody analysis, "whether the suspect was informed at the time that *the questioning was voluntary or* that the suspect was free to leave or to request the officers to do so") (emphasis added); *Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996) (considering "whether and to what extent the person has been made aware that he is *free to refrain from answering questions*") (emphasis added); *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (listing, as a mitigating factor to be considered in the custody analysis, "whether the suspect was informed at the time of questioning *that the questioning was voluntary*, that the suspect was free to leave or request the officers to do so, *or* that the suspect was not considered under arrest") (emphasis added); *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993) (noting "the extent to which the suspect is made aware that he or she is *free to refrain from answering questions or to end the interview at will* often defines the custodial setting") (emphasis added).

*C. The Existence of A Search Warrant Is Not Dispositive*

Further disregarding the totality-of-circumstances analysis that a custody analysis requires, the Defendant argues that the existence of a warrant to search her person establishes custody *per se*.[2]  Doc. 255 at 8.  In support of this argument, the Defendant claims that "every prior case [defense counsel] located to have addressed such circumstances" found that such a search warrant rendered Defendant not free to leave.  *Id.* at 2.  Specifically, the Defendant offers one federal case from the District of Hawaii, which is unreported, and two California state cases.  Those cases are not persuasive.[3]

*United States v. Brunn*, No. 06-CR-198, 2008 WL 441486 (D. Haw. Feb. 19, 2008), is the only federal case the Defendant cites.  The court's analysis improperly relies exclusively on the "free-to-leave" analysis that, as discussed above, is not the correct, complete legal standard.  *Brunn*, 2008 WL 441486, at *9 ("Certainly, no objectively reasonable person would think that, in light of the search warrants allowing searches of their person, the agents would simply allow [the

---

[2] To clarify, agents did not arrive at the Defendant's residence "armed with three search warrants," Doc. 255 at 7, but with one search warrant listing multiple places to be searched.

[3] The Defendant does not cite *State v. Kilgore*, 882 N.W. 2d 493, 503 (2016), in which the Court of Appeals of Wisconsin held that the execution of a search warrant for the defendant's DNA (via buccal swab) did not amount to custody.  The court found that

> [t]he circumstances surrounding the encounter—in the afternoon, in [the defendant's] living room, without handcuffs or guns drawn, the SWAT team gone, the absence of threats or promises of leniency, the focus of the questions on [a co-defendant], and the nonaccusatory nature of the questioning—would not have led a reasonable person to believe that he or she was being restrained to the degree associated with formal arrest.

*Id*.

defendants] to leave the premises without first being searched."). *Brunn* did not hold that the existence of a warrant to search a person places that person in the functional equivalent of formal arrest, which is the correct inquiry. Because *Brunn* did not apply the standard this Court must consider, it has no bearing on this case.

In *People v. Wilson*, 268 Cal. App. 2d 581 (1968)—a case decided before the cases cited above refined the *Miranda* "in custody" analysis—the California State Court of Appeal applied a similarly inapplicable test: "all that is required is that the defendant be 'deprived of his freedom of action in any significant way.'" *Id.* at 585-86. The court did not apply a totality-of-circumstances analysis, and focused on whether the defendant was "free to leave the area while the officers were conducting the search of [her] room." *Id.* at 586. Again, this is not how courts in the Eleventh Circuit examine whether a defendant was in custody for *Miranda* purposes. Moreover, this case was criticized by the U.S. District Court for the Northern District of California, which stated that "[n]o federal case has been found that goes [as] far" as to hold that "a person whose home is being searched with a warrant that also allows for search of the person is in custody for *Miranda* purposes." *United States v. Harvey*, No. 05-CR-373, 2006 WL 3877719, at *4 (N.D. Cal. Jan. 5, 2006).

The third case cited by the Defendant, *People v. Farris*, 120 Cal. App. 3d 51, 56 (Cal. Ct. App. 1981), is also inapposite for a number of reasons. Officers did not have a search warrant for the defendant, or even for his residence. *Id.* at 54. Rather, officers searched the defendant's residence without a warrant as a condition of his parole. *Id.* As a parolee, Farris was deemed by California law to be in "constructive custody." *Id.* at 55. In finding the defendant to be in custody for *Miranda* purposes, the California court relied by analogy upon *Mathis v. United States*, 391 U.S. 1 (1968), which the California court interpreted to hold that "if a prisoner in a

7

state prison is not first given warnings of his right to remain silent and right to counsel before being interrogated regarding another case, his responses are not admissible." *Farris*, 120 Cal. App. 2d at 55.  In *Fields*, however, the Supreme Court clarified that *Mathis* "did not hold that imprisonment, in and of itself, is enough to constitute *Miranda* custody."  565 U.S. at 507.  Thus, the Defendant's reliance on *Farris* is misplaced.

Under the proper analysis, the "free-to-leave" determination on which *Brunn* and *Wilson* rely is only the first step, which must be followed by an examination of whether a reasonable innocent person would consider himself or herself to be under the functional equivalent of arrest. Looking at the totality of the circumstances, the execution of a search warrant at a defendant's residence (including for her person) does not, on its own, constitute "custody" for *Miranda* purposes, even when the defendant is detained during the search.  *See United States v. Asher*, 2010 WL 4192883, at *8 (N.D. Ga. Feb. 25, 2010), report and recommendation adopted, 2010 WL 4237579 (Oct. 21, 2010) ("To hold that detention of a suspect while executing a lawful warrant at his residence is the legal equivalent of custody for *Miranda* purposes would run contrary to the Eleventh Circuit's direction to consider the totality of the circumstances in analyzing the issue." (citing *Brown*, 441 F.3d at 1348-49)); *see also United States v. Barry*, 479 F. App'x. 297, 299 (11th Cir. 2012) (finding the defendant not in custody during execution of search warrant where he was "interviewed calmly in a private area," the questioning was brief, and defendant was not "threatened or physically detained"); *United States v. Burns*, 37 F.3d 276, 281 (7th Cir. 1994) ("a suspect who is detained during the execution of a search warrant has not suffered a restraint on freedom of movement of the degree associated with a formal arrest," and is thus not "in custody" for purposes of *Miranda*") (internal quotes and citation omitted).

In sum, the Defendant's arguments are based on an incorrect legal standard, and applying the correct legal standard, it is clear the Defendant was not in custody.

**II.     The Defendant Relies on Inaccurate and Irrelevant Factual Assertions**

The Defendant also relies on inaccurate and irrelevant recitations of the facts.

*A. The Defendant Misrepresents The Facts*

The Defendant's effort to portray her interviewers as leaving her no choice but to "complete[ly] capitulat[e] to law enforcement's tactics," Doc. 255 at 13 n.68, is based on mischaracterizations and false factual claims.[4]  At the outset, the Court has the benefit of the recording of the Defendant's interview (Gov't Ex. 2).  The Court observed the agents in person at the evidentiary hearing and can observe their tone and demeanor in the recording of their interview with the Defendant.  The FBI witnesses testified at the hearing honestly, credibly, and consistently with the recording and other evidence.

The recording and the agents' testimony establish that, as described in greater detail in the Government's Response to the Defendant's Motion (Doc. 189), the agents approached the Defendant gently, asked whether she wished to speak with them, offered her opportunities to decline or terminate the encounter, interviewed her in her own home, allowed her to choose a room after she agreed to speak, granted her every request, never physically restrained her, and emphasized that "no one [was] forcing [her] to do anything."  At the close of the interview, the Defendant was invited to "hang around" if she wished to learn what information agents received when they made their phone calls.  Tr. at 161: 19-25; 162: 1-14.  The Defendant chose to stay,

---

[4] Notably, the Defendant has never argued that her confession was involuntarily made.

spending the time with her feet propped up on the front porch, chatting with SA Harrison, Tr. at 170: 2-25, and then playing with her dog in the backyard, Tr. at 171: 16-25.

The agents did not "block[] in Ms. Winner's car and demand[] that Ms. Winner turn over her car keys within minutes of initiating the encounter[.]" Doc. 255 at 2. Rather, the record establishes that SAs Garrick and Taylor pulled into the driveway at an angle that would have allowed the Defendant to "reasonably back up" if she had chosen to do so, Tr. at 34: 13-17, and other agents trickled in significantly later, Tr. at 37: 21-23 (TFO Francois still across the street); 38: 5-25; 39: 1-25; 40: 1-6 (explaining that the search team arrived after SA Taylor and TFO Francois had already done a walk-through of the house and the Defendant's groceries were put away). Rather than "demanding" the Defendant's car keys, agents obtained them without incident about ten minutes into their interview after the Defendant asked, "do they need me to make sure my car's unlocked?" Gov't Ex. 1 at 10:07; Gov't Ex. 2 at 2-018. Notably, the Defendant never, as she claims in her brief, *see* Doc. 255 at 3, "advised the FBI that she was confused" about anything. To the contrary, when SA Taylor said "just to explain to you, we have a search warrant. . . ," the Defendant interjected, "I understand." Gov't Ex. 2 at 2-011. When SA Taylor asked if she had any questions after reading the warrant in its entirety, the Defendant replied, "No." *Id.* at 2-036.

### B. Claims Regarding Subjective Beliefs Are Irrelevant To the Objective Analysis

In addition to Defendant misstating many facts, many of the purported facts she relies on are immaterial to this Court's analysis. As noted above, courts evaluate questions of custody for *Miranda* purposes under an objective, totality-of-the-circumstances analysis, from the perspective of a reasonable, innocent person. The Eleventh Circuit recognizes that "[t]he test is objective: the actual, subjective beliefs of *the defendant* . . . on whether the defendant was free to

10

leave are irrelevant." *Brown*, 441 F.3d at 1347 (citations and quotation marks omitted).  The Defendant's claim that she "did not feel free to leave," Doc. 255 at 3, is irrelevant both because it falls short of the legal standard for custody and is solely a subjective belief.[5]

*C. Facts Not Known to the Defendant Are Irrelevant to the Analysis*

The Defendant also relies on information that she could not have known during the interview.  Facts not known to a defendant cannot factor into an analysis of whether those facts would make a reasonable, innocent person in such a defendant's position feel restrained.  For example, the Defendant makes repeated reference to the fact that law enforcement personnel at her residence were armed.  Doc. 255 at 3, 7 13.  Of course, the fact that a law enforcement officer is armed is not inherently coercive, particularly when his or her weapon is holstered and not visible.  *Cf. United States v. Borostowski*, 775 F.3d 851, 854-55, 860-62 (7th Cir. 2014); *United States v. Hashime*, 734 F.3d 278, 280-81, 284 (4th Cir. 2013); *United States v. Colonna*, 511 F.3d 431, 433, 435-36 (4th Cir. 2007); *United States v. Revels*, 510 F.3d 1269, 1271, 1275-76 (10th Cir. 2007).  In this case, the Defendant could not have known whether SAs Garrick and Taylor, or five out of the other nine law enforcement officers at the residence, were armed,[6] because their weapons were concealed from view and never referenced in the Defendant's presence.  Tr. at 31-32: 4-25; 1-11; *id*. at 75: 5-16.

---

[5] Even if the Defendant's subjective belief was relevant, the record contradicts her claim that she believed she was in custody.  For example, the Defendant stated that she would need her cellular telephone to teach yoga the following day.  USAO-08133.  That statement clearly reflects a belief that she was not under arrest.  Despite asking other questions during the interview, *see* USAO-08109, USAO-08115, USAO-08133-34, she never asked whether she was "going to jail tonight" until after the interview ended.  USAO-08178.

[6] TFO Bryngleson and SA Kirkland were wearing visible handguns holstered on their hips, Tr. at 31: 16-20; Intelligence Specialist McCarthy Butts and Agent Nick Meekins were unarmed, Tr. at 31: 21-25, 32: 1-7.  The remaining agents carried concealed weapons.  Tr. at 32: 8-11.

11

Similarly, the Defendant could not have known that the FBI had posted "a surveillance team on standby to monitor the Defendant in the event of flight," Doc. 255 at 3, because the surveillance team was operating covertly off-scene. Tr. at 27: 7-11. Of course, a team would only be required to monitor the Defendant if she left the residence, and in fact had been assembled precisely in anticipation of the interview ending *without* an arrest. Accordingly, even if the existence of a surveillance team were relevant, it would weigh against a finding of custody.[7] Likewise, agents' unarticulated beliefs about the risk of flight or danger posed by the Defendant cannot factor into this Court's custody analysis. *Stansbury v. California*, 511 U.S. 318, 324 ("Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry."). Finally, email messages, *see* Doc. 255 at 15, of which the Defendant (and SAs Garrick and Taylor) were unaware cannot have any relevance to the Court's determination.

   *D. Other Facts Relied on by the Defendant Are Also Irrelevant*

The fact that the FBI's suspicion had "focused" upon the defendant is similarly irrelevant, particularly because the agents never threatened the Defendant with arrest or prosecution. As the Eleventh Circuit has noted,

---

[7] The fact that SA Garrick did not know that the encounter would end with the Defendant's arrest is further supported by his having arranged for a surveillance team to monitor the Defendant after the interview. The Defendant's assertion that "Special Agent Garrick pointed to no material evidence that he did not already know that emerged during the interrogation, which would cause him to suddenly arrest Ms. Winner even though it was (purportedly) not planned," Doc. 255 at 16, is false. To the contrary, SA Garrick testified, "well, at the outset she was not going to be going to jail, and then through the course of the interview she made a lot of statements that sounded pretty close to a confession to me. So I needed to go back and report in and get further instructions." Tr. at 71: 24-25, 72: 1-2. Indeed, the Defendant's confession was the material new evidence.

12

> [t]he Court in *Beckwith v. United States,* 425 U.S. 341, 347 (1976), emphasized the fact that "*Miranda* implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612). (emphasis in original). Thus, "[t]he mere fact that an investigation has focused on a suspect does not trigger the need for *Miranda* warnings in noncustodial settings . . ."

*Phillips*, 812 F.2d at 1360 (some citations omitted); *see also United States v. Panak*, 552 F.3d 462, 465-66 (6th Cir. 2009).

In addition, what the Defendant describes as the FBI "monitoring and guarding" her during the time the FBI was at her residence is not relevant. Doc. 255 at 11. "[E]scorting a subject around [her] own home while it is searched does not create a custodial situation." *Asher*, 2010 WL 4192883, at *14. As SA Garrick testified, agents do so "[f]or two reasons – one is to ensure officer safety and the other one is possible destruction of evidence." Tr. at 157: 12-20. A defendant who "freely move[s] about his [or her residence] during the entire interview, albeit under [] agents' supervision as a safety precaution," is not "restrained to such a degree as is associated with a formal arrest." *United States v. Opoku*, 210 F. App'x 848, 852 (11th Cir. 2006); *see* Tr. at 36: 19-25; 39: 13-25, 40:1-2; 40: 9-25, 41:1-4;  49: 14-25, 50: 1-3; 51: 11-22; 57: 18-25, 58: 1-16; 72: 8-25, 73: 1-18; 73: 19-25, 74: 1-6; 170: 2-20; 171: 16-25; 173: 9-14.

Finally, SA Garrick's training, his knowledge of the law, and his plans regarding *Miranda* warnings, Doc. 255 at 3, are immaterial to the ultimately inquiry—whether objective facts known to the Defendant would make a similarly situated reasonable, innocent person perceive restraint equivalent to an arrest.

### III.  CONCLUSION

As the recording of the Defendant's interview makes clear, and as the Government demonstrated in its prior brief and at the evidentiary hearing, the Defendant was not in custody during her interview.  Nothing the Defendant has said in her newest brief changes the calculus.  Under the totality of the circumstances, a reasonable, innocent person in the Defendant's place would have understood she was free to leave or terminate her encounter with agents.  Furthermore, the objective circumstances of the Defendant's interview did not, in any way, resemble a formal arrest.  Therefore, the Defendant was not in custody, *Miranda* warnings were not required, and the Defendant's motion to suppress should be denied.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Jennifer G. Solari*
Assistant United States Attorney
Southern District of Georgia

*//s// David C. Aaron*
David C. Aaron
Trial Attorney
U.S. Department of Justice
National Security Division

*//s// Julie A. Edelstein*
Julie A. Edelstein
Deputy Chief for Counterintelligence
U.S. Department of Justice
National Security Division

*//s// Amy Larson*
Amy Larson
Trial Attorney
U.S. Department of Justice
National Security Division

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 20th day of April, 2018.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Julie A. Edelstein*
Deputy Chief for Counterintelligence
U.S. Department of Justice
National Security Division

950 Pennsylvania Ave. NW
Washington, DC 20530