IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA


UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
                vs.            )      1:17CR34
                               )
REALITY LEIGH WINNER,          )
                               )
                Defendant.     )
_____)


TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN K. EPPS
MONDAY, APRIL 16, 2018; 1:35 P.M.
AUGUSTA, GEORGIA


**FOR THE GOVERNMENT:**

    Jennifer G. Solari, Esquire
    U.S. Attorney's Office
    Post Office Box 8970
    Savannah, Georgia 31412
    (912)201-2561

    Julie Ann Edelstein, Esquire
    U.S. Department of Justice
    600 E Street NW, 10th Floor
    Washington, DC 20002
    (202)233-2260

    David C. Aaron, Esquire
    U.S. Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, DC 20530
    (202)307-5190

**FOR THE DEFENDANT:**

John C. Bell, Jr., Esquire
Titus T. Nichols, Esquire
Bell & Brigham
457 Greene Street
Augusta, Georgia 30901
(706)722-2014

Joe D. Whitley, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
3414 Peachtree Road, NE, Suite 1600
Atlanta, Georgia 30326
(404)223-2209

Matthew S. Chester, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
(504)566-5231

Thomas H. Barnard, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Legg Mason Building
100 Light Street, 19th Florr
Baltimore, Maryland 21202
(410)862-1185

**TRANSCRIBED FROM DIGITAL RECORDING BY:**

Lisa H. Davenport, RPR, FCRR
Post Office Box 5485
Aiken, South Carolina 29804
(706)823-6468

1           (Call to Order at 1:35 p.m.)

2           THE CLERK:  The court calls case number 1:17CR34.

3  The United States of America v Reality Leigh Winner.  Julie

4  Edelstein, David Aaron, Jennifer Solari for the Government.

5  Joe Whitley, Matthew Chester, John Bell, Titus Nichols, Thomas

6  Barnard for the Defendant.  Here for a telephone conference.

7           THE COURT:  Good afternoon, everybody.

8       (Group responds simultaneously.)

9           THE COURT:  I appreciate y'all being available on

10  pretty short notice.  I wanted to get us together as soon as

11  possible and I have been out of pocket for most of the last two

12  weeks.  Focusing my attention this week on our hearing that

13  we've scheduled for next week, I thought it would not be very

14  productive for us to just show up next week and then decide

15  where to start given the number of subpoenas and within each

16  one the number of requests, and so after looking through what I

17  have in my files concerning the subpoenas this morning, I began

18  to put a little thought in to how we ought to proceed.  So I

19  wanted to share my thoughts on that with y'all and then turn to

20  both sides to see what insights you might offer as we try to

21  determine the best approach.

22       It seems to me from the outset, especially given our

23  experience the last time and how long it took to cover things

24  when we dealt with the issue of the document requests by the

25  Defense to the Government, that there's no way we're going to

1   be able to cover every prong identified in *Nixon* in one

2   hearing, and so I began to think that perhaps we need to

3   approach the issue in stages, and if we did it that way,

4   perhaps the first thing we should do next week is focus on

5   whether the subpoenas are sufficiently specific such that

6   they're not considered to be a general fishing expedition as

7   described by the court in *Nixon*, and then I would consider any

8   arguments the parties want to make about that particular prong

9   next week, take it under advisement, and then make a decision

10  solely on that basis to begin with which of these requests pass

11  that specificity hurdle and which ones do not and issue an

12  order identifying the ones I think are sufficiently specific.

13      Then we could follow it up with a second hearing that

14  concerns the remaining prongs of *Nixon* and the Rule 17

15  requirements and most probably importantly and the one that

16  would be the most time consuming would be this issue of whether

17  they're relevant to the case or not which would really get us

18  back into the prolonged discussions we had about relevancy in

19  our prior discovery hearings, and so that was my thought was

20  maybe we ought to stage it and deal with that issue of

21  specificity in the first hearing next week.

22      Other thoughts I had -- it would be nice maybe if we could

23  get an idea from the Defense today or maybe sometime this week

24  about how many of these subpoenas could we group into

25  categories where they're substantially similar or identical.

1    That would help me in getting ready for next week such as of

2    all these subpoenas we have to the states, number one, are they

3    all identical so that we can just pull the first one -- the

4    State of Alabama subpoena -- and review it or are there

5    distinctions between each in terms of the information you

6    request?  The answer, obviously, I would hope for is that all

7    state subpoenas are the same; so you only need to review one

8    and maybe the same with respect to some of these tech companies

9    -- that some of them are the same or identical.  So information

10   like that would be helpful to me.

11        And then, finally, are there any sort of charts that

12   anybody has prepared as they're preparing for the hearing next

13   week that could be shared with everybody in advance that would

14   help us be on the same page and have like a summary reference

15   to any of these things we're discussing?  So those were my

16   thoughts to start out, and so with those in mind, I'll turn to

17   Mr. Whitley and the Defense team for any thoughts you had.

18        MR. WHITLEY:  Judge, thank you very much for that.

19   Let me ask -- and as usual I got some very good colleagues

20   working with me on this -- Matt to address some of those

21   questions then and, Tom, if you want to chime in.

22        MR. CHESTER:  Hi, Judge.  This is Matt Chester.  I

23   think there are a couple -- one is I don't think we have a

24   problem with the staging concept and I think that we could

25   certainly be prepared to answer your question about whether or

1  not the subpoenas are duplicative of one another.  You know, my

2  recollection is that for the most part they are.  There are a

3  couple of differences with a couple of the subpoenas for the

4  states and the same is true with the federal entities, but by

5  and large there is a lot of the same requests; so I think that

6  will help expedite matters.

7      I guess the question I would have for the Court is more a

8  basic question and that is I -- are you contemplating the

9  Government being there?  Are you contemplating the Government

10 being allowed to make arguments under Rule 17?  Are you -- you

11 know, as we previously briefed, Judge, you know, it's our view

12 that they don't have any standing, but even if they did have

13 standing, certain portions of what we would present to you we

14 would have serious concerns about them being present because I

15 think it would reveal trial strategy.

16     So that would be, I guess, the question I have for the

17 Court, but, generally, I think we're okay with the notion of

18 staging and can be prepared to answer your question

19 (inaudible).

20         THE COURT:  Yeah, so not only will we stage this to

21 deal, hopefully, with just this issue of specificity upfront,

22 but, two, I think that within each stage we would entertain the

23 thought of having open argument with both sides present and

24 participating and then any closed sessions ex-parte we need to

25 have with the Defense to the extent you think that it concerns

1  Defense strategy.

2       I think one benefit of focusing on specificity at the

3  beginning is you really don't get in to relevance and Defense

4  strategy as to all about the wording of the request and whether

5  or not it satisfies the specificity requirements of Rule 17 *and*

6  *Nixon*.  So, yeah, I would want the Government to be there to

7  participate in that specificity stage in particular, and even

8  when we get past that to the relevancy stage, I'd still like to

9  hear their comments on relevance which you would be free to

10  counter either in that session or in the ex-parte proceeding if

11  we need one, and, of course, we would be prepared to go

12  straight into the ex-parte portion at any stage if we needed to

13  do that.

14            MR. CHESTER:  My next question would be, Judge, so if

15  you're contemplating the Government being there to make

16  argument on the Rule 17 standard, whichever one we're

17  addressing, if we believe a certain portion of our argument or

18  a certain portion of our presentation would reflect trial

19  strategy, we request an ex-parte session, is that something you

20  are going to hear argument on and make the determination or

21  upon request is it going to be ex-parte?  That will change how

22  we prepare, I think.

23            THE COURT:  Yeah, what I am telling you is I want to

24  be pretty flexible on that.  I want you to feel free to argue

25  whatever you think you can in front of the Government, but then

1    if you just tell me there are portions of this argument that we

2    believe are ex-parte in nature and need to be -- and concern

3    Defense strategy, et cetera, that's all you need to say on the

4    record and we will after we complete the arguments with the

5    Government present then reconvene very quickly in an ex-parte

6    conference.

7              MR. CHESTER:  Okay.  I understood.  Yeah, so I think

8    we understand the Court's view of the Government being there

9    and our requesting ex-parte, if necessary, and then we can be

10   prepared for the specificity prong on the 23rd and we can also

11   be prepared to answer the question of duplicativeness.

12             THE COURT:  Okay.  Great.  Yeah, and any -- if you

13   got any chart that you can help send to us in advance to

14   everybody that would kind of tell us -- you know, "state

15   subpoenas" might be the first heading on the chart and then

16   maybe a statement that "all are the same except as follows" and

17   then identify for each state any unique requests for that

18   state, that would really be helpful to get that.

19             MR. BARNARD:  Judge, this is Tom Barnard.  Maybe just

20   a point of clarification.  I think I understand the Government

21   being there to provide input and argue as to what the

22   applicable standards are.  I am not sure I understand what if

23   -- to clarify, whether or not you envision the Government

24   actually getting to argue as to whether or not a specific

25   request that's not directed to them they would have a basis to

 1    give opinion or argument as to whether or not that request met

 2    the standard.  I am not sure if there is a constitutional basis

 3    for them to offer that kind of argument.

 4         THE COURT:  I want -- it's my duty to determine

 5    whether these subpoenas are proper or not under all the *Nixon*

 6    factors and I do want the input of the Government.  I want to

 7    hear from them about their arguments as to why a particular

 8    request may not be specific enough or even relevant enough.  I

 9    think I benefit from having their arguments in that regard, and

10    I think there's nothing prohibiting me from listening to any

11    arguments they want to make, and so that's why I do fully

12    envision them participating at every stage but also preserving

13    the right of the Defense to confer ex-parte with me to the

14    extent they don't feel comfortable making any argument in front

15    of the Government.

16      All right.  Any other thoughts from the Defense about

17    these ideas I have for how we're going to proceed next week?

18         MR. BARNARD:  Well, again, Your Honor, you -- just so

19    I understood the chart concept, do you want to see a written

20    submission via ECF or are you suggesting we bring it to -- just

21    so I understand, what would be the most beneficial for the

22    Court?

23         THE COURT:  Well, you could -- submitting it as a

24    docket entry would be fine or you could email it to

25    Mrs. Widener and then we can enter it as an exhibit at the

1    beginning of the hearing so that we all have a context for what

2    we're talking about.  That way someone looking back at the

3    transcript will be able to understand when we refer to

4    something off the chart.  Unless it's -- is it going to be

5    classified?  I doubt it will be.

6              MR. BARNARD:  I would suspect that they're going to

7    have to be classified because we're not in a position to take a

8    risk as to, you know, at least we're not getting a review as to

9    any of our -- you know, the things we might insert on that

10   chart.  I mean, if it's just -- yeah, even the requests

11   themselves are classified.  So I'm afraid it would have to be

12   classified.

13             THE COURT:  Why don't we just make it a docket entry

14   and, of course, Ms. Rodriguez-Feo's office can fax the

15   classified copy down to us.  That way it's on the docket.  We

16   don't even have to enter it as a separate exhibit, and I do

17   think that having it as a formal part of the record is

18   necessary because we'll make reference to it during the hearing

19   and anybody reviewing that transcript at a later time won't

20   understand what we're talking about if they don't have access

21   to it.

22        All right.  If nothing further from the Defense, what

23   about from the Government?  What are your thoughts on my

24   suggestion for how we're going to proceed?

25             MS. EDELSTEIN:  Your Honor, this is Julie Edelstein.

1    I don't have any objection to their proposed course.  I just

2    have a couple of questions of clarification.

3              THE COURT:  Sure.

4              MS. EDELSTEIN:  First, I think it would be really

5    helpful for the Government to -- given the volume of material

6    requested in the 40 subpoenas -- to see that chart ahead of

7    time.  I don't know if the Defense has an idea about when they

8    would be able to prepare that chart so we'd be able to prepare

9    for this hearing next Monday.

10              THE COURT:  Does anybody on the Defense team have an

11   idea?

12              MR. BARNARD:  Well, Your Honor, I would think that by

13   Wednesday close of business I will have that chart done because

14   that's the last opportunity of -- Defense has limited

15   opportunities in the SCIF.  Happily, if you -- if the question

16   was, Julie -- I wasn't totally sure -- if you'd like to see it

17   before we submit it, I'm happy if y'all want to meet over at

18   the SCIF and look at it there before we give it to Carli.  I am

19   happy to set something up Wednesday.

20              MS. EDELSTEIN:  Okay.  That would be great.  I mean,

21   it doesn't -- we don't need to see it in advance --

22              MR. BARNARD:  Okay.

23              MS. EDELSTEIN:  -- of you giving it to the Court, but

24   if we're able -- you know, if we're able to see it on Wednesday

25   or Thursday, I think that would be very helpful to us to be

1    able to prepare for the hearing.

2          MR. BARNARD:   That's fine.   One of the mechanisms by

3    which if we were to give it to Carli's office Wednesday

4    afternoon, whatever mechanism by which they would give it to

5    you, you know.

6          MS. EDELSTEIN:   Great.   That would be helpful.   We'd

7    greatly appreciate that.   The other thing that I wanted to

8    raise and we were kind of on the verge of filing a reply brief

9    and we'll talk amongst ourselves whether the reply brief still

10   makes sense to file, but the additional issue that we intended

11   to raise in that reply brief is our concerns about now that

12   we've actually seen the subpoenas the dissemination of

13   classified information to individuals who the Government would

14   purport don't have a need to know the information and I guess

15   in this framework where we're doing it -- breaking it down --

16   I'm trying to figure out where would be the appropriate place

17   to raise that issue and secure those arguments.

18         MR. BARNARD:   This is Tom Barnard.   I think those are

19   -- I mean, I don't think that's ripe until we've decided what

20   all -- it meets the other standard and then that's a question

21   of how to do it meaning the security requirements, not a factor

22   in the scope of the legal need under the due process clause.

23   So I think those things were just -- once the Court reaches the

24   other conclusions, we can revisit the security precautions and

25   ensure there is no security risk.

1          MS. EDELSTEIN:  So to us it's not just a security

2     precaution.  It's the idea that our -- based on our

3     understanding of this case and how the Government is planning

4     to put on this case, the information that you seek to

5     disseminate to 40 different parties is information --

6     classified information -- that these individuals don't have a

7     need to know.  Perhaps that is something that's just part of

8     the relevance argument that would happen at the second stage of

9     the hearing, but to us it's not simply a security precaution.

10    It's not a matter of making sure that there is individuals with

11    the requisite security clearance.  It is that classified

12    information can't be disseminated to individuals who don't have

13    a need to know it and we don't think that at least a number of

14    these individuals have a need to know all of the classified

15    information at issue.

16         MR. BARNARD:  I think that's right.  I think that

17    would be covered in the relevance because, clearly, if it's

18    relevant to preparing the defense, then a need to know would be

19    condition precedent to getting that information from the

20    organizations, but if the Court finds it's not relevant in the

21    first place, then there would be no need to know.

22         MS. EDELSTEIN:  I just want to make sure that the

23    Court is aware that we intend to raise that argument both

24    because we want to make sure that it doesn't get waived, but

25    also because we want to make sure that we're raising it at the

1   right time based on the framework that the Court is going to

2   create for these hearings.

3           THE COURT:  Is there any concern by either side that

4   by focusing on specificity only next week that I'm splitting

5   hairs too much and that we really aren't going to accomplish

6   that much?

7           MR. BARNARD:  Judge, this is Tom.  Anyone else want

8   to chime in?  My thought is that it's a very non -- to the best

9   possible it's the one element that may be the least

10  substantive.  So I do think in that sense it makes sense that

11  you might be able to find, you know, initial ways to address

12  some of the requests if that's what we choose to do.  I do

13  think the Court needs to understand that the level of

14  specificity is, you know, correlated with the topics and

15  relevance and the ability of -- the independent ability of the

16  Defendant to discover on her own in this phase of the case

17  because the amount of specificity is directly related to the

18  ability to conduct independent investigation which, obviously,

19  in a CIPA case is very limited.

20          So I think it will be unavoidable that you're going to

21  hear some relevancy and inherent Defense limitations; so there

22  will be some of that that comes up regardless.

23          THE COURT:  Okay.  Ms. Edelstein, what about you?  Do

24  you think I'm taking this in too small a chunk next week?

25          MS. EDELSTEIN:  No, Your Honor.  I think we are -- we

1   are definitely open to proceeding in that course.  Obviously,

2   viewing the subpoenas we had a lot of concerns about the

3   specificity of them; so if you'd like to entertain that issue

4   first, we're happy to oblige.

5            THE COURT:  My thought is a pretty quick turnaround.

6   We'll talk about specificity next week and then I'll turn an

7   order around pretty quickly after that that reviews the

8   standard and then identifies the request -- the specific

9   request in each subpoena that I think satisfies the specificity

10  standards and those that don't and that way at least when we

11  get to the really heavy lifting of reviewing each specific

12  request for relevancy, we're not having to do so with respect

13  to any that I find don't meet the specificity requirements.  To

14  me it seemed like there was some efficiency gain to me and that

15  we wouldn't lose a lot of time because assuming I am able to

16  turn out an order pretty quickly on the specificity part, we

17  could get together -- in fact, maybe if y'all could be prepared

18  to discuss when we get together next week dates for when we can

19  get back together.

20           I should be able to get the specificity ruling out by the

21  end of next week is my hope.  So we could get together as early

22  as the week after.  Of course, I need to check my schedule and

23  have some dates available as well.  That's kind of the timing

24  I'm looking at is next week and then maybe -- well, you're

25  going to need a little bit of time to digest the ruling and

1    focus your relevance hearing.  So we probably wouldn't get

2    together that quickly.

3              MR. WHITLEY:  Your Honor ---

4              THE COURT:  Probably not.  Probably two weeks after I

5    -- after the first hearing we'd follow it up with the second

6    hearing.

7              MR. WHITLEY:  Your Honor, that's what I was going to

8    ask for.  This is Joe Whitley.  We are still operating with the

9    SCIF in Washington being really the only one we can effectively

10   work in.  We don't have a SCIF in Atlanta.  So when we do this,

11   we have -- there's a lot of logistics on our end.  So thank you

12   for that slippage and should we need -- finally need -- if we

13   feel like there is an absolute need for additional time, we'll

14   bring that to your attention.  Thank you.

15             THE COURT:  Great.  Okay.  And just you and the

16   Government -- maybe y'all can have some dates available for us

17   to follow up with the relevance stage of Rule 17 issues.  All

18   right.

19             MR. BARNARD:  And, Judge, this is Tom Barnard again.

20   I just hope that -- two points on the specificity phase.  I

21   think two things that have to be roped in is one is, you know,

22   there is honestly we're going to argue a lot of the case law

23   out there.  I just think that we should not presume that it's

24   going -- that there is a cookie cutter -- this level of

25   specificity for this kind of request kind of test is going to

1    be able to apply to -- I don't want to make it seem like it's

2    going to be an easy, you know, brief process next Monday that

3    we're going to get through these quickly.   That's point one.

4         And point two is if there is specificity issues, I would

5    hope that the Court would entertain leave to amend the

6    subpoenas rather than just denying the Defendant the ability to

7    subpoena on those topics.

8              THE COURT:   Yeah, we can talk about that next week or

9    maybe when we reconvene for the relevancy part we can talk

10   about that issue.   I mean, my inclination is to say you

11   presented the Rule 17 request; they either meet the Rule 17

12   requirements or they don't.   To the extent they do, we approve

13   them and get them issued.   To the extent they don't, we

14   disapprove them and move on.   We've got to make progress in the

15   case and we got to try this case in October.

16             MR. BARNARD:   Your Honor, just the point that at the

17   time we submitted those that was based on the prior guidance

18   from the Court and the call where that guidance changed was

19   after those had been submitted.   So I just bring up that if

20   there is a change we would ask for -- we're going to request on

21   behalf of the client to have a chance to file modified to meet

22   whatever standard -- whatever guidance, similar to the motion

23   to compel guidance -- the ability to adjust those based on the

24   Court's guidance.

25             THE COURT:   Well, the Rule 17 standard hasn't

1   changed.  The only thing that's changed is my thought after

2   hearing more about what is being sent out the thought that we

3   need to look at them upfront before we do it.  So the standard

4   that you would use to prepare these to begin with hasn't

5   changed.  So I think that ---

6        MR. WHITLEY:  The point, Your Honor, though, is that

7   we didn't anticipate the kind of scrutiny that the Government

8   and Court are now seeking.  At that time we did these with the

9   notion that they would be issued without going through this

10  vetting process.  So that's what Tom is saying.  So we would

11  respectfully ask for some consideration.  So if there is some

12  adjustment we can make to these, I think it would make -- it

13  would be good considering the circumstances we faced, Your

14  Honor, when we had sort of a different direction set here.  So

15  that's the only thing I think we're saying.

16        THE COURT:  Well, and so maybe when we're talking

17  through this next week -- the specificity -- I see where you're

18  going and maybe it makes sense this way:  Maybe we talk about

19  request number one and a subpoena and I voice concerns about it

20  and say it's too broad.  Maybe while we're sitting there we can

21  come up with an alternative way of formulating the request that

22  takes care of any specificity concerns I have.  I don't want it

23  to take place, though, in too many stages where, you know, I

24  first say it's not specific enough and then a month from now

25  y'all submit a revised subpoena and then we have to go through

1   this whole thing again.  I would rather go ahead and fully

2   resolve the specificity issue and any modification requests as

3   we go through them next week.

4          MR. BARNARD:  Your Honor, this is Tom again.  I fully

5   support that approach.  I didn't mean to intend we would take

6   like a month.  I just want it to not be an all or nothing

7   offer, I guess, scenario next Monday.  I think we go through

8   it.  You have concerns.  Maybe we can do them in batches like

9   ten at a time.  We can take a break.  We can revise them to

10  meet the Court's concerns and then, you know, I can bring --

11  we'll have computers and things there that we can get them all

12  fixed, at least from that perspective, before we move on to

13  phase two if there are concerns.  I just don't want for the

14  sake of the client there to be some form issue that results in

15  a complete substantive denial because we're getting to the

16  substantive values second.  So I don't want a form issue to

17  preclude potential substantive value.

18         THE COURT:  Okay.  Right.  We'll work through each

19  one as we go and see if there is a way to modify them to

20  satisfy any specificity concerns next week.

21      Talking about this, I guess another thought would be how

22  long this might take, and to the extent it drags past Monday,

23  do we want to plan on staying and working through it more on

24  Tuesday?  The only conflict I have I think on Tuesday is a

25  group of kids coming in for a field trip Tuesday morning and

1    that's going to take up all of my morning.  We do this -- it is

2    an annual field trip that's been on the books for several

3    months now and so I would need most of that morning to do that

4    with them.  If anybody wants to participate, we'll have you get

5    involved in the field trip, but if everybody wants -- if we

6    feel like we're not going to get it done Monday and everybody

7    wants to stay in town because you don't want to have to make an

8    extra trip, then we can reconvene probably by noon or 12:30 on

9    Tuesday.

10         What's the Defense thought on that?

11         MR. WHITLEY:  Your Honor, we have not had an

12   opportunity -- this is Joe Whitley -- to canvas our group.  I

13   suppose we could do that pretty promptly, but I am not sure

14   this would be -- we could do that in the presence of the Court

15   or we could try to do it separately and get back to the Court.

16   I don't know what the better process is, but we do have a

17   number of members -- myself, Tom, and Matt Chester, likely

18   Titus, possibly John would all -- we'd all need to look at

19   those schedules.  So...

20         THE COURT:  Okay.  And I am willing to burn the

21   midnight oil, too, if we just need to stay late on Monday.

22         MR. WHITLEY:  Right.

23         THE COURT:  I have no idea how long this is going to

24   take, but I'd rather us, you know, push forward as much as we

25   can.  So if that means staying here late into Monday night, I

1   am fine with that.   If it means that we're getting back

2   together after lunch on Tuesday, I am fine with that as well,

3   and I apologize for this other conflict that I have, but I just

4   didn't feel as long as it's been on the books I could change

5   it.

6           MR. WHITLEY:   Yeah, I am one of several people that

7   has a scheduled meeting with the attorney general on Tuesday

8   morning, but I think some other people could attend that

9   meeting.   So this is a priority for me, Your Honor; so we'll do

10  our best to accommodate things on that first day, but whatever

11  it takes to get this done, we support that.   So we'll try to

12  make sure we get back in touch.   I have not had a chance to

13  talk or we've not had a chance to talk with the Government.

14  That might be something we might do in the interim, too, about

15  how to proceed.   That could -- that possibly could save some

16  time as well, Your Honor.

17          THE COURT:   I think today's conference is going to

18  help in trying to make sure we do this as quickly as possible.

19  I mean, just this chart alone of being able to group them and

20  know which ones are identical and then talk about them all

21  together instead of one at the time, that's going to help out a

22  lot, and, you know, it might be best to just start the

23  proceeding with arguments on both sides about really what the

24  standard is.   And then I'll tell you what I think the

25  Government -- the standard is after hearing those arguments and

1    then we'll apply that as we go through each of the requests.

2             MS. EDELSTEIN:  Your Honor, I'm sorry to be -- to

3    throw a wrench in things and be difficult here, but my concern

4    with the time we're looking at now is that the Government has

5    two extremely significant deadlines that Friday.  We've been

6    working furiously to try to meet them.  I am still, quite

7    frankly, nervous about our ability to meet them, and if we're

8    in a position where we're in court all day Monday and Tuesday

9    reformulating the Defense's subpoenas that, you know, quite

10   frankly, to us which is a fishing expedition aren't going to

11   survive at the relevance stage, I am very concerned about our

12   ability to meet those deadlines that Friday.

13            THE COURT:  Well, and I noticed the hearing for

14   Monday.  I didn't notice it for Monday and Tuesday.  So I

15   understand that everybody is busy and we may not be able to go

16   any further, and if that's not possible, I understand from

17   either side, but I would encourage everybody to try to make as

18   much space on their calendar as they can for this next Monday.

19   You know, it would be awful if someone said, "I've got a flight

20   out at 4:30 on Monday."  You need to plan to at least to be

21   here a full day on Monday, and then if we can't reconvene on

22   Tuesday, that's fine.  I think probably by the end of the

23   hearing on Monday I'll have a really good understanding of the

24   arguments of the parties and probably enough guidance for me to

25   issue a decision on this first stage of specificity.

1       So let's just plan -- given the Government's concerns with

2  their -- the timing of all this, let's plan on being here a

3  full day on Monday and then not reconvening on Tuesday.

4           MS. EDELSTEIN:  Thank you, Your Honor.  And just one

5  procedural thing.  I know we had filed a notice of intent to

6  reply.  We'll process among ourselves after this call and see

7  if it still makes sense to file that reply brief.  If it does,

8  we'll get it filed quickly, but there is a possibility that it

9  may have been overcome by events in the conference call.

10          THE COURT:  Okay.  All right.  Is there anything

11  further from the Defense perspective we need to discuss today?

12      Anything further from the Government?  All right.

13          MS. EDELSTEIN:  I don't have anything.

14      Jen or David?

15          MR. WHITLEY:  Your Honor, before we go, let me canvas

16  our side.

17      Is there anything further from our side -- the Defense

18  side?

19          MR. CHESTER:  No, not from me, Joe.

20          MR. WHITLEY:  Thank you, Your Honor.  I think that

21  takes care of our comments.  Thank you very much for your

22  courtesy today.

23          THE COURT:  Well, thank y'all for being available.  I

24  think we accomplished a lot, and I look forward to seeing y'all

25  next week.  We're adjourned. (End of Transcript of Record.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, Lisa H. Davenport, Federal Official Court Reporter, in

6     and for the United States District Court for the Southern

7     District of Georgia, do hereby certify that pursuant to Section

8     753, Title 28, United States Code that the foregoing is a true

9     and correct transcript of the digitally-recorded proceedings

10    held in the above-entitled matter to the best of my ability and

11    that the transcript page format is in conformance with the

12    regulations of the Judicial Conference of the United States.

13

14                         _____

15                         Lisa H. Davenport, RPR, FCRR
                           Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25