IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA


UNITED STATES OF AMERICA,         )
                                  )
                Plaintiff,        )
                                  )
                vs.               )       1:17CR34
                                  )
REALITY LEIGH WINNER,             )
                                  )
                Defendant.        )
_____)


TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN K. EPPS
THURSDAY, MARCH 29, 2018; 3:31 p.m.
AUGUSTA, GEORGIA


FOR THE GOVERNMENT:

    Jennifer G. Solari, Esquire
    U.S. Attorney's Office
    Post Office Box 8970
    Savannah, Georgia 31412
    (912)201-2561

    Julie Ann Edelstein, Esquire
    U.S. Department of Justice
    600 E Street NW, 10th Floor
    Washington, DC 20002
    (202)233-2260

    David C. Aaron, Esquire
    U.S. Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, DC 20530
    (202)307-5190

**FOR THE DEFENDANT:**

Joe D. Whitley, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
3414 Peachtree Road, NE, Suite 1600
Atlanta, Georgia 30326
(404)223-2209

Matthew S. Chester, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
(504)566-5231

Thomas H. Barnard, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Legg Mason Building
100 Light Street, 19th Floor
Baltimore, Maryland 21202
(410)862-1185

Titus T. Nichols, Esquire
Bell & Brigham
457 Greene Street
Augusta, Georgia 30901
(706)722-2014

**OFFICIAL COURT REPORTER:**

Lisa H. Davenport, RPR, FCRR
Post Office Box 5485
Aiken, South Carolina 29804
(706)823-6468

1                   (Call to Order at 3:31 p.m.)

2            THE CLERK:  The court calls case number 1:17CR34.

3    The United States of America v Reality Leigh Winner.  Julie

4    Edelstein, David Aaron, Jenna Solari for the Government.  Joe

5    Whitley, Matthew Chester, and Thomas Barnard for the Defendant.

6    Here for a telephonic status conference.

7            THE COURT:  Good afternoon, everybody.

8         (Group responds simultaneously.)

9            THE COURT:  I didn't do a very good job of taking

10   notes as y'all announced who was here, but is Mr. Switzer on

11   the line as well?

12           MR. WHITLEY:  No, sir.  He's not.  This is Joe

13   Whitley, Your Honor.  Good afternoon to you.  Mr. Switzer will

14   not be joining us this afternoon.

15           THE COURT:  Okay.  So I guess what I want to do,

16   first of all, before we delve into anything I wanted to talk

17   about is just talk with the various parties about where you

18   stand with the schedule and what concerns you have and, et

19   cetera.

20        So let me begin with the Defense, Mr. Whitley.

21           MR. WHITLEY:  Thank you, Your Honor.  I will turn to

22   Matt Chester, Your Honor, to give you our report.

23           MR. CHESTER:  Good afternoon, Judge.  It is Matt

24   here.  A couple of issues we did want to flag kind of

25   longer-term issues for the schedule -- for scheduling

1    purposes -- and then there are a couple of issues that are

2    immediate relating to the Rule 17 subpoenas.

3         So in terms of the schedule, Judge, there's two issues we

4    wanted to flag for you down the road that we thought we would

5    talk about.  One is clearance issues.  We know the Court has

6    made some effort on that front for us and we really appreciate

7    that and we have gotten some movement.  They're all important.

8    One of the most important, however, is our public domain

9    searcher.  She has not yet received her clearance, and so she

10   has been operating in the blind.  We haven't been able to

11   coordinate with her.  She hasn't seen a copy of the unredacted

12   document.  She hasn't seen the Government's NDI points because

13   she doesn't have her clearance.

14        So I know it's no fault of Carli's.  I know Carli and her

15   office is working as hard as they can.  We put her request in,

16   I believe, sometime in December, and she's still yet to receive

17   it.  That will be problematic for us, you know, in terms of

18   identifying things for CIPA Section 5 producing reciprocal

19   discovery and finishing out expert disclosures if we can't even

20   coordinate with her and she hasn't even seen the unredacted

21   documents to engage in her public domain searches.  So I just

22   raise that now to let the Court know we're a little concerned

23   about that moving forward, but I thought it was important to

24   raise it today.

25             THE COURT:  Okay.  And, Ms. Rodriguez-Feo, do you

1    have any idea how much longer that process might take for

2    her -- I mean, for that expert?

3              MS. RODRIGUEZ-FEO:  Your Honor, I asked for a status

4    on her as of yesterday and didn't receive that.  I was told

5    that there were several reasons for a delay in her processing.

6    Obviously, those can be general reasons such as a lot of

7    excessive foreign travel and I can make sure that I have a

8    better answer as to what those reasons are by tomorrow and

9    inform the Court tomorrow if that would help.

10             THE COURT:  Sure.  Yeah, anything we can do to help

11   speed the process along, obviously, we'd like to do.  Did you

12   get any kind of sense of how much time we're talking before a

13   decision can be made?

14             MS. RODRIGUEZ-FEO:  I don't have a sense on that.  I

15   would love to be able to say we're only a couple of weeks out

16   being in the final stages, but I don't have a guarantee on

17   that.  I would say that for both of the outstanding clearances

18   right now for the experts -- we have two, both of whom I was

19   hoping to be able to clear in the next two weeks -- I do not

20   have a definite yet, but I will follow up with the Court

21   tomorrow after letting personnel know that this came up in

22   today's hearing.

23             THE COURT:  Okay.  Great.  Thank you,

24   Ms. Rodriguez-Feo.

25      Mr. Chester, that was your first concern.  What was the

1    next?

2              MR. CHESTER:  Sure.  The second concern, Judge -- so

3    this relates to the Government's NDI points.  I know the Court,

4    after Judge Hall's ruling, has limited this case as to the NDI

5    element to those NDI points.  Quite frankly, Judge, I still

6    don't know what they mean.  You know, they are -- I find them

7    to be very general and very vague.  I have reached out to the

8    Government.  I have talked to them about it in the hopes of

9    getting some more specificity.  They have told us that

10   specificity will come in connection with their expert

11   disclosures which I think are due on April 30, and that's fine.

12       I raised -- I just want to raise this for the Court,

13   though.  I don't know what -- I don't know what those NDI

14   points are going to say when we get that level of specificity,

15   and I just want to let the Court know that, obviously, if it's

16   a new piece of information that we're told in connection with

17   the specific NDI points, we may at that point be coming back to

18   Your Honor even though I hate to do it and asking for leave to

19   reopen discovery.

20       I just want you to be aware that that is something we're

21   thinking about.  We've asked for early production of it and I'm

22   told that they're just not in a position to produce it until

23   April 30, and so, again, I just flag that for the Court as an

24   issue that may not come up, but it's something we're thinking

25   about and we've noticed in the schedule that might be -- might

1    put a wrench into it.

2              THE COURT:  Okay.  And just to reiterate my thinking

3    on this, even if we have a hang-up like that that causes us to

4    maybe circle back on one issue, I want us to continue making

5    progress on all of the other issues in accordance with the

6    schedule.  As long as we don't have so many of those little

7    issues pop up that it doesn't make sense to move forward

8    without -- you know, without all of them being -- moving

9    forward at the same pace, but, generally speaking, that's my

10   hope is that while we may have some side issues that the vast

11   majority of what we've accomplished and continue to accomplish

12   will continue, if that makes sense.

13             MR. CHESTER:  Yes, Your Honor.

14             THE COURT:  In other words, even if we have a

15   discussion about additional discovery, I would think 95 percent

16   of the discovery has either been produced or will be produced

17   shortly, and so we can continue through the CIPA process and

18   the expert disclosure process subject to the fact that we may

19   have to go back and revisit that on the 5 percent that's left.

20             MR. CHESTER:  Understood, Judge, and we will

21   certainly do our best.  We're not -- you know, we're not in the

22   business of causing a delay.  So we will certainly do our best.

23             THE COURT:  Okay.  Were those the only two things you

24   wanted to mention?

25             MR. CHESTER:  In terms of long-term scheduling, yes.

1    I have two more things related to the Rule 17(c) subpoenas, but
2    in term of long-term schedules that was the issues I wanted to
3    bring up.
4              THE COURT:  Okay.  Well, let's go ahead and talk
5    about the Rule 17 before I turn to the Government.
6              MR. CHESTER:  Sure.  So one issue, Judge -- I don't
7    think this requires much discussion.  We've confirmed with the
8    Government about our consent motion.  You recall we had
9    discussed us filing a consent motion to preserve the record for
10   the requests we would issue.  So but instead of relitigating
11   these same issues because they'd be a lot of same discovery
12   requests we issued in connection with our Rule 16, we had
13   talked with Your Honor about doing a consent motion.
14        After conferring with the Government, I think they were
15   more comfortable with us styling it as a notice.  So we just
16   called it a "Notice of Proffered Subpoenas" and they indicated
17   to us and we've put it in the notice that they didn't have any
18   objection to that notice serving to preserve the record for
19   those issues.  So I just wanted the Court to be aware that when
20   you receive that pleading, it will be styled a notice as
21   opposed to a consent motion.
22             THE COURT:  Great.  And I very much appreciate you
23   going down that route.  I really think it helps save all of us
24   a lot of time and trouble.
25             MR. CHESTER:  Sure.  And then, Your Honor, the final

1    issue I wanted to talk to about relating to the Rule 17

2    subpoenas -- so as we were putting these subpoenas together,

3    you know, what we came to realize is given the Court's prior

4    rulings about relevancy being limited to this document and this

5    specific incident relayed in this document -- you know,

6    reflected in this document -- many of our requests -- in fact,

7    almost all of them -- are geared to that and so much so that we

8    have attached the document to the subpoenas so the recipients

9    can see the document and, you know, look at it and produce

10   records to the extent they have any that would be responsive,

11   and, again, we believe there is a sufficient likelihood that

12   many of these recipients will.

13        It occurred to us, however, Judge, that in the document

14   the targets of the incident therein are referred to as U.S.

15   Company One and U.S. Company Two.  We will need to know and the

16   recipients will need to know who those companies are.

17   Otherwise, these subpoenas are, essentially, meaningless.  They

18   won't know who U.S. Company One and U.S. Company Two are, and

19   then separately we've made the decision to subpoena U.S.

20   Company One and U.S. Company Two.  So we will need to know that

21   information as well.

22        I reached out to the Government in the last week or two.

23   We've had some discussions about it.  I think they have some

24   objections to giving us that information, but that was an issue

25   I wanted to raise on today's call.

1          THE COURT:  Okay.  The second part caught my

2    attention more than the first.  You plan on issuing subpoenas

3    to the victim entities?

4          MR. CHESTER:  Well, the victims of the attack

5    contained in this document, yes.  I wouldn't view them, Your

6    Honor, as victims of the charged offense, but they're certainly

7    victims of the attack described therein, and so, yes, two of

8    the subpoenas we drafted are directed to them once we find out

9    their names.

10          THE COURT:  I am not sure whether that qualifies

11   under Rule 17 as a victim or not, but as a practical matter I

12   am not sure it really matters either way because -- and the

13   reason -- I am beginning to think that perhaps we need to, for

14   the sake of efficiency, have a hearing before the subpoenas are

15   issued and served.  I haven't made up my mind about that, but,

16   certainly, I thought some of the points raised in the

17   Government's brief they filed last week were important.

18       Mr. Chester, what are your thoughts on the Government's

19   arguments it made and how many subpoenas are we talking about?

20          MR. CHESTER:  So, I mean, first of all, Judge, my

21   frank point to that was going to be whether or not you even

22   wanted an opposition.  You've already decided this issue twice

23   in our view that these subpoenas should issue automatically and

24   this is, in our view, the Government, you know, in the 11th

25   hour coming in -- we've been talking about doing these

1   subpoenas for months, and in the 11th hour them trying to

2   change the procedure associated with these subpoenas, you know,

3   on an issue, really, they have no standing to even be here

4   talking about.

5        Our view of it is, Judge, that, number one, they have no

6   standing to complain about anything associated with Rule 17.

7   We're not asking them to do anything in connection with these

8   subpoenas.  They made the affirmative decision -- intentional

9   decision -- to not accept service of subpoenas for both the

10  federal agencies, and, certainly, the state and private

11  entities they have no relation to.  So I think what you would

12  see if you want an opposition brief is they don't even have

13  standing to begin with.

14       But, secondarily, even if they did have standing, which

15  they don't, your view of the rule the last two times you ruled

16  on this was exactly correct.  There is absolutely no obligation

17  that you vet these subpoenas upfront.  It's not in the rule and

18  the vast majority of cases, Judge, vet the subpoenas if and --

19  unless and until a recipient actually complains about it when

20  you actually have a live dispute before you, and I think

21  particularly in this case with the time-compressed schedule we

22  have this is actually going to lengthen the process.

23       We're going to have briefing now, and, of course, if Your

24  Honor wants to do this, we will.  We would, of course, ask for

25  an ex parte hearing with Your Honor where we could demonstrate

 1   to you why we believe the subpoenas would satisfy the Rule 17

 2   standards.  We would have that now and then these subpoenas

 3   would go out the door presumably, and then you would have

 4   likely briefing on the back end, and it seems to me that that

 5   is going to take more time than Your Honor's prior rulings

 6   which would -- which, you know, indicated that the subpoenas

 7   would go out.

 8        We prepared them as if they were ready to go out.  We've

 9   given -- in fact, I think we've handed them to the CISO

10   today -- a day early.  We're ready to serve.  They're ready to

11   be served, and our view is they should be dealt with on the

12   back end unless and until somebody, you know, complains about

13   it, and, again, in that situation, I think it's the recipient

14   that has the standing, not the Government here.

15        THE COURT:  Well, so a couple of thoughts in response

16   to that.  Number one, I think I have -- certainly, I have in

17   the past indicated my reading of the rule to be that they're

18   supposed to be automatically issued once they're received and

19   that the motion to quash or modify the subpoena occurs after

20   service is conducted.  That just seemed to be the common sense

21   reading of the rule, but looking at carefully the cases cited

22   by the Government, it appears that courts recognize there is

23   discretion there, and when you go back and read the rule after

24   reading the cases which, you know, I told them that I wasn't

25   certain, that I had not dealt with Rule 17 in a while, and I

1  think I invited them to brief the matter and not just because I

2  wanted them to feel good about having the opportunity, but

3  because I intended to read it carefully and think about it, and

4  if you look at the rule, you know, it says that the subpoena

5  may order the witness to produce any documents in advance of

6  trial and it uses the word "may" and then it said "On motion

7  made promptly, the court may quash or modify" and it doesn't

8  say on motion made promptly after service and it does appear to

9  me that courts have exercised discretion to consider the scope

10 of the subpoena before service is made, and the thing that also

11 is concerning to me here is their point that if we wait until

12 after the subpoenas are served, we're going to have however

13 many agencies you plan on subpoenaing answering one by one and

14 it's going to be a scatter shot -- very highly inefficient

15 approach to it.  So why not on the front end take a look at the

16 subpoenas and have a hearing like we had last time on the Rule

17 16 issues and decide what qualifies and what doesn't before we

18 send them out?

19      And I guess it depends in part to me on how many agencies

20 we're talking about.  If it's two agencies, then it's probably

21 not that big a deal.  We serve them.  We let a couple of

22 motions to quash be filed, and then we have a hearing with two

23 agencies, plus the Government and the Defense team.  If we're

24 talking 50, then it's a different ballgame, and we probably

25 need to do more on the front end than on the back end so we

1    don't waste a tremendous amount of time and effort by everyone.

2        So that's why I asked that question, Mr. Chester, about

3    how many subpoenas and agencies are we talking about.

4            MR. CHESTER:  I can tell you that, Judge.  So we have

5    7 federal agencies we plan on subpoenaing.  We have 10 private

6    companies we plan on subpoenaing.  We have U.S. Company One and

7    U.S. Company Two.  So that's two additional I am not lumping in

8    to the 10 private ones, but they would also be private.  And

9    then we have 21 state that we plan on subpoenaing.

10           THE COURT:  Twenty-one state agencies?

11           MR. CHESTER:  Yes.  Yes, sir.

12           THE COURT:  All right.  And so for all these, going

13   back to something you said earlier, you're going to want to

14   notify them of the identity of Company One and Company Two?

15           MR. CHESTER:  Yeah, I think it only makes sense,

16   Judge, that -- you know, if we don't, it's like me, you know,

17   subpoenaing IBM and saying, "Give me all documents regarding

18   person A" and I don't tell them who person A is.  I don't know

19   how they would respond without knowing that information, to be

20   honest.

21           THE COURT:  Okay.  And then one of the 10 private

22   companies you're talking about or two of them would actually be

23   Company One and Company Two?

24           MR. CHESTER:  Yeah.  So, I'm sorry, Judge.  So

25   there's 10 private companies, plus U.S. Company One and U.S.

1   Company Two.  So a total of 12 private companies, 7 federal

2   agencies, and 21 state.  That's the universe we're talking

3   about.

4           THE COURT:  Okay.  Now you mentioned something else

5   pretty important to me -- the ex parte nature of any hearing we

6   might have before the subpoenas are served.  And looking at

7   Rule 17 -- and, like I said, I am no expert on Rule 17.  I am

8   trying to do what I think is consistent with the rule but also

9   makes the most sense in our case.  To me, it sure would be

10  helpful if we had the Government in the room so that we can

11  have a back and forth about these subpoenas in the same manner

12  that we had our prior discovery hearing which was very

13  productive because of that.

14      What would be your objection to that, Mr. Chester, and is

15  there a part of this rule that would require it to be ex parte?

16          MR. CHESTER:  Judge, most of the cases they are -- it

17  is an ex parte showing by the subpoena issuer because it tends

18  to reveal strategy, and if we're going to get into the

19  nitty-gritty of what documents we're requesting, why we believe

20  they have them, and how we're going to use them, and how

21  they're admissible to trial, to me we're well into the grounds

22  of the strategy we're going to use at trial which we're not

23  required to disclose to the Government.

24      So we feel very strongly that -- you know, first of all, I

25  would back up for a second, Your Honor.  If the Court is going

1   in the direction I see it going which is it is considering

2   having an upfront hearing, I guess I would ask that you might

3   reserve ruling on that until you at least get our opposition to

4   their motion they filed which isn't due until April 4th.   So we

5   will get that on file so you can at least take a look at that,

6   but if you do decide to hold this hearing, we would strongly

7   urge the Court that we're now getting into the realm of Defense

8   trial strategy.   The Government has no standing to be there in

9   this scenario.   And so we would ask that it be an ex parte

10  showing by us to you as to why we meet the Rule 17 standards

11  for issuance of these subpoenas.

12          THE COURT:   All right.   And so I first -- so I need

13  to understand completely what you think is off limits and

14  ex parte and what's not.   The Defense is going to serve a copy

15  of each subpoena on the Government.   Is that right?

16          MR. CHESTER:   Yes.   We did that simply because, you

17  know, in our discovery hearing, I mean, I think some of these

18  requests, you know, have been aired out before, and when we

19  talked about it several months back in our discovery hearing, I

20  didn't see any problem with sharing the request, but the actual

21  justification and why we believe the entity had these documents

22  and how we're going to use them, why we think they're

23  admissible at trial, we might want to bring in an expert for

24  Your Honor on those points who might testify at trial.   Again,

25  things that are going to reveal Defense trial strategies, I

1    think it is well settled under Rule 17 case law that the

2    subpoena issuer is entitled to make a presentation to the Court

3    without the other side being present.

4            THE COURT:  Okay.  And, you know, so you got that

5    concern about strategy, but you've also got some other, I

6    think, considerations -- one of which is whether the requests

7    are sufficiently specific under the Rule 17 standard which is

8    different than the Rule 16 scope of discovery standard.  So,

9    you know, maybe what we would do -- and I am just trying to

10   work through this with you guys.  I am not trying to tell you

11   what I think the law is on this, but, certainly, I'll do that

12   after I get your brief and can compare it with the

13   Government's, but perhaps what we'll do if you're right about

14   the strategy part is have a hearing where we have two parts of

15   it:  One is a part where the Government participates and gives

16   us arguments regarding Rule 17 and any arguments they want to

17   make about relevance and then to the extent that you don't want

18   to respond with the Government present, we can go into an

19   ex parte setting and talk about issues that you think are more

20   private and something you don't want to share with the

21   Government.

22       Would you have any objection to that, Mr. Chester?

23           MR. CHESTER:  I would, Judge.  I don't know how they

24   have any standing to be in this process at all.  We're not

25   asking them to do anything.  They shouldn't be the ones

1   complaining about specificity of our requests directed to third

2   parties.  That, to me, is not their fight.  They've repeatedly

3   said that, and I think the case law bears that out as well.

4   They don't have any standing.

5           THE COURT:  You've got cases that say the Government

6   prosecution team is prohibited from participating in hearings

7   regarding the scope of subpoenas and whether they're properly

8   issued under Rule 17?

9           MR. CHESTER:  I believe we do, Your Honor.

10          THE COURT:  Okay.  Well, that will be very helpful to

11  me in trying to decide what to do.  So, you know, if you're

12  right on all of those counts -- and I am not saying you are,

13  obviously, right now -- but maybe in that setting we would have

14  to have just an ex parte hearing, but I want to look at those

15  cases that you got before I make a determination, and let me

16  say that your comments have been very helpful to me in that

17  regard.  Is there anything you want to add before I move on to

18  the Government?

19          MR. CHESTER:  No, that's it.  I guess, Your Honor,

20  we'll plan on -- I mean, we want to comply with the deadline;

21  so the subpoenas will be handed today to the CISO along with

22  the consent -- or I called it the notice -- as well as our

23  batch of reciprocal discovery which is due tomorrow.  So we

24  will comply with the deadline.  We will get our opposition to

25  the Government's motion in on file before April 4th, the due

1   date, and then I guess Your Honor will let us know how the

2   Court wants to proceed in terms of briefing to justify these

3   subpoenas or how do you want to proceed from there?

4              THE COURT:   Right.   I think that once I get that

5   briefing completed by receiving your response, we will issue an

6   order that details what the steps forward will be either that

7   we're going to issue the subpoenas forthwith or that we're

8   going to have a hearing with just Defense Counsel or that we're

9   going to have a hearing with everyone.

10      I do think, though, it's probably worth going ahead and

11  putting some dates on everybody's calendar so that we can

12  accomplish the hearing if we need one, and I think the timeline

13  is working out pretty well.   I appreciate y'alls diligence in

14  getting those Rule 17 subpoenas on file in time.   That will

15  give me a little bit of time to digest those and understand who

16  you're seeking what from and then with that in mind I can turn

17  to your response brief and consider that and that'll give me a

18  little bit of time in advance of any hearing I think we need to

19  have.

20      I looked at my calendar and it seems like April 17th and

21  18th would be good from my standpoint to have a hearing if

22  we're going to have one on the Rule 17 subpoena issue.

23      Mr. Chester, Defense team, do y'all have any conflicts for

24  that timeframe?

25              MR. CHESTER:   Judge, you know, obviously, we have a

1   number of lawyers on our team; so I can turn to them.

2   Unfortunately, the 17th and 18th I am out of town on a

3   prearranged trip to Houston both the days.  I think those are

4   the only days in April when I am out of town.  So, I mean, I

5   can talk to the Defense team, but I do have a conflict on those

6   days.  I'm sorry.

7             THE COURT:  Okay.  Well, see if y'all can't -- see

8   if -- if that means we can't have it that day, then I want to

9   shoot for some time in that general timeframe of that week or

10  the week after.  So maybe you could get together with your

11  Defense team, figure out who is going to be here, talk with the

12  Government about it, and if those two dates don't work out,

13  then give me jointly a date that works for everyone in that

14  general timeframe.

15            MR. CHESTER:  Okay.  Understood, Your Honor.

16            THE COURT:  Is there anything further, Mr. Chester,

17  from you or anybody else from the Defense team before I turn to

18  the Government?

19            MR. CHESTER:  Judge, that's all I have.

20      Joe and Tom and Titus or whoever, you guys have anything

21  else?

22            MR. WHITLEY:  Did Titus join us?  I thought I heard

23  someone join.

24            MR. NICHOLS:  Yeah, I'm here.

25            MR. WHITLEY:  Anything further, Titus?

1          MR. NICHOLS:  Nothing from me.

2          MR. WHITLEY:  Anything further, Tom?

3          MR. BARNARD:  Yeah, I was going to say, you know, I

4    was just thinking the process of the subpoenas.  I think the

5    thing to remember, Judge, is think about how the efficiency and

6    the concern for the schedule is that if we do a hearing now

7    you're probably going to end up doing two hearings because the

8    issues that a recipient may raise about why they may want to

9    quash it are not things anyone on this phone can anticipate.

10   So you're going to hear these reasons and then you're going to

11   have another hearing after receipt maybe for each one of these

12   for their other reasons.  So you're going to end up having two

13   sets rather than doing them all at once at the end and I think

14   that alone, to me, when you're looking at judicial economy may

15   not be -- may be a thing to consider.

16          THE COURT:  Well, and, too, you know, I think the

17   answer for me a lot of times is it depends.  It depends on what

18   the subpoenas look like.  If the subpoenas appear to me to be

19   way outside the scope of the narrow scope that I believe Rule

20   17 sets, then I have a lot of hesitancy in sending out 30

21   subpoenas that are way outside of the permissible scope, and in

22   that setting it would make a lot more sense to try to rein it

23   in to what Rule 17 contemplates before they go out and you have

24   20 different recipients who have to formulate the same

25   arguments about over-breadth.  So that's part of it for me.  A

1    critical part is looking at the subpoenas and figuring that

2    out.

3            MR. BARNARD:  Understood, Your Honor.  I do think

4    either way whether we revise them before they go out, you're

5    going to end up getting the concerns from the recipients on the

6    back end.  So we're going to end up -- I just think it -- I

7    have no problem doing that and I certainly will do whatever,

8    you know, the Court wants.  I'm just letting you know from a

9    timing perspective that we'll probably alter or extend the

10   Rule 17 process by doing both sets and the briefing.  So it's

11   fine.  I just wanted to make sure that everyone thought about

12   that in the context of the overall schedule.

13           THE COURT:  And I don't like that.  I don't like any

14   delay.  We have a lot of work that needs to be done very

15   quickly, but if we can get together sometime around that 17th,

16   18th date, it won't be at least not that much of a delay.

17           MR. BARNARD:  Thank you, Your Honor.

18           MR. WHITLEY:  This is Joe Whitley, Your Honor.  We'll

19   coordinate with the Government on scheduling and try to get

20   something hopefully back to you as soon as tomorrow, Your

21   Honor.

22           THE COURT:  Okay.  I appreciate that.  All right.  I

23   appreciate all of those comments from the Defense team.

24      Let's move to the Government's side.  Ms. Edelstein?

25           MS. EDELSTEIN:  Yes.  Thank you, Your Honor.  In

1    terms of timing issues, I don't think at this point there is

2    anything that the Government needs to raise.  I'll defer to

3    Mrs. Solari on the particulars of the Rule 17 processes if she

4    wants to comment on any of it, but one thing from my

5    perspective that I wanted to add at this point is we were

6    previously unaware of their intent to subpoena a number of

7    private companies and attach a classified intelligence report

8    to it.  I don't know what has been coordinated with the CISO,

9    but I think this is another reason why we need to address some

10   of this on the front end considering that they're talking about

11   disseminating classified information to a number of private

12   companies, some of which may have cleared individuals at the

13   right level and some of which may not.  So that's, obviously, a

14   concern of the Government that's going to need to be addressed

15   in the process.

16         THE COURT:  Yeah, so you're saying that even if I

17   were inclined to adopt a perfunctory process at the beginning

18   where I just review them quickly and get the Clerk to seal and

19   deliver them that the very service of them could constitute a

20   violation of the classification of the document?

21         MS. EDELSTEIN:  Right, your Honor, and my assumption

22   has been the Defense is working with the CISO about the service

23   of the subpoenas and if they were just going to federal

24   agencies that was pretty intuitive to me that Ms. Rodriguez-Feo

25   would be able to find somebody who would be appropriately

1    cleared to receive the subpoenas, but now with all of these

2    private companies out into the mix, I don't know what

3    coordination has taken place to date and whether there has been

4    any investigation of whether there are appropriately-cleared

5    individuals at these companies who could even receive the

6    subpoena.  But it's another reason why we should be discussing

7    these subpoenas on the front end and, quite frankly, I am

8    skeptical that it would be proper to serve these subpoenas.

9            THE COURT:  Mr. Chester, are y'all planning on

10   serving these private companies with the subpoenas that have

11   the classified document attached?

12           MR. CHESTER:  Well, yes.  So let me say there

13   certainly has been lots of coordination with the CISO.  I

14   wasn't planning on violating the Espionage Act by serving these

15   subpoenas without coordinating with somebody.  I understand

16   that it's a classified document and it needs to move through

17   the proper channels.  So the answer is, yes, there's been lots

18   of coordination with Carli, and the subpoenas were not going to

19   go out until the CISO has found somebody with the appropriate

20   clearance.

21           THE COURT:  Okay.

22           MR. BARNARD:  And, Judge, this is Tom, and Carli is

23   sitting here, too, but I think -- we've been discussing plans

24   of, you know, once we generate these making redacted or

25   unclassified versions until such time as a classified -- a

1   person with appropriate clearance can be located consistent

2   with Ms. Edelstein's concern.  It is -- there is a process to

3   do this.  Obviously, it's not as easy as in like a traffic

4   accident case, but it can be done, and I think getting that

5   piece done is not a basis to change kind of, you know, the

6   legal -- the piece that we're dealing with.

7           THE COURT:  Okay.  Ms. Edelstein, what were your

8   thoughts on this issue of identifying U.S. Companies One and

9   Two?

10          MS. EDELSTEIN:  Your Honor, we think that it is not

11  appropriate for that information to be provided to the Defense.

12  Your Honor ruled extensively about discoverability of victim

13  notification at the two-day hearing that we had and Your Honor

14  correctly ruled that victim notifications aren't discoverable.

15  The identities of Company One and Company Two aren't in the

16  document.  They should not have been known to Ms. Winner.

17      They're not -- we are not alleging that those identities

18  were compromised as a result of the document.  That's not part

19  of our case, and we don't see any reason why that information

20  should be provided to the Defense.  We don't think that it's

21  relevant and helpful, and, indeed, even a U.S. Government

22  agency, if they sought to unmask the identity of those

23  companies, would have had to go to the agency that generated

24  the report to seek that information.  It's sensitive

25  information, and we haven't seen any justification why the

1   Defense is entitled to that information.

2            THE COURT:  Well, not only the Defense, but the

3   subpoena recipients?

4            MS. EDELSTEIN:  I'm sorry, Your Honor?

5            THE COURT:  Not only the Defense team, but the

6   subpoena recipients as well?

7            MS. EDELSTEIN:  So if a recipient of the subpoena

8   wanted -- thought that it needed that information to fulfill

9   the subpoena request -- and this is all assuming that at this

10  point it -- there had been a decision that the subpoena had

11  properly issued -- the recipient of the subpoena could -- there

12  would be a process of the recipient of the subpoena to request

13  that information from the agency, but it still shouldn't be

14  information that the Defense is entitled to and that that

15  information shouldn't be disclosed to a potential recipient of

16  subpoena before it's even been decided that the subpoena should

17  issue or are proper or are seeking information that is proper

18  for the Defense to obtain.

19           THE COURT:  Well, certainly, these are thorny issues

20  and makes me more inclined to want to discuss it with everybody

21  fully before we send these out, but if I am not allowed to do

22  that and Mr. Chester has cases telling me I can't, then I'll

23  have to decide what to do at that point, but, certainly, I

24  think we've just discussed several issues on this phonecall

25  that deserve a fair amount of discussion before we make a

1    decision about what to do.

2        Thank you, Ms. Edelstein.

3        Mrs. Solari, did you have anything that you wanted to

4    address in terms of the Rule 17 issues or any other issue?

5            MRS. SOLARI:  Yes, sir.  With regard to the Rule 17,

6    I think Mr. Chester maybe has raised a different issue than one

7    the Government has tried to raise in its motion, and I would

8    agree that there are two difficult issues here when you look at

9    Rule 17.  Those would be does the Government have standing to

10   raise the right of a third-party subpoena recipient and then

11   the other one is is an ex parte hearing required, is it

12   forbidden, or is it within the discretion of the court as far

13   as Rule 17 subpoenas?  I don't think we're there yet.  I think

14   all the Government is asking the Court to do ahead of time is

15   that which the Court is contemplating.

16       I think the Court has an absolute duty as the Court knows

17   to vet a Rule 17(c) subpoena either before it goes out the door

18   or after it's gone out even if there is no motion to quash or

19   modify.  Assuming information is returned in response to the

20   subpoena by the third party, that information then goes to the

21   Court and I think it's incumbent upon the Court, even absent

22   any motion, to go through the information and determine what,

23   if any of it, is properly requested and disclosed pursuant to

24   the *Nixon* standard.

25       So I don't think the Government's standing is really the

1    issue here.  I think the Court has the duty.  The Government

2    certainly has pointed out that the Court has absolute

3    discretion to exercise that duty, I guess, either before the

4    subpoena goes out or once the information comes back, but I

5    think it has to be -- it is a duty that has to be performed

6    either way.

7        So, again, the Government is not raising or trying to

8    exercise the rights of any third-party subpoena recipient.

9    We're just discussing with the Court how it might be best to go

10   about exercising that *Nixon* review, and I think we've, as the

11   Court said, raised some points here that deal with the

12   efficiency of the process.

13       Now I think Mr. Barnard raises a fair point.  We certainly

14   can't say, even if we have a thorough hearing and narrow these

15   and shape these into something that the Court is happy with,

16   that both parties can live with, that's not to say we can

17   prohibit any third party from raising a motion to quash or

18   modify, but I think we can keep them to a minimum.  I think

19   they can be quickly dispatched by the Court since the Court

20   will already be well aware of the party's positions on these

21   issues, what the evidence at trial will look like, what Defense

22   has reason to believe is in the custody of these third parties,

23   and why, rather than waiting as the Court said, until anywhere

24   up to 41 motions to quash or modify come in the door and then

25   we have 41 parties with the right to be heard on their motions

1    that sort of trickle in, and as Mr. Barnard said, they may

2    raise issues that we can't even imagine at this point, but as

3    the Court noted, I think there will certainly be issues that we

4    can all recognize and those are issues of specificity,

5    relevance, admissibility.

6         That brings us to the ex parte aspect of it.  I think the

7    Court handled the CIPA 4 process very reasonably by allowing

8    the Government to be heard ex parte and then allowing the

9    Defense to weigh in ex parte because I think only having both

10   sides of the picture can the Court really make an informed

11   decision.  The Government certainly isn't trying by this motion

12   to ferret out Defense, you know, work product.  Although, I

13   think the way that this hearing would go, to me it sounds very

14   much like a motion in limine where, you know, one party has to

15   explain why they want to introduce a certain piece of testimony

16   or evidence at trial, why it's relevant, how it's admissible.

17        So these really aren't state secrets we're dealing with,

18   but, again, to the extent the Court -- I think the Court has

19   discretion.  If it wants to handle this ex parte and if it

20   wants to hear anything from the Government, then, certainly,

21   we'd be happy to contribute to that conversation so the Court

22   can make that informed decision.  We're just trying to

23   streamline this process here.  I think it's within the Court's

24   absolute discretion.  Whether the Government has standing or

25   not, I think it's a process that we have to go through and I

1    think it's probably best handled on the front end since we've

2    already identified so many issues to be dealt with probably

3    before the subpoena is even issued.

4              THE COURT:  Thank you, Mrs. Solari.

5              MRS. SOLARI:  Thank you.

6              THE COURT:  I do think that for those reasons you

7    just outlined it's probably best to take this up sooner than

8    later before the subpoenas are served.  I think that an

9    overriding concern I have right now is getting this case to

10   trial, and probably for me the most important consideration in

11   Rule 17 is the most efficient and the quickest way to take

12   these subpoenas and massage them in any way that might need to

13   be massaged.  They may be perfect right now and meet the scope

14   of Rule 17, but we're going to have to think about that before

15   they're issued because I'm afraid if we wait until after

16   they're served, given the number of subpoenas that are going to

17   be issued, that if we wait for all of those motions to trickle

18   in, we'll be in October before we know it and I don't want that

19   to happen.

20        And I understand that on the back end we may get some

21   motions from recipients anyway, but I think we can cut down on

22   the number of motions and the length of them a good bit on the

23   front end if, in fact, there are some ways in which the

24   subpoenas arguably are outside of the scope of what Rule 17

25   allows.  Of course, I don't know right now.  I haven't looked

```
 1    at them yet, but it might just be --
 2              MRS. SOLARI:  And Your Honor -- I'm sorry.
 3              THE COURT:  -- the best way to proceed.  And so
 4    that's what I intend on doing unless Mr. Chester gives me cases
 5    that say I can't, and the way I prefer to proceed and the way I
 6    think I will, unless Mr. Chester's brief convinces me I can't,
 7    is to have a hearing with the Government and the Defense
 8    present so that the Government can make any and all arguments
 9    it would like and the Defense can respond as much as it would
10    like to with the Government present and then to continue with
11    an ex parte component of it to the extent the Government wants
12    to reserve some arguments for that setting.
13        So that's what I intend to do unless Mr. Chester gives me
14    something that tells me something I can't, and I know that's
15    different than what I told you off the top of my head last
16    time, but I did allow the Government to brief it.  I thought
17    the points they raised were good ones, and I do think that
18    we're dealing with a different animal than I thought when we
19    talked about this a month ago.  I didn't foresee, quite
20    frankly, this many subpoenas being issued to private and public
21    entities.
22        Is there anything further from the Government we need to
23    discuss today before we adjourn?
24              MRS. SOLARI:  No, sir, Your Honor.  Nothing from me.
25              MS. EDELSTEIN:  No, Your Honor.
```

1            MS. RODRIGUEZ-FEO:  Your Honor, this is Carli.  I

2   don't really have a party; so I am just going to butt in, but

3   real quickly, as Mr. Chester mentioned with regard to

4   coordination to me, that's true.  The Defense Counsel has been

5   working in the SCIF here in Washington, DC and also keeping me

6   apprised now for a while as to the numbers and also a good idea

7   of who will be subpoenaed.

8        I think that my concerns have always been logistically

9   speaking with regards to the fact that they are classified

10   subpoenas, this office would always have to rely to some extent

11   on the Government or a component of the Government.  So just to

12   set the record straight in that there will have to be

13   coordination between this office and if it's not prosecution,

14   then the walled-off or the intelligence community, but, you

15   know, I checked on this a while ago and our office is not in a

16   position to be able to serve these given that they are

17   classified without some sort of support from the Government in

18   that way or from the intelligence community in that way.

19        I don't mean to throw a curve ball into anything by saying

20   that, but I did want the record to reflect that the

21   coordination has been in terms of making our office aware and

22   also preparation to filing as of today's date and meeting the

23   deadline, not necessarily the process itself of serving the

24   subpoenas.

25            THE COURT:  Okay.  Well, I'm glad you mentioned that.

1    Ms. Rodriguez-Feo, in your experience when you have a subpoena

2    that includes a classified component, what is the procedure for

3    service of such a document upon an agency or upon a private

4    company?

5              MS. RODRIGUEZ-FEO:  Right.  So we have actually been

6    digging because this isn't something that happens very often in

7    terms of our office.  So my understanding regarding the

8    historical records of the office and also other CISOs is that

9    the few times it happens it's generally a federal agency and a

10   direct point of contact, and I do understand Defense Counsel

11   was planning on providing additional requests for those and

12   also potential contacts to assist this office, but to answer

13   your question more directly is there's always been at least an

14   attorney designated for that particular federal subpoena by the

15   Government, whether it be a member of the prosecution, a member

16   of the intelligence community, or just a separate attorney to

17   assist this office with regards to that service.

18       We don't have any experience with regards to serving

19   classified subpoenas in the private sector.  So that would be

20   something that we would have to -- it is unchartered territory.

21   It's not something that can't be done.  It is just that, again,

22   a matter of needing to really work with the owners of the

23   information to make sure that's done appropriately.

24             THE COURT:  Well, let me ask you this.  You said it

25   can be done.  Can it be done if no one inside of the private

1    company has a clearance?

2            MS. RODRIGUEZ-FEO:  Well, I certainly can say it can

3    only be done to the extent that the need to know and the

4    clearance is there.  So I can't give classified information to

5    anybody within a private entity that doesn't have a need to

6    know and also the appropriate clearance level for that

7    information.

8            THE COURT:  Okay.  Mr. Chester --

9            MS. RODRIGUEZ-FEO:  I will just mention I thought I

10   heard Defense argue, but I will say that one other thing that I

11   was going to say is just it hasn't been brought up but the fact

12   that we have the classification review process -- the fact that

13   we are sending everything that's filed with my office for

14   classification review to provide redacted versions is my

15   immediate thought is if we move forward the service of the

16   subpoenas as of today, then I would get the Government their

17   copy and I would get the intelligence community their copy, and

18   they would have to provide back according to the court order,

19   you know, within 21 days a redacted version of the subpoenas.

20       So they may request additional time -- I am not sure --

21   given the volume, but there is still that fact or that piece of

22   this that's going to happen -- at least, I was thinking that

23   that would happen per the normal procedures.

24           THE COURT:  Okay.  Mr. Chester, has your Defense team

25   looked at this issue of how you serve a private company with no

1    one that has the appropriate clearance with a subpoena that

2    contains classified information?

3              MR. BARNARD:  Matt, you want me to address that?

4              MR. CHESTER:  Yeah, go ahead, Tom.

5              MR. BARNARD:  Judge, this is Tom Barnard.  Yes, we've

6    been thinking about that process a number of ways.  It's not

7    uncommon if you take it out of the subpoena context that

8    individuals in the government working in a classified

9    environment have interaction with or seek information from

10   people in the private sector who don't have clearances.  So the

11   process can be done.

12        Typically, the people that we're seeking from -- I mean,

13   there's a number of variables.  I think it's a process that we

14   would have to, one, alert them to the fact of a subpoena

15   identifying, you know, the nature and the -- an unredacted or a

16   redacted or unclassified version asking them for the classified

17   portions -- is there anyone in your agency who has a clearance?

18   Can they contact us?

19        It's a little bit more cumbersome process.  It can be

20   done.  Have I seen it done in this specific -- no, but it's not

21   unthinkable if you look at parallel in other contexts of people

22   who work in classified realms interacting with people in the

23   unclassified entities.  It can be done.

24        I think what's -- and I think this is the right question

25   to ask, Judge, and I just want to add we may -- as we're going

1    through the discussion, it may be that some of our requests are

2    things that we have to pare down or re-word.  I just think

3    there is one truth that is not going to be lost that the

4    essence of this case comes down to what was in the public

5    domain already before a particular date, and I think that the

6    idea of us having to subpoena private entities is an

7    unavoidable truth in this case, and they have to be, given your

8    discovery rulings, particular to the incident described in the

9    subject of the case.

10         So this a problem that is going to have to be solved.  In

11   other words, there is no way we can explore what was already in

12   the public.  So I do think that -- I think it's the right

13   question to ask and I've spent a lot of time thinking about it

14   and brainstorming solutions, and we will find -- we can find a

15   solution to do this.  It just won't be as simple as subpoenaing

16   Walgreens for, you know, pharmacy records or something like

17   that.

18              THE COURT:  Right.  And so that was further to my

19   next thought and point which is that so far y'all have been

20   trying to figure this out internally and even if we -- even if

21   you disagree that the Government should be in the room while

22   you argue strategy, I would hope that you would agree that some

23   measure of collaboration and discussion about these things with

24   the Government, now that you finalized the subpoenas and

25   they're going to receive copies of them, is probably necessary

1    just to figure out some of these things because we've got

2    talented lawyers on both sides of this case and I think that

3    the Government would certainly concede that if a private

4    company has information concerning the case that would be

5    pertinent to this NDI issue that you ought to be able to go ask

6    for it, but, certainly, you would agree that we just can't go

7    spreading classified information to the winds and that if

8    someone inside a company doesn't have a security clearance,

9    we've got to figure out the solution, and so that's only going

10   to come through collaboration.

11       Each side has a tremendous amount of experience, but when

12   you combine the two sides, we've got twice as much experience.

13   So let's do that.  Let's start -- let's let the Government look

14   at it, and while I am figuring out what to do in terms of a

15   court proceeding, I want y'all to reach out and talk about

16   these issues and see how much y'all can get accomplished on

17   your own.

18       MR. BARNARD:  Thank you, Your Honor.  I think all of

19   us will 100 percent agree that when it comes to the how to get

20   these things issued and served, we're going to be happy to work

21   together and effect it to keep the steps moving forward and I

22   don't think anyone would begrudge coming up with the best

23   solution as possible to make it easy and we all have the same

24   oath here as far as obligations and responsibilities for

25   classified information.  So I don't think there is any problem

1  there.

2          THE COURT:  Okay.  All right.  You know, like always,

3  I am glad we got on the phone together.  I think we

4  accomplished a lot, and I look forward to receiving the brief

5  from Mr. Chester's team about the Rule 17 issue.  I look

6  forward to looking at the Rule 17 subpoenas, and I look forward

7  to seeing you guys at, most likely, everyone for a hearing in

8  April.

9      And is there anything further from the Defense team we

10  need to discuss today?

11          MR. WHITLEY:  Nothing, Your Honor.  Nothing further

12  from us.  Thank you.

13          THE COURT:  And let me ask this of the Defense team:

14  Was Ms. Winner notified of her right to be present today?  And,

15  if so, did she --

16          MR. WHITLEY:  Yes.

17          THE COURT:  -- waive her right to be here?

18          MR. WHITLEY:  Yes, sir.  She was notified and was

19  aware of these proceedings and waived her right to be present.

20          THE COURT:  Okay.  And from the Government, anything

21  further today?

22          MS. EDELSTEIN:  No, Your Honor.

23          THE COURT:  All right.  Thank you very much,

24  everyone, for your participation.  I hope you have a good

25  weekend.  We're adjourned.(End of Transcript of Record.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, Lisa H. Davenport, Federal Official Court Reporter, in

6    and for the United States District Court for the Southern

7    District of Georgia, do hereby certify that pursuant to Section

8    753, Title 28, United States Code that the foregoing is a true

9    and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13

14                    _____

15                    Lisa H. Davenport, RPR, FCRR
                     Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25