**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **1:17-CR-0034 (BKE)** |
| | * | |
| **REALITY LEIGH WINNER** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * | * | |

## DEFENDANT'S NOTICE OF EXPERT TESTIMONY

NOW INTO COURT, comes the Defendant, Reality Leigh Winner ("Ms. Winner" or the "Defendant"), and provides the following summary of proposed expert testimony in this matter:[1]

Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, as well as Rules 702, 703, and 705 of the Federal Rules of Evidence and the currently-pending scheduling order in this case [Doc. No. 240], Ms. Winner provides notice to the Government of the following expert witness expected to testify at the trial of the above-referenced case. The following is a summary of the testimony this witness will provide and does not set forth every detail of his expected testimony.

## J. WILLIAM LEONARD

J. William Leonard ("Mr. Leonard") currently serves as the Chief Operating Officer at the National Endowment for Democracy, a private, nonprofit foundation dedicated to the growth

---

[1] As addressed in the May 3, 2018 teleconference with the Court, the instant expert disclosure may not be complete. Among other things, Mr. Leonard has not received all relevant records necessary to complete his analysis for expected areas of testimony, in part due to the lack of a security clearance received by the defense's expert researchers (which was only received recently), who will be compiling those relevant records. Accordingly, the instant expert disclosure only discloses those areas currently known and/or finalized by the defense team. Ms. Winner reserves the right, consistent with the Court's ruling on May 4, 2018, to supplement this disclosure. *See* Doc. No. 281.

and strengthening of democratic institutions around the world.  Mr. Leonard's role at the

National Endowment for Democracy comes after a nearly 34-year career in the federal

government, where he had in-depth training and experience with, among many other things,

identifying, reviewing, and handling classified information and national defense information, as

well as supervising and/or participating in counterintelligence investigations, including law

enforcement investigations.  Among many other things, Mr. Leonard has held the following

positions over his multi-decade career, with the following roles/responsibilities:

- From approximately 1973-2002, Mr. Leonard was employed by the Department of
  Defense ("DoD").  From approximately 1973 through 1996, Mr. Leonard was employed
  in increasingly responsible positions in the Department of Defense's Industrial Security
  Program, which included responsibilities for ensuring the proper protection of classified
  national security information in the possession of defense contractors.

- Additionally, during his time at the DoD, from approximately 1996 through 1998, Mr.
  Leonard served as the Director of Security Programs where his responsibilities included
  policy, guidance, and oversight relating to all of DoD's security programs administered
  by the military services and defense agencies.

- From approximately 1999 through 2002, Mr. Leonard served at times as the Deputy
  Assistant Secretary of Defense (Security & Information Operations), holding
  responsibility over security, counterintelligence, information assurance, critical
  infrastructure protection, as well as both offensive and defensive information operations
  program (at other times during this time period, Mr. Leonard served as the Principal
  Director in that office).

- From approximately 2002 through 2008, Mr. Leonard served as the Director of the
  Information Security Oversight Office ("ISOO"), one of only three individuals to have
  been appointed to that position up to that point in time since it was created by then-
  President Carter in 1978.  The Director of ISOO is colloquially as the "Classification
  Czar" because the Director if responsible for oversight of the government-wide
  classification system.  The Director of ISOO has authority to access more classified
  information than anyone in the government other than the President and Vice President,
  and ultimately can be denied access only by the President.  Mr. Leonard, during this
  period in time, was the primary official charged with responsibilities to direct that
  information classified in violation of the governing executive order be declassified, with
  the authority to overrule even the decisions of Cabinet members, subject to appeal to the
  President.

- From 1999 through 2002, and then again from 2002 through 2008, Mr. Leonard served on the Interagency Security Classification Appeal Panel ("ISCAP") first as the DoD representative and subsequently as the Executive Secretary of ISCAP. In that role, Mr. Leonard helped ISCAP execute its function, including reviewing appeals of agency mandatory declassification review decisions to determine if information designated as classified by Federal agencies continued to meet the President's standards required for classification.

- From approximately 2008 through 2010, Mr. Leonard served as an independent consultant on various classification and national security issues, as well as a professor at a local college teaching political science.

- From approximately 2010 through the present, Mr. Leonard has served as the Chief Operating Officer at the National Endowment for Democracy, where he has handled matters involving, among other things, protecting the organizations computer networks against attacks from advanced persistent threat actors.

Mr. Leonard's curriculum vitae will be provided to the Government under separate cover.

Mr. Leonard is expected to testify about his background and experience in reviewing classified information and national defense information, and is expected to testify as to the differences between classified information and national defense information. He is also expected to testify about the importance of properly designating information as a national security tool, and the responsibility of those individuals and/or government agencies charged with doing so. In this regard, Mr. Leonard is expected to testify as to the particulars associated with designating information properly, including what federal laws and regulations require in connection with the designation of classified information (such as the requirement that the author and/or classifier precisely state the elements of information in the document that warrant the classification marking at the level indicated, as well as the requirement that the author and/or classifier be able to provide the original classification authority's written support for each precise original classification decision, including the description of purported damage to national security in the event of an unauthorized disclosure). Mr. Leonard is also expected to testify and provide examples, including examples from documents and pleadings in this particular case, of

information being improperly designated as classified, sensitive, and/or national defense information.  Mr. Leonard is also expected to testify as to the use of, and unique challenges associated with, designating information as classified and/or national defense information relating to activities in cyberspace.

Mr. Leonard is also expected to testify about the particulars associated with national defense information, including the requirements that the information could cause potential harm to the national security of the United States if disclosed and that the information be closely held. In this regard, Mr. Leonard is expected to testify that the information contained in the document at issue in this case was not closely held based on a number of factors, including but not limited to (1) the amount of information addressing the same or similar facts, concepts, and topics contained in the public domain prior to or at the time of the alleged leak in this case (including the same or similar facts, concepts, and topics that the Government will contend is NDI in this case); and (2) the broad distribution of the information contained in the document at issue through unclassified channels and/or communications.  For example, Mr. Leonard is expected to testify that the Government's sanitizing of the information contained in the document in an unclassified format, including formats which were expressly created for distribution amongst other federal agencies, and further distribution beyond those agencies, is one of a number of factors demonstrating that the information in the document at issue was not closely held (and therefore, does not qualify as national defense information).

Mr. Leonard is also expected to testify about the creation and use of harm assessments associated with so-called "leaks" of classified and/or national defense information.  In particular, among other things, Mr. Leonard is expected to testify about how such damage assessments are

conducted; by whom; what factors are considered in creating such harm assessments; and the advantages and disadvantages of conducting such damage assessments.

In reaching his opinions, Mr. Leonard will be relying on his considerable experience identifying, reviewing, handling, and addressing national defense information.[2]  In particular, among other things, Mr. Leonard's testimony will be based on his experience in (a) reviewing and analyzing sensitive, classified, and/or national defense information (including how such information is compiled by particular governmental agencies/actors, how such information is classified and the criterion used to establish those decisions, and whether the information in question is actually closely held and/or would cause potential harm if disclosed); (b) reviewing, analyzing, creating, and participating in the distribution of sensitive information to various governmental actors and/or private actors for law enforcement, informational, and/or cybersecurity purposes, particularly post-9/11; (c) reviewing, analyzing, and supervising investigations and inquiries into leaks of sensitive information (including the participation in damage assessments associated with so-called leaks of sensitive information, reviewing representations made by governmental agencies/actors as to the level of harm that occurred with the alleged leak as well as representations as to whether the information at issue was actually closely held by the particular governmental agency/actor); and (d) applying federal laws and regulations, which he has reviewed and utilized extensively, governing the requirements associated with designating information as classified.

Mr. Leonard's opinions will also be the product of applying his considerable experience to the facts of this case, including but not limited to (a) his review of the allegedly leaked document at issue, as well as all attachments to that document; (b) his review of the

---

[2] Ms. Winner notes that Magistrate Judge Epps qualified Mr. Leonard as an expert in national defense information in connection with her proposed Rule 17(c) subpoenas at the April 23, 2018 hearing.

Government's responses to the Defendant's discovery requests, including the Government's statement of purported harm that took place associated with the alleged disclosure of the document at issue; (c) his review of other pleadings or submissions in this case, including the Government's CIPA Section 10 Notice and the Government's expert disclosures; and (e) his review of information culled from public sources, including various reports, workpapers, bulletins, news articles, and other publicly-available information.

## MEMORANDUM OF LAW AND CITATIONS TO AUTHORITY

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reasonably applied the principles and methods to the facts of the case.[3]

Supreme Court jurisprudence interpreting Rule 702 makes clear that district courts are to perform a "gatekeeping" function concerning the admissibility of expert evidence, to ensure that the foundations of expert opinions meet the appropriate standards under this rule.[4]  "The objective… is to ensure the reliability and relevance of [the] expert testimony"[5] and, in undertaking this analysis, district courts have "wide latitude" in how to determine reliability.[6] Expert testimony is permitted if it offers "something 'beyond the understanding and experience of the average citizen,'" or "enlightens and informs lays persons without expertise in a specialized field."[7]

---

[3] Fed. R. Evid. 702.
[4] *See, e.g. United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)).
[5] *Abreu*, 406 F.3d at 1306 (quoting *Kumho Tire*, 526 U.S. at 152).
[6] *Id.* (citing *Kumho Tire*, 526 U.S. at 142).
[7] *United States v. Paul*, 175 F.3d 906, 911 (11th Cir. 1999) (quoting *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985); *United States v. Burchfield*, 719 F.2d 356 (11th Cir. 1983)).

Respectfully submitted,

*/s/* Joe. D. Whitley

Joe D. Whitley (GA Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (GA Bar No. 554141)
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

John C. Bell, Jr. (GA Bar No. 048600)
Titus T. Nichols (GA Bar No. 870662)
**BELL & BRIGHAM**
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
John@bellbrigham.com
Titus@bellbrigham.com

Matthew S. Chester (LA Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Thomas H. Barnard (AZ Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

Katherine C. Mannino (LA Bar No. 35081)
Admitted Pro Hac Vice
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
450 Laurel Street
Baton Rouge, LA 70825
(225) 381-7027
KCicardo@bakerdonelson.com

**COUNSEL FOR DEFENDANT**
**REALITY LEIGH WINNER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

*/s/ Joe D. Whitley*_____
Joe. D. Whitley, Esq.
