```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF GEORGIA


UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     vs.                       )     1:17CR34
                               )
REALITY LEIGH WINNER,          )
                               )
          Defendant.           )
_____)


                          TELECONFERENCE
                 BEFORE THE HONORABLE BRIAN K. EPPS
                  THURSDAY, MAY 3, 2018; 4:18 p.m.
                         AUGUSTA, GEORGIA


FOR THE GOVERNMENT:

     Jennifer G. Solari, Esquire
     U.S. Attorney's Office
     Post Office Box 8970
     Savannah, Georgia 31412
     (912)201-2561

     Julie Ann Edelstein, Esquire
     U.S. Department of Justice
     600 E Street NW, 10th Floor
     Washington, DC 20002
     (202)233-2260

     David C. Aaron, Esquire
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530
     (202)307-5190
```

**FOR THE DEFENDANT:**

    Joe D. Whitley, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    3414 Peachtree Road, NE, Suite 1600
    Atlanta, Georgia 30326
    (404)223-2209

    Matthew S. Chester, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    201 St. Charles Avenue, Suite 3600
    New Orleans, Louisiana 70170
    (504)566-5231

**OFFICIAL COURT REPORTER:**

    Lisa H. Davenport, RPR, FCRR
    Post Office Box 5485
    Aiken, South Carolina 29804
    (706)823-6468

```
 1                    (Teleconference starts at 4:18 p.m.)
 2              THE COURT:  I am dialing you from a conference I'm
 3   attending.  This is a little different than normal.
 4        Mrs. Widener, would you call the case and announce the
 5   participants?
 6              THE CLERK:  Yes, sir.  The court calls case number
 7   1:17CR34.  The United States of America v Reality Leigh Winner.
 8   Julie Edelstein, David Aaron, and Jennifer Solari for the
 9   Government.  Joe Whitley, Matthew Chester for the Defendant.
10   Here for a telephone status conference.
11              THE COURT:  All right.  I understand the Defense
12   requested the phonecall.  So let's begin with who is going to
13   speak on behalf of Miss Winner?
14              MR. CHESTER:  Judge, this is Matt Chester.  I'm happy
15   to.
16              THE COURT:  Okay.  Before we begin with whatever you
17   want to discuss, let me just put on the record I understand
18   that Miss Winner has waived her right to be present for this
19   hearing.  Is that correct?
20              MR. CHESTER:  That's correct, Your Honor.
21              THE COURT:  Okay.  You may proceed.
22              MR. CHESTER:  Thank you and thank you for making
23   time, especially since I know it sounds like you're not in the
24   court.  I appreciate you making time for the parties today.
25              THE COURT:  No problem.  Glad to do it.
```

1          MR. CHESTER: So, again, this is just by way of
2     giving you an update. When we see an issue that may impact the
3     Scheduling Order, we feel like we should raise it with you as
4     soon as we can and there is a little bit of ambiguity in the
5     Scheduling Order; so I wanted to raise this issue.
6          Our expert disclosures are due, I believe, on May 28th or
7     30 days from the clearance of each expert. What we're finding,
8     of course, as we are working through is that for some of our
9     experts who are going to be opining on whether or not the
10    information in the document at issue is NDI as you heard from
11    Mr. Leonard, they have not done their analysis yet. They
12    haven't completed their analysis yet.
13         Part of the reason they haven't completed their analysis
14    yet is our expert searcher does not yet have a clearance. I
15    know we talked about that at the last hearing and I know Carli
16    gave you an update in terms of timeframe. I just wanted to
17    make sure that even though, for example, Mr. Leonard has a
18    clearance, we're not going to be held to that May 28th date for
19    Mr. Leonard, for example, given that he will not have completed
20    that analysis by that date and really won't be able to complete
21    that analysis until our searcher has his clearance and has had
22    adequate time to search and give the information to
23    Mr. Leonard. I just wanted to raise that with the Court and
24    make sure that we were on the same page with respect to that
25    issue.

1     THE COURT:  Normally I would have looked at the
2 Scheduling Order before we got on the phone.  Did you say that
3 the deadline currently is May 28th or is it 30 days from the
4 clearance?
5     MR. CHESTER:  Yes.  Thirty days -- May 28 -- the
6 later of May 28th or 30 days from the clearance of each expert,
7 and, of course, I only raised it because even though
8 Mr. Leonard has his clearance, he is relying on the work from
9 another one of our experts who does not yet have his clearance.
10     THE COURT:  Right.
11     MR. CHESTER:  So I see that being problematic.
12     THE COURT:  How long before the -- I guess you would
13 call the other expert a researcher?
14     MR. CHESTER:  Yes.
15     THE COURT:  And how long before the researcher does
16 it look like before he or she gets their clearance?
17     MR. CHESTER:  So I think Carli can probably better
18 answer that.  My recollection, though, Judge, is I think you
19 asked that at the last hearing.
20     Carli, go ahead and jump in, but I think you may have said
21 something like you thought approximately 30 days from the end
22 of April.  Is that right?
23     MS. RODRIGUEZ-FEO:  Right, Mr. Chester.  The
24 clearance date that I gave our personnel security and they said
25 they didn't have a problem or foresee any problem with was 30

1   days from our previous hearing and they said they didn't think
2   that would be a problem at all and that it would be -- that
3   would be the latest would be 30 days from the date of our
4   previous hearing and I can't recall the exact date of our last
5   hearing.
6           THE COURT: Does anybody on the phone recall what
7   date that was?
8           MR. CHESTER: Yeah, it was April 23rd, Your Honor.
9           THE COURT: Okay. So we're looking at May 23rd. So
10  if you get the clearance of that researcher on that date --
11  just trying to see what you're asking for -- how long would
12  that researcher need to get materials to Mr. Leonard? How long
13  is he going to need to review those materials and how long will
14  it be after that before he would -- you'd be ready to make that
15  disclosure?
16          MR. CHESTER: Yeah, so that's tough for me to answer
17  right now because, for example, we haven't -- we haven't even
18  spoken with that researcher. We haven't been able to
19  coordinate with that researcher. He hasn't even seen the
20  unredacted document. He hasn't seen the Government's NDI
21  points because he doesn't have the clearance.
22        So, you know, I know the Court is going to want an answer
23  that is, you know, well, the answer is as soon as possible and
24  we will endeavor to get it done as soon as possible. It is
25  hard for me to give a number. Maybe -- I mean, if we could

1   come back to you once the clearance is obtained and we've had a
2   week or something to talk with him, I think that we would have
3   a better sense of how long it will take because I just don't
4   know -- I haven't even yet seen, for example, the Government's
5   expert disclosures and what they are going to claim is NDI.  He
6   will have to review that extensively and then conduct these
7   searches.  I mean, I think it's going to be, you know, several
8   weeks for sure.
9           THE COURT:  And that researcher is looking for
10  documents that you would argue aren't closely held because
11  they're available for access by the public in some means that
12  would be what you would expect -- less than what you would
13  expect for classified documents, essentially?
14          MR. CHESTER:  Well, yeah, he would be looking for
15  documents in the public domain that relate to the
16  Government's -- what the Government will claim at trial is NDI.
17          THE COURT:  Okay.  Who is going to take the lead for
18  the Government?
19          MS. EDELSTEIN:  I will, Your Honor.  This is Julie
20  Edelstein.
21          THE COURT:  Ms. Edelstein, what are your thoughts?
22          MS. EDELSTEIN:  Your Honor, I'm not sure why the
23  experts who they've had cleared for some time aren't able to
24  file expert witness disclosures at the appropriate deadline and
25  then if there is additional information that they obtain

1   because of other cleared experts then they could supplement
2   their expert witness disclosure.
3       I also just wanted to clarify something that Defense
4   Counsel said.  They said this on the prior call, too, that the
5   uncleared experts haven't seen the unredacted version of the
6   document, and, presumably, they haven't seen any version of the
7   document because any version of the document is classified.  So
8   I just wanted to clarify and make sure that that is the case.
9           THE COURT:  Mr. Chester?
10          MR. CHESTER:  Well, I haven't told them anything.  So
11  I have no idea what they've seen to be frank with you, Judge.
12          THE COURT:  I think Ms. Edelstein's question is --
13  Ms. Edelstein, you're asking -- where is that noise coming
14  from?  It sounds like somebody is banging pots.  Anybody know
15  where that's coming from?
16          MS. EDELSTEIN:  Not sure.  We're receiving feedback
17  on our end, too.  So it's hard to hear.
18          THE COURT:  Right.  Well, it's not coming from my
19  room.  That's for sure.  So I lost my train of thought because
20  of it.
21          MS. EDELSTEIN:  Your Honor, I just asked Mr. Chester
22  to clarify that their expert witnesses who don't have
23  clearances have not seen any version of the classified document
24  at issue.
25          THE COURT:  Mr. Chester, your answer was they have

Case 1:17-cr-00034-JRH-BKE   Document 312   Filed 06/22/18   Page 9 of 19

9

1   not; right?

2              MR. CHESTER:  To my knowledge they have not, Judge.
3   I haven't told them to go look for any version of the document.
4   I haven't coordinated with them in any way about what they're
5   supposed to be searching because my understanding of my
6   obligations is that doing so might arguably reflect what's in
7   the document.  So my answer is I have not.

8              MS. EDELSTEIN:  Okay.  Thank you.  That clears it up
9   for the Government.  We just wanted to make sure, but our
10  response on the timing of it remains the same.

11             THE COURT:  Okay.  Mr. Chester, before she spoke,
12  that was my thought on it.  Why can't we go ahead and
13  accomplish as much as we can now and then allow for
14  supplementation down the road?  Having listened to
15  Mr. Leonard's explanation of how he goes about his work, I
16  would guess there is probably a fair amount of material out
17  there that he's probably already been able to research in the
18  public domain that he could offer opinions regarding and then
19  we could supplement that after your researcher is cleared.
20  What are your thoughts on that?

21             MR. CHESTER:  So the rule requires me to disclose
22  what his opinions are and what the bases are of his opinions --
23  the bases for those opinions, I should say.  He has not yet
24  done that, Judge.  He has a clearance.  He can't go into Google
25  and start searching for stuff that's in this document for the

1   reasons we've previously discussed.  He's relying on the work
2   of our expert searcher.  He's not yet reached his opinion.  I
3   don't know how I can comply with the rule of an expert
4   disclosure, for example, when I have to put what his opinion is
5   going to be when he hasn't yet reached it because he hasn't had
6   access to the material he will need to reach that opinion.
7              THE COURT:  Well, so, I would think, though, he
8   already has a mass of documents or there is a capability for
9   him to research and obtain a mass of documents within the
10  confines of the internet search term issue that we've been
11  talking about so that he can go ahead and start working on that
12  opinion and at least make opinions as to the documents he can
13  find without the searcher to assist him.  Why is that not
14  possible?
15             MR. CHESTER:  Well, Judge, he certainly has -- he
16  certainly has looked at documents that our searcher has on his
17  or her own without any coordination from the team pulled, but,
18  of course, there's miss-mash there because the searcher has
19  been out on his or her own doing what the searcher thinks, you
20  know, he or she needs to do.  There's been no coordination
21  between the folks -- those of us that are cleared -- and the
22  searcher and so Mr. Leonard was not engaged to sit down at a
23  terminal himself and do the Google searching.  He was engaged
24  with his expertise and, you know, to discuss whether or not
25  this information constitutes national defense information.  So

1    he's reliant on the work of the searcher to do that.

2        He has started that work as you heard him testify.  He
3    just hasn't completed it, and if we get to May 28th and he
4    hasn't reached an opinion which is going to be my guess, then I
5    don't know how I can properly comply with the rule.  I mean, I
6    can certainly tell the Government, you know, the identity of
7    the people, but I can't -- I certainly can't give them what
8    their opinions are going to be when they haven't -- they
9    haven't reached those opinions, yet, Judge.

10              THE COURT:  Okay.  So the only expert for which
11   you're seeking -- for which we have an issue about clearance
12   pushing back the May 28th deadline would be Mr. Leonard's
13   opinions based in part on the research conducted by someone who
14   doesn't have a clearance yet.  Is that right?

15              MR. CHESTER:  It's not just Mr. Leonard, Your Honor.
16   I mean, our -- we have engaged several other experts to opine
17   on certain aspects of the document at issue and whether or not
18   those aspects or those details constitute NDI, and, again, they
19   face the same problem Mr. Leonard does.  They started that
20   work, but without an expert searcher that has a clearance who
21   can coordinate with them and pull relevant records, they
22   haven't finished it and we will work to get it done as much as
23   possible.  Once the clearance comes in, trust me; we will be
24   working as we have been, but until that happens, I don't know
25   how I can disclose them.  They haven't reached their

1   conclusions yet.

2           THE COURT:  So let's just assume for a minute that

3   this expert researcher gets the clearance on May 23rd.  Would

4   that mean that we would start the 30-day deadline from that

5   date and have everything due by June 23rd?

6           MR. CHESTER:  I mean, I think, Your Honor, that would

7   be what we would endeavor to do, yes.  Whether that's feasible

8   will depend on, you know, what the Government at trial is going

9   to contend is NDI, what the expert researcher finds, and those

10  sort of things, but I understand the Court's Scheduling Order

11  and we would endeavor 30 days from that point to do it, but I

12  don't want to say with, you know, iron-clad certainty that it

13  will get done.  I will certainly endeavor to have that happen,

14  and if there is an issue, we will let the Court know as soon as

15  possible.

16          THE COURT:  Well, I think the only stumbling block,

17  really, to the completion of these reports is the researcher

18  being cleared.  I mean, you're all guns blazing and I would

19  think you could get it done within that 30-day period.

20          MR. CHESTER:  That would be my hope.  We certainly

21  will be, as we have been, guns blazing.  So we'll do our best.

22          THE COURT:  Okay.  How does this impact -- if I were

23  to give you until June 23rd to do that -- I don't have the

24  Scheduling Order with me -- how is it going to impact other

25  deadlines in the case?

1                MR. CHESTER:  So, I mean, there is another deadline
2    on May 28th of our Amended CIPA Section Five Notice that this
3    doesn't impact it except we will be complying with that
4    deadline for the materials that are classified that we
5    currently have access to.  You know, so, we've talked about
6    this before.  If once our expert researcher gets on board and
7    gets a clearance, if there is other classified material that's
8    located, then, obviously, we will be doing Supplemental Amended
9    CIPA Section Fives, but for the time being that May 28th
10   deadline on our first Amended CIPA Section Five we will be able
11   to comply with.
12       How it impacts other deadlines -- I would have to look and
13   think about it, but right now I don't -- I don't see -- the
14   Government has a rebuttal expert disclosure 30 days from the
15   date of our rebuttal expert disclosures which is now the later
16   of June 14th or 30 days from the clearance of that expert.  It
17   guess it is possible it could creep into that, but as of now I
18   don't see any impact unless the Government sees something I
19   don't.
20               THE COURT:  Okay.  And would this impact the Section
21   Six?  I guess not because, hopefully, we could catch up to the
22   extent you have to file a Supplemental Section Five.
23               MR. CHESTER:  Yeah.  I mean, I think -- again, I kind
24   of defer to the Government on this one.  They've got more
25   experience than I do on it, but we will be filing an Amended

1   CIPA Section Five on May 28th and there may be Supplemental
2   CIPA Section Fives as we get -- as our researchers gets up to
3   speed and more materials located if it's classified, but we
4   could proceed, I think, under Section Six with that first
5   Section Five submission that's due by the end of this month.
6   That doesn't seem to be problematic to me.
7             THE COURT:  To be clear, Mr. Chester, are you telling
8   me that the current information your expert has been able to
9   obtain is so insufficient that he has not even formed an
10  opinion yet?
11            MR. CHESTER:  I don't know that I would characterize
12  it as "so insufficient", but the current information that our
13  expert researcher has obtained that's been reviewed by our
14  expert has not yet led to a definitive conclusion that they
15  were engaged to provide and that is whether or not the
16  information is NDI.
17            THE COURT:  Okay.  And this researcher that we're
18  talking about, what kind of person -- I mean, someone who is
19  trained in this area of researching public information for
20  classified -- I mean, how is this person any different than you
21  or me in terms of their ability to conduct this research or,
22  for that matter, any different than Mr. Leonard?
23            MR. CHESTER:  So as I appreciate -- and, you know,
24  Mr. Barnard would be able to answer these questions better than
25  me since he's had -- when they were originally engaged, you

```
 1   know, worked that out, but I can tell you my understanding is
 2   they have search capabilities.  They have expertise in
 3   searching things online that are substantially more
 4   sophisticated and in depth than just a Google search bar.  So
 5   my understanding is they have tools and abilities that are
 6   greater than just me or you or Mr. Leonard.
 7            THE COURT:  Mr. Barnard, are you there?
 8            MR. CHESTER:  He is not on, Judge.  I apologize.
 9            THE COURT:  Okay.  All right.  Any further thoughts
10   from the Government on this issue, particularly the question of
11   whether it would impact the deadlines in the case and most
12   notably the Section Six hearing and trial?
13            MS. EDELSTEIN:  Yes, Your Honor, a couple of things.
14   I think, one, even if they can't provide all the information to
15   us on May 28th, if they have experts that are already engaged
16   and cleared we would still be interested in learning that and
17   receive from those experts any information that can be provided
18   at that time, and in terms of how it would impact the schedule,
19   I think Mr. Chester is right that for the initial CIPA Section
20   Five information it wouldn't be an issue, but depending on how
21   much information comes later through supplemental disclosures
22   we could be in a situation if there -- if they're not
23   disclosing information to us until, say, the July timeframe,
24   we're not going to have sufficient time to brief that
25   information prior to the current Section Six hearing which is
```

1  scheduled for August 6th through 8th.

2         So it really depends on when the supplemental disclosures
3  will come in and how in depth they are.  We do have 30 days
4  from the CIPA Five Notice to file our 6(a) Motion Notice and
5  then the -- there is time built in for the Defendant's Response
6  and the Government's Reply.  So that briefing itself is going
7  to take a significant amount of time such that if the
8  disclosures come in late it could definitely affect the
9  schedule.

10            THE COURT:  Okay.  Well, I need to think about this
11  and look at the schedule before I -- I'll issue a ruling that
12  gives like a final conclusion on what I think we need to do.  I
13  do think that, as I've said a lot of times, we've got to press
14  forward on all fronts as much as possible even if sometimes it
15  means that a portion that can't be ready on time is delayed and
16  supplemented as soon as possible thereafter.

17            MS. RODRIGUEZ-FEO:  Hello?

18            MS. EDELSTEIN:  The Government is still here.

19            MR. CHESTER:  We're still here, too.

20            MS. RODRIGUEZ-FEO:  I'm still here -- Carli.

21            MS. EDELSTEIN:  We may have lost our judge.

22            THE CLERK:  Judge Epps, are you still on the line?

23            THE COURT:  Hello, Everybody.  Are you there?

24            MR. CHESTER:  Yes, Judge.

25            MS. EDELSTEIN:  We're still here, Your Honor.

1        THE COURT: It just all of a sudden dropped the
2   phone. I'm not sure what happened. So my inclination is to
3   not just give you a thumbs up and say, "Don't worry about any
4   of these." My inclination would be to modify the deadline such
5   that it's clear on the expert opinions and disclosures that
6   it's possible for you to make by May 28th, you shall and that
7   any that you cannot make by that date because of this issue of
8   the researcher not being cleared yet that you'll have some
9   additional time -- the 30 days from the clearance of the
10  researcher to supplement his opinion.
11       MR. CHESTER: Understood, Judge. This is Matt. One
12  quick point. I'm on board with that. If substantively we can
13  do it, we will. I would object, however, to having to disclose
14  identities of experts because just like any case if I employ an
15  expert and they give me an opinion, let's say, I don't like,
16  I'm under no obligation to disclose them.
17       THE COURT: Right. And so that's what I am
18  envisioning is that if you have an expert who has two or three
19  opinions ready to go and can be disclosed by the deadline, then
20  you need to disclose those two opinions, but if the expert is
21  not sure and you don't know whether you like what -- y'all are
22  holding off because you need the researcher to give you
23  additional information before they can reach an opinion, then,
24  fine. Don't disclose just their names. Wait until you're able
25  to get the researcher cleared and have your expert actually be

1    able to reach a conclusion before you disclose.
2              MR. CHESTER:  Thank you, Judge.  Okay.  I understand.
3              THE COURT:  Okay.  All right.  Well, that's what I
4    think we'll do.  We'll enter an order after I sleep on it.
5         Is there anything further, Mr. Chester, from your
6    perspective we need to discuss today?
7              MR. CHESTER:  Nothing today, Your Honor.  Thank you.
8              THE COURT:  Thank you.
9         Anything further from the Government?
10             MS. EDELSTEIN:  No, Your Honor.
11             THE COURT:  All right.  We're adjourned.  Thank you.
12         (The teleconference is concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATE OF OFFICIAL REPORTER

I, Lisa H. Davenport, Federal Official Court Reporter, in and for the United States District Court for the Southern District of Georgia, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____

Lisa H. Davenport, RPR, FCRR
Federal Official Court Reporter