FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2019 MAR -7  PM 4: 23

CLERK _____
SO. DIST. OF GA.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

UNITED STATES,

V.

REALITY WINNER

Case No. 1:17-cr-34 (JRH) (BKE)

## MEMORANDUM OF LAW IN SUPPORT OF REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING ACCESS TO CERTAIN SEALED COURT RECORDS RELATED TO THIS ACTION

David E. Hudson
  Ga. Bar No. 374450
Hull Barrett
SunTrust Bank Building, 801 Broad Street
Seventh Floor
Augusta, GA 30901
Tel: (706) 722-4481

Peter C. Canfield
  Ga. Bar No. 107748
Meredith C. Kincaid
  Ga. Bar No. 148549
JONES DAY
1420 Peachtree Street, NE, Suite 800
Atlanta, GA 30309
Tel: (404) 521-3939
*Counsel of Record for Applicant the Reporters Committee for Freedom of the Press*

Bruce D. Brown*
Katie Townsend*
Linda Moon*
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Tel: (202) 795-9300

*Of Counsel for Applicant the Reporters Committee for Freedom of the Press*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ........................................................................................................................ 5

I. The Press and the Public Have a Strong Interest In Access To The Sealed Warrant Materials, PR/TT Materials, and Section 2703(d) Materials ................... 5

II. The Press and the Public Have a Constitutional and Common Law Right to Access the Sealed Warrant Materials, PR/TT Materials, and Section 2703(d) Materials ...................................................................................................... 9

 A. The First Amendment and Common Law Rights of Access Apply to Warrant Materials .................................................................................. 10

 B. The First Amendment and Common Law Rights of Access Apply to the Section 2703(d) and PR/TT Materials ........................................... 14

III. The Press and the Public Have Both a Constitutional and Common Law Right of Access to Court Docket Sheets Reflecting the Warrant Materials, PR/TT Materials, and Section 2703(d) Materials ................................................ 19

IV. The Government Cannot Meet Its Burden to Overcome the Presumption of Access to the Warrant Materials, PR/TT Materials, and Section 2703(d) Materials ............................................................................................................... 20

 A. The Government Cannot Demonstrate a Compelling Interest That Justifies the Continued Sealing of the Warrant, Section 2703(d), and PR/TT Materials ............................................................................... 20

 B. The Government Cannot Overcome the Strong Common Law Presumption in Favor of Disclosure of the Warrant, Section 2703(d), and PR/TT Materials ................................................................ 21

CONCLUSION ................................................................................................................... 22

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Balt. Sun Co. v. Goetz,*
  886 F.2d 60 (4th Cir. 1989) .............................................................................. 13, 14

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,*
  263 F.3d 1304 (11th Cir. 2001) ................................................................ passim

*Doe v. Pub. Citizen,*
  749 F.3d 246 (4th Cir. 2014) ......................................................................... 19

*Hartford Courant Co. v. Pellegrino,*
  380 F.3d 83 (2d Cir. 2004)............................................................................ 19

*Hesed El v. Poff,*
  No. 1:18-CV-079, 2018 WL 4688720 (S.D. Ga. Sept. 28, 2018) ........................... 13

*In re Alexander Grant & Co. Litigation,*
  820 F.2d 352 (11th Cir. 1987) ......................................................................... 5

*In re App. of Leopold to Unseal Certain Elec. Surveillance Appls. & Orders,*
  300 F. Supp. 3d 61 (D.D.C. 2018)................................................................... 16

*In re Appl. of N.Y. Times Co. for Access to Certain Sealed Court Records,*
  585 F. Supp. 2d 83 (D.D.C. 2008)........................................................ 10, 11, 15, 16

*In re Appl. of Newsday, Inc.,*
  895 F.2d 74 (2d Cir. 1990)............................................................................ 14

*In re the Appl. of Reporters Comm. for Freedom of the Press for Access to*
  *Certain Sealed Court Records (Donald Sachtleben),*
  17-mc-8 (S.D. Ind. June 12, 2017), ECF No. 3 ..................................................... 8

*In re the Appl. of Reporters Comm. for Freedom of the Press for Access to*
  *Certain Sealed Court Records (Terry Albury),*
  18-mc-85 (D. Minn. Nov. 29, 2018), ECF No. 6.......................................... 8, 9, 23

*In re the Appl. of Reporters Comm. for Freedom of the Press for Access to
Certain Sealed Court Records (Thomas Andrew Drake)*,
  17-cv-169 (D. Md. June 27, 2017), ECF No. 18 ......................................................8

*In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*,
  830 F. Supp. 2d 114 (E.D. Va. 2011) ..........................................17, 20, 21

*In re Four Search Warrants*,
  945 F. Supp. 1563 (N.D. Ga. 1996).....................................................13

*In re Macon Tel. Pub. Co.*,
  900 F. Supp. 489 (M.D. Ga. 1995) .................................................13, 14

*In re Petition of Tribune Co.*,
  784 F.2d 1518 (11th Cir. 1986) .........................................................5

*In re Sealing & Non-Disclosure of PR/TT/2703(D) Orders*,
  562 F. Supp. 2d 876 (S.D. Tex. 2008) .................................................17

*In re Search of Fair Finance*,
  692 F.3d 424 (6th Cir. 2012) ...........................................................14

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
  855 F. 2d 569 (8th Cir. 1988) ..................................................... passim

*In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*,
  707 F.3d 283 (4th Cir. 2013) ..............................................16, 17, 18, 19

in the matter of *United States v. Reality Winner*,
  Case No. 1:17-cr-34 (S.D. Ga. 2017)..................................................22

*Matter of Appl. & Aff. for a Search Warrant*,
  923 F.2d 324 (4th Cir. 1991) ...........................................................14

*Matter of the Appl. of WP Co.*,
  No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) ...............8, 10, 12

*Matter of Search of Office Suites for World & Islam Studies Enter.*,
  925 F. Supp. 738 (M.D. Fla. 1996).................................................12, 13

*Newman v. Graddick,*
    696 F.2d 796 (11th Cir. 1983) ...................................................................................6, 10, 20

*Nixon v. Warner Commc'ns,*
    435 U.S. 589 (1978)...........................................................................................................9

*Press-Enter. Co. v. Superior Court,*
    464 U.S. 501 (1984).....................................................................................................6, 20

*Press-Enter. Co. v. Superior Court,*
    478 U.S. 1 (1986)...............................................................................................................9

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980).......................................................................................................6, 7

*Sheppard v. Maxwell,*
    384 U.S. 333 (1966)...........................................................................................................6

*Smith v. U.S. District Court,*
    956 F.2d 647 (7th Cir. 1992) ........................................................................................7, 21

*Times Mirror Co. v. United States,*
    873 F.2d 1210 (9th Cir.1989) ..........................................................................................13

*Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.,*
    565 F. App'x 477 (6th Cir. 2012) ....................................................................................19

*United States v. Amodeo,*
    71 F.3d 1044 (2d Cir. 1995)............................................................................................21

*United States v. Aref,*
    533 F.3d 72 (2d Cir. 2008)................................................................................................7

*United States v. Business of Custer Battlefield Museum and Store,*
    658 F.3d 1188 (9th Cir. 2011) .........................................................................................14

*United States v. Cohen,*
    18-cr-602 (WHP) (S.D.N.Y. Feb. 7, 2019).....................................................................13

*United States v. El-Sayegh,*
    131 F.3d 158 (D.C. Cir. 1997).........................................................................................15

*United States v. Gonzales*,
   150 F.3d 1246 (10th Cir. 1998) ........................................................................15

*United States v. Kott*,
   380 F. Supp. 2d 1122 (C.D. Cal. 2004), *aff'd on other grounds*, 135 Fed.
   App'x 69 (9th Cir. 2005) ...............................................................................11

*United States v. Loughner*,
   769 F. Supp. 2d 1188 (D. Ariz. 2011) ............................................................11

*United States v. Ochoa-Vasquez*,
   428 F.3d 1015 (11th Cir. 2005) ......................................................................10

*United States v. Shenberg*,
   791 F. Supp. 292 (S.D. Fla. 1991) ..................................................................12

*United States v. Valenti*,
   987 F.2d 708 (11th Cir. 1993) ..........................................................9, 10, 19, 20

*United States v. Winner*,
   No. 1:17-cr-34 (JRH) (BKE) (S.D. Ga. Aug. 23, 2018), ECF No. 324............2, 3, 4

**FEDERAL STATUTES**

18 U.S.C. ......................................................................................................1

18 U.S.C. § 793(e) ........................................................................................2

18 U.S.C. §§ 2701–2712.................................................................................1

18 U.S.C. § 2703 (a), (b)(1), (c)(1)-(2) ...........................................................5

18 U.S.C. § 2703(d) .............................................................................. passim

*18 U.S.C. § 2703(d)*, 13-mc-460...................................................................8

18 U.S.C. § 2703 of the Stored Communications Act........................................5

18 U.S.C. §§ 3121–3127.............................................................................1, 5

18 U.S.C. § 3123(a)(1)..........................................................................15, 16, 18

Espionage Act ................................................................................................................4

Pen Register Act ............................................................................................................5

*Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act* ...................................................................................................5

SCA............................................................................................................... passim

Stored Communications Act.........................................................................................1

**RULES**

Federal Rule of Criminal Procedure 41 .....................................................................15

**REGULATIONS**

28 C.F.R. § 50.10........................................................................................................12

Order Granting Mot. to Unseal, *Winner* .....................................................................3

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................................... passim

Fourth Amendment......................................................................................................11

**OTHER AUTHORITIES**

Amanda Holpuch, *Reality Winner: NSA contractor jailed for five years over classified report leak*, Guardian, Aug. 23, 2018, https://perma.cc/MA2N-5VFK; .................................................................................................................4

Ann E. Marimow, *Justice Department's scrutiny of Fox News reporter James Rosen in leak case draws fire*, Wash. Post., May 20, 2013 ....................................11

Billy Perrigo, *President Trump Calls 5-Year Prison Sentence for NSA Whistleblower Reality Winner 'Unfair,'* Time, Aug. 24, 2018, https://perma.cc/G936-JBXV................................................................................4

Charlie Savage et al., *Reality Winner, N.S.A. Contractor Accused of Leak, Was Undone by Trail of Clues*, N.Y. Times, June 6, 2017................................................4

*Election,* Intercept, June 5, 2017, https://perma.cc/H48N-RUZD ...................................................4

Erik Wemple, *Seizing Journalists' Records: An Outrage That Obama 'Normalized' For Trump,* Wash. Post, June 8, 2018 ..................................................8

Fox News ...................................................................................................................8, 11, 12

, https://perma.cc/Q9QD-AXVU; .............................................................................................4

 (June 2015), https://oig.justice.gov/reports/2015/-o1506.pdf.........................................................5

*Keep Rosen's Warrant Secret,* New Yorker, May 24, 2013, http://bit.ly/1TD3How....................12

Kerry Howley, *'The World's Biggest Terrorist Has a Pikachu Bedspread,'* n. Y ..........................4

*N.Y. Times* ....................................................................................................................10

*Press-Enterprise I* ..............................................................................................................20

*Press-Enterprise II*.............................................................................................................11

*The Washington Post* ..........................................................................................................12

SUSPECTS

*Id.* ¶ 13 ..........................................................................................................................3

478 U.S. at 13–14................................................................................................................20

## PRELIMINARY STATEMENT

The Reporters Committee for Freedom of the Press (the "Reporters Committee") moves to intervene in this case for the limited purpose of seeking access to certain sealed court records related to the action, specifically, any and all applications and supporting documents, including affidavits, concerning the completed "leak" investigation and now-concluded criminal prosecution of Reality Leigh Winner ("Winner") (hereinafter, the "Winner Matter") seeking any of the following; any court orders granting or denying any of the following; and any other court records related to the following, such as returns, motions to seal, and docket sheets:

- any search warrant, regardless of whether the warrant was issued or executed, including warrants under the Stored Communications Act ("SCA"), *see* 18 U.S.C. §§ 2701–2712, that relates to the Winner Matter (collectively, "Warrant Materials");

- authorization for the use of any pen register or trap and trace device pursuant to 18 U.S.C. §§ 3121–3127, regardless of whether such authorization was granted or a pen register or trap and trace device was used, that relates to the Winner Matter (collectively, "PR/TT Materials"); and

- any order pursuant to 18 U.S.C. § 2703(d) of the SCA, regardless of whether or not the order was issued or executed, that relates to the Winner Matter (collectively, "Section 2703(d) Materials").

Contrary to the constitutional and common law presumptions of public access to court records, court filings of this type are routinely maintained under seal indefinitely, without any compelling or countervailing interest necessitating such sealing, and are generally not reflected on publicly available dockets. Accordingly, the Reporters Committee does not know the

magistrate case number(s) associated with the Warrant Materials, PR/TT Materials, and Section 2703(d) Materials it seeks to unseal.

The United States government's prosecution of Winner for disclosing classified national defense information to a news media outlet was and remains the subject of intense public interest. Unsealing the Warrant Materials, PR/TT Materials, and Section 2703(d) Materials will shed light on the government's investigation and prosecution of Winner, which has now concluded, and will also provide the public and the press with valuable insight into the government's approach to so-called "leak" investigations and prosecutions more generally. In particular, unsealing of these materials will help inform the press and the public about the government's use of electronic surveillance tools like PR/TT devices and Section 2703(d) orders in connection with such investigations.

## **FACTUAL BACKGROUND**

**1.      The government's investigation and prosecution of Winner for disclosing information to a news media outlet.**

From in or about February 2017 through in or about June 2017, Winner was employed as a contractor with a private corporation and was assigned to the National Security Agency ("NSA"), during which time she held a TOP SECRET//Sensitive Compartmented Information ("SCI") security clearance and had access to national defense and classified information. *See* Plea Agreement ¶ 2a, *United States v. Winner*, No. 1:17-cr-34 (JRH) (BKE) ("*Winner*") (S.D. Ga. Aug. 23, 2018), ECF No. 324; Gov't's Sentencing Mem. at 1, *Winner* (S.D. Ga. Aug. 14, 2018), ECF No. 320.

On June 26, 2018, Winner pled guilty in this Court to one count of unlawful retention and transmission of national defense information, in violation of 18 U.S.C. § 793(e)). *See* Change of

Guilty Plea, *Winner* (S.D. Ga. June 26, 2018), ECF No. 316; Plea Agreement ¶ 1; Superseding

Indictment, *Winner* (S.D. Ga. Sept. 6, 2017), ECF No. 72.  The Court accepted Winner's guilty

plea and, on August 23, 2018, sentenced her to 63 months' imprisonment, followed by three

years of supervised release, and ordered her to pay a $100 assessment.  *See* Judgment, *Winner*

(S.D. Ga. Aug. 24, 2018), ECF No. 327.

> The Superseding Indictment states that on or about May 9, 2017 Winner "printed and

improperly removed classified intelligence reporting . . . and unlawfully retained it."

Superseding Indictment ¶ 11.  It further states that on or about May 9, 2017 Winner "unlawfully

transmitted the intelligence reporting to an online news outlet (the "News Outlet")."  *Id.* ¶ 13.  In

the Plea Agreement, Winner agreed to a set of facts, including to the fact that "[o]n or about May

9, 2017, [she] unlawfully transmitted the Intelligence Report" to the News Outlet, which was

"not authorized to receive or possess the Intelligence Report."  Plea Agreement ¶¶ 2m-2n.

> On June 3, 2017, a search warrant was executed at Winner's residence.  Gov't's

Sentencing Mem. at 2; Appl. for a Search Warrant, *Winner* (S.D. Ga. June 3, 2017), ECF No. 1.

The application and search warrant were initially filed under seal, but were unsealed on June 5,

2017 upon the government's motion to unseal after the criminal complaint and arrest warrant had

been issued and filed publicly.  Gov't's Mot. to Unseal ¶¶ 2–5, *Winner* (S.D. Ga. June 5, 2017),

ECF No. 3; Order Granting Mot. to Unseal, *Winner* (S.D. Ga. June 5, 2017), ECF No. 4.

> On June 5, 2017, The Intercept published the classified Intelligence Report that Winner

admitted to have "removed" from its authorized location, "unlawfully retained," and "unlawfully

transmitted" to the News Outlet.  Plea Agreement ¶¶ 2h, 2m; Matthew Cole et al., *Top-Secret*

- 3 -

*NSA Report Details Russian Hacking Effort Days Before 2016 Election,* Intercept, June 5, 2017,

https://perma.cc/H48N-RUZD.

Winner is the first person to be sentenced under the Espionage Act under the Trump

administration for disclosing classified information to a news outlet, and the government's

investigation and prosecution of Winner have been a subject of intense public interest and

extensive media coverage. *See, e.g.*, Charlie Savage et al., *Reality Winner, N.S.A. Contractor*

*Accused of Leak, Was Undone by Trail of Clues,* N.Y. Times, June 6, 2017,

https://perma.cc/F9KR-67RB; Kerry Howley, *'The World's Biggest Terrorist Has a Pikachu*

*Bedspread,'* N.Y. Magazine, Dec. 25, 2017, https://perma.cc/Q9QD-AXVU; Amanda Holpuch,

*Reality Winner: NSA contractor jailed for five years over classified report leak,* Guardian, Aug.

23, 2018, https://perma.cc/MA2N-5VFK; Billy Perrigo, *President Trump Calls 5-Year Prison*

*Sentence for NSA Whistleblower Reality Winner 'Unfair,'* Time, Aug. 24, 2018,

https://perma.cc/G936-JBXV.

## 2. Warrant Materials, PR/TT Materials, and Section 2703(d) Materials related to the Winner Matter remain under seal.

Documents filed with the Court in the Winner prosecution indicate that the government

sought and obtained at least one search warrant in connection with the Winner Matter. *See* Appl.

for a Search Warrant. The affidavit filed in support of the application for that search warrant

states that the government determined that Winner "had e-mail communication with the News

Outlet on or about March 30, 2017, and March 31, 2017." Aff. of Justin C. Garrick ¶ 16, *Winner*

(S.D. Ga. June 3, 2017), ECF No. 1-3. Thus, the government may have also obtained additional

- 4 -

search warrants, including warrants under the SCA, pen register or trap and trace orders,[1] and/or Section 2703(d) orders[2] from the district court in the course of its investigation.

The Reporters Committee is not aware of any other search warrants, orders authorizing the use of pen registers and/or trap and trace devices, or Section 2703(d) orders, or any applications or other materials related thereto, connected to the Winner Matter that have been unsealed. The Reporters Committee therefore requests that any and all such court records— including docket sheets—be unsealed, and that, to the extent necessary to facilitate such unsealing, the U.S. Attorney's Office be directed to provide a list of the specific magistrate case numbers associated with the applications and orders sought to be unsealed by this Motion.

## ARGUMENT

I.    **The Press and the Public Have a Strong Interest In Access To The Sealed Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

The right of the press and public to intervene to seek access to court records has long been beyond dispute. *See, e.g., In re Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986) ("The press has standing to intervene in actions in which it is otherwise not a party in order to petition for access to court proceedings and records."); *In re Alexander Grant & Co.*

---

[1] Pen registers and trap and trace devices are law enforcement surveillance tools the use of which is governed by 18 U.S.C. §§ 3121–3127 (the "Pen Register Act" or "PRA")."Pen registers record telephone numbers, e-mail addresses, and other dialing, routing, addressing, or signaling information that is transmitted by instruments or facilities—such as telephones or computers—that carry wire or electronic communications." OIG, *A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009 — Executive Summary* at 1 (June 2015), https://oig.justice.gov/reports/2015/-o1506.pdf. "Trap and trace devices record similar information that is received by such instruments or facilities." *Id.*

[2] Under 18 U.S.C. § 2703 of the Stored Communications Act ("SCA") a court may issue an order authorizing the government to, *inter alia*, require electronic communication service or remote computing service providers to disclose certain communications metadata related to a subscriber or customer. 18 U.S.C. § 2703 (a), (b)(1), (c)(1)-(2).

*Litigation*, 820 F.2d 352, 254 (11th Cir. 1987); *Newman v. Graddick*, 696 F.2d 796, 800 (11th

Cir. 1983).  [PCC1]

Openness is "an indispensable attribute" of our judicial system.  *Richmond Newspapers,*

*Inc. v. Virginia*, 448 U.S. 555, 569 (1980).  It guards against unfairness and inequity in the

application of laws, as "the sure knowledge that *anyone* is free to attend gives assurance that

established procedures are being followed and that deviations will become known."  *Press-Enter.*

*Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*").  And, perhaps just as

importantly, access "fosters an appearance of fairness, thereby heightening public respect for the

judicial process," and "permits the public to participate in and serve as a check upon the judicial

process—an essential component in our structure of self-government."  *Newman v. Graddick,*

696 F.2d 796, 801 (11th Cir. 1983) (quoting *Globe Newspaper Co. v. Superior Court for Norfolk*

*Cty.*, 457 U.S. 596, 606 (1982)).  "People in an open society do not demand infallibility from

their institutions, but it is difficult for them to accept what they are prohibited from observing."

*Richmond Newspapers*, 448 U.S. at 572.

The U.S. Supreme Court has recognized that the news media plays a vital role in

facilitating public monitoring of the judicial system.

> A responsible press has always been regarded the handmaiden of
> effective judicial administration, especially in the criminal
> field. . . .   The press does not simply publish information about
> trials but guards against the miscarriage of justice by subjecting the
> police, prosecutors, and judicial processes to extensive public
> scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).  Thus, "[w]hile media representatives enjoy the

same right of access as the public," they frequently "function[] as surrogates for the public" by,

for example, attending proceedings, reviewing court documents, and reporting on judicial matters to the public at large. *Richmond Newspapers*, 448 U.S. at 573.

For these reasons, it is well-settled that the public and the press have a right of access to court documents, generally, that arise from the public's interest in observing the consideration and disposition of matters by federal courts. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310–11, 1314 (11th Cir. 2001) ("*Bridgestone/Firestone*") (recognizing the media and the public's qualified First Amendment and common law right of access to criminal and civil proceedings but holding that such a right does not extend to materials exchanged during discovery).

The public's right of access is especially strong in matters, like the Winner Matter, that concern actions taken by the executive branch. As the U.S. Court of Appeals for the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. U.S. District Court*, 956 F.2d 647, 650 (7th Cir. 1992) ("*Smith*") (quoting *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)); *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (stating the "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch").

Further, the press and the public have a particularly powerful interest in obtaining access to the specific court records that are the subject of this Motion. The government routinely uses warrants, orders authorizing the use of pen registers and trap and trace devices, and Section 2703(d) orders in leak investigations and prosecutions of individuals for unauthorized

- 7 -

disclosures of information to members of the news media, and they raise particular concerns

when they are used to obtain journalists' communications records. *See* Erik Wemple, *Seizing*

*Journalists' Records: An Outrage That Obama 'Normalized' For Trump,* Wash. Post, June 8,

2018, https://perma.cc/4BCN-YHWR; *see also, e.g., Appl. for Search Warrant for E-mail*

*Account [redacted]@gmail.com,* No. 1:10-mj-00291 (AK) (D.D.C. Nov. 7, 2011) (government

application for an SCA warrant for e-mail communications of Fox News reporter James Rosen in

connection with a leak investigation); *In re Appl. of the United States for an Order Pursuant to*

*18 U.S.C. § 2703(d),* 13-mc-460 (AK) (D.D.C. May 7, 2013), ECF No. 1 (government

application for a Section 2703(d) order for a reporter's electronic communications records in

connection with a leak investigation).

　　The Reporters Committee has sought access to warrant, PR/TT, and Section 2703(d)

materials in connection with other leak prosecutions post-sentencing, and has successfully

obtained those materials in all cases in which it has filed an application, either by court order or

by the government's agreement to move to unseal relevant matters. *See* Order, *In re the Appl. of*

*Reporters Comm. for Freedom of the Press for Access to Certain Sealed Court Records (Terry*

*Albury),* 18-mc-85 (D. Minn. Nov. 29, 2018), ECF No. 6 (granting unopposed application to

unseal warrant, PR/TT, and Section 2703(d) materials); Order, *In re the Appl. of Reporters*

*Comm. for Freedom of the Press for Access to Certain Sealed Court Records (Thomas Andrew*

*Drake),* 17-cv-169 (D. Md. June 27, 2017), ECF No. 18 (same); Notice of Voluntary Dismissal

Without Prejudice, *In re the Appl. of Reporters Comm. for Freedom of the Press for Access to*

*Certain Sealed Court Records (Donald Sachtleben),* 17-mc-8 (S.D. Ind. June 12, 2017), ECF No.

3 (dismissal upon order granting the government's motions to unseal requested records); Joint

- 8 -

Stipulation of Dismissal, *In re the Appl. of Reporters Comm. for Freedom of the Press for Access to Certain Sealed Court Records (John C. Kiriakou)*, 1:17-mc-2 (E.D.V.A. Mar. 23, 2017), ECF No. 10 (same); Order, *In re the Appl. of Reporters Comm. for Freedom of the Press for Access to Certain Sealed Court Records (Jin-Woo Kim)*, 16-mc-2193 (D.D.C. Jan. 17, 2017), ECF No. 6 (same). Public access to such records related to the Winner Matter are sought for the same purpose, and will provide the public and the press with further insight into the government's pursuit of leak investigations in general, and the Winner Matter, specifically.

## II.   The Press and the Public Have a Constitutional and Common Law Right to Access the Sealed Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.

Whether the First Amendment affords a right of access to a document at any particular stage in the criminal process turns on considerations of "experience and logic," *i.e.* (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 9 (1986) ("*Press-Enterprise II*"); *United States v. Valenti*, 987 F.2d 708, 712 (11th Cir. 1993). Where the First Amendment right of public access applies, a document may be sealed "only after (1) notice and an opportunity to be heard on a proposed closure; and (2) articulated specific "findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."*Valenti*, 987 F.2d at 713 (quoting *Press-Enterprise I*, 464 U.S. at 510)).

The common law also affords a public right of access to judicial records and documents in both civil and criminal cases. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978); *Bridgestone/Firestone*, 263 F.3d at 1311 (citing *Nixon*, 435 U.S. at 597). "This right, like the right to attend judicial proceedings, is important if the public is to appreciate fully the often

- 9 -

significant events at issue in public litigation and the workings of the legal system." *Newman,*

696 F.2d at 803 (citations omitted).  The common law right of access is a qualified right, which

requires a weighing of competing interests.  In determining whether countervailing interests

overcome the common law right of access in a given case, the district court may "look to

whether the records are sought for such illegitimate purposes as to promote public scandal or

gain unfair commercial advantage, whether access is likely to promote public understanding of

historically significant events, and whether the press has already been permitted substantial

access to the contents of the records." *Newman,* 696 F.2d at 803 (citing *Nixon,* 435 U.S. at 598–

603 & n.11).

    **A.**    <u>**The First Amendment and Common Law Rights of Access Apply to Warrant**</u>
        <u>**Materials.**</u>

    1.    *<u>The public has a First Amendment right of access to the Warrant Materials at</u>*
        *<u>issue.</u>*

Although the Eleventh Circuit has held that the press and the public have a qualified First

Amendment right of access to criminal trial proceedings and records, including dockets, it has

not squarely addressed whether this right applies to warrant materials. *See Valenti,* 987 F.2d at

712; *United States v. Ochoa-Vasquez,* 428 F.3d 1015, 1028 (11th Cir. 2005).  At least one federal

court of appeals has held that the First Amendment presumption of access applies to warrant

materials regardless of the status of the underlying investigation, *In re Search Warrant for*

*Secretarial Area Outside Office of Gunn,* 855 F. 2d 569, 573 (8th Cir. 1988), and several district

courts have found that warrant materials are subject to constitutional right of access at least in the

post-investigation context. *See In re Appl. of N.Y. Times Co. for Access to Certain Sealed Court*

*Records,* 585 F. Supp. 2d 83, 94 (D.D.C. 2008) ("*In re N.Y. Times*"); *Matter of the Appl. of WP*

*Co.*, No. 16-mc-351 (BAH), 2016 WL 1604976, at \*2 (D.D.C. Apr. 1, 2016); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011); *United States v. Kott*, 380 F. Supp. 2d 1122, 1124–25 (C.D. Cal. 2004), *aff'd on other grounds*, 135 Fed. App'x 69 (9th Cir. 2005).

As those courts have correctly recognized, both prongs of the *Press-Enterprise II* "experience and logic" inquiry are satisfied in the context of warrant materials. First, warrant applications and supporting documents are judicial records which "have been historically considered to be open to inspection by the public." *In re Gunn*, 855 F.2d at 573. As the Eighth Circuit has noted, "although the process of issuing search warrants has traditionally not been conducted in an open fashion, the search warrant applications and receipts are routinely filed with the clerk of court without seal." *Id.*; *see also In re N.Y. Times*, 585 F. Supp. 2d at 88.

Second, logic strongly favors access to warrant materials because access to them is "important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *In re Gunn*, 855 F.2d at 573. Indeed, "warrant materials are often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable search and seizures," and access to them allows the public to "ensure that judges are not merely serving as a rubber stamp for the police." *In re N.Y. Times*, 585 F. Supp. 2d at 90.

Moreover, access to warrant materials can shed light on specific matters that raise important issues of public concern. For example, in 2013, it was revealed that, in 2010, FBI had obtained an SCA warrant requiring Google to provide it with the contents of e-mails from the personal e-mail account of a Fox News reporter, James Rosen, in connection with a leak investigation. *See* Ann E. Marimow, *Justice Department's scrutiny of Fox News reporter James*

- 11 -

*Rosen in leak case draws fire*, Wash. Post., May 20, 2013, https://perma.cc/U25E-9AFU. Rosen was reportedly unaware of the warrant's existence until it was reported in *The Washington Post*. *See* Ryan Lizza, *How Prosecutors Fought to Keep Rosen's Warrant Secret*, New Yorker, May 24, 2013, http://bit.ly/1TD3How. Unsealing of the warrant materials in that case, including an affidavit which averred that there was "probable cause to believe" that Rosen, by attempting to gather information from a source, had violated federal criminal law as "an aider and abettor and/or co-conspirator," prompted a public outcry. *See* Aff. of Reginald B. Reyes ¶¶ 4-5, 39-40, *Appl. for Search Warrant for E-mail Account [redacted]@gmail.com*, No. 1:10-mj-00291 (AK) (D.D.C. Nov. 7, 2011); Marimow, *Justice Department's scrutiny of Fox News reporter James Rosen in leak case draws fire*. Facing intense public pressure in the wake of the Rosen case, the Department of Justice revised the internal guidelines that govern the collection of records or information from members of the news media in 2014 and 2015 to strengthen protections for journalists. *See* 28 C.F.R. § 50.10.

At least one district court in this Circuit has recognized that the qualified First Amendment right of access applies to affidavits filed in support of search warrant applications, although the court denied immediate access without prejudice to renew the motion to unseal following the upcoming suppression hearing. *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991). Another court, without ruling on the constitutional question, found that, "[a]t some point, possibly at the point in time of the return of the warrant or surely by the time of an indictment, the salutary effects of public access become real and positive." *Matter of Search of Office Suites for World & Islam Studies Enter.*, 925 F. Supp. 738, 741–42 (M.D. Fla. 1996) ("[T]he federal rules, when read in conjunction with the common law, suggest that the filing of

- 12 -

the warrant with the magistrate may be the point at which access is intended." (citing Fed. R.

Crim. P. 41(g))).  Two district courts in this Circuit have rejected a constitutional right of access

to warrant materials, but did so in the specific context—not present here—of a pre-indictment,

ongoing investigation. *See In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga.

1996) (discussing *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir.1989) and *Balt. Sun

Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989)); *In re Macon Tel. Pub. Co.*, 900 F. Supp. 489, 491–92

(M.D. Ga. 1995) (same); *cf. United States v. Cohen*, 18-cr-602 (WHP) (S.D.N.Y. Feb. 7, 2019)

(finding that the First Amendment presumption of access to warrant materials does not depend

on the stage of a criminal proceeding at which the documents are requested, but holding that a

strong common law presumption of access applies to warrant materials).

     2.    *The public has a common law right of access to the Warrant Materials at issue.*

     In addition to the constitutional right, the public also has a common law right of access to

the Warrant Materials.  The Eleventh Circuit has held that "the media and public presumptively

have access" to "those items which may properly be considered public or judicial records."

*Bridgestone/Firestone*, 263 F.3d at 1311; *see also Hesed El v. Poff*, No. 1:18-CV-079, 2018 WL

4688720, at *1 (S.D. Ga. Sept. 28, 2018).  District courts in this Circuit have concluded that

warrant materials are judicial records and that, "once search warrants are executed and returned,

absent an order sealing the documents, both the search warrant and the affidavit are part of the

public domain and subject to the common law right of access." *Matter of Search of Office Suites

for World & Islam Studies Enter.*, 925 F. Supp. at 742; *see also In re Four Search Warrants*, 945

F. Supp. at 1567 (finding that a common law right of access applied to warrant materials related

to an ongoing criminal investigation because the investigation "would not be compromised by

the release of the historical information pertaining only to a known former suspect"); *In re Macon Tel. Pub. Co.*, 900 F. Supp. at 491 (finding that a "common law right of public access exists in all instances" but, after weighing competing interests, holding that the particular pre-indictment warrant materials at issue "should remain under seal until further order of the court").

Other federal courts of appeals have likewise uniformly found that warrant materials—particularly those from closed investigations like the Winner Matter—are judicial records to which the common law right of access applies. *See In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012); *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1192 (9th Cir. 2011); *In re Appl. of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (a search warrant application is "a public document subject to a common law right of access" at the post-investigation stage); *Matter of Appl. & Aff. for a Search Warrant*, 923 F.2d 324, 330 (4th Cir. 1991) (recognizing the public's common law right of access to a search warrant affidavit before trial and finding that the public had "significant interests" in access, and "[i]n the context of the criminal justice system, these interests may be magnified"); *Goetz*, 886 F.2d at 64–65 (holding that the common law presumption applies to affidavits supporting search warrants "in the interval between execution of the warrants and indictment").

**B.    The First Amendment and Common Law Rights of Access Apply to the Section 2703(d) and PR/TT Materials.**

1.    *The public has a First Amendment right of access to the Section 2703(d) and PR/TT Materials.*

The Section 2703(d) Materials and PR/TT Materials at issue here are analogous to warrant materials.  As discussed above, warrant materials are subject to the First Amendment

right of access and, applying the experience and logic test, the constitutional right should

likewise apply to Section 2703(d) Materials and PR/TT Materials.

First, the tradition of public access to warrant materials applies to the Section 2703(d)

Materials and PR/TT Materials. *See In re Gunn*, 855 F.2d at 573 (finding that warrant materials

are judicial records and documents that "have been historically considered to be open to

inspection by the public"); *see also, United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir.

1997) (stating that "[a] new procedure that substituted for an older one would presumably be

evaluated by the tradition of access to the older procedure"); *United States v. Gonzales*, 150 F.3d

1246, 1256 (10th Cir. 1998) (noting that the experience prong may be satisfied by establishing a

history of access to information "reasonably analogous" to the information sought).  Because the

Section 2703(d) and PR/TT Materials are analogous to warrant materials, they should be

evaluated by this same historic tradition of access. *See El-Sayegh*, 131 F.3d at 161; *Gonzales*,

150 F.3d at 1256.

Second, as with warrant materials, logic strongly supports a First Amendment right of

access to Section 2703(d) and PR/TT Materials. *See In re N.Y. Times*, 585 F. Supp. 2d at 90

("Specifically, with respect to warrants, openness plays a significant positive role in the

functioning of the criminal justice system, at least in the post-investigation stage.").  Indeed,

because Section 2703(d) orders and orders authorizing the use of PR/TT devices function like

warrants by allowing the government to obtain an individual's electronic communications

records, but may be obtained on a showing lower than the probable cause standard that must be

satisfied to obtain a search warrant under Federal Rule of Criminal Procedure 41, *see* 18 U.S.C. §

2703(d) and 18 U.S.C. § 3123(a)(1), access to such materials arguably plays an even more

"significant positive role in the functioning of the criminal justice system." *In re N.Y. Times Co.,* 585 F. Supp. 2d at 90.[3] Access to the Section 2703(d) and PR/TT Materials at issue here will allow the public to scrutinize the arguments the government put forth in support of their applications for any Section 2703(d) orders and orders authorizing the use of PR/TT devices it sought in connection with its investigation of Winner, as well as the basis for any court order granting or denying such applications. Thus, access will allow the public to serve as a check on prosecutorial and judicial misconduct, and provide a measure of accountability to the public at large. *In re Gunn,* 855 F.2d at 573; *In re N.Y. Times Co.,* 585 F. Supp. 2d at 90.

To date, no federal court of appeals has squarely addressed the question of whether the First Amendment right of access applies to Section 2703(d) orders in the context of a closed investigation. The Fourth Circuit, the only federal court of appeals to address access to Section 2703(d) orders, did so in the context of an ongoing criminal investigation at the "pre-grand jury phase," and concluded that the First Amendment right of access did not apply in that context. *In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 286, 292 (4th Cir. 2013) ("*Appelbaum*"); *cf. In re App. of Leopold to Unseal Certain Elec. Surveillance Appls. & Orders,* 300 F. Supp. 3d 61, 90–91 (D.D.C. 2018) (finding that no First Amendment presumption of access applies to warrants, applications, and orders under the SCA or PRA).[4]

---

[3] Orders authorizing the installation and use of PR/TT devices may be obtained *ex parte* by the government on a certification that "the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1). A Section 2703(d) order may be issued "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

[4] The district court's opinion in *In re App. of Leopold* is currently on appeal to the U.S. Court of Appeals for the District of Columbia Circuit.

Here, in contrast, there is no ongoing investigation; Winner pled guilty to a one-count superseding indictment and is currently serving her sentence. Accordingly, *Appelbaum* is distinguishable.

2.   *The public also has a common law right of access to the Section 2703(d) and PR/TT Materials.*

The common law right of access also applies to the Section 2703(d) and PR/TT Materials at issue here. Plainly, Section 2703(d) orders and orders authorizing the use of PR/TT devices, as well as any subsequent, related court orders, are judicial records and documents. *See, e.g., Appelbaum*, 707 F.3d at 290 ("[I]t is commonsensical that judicially authored or created documents are judicial records."). Keeping with this principle, courts have held that the common law right of access attaches to Section 2703(d) orders, as well as to orders authorizing the use of PR/TT devices. *See id.* (stating that the court had "no difficulty holding that the actual § 2703(d) orders and subsequent orders issued by the court are judicial records"); *In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 830 F. Supp. 2d 114, 151–52 (E.D. Va. 2011) (applying the common law right of access balancing test to materials related to a Section 2703(d) order); *In re Sealing & Non-Disclosure of PR/TT/2703(D) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) (writing that "opinions, orders, judgments, docket sheets, and other information related to the court's public functions" are in the "top drawer of judicial records" that are "hardly ever closed to the public"). Accordingly, the Section 2703(d) orders, orders authorizing the use of PR/TT devices, and any subsequent, related court orders issued in connection with the Winner Matter are judicial records subject to a strong presumption of access under the common law.

In addition, just as applications and supporting affidavits for warrants are judicial records, applications and supporting affidavits for Section 2703(d) orders and orders authorizing the use

- 17 -

of PR/TT devices are likewise judicial records because, among other things, they are considered

by the court in determining whether to issue the order being sought by the government. *See*

*Bridgestone/Firestone*, 263 F.3d at 1312 (holding that documents that "require judicial resolution

of the merits [are] subject to the common-law right").

A court may issue a Section 2703(d) order "only if the governmental entity offers specific

and articulable facts showing that there are reasonable grounds to believe" the communications

records that will be obtained "are relevant and material to an ongoing criminal investigation." 18

U.S.C. § 2703(d). Thus, the applications and supporting affidavits form the basis for the court's

determination of whether the government has met the statutory standard for issuance of a Section

2703(d) order, which is "essentially a reasonable suspicion standard." *Appelbaum*, 707 F.3d at

287. Likewise, before a court enters an order authorizing the installation and use of a pen

register or trap and trace device, it must conclude that "the attorney for the Government has

certified to the court that the information likely to be obtained by such installation and use is

relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1). The government's

application thus plays a decisive role in the court's determination as to whether use of a PR/TT

device should be authorized or a Section 2703(d) order issued.

Finally, motions related to Section 2703(d) orders and PR/TT orders other than

applications also play a key role in the adjudicatory process and therefore are judicial records.

Such derivative motions are filed with the objective of obtaining judicial action or relief, and the

court relies upon such filings in granting or denying the relief sought. Consistent with this

reasoning, the Fourth Circuit has held that derivative Section 2703(d) motions are judicial

records because they play a role in the adjudicative process; namely, "they were filed with the

- 18 -

objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *Appelbaum*, 707

F.3d at 291. For these reasons, any derivative Section 2703(d) and PR/TT motions are judicial

records to which the common law right of access applies.

**III.    The Press and the Public Have Both a Constitutional and Common Law Right of Access to Court Docket Sheets Reflecting the Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

Docket sheets are judicial records to which the common law right of access applies. *See*

*In re Gunn*, 855 F.2d at 575 ("The case dockets maintained by the clerk of the district court are

public records." (citation omitted)). In addition, several federal courts of appeals, including the

Eleventh Circuit, have recognized that the constitutional right of access also applies to court

docket sheets. *See Valenti*, 987 F.2d at 715 (holding unconstitutional the maintenance of a

"dual-docketing system" whereby certain dockets were sealed and "completely hid[den] from

public view"); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93–94 (2d Cir. 2004)

(holding that docket sheets in civil and criminal proceedings "enjoy a presumption of openness

and that the public and the media possess a qualified First Amendment right to inspect them");

*Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that there is a First Amendment

right of access to docket sheets in civil proceedings); *Tri-Cty. Wholesale Distributors, Inc. v.

Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access right

extends to court dockets, records, pleadings, and exhibits.").

IV.    **The Government Cannot Meet Its Burden to Overcome the Presumption of Access to the Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

   A.    <u>**The Government Cannot Demonstrate a Compelling Interest That Justifies the Continued Sealing of the Warrant, Section 2703(d), and PR/TT Materials.**</u>

A document to which the First Amendment right of access applies may remain under seal only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise II*, 478 U.S. at 13–14 (quoting *Press–Enterprise I*, 464 U.S. at 510); *see also Valenti*, 987 F.2d at 713. *Newman*, 696 F.2d at 802 ("A presumption of access must be indulged to the fullest extent not incompatible with the reasons for closure." (citing *Richmond Newspapers*, 448 U.S. at 580 n. 17)).

Because the government's investigation and prosecution of Winner has concluded, there can be no compelling interest in the continued sealing of any Warrant, Section 2703(d), and PR/TT Materials related to the Winner Matter.  Moreover, even assuming *arguendo* that the government could identify some compelling interest that justified sealing some portion of those Warrant, Section 2703(d), or PR/TT Materials, redaction—not wholesale sealing—would be required.  *See Press-Enterprise I*, 464 U.S. at 510 (closure of records must be narrowly tailored to serve the compelling government interest); *Newman*, 696 F.2d at 802 ("If closure is warranted, the restriction on access must be narrowly drawn with only the part of the proceeding as is necessary closed." (citing *Globe Newspaper Co.*, 457 U.S. at 608)).

**B.      The Government Cannot Overcome the Strong Common Law Presumption in Favor of Disclosure of the Warrant, Section 2703(d), and PR/TT Materials.**

Where, as here, the common law presumption of access attaches, judicial records may be sealed only if and to the extent that the presumption is outweighed by competing interests. *See Bridgestone/Firestone, Inc.,* 263 F.3d at 1311 & n. 7. Here, the weight of the presumption of access is especially strong as the judicial records at issue play an important role in determining the substantive rights of individuals and provide great value to those monitoring federal courts as well as actions of the executive branch. *See United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir. 1995); *Smith,* 956 F.2d at 650.

Against this strong presumption of access, there are minimal—if any—interests in maintaining the secrecy of the judicial records at issue, and they should be unsealed. As explained above, there is no ongoing investigation; the Winner Matter has concluded, and Winner is currently serving her sentence. Moreover, none of the court records at issue are being sought for an improper purpose. The Reporters Committee seeks access to these materials for the benefit of the press and public at large. In addition, much of the information relating to Winner's prosecution—and, as noted above, materials related to at least one search warrant obtained by the government—are already in the public forum. The public knows that Winner was charged for allegedly disclosing national defense information to a news media outlet, and that she pled guilty. Accordingly, even though the Warrant, Section 2703(d), and PR/TT Materials are sealed, much of their underlying subject matter is public, a factor weighing in favor of disclosure.

In sum, because no competing factors outweigh the strong presumption of public access to the Warrant, Section 2703(d), and PR/TT Materials at issue here, they should be unsealed.

## CONCLUSION

For the foregoing reasons, the Reporters Committee's respectfully requests that the Court grant its motion to intervene in the matter of *United States v. Reality Winner*, Case No. 1:17-cr-34 (S.D. Ga. 2017) for the limited purpose of seeking access to certain sealed court records concerning the completed "leak" investigation and related criminal prosecution of the Winner Matter, and enter an order unsealing the Warrant, Section 2703(d), and PR/TT Materials related to the Winner Matter.

Dated: March 4, 2019                            Respectfully submitted,


                                                / David E. Hudson
                                                David E. Hudson
                                                  Ga. Bar No. 374450
                                                Hull Barrett
                                                SunTrust Bank Building, 801 Broad Street
                                                Seventh Floor
                                                Augusta, GA 30901
                                                Tel: (706) 722-4481

                                                Peter C. Canfield
                                                  Ga. Bar No. 107748
                                                Meredith C. Kincaid
                                                  Ga. Bar No. 148549
                                                JONES DAY
                                                1420 Peachtree Street, NE, Suite 800
                                                Atlanta, GA 30309
                                                Tel: (404) 521-3939

                                                *Counsel of Record for Applicant the Reporters
                                                Committee for Freedom of the Press*

                                                Bruce D. Brown*
                                                Katie Townsend*
                                                Linda Moon*
                                                THE REPORTERS COMMITTEE FOR
                                                FREEDOM OF THE PRESS
                                                1156 15th St. NW, Suite 1020
                                                Washington, DC 20005
                                                Tel: (202) 795-9300

                                                *Of Counsel for Applicant the Reporters
                                                Committee for Freedom of the Press*

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

/s/ David E. Hudson
David E. Hudson