**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR 117-034** |
| | ) | |
| **REALITY LEIGH WINNER** | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER
18 U.S.C. § 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT OF 2018**

Defendant Reality Leigh Winner moves for compassionate release based upon the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). (Doc. 341.) Winner's motion is primarily based on the COVID-19 pandemic and her claims of its potential effects on her health. Winner, however, failed to exhaust her administrative remedies first with the Bureau of Prisons (BOP). Moreover, Winner has not alleged a qualifying medical condition, as required under U.S.S.G. § 1B1.13. Even if she were eligible, this Court should exercise its discretion and deny her motion. Therefore, the United States respectfully requests that this Court dismiss Winner's motion for lack of jurisdiction, or, alternatively, deny the motion.

## Factual Background

Winner was charged by criminal complaint with willful retention and transmission of national defense information, in violation of 18 U.S.C. § 793(e) (Doc. 5.) The Court detained Winner, both as a flight risk and as a danger to others and the community. (Doc. 27.) In September 2017, the grand jury returned a superseding indictment charging Winner under the same statute. (PSR ¶ 3.) She faced a statutory

maximum term of 10 years in prison. (PSR ¶ 68.) Under a binding Rule 11(c)(1)(C) plea agreement, Winner pled guilty to that charge and accepted the facts as outlined in the agreement. (PSR ¶ 4; Doc. 324.) The parties agreed to a sentence of 63 months in prison followed by 3 years of supervised release. (Doc. 324, ¶ 4.) This Court accepted the plea agreement. (Doc. 323.) The presentence investigation report (PSR) reflected a total offense level of 29, a criminal history category of I, and an advisory guideline range of 87 to 108 months' imprisonment. (PSR ¶ 69.) Consistent with the binding, negotiated plea agreement, Winner was sentenced to a below-guidelines term of 63 months' imprisonment. (Doc. 327.)

Winner now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), asserting that the COVID-19 pandemic endangers her health. She is currently incarcerated at Carswell FMC, a medical prison, located in Fort Worth, Texas, with a projected release date of November 23, 2021.[1]

## Legal Analysis

### A. Statutory Background

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or

---

[1] BOP Inmate Locator, *available at* https://www.bop.gov/inmateloc/ (last visited Apr. 13, 2020).

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides:  "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, the relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive Guidelines amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[2]

---

[2] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by BOP. The First Step Act added authority for an inmate herself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. *See United States v. Wilkes*, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." (internal quotation marks omitted)). The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)    Medical Condition of the Defendant.—
>
> (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis

---

Under the law, the inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon,* 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification). Thus, the United States respectfully requests that this Court deny Winner's request to hold an emergency and expedited hearing.

(ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.—

(i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)     Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), BOP promulgated Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

In general, the defendant has the burden to show circumstances meeting the

5

test for compassionate release. *See United States v. Saldana*, — F. App'x —, 2020 WL 1486892, at *4 (10th Cir. 2020) ("[O]ur cases require the movant to show that § 3582(c) authorizes relief for the court to have jurisdiction."); *see also United States v. Heromin*, No. *11*-550, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *See United States v. Willis*, No. 15-3764, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

### B. BOP's response to the COVID-19 pandemic.

For the benefit of the Court, an initial statement regarding the COVID-19 situation is warranted. Putting aside the ultimate untimeliness of Winner's motion, the Government is certainly sensitive to the issues presented by the COVID-19 pandemic, and, along with BOP, is monitoring the situation constantly. The Government does not minimize the concern or the risk. BOP has taken aggressive action to mitigate the danger and is taking careful steps to protect inmates' and BOP staff members' health. As the situation changes, BOP will continue take action to attempt to protect all inmates and staff members, including those who may be more susceptible to adverse results due to age and existing ailments. Inmates will receive equal and fair consideration based on their facility, health concerns, and other applicable factors as the situation evolves.

BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in

consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO).

On March 13, 2020, BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises several preventive and mitigation measures, including screening staff and all new BOP inmates and quarantining where appropriate; suspending volunteer access; restricting contractor access to BOP facilities except for essential services; assessing stockpiles of food, medicine and sanitation supplies; establishing quarantine areas; placing a 30-day hold on all social visits but increasing detainees' telephone allowance to 500 minutes per month; placing a 30-day hold on legal visits except on a case-by-case basis where the attorney will be first screened for infection; stopping of inmates between facilities for at least 30 days (exceptions for medical treatment and other exigencies); canceling staff travel and training; and requiring wardens at BOP facilities to modify operations to maximize social distancing, such as staggering meal and recreation times.

On March 18, 2020, the BOP implemented the Phase Three Action Plan for locations that perform administrative services, which followed Department of Justice (DOJ), Office of Management and Budget (OMB) and Office of Personnel Management (OPM). On March 26, 2020, the BOP implemented the Phase Four Action Plan, which revised preventive measures for all institutions by updating its quarantine and isolation procedures to require all newly admitted inmates to BOP,

whether in a sustained community transition area or not, be assessed using a screening tool and temperature check. These procedures apply to all new intakes, detainees, commitments, writ returns from judicial proceedings, and parole violators, regardless of their method of arrival. In addition, asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

Effective April 1, 2020, BOP implemented the Phase Five Action Plan in response to a growing number of quarantine and isolation cases, to further mitigate the risk of exposure and spread of COVID-19. Phase Five provides that: (1) for a 14-day period, inmates in every institution were secured in their assigned cells/quarters to decrease the spread of the virus based on health concerns; and (2) BOP would coordinate with the United States Marshals Service (USMS) to significantly decrease incoming movement.[3]   On April 13, 2020, the Director of BOP ordered the implementation of Phase 6, which extended all measures from Phase 5 until May 18, 2020.

In addition, on March 26, 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last

---

[3]    Further details regarding these efforts are available at: https://www.bop.gov/resources/news/20200313_covid-19.jsp and at a regularly updated resource page: https://www.bop.gov/coronavirus/index.jsp.

six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." On April 3, 2020, the Attorney General issued a memorandum directing BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download (last visited Apr. 6, 2020). As a result, BOP implemented the Attorney General's directive. *See* Update on COVID-10 and Home Confinement: BOP continuing to aggressively screen potential inmates, *available at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited Apr. 13, 2020). BOP has increased home confinement by over 40 percent since March and has further increased its screening under the Attorney General's memo. *See id*. As part of this process, BOP is screening and reviewing all inmates automatically to determine which ones meet the criteria

established by the Attorney General, meaning prisoners do not have to apply to be considered for home confinement. *See id*. Based on the Attorney General's directive, BOP has placed an additional 1,280 inmates on home confinement so far. *See* https://www.bop.gov/coronavirus/index.jsp (last visited Apr. 20, 2020).

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution, and reflect a careful, evidence-based approach that not only provides an overall strategy, but also allows BOP to respond to the specific challenges faced by particular facilities and inmates. BOP professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders. Accordingly, the Government does not advocate action by judges in individual cases that do not involve immediate risk to that particular inmate.

### C. Winner did not demonstrate that she first exhausted her administrative remedies.

#### 1. Winner admits that 30 days has not passed since she allegedly filed her initial request for release with BOP.

In this case, Winner's request for compassionate release should be dismissed because she has not established that she fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on her behalf, or that 30 days have lapsed from the receipt of such a request by the warden of Winner's facility. The risk that COVID-19 presents generally is well acknowledged, but BOP has an effective administrative process in place to determine how best to respond to the risk each

individual inmate faces.  Just like any other situation, the exhaustion requirement allows BOP to apply that process in a timely, professionally, orderly and fair manner, without giving preferential treatment to inmates who prematurely rush to the courts. As discussed below, courts have already emphasized the requirement for inmates to go through the BOP process first before seeking judicial remedies.

In her motion, Winner admits that she has not exhausted her administrative remedies with BOP.[4]  (Doc. 341-1 at 4.) This admission alone establishes that this Court currently is without jurisdiction and must dismiss her motion. *See United States v. Raia*, No. 20-1033, slip op. at 7 (3d Cir. Apr. 8, 2020), *available at* https://www2.ca3.uscourts.gov/opinarch/201033pa.pdf (last visited Apr. 9, 2020) ("As noted, Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: BOP has not had thirty days to consider Raia's request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for Raia to administratively exhaust within that time period . . . ."); *see also United States v. Dowlings*, No. CR 413-171, 2019 WL 4803280, at *1 (S.D. Ga. Sept. 30, 2019) ("Defendant has not shown that he requested compassionate release from the Bureau of Prisons or exhausted his administrative remedies."); *United States v. Estrada Elias*, No. 06-96, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019) ("The present

---

[4] Winner claims that she submitted a written request to the Warden of FMC Carswell on April 8, 2020.  She has not submitted any documentation with her motion supporting this claim. Legal counsel for FMC Carswell has inquired with the social worker responsible for reviewing all of the institution's compassionate release requests, and as of April 20, 2020, BOP has not yet received any reduction-in-sentence (RIS) request from Winner.

motion is not brought by the Director of the Bureau of Prisons and it does not appear that Elias has exhausted his administrative remedies. . . . Accordingly, his request for compassionate release will be denied.").

In *Raia*, the defendant argued that he faced a "heightened risk of serious illness or death from the [COVID-19] virus" because he was 68-years old and suffered from Parkinson's Disease, diabetes and heart problems. *See Raia*, No. 20-1033, slip op. at 5. The Third Circuit recently explained, despite this, that it would be futile to remand the defendant's compassionate release issue back to the district court because he had not yet exhausted his administrative remedies. *See id*. at 7. As particularly relevant in this case, the Court of Appeals emphasized:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.

*Id*. at 8.

Other courts have applied similar reasoning in enforcing the exhaustion requirement and in denying motions for compassionate release based on general COVID-19 allegations. *See United States v. Gagne*, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Con. Apr. 2, 2020) (denying compassionate release motion, where defendant filed supplemental briefing on risk of complications from COVID-19, because she did not exhaust administrative remedies did not present "information to show that her specific medical conditions, medications, and conditions of confinement at FCI Danbury are inclined to uniquely and adversely affect her to the degree

12

sufficient to establish 'extraordinary and compelling' reasons"); *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) ("Defendant has failed to exhaust his administrative remedies as required by the statute. Further, Defendant has failed to demonstrate extraordinary and compelling reasons for a sentence modification, and there is no evidence before the Court that the BOP's plan to address the pandemic will not adequately protect inmates."); *United States v. Garza*, No. 18-CR-1745-BAS, 2020 WL 1485782, at *2 (S.D. Cal. Mar. 27, 2020) ("[I]ssues such as Mr. Garza's medical condition, the conditions and resources at Terminal Island (including the availability of testing and treatment), and decisions as to which prisoners should be released because of the COVID-19 epidemic are better left to the Bureau of Prisons and its institutional expertise."); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."); *United States v. Gileno*, No. , 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

As in the cases cited above, Winner's motion is premature.  If she filed a request with BOP (which so far has not been verified), it was filed on April 8, 2020,

at the earliest.   Thirty days have not passed since Winner allegedly made that administrative request. Accordingly, Winner has not exhausted her administrative remedies in this regard, as required under the statute, and this Court is without jurisdiction to grant compassionate release on this basis.

### 2. *Section 3582(c) is jurisdictional with no judicial exception*.

Nonetheless, Winner argues that—despite the statutory language that the district court can reduce a sentence "upon the motion of the defendant *after* the defendant has fully exhausted all administrative rights"—this Court may still consider her motion.  As reflected in the decisions cited above, Winner is incorrect.

Prior to the First Step Act, the Eleventh Circuit held that a district court was without jurisdiction to consider a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) unless the Director of BOP first filed it on the defendant's behalf. *See Cruz-Pagan v. Warden, FCC Coleman-Lowe*, 486 F. App'x 77, 79 (11th Cir. 2012) ("The plan meaning of this section requires a motion by the Director as a condition precedent to the district court before it can reduce a term of imprisonment. The BOP has not made a motion on Cruz' behalf. Accordingly, we do not have the authority to modify his sentence under § 3582(c)(1)(A)."). The First Step Act modified § 3582(c)(1)(A) to allow prisoners to file their own motions, but it still required that BOP conduct the first level of analysis of the defendant's request through the administrative process. *See* 18 U.S.C. § 3582(c)(1)(A). Nothing in the First Step Act's amendments to the statute altered this jurisdictional requirement—it simply

14

modified the condition precedent requirement in light of allowing defendants the option of filing their own § 3582(c)(1)(A) motions.

Given the plain language and purpose of § 3582(c)(1)(A), the requirements for filing a sentence reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for compassionate release—are properly viewed as jurisdictional. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by courts' historical lack of authority to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970) (explaining at common law court could not alter or set aside judgment after court's term ended, but that Fed. R. Crim. P. changed this to allow sentence reduction in certain circumstances). Section 3582(c) accordingly has been understood as conferring upon courts the jurisdictional authority that they previously lacked to modify otherwise final sentences under specific circumstances.[5] *See, e.g.,*

---

[5] As discussed above with respect to *Raia* and other recent COVID-19 related case, the time limitation in § 3582(c)(1)(A) is technically a jurisdictional requirement, given that it stands as an exception to the historic and fundamental rule that courts

*United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010) ("The law is clear that a sentencing court lacks jurisdiction to consider a § 3582(c)(2) motion, even when an amendment would lower the defendant's otherwise-applicable Guidelines sentencing range, when the defendant was sentenced on the basis of a mandatory minimum.").

Winner's claim that this Court may ignore the exhaustion requirement in light of the COVID-19 pandemic is incorrect. While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command such as that presented in § 3582(c)(1)(A). The Supreme Court recently reaffirmed this principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), where the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 (PLRA). That Act mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). Rejecting the "freewheeling approach" adopted by some appeal courts, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court

---

may not revisit a final criminal judgment, the point is ultimately academic. Even if the exhaustion requirement of § 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *See Eberhart*, 546 U.S. at 19. Indeed, even those courts that have concluded that the requirements of Section 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g.*, *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (recognizing that even if court has the "power to adjudicate" a motion under § 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met" (emphasis in original)). The Government has properly raised the rule here, and it must be enforced.

demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856. The Supreme Court explained that, under a statutory exhaustion provision, "Congress sets the rules— and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1857.

That rule plainly applies to the statutory text here. Section 3582(c)(1)(A) unambiguously permits a motion to the Court only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[6]

Defendants in some cases have suggested that the exhaustion requirement of § 3582(c)(1)(A) may be excused by a court as "futile" during the present pandemic. There is, however, no "futility" exception to § 3582(c)(1)(A)'s requirement, and the Supreme Court has made clear that courts have no authority to invent an exception to a statutory exhaustion requirement. Thus,  in *United States v. Perez*, — F. Supp. 3d —, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020), contrary to the above analysis, that court incorrectly excused exhaustion of a claim based on COVID-19 as "futile," relying

---

[6] Unlike the exhaustion provision in *Ross*, which required only exhaustion of "available" administrative remedies, 136 S. Ct. at 1858, the compassionate release statute contains no such exception.

only on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), which addressed a judicially-created (rather than statutory) exhaustion requirement to 21 U.S.C. § 811(a) (relating to the classification of drugs under the Controlled Substances Act). And in any event, a request in this context is not futile, because, as explained further below, BOP fully considers requests for compassionate release. Indeed, BOP often concurs with such requests. During the period from the passage of the First Step Act on December 21, 2018, until mid-March 2020 (before the coronavirus crisis began), BOP consented to a reduction in sentence in 55 cases.

The requirement of a 30-day period to afford BOP the initial review of the defendant's request, therefore, cannot be excused. Congress enacted specific measures in the First Step Act to expand the availability of compassionate release, and it expressly imposed on inmates the requirement of initial resort to BOP's administrative remedies. This is for good reason: the BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50.[7] As PS 5050.50 reflects, BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

This remains true under the present circumstances. Concerns related to COVID-19 are serious and must be evaluated by experts based on facts specific to a particular inmate. As outlined above, BOP and the Attorney General have taken

---

[7] Program Statement 5050.50 is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019 in response to the First Step Act. It is hereafter referred to as "PS 5050.50."

significant measures in an effort to protect inmates' health. The appropriate response to the pandemic is not to remove BOP from the review process. Rather, based on BOP's access to expertise and facts, BOP is best positioned to determine the proper treatment of the inmate population as a whole, to identify issues at specific facilities, and to make the first evaluation of a particular inmate's request. Given the scope of the COVID-19 pandemic, the different conditions in different BOP facilities, the particular medical situations of each inmate, and other factors, Congress' decision to prioritize administrative review, therefore, is at least as compelling now as it would be under ordinary circumstances. As the Third Circuit stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, slip op. at 8. Thus, even if this Court could ignore the mandatory exhaustion requirement, which it cannot, it would be imprudent to prevent BOP from engaging in that review.

### D. Winner has not alleged a qualifying medical condition.

Even if this Court were to find that Winner is not required to first exhaust her administrative remedies, she has still not alleged a medical condition that qualifies as an "extraordinary and compelling reason" for compassionate release under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13. Rather, she contends that her bulimia and depression make her susceptible to COVID-19 and those conditions are exacerbated by the measures BOP has implemented to protect inmates and staff members from

infection.[8]  Notably, those arguments contradict each other—Winner argues that she should be released both on her purported risk and on the steps BOP has taken to protect her.  In any event, her arguments are insufficient.  The statute and the Guidelines commentary make clear that compassionate release for extraordinary and compelling reasons is limited to medical, elderly, or family circumstances. *See Saldana*, 2020 WL 1486892, at *3-*4 (where defendant argued for compassionate release based on his claim he was no longer a guidelines career offender based on new caselaw, holding court did not have jurisdiction to release because that claim did not satisfied one of the specific categories of § 3582(c)).  Winner's bulimia and depression were the basis of this Court's recommendation, which BOP accepted, to commit her to Carswell FMC.  They are not, though, among the physical or mental conditions so serious that they qualify for compassionate release under the statute and associated guidelines and policy. Because Winner fails to allege any qualifying medical reasons, this Court should dismiss his motion.

As noted above, once all the conditions precedent have been met, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) allows a district court to modify a term of imprisonment if it finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements

---

[8] At one point, Winner claims that she "signed up to serve her sentence under the care, custody, and safety of the Bureau of Prisons—she did not agree (nor did this Court require her) to be confined to an institution that was caught unprepared for this virus . . . ."  (Doc. 341-1 at 2.)  Not only does the Government dispute this characterization of BOP's response, Winner forgets that her situation is not the same as walking into the Air Force recruiter's office to join the military—she signed up to serve her sentence with BOP when she violated her oath and broke the law.

issued by the Sentencing Commission . . . ." Title 28, United States Code, Section 994(t) provides the authority for the Sentencing Commission to define the meaning of "extraordinary and compelling reasons" under § 3582(c)(1)(A). Section 994(t) explicitly states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." U.S.S.G. § 1B1.13, application note 1, defines "extraordinary and compelling reasons" to encompass three categories: (1) medical condition of the defendant, (2) age of the defendant, and (3) family circumstances.

A fourth category, "other reasons" is left specifically to the determination of the Director of BOP. *See* U.S.S.G. § 1B1.13, app. n. 1(D). As such, under the plain language of § 1B1.13, the district court is without authority to determine "other extraordinary and compelling reasons" outside of the situations in application note 1 (A) through (C). However, recognizing the discretion given to BOP under subsection (D), the court also may look to the grounds set forth in the relevant BOP regulation governing compassionate release. *See* PS 5050.50; *see also United States v. Lynn*, No. 89-72, 2019 WL 3805349, at *3 (S.D. Ala. Aug. 13, 2019) (disagreeing that under the First Step Act, court may include, under U.S.S.G. § 1B1.13, app. n.1(D), additional extraordinary and compelling reasons apart from BOP's determination). While BOP's regulations may provide more detail regarding implementation of the grounds contained in application note 1 (A) through (C), they still limit "extraordinary or compelling circumstances" to specific medical circumstances, elderly inmates (either 70 years old with 30 years or more of service, or 65 years old with qualifying medical

conditions), death or incapacitation of the family-member caregiver, or incapacitation of a spouse or registered partner. *See* PS 5050.50 at 3-12.

Winner bears the burden of meeting the criteria set forth above. She has not alleged any qualifying medical condition. She does not claim that she is suffering from a terminal illness; she is not 65 years old; she makes no claim regarding the death or the incapacitation of the caregiver of any minor children; and does not claim that she would be the only available caregiver for an incapacitated spouse or registered partner. *See* § 1B1.13, app. n.1(C)(i)-(ii). Moreover, none of her stated reasons are extraordinary or compelling under BOP's regulations. *See* PS 5050.50 at 3-19.

U.S.S.G. § 1B1.13, app. n.1(A)(ii) also does not cover Winner's situation. The application note applies to defendants who suffer from a serious physical or medical condition, or from a serious functional or cognitive impairment, but only if that condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and the defendant "is not expected to recover" from the condition. *Id*. Winner does not allege, and does not provide evidentiary support, that her bulimia and depression are so serious that she is unable to provide self-care within the environment of a correctional facility. Not being able to exercise or eat how she would like does not qualify as "unable to provide self-care." Recognizing that her conditions were the basis of this Court's recommendation that she be incarcerated at Carswell FMC, the circumstances she describes do not rise to the level of being "unable to provide self-care." Further, she has not established that she is not expected to recover from her conditions. In the end, Winner's failure to

22

allege a qualifying medical condition or qualifying family reason is fatal to her claim. *See Saldana*, 2020 WL 1486892, at *3-*4; *see also Bryant*, No. 497-182 (S.D. Ga. Oct. 2, 2019) (order denying motion for compassionate release based on reasons stated in government's response, including that defendant failed to allege qualifying medical condition).

Winner, though, argues that after passage of the First Step Act, subsection D of application note 1 is in conflict with the statute, and that, instead, district courts now have the authority to determine other reasons that qualify as extraordinary and compelling under the statute and guideline. Indeed, and perhaps unsurprisingly, some district courts have agreed with this argument. *See United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (outlining cases). But no court in this district has adopted this approach. To the contrary, those to consider this argument have rejected it. *See id.*; *see also United States v. Bryant*, No. CR 497-182 (S.D. Ga. Oct. 2, 2019) (denying compassionate release where defendant argued after First Step Act court had authority to determine its own extraordinary and compelling reasons). Recently, the Tenth Circuit rejected a defendant's argument that "extraordinary and compelling reasons" included a claim that he was no longer a career offender based on new caselaw. *See Saldana*, 2020 WL 1486892, at *3-*4. That court held the district court lacked jurisdiction to consider defendant's compassionate release motion because he was "unable to show that he satisfies 'one of the specific categories authorized by section 3582(c) . . . ." *Id.* at *3. *See also United States v. Ebbers*, — F. Supp. 3d —, 2020 WL 91399, at *4 (S.D.N.Y.

2020) ("The First Step Act did not revise the substantive criteria for compassionate release. . . . Congress in fact only expanded access to the courts; it did not change the standard. . . . Thus, U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current, even if references to the identity of the moving party are not.").

It is not difficult to see the problematic effects of Winner's interpretation. For example, in 28 U.S.C. § 994(t), Congress specifically delegated to the Sentencing Commission to define "extraordinary and compelling reasons" for purposes of 18 U.S.C. § 3582(c)(1)(A). *See Ebbers*, 2020 WL 91399, at *4. The Guidelines specifically allow for compassionate release of an individual who is at least 70 years old, has served 30 years in prison, and is no longer a danger to others or the community, as long as a reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(B). Under Winner's interpretation, a district court, claiming authority under a judicially-revised § 1B1.13, app. n.1(D), could ignore this and still grant compassionate release to that person, even if they failed to meet that criteria. The same can be said for anyone who would otherwise not qualify under subsections (A) through (C) of the application note 1. But that would then put that court's determination of "extraordinary and compelling" in conflict with the Sentencing Guidelines policy, an outcome which is prohibited. *See United States v. Nasirun*, No. 99-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020) ("[W]hile the First Step Act authorizes a court to reduce a term of imprisonment under § 3582(c)(1)(A) on motion of a defendant based on 'extraordinary and compelling' reasons, any reduction must

be consistent with the policy statements of the Sentencing Commission."). Therefore, because Winner fails to establish that she suffers from a qualifying medical condition, this Court should dismiss her motion.

### E. Alternatively, this Court should exercise its discretion and decline to grant Winner's motion for compassionate release.

Even if this Court were to find that it has jurisdiction to consider Winner's compassionate release, it should exercise its discretion and decline to grant it. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining court "may reduce the term of imprisonment"); *see also United States v. Webster*, No. 3:91CR138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020) ("Even if a defendant meets the eligibility criteria for compassionate release, the Court retains discretion over whether to grant that relief."). In making this determination, the district court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) . . . ." U.S.S.G. § 1B1.13(2). This includes considering the person's character, physical and mental condition; their past conduct; their criminal history; and whether, at the time of the offense, the person was on probation or parole. *See* 18 U.S.C. § 3142(g)(3). Moreover, the court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id*. § 3142(g)(4). Should the district court conclude the defendant does not pose a danger to any person or the community, it must then continue to evaluate the factors under § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *1 (S.D. Ga. Dec. 10, 2019).

Winner has the burden to show she qualifies for compassionate release, and she has not provided any documentation demonstrating that her specific medical conditions, medications, and conditions of confinement at Carswell FMC are inclined to uniquely and adversely affect her to the point of justifying early release.[9] Moreover, Winner has not demonstrated (as is her burden) that BOP's COVID-19 plan is inadequate or that Carswell FMC is specifically unable to adequately treat her (presumably, as a federal medical center, Carswell is particularly well situated to treat Winner, should she become exposed). As of April 19, 2020, Carswell FMC reported that two inmates and no staff members had testified positive for COVID-19.[10] Here, Winner is not being treated any differently than any other inmate, and she has not shown that BOP cannot adequately address any potential medical issues

---

[9] Her bulimia and mental health issues were known at the time of sentencing. (PSR ¶¶ 48, 53.) Although U.S.S.G. § 1B1.13 states that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement," courts recognize that reasonable foreseeability is still a factor to consider in whether to reduce a sentence. *See, e.g., United States v. Lake*, No. 16-76, 2019 U.S. Dist. LEXIS 148003, at \*9 (E.D. Ky. Aug. 30, 2019) ("The purpose of compassionate release is to reduce a term of imprisonment for extraordinary or compelling circumstances that could not have reasonably been foreseen at the time of sentencing.").

[10] BOP COVID-19 resource page *available at* https://www.bop.gov/coronavirus/index.jsp (last visited Apr. 20, 2020). BOP has also informed the Government that the two individuals at Carswell FMC that tested positive had been purposely transferred to the facility and immediately quarantined; they were never in the general population at Carswell FMC. As of April 19, 2020, 495 inmates and 309 BOP staff members nationwide have tested positive. *See id*. One-hundred-fifty-five inmates and twenty-nine staff members have recovered. *See id*. BOP has reported COVID-19 related deaths at FCI Elkton (6), FCI Oakdale (7), Butner Medium I FCI (5), Terminal Island FCI (2), Danbury FCI (1) and Lompoc USP (1). *See id*.

she faces during this period. Because Winner has not demonstrated how COVID-19 specifically affects her, apart from pure speculation, nor shown that BOP's plan is inadequate, nor established that Carswell FMC is unable to adequately treat her, her request for compassionate release based on COVID-19 fails.

### Conclusion

For the foregoing reasons, the United States respectfully requests that Defendant's motion for compassionate release (Doc. 341) be denied.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Jennifer G. Solari*
Jennifer G. Solari
Assistant United States Attorney

*//s// Justin G. Davids*
Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661

P.O. Box 8970
Savannah, Georgia 31412
(912) 652-4422

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

This April 20, 2020.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

***/s/ Justin G. Davids***
Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661

Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422